**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NILO JEREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE REPUBLIC OF CUBA, FIDEL CASTRO | ) |
| RUZ, Individually and as President of the State | ) |
| and Council of Ministers, Head of the | ) |
| Communist Party and Commander-in-Chief of | ) |
| the Military, RAUL CASTRO RUZ, | ) |
| Individually and as First Vice President of the | ) |
| Head of the Cuban Revolutionary Armed | ) |
| Forces, THE CUBAN REVOLUTIONARY | ) |
| ARMED FORCES, and EL MINISTERIO DEL | ) |
| INTERIOR, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Case No. 1:09-mc-466-RWR-AK

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT**
**OF THIRD-PARTIES' MOTION TO VACATE**
<u>**WRIT OF ATTACHMENT ON JUDGMENT WITH PREJUDICE**</u>

Brendon M. Tavelli
(DC Bar No. 492990)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 400 South
Washington, DC 20004
Tel.: 202.416.6800
Fax: 202.416.6899
btavelli@proskauer.com

Michael Krinsky
(PHV)
David B. Goldstein
(D.D.C. Bar # NY0034)
Rabinowitz, Boudin, Standard,
    Krinsky & Lieberman, P.C.
111 Broadway, Eleventh Floor
New York, NY 10006
Tel.: 212.254.1111
Fax: 212.674.4614
mkrinsky@rbskl.com
dgoldstein@rbskl.com

*Counsel for Third-Parties*

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ................................................................................. ii

I.   The Writ Was Issued  Without Court Order,
     In Violation of the FSIA ......................................................................1

II.  The Cuban Assets Control Regulations and the FSIA Bar the Writ............2

III. The Judgment Is Unenforceable for Lack of Effective Service................10

IV. Plaintiff's Failure To Serve The Default Judgments
     Precludes Execution............................................................................12

V.  The Rendering Court Did Not Have Jurisdiction Under the FSIA ............12

VI. Plaintiff's Claim Of "Purposeful Injection of Hepatatis C Virus" is
     Made for the First Time Here, Is Unsupported by Any
     Evidence In the Rendering Court and Would Not Provide
     Jurisdiction Under FSIA § 1605(a)(5) In Any Event...........................18

VII.    Trademark Law Bars Execution .........................................................21

VIII.   Habanos, S.A., Havana Rum & Liquors, S.A., Cuba Ron, S.A.,
        Artex, S.A. and Laboratorios Dalmer, S.A. Are Not "Agencies
        or Instrumentalities" and Therefore TRIA Is Inapplicable to
        Their Trademark Registrations ..........................................................22

CONCLUSION.................................................................................................25

## TABLE OF AUTHORITIES

**Cases** ........................................................................................ **Page**

*Abur v Republic of Sudan*, 437 F. Supp. 2d 166 (D.D.C. 2006) ........................... 11

*Allen v. Russian Fed'n*, 522 F. Supp. 2d 167 (D.D.C. 2007) ......................... 23, 24

*\*Am. Steel Bldg. Co., Inc. v. Davidson & Richardson Const. Co.*,
    847 F.2d 1519 (11th Cir. 1988) ............................................................. 13, 16

*Archbold Health Servs., Inc. v. Future Tech Bus. Sys.*,
    659 So. 2d 1204 (Fla. 3d DCA 1995) ............................................................. 18

*Asiana Airlines v. FAA*, 134 F.3d 393 (D.C. Cir. 1998) ........................................ 8

*\*Associacion de Reclamantes v. United Mexican States*,
    735 F.2d 1517 (D.C. Cir. 1984) ................................................................... 20

*Baker v. Gen. Motors Corp.*, 522 U.S. 222 (1998) ................................................. 4

*Bambrick v. Bambrick*, 165 So. 2d 449 (Fl. 2d DCA 1964) ................................. 18

*Bank of New York v. Rubin*, 484 F.3d 149 (2d Cir. 2007) ..................................... 8

*Best Form, Inc. v. Richards Prods., Inc.*,
    631 So. 2d 1123 (Fla. 4th DCA 1994) ........................................................... 17

*\*Brown v. R.J. Reynolds Tobacco Co.*,
    576 F. Supp. 2d 1328 (M.D. Fla. 2008) ................................................. 3, 4, 5

*C.F. Communications Corp. v. FCC*, 128 F.3d 735 (D.C. Cir. 1997) .................... 8

*Cicippio v. Islamic Republic of Iran*, 30 F.3d 164 (D.C. Cir. 1994) .................... 20

*Cicippio-Puleo v. Islamic Republic of Iran,* 353 F.3d 1024
    (D.C. Cir. 2004) .............................................................................................. 2

*Coleman v. Alcolac, Inc.*, 888 F. Supp. 1388 (S.D. Tex. 1995) ........................... 20

*D.C. Federation of Civic Associations v. Volpe*, 459 F.2d 1231
    (D.C. Cir. 1972) .............................................................................................. 2

*Delta Foods Ltd. v. Rep. of Ghana,* 265 F.3d 1068 (D.C. Cir. 2001) ................... 18

*Doe v. Bin Laden*, 580 F. Supp. 2d 93 (D.D.C. 2008) ................................... 20, 21

*Doe v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005) ....................................20

*\*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003) ......................................23, 24

*Edlow Int'l Co. v. Nuklearna Elektrarna Krsko*,
  441 F. Supp. 827 (D.D.C. 1977) ........................................................................24

*Ellenbogen v. Canadian Embassy*,
  2005 WL 3211428 (D.D.C. Nov. 9, 2005) ................................................11, 12

*Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S.
  Dept. of Treasury*, 606 F. Supp. 2d 59 (D.D.C. 2009)....................................16

*Ennis v. Giblin*, 2 So. 2d 382 (Fla. 1941) ..............................................................18

*Filler v. Hanvit Bank*, 378 F.3d 213 (2d Cir. 2004) ..............................................25

*First National City Bank v. Banco Para el Comercio Exterior de Cuba*,
  462 U.S. 611 (1983)..........................................................................................14

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998) .....................21

*Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370 (7th Cir. 1985) ....20

*Garcia v. Stewart*, 906 So. 2d 1117 (Fla. 4th DCA 2005)....................................17

*Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79 (D.D.C. 2009) .....................11

*Gaylord v. Gaylord,* 45 So.2d 507 (Fla. 1950) .....................................................14

*Gutch v. Fed. Republic of Germany*, 444 F. Supp. 2d 1 (D.D.C. 2006) ..............20

*Hill v. Republic of Iraq*, 2003 WL 21057173 (D.D.C. Mar. 11, 2003) ..................1

*Jerez v. Republic of Cuba*, Case No. 09-mc-0038
  (E.D. Va. Jan. 8, 2010) ....................................................................................13

*Johnson v. State of Florida*, 973 So. 2d 1236 (Fla. 1st DCA 2008)....................17

*In re Kant's Estate*, 272 So.2d 153 (Fla. 1972) ....................................................14

*LeDonne v. Gulf Air, Inc.*, 700 F.Supp. 1400 (E.D. Va. 1988) ............................12

*Letelier v. Republic of Chile*, 488 F. Supp. 665 (D.D.C. 1980)............................21

*Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Botswana to United Nations*, 2005 WL 1621342 (S.D.N.Y. July 12, 2005) .............11, 12

*Liu v. Republic of China*, 892 F.2d 1419 (9th Cir. 1989) .....................................21

*Lombard v. United States,* 690 F.2d 215 (D.C. Cir. 1982) ...................................21

*Magness v. Russian Fed'n*, 247 F.3d 609 (5th Cir. 2001) ....................................11

*Masri v. Adamar of New Jersey, Inc.,* 595 A.2d 398 (D.C. 1991)........................16

*McDonald v. American Red Cross,* 505 F. Supp. 2d 143 (D.D.C. 2007)..............16

*McGhee v. Biggs*, 974 So. 2d 524 (Fla. 4th DCA 2008)........................................17

*Metro. Wash. Airports Auth. Prof'l Firefighters Local 3217 v. Metro. Washington Airports Auth.*, 159 F.3d 630 (D.C. Cir. 1998) .............................4

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984) .......................4

*Mitchell v. Bogue*, 196 So. 306 (Fla. 1940) ........................................................14

*The Navajo Nation v. Peabody Holding Co., Inc.*, 255 F.R.D. 37 (D.D.C. 2008) ...........................................................................3

*Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53 (D.D.C. 2007) ...............10

*O'Bryan v. Holy See*, 556 F.3d 361 (6th Cir. 2009) .............................................20

*Ocean Line Holdings Ltd. v. China Nat. Chartering Corp.*, 578 F. Supp. 2d 621 (S.D.N.Y. 2008) .....................................................24, 25

*Oveissi v. Islamic Republic of Iran*, 498 F. Supp. 2d 268 (D.D.C. 2007) ............11

*Pardo v. Wilson Line of Washington, Inc.*, 414 F.2d 1145 (D.C. Cir. 1969).........16

*Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir. 1984) ................20

*Peterson v. Islamic Republic of Iran*, 2008 WL 5046327 (N. D. Cal. 2008) ........15

*Phoenix Consulting, Inc. v. Republic of Angola*, 35 F. Supp. 2d 14 (D.D.C. 1999) .................................................................10

*Plaut* v. *Spendthrift Farm, Inc.,* 514 U.S. 211 (1995) ........................................7, 8

*Practical Concepts, Inc.* v. *Republic of Bolivia*, 811 F.2d 1543
    (D.C. Cir. 1987) ...................................................................................12

*Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986) .........................15

*Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181 (D.D.C. 2008) ............24

*\*Roeder v. Islamic Republic of Iran*, 195 F. Supp. 2d 140 (D.D.C. 2002)..............2

*Rubin v. Islamic Republic of Iran*, 408 F. Supp. 2d 549 (N.D. Ill. 2005)..............15

*Rubin v. Islamic Republic of Iran,* 456 F. Supp. 2d 228 (D. Mass. 2006)............15

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) ........................................................21

*Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230 .................2
    (D.C. Cir. 2003)

*Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*,
    280 F. Supp. 2d 314 (S.D.N.Y. 2003)...............................................................1

*\*St. Laurent v. Ambrose*, 991 F.2d 672 (11th Cir. 1993) ...................................4, 5

*Sterling Factors Corp. v. U.S. Bank Nat'l Assoc.*,
    968 So. 2d 658 (Fla. 2d DCA 2007) ..............................................................17

*Tallentire v. Burkhart,* 14 So.2d 395 (Fla. 1943) ..................................................14

*In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008) ........21

*TMR Energy Ltd. v. State Property Fund of Ukraine*,
    11 F.3d 296 (D.C. Cir. 2005) .......................................................................12

*\*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
    30 F.3d 148 (D.C. Cir. 1994) ...............................................................11, 12

*Underwood v. United Republic of Tanzania*,
    995 WL 46383 (D.D.C. Jan. 27, 1995) .........................................................11

*\*Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident &*
    *Health Ins. Guaranty Ass'n*, 455 U.S. 691 (1982) ..........................................16

*Ungar v. Palestinian Auth.*, 304 F. Supp. 2d 232 (D.R.I. 2004) ............................6

*U.S. v. Holy Land Found. For Relief & Dev.*, 445 F.3d 771
    (5th Cir. 2006).............................................................................................1, 6

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) ........................12

*Von Dardel v. Union of Soviet Socialist Republics*,
    736 F. Supp. 1 (D.D.C. 1990) ......................................................................20

*Walker Int'l Holdings Ltd. v. Rep. of Congo*, 395 F.3d 229 (5th Cir. 2004) .........15

*Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006) ....................1, 3, 5, 15

*\*Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63 (E.D.N.Y. 2004) ...8, 9

*Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933 (Fla. 4th DCA 2004).....................17

*Williams v. Cadlerock Joint Venture, L.P.*,
    980 So. 2d 1241 (Fla. 4th DCA 2008)............................................................17

*Wilmington Trust v. U.S. Dist. Court, Dist. of Hawaii*,
    934 F.2d 1026 (9th Cir. 1991) .......................................................................15

*Wright v. Lewis*, 870 So. 2d 179 (Fla. 4th DCA 2004)..........................................18

*Zoning Bd. of Monroe County v. Hood*, 484 So. 2d 1331 (Fla. 3d DCA 1986) ....14

**Statutes**

28 U.S.C. § 1330...............................................................................................12
28 U.S.C. § 1603........................................................................................22, 23
28 U.S.C. § 1604...............................................................................................17
28 U.S.C. § 1605...................................................................................... *passim*
28 U.S.C. § 1608.................................................................................1, 10, 12
28 U.S.C. § 1609..........................................................................2, 5, 15, 22
28 U.S.C. § 1610.................................................................................1, 15, 21

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297,
    116 Stat. 2322 (2002)............................................................................. *passim*

**Regulations**

31 C.F.R. § 515.201 ...........................................................................................2
31 C.F.R. § 515.302 ...........................................................................................2
31 C.F.R. § 515.310 ...........................................................................................2

**Rules**

Fed. R. Civ. P. 79 ..................................................................................1

Federal Rules of Evidence 702 ...........................................................23

**Legislative/Administrative Materials**

H.R. 2975, 107th Cong. (1st Sess. 2001) ...............................................7
H.R. 3210, 107th Cong. (1st Sess. 2001) ..........................................6, 7
H.R. 3357, 107th Cong. (1st Sess. 2001) ..........................................6, 7
H.R. 3485, 106th Cong. (2d Sess. 2000) ...............................................7

S. 1772, 107th Cong. (1st Sess. Dec. 5, 2001) .......................................7
S. 2134, 107th Cong. (2d Sess. Apr. 16, 2002) .....................................7
S. 2600, 107th Cong. (2d Sess. July 25, 2002) ......................................7

H.R. Rep. 107-300, pt. 1 (2001) ............................................................6

147 Cong. Rec. H8576 (daily ed. Nov. 29, 2001.) .................................7
147 Cong. Rec. H8593 (daily ed. Nov. 29, 2001) .................................7
148 Cong. Rec. H6135, H6136 (daily ed. Sept. 10, 2002) .....................6
148 Cong. Rec. S2726 (daily ed. Apr. 16, 2002) ...................................7
148 Cong. Rec. S11528 (daily ed. Nov. 19, 2002) ...............................14

Exec. Order No. 13,224, Fed. Reg. 49,079 (Sept. 23, 2001) ..................6

**Other Materials**

32A Fla. Jur. 2d, *Judgments and Decrees* § 294 ..................................18

Central Intelligence Agency, *Chiefs of State & Cabinet Members*,
    (Dec. 2008) ...................................................................................10

Movants respectfully submit this reply memorandum in further support of their motion to vacate the Writ of Attachment on Judgment (Dkt. 10), and in opposition to Plaintiff's cross-motion for an order authorizing the Writ *nunc pro tunc* (Dkt. 25, at 7).

## I.      The Writ Was Issued  Without Court Order, In Violation of the FSIA

In the first of many astonishing suggestions, Plaintiff maintains that he complied with the Foreign Sovereign Immunities Act's requirement of a court order because "Witness the Honorable Chief Judge," appearing over the Clerk's signature on the Writ, evidences that the Chief Judge ordered its issuance.  P. 7.  Yet, the same exact words appear on the writs vacated for having been issued by the Clerk *without court order* in the very cases cited by Movants.  *See* Reich Declaration ("Reich Dec."), dated Jan. 26, 2010, Ex. A. No order was entered on the docket, as would have been required by Fed. R. Civ. P. 79(a)(2).  Plaintiff protests good faith but, be that as it may, there has been no compliance with FSIA § 1610(c)'s requirement of a court order. *See* Movants Mem. (Dkt. 10; "Mem.") 6-9.

Plaintiff suggests that the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, § 201, 116 Stat. 2322, 2337 (2002), eliminated the FSIA requirement, but the authority is uniform that TRIA's "notwithstanding any other provision of law" clause *only* concerns laws conferring sovereign or diplomatic immunity from execution, and the Executive's prohibition against execution on property subject to the President's Trading With the Enemy Act ("TWEA"), 50 U.S.C. App. § 5(b), or International Emergency Economic Powers Act ("IEEPA"), 50 US.C. § 1702, authority.[1]  In contrast, FSIA § 1608(c) is a *procedural* requirement to determine

---

[1] *See U.S. v. Holy Land Found. For Relief & Dev.*, 445 F.3d 771, 787 (5th Cir. 2006) (agreeing with U.S. that clause does not "preempt[], trump[], or otherwise interfere[]" with provisions that that "do not involve … FSIA immunity from execution[]"), *vacated on other grounds*, 493 F.3d 469 (2007) (en banc); *Hill v. Republic of Iraq*, 2003 WL 21057173, at *2 (D.D.C. Mar. 11, 2003); *Weininger v. Castro*, 462 F. Supp. 2d 457, 488-89 (S.D.N.Y. 2006); *Smith ex rel. Estate*

*whether* any exceptions to immunity, including TRIA, applies.

## II.     The Cuban Assets Control Regulations and the FSIA Bar the Writ

1.      Plaintiff relies exclusively upon TRIA to overcome the Cuban Assets Control

Regulations ("CACR")'s prohibition against execution on property in which a Cuban "national"

has an interest, 31 C.F.R. §§ 515.201(b); 515.302; 515.310, and FSIA § 1609's immunity of an

"agency or instrumentality's" property from execution.  *See* Mem. 8-21.  TRIA applies when "a

person has obtained a judgment … on a claim" for which a designated state sponsor of terrorism

"is not immune under [FSIA] section 1605(a)(7)."  Movants have shown that Jerez's judgment is

not on such a claim for three reasons:  Jerez was not a U.S. national at the time of the acts sued

upon; he did not offer arbitration to Cuba; and the Secretary of State did not designate Cuba as a

state sponsor of terrorism "as a result of" its treatment of Jerez, which pre-dated the designation.

*See* Mem. 9-12.  Jerez does *not* respond by asserting that he was a U.S. national at the time of

acts sued upon or that he offered arbitration.[2]

As to the "as a result of" requirement, Movants have provided the State Department's

publicly stated reasons for the designation, which have nothing to do with Jerez but exclusively

concern Cuba's support for insurgencies in third-counries.  Mem. 10-12.  Jerez does not offer

alternative government explanations. This is dispositive.  *See Roeder v. Islamic Republic of Iran*,

195 F. Supp. 2d 140, 160 (D.D.C. 2002), *aff'd*., 333 F.3d 228 (D.C. Cir. 2003) (State

---

*of Smith v. Fed. Reserve Bank of N.Y.*, 280 F. Supp. 2d 314, 319 (S.D.N.Y. 2003), *aff'd*, 346 F.3d
264 (2d Cir.).  *See generally D.C. Fed. of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1265 (D.C. Cir.
1972) ("notwithstanding" clauses only displace laws on same subject matter, not generally
applicable laws).
[2] As are § 1605(a)(7)'s other requirements, the arbitration requirement is jurisdictional. *See
Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 233 (D.C. Cir. 2003)
("Section 1605(a)(7) contains as a jurisdictional requirement that the claimant ... afford[ ] the
foreign state a reasonable opportunity to arbitrate" if "the act occurred in the foreign state[ ]");
*Cicippio-Puleo v. Islamic Republic of Iran,* 353 F.3d 1024, 1028-29 (D.C. Cir. 2004).

2

Department's public record controls).

Jerez's assertion that three courts have "expressly held" that the Republic of Cuba "was designated as a state sponsor of terrorism, in whole or in part, by reasons of its conduct dating back to 1960," P. 23 n.28, is simply wrong.[3]  It is also irrelevant:  the designation must be "as a result of" the acts sued upon, not on account of more or less contemporaneous "conduct."

Jerez suggests that there is no need to consider FSIA § 1605(a)(7)'s applicability because that issue is settled by issue preclusion.  First, under the dispositive preclusion principles operative in Florida (as elsewhere), invocation of a prior judgment for issue preclusion *requires* the court to decide whether the prior judgment was by a court of "competent jurisdiction." *See, e.g., Brown v. R.J. Reynolds Tobacco Co.*, 576 F. Supp. 2d 1328, 1339-40 (M.D. Fla. 2008) (citing numerous cases establishing that a judgment can be preclusive only if rendered by a court of "competent jurisdiction;" that whether the rendering court had jurisdiction is for court considering judgment's preclusive effect; and that a party seeking preclusion must establish rendering court's jurisdiction ); *see also The Navajo Nation v. Peabody Holding Co., Inc.*, 255 F.R.D. 37, 45 (D.D.C. 2009) (Kay, Mag. J.) (prior rulings entitled to preclusive effect only

_____

[3] The Florida state courts issuing the default *McCarthy* and *Weininger* judgments did not reference the "as a result of" requirement, let alone find that the Secretary designated Cuba "as a result of" the acts sued upon there ("extrajudicial killings" of two U.S. citizens in 1960-61). In *Weininger*, 462 F. Supp. 2d at 474-75, the court expressly declined to inquire into the § 1605(a)(7) jurisdiction of those courts, and also declined to itself consider the "as a result of" requirement, because (unlike here) no party with an interest in the property appeared to contest execution.  The other courts that enforced or gave "full faith and credit" to the *McCarthy* and *Weininger* judgments likewise did not inquire into the rendering courts' jurisdiction or address the "as a result of" requirement.  *See* Reich Dec., Exs. B-F, O.

Plaintiff seeks to enlist the United States in support of its position, but the Justice Department's letter in *Weininger* merely advised that an OFAC license was required unless the Court found TRIA applicable (Dkt. 25-6, Ex. H), and the *Weining*er Court did not find the letter otherwise significant.  *Weininger*, 462 F. Supp. 2d at 474**.**  If this Court has doubts, it should request the U.S. to advise whether the Secretary designated Cuba "as a result" of the Jerez matter.

""[w]here a court has jurisdiction").[4]  Additionally, Movants can, and have, attacked the

jurisdiction of the rendering court under FSIA §1605(a)(7), Mem. 21-28, and, for that

independent reason as well, there is no issue preclusion.

Second,  FSIA § 1605(a)(7) was not "actually litigated," "actually determined," or

"necessarily decided" as required by Florida preclusion law.  *See, e.g., St. Laurent v. Ambrose*,

991 F.2d 672, 676 (11th Cir. 1993) (under Florida law, findings of fact or law have preclusive

effect only if they were "actually litigated in the prior proceeding [and] a critical and necessary

part of the judgment in that earlier decision"); *Brown,* 576 F. Supp. 2d at 1339 (Florida law

requires that "an issue of fact or law is actually litigated and determined by a valid and final

judgment, and the determination is essential to the judgment") (citing cases).

Jerez *abandoned* any reliance on FSIA § 1605(a)(7) in the Florida action.  After alleging

FSIA § 1605(a)(7) in his Complaint, Reich Dec., Ex. M, part 1, Jerez submitted a "Trial

Memorandum," Reich Dec., Ex. G, at 2, that exclusively asserted that "this Court has jurisdiction

over the claims asserted by Mr. Jerez pursuant to the Alien Tort Claims Act, 28 U.S.C. § and 28

U.S.C. § 1331," and nowhere made mention of  FSIA § 1605(a)(7) or the FSIA.   The state court

adopted Jerez's trial memorandum in its entirety, virtually word for word, as its judgment (Dkt.

10-2, Ex. B), and made no reference to the  FSIA.

Likewise, in granting a "full faith and effect" judgment by default, the federal court made

no reference to FSIA § 1605(a)(7) (or the FSIA), and neither referred to nor made inquiry into

the state court's jurisdiction; thus, it made no determination to which issue preclusion might

---

[4] Federal courts must "give the same preclusive effect to state court judgments that those
judgments would be given in the courts of the State from which the judgments emerged." *Baker
v. Gen. Motors Corp.*, 522 U.S. 222, 246 (1998); *see also Migra v. Warren City School Dist. Bd.
of Educ.*, 465 U.S. 75, 81 (1984); *Metro. Wash. Airports Auth. Prof'l Firefighters Local 3217 v.
Metro. Washington Airports Auth.*, 159 F.3d 630, 632 (D.C. Cir. 1998).

attach.  Further, athough Jerez's federal complaint (Reich Dec., Ex. H, Dkt. 1) alleged (falsely)

that the state court judgment was entered pursuant to FSIA § 1605(a)(7), it attached the state

court judgment, which exclusively asserted different jurisdictional bases. When there are

alternative possible grounds for a decision, there is no preclusive effect, since the issue is not

"actually litigated," "actually determined," or "necessarily determined."  *See, e.g.*, *St. Laurent*,

991 F.2d at 676; *Brown,* 576 F. Supp. 2d at 1341-44 (citing cases).[5]

   2.  In addition to relying upon the part of TRIA that applies to judgments on claims

for which Cuba is not immune under FSIA § 1605(a)(7), Plaintiff relies upon the part of TRIA

concerning judgments "against a terrorist party on a claim based on an act of terrorism."  It too is

inapplicable.  As the court in *Weininger v. Castro*, 462 F. Supp.2d at 480, explained:

> "Act of terrorism" is defined [in TRIA] by reference to other statutes, and Plaintiffs
> suggest that they also have judgments based on an act of terrorism as defined in those
> statutes. However, if a foreign sovereign was immune from judgment under § 1605(a)(7),
> reading "a claim based on an act of terrorism" to include those foreign sovereigns would
> defeat that very immunity and create a whole new category of jurisdiction over otherwise
> immune sovereigns. This Court has before it no indication that this application reflects
> Congress's intent in passing TRIA, an execution statute. It is possible that such language
> was designed to refer to terrorist acts by non-state actors, and not to state sponsors of
> terrorism such as Cuba. Alternatively, the reference to "claims based upon an act of
> terrorism" may, as [JP Morgan, the garnishee] suggests, be meant to authorize execution
> where the jurisdictional basis for the judgment to be enforced is a subsection of 28 U.S.C.
> § 1605(a) other than § 1605(a)(7).

The judgment here is against a designated state, not a non-state actor, and there is no possible

jurisdictional basis for the judgment other than § 1605(a)(7).[6]

---

[5] *Claim* preclusion (res judicata), even it were applicable here (which it is not, because
jurisdictional challenges to a default judgment are presented), would only bar relitigation of
plaintiff's claim against the Republic of Cuba, not bar litigation of whether TRIA permits
*execution* of Plaintiff's judgment on that claim notwithstanding the CACR and FSIA § 1609
immunity from execution.  Resolution of the TRIA issue requires determining whether FSIA §
1605(a)(7) applies to Jerez's claim.

[6] Although the *Weininger* court had no need to rule on the scope of TRIA's "act of terrorism"
prong, its analysis is compelling, and there is no contrary authority. TRIA "act of terrorism"

Just as *Weininger* suggests, there is no indication that Congress intended the "act of terrorism" prong to apply to judgments against  foreign states.  Congress simply joined two distinct provisions with different histories and objectives in a single section – the 1605(a)(7) prong, for designated foreign states, and the "act of terrorism" prong, for non-state actors.

The House adopted the "act of terrorism" prong in response to the September 11, 2001 attacks by non-state actors.  Within weeks of the attacks and the President freezing the assets of Al Qaida and other non-state terrorist actors (Executive Order No. 13,224, Fed. Reg. 49,079 (Sept. 23, 2001)), Rep. Watt offered what became the TRIA "act of terrorism" prong:  that "[a]ll assets of terrorists or terrorist organizations seized or frozen by the United States in accordance with law shall be liable for satisfaction of judgments rendered for acts of terrorism, in proportions determined by the courts."  H.R. 3210, §15(f), 107th Cong. (1st Sess. 2001), reported out by the Comm. on Financial Services, H.R. Rep. 107-300, pt. 1, at 9 (2001).  By its terms, the provision did not apply to foreign states but to "terrorists or terrorist organizations."  Rep. Watt explained that the provision addressed the "feeling of helplessness that all of us had in the aftermath of the events of September 11 and the feeling that … if the Federal Government was going to freeze assets of terrorists and terrorist groups, that it should not necessarily be the Federal Government that benefited from freezing those assets, but that those assets ultimately should be available to the individuals whose lives had been taken, the families…who had been injured by acts of terrorism."   148 Cong. Rec. H6135, H6136 (daily ed. Sept. 10, 2002).

In H.R. 3357, 107th Congress (1st Sess. 2001), eventually enacted as TRIA, the House adopted the Watt provision but added the FSIA § 1605(a)(7) prong, an addition that is explained by the "act of terrorism" prong not encompassing state actors.  Rep. Cannon explained that H.R.

---

cases have concerned non-state actors. *See, e.g.*, *Ungar v. Palestinian Auth.*, 304 F. Supp. 2d 232 (D.R.I. 2004); *U.S. v. Holy Land Found. For Relief & Dev.*, 445 F.3d 771 (5th Cir. 2006).

3357, §15(e), was intended to "expand" the Watt proposal, which exclusively addressed satisfaction of judgments against "terrorists and terrorist organizations," by enacting as well a different, prior proposal (H.R. 3485, 106th Cong. (2d Sess. 2000) and H.R. 2975, 107th Cong. § 705 (1st Sess. 2001)) that exclusively concerned FSIA § 1605(a)(7) judgments against foreign states.  147 Cong. Rec. H8576 (daily ed. Nov. 29, 2001.)[7]

The above suffices, but, in addition, construction of the "act of terrorism" prong to encompass designated states would render the 1605(a)(7) prong "without effect," *Plaut* v. *Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), a "result to be avoided if possible." *Id*. at 216.  The foreign states subject to TRIA are those designated as state sponsors of terrorism pursuant to specified statutes (that is, states that have "repeatedly provided support for acts of international terrorism").  TRIA § 201(d)(4).  If the "act of terrorism" prong applies to those states, it would cover every judgment for which they would not be immune under FSIA § 1605(a)(7):  the categories covered under that provision, a designated state's acts of "torture, extrajudicial killing, aircraft sabotage and hostage taking, or the provision of material support or resources … for such act," would also be "acts of terrorism" under the "act of terrorism" prong.[8]  "A cardinal

_____

[7] H.R. 3357 was adopted as H.R. 3210, with H.R. 3357 having been approved as a substitute amendment. 147 Cong. Rec. H8593 (daily ed. Nov. 29, 2001). The Senate bills followed H.R. 3485, as adopted by the House.  *See* S. 1772, 107th Cong. (1st Sess. Dec. 5, 2001) (referred to Comm. on the Judiciary); 148 Cong. Rec. S2726 (daily ed. Apr. 16, 2002); S. 2134, 107th Cong. (2d Sess. Apr. 16, 2002) (reported out of the Comm. on the Judiciary, June 27, 2002); S. 2600, 107th Cong. (2d Sess. July 25, 2002) (Senate incorporated measure into H.R. 3210).

[8] TRIA defines an "act of terrorism" to be either an act certified by the Secretary of State pursuant to TRIA § 102(1) or, if not certified, "any terrorist activity (as defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. 1182(3)(B)(iii))." The referenced provision of the Immigration and Nationality Act defines "terrorist activity" in a manner that would include any act covered by 1605(a)(7):  acts which are unlawful under the laws of the place where committed or, if it had been committed in the United States, would be unlawful under the laws of the United States or any State, and which involves any of the following: the hijacking or sabotage of any conveyance (including an aircraft, vessel or vehicle); the seizing or detaining, and threatening to kill, injure or continue to detain, another individual in

principle of interpretation requires us to construe a statute 'so that no provision is rendered

inoperative or superfluous, void or insignificant,'" *Asiana Airlines v. FAA*, 134 F.3d 393, 398

(D.C. Cir. 1998) (quoting *C.F. Commnications Corp. v. FCC*, 128 F.3d 735, 739 (D.C. Cir.

1997)).  The TRIA's "act of terrorism" prong cannot be interpreted to allow for execution upon

judgments against designated states because to do so would  render the 1605(a)(7) prong

"without effect", *Plaut*, 514 U.S. at 216, "superfluous" or "insignificant," *Asiana Airlines*, 134

F.3d at 398.  A different interpretation is "possible," and therefore required, *Plaut*, 514 U.S. at

216.  It is, moreover, mandated by Congress' intent as confirmed by the legislative history.

       3.     The trademark registrations are not the type of property within TRIA's scope

because they are not "frozen" and also because they are subject to OFAC license. *See* Mem. 15-

20.  Plaintiff does not contest that:  (a) the CACR authorize Cuban companies to acquire

trademark registrations; (b) the CACR authorize them to surrender their registrations; (c) the

Cuban companies may use their registered trademarks in advertisements; (d) the CACR do not

prohibit use of registered trademarks on products lawfully sold here; and (e) execution would

conflict with the Executive's foreign policy decision to obtain protection for U.S. trademarks in

Cuba.  Given this, the registrations are not property within the scope of TRIA.

       Plaintiff advances, without supporting authority, the same construction of TRIA that the

court in *Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63 (E.D.N.Y. 2004), rejected in a

"persuasive analysis," *Bank of New York v. Rubin*, 484 F.3d 149, 150 (2d Cir. 2007), *and* that the

---

order to compel a third person (including a governmental organization) to do or abstain from
doing any act as an explicit or implicit condition for the release of the individual seized or
detained; a violent attack upon an internationally protected person (as defined in section
12116(b)(4) of Title 18) or upon the liberty of such a person; an assassination; the use of any
biological agent, chemical agent or nuclear weapon or device, explosive, firearm, or other
weapon or dangerous device (other than for mere personal monetary gain), with intent to
endanger, directly or indirectly, the safety of one or more individuals or to cause substantial
damage to property; or a threat, attempt, or conspiracy to do any of the foregoing.

United States opposes as well, *see* Statement of Interest (March 7, 2003) ("Statement") in

*Weinstein* (Reich Dec., Ex. I).  In *Weinstein*, the court agreed with the United States in rejecting

> plaintiffs' argument that assets 'regulated' or 'licensed' by the OFAC under the IEEPA are 'blocked assets' as that term is clearly defined in the TRIA to mean an asset 'seized or frozen'. … Plaintiffs' interpretation of 'blocked assets' ignores the limitation imposed by the definition itself. … Given that not every type of action authorized by IEEPA necessarily involves a seizing or freezing of property, it follows that not every action regarding property under the authority of the IEEPA, including assets that may be 'regulated' or licensed,' results in the property being 'blocked' under the TRIA. … [T]he term 'blocked' under the TRIA is specifically limited to assets that are 'seized or frozen' – a limitation that this Court cannot ignore.

299 F. Supp. 2d at 73*, 75.  Rather, property is not "frozen" within TRIA unless OFAC has

imposed an "across-the-board prohibition against transfers or transactions of any kind with

regard to the property."  *Id.* at 75; *see also* Statement 18-24.[9]

　　Moreover, the United States agrees with Movants that the historic purpose of "freezing"

programs and usage of the term is that of "actually placing assets at the disposal of the President"

for use in resolving differences with another state. Statement 19-21. This is the "key ingredient,"

and different than "merely regulating economic activity." Statement 20-21. Cuban trademark

registrations are merely regulated; and the United States has not licensed the registration of

Cuban trademarks, or permitted their use, so that the President may use them to compensate U.S.

---

[9] The United States has made clear that, contrary to Jerez's suggestion, OFAC considers the "freezing" of assets to be the imposition of an "*across-the board* prohibition against transfers or transactions of *any kind* with regard to the property," *Weinstein*, 299 F. Supp. 2d at 75 (emphasis added); *see also* Statement 19.

　　Plaintiff equates the CACR's treatment of trademark registrations and the inheritances of Cuban heirs, but the CACR license the creation of registrations, whereas it freezes existing property and licenses only adminstrative acts needed for their preservation in the case of inheritances; the CACR authorize the surrender of registrations but prohibit the surrender of inheritances; registered trademarks can be used now in advertising, and upon products when the trade embargo ends, whereas inheritances are unusable now and cannot be used after the trade embargo without further license; the CACR provisions on inheritances do not reflect a foreign policy decision to elicit reciprocal treatment of U.S. property.

claimants or as a "bargaining chip" but to obtain Cuban protection of U.S. trademarks.

### III.    The Judgment Is Unenforceable for Lack of Effective Service

For his proof of service upon the Republic of Cuba in the federal "full faith and credit"

action, Jerez relied on DHL package 8621403630. (Reich Dec., Ex. J, Dkt. 19). Movants have

just obtained from DHL in the United States the Waybill for this package (Reich Dec., Ex. J). It

states that package 8621403630 was sent to "The R[e]public of Cuba c/o Raul Castro Ruz acting

President & Counsel of State, Calzado 360, Vedado, Havana, Cuba 11100." Although that is the

address of Cuba's Foreign Ministry, Raul Castro Ruz was not the Head of the Foreign Ministry

(nor did he work at the Foreign Ministry). *See* Central Intelligence Agency, *Chiefs of State &*

*Cabinet Members*, at 28-29 (Dec. 2008), *at https://www.cia.gov/library/publications/world-*

*leaders-1/pdf-version/December2008Chiefs Directory.pdf.* Plaintiff acknowledged this in

addressing the package to him as "acting President & Counsel of State." Thus, as explained

below, Plaintiff did not effect service because FSIA § 1608(a)(3) requires that service be

addressed to the Head of the Foreign Ministry.

The "Clerk's Notice of International Service" (Reich Dec., Ex. H, Dkt. 3) certifies that

before the above DHL package, a different package was sent to "The Republic of Cuba c/o The

Head of El Ministerio De La Relaciones Exteriores Calzado 360, Vedado, Havana, Cuba 11100"

(*i.e.*, the Head of the Ministry of Foreign Relations). However, there is no proof that this DHL

package was ever delivered. That it was *not* is confirmed by the fact that Plaintiff subsequently

sent out a second DHL package, the one discussed above.[10]

---

[10] There must be documentary evidence that the service documents were actually received; it is
not sufficient to show that they were sent. *See, e.g., Nikbin v. Islamic Republic of Iran*, 471 F.
Supp. 2d 53, 68 (D.D.C. 2007) (service defective where service documents never signed for by a
foreign ministry official or employee); *Phoenix Consulting, Inc. v. Republic of Angola*, 35 F.
Supp. 2d 14, 17-18 (D.D.C. 1999) ("active participation of both the dispatcher and the recipient"

It is settled that to be effective under the FSIA, service upon a foreign state *must be adressed to the Head of the Foreign Ministry*.  In *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153-54 (D.C. Cir. 1994), the Court of Appeals held that service had not been effected despite the fact that it had been addressed to the Bolivian Ambassador in Washington, D.C. and to the Bolivian First Minister in Bolivia.  The authority is legion.[11]  Here, the DHL package addressed to the Head of the Foreign Ministry was not delivered, and Jerez relied for service upon a DHL package addressed to Raul Castro Ruz, not the Foreign Minister.[12]

The federal court therefore lacked personal jurisdiction and its judgment, registered here,

---

required), *rev'd on other grounds*, 216 F.3d 36 (D.C. Cir. 2000); *Underwood v. United Republic of Tanzania*, 1995 WL 46383, at *2 (D.D.C. Jan. 27, 1995) ("Service is not complete until … receipt as indicated in the certification, return receipt or other proof of service.").

Tracking evidence from DHL indicating delivery would not be sufficient - proof of an actual signature by the recepient is required - but here, there is not even DHL information indicating delivery.  *See, e.g., Oveissi v. Islamic Republic of Iran*, 498 F. Supp. 2d 268, 271 (D.D.C. 2007) (proof of service inadequate where "DHL receipt [filed by plaintiff] did not bear defendants' signatures"), *rev'd on other grounds*, 573 F.3d 835 (D.C. Cir. 2009);  *Gates v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 86 (D.D.C. 2009) ("Because [DHL] tracking evidence does not contain the signature of the recipient, it would not provide the proof of actual delivery[.]); *Abur v Republic of Sudan*, 437 F. Supp. 2d 166, 173 (D.D.C. 2006) (adequate service because plaintiffs provided signed DHL delivery logs).

[11] *See, e.g.*, *Ellenbogen v. Canadian Embassy*, 2005 WL 3211428, at *2 (D.D.C. Nov. 9, 2005) ("Service of process upon an embassy . . . rather than upon the head of the ministry of foreign affairs does not meet the requirements set forth in § 1608(a)(3)."); *Magness v. Russian Fed'n*, 247 F.3d 609, 615 (5th Cir. 2001) (service directed to the president of the Russian Federation and to the Russian Deputy Minister of Culture did not satisfy § 1608(a)(3)); *Lewis & Kennedy, Inc. v. Permanent Mission of Republic of Botswana to the United Nations*, 2005 WL 1621342, at *3 (S.D.N.Y. July 12, 2005) (service ineffective where did not address mailings to head of the ministry of foreign affairs).

[12] Plaintiff's Motion for Entry of Default against the Republic of Cuba relied exclusively on Plaintiff's Notice Of Filing Proof Of Service Upon Defendant Raul Castro Ruz, and Plaintiff's Motion for Final Default Judgment relied upon the purported Proof of Service on the Republic of Cuba, that is, the proof showing DHL package 8621403630 to Raul Castro Ruz.  See Reich Dec., Ex. H, Dkts. 27 and 7, 31 and 19).

As in the S.D. Fla. action, Jerez has purported to serve the Republic of Cuba in both this and in his Eastern District of Virginia execution proceedings by sending a DHL package addressed to Raul Castro Ruz, not the Head of the Foreign Ministry, at the Ministry's address. See Dkt. 2 (at 13), 2-3 (at 2), 3 (at 13), 3-3 (at 2), 4 (at 3), 5 (at 4); Reich Dec., Ex. K.

is unenforceable.  Personal jurisdiction over a foreign state requires "strict adherence" to FSIA § 1608.  *Transaero*, 30 F.3d at 154.[13]

In addition to the foregoing, service was defective because there is no evidence as to what documents were included in the package given to DHL for delivery to Raul Castro Ruz (or in any of the other packages.)  All that the Clerk certified is that "documents" have been mailed via DHL.  Service is defective if plaintiff failed to include all documents required pursuant to 1608(a)(3).  *See, e.g.*, *Ellenbogen*, 2005 WL 3211428, at *2; *Lewis & Kennedy, Inc.*, 2005 WL 1621342, at *4-5.

## IV.     Plaintiff's Failure To Serve The Default Judgments Precludes Execution

There is no proof that Plaintiff served the Republic of Cuba with either the state court or the federal default judgments. (Although the court's handwritten note on the latter indicates that a copy of the judgment should be sent "to Defendants, pursuant to 28 U.S.C. § 1608(e)", there is no proof this was done.)  FSIA § 1608(e) provides that "[a] copy of any … default judgment shall be sent to the foreign state … in the manner prescribed for service [of process] in this section."  Plaintiff's failure to comply with that provision precludes execution.  *See LeDonne v. Gulf Air, Inc.*, 700 F. Supp. 1400, 1414 (E.D. Va. 1988) ("Plaintiff's failure ... contravenes the requirements of the FSIA and, therefore, deprives this Court of the power to enforce" judgment).

## V.     The Rendering Court Did Not Have Jurisdiction Under the FSIA

1.      If the foregoing dispositive arguments are rejected, then the Court must address whether the Florida state court had jurisdiction under the FSIA.  As shown, Point I, its jurisdiction could not rest upon FSIA § 1605(a)(7), and the state court made no pretense that it

---

[13] Under the FSIA, personal jurisdiction requires service "under section 1608." See 28 U.S.C. § 1330(b); 28 U.S.C. § 1608(a); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 485 n.5 (1983); *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296, 299 (D.C. Cir. 2005); *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987).

did.  Movants have shown that the statutes relied upon by the state court (the Alien Tort Claim

Act, 28 U.S.C. § 1350, and federal question jurisdiction, 28 U.S.C. § 1331) did not provide

jurisdiction, Mem. 22-23, and Plaintiff appears to have abandoned any reliance upon them.  The

federal judgment is unenforceable because the state court lacked jurisdiction, and because the

federal court lacked personal jurisdiction for lack of proper service.  In Point VII, *infra*, Movants

address Plaintiff's jurisdictional argument based on a claim never made in the state court, upon

which it did not obtain judgment, and for which there is no supporting evidence in the state court

– that the Cuban Government purposefully injected him with Hepatitis C virus.

      2.      Jerez concedes, as he must, that the Republic of Cuba has standing to collaterally

attack the state default judgment for lack of personal and subject matter jurisdiction.  *See* P. 17-

18; *Jerez v. Republic of Cuba*, No. 09mc38 (E.D. Va.) (Jan. 8, 2010 Hearing at 13-14) (Reich

Dec., Ex. L); Mem. 24-25 (citing cases); *see also American. Steel Bldg. Co., Inc. v. Davidson &*

*Richardson Const. Co*., 847 F.2d 1519, 1521-22 (11th Cir. 1988) ("where *the defendant does not*

*appear, and judgment is by default*, the state court judgment *does not preclude* the federal court

from reviewing the jurisdictional issues").[14]  Because the Republic of Cuba can attack the state

default judgment, so can the Movants.  *See* Mem. at 25-28.  In asserting the contrary, Jerez

misstates the legal principles and the cases he cites, and relies on *contested, non-default*

judgment cases, or cases that did not involve *jurisdictional* collateral attack, which are simply

irrelevant to the doctrine that permits *jurisdictional* collateral attacks on *default* judgments.

      To obtain execution, Jerez relies on TRIA.  If TRIA applies, however, then Movants are

entitled to assert the same jurisdictional objections that the Republic of Cuba may assert, because

---

[14]  No case supports Jerez's suggestion that obtaining a "full faith and credit" judgment in federal court by default immunizes the state court's judgment from jurisdictional attack in a subsequent enforcement proceeding.  P. 17, 23 n.29.  Jerez's position obviously would nullify the Supreme Court's jurisdictional collateral attack doctrine.

TRIA, for purposes of execution, eliminates the juridical distinction between a foreign state and its agencies and instrumentalities recognized by *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611 (1983). TRIA provides that "the blocked assets of that terrorist party *(including the blocked assets of any agency or instrumentality of that terrorist party)*, shall be subject to execution." TRIA's legislative history makes this point explicitly: "For purposes of enforcing a judgment against a terrorist state, [TRIA] *does not recognize any juridical distinction* between a terrorist state and its agencies or instrumentalities." 148 Cong. Rec. S11528 (Nov. 19, 2002) (emphasis added).

Thus, execution under TRIA is necessarily identical to other situations when agencies or instrumentalities are considered *alter egos* of the foreign state, in which courts routinely recognize that such *alter egos* stand in the shoes of the defaulting foreign state, and can assert the state's defenses to execution. *See* Mem. at 26 (discussing four such FSIA cases).[15] Likewise, Florida law recognizes the rights of interested third parties to collaterally attack default judgments on jurisdictional grounds in enforcement proceedings. *See* Mem. 27-28.[16]

None of the third party cases upon which Jerez relies, P. 19-20, involved an attack on

_____

[15] Jerez's attempt to distinguish these four FSIA cases, P. 20 n.25, misses the critical point in each of these cases: an *alter ego*, or non-juridically separate state agency or instrumentality, is entitled to raise the *same* defenses to execution as the foreign state, here the defense that the rendering state court lacked subject matter and personal jurisdiction over the foreign state.

[16] This principle is a corollary of "the law of this State" that "strangers are entitled to impeach a judgment .... whenever it is attempted to be enforced against them so as to affect rights or interests acquired prior to its rendition," for lack of subject matter or personal jurisdiction. *Gaylord v. Gaylord*, 45 So. 2d 507, 509 (Fl. 1950) (subject matter jurisdiction) (internal quotation omitted); *see In re Kant's Estate*, 272 So. 2d 153, 156 (Fla. 1972) (void judgment may be collaterally attacked at any time by "strangers to [that] judgment or decree....  whenever it is attempted to be enforced against them so as to affect rights or interests acquired prior to its rendition.") (internal quotations omitted); *Tallentire v. Burkhart,* 14 So. 2d 395, 396 (Fla. 1943); *Mitchell v. Bogue*, 196 So. 306, 310 (Fla. 1940); *Zoning Bd. of Monroe County v. Hood*, 484 So. 2d 1331, 1333 n.4 (Fla. 3d DCA 1986) ("strangers to the original court action[] may assail [that] judgment ... by an independent collateral attack [based on] lack of jurisdiction").

FSIA *jurisdiction* over a foreign state, and none of the parties asserting various FSIA issues were the foreign state's agency or instrumentality.  In *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986), the foreign state was the *plaintiff*, and was suing its former head of state for recovery of property.  *Id*. at 352.  Without further analysis, the Second Circuit merely stated that the *U.S. citizens* who claimed an interest in the property had no standing to assert that the *Marcoses* were entitled to *sovereign* immunity (that is, the immunity of the *Republic of the Philippines, the plaintiff in the action*).  *Id*. at 360.  In *Rubin v. Islamic Republic of Iran*, 408 F.Supp.2d 549 (N.D. Ill. 2005), the University of Chicago, acting simply as *custodian* over loaned artworks, asserted only that Iran's property was immune from *attachment* under sections 1609, 1610 of the FSIA.  The court, in finding that the University lacked standing to assert Iran's *attachment* immunity, explicitly distinguished attachment immunity in the enforcing court from *jurisdictional* immunity in the rendering court under FSIA §§ 1604-07.  *Id*. at 556.[17]

 Jerez's assertion that the state court default judgment is "*res judicata*" on the question of FSIA *jurisdiction*, *even if* Movants have standing to challenge FSIA jurisdiction, makes no

---

[17] *Rubin* is contrary to *Walker Int'l Holdings Ltd. v. Rep. of Congo*, 395 F.3d 229 (5th Cir. 2004), which held that third parties do have standing to assert attachment immunity under the FSIA.  No other court appears to agree with *Rubin,* including a virtually identical proceeding by the same plaintiff.  *See Rubin v. Islamic Republic of Iran,* 456 F. Supp. 2d 228, 231-32 & nn.3-4 (D. Mass. 2006) (museums had standing to assert Iran's attachment immunity in enforcement proceedings against property on loan); *see also Peterson v. Islamic Republic of Iran*, 2008 WL 5046327 at *1 (N.D. Cal. 2008) (in enforcement proceeding, "Court has an obligation to examine [the sovereign's attachment immunity], even where Iran has not appeared to assert it").  *Wilmington Trust v. U.S. Dist. Court, Dist. of Hawaii*, 934 F.2d 1026 (9th Cir. 1991), involved a private party that invoked the FSIA to avoid a jury trial based on "undocumented assertions of counsel" that a non-party, claimed to be an agency or instrumentality of Finland (also a non-party), had an interest in the property.  *Id*. at 1028, 1032-33 & n.9.  In *Weininger,* the court refused to inquire into the rendering court's jurisdiction when only an *amicus curiae* (not the garnishee) attacked the default judgment.  *Weininger*, 462 F. Supp. 2d at 474 (concluding court not "*require[ed]* ... to *sua sponte* engage in an analysis of the subject matter jurisdiction of the rendering court in the absence of a collateral attack by the party against whom the judgment is to be enforced *or another party in interest*") (emphasis added).

sense,[18] and he is wrong that a default judgment operates to preclude a jurisdictional collateral attack either under full faith and credit principles or under Florida law.  Obviously, the doctrine permitting jurisdictional collateral attacks on default judgments, repeatedly endorsed by the Supreme Court and the lower federal and Florida courts, would be rendered a nullity if the default judgment nevertheless bound the subsequent court on the jurisdictional issues.  As Movants showed, Mem. 25, and which Jerez inexplicably ignores, the general full faith and credit obligation is "subject to an important limitation":  "If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guaranty Ass'n*, 455 U.S. 691, 705 (1982);[19] *American Steel*, 847 F.2d at 1521 (11th Cir. 1988) (same, quoting *Underwriters*); *McDonald v. American Red Cross,* 505 F.Supp.2d 143, 146 (D.D.C. 2007) (foreign judgment not entitled to full faith and credit, when "the foreign court did not have jurisdiction over the parties or over the subject matter of the case") (Roberts, J.).[20]

 In any event, Florida recognizes that default judgments rendered without subject matter

---

[18]  It is not clear to what Jerez refers by "*res judicata.*"  Presumably he means "issue preclusion" (or "collateral estoppel").  Any assertion that a "finding of subject matter jurisdiction" operates as "claim preclusion" is incoherent.  P. 21.

[19]  Jerez's incorrect assertion that *Underwriters* and *Masri v. Adamar of New Jersey, Inc.,* 595 A.2d 398 (D.C. 1991) were direct appeals, not collateral attacks (and hence inapplicable here), P. 25 n.32, demonstrates a profound misunderstanding of those cases and of the jurisdictional collateral attack doctrine.  *Underwriters* involved a collateral attack in the North Carolina courts on the subject matter jurisdiction of Indiana courts to resolve an insurance rehabilitation matter. *Masri* involved a collateral attack in the D.C. courts on a default judgment entered without personal jurisdiction in New Jersey.  Again contrary to Jerez's misunderstanding, in *Pardo v. Wilson Line of Washington, Inc*., 414 F.2d 1145 (D.C. Cir. 1969), the defendant defaulted in the New York action and then collaterally attacked the New York judgment in the D.C. courts.

[20]  Jerez's assertion that Movants are not entitled to due process, P. 21 n.26, is both irrelevant and wrong.  *See Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury*, 606 F. Supp. 2d 59, 77-78 (D.D.C. 2009) (Lamberth, C.J.).

or personal jurisdiction are void and subject to collateral attack by the defaulting defendant,[21] *or*

by third parties in enforcement proceedings. *See* Mem. 27-28; n.16, *supra*. Because Florida

courts allow the collateral attack, so must the federal courts, as Jerez concedes. P. 21-22.

Jerez's assertion that the state court had subject matter jurisdiction because it is a court of

general jurisdiction that can hear FSIA cases and he invoked the FSIA in its pleadings

misunderstands subject matter jurisdiction, and is directly refuted by the cases he cites. The

issue is not whether the Florida court *could* hear a proper case brought pursuant to the FSIA; the

issue is whether *this* case falls within one of the exceptions to sovereign immunity so that the

Florida court *did* have subject matter jurisdiction *in this case*. *See* FSIA § 1604 ("a foreign state

*shall be immune* from the *jurisdiction of the courts* of the United States and *of the States except*

as provided in sections 1605 to 1607 of this chapter." *See also* Mem. 21-22.

Indeed, the cases cited by Jerez uniformly support the opposite proposition. In *Garcia v.*

*Stewart*, 906 So. 2d 1117 (Fla. 4th DCA 2005), the court held, "Because the trial court was

without subject matter jurisdiction ... the order was void and Garcia [who had defaulted in the

original action] was entitled to have it set aside.... *such judgment would be void* and would not

withstand a collateral attack." *Id.* at 1122 (emphasis in *Garcia*, internal quotations omitted).[22] In

---

[21] *See, e.g., Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. 4th DCA 2008) ("[a] foreign judgment need not be recognized if the foreign court lacked either personal or subject matter jurisdiction" in "proceeding brought to enforce the judgment"); *Whipple v. JSZ Fin. Co., Inc.*, 885 So. 2d 933, 936 (Fla. 4th DCA 2004) (defendant "may raise the [jurisdictional] issue subsequently in a proceeding brought to enforce the judgment."); *Best Form, Inc. v. Richards Prods., Inc.*, 631 So. 2d 1123, 1124 (Fla. 4th DCA 1994).

[22] As Jerez admits, P. 24 n.31, the state court cases Movants cite, Mem. 27-28, "deal with *void* judgments," which is precisely why they are on point and controlling. Florida law could not be any clearer that in *default* cases, "A judgment entered by a court which *lacks subject matter jurisdiction is void* and *subject to collateral attack*" at any time. *McGhee v. Biggs*, 974 So. 2d 524, 526 (Fla. 4th DCA 2008) (emphasis added); *Sterling Factors Corp. v. U.S. Bank Nat'l Assoc.*, 968 So. 2d 658, 666 (Fla. 2d DCA 2007) (same); *Johnson v. State of Florida*, 973 So. 2d

*Bambrick v. Bambrick*, 165 So. 2d 449 (Fl. 2d DCA 1964), the court entertained jurisdictional collateral attacks on a prior incompetency/guardianship proceeding, holding that a prior order adjudicating title in property "was void for lack of [subject matter] jurisdiction," and that the court had jurisdiction to determine incompetency.  *Id*. at 455-58.  Immediately after the sentences in *Bambrick* quoted by Jerez, the court stated:

> when the record of the proceedings in the [rendering] Court does not disclose a determination of facts *pertaining to the jurisdictional prerequisites*, then its judgment may be attacked *in any collateral proceedings* by showing the *absence of jurisdiction*.

*Id.* at 456 (emphasis added).  Here, the state court made *no* "determination of facts pertaining to the [FSIA] jurisdictional prerequisites," as Jerez all but admits, P. 24 n.30; *see* Point I, *supra*. *Every* federal case upon which Jerez relies, P. 25-26 & nn. 27, 32-33, were contested cases, not default judgments, and the other cited state court cases, P. 24, were either contested or did not involve a *jurisdictional* collateral attack, and thus simply have no relevance here.[23]

### VI.    Plaintiff's Claim Of "Purposeful Injection of Hepatatis C Virus" is Made for the

---

1236, 1238 (Fla. 1st DCA 2008) (same, personal jurisdiction); 32A Fla. Jur. 2d, *Judgments and Decrees* § 294.

[23]  *See, e.g., Wright v. Lewis*, 870 So. 2d 179, 182 (Fla. 4th DCA 2004) (*contested* proceeding; relying on contested cases, *e.g., Archbold Health Servs., Inc. v. Future Tech Bus. Sys.*, 659 So. 2d 1204, 1206 (Fla. 3d DCA 1995) ("Where a defendant *challenges* the jurisdiction of a court, and the court *overrules the objection* and *determines* that it does have jurisdiction, that decision is res judicata and precludes collateral attack on the judgment.")); *Ennis v. Giblin*, 2 So. 2d 382, 383 (Fla. 1941) (no *jurisdictional* collateral attack); *Delta Foods Ltd. v. Rep. of Ghana,* 265 F.3d 1068, 1070 (D.C. Cir. 2001) ("a party may not challenge a court's subject-matter jurisdiction in a collateral attack if the party *initially appeared* in its own defense") (emphasis added).

Jerez's claim that the *Movants* "refused to appear" in the state court or in subsequent proceedings (*where they were not named or served and in which their property was not at issue*) highlights Jerez's desperation to prevent inquiry into the state court's obvious lack of jurisdiction.  P. at 26 n.34.  None of the cases Jerez cites in n.34 support the proposition that entry of a default judgment, whether in compliance with or, as here, in violation of section 1608(e), prevents *jurisdictional* collateral attack.  Otherwise, *all* FSIA default judgments would, by definition, be immune from such attack, directly contrary to the D.C. Circuit's holding in *Practical Concepts*.  Finally, *none* of the three cited bankruptcy cases involved a *jurisdictional* collateral attack; and in each case the defendant had appeared in the original action and answered, and then subsequently defaulted or a default was entered as a discovery sanction.

**First Time Here, Is Unsupported by Any Evidence In the Rendering Court and
Would Not Provide Jurisdiction Under FSIA § 1605(a)(5) In Any Event**

Plaintiff asserts that the state court had jurisdiction under FSIA § 1605(a)(5) even though the state court never referenced that provision.  Most bizarre of all, Plaintiff predicates his § 1605(a)(5) argument on a claim that Cuba purposefully injected him in Cuba with Hepatitis C virus, P. 27-31, even though Plaintiff never claimed purposeful injection of Hepatitis C virus in the state court action; the state court did not find purposeful injection of Hepatitis C virus; and there is no evidence in the state court record to support such a claim.

Movants have reviewed and submitted the entire state court record; there is not a single mention of injections of Hepatitis C.  (Reich Dec., ¶ 3 and Ex. M).  In light of the state court taking judicial notice of *United States v. Mederos*, 01-818-CR-GOLD (S.D. Fl.), Movants, even though only a small portion of the *Mederos* record was introduced in *Jerez* (Reich Dec., Ex. M, part 7), also have reviewed and submitted the entire *Mederos* transcript (Reich Dec., Ex. N); it likewise does not make a single reference to injection of Hepatitis C virus (Reich Dec. ¶ 5 and Ex. N).  The only references to involuntary injections of Jerez or other persons in that record are to injections of insulin, "forced psychotropic drug injections," or "forced drug injections."  Reich Dec., ¶ 4.  Plaintiff's only support for his new claim of purposeful injection of Hepatitis C virtus are affdavits submitted *for the first time here.*  (Dkt. 25-1 & 25-6, Exs. A & F).

Plaintiff cannot sustain the state court's jurisdiction on the basis of a claim that was never made in that court, let alone one unsupported by any findings or evidence there.  He cannot seek execution on a judgment that was never issued.  Plaintiff's FSIA § 1605(a)(5) argument is beyond preposterous.  Plaintiff cites no authority for such an outlandish notion, and there is none.

In addition,  plaintiff may not rely on his new claim because, under the settled law of this Circuit, "both the tort and the injury must occur in the United States" in order for FSIA

19

§ 1605(a)(5) to apply. *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984). *See also Associacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1524-25 (D.C. Cir. 1984); *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 169 (D.C. Cir. 1994); *Doe v. Bin Laden*, 580 F. Supp. 2d 93, 98 n.5 (D.D.C. 2008); *Gutch v. Fed. Republic of Germany*, 444 F. Supp. 2d 1, 11 (D.D.C. 2006), aff'd, 255 Fed. Appx. 524 (D.C. Cir. 2007) *Doe v. State of Israel*, 400 F. Supp. 2d 86, 108 (D.D.C. 2005). *See also, e.g., Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 379-80 (7th Cir. 1985); *Coleman v. Alcolac, Inc.*, 888 F. Supp. 1388, 1403 (S.D. Tex. 1995) (veterans' allegations of exposure abroad to harmful chemical and biological weapons that caused various illnesses upon their return to the United States do not come withhin FSIA § 1605(a)(5) because the tort "did not occur wholly in this country").

Plaintiff argues that the Republic of Cuba's "continuous[] fail[ure] to advise Plaintiff of the presence of the virus in his body" falls within FSIA § 1605(a)(5) because it occurred in the U.S. Under the law of this Circuit (as well as elsewhere), however, the Torts Exception does not apply unless "the entire tort" occurred in the U.S.; "the tort, in whole, must occur in the [U.S.]." *Associacion de Reclamantes,* 735 F.2d at 1525; *see also, e.g., Von Dardel v. Union of Soviet Socialist Republics*, 736 F. Supp. 1, 8 (D.D.C. 1990) (*"Reclamantes* … dictates that the entirety of the tort occur in the United States."). Dispositively, plaintiff claims he was injected in Cuba, not the U.S. Further, any "failure to advise" would be deemed to have occurred in Cuba as well, where the foreign state decided not to act. *See, e.g., O'Bryan v. Holy See*, 556 F.3d 361, 388 (6th Cir. 2009) ("claim cannot survive against the Holy See itself for its own failures to warn [persons in U.S.] because such tortious conduct would have occurred abroad."). Additionally, a plaintiff cannnot defeat FSIA § 1605(a)(5)'s requirement that the entire tort and injury take place in the

U.S. by recasting his claim as a failure to warn the plaintiff of the tortious act abroad after he takes up residence in the U.S.  *See Saudi Arabia v. Nelson*, 507 U.S. 349, 363 (1993) (plaintiff may not recast a "claim of intentional tort committed by sovereign act as a claim of failure to warn" because to do so "would effectively thwart the [FSIA's] manifest purpose to codify the restrictive theory of foreign sovereign immunity[]").  *See also Lombard v. United States,* 690 F.2d 215, 221-23 (D.C. Cir. 1982) (failure to warn of danger following from tort for which claim is barred by Federal Tort Claims Act is also barred by FTCA); FSIA § 1610(a)(5)(B) (exclusion of "misrepresentation" and "deceit" from Torts Exception).

Finally, the Second Circuit has held that "to apply the Torts Exception where the conduct alleged amounts to terrorism within the meaning of the Terrorism Exception [FSIA § 1605(a)(7)] would evade and frustrate" the limitations imposed by Congress in the latter provision, and therefore "claims based on terrorism must be brought under the Terrorism Exception, and not under any other FSIA exception." *In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71, 89-90 (2d Cir. 2008).  Although a court of this District, unaware of the Second Circuit decision, held to the contrary in a brief discussion, *Bin Laden*, 580 F. Supp. 2d at 97, the Second Circuit's decision – the only by an appellate court - is persuasive and provides additional reason to reject Plaintiff's FSIA § 1605(a)(5) argument.[24]

### VII.    Trademark Law Bars Execution

As a matter of trademark law, a judgment creditor cannot execute upon trademark registrations when it cannot also seize the underlying business and goodwill.  Mem. 29-31.

---

[24] Prior to Congress specifically addressing extrajudicial killings by foreign states in FSIA § 1605(a)(7), the courts in *Letelier v. Republic of Chile*, 488 F. Supp. 665, 671-74 (D.D.C. 1980), and *Liu v. Republic of China*, 892 F.2d 1419, 1425-26 (9th Cir. 1989), held that FSIA § 1605(a)(5) provided jurisdiction for such acts in the U. S.  *See also Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 15 (D.D.C. 1998) (discussing *Liu* and *Letelier*).

Plaintiff cannot circumvent trademark law by falling back on TRIA.  As shown in Point I, n.1, the authority is uniform that TRIA's "notwithstanding any other provision of law" clause *only* concerns sovereign and diplomatic immunity and TWEA/IEEPA regulations barring execution.

Plaintiff does not respond to Movants' unassailable argument and authority that trademark registrations cannot be transferred in the manner sought by Plaintiff, that is, "nakedly," *i.e.*, without transfer of the associated business and good will.  Mem. 29-31. Plaintiff's suggestion that the trademark registrations, and specifically the certification mark HABANOS and the Cuban Government Warranty mark for cigars, are "designs with words which can be altered by a new owner," P. 43, is unavailing:  if an owner altered the words or designs in a mark *it would no longer be the same trademark*.  Further,  HABANOS and the Government Warranty mark contain core geographical elements that the USPTO repeatedly has determined can only be used on Cuban-origin products. *See* Mem. 31 & n.21. (Although Plaintiff mentions equitable liens, Plaintiff has not sought a lien but execution by a Writ of Attachment on Judgment; equitable liens are not at issue.)

**VIII.  Habanos, S.A., Havana Rum & Liquors, S.A., Cuba Ron, S.A., Artex, S.A. and Laboratorios Dalmer, S.A. Are Not "Agencies or Instrumentalities" and Therefore TRIA Is Inapplicable to Their Trademark Registrations**

TRIA, § 201(a), which establishes a limited exception to FSIA § 1609 immunity, applies only to the property of an "agency or instrumentality" of the judgment debtor foreign state.  The FSIA, § 1603(b), defines an "agency or instrumentality" of a foreign state as "any entity – … which is an organ of a foreign state…, or a majority of whose shares or other ownership interest is owned by the foreign state…"

None of the shares of Habanos, S.A., Havana Rum & Liquors, S.A., Cuba Ron, S.A., Artex, S.A. and Laboratorios Dalmer, S.A. (collectively, the "S.A.'s" for "Sociedades

Anonimas") are owned by the Republic of Cuba.  Rather, their shares are owned entirely by

other Cuban juridical entities or, in the case of Habanos, S.A., fifty percent by a Cuban juridical

entity and fifty percent by a Spanish corporation. The Spanish owner, ITI Cigars, S.L., is a

wholly owned subsidiary of Altadis, S.A., a Spanish corporation, which, in turn, is a wholly

owned subsidiary of the British corporation, Imperial Tobacco Group PLC.[25]

Under *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), the S.A.'s do not come within

FSIA, § 1603(b)'s majority ownership provision. The Supreme Court held that the provision

requires the foreign state to *directly* own the entity's shares, and rejected as inadequate the

foreign state owning the company that owns the entity in question.  *Id.* at 474, 477.  *See also*,

*e.g.*, *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 183-84 (D.D.C. 2007) (company whose

majority shareholder was wholly-owned direct subsidiary of Russian Federation held not to be

agency or instrumentality under *Dole*). Even if they were subs of subs, "third-tier" corporations

of the Republic of Cuba (which they do not necessarily concede), the S.A.'s would not qualify as

agencies or instrumentalities under *Dole*, 538 U.S. at 473-74. Plaintiff ignores *Dole* and his

offhand references to the Republic's "ownership" are made under a pre-*Dole* assumption that

indirect ownership suffices.[26]

---

[25] Declaration of Luis Francisco Perdomo Hernandez, dated Jan. 25, 2010 (Havana Rum & Liquors, S.A.); Declaration of Luis Francisco Perdomo Hernandez, dated Jan. 25, 2010 (Cuba Ron, S.A.); Declaration of Jose Ruiz Paez, dated Jan. 20, 2010 (Artex, S.A.); Declaration of Dr. Carlos Guitierrez Calzado, dated Jan. 22, 2010 (Laboratorios Dalmer, S.A.); Declaration of Adargelio Garrido de la Grana, dated Jan. 15, 2010 (Habanos, S.A.).

[26] Further, Plaintiff provides no admissible evidence.  The Declaration of Rafael de la Cova, a Visiting Assistant Professor of History at the University of North Carolina – Greensboro ("Cova") does not qualify under Rule 702, Federal Rules of Evidence, as his qualifications as an expert on Cuban law and administration are inadequate. Moreover, Cova bases his opinion on various medical and newspaper articles that do not show that the S.A.'s are directly owned by the Republic of Cuba. For example, the only "proof" concerning Laboratorios Dalmer S.A., in addition to citations to the Cuban Constitution, is an article that merely states that Dalmer "markets products for the National Centre for Scientific Research." *See* Dkt., 25 at Ex. D, ¶ j.

In *Dole*, 538 U.S. at 471, 477, the Supreme Court expressly rejected Jerez's focus on "control" instead of ownership. It "is nothing more than a frontal assault on the Supreme Court's decision in *Dole* … [that renders the] Supreme Court's holding that control is legally irrelevant … meaningless…" *Allen*, 522 F. Supp. 2d at 184, 185.

Plaintiff makes no argument under the FSIA's "organ" prong.  Further, Plaintiff's generalized allegations of the Republic of Cuba's "ownership, control, and operation" of essentially everything on the island, and that the Movants "fall[] under the umbrella of the [Cuban] Constitution … [and] as such … [they] are owned, controlled, and operated" by the Republic, P. 3, would fail to satisfy the "organ" prong.  In *Edlow Int'l Co. v. Nuklearna Elektrarna Krsko*, 441 F. Supp. 827, 831-32 (D.D.C. 1977), a court of this District rejected just this reasoning, that an entity is an agency or instrumentality under the FSIA because "all property under a socialist system … is subject to the ultimate ownership and authority of the state," and held that it would inappropriately "characterize virtually every enterprise operated under a socialist system as an instrumentality of the state within the terms of the [FSIA]."  *See also Ocean Line Holdings Ltd. v. China Nat. Chartering Corp.*, 578 F. Supp. 2d 621, 625 (S.D.N.Y. 2008) (rejecting argument that Chinese company is agency or instrumentality because it is labeled under Chinese law as "enterprise owned by the whole people"; "[o]wnership structure, not labels, must control the analysis").

Moreover, the S.A.'s are (1) commercial companies; (2) engaged in ordinary commercial businesses, such as the manufacture or sale of rum, cigars, music CD's and other consumer products; (3) engage in ordinary commercial transactions; (4) do not possess any governmental

---

Under TRIA, it is Plaintiff's burden to show agency or instrumentality status. *Cf. Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181, 198-99 (D.D.C. 2008) (Plaintiff must prove agency or instrumentality status under FSIA for purpose of punitive damages).

authority; (5) are not considered "agencies or instrumentalities" or "organs" under Cuban law; (6) are different than "state enterprises" under Cuban law; (7) hire their own employees, who are not government employees; and (8) are managed by a Board of Directors chosen by the shareholders and by officers selected by the Directors.  *See* the Declarations cited at n.26; Declaration of Juan Mendoz Diaz, dated Jan. 22, 2010 (expert on Cuban law.).

As such, they are not organs under the FSIA.  *Compare Filler v. Hanvit Bank*, 378 F.3d 213 (2d Cir. 2004) (third-tier subsidiary commercial bank, indirectly wholly owned by the foreign state, not an organ); *China Nat. Chartering Corp.*, 578 F. Supp. 2d at 626 (Chinese commercial chartering company not an organ because "not formed to perform governmental functions, but rather to engage in the shipping industry; top management appointed by parent company, not the government; enjoys no privilege in legal or administrative proceedings within China; bears civil obligation and assumes civil liability as a private commercial entity does).

For the purpose of this execution proceeding only, the other Third Party Movants do not contest Plaintiff's assertion that they are agencies or instrumentalities of the Republic of Cuba, without prejudice and reserving all rights.

## CONCLUSION

For the foregoing reasons, the Writ should be vacated with prejudice.

Dated: January 26, 2010                    Respectfully submitted,


                                           /s/
                                           _____
                                           Brendon M. Tavelli
                                           (D.C Bar No. 492990)
                                           PROSKAUER ROSE LLP
                                           1001 Pennsylvania Ave., NW
                                           Suite 400 South
                                           Washington, DC 20004
                                           Tel.: 202.416.6800
                                           Fax: 202.416.6899
                                           btavelli@proskauer.com


                                           /s/
                                           _____
                                           Michael Krinsky
                                           (PHV)
                                           David B. Goldstein
                                           (D.D.C. Bar # NY0034)
                                           RABINOWITZ, BOUDIN, STANDARD,
                                              KRINSKY & LIEBERMAN, P.C.
                                           111 Broadway, Eleventh Floor
                                           New York, New York 10006
                                           Tel.:   212.254.1111
                                           Fax:    212.674.4614
                                           mkrinsky@rbskl.com
                                           dgoldstein@rbskl.com

                                           *Counsel for Third-Parties*


On the Brief:
     Lindsey Frank
     Daniel S. Reich
     RABINOWITZ, BOUDIN, STANDARD,
        KRINSKY & LIEBERMAN, P.C.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Reply

Memorandum Of Points And Authorities In Further Support Of Third-Parties' Motion To Vacate

Writ Of Attachment On Judgment With Prejudice is being served upon all counsel of record who

have consented to electronic service via the Court's CM/ECF system; is being served by

DHL/World Wide Express upon the Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, the

Cuban Revolutionary Armed Forces and El Ministerio del Interior at the addresses listed on the

Service List; and is being served by United States first-class mail on the remaining persons or

entities listed below on this 26th day of January, 2010.

    /s/

Brendon M. Tavelli
(DC Bar No. 492990)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 400 South
Washington, DC 20004
Tel.: 202.416.6800
Fax: 202.416.6899
btavelli@proskauer.com

## SERVICE LIST

Assistant Attorney General for Finance and Litigation
United States Department of Commerce
*Attention*:
M. Timothy Conner
Chief, General Litigation Division
Office of the Assistant General Counsel
for Finance and Litigation
U.S. Department of Commerce
1401 Constitution Ave., N.W., Rm. 5890
Washington, DC  20230
TConner1@doc.gov

Republic of Cuba
c/o Bruno Rodríguez Parilla
Ministerio de Relaciones Exteriores
Calzada #360
Vedado, La Habana, Cuba

Fidel Castro Ruz
Comite Central del Partido Comunista
Plaza de la Revolucion
Havana, Cuba

Raul Castro Ruz
Consejo de Ministros
Plaza de la Revolucion
Havana, Cuba

Raul Castro Ruz
Consejo del Estado
Plaza de la Revolucion
Havana, Cuba

The Cuban Revolutionary Armed Forces
Plaza de la Revolucion
Havana, Cuba

El Ministerio del Interior
Plaza de la Revolucion
Havana, Cuba