TRANSLATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NILO JEREZ, | ) |
|  | ) |
|       Plaintiff, | ) |
|  | ) |
| v. | )     Case No. 1:09-mc-466 |
|  | ) |
| THE REPUBLIC OF CUBA, FIDEL CASTRO | ) |
| RUZ, Individually and as President of the State | ) |
| and Council of Ministers, Head of the | ) |
| Communist Party and Commander-in-Chief of | ) |
| the Military, RAUL CASTRO RUZ, | ) |
| Individually and as First Vice President of the | ) |
| Head of the Cuban Revolutionary Armed | ) |
| Forces, THE CUBAN REVOLUTIONARY | ) |
| ARMED FORCES, and EL MINISTERIO DEL | ) |
| INTERIOR, | ) |
|  | ) |
|       Defendants. | ) |
|  | ) |

LUIS FRANCISCO PERDOMO HERNANDEZ declares under penalty of

perjury under the laws of the United States of America that the following is true and

correct;

     1.     I am the President of the Cuban company Corporacion Cuba Ron, S.A. I

have held this position since 1993.   The principal activities of Corporacion Cuba Ron,

S.A. are the production and sale of rum and other alcoholic beverages, the export of rum

and other alcoholic beverages, and the import of supplies, equipment and material

necessary for its production and maintenance.

     2.     Corporacion Cuba Ron, S.A. is a shareholder company (known in Cuba as

a "sociedad anonima") constituted under the laws of the Republic of Cuba, with its own

legal personality and assets. The shareholders of Corporacion Cuba Ron, S.A. are

Empresa de Bebidas y Refrescos Matanzas, Empresa de Bebidas y Refrescos Villa Clara, and Empresa de Bebidas y Refrescos Cienfuegos. A true and correct copy of the Certification of Alicia I. Martinez Perez, dated March 8, 1999, with a translation to English, is attached hereto as Exhibit A. Each of the shareholders of Corporacion Cuba Ron, S.A. is a company with legal personality, its own assets and management, organized under the laws of Cuba.  Corporacion Cuba Ron, S.A. is not an agency or instrumentality of the Republic of Cuba under Cuban law.

3.      Under Cuban law, Corporacion Cuba Ron, S.A. is not responsible for the debts or obligations of its shareholders. Furthermore, Corporacion Cuba Ron, S.A. is not responsible for the debts and obligations of third parties, including without limitation the Republic of Cuba.  Corporacion Cuba Ron, S.A.'s assets and liabilities are its own, and not the assets or liabilities of its shareholders. Likewise the assets and liabilities of Corporacion Cuba Ron, S.A. are not the assets or liabilities of third parties, including the Republic of Cuba.

4.      Corporacion Cuba Ron, S.A. is a company owned by shareholders, and was  constituted under the laws of the Republic of Cuba on November 8, 1993. The "Estatutos" (the equivalent of Articles of Incorporation in United States law and, hereinafter, the "Statutes") of Corporacion Cuba Ron, S.A., were issued at the Special Notary Office of the Ministry of Justice of the Republic of Cuba on November 8, 1993. The Statutes were recorded in the Central Register of Shareholder Companies and in the Second Commercial Register of Havana. A true and correct copy of the Estatutos of Corporacion Cuba Ron, S.A., with a translation to English, is enclosed as Exhibit B.

5.      The Statutes of Corporacion Cuba Ron, S.A. establish that the Board of Shareholders is the highest governing authority of the company and that the Board of

2

Shareholders designates the Board of Directors and the administrative bodies of the company.  *See* Statutes, at Articles Twelfth and Twenty Second.  The administration and representation of Corporacion Cuba Ron, S.A. is carried out by the Board of Directors, subject to the authority and direction of the Board of Shareholders.  *See* Statutes at Article Twenty Fifth and Thirty First.  The Board of Shareholders, *inter alia*, designates the members of the Board of Directors, determines the number of persons who shall serve on the Board, amends the Statutes, and decides upon the distribution of dividends.  *See* Statutes, at Article Twenty Second.  It is the responsibility of the Board of Directors to manage the enterprise in all of its aspects, subject to the Board of Shareholders' authority and direction. *See* Statutes, at Article Thirty First.  The Board of Directors hires the personnel necessary to carry out the operations of the Company. *Id.*

6.      According to the Cuban Constitution, the Cuban Commercial and Civil Codes, and Cuban jurisprudence (judicial precedents), a commercial company which is owned by shareholders acquires its own legal personality with independent assets and limited liability, different from that of any of the parties.

7.      The Constitution of the Republic of Cuba explicitly provides that legal persons, such as commercial companies, are not liable for the debts and obligations of the Cuban State.  The Constitution establishes:  "The State is not liable for the obligations contracted by the companies, entities and other legal persons, and the latter are also not liable for the obligations of the State." (Constitution of the Republic of Cuba, enacted on February 24, 1976, as last amended by the National Assembly of the People's Power on June 26, 2002, at Article 17). A true and correct copy of the aforementioned articles of the Constitution of the Republic of Cuba, with a translation to English, is attached as Exhibit C.

8.      Under the Commercial Code of Cuba, a commercial company has "legal personality in all its acts and contracts."  Article 116, second paragraph.  According to the provisions of the Commercial Code, one of the forms adopted by commercial companies is the Joint Stock Company (Article 122).  The current Commercial Code of Cuba was enacted in Spain on August 22, 1885, and was extended to Cuba by Royal Decree on January 28, 1886, being enacted on May 1, 1886.  A true and correct copy of the aforementioned articles of the Commercial Code of Cuba, with a translation to English, is attached as Exhibit D.

9.      The Cuban Civil Code, adopted on April 12, 1988, sets forth that "legal entities are entities which, owning their own assets, have capacity to be subject to rights and obligations" (Article 39.1).  In addition, the Civil Code states that "legal entities are ... the companies and associations constituted pursuant to the requisites established in the laws" and "other entities to which the law grants legal personality." (Art. 39, 2 ch and f.)

10.      Concerning the liability of the companies, the Civil Code explicitly establishes that "the State is not responsible for the obligations of other legal persons, nor are the latter responsible for the debts of the State."  (Art. 44.3).  A true and correct copy of the aforementioned articles of the Civil Code, with a translation to English, is enclosed as Exhibit E.  Corporacion Cuba Ron's Statutes explicitly set forth that the Board of Directors represents the Company in "all matters and activities, acts and legal business related to the sphere of operations to which the Corporation might dedicate its activities in accordance with its business objectives, as well as in judicial proceedings or outside of these, obligating it by its acts and contracts." Statutes, Article Thirty First (a).

11.     According to the above, since the registration of Corporacion Cuba Ron, S.A in the Commercial Register of Havana and the Register of Shareholder Companies, this company became a legal entity, acquiring all rights inherent to the entity, including the right to its own assets and limited liability for its acts, but not for the acts of others. Executed this 25th day of January, 2010 in Havana, Cuba.


___[signature]_____
LUIS FRANCISCO PERDOMO HERNANDEZ

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK        )
                          )        ss
COUNTY OF NEW YORK  )


## CERTIFICATION


This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation from Spanish to English of the *Declaration of Luis Francisco Perdomo Hernandez (Corporacion Cuba Ron, S.A.)*, completed on January 25, 2010.

Christine Muller
Vice President
The LanguageWorks, Inc.


Sworn to and subscribed before me
this 25th day of January, 2010

Notary Public

MARCEL HENRIQUE VOTLUCKA
Notary Public, State of New York
No. 01VO6154182
Certificate Filed in New York County
Qualified in Kings County
Commission Expires October 23, 20 ___

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NILO JEREZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:09-mc-466 |
| | ) |
| THE REPUBLIC OF CUBA, FIDEL CASTRO | ) |
| RUZ, Individually and as President of the State | ) |
| and Council of Ministers, Head of the | ) |
| Communist Party and Commander-in-Chief of | ) |
| the Military, RAUL CASTRO RUZ, | ) |
| Individually and as First Vice President of the | ) |
| Head of the Cuban Revolutionary Armed | ) |
| Forces, THE CUBAN REVOLUTIONARY | ) |
| ARMED FORCES, and EL MINISTERIO DEL | ) |
| INTERIOR, | ) |
| | ) |
| Defendants. | ) |
| | ) |



LUIS FRANCISCO PERDOMO HERNANDEZ declara bajo pena de perjurio

según las leyes de Estados Unidos de América que lo que sigue es verdadero y cierto:

1.      Soy el Presidente de Corporación Cuba Ron, S.A. He estado en este puesto

desde 1993. Las principales actividades comerciales de Corporación Cuba Ron S.A. son

la producción y venta de ron y otras bebidas alcohólicas, la exportación de ron y otras

bebidas alcohólicas, y la importación de los insumos, equipos y materiales necesarios

para su producción y mantenimiento.

2.      La Corporación Cuba Ron, S.A., compañía accionista (conocida en Cuba

como "sociedad anónima") está constituida bajo las leyes de la República de Cuba, con

su personalidad legal y activos propios. Los accionistas de Corporación Cuba Ron S.A.

son  la Empresa de Bebidas y Refrescos Matanzas, Empresa de Bebidas y Refrescos Villa

Clara, y la Empresa de Bebidas y Refrescos Cienfuegos. Una copia verdadera y cierta del

Certificado de Alicia I. Martinez Perez, fechada el 8 d marazo de 1999, con una

traducción al inglés, se ajunta al presente como Anexo A. Cada uno de los accionistas es

una compañía con personalidad legal, activos y gerencia propia, organizada bajo las leyes

de Cuba.  La Corporación Cuba Ron, S.A. no es una agencia o instrumento de la

República de Cuba bajo las leyes cubanas.

      3.      Bajo las leyes cubanas, la Corporación Cuba Ron, S.A. no es responsable

por las deudas u obligaciones de sus accionistas. Además, la Corporación Cuba Ron, S.A.

no es responsable por las deudas u obligaciones de terceras partes, incluyendo sin

limitación la República de Cuba.  Los activos y pasivos de la Corporación Cuba Ron,

S.A. son los propios y no los activos o pasivos de sus accionistas. Asimismo los activos y

pasivos de la Corporación Cuba Ron S.A. no son activos y pasivos de terceras partes,

incluyendo la República de Cuba.



      4.      La Corporación Cuba Ron, S.A. es una compañía propiedad de los

accionistas constituida bajo las leyes de la República de Cuba  el 8 de noviembre de

1993. Los Estatutos (equivalente a los Artículos de Incorporación en las leyes de Estados

Unidos) de Corporación Cuba Ron S.A. fueron expedidos en la Notaría Especial del

Ministerio de Justicia de la República de Cuba el 8 de noviembre de 1993. Los Estatutos

fueron registrados en el Registro Central de Sociedades Anónimas y en el Registro

Mercantil Segundo de la Habana. Una copia verdadera y cierta de los Estatutos de

Corporación Cuba Ron S.A., con una traducción al inglés, se adjunta en el Anexo B.

5.      Los Estatutos de Corporación Cuba Ron, S.A. establecen que la Junta de Accionistas es la máxima autoridad de gobierno de la compañía y que la Junta de Accionistas designa a la Directiva y a los cuadros administrativos de la compañía. *Ver* Estatutos, Artículos Décimo Segundo y Vigésimo Segundo. La administración y la representación de la Corporación Cuba Ron S.A. es llevada a cabo por la Junta de Directores, sujeto a la autoridad y dirección de la Junta de Accionistas. Estatutos, Artículos Vigésimo Quinto y Trigésimo Primero. La Junta de Accionistas, *inter alia*, designa a los miembros de la Junta de Directores, determina la cantidad de personas que van a formar parte del mismo, enmienda los Estatutos y decide la distribución de los dividendos. *Ver* Estatutos, Artículo Vigésimo Segundo. Es responsabilidad de la Junta de Directores manejar la empresa en todos sus aspectos, sujeto a la autoridad y dirección de la Junta de Accionistas. *Ver* Estatutos, Artículo Trigésimo Primero. La Junta de Directores contrata los trabajadores necesarios para llevar a cabo la operación de la Compañía. *Id.*

6.      De acuerdo con la Constitución cubana, los Códigos Civil y de Comercio y la jurisprudencia cubana (precedentes judiciales), una compañía mercantil que es propiedad de accionistas adquiere su propia personalidad legal con activos independientes y pasivos limitados, diferentes a los de cualquiera de las partes.

7.      La Constitución de la República de Cuba establece explícitamente que las personas legales, tales como compañías mercantiles, no son responsables de las deudas y obligaciones del Estado cubano. La Constitución establece: "El Estado no responde de las obligaciones contraídas por las empresas, entidades u otras personas jurídicas y estas tampoco responden de las de aquel." (Constitución de la República de Cuba, proclamada

el 24 de febrero de 1976, enmendada por última vez por la Asamblea Nacional del Poder

Popular el 26 de junio de 2002, Artículo 17). Una copia verdadera y cierta de los

artículos de la Constitución de la República de Cuba mencionados anteriormente, con la

traducción al inglés, se juntan como Anexo C.

        8.      Bajo el Código de Comercio de Cuba, una compañía comercial tiene

"personalidad legal en todos sus actos y contratos" Artículo 116, segundo párrafo. De

acuerdo con las disposiciones del Código de Comercio, una de las formas adoptadas por

las compañías mercantiles es la Anónima (Artículo 122). El actual Código de Comercio

de Cuba fue promulgado en España el 22 de agosto de 1885 y fue extendido a Cuba por

Decreto real el 28 de enero de 1886, siendo promulgado el 1ro de mayo de 1886. Una

copia verdadera y cierta de los artículos del Código de Comercio de Cuba mencionados

anteriormente, con la traducción al inglés, se juntan como Anexo D.

        9.      El Código Civil cubano, adoptado el 12 de abril de 1988, expone que

"Las personas jurídicas son entidades que, poseyendo patrimonio propio, tienen

capacidad para ser sujetos de derechos y obligaciones" (Artículo 39.1). Adicionalmente,

el Código Civil dispone que "Son personas jurídicas... las sociedades y asociaciones

constituidas de conformidad con los requisitos establecidos en las leyes" y "las demás

entidades a las que la ley confiere personalidad jurídica." (Art. 39, 2 ch y f.)

        10.      Concerniente a las deudas de las compañías, el Código Civil establece

explícitamente que "El Estado no responde de las obligaciones de otras personas

jurídicas, ni éstas de las de aquél." (Art. 44.3). Una copia verdadera y cierta de los

artículos del Código Civil mencionados anteriormente, con la traducción al inglés, se

junta como Anexo E. Los estatutos de la Corporación Cuba Ron S.A. disponen

explícitamente que la Junta de Directores representa a la Corporación "en todos los asuntos y actividades, actos y negocios jurídicos que estén relacionados con la esfera de operaciones a la que La Corporación pueda dedicar su actividad de acuerdo con el objeto social, así como en procedimientos judiciales o fuera de los mismos, obligándola con sus actos y contratos." Estatutos, Articulo Trigésima Primero (a).

11.     De acuerdo con lo anterior, desde que se asentó a Corporación Cuba Ron S.A. en el Registro de Sociedades Anónimas y en el Registro Mercantil de la Habana, esta compañía se convirtió en una entidad jurídica, adquiriendo todos los derechos inherentes a una entidad, incluyendo el derecho a sus propios activos y pasivos limitados por sus actos, pero no por los actos de otros.

Firmado este 25 de enero de 2010 en La Habana, Cuba.

_____
LUIS FRANCISCO PERDOMO HERNANDEZ

# EXHIBIT A

**REPUBLIC OF CUBA**
**MINSTRY OF JUSTICE**

# SPECIAL NOTARY OFFICE

**DOCUMENT No**. *511*

_____ *Certificate of Notarization* _____

_____

_____

**NOTARY PUBLIC** _____

**DATE** _____ *March 15* _____ **19** _99_ _____

## APPEARING PARTIES

_____ *Alicia Isabel Martínez Peréz* _____

_____

_____



[Illegible stamp]

**NUMBER: 511**

### CERTIFICATE OF NOTARIZATION

Havana, March 15, 1999

### BEFORE ME

CARMEN ALICIA PÉREZ DÍAZ, Notary Public with national jurisdiction seated in the Special Notary Office of the Ministry of Justice of the Republic of Cuba.

### APPEARS

**ALICIA ISABEL MARTÍNEZ PÉREZ,** born in Mexico, Cuban citizen, of legal age, married, attorney, residing at number 657 Calle Santa Catalina, Vibora, Diez de Octubre Municipality, in this city, with Permanent ID No. 58110510115.

**ACTING** on behalf and in representation of the Cuban company named **CORPORACIÓN CUBA RON, S.A.,** incorporated by Dr. Felicitas Regla López Sotolongo by virtue of public document number 76 formally recorded on November 8, 1993, recorded in the Central Corporations Registry, first record entered in Book 135, folio 50, page 9993, Section One; and in Commercial Registry One of Havana in Book 1188, folio 187, page 16726, first record entered on November 9, 1993; in her capacity as Secretary thereof, which she evidences with the document she hereby comes to officially record.

**SHE DECLARES** that she has the full use and exercise of her civil rights and, in my judgment, has the legal capacity necessary for this act, and **STATES:**

**FIRST:** She asks that I, the Notary Public, officially record the following document in this Certificate:

Certification issued by the appearing party on March 8 of this year related to **Resolution 8** adopted at the special General Shareholders' Meeting held on December 31, 1993; **Resolution 31** adopted at the company's special General Shareholders' Meeting held on May 23, 1994; **Resolutions 14 and 15** adopted by the General Shareholders' Meeting held on December 21, 1996; and Resolutions **1, 2, 3, 4 and 5** adopted at the special General Shareholders' Meeting held on February 2 of this year.

**SECOND:** I, the Notary Public, proceed to officially record the aforementioned document, which consists of two sheets of paper typewritten in Spanish.

**THIRD:** The appearing party declares for all pertinent legal effects that she is an interested party, that the document is authentic, and that the information it contains is true, assuming liability to third parties for all damages which it might cause if false.

**SO STATES** the appearing party in my presence.

This certificate was **READ IN ITS ENTIRETY** in a single act to the requester by me, the Notary Public, and being in agreement with its content, she ratifies and signs it.

**IN WITNESS WHEREOF** and of the identity of the appearing party, her other general information being known to me from her statements, I, the Notary, **SO ATTEST:  ALICIA ISABEL MARTÍNEZ PÉREZ AND CARMEN ALICIA PÉREZ DÍAZ. NOTARY PUBLIC.**



[Illegible stamp.]

I, ALICIA I. MARTÍNEZ PÉREZ, ATTORNEY REGISTGERED UNDER NO. 5808 of the ATTORNEYS REGISTRY OF THE MINISTRY OF JUSTICE AND AS SECRETARY OF CORPORACIÓN CUBA RON, S.A., A CUBAN COMPANY INCORPORATED BY MEANS OF PUBLIC DOCUMENT NO. 76 DATED NOVEMBER 8, 1993 EXECUTED BEFORE DR. FELICITAS REGLA LÓPEZ SOTOLONGO, NOTARY PUBLIC OF THE SPECIAL NOTARY OFFICE OF THE MINISTRY OF JUSTICE OF THE REPUBLIC OF CUBA

CERTIFY:

FIRST:  That The Minutes Book of this Corporation shows that on December 31, 1993, a special General Shareholders' Meeting was held, adopting the following resolutions, among others:

> **RESOLUTION No. 8**   To designate Alicia Isabel Martínez Perez as Secretary of the General Shareholders' Meeting and Board of Directors of Coporación Cuba Ron S.A.

SECOND: At the special General Shareholders' Meeting of this Company held on May 23, 1994, the resolution which reads verbatim as follows was adopted, among others:

> **RESOLUTION NO. 31/94**:  To approve the transfer of the Series B share with a value of ONE THOUSAND (1,000.00) USD held by José A. Muñiz to Lourdes Rizo Saavedra.

THIRD:  At the special General Shareholders' Meeting of this Company held on December 21, 1996, the following resolutions were adopted, among others:

> **RESOLUTION No. 14/96**:  To approve the transfer of the 2,499 shares with a value of 1,000 (one thousand) dollars each held by Havana Rum and Liquors S.A. in Corporación Cuba Ron, S.A. to Luis Perdomo Hernández, who henceforth becomes majority shareholder.

> **RESOLUTION No. 15/96**:  To approve the proposed transfer of shares by assignment from the shareholders of Havana Rum and Liquors S.A. to the Coporación Cuba Ron, S.A., which henceforth makes it the majority shareholder of Havana Rum and Liquors, S.A. since it holds 2,499 shares of two thousand dollars (USD 2,000.00) each, of which 1,249 are Series A shares and 1,250 are Series B.

FOURTH:  At the special General Shareholders' Meeting of this Company held on February 2, 1999, the following resolutions were adopted, among others:

> **RESOLUTION No. 1-99:**  To convert the Series B Share owned by Lourdes Rizo into the Series A Share with the same rights belonging to this series, so that all Company shares are now Series A.

> **RESOLUTION No. 2-99:** Approve the transfer by assignment of the shares belonging to Luis Perdomo Hernández and Lourdes Rizo to the following entities:

-  834 shares of one thousand (1,000) USD each, representing a total of eight hundred thirty-four thousand dollars (USD 834,000.00), are transferred to the Matanzas Beverage and Soft Drink Company.

-  833 shares of one thousand (1,000) USD each, representing a total of eight hundred thirty-three thousand dollars (USD 833,000.00), are transferred to the Villa Clara Beverage and Soft Drink Company.

-  833 shares of one thousand (1,000) USD each, representing a total of eight hundred thirty-three thousand dollars (USD 833,000.00), are transferred to the Cienfuegos Beverage and Soft Drink Company.



[Illegible stamp.]

**RESOLUTION No. 3-99:**  To cancel Share Certificates Nos. 1 and 2 issued by the Company on November 8, 1998 and in their place approve the issuance of new Share Certificates representing the shares acquired by the new shareholders, summarized as follows:

> CERTIFICATE No. 1:  Issued to the Matanzas Beverage and Soft Drink Company, covering 834 shares of one thousand (1,000) USD each, representing a total of EIGHT HUNDRED THIRTY-FOUR THOUSAND (834,000.00) USD. This Certificate covers share numbers 1 through 834, inclusive.

> CERTIFICATE No. 2:  Issued to the Villa Clara Beverage and Soft Drink Company, covering 833 shares of one thousand (1,000) USD each, representing a total of EIGHT HUNDRED THIRTY-THREE THOUSAND (833,000.00) USD. This Certificate covers share numbers 835 through 1,667, inclusive.

> CERTIFICATE No. 3:  Issued to the Cienfuegos Beverage and Soft Drink Company, covering 833 shares of one thousand (1,000) USD each, representing a total of EIGHT HUNDRED THIRTY-THREE THOUSAND (833,000.00) USD. This Certificate covers share numbers 1,668 through 2500, inclusive.

**RESOLUTION No. 4-99**: To designate Luis Perdomo Hernández, Joan González Escalona and Lourdes Rizo Saavedra as permanent representatives of the Matanzas, Villa Clara and Cienfuegos Beverage and Soft Drink Companies, respectively, at the Shareholders' Meeting and on the Board of Directors.

**RESOLUTION No. 5-99:**  To ratify Luis Perdomo Hernández, Juan González Escalona and Lourdes Rizo Saavedra in their positions as Chairman, Vice Chairman and Treasurer of the Corporation's Board of Directors and Shareholders' Meeting.

I ALSO CERTIFY:  That the undersigned legitimately holds and exercises her position as Company Secretary, and that the duties, powers and authorities pertaining to said position are currently in effect as certified, there being no record in this company's files that they have subsequently been modified, suspended or repealed in any way whatsoever, which is stated under the strict liability of the Certifying Party.

This certification is issued so that it may be used for the intended purposes in the City of Havana on March 8, 1999.

[Signature]
Alicia I. Martínez Pérez
Secretary

> **CUBA RON S.A.**
>
> **COPORACION**
>
> **OFFICE OF THE**
>
> **CHAIRMAN**

[Illegible Notary Statement]

The preceding document was recorded in the following Registries:

**CENTRAL CORPORATIONS REGISTRY**

**BOOK:** 135

**FOLIO:** 51  reverse

**PAGE:** 9993

**SECTION**: 1

**ENTRY**: 2

**COMMERCIAL REGISTRY** *1* **OF HAVANA**

**BOOK:** 1188

**FOLIO:** 190 reverse

**PAGE:** 16726

**ENTRY:** 2

Issued in the City of Havana on *March 15, 1999.*

Republic of
Cuba

Central
Corporations
Registry

Republic of
Cuba

Central
Corporations
Registry

[Tax stamps]

[Seal]

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK      )
                       )      ss
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of **Transfer of Shares**, completed on 01/25/2010, originally written in Spanish.

Craig A. Adkins
Director of Business Development
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

MARCEL HENRIQUE VOTLÚCKA
Notary Public, State of New York
No: 01VO6154182
Certificate Filed in New York County
Qualified in Kings County
Commission Expires October 23, 20 10

# NOTARIA ESPECIAL

**DOCUMENTO No.** _511_

_Acta de Protocolización_

**NOTARIO** _____

**FECHA** _15 de Marzo_ **DE 19** _99_

## COMPARECIENTES

_Alicia Isabel Martínez Díaz_

**NUMERO:** ----------------- 511 --------------------

----------- **ACTA DE PROTOCOLIZACION**-------------

Ciudad de La Habana,    15 de marzo de 1999. ------

------------------**ANTE MI**-------------------------

**LICENCIADA CARMEN ALICIA PÉREZ DÍAZ**, Notaria con competencia nacional y sede en la Notaría Especial del Ministerio de Justicia de la República de Cuba.---------------------------------

------------------ **COMPARECE**----------------------

**ALICIA ISABEL MARTÍNEZ PÉREZ**, natural de México, ciudadana cubana, mayor de edad, casada, abogada, vecina de calle Santa Catalina número 657, Vibora, Municipio de Diez de Octubre, en esta Ciudad, con Identidad Permanente número 58110510115. ------------------------------------

**CONCURRE:** A nombre y en representación de la sociedad mercantil de nacionalidad cubana denominada **CORPORACIÓN CUBA RON, S.A.**, constituida por la Doctora Felicitas Regla López Sotolongo a virtud de la escritura pública número 76 autorizada el 8 de noviembre de 1993, inscripta en el Registro Central de Compañías Anónimas, primera inscripción en el libro 135, folio 50, hoja 9993, sección primera y en el Mercantil Primero de La Habana en el libro 1188, folio 187, hoja 16726, primera inscripción el día 9 de noviembre de 1993, en su carácter de Secretaria de la misma, lo que acredita con el documento que por este acto viene a protocolizar.

**ASEGURA HALLARSE** en el pleno goce y ejercicio de sus derechos civiles y tiene a mi juicio la capacidad legal necesaria para este acto y **DICE:-**

**PRIMERO:** Que me requiere a mí, la Notaria, para protocolizar a continuación de la presente Acta, el siguiente documento: --------------------------

Certificación emitida por la compareciente el día 8 de marzo actual, relacionada con el **acuerdo 8** adoptado en la sesión extraordinaria de la Junta General de Accionistas efectuada el 31 de diciembre de 1993; el **acuerdo 31** adoptado en la sesión extraordinaria de la Junta General de Accionistas de la compañía, celebrada el día 23 de mayo de 1994; **acuerdos 14 y 15** adoptados por el propio órgano social en sesión extraordinaria efectuada el día 21 de diciembre de 1996; y los acuerdos **1,2,3,4** y **5** adoptados en sesión extraordinaria del mismo órgano social celebrada el 2 de febrero del corriente año. ----------------

**SEGUNDO:** Yo, la Notaria, procedo a la protocolización del citado documento, el cual consta de dos hojas de papel escritas de forma automatizada en idioma español. ------------------

**TERCERO:** La aquí compareciente declara a todos los efectos legales procedentes, ser parte interesada, que el documento es auténtico y que los datos que contiene son ciertos, respondiendo a terceros de todos los perjuicios que con el mismo pudiera ocasionar si resultare falso. ------

**ASI LO DICE** la compareciente a mi presencia. -----

**LEIDA INTEGRAMENTE** y en un solo acto esta acta por mí, la Notaria, a la requirente, conforme en su contenido, la ratifica y firma. ---------------



**DE TODO LO CUAL** y de la identidad de la compareciente, constándome sus demás generales por sus manifestaciones. Yo, la Notaria, **DOY FE.-FIRMADO: ALICIA ISABEL MARTÍNEZ PÉREZ Y LICENCIADA CARMEN ALICIA PÉREZ DÍAZ. NOTARIO.** ----

LIC. ALICIA I. MARTÍNEZ PÉREZ, ABOGADA INSCRITA AL NRO. 5808 DEL REGISTRO DE ABOGADOS DEL MINISTERIO DE JUSTICIA Y EN FUNCIÓN DE SECRETARIA DE LA CORPORACIÓN CUBA RON, S.A., SOCIEDAD CUBANA, CONSTITUIDA MEDIANTE ESCRITURA PÚBLICA NRO. 76 DE 8 DE NOVIEMBRE DE 1993, OTORGADA ANTE LA DRA. FELICITAS REGLA LÓPEZ SOTOLONGO, NOTARIA DE LA NOTARÍA ESPECIAL DEL MINJUS DE LA REPÚBLICA DE CUBA.....................

CERTIFICO:.............……………….........................................................................................................

PRIMERO : Que en el Libro de Actas de esta Corporación, consta que con fecha 31 de diciembre de 1993 se reunió en sesión extraordinaria la Junta General de Accionistas, adoptando entre otros el siguiente: .....

   ACUERDO No. 8 : Designar a la Licenciadà Sra. Alicia Isabel Martínez Pérez, como Secretaria de Junta General de Accionistas y de la Junta de Directores de la Corporación Cuba Ron S.A...............

SEGUNDO : Que en  sesión extraordinaria de la Junta General de Accionistas de esta Compañía, celebrada con fecha 23 de mayo de 1994, se adoptó entre otros el acuerdo que literalmente dice: ..........

   ACUERDO No. 31/94 : Aprobar el traspaso de la acción de la Serie B por valor de MIL (1000.00) USD que posee el Sr. José A Muñiz a favor de la Sr. Lourdes Rizo Saavedra……….......…................

TERCERO : Que en  sesión extraordinaria de la Junta General de Accionistas de esta Compañía, celebrada con fecha 21 de diciembre de 1996, se adoptó entre otros los acuerdos siguientes:.…..............

   ACUERDO No. 14/96 : Aprobar el traspaso de las 2499 acciones por valor de 1 000 (mil) dólares cada una que posee Havana Rum and Liquors S.A. en la Corporación Cuba Ron, S.A. a favor del Sr. Luis Perdomo Hernández, quien en lo adelante se convierte en accionista mayoritario .......................

   ACUERDO No. 15/96 : Aprobar la propuesta de traspaso de acciones por cesión de los accionistas de la compañía Havana Rum and Liquors, S.A. a favor de la Corporación Cuba Ron, S.A., lo cual la convierten en lo adelante en el accionista mayoritario de la compañía Havana Rum and Liquors, S.A. al ser la titular de 2499 acciones de dos mil dólares (2000.00 usd) cada una, de las cuales1249 corresponden a la serie A y 1250 acciones a la Serie B……………………..................................................

CUARTO : Que en  sesión extraordinaria de la Junta General de Accionistas de esta Compañía, celebrada con fecha 2 de febrero de 1999, se adoptaron entre otros los acuerdos siguientes:…..........…………........

   ACUERDO Nro. 1-99 : Convertir la Acción de la Serie B, propiedad de la Sra. Lourdes Rizo, en la Acción de la Serie A, con los mismos derechos que a esta serie corresponde y con lo cual quedan la totalidad de las acciones de la Compañía en la Serie A..................................................................

   ACUERDO Nro. 2-99 : Aprobar el traspaso por cesión de las acciones pertenecientes al Sr. Luis Perdomo Hernández y a la Sra. Lourdes Rizo a favor de  las entidades  siguientes:............................

   – Empresa de Bebidas y Refrescos Matanzas, se le traspasan 834 acciones de mil (1000) USD cada una, que representan un total de ochocientos treinta y cuatro mil dólares (834 000.00 USD...

   – Empresa de Bebidas y Refrescos Villa Clara, se le traspasan 833 acciones de mil (1000) USD cada una, que representan un total de ochocientos treinta y tres mil dólares (833 000.00 USD......

   – Empresa de Bebidas y Refrescos Cienfuegos, se le traspasan 833 acciones de mil (1000) USD cada una, que representan un total de ochocientos treinta y tres mil dólares (833 000.00 USD).....

**ACUERDO NRO. 3-99:** Cancelar los Certificados de Acciones No. 1 y 2 emitidos por la Compañía en fecha 8 de noviembre de 1993 y en su lugar aprobar la emisión de nuevos Certificados de Acciones que representen las acciones adquiridas por los nuevos titulares y que se resumen así:.....................

CERTIFICADO NO. 1: A favor de Empresa de Bebidas y Refrescos Matanzas, amparando 834 acciones de mil (1000) USD cada una, que representan un total de OCHOCIENTOS TREINTA Y CUATRO MIL (834 000.00) USD. Este Certificado ampara las acciones número 1 al 834, ambos inclusive:.................................................................................................................................................................

CERTIFICADO NO. 2: A favor de Empresa de Bebidas y Refrescos Villa Clara, amparando 833 acciones de mil (1000) USD cada una, que representan un total de OCHOCIENTOS TREINTA Y tres MIL (833 000.00) USD. Este Certificado ampara las acciones número 835 al 1,667, ambos inclusive.....................................................................................................................................................................

CERTIFICADO NO. 3: A favor de Empresa de Bebidas y Refrescos Cienfuegos, amparando 833 acciones de mil (1000) USD cada una, que representan un total de OCHOCIENTOS TREINTA Y tres MIL (833 000.00) USD. Este Certificado ampara las acciones número  1,668 al 2,500, ambos inclusive.....................................................................................................................................................................

**ACUERDO Nro. 4-99:** Designar al Sr. Luis Perdomo Hernández, al Sr. Juan González Escalona y a la Sra. Lourdes Rizo Saavedra como representantes permanentes de las Empresas de Bebidas y Refrescos de Matanzas, Villa Clara y Cienfuegos respectivamente, en la Junta de  Accionistas y de Directores...........................................................................................................................................................

**ACUERDO Nro. 5-99:** Ratificar al Sr. Luis Perdomo Hernández, al Sr. Juan González Escalona y a la Sra. Lourdes Rizo Saavedra en sus cargos de Presidente, Vicepresidente y Tesorera respectivamente de la Junta de Directores y de la Junta de Accionistas de la Corporación ..................

ASIMISMO CERTIFICO: Que la que suscribe se encuentra en la posesión y ejercicio legítimo de su cargo de Secretaria de la Sociedad y que las funciones, facultades y atribuciones correspondientes a dicho cargo se hayan vigentes conforme han sido certificadas, no constando en los archivos de esta compañía que por actas posteriores hayan sido modificados, suspendidos o derogados en forma alguna, lo cual se afirma bajo la estricta responsabilidad de la que Certifica..................................................................................

Y para que pueda ser utilizada a los fines previstos, se expide la presente certificación, en la Ciudad de la Habana, a los 8 días  del  mes de marzo de 1999.

Lic. Alicia I. Martínez Pérez
Secretaria

CUBARON S. A.
CORPORACION
PRESIDENCIA

EN SU MATRIZ, *que se*
...r el Protocolo de la Notaria Especial ...
... ..uder sellos de timbre por ...
*la empresa culo ...*
15

3
*marzo*

---

**Inscrito el documento que antecede en los Registros siguientes:**

## REGISTRO CENTRAL DE COMPAÑIAS ANONIMAS:

LIBRO: *135*

FOLIO: *51 vts*

HOJA: *9993*

SECCION: *1ra*

INSCRIPCION: *2da*

REGISTRO MERCANTIL *1ro* DE LA HABANA:

LIBRO: *1188*

FOLIO: *190 vts*

HOJA: *16726*

INSCRIPCION: *2da*

Dado en la Ciudad de La Habana, a los _____ días

del mes de *Marzo* de 19 *99* .



# EXHIBIT B

# SPECIAL NOTARY'S OFFICE

# OF THE MINISTRY OF JUSTICE

## DEED No. 76/93

## FORMATION OF CORPORATION

**NOTARY:**   LIC. FELICITAS REGLA LOPEZ SOTOLONGO

**DATE:** November 8, 1993

**PRINCIPALS:**

LUIS FRANCISCO PERDOMO HERNANDEZ

JOSE ANTONIO MUÑIZ DELGADO

**NUMBER:**                                        SEVENTY-SIX

## FORMATION OF A CORPORATION

City of Havana, November 8, 1993

### BEFORE ME,

**DR. FELICITAS REGLA LOPEZ SOTOLONGO,** Notary in the Special Notary's Office in charge of the Registry and Notaries Administration of the Ministry of Justice of the Republic of Cuba,

### THERE APPEARED:

**AS THE FIRST PARTY: LUIS FRANCISCO PERDOMO HERNANDEZ**, a native of Havana, Cuban citizen, of legal age, married, Economist, residing at Calle 8 No. 17030 between A and B, Altahabana, municipality of Boyeros in this City, with Permanent Identity No. 43101000922.

**AS THE SECOND PARTY: JOSE ANTONIO MUÑIZ DELGADO**, a native of Remedios, Villa Clara, Cuban citizen, of legal age, Industrial Engineer, residing at Calle San Pablo No. 368 [illegible], between Mariano and Línea del [illegible], municipality of Cerro in this City, with Permanent Identity No. 39070904944.

Mr. Luis Francisco Perdomo **APPEARED** in his capacity as President of the Corporation known as **HABANA RUM AND LIQUOR, S.A.,** registered in the First Commercial Registry of Havana on October 15, 1993, in Book 1188, Folio 163, and in the Central Corporations Registry, Book 135, Folio 26, and Mr. José Antonio Muñiz Delgado **APPEARED** on his own behalf, in exercise of his own rights.

**THEY CONFIRMED** that they were in full enjoyment and exercise of their civil rights and that they had, as in my opinion they do have, the necessary legal capacity to issue this document, whereof I am absolutely certain, and they declared that they

### GRANT

the following:

**ONE:** That they have agreed to form, and do so herein, a commercial company in the form of a corporation, known as **CORPORACION CUBA RON S.A.,** which shall be governed by the Articles of Incorporation consisting of fourteen typewritten sheets in Spanish,

[left margin]
Lic. [illegible] Infaz, Attorney registered under No. 12834 of the General Roll of Jurists of the Ministry of Justice, acting as Legal Advisor to CORPORACION CUBA RON, S.A., a Cuban mercantile company formed via Public Deed No. 76 of November 8, 1993, in the Special Notary's Office of the Ministry of Justice, HEREBY CERTIFIES that this Document is a true and accurate copy of the original which is located in the archives in my care.
City of Havana, 10/2/08.                                        [signature]
                                                           Signature and Seal
[seal]
Cuba Ron Corporation, S.A.
Legal Department                     [canceled tax stamps]

which have been read out loud by me, the Notary, and all signed by the appearing parties, which are appended to this Deed so that they form an integral part hereof.

## DOMICILE

**TWO:** The corporate domicile is set at Calle 44 No. 305, between Tercera A and Quinta Avenida, Miramar, municipality of Playa in this City; offices, representative offices, branches and subsidiaries may be founded both in Cuba and abroad, and interests in entities formed abroad may be held as well.

## CORPORATE OBJECTIVE

**THREE:** The corporate objective of the CORPORACION CUBA RON S.A. shall be:

Production and marketing of rum and other alcoholic beverages of various types and qualities.

Undertaking foreign trade transactions related to the export of rum and other alcoholic beverages and the import of the consumables, parts, equipment, materials and all other items necessary for their production and maintenance.

Holding interests in other domestic or foreign entities, subscribing for shares, bonds and any other type of corporate interests, as well as creating subsidiaries and branches abroad.

Forming associations with any foreign entity; conducting compensation transactions, either directly or acting as a center in triangular transactions, acting as agent, representative or commission agent, both for domestic and foreign entities within the national territory or abroad.

Holding trademarks, patents and other modes of industrial property, offering and receiving licenses, as well as conducting any licit commercial activity connected with its corporate objective or any other activities that it may expediently undertake.

Operating in the country in domestic currency and in freely-convertible currency (FCC), and applying FCC to the financing of its expenses and disbursements deriving from the accomplishment of its objectives in proportion to its income.

## TERM

**FOUR:** The company is formed for an indefinite period, and may be dissolved for the reasons listed

[left margin]

Lic. [illegible] Infaz, Attorney registered under No. 12834 of the General Roll of Jurists of the Ministry of Justice, acting as Legal Advisor to CORPORACION CUBA RON, S.A., a Cuban mercantile company formed via Public Deed No. 76 of November 8, 1993, in the Special Notary's Office of the Ministry of Justice, HEREBY CERTIFIES that this Document is a true and accurate copy of the original which is located in the archives in my care.

City of Havana, 10/2/08.                                         [signature]
                                                          Signature and Seal

[seal]

Cuba Ron Corporation, S.A.

Legal Department                      [canceled tax stamps]

in Article Thirty-Nine of its Articles of Incorporation or for the reasons provided for in articles 170 and 221 of the Commercial Code.

## CAPITAL AND STOCK

**FIVE:** The authorized and paid in capital of CORPORACION CUBA RON S.A. is **TWO MILLION FIVE HUNDRED THOUSAND UNITED STATES DOLLARS** (USD 2,500,000) and shall be represented by two thousand five hundred (2,500) shares of one thousand United States dollars (USD 1,000) par value each.

From the authorized corporate capital, the Havana Rum and Liquors corporation subscribes and pays for two million four hundred ninety-nine thousand United States dollars (USD 2,499,000) which shall be represented by two thousand four hundred ninety-nine (2,499) shares, and Mr. José Antonio Muñiz Delgado subscribes and pays one thousand United States dollars (USD 1,000) that shall be represented by one (1) share.

The shares shall be registered and indivisible and of equal par value each, which may be paid in cash, kind or rights.

The shares are divided into two series, A and B, and shall have the same par value each, with the same rights and obligations.

Series A is composed of consecutively numbered shares starting from number one and only the same natural or legal person of Cuban nationality may be the holder thereof.

Series B is composed of consecutively numbered shares starting from number one and a natural or legal Cuban or foreign person shall be the holder thereof.

## GOVERNANCE

**SIX:** The representation, management and administration of the company shall, in the first place, be the responsibility of the General Meeting of Stockholders, wherein the supreme interests of the company reside, and in the second place, the Board of Directors.

General Meetings of Stockholders can be Regular or Special. They shall be presided over by the Chairperson of the Board of Directors, and the person holding the position of Secretary of the Board shall act as Secretary of the Meeting. Resolutions shall be adopted with at least the approval of the holders of the majority of the Series A shares and the holders of the majority of the Series B shares.

The Board of Directors shall be composed of the Chairperson, the Vice Chairperson and the Treasurer. Absent an agreement to the contrary, every three years the positions of Chairperson and Vice Chairperson shall be rotated between the proposed Directors.

[left margin]

Lic. [illegible] Infaz, Attorney registered under No. 12834 of the General Roll of Jurists of the Ministry of Justice, acting as Legal Advisor to CORPORACION CUBA RON, S.A., a Cuban mercantile company formed via Public Deed No. 76 of November 8, 1993, in the Special Notary's Office of the Ministry of Justice, HEREBY CERTIFIES that this Document is a true and accurate copy of the original which is located in the archives in my care.

City of Havana, 10/2/08.                                                                                    [signature]
                                                                                                         Signature and Seal

[seal]

Cuba Ron Corporation, S.A.
Legal Department                              [canceled tax stamps]

**SEVEN:** This City and its Courts are designated for the conduct of all in-court and out-of-court proceedings deriving herefrom.

**THUS DECLARED AND GRANTED** by the appearing parties in my presence, to whom I issued the relevant legal warnings and in particular, that regarding the mandatory nature of the registration of this instrument with the corresponding Registry.

This Document was **READ OUT LOUD IN ITS ENTIRETY** and in one single action by me, the Notary, to the issuing parties who, being in agreement with the contents, ratified it and signed it in witness thereof.

I, the Notary, HEREBY CERTIFY **ALL THE ABOVE** and the identity of the appearing parties, assuring myself of their particulars by their statements.

SIGNED. LUIS FRANCISCO PERDOMO HERNANDEZ, JOSE ANTONIO MUÑIZ DELGADO, AND LIC. FELICITAS REGLA LOPEZ SOTOLONGO.

[left margin]
Lic. [illegible] Infaz, Attorney registered under No. 12834 of the General Roll of Jurists of the Ministry of Justice, acting as Legal Advisor to CORPORACION CUBA RON, S.A., a Cuban mercantile company formed via Public Deed No. 76 of November 8, 1993, in the Special Notary's Office of the Ministry of Justice, HEREBY CERTIFIES that this Document is a true and accurate copy of the original which is located in the archives in my care.
City of Havana, 10/2/08.                                                                                  [signature]
                                                                                                    Signature and Seal
[seal]
Cuba Ron Corporation, S.A.
Legal Department                              [canceled tax stamps]

[illegible stamp]
November 8, 1993                                    [signature]
                                                    [seal]
                                                    Ministry of Justice
                                                    Special Notary's Office

 [illegible stamp]

The above document has been registered with:

The Central Corporation Registry
Book 135
Folio 50
Page 9993
First Section
1st Registration                [illegible seal and signature]

First Commercial Registry of [cut off]
Book 1188
Folio 187
Page 16776                           [illegible seal and signature]

                                                          [tax stamps]

[left margin]
Lic. [illegible] Infaz, Attorney registered under No. 12834 of the General Roll of Jurists of the Ministry of Justice, acting as Legal Advisor to
CORPORACION CUBA RON, S.A., a Cuban mercantile company formed via Public Deed No. 76 of November 8, 1993, in the Special Notary's
Office of the Ministry of Justice, HEREBY CERTIFIES that this Document is a true and accurate copy of the original which is located in the
archives in my care.
City of Havana, 10/2/08.                                   [signature]
                                                    Signature and Seal

[seal]
Cuba Ron Corporation, S.A.
Legal Department                        [canceled tax stamps]

CORPORACION CUBA RON, S.A.

ARTICLES OF INCORPORATION

Name and Nature

ARTICLE ONE: For the achievement of the licit objectives detailed below, a corporation has been founded with its own legal personhood and assets under the name of CORPORACION CUBA RON, S.A., hereinafter and for purposes of these Articles of Incorporation known as THE CORPORATION, that shall be governed by these Articles of Incorporation, and the provisions of the Commercial Code of the Republic of Cuba and other legal provisions in effect in Cuba.

Nationality and Domicile

ARTICLE TWO: THE CORPORATION is a national of Cuba and its domicile is set at Calle 44 No. 305, corner of 3rd A and 5th Avenida, Miramar, City of Havana, but it may be changed by resolution of the General Meeting of Stockholders which may create offices, representative offices, branches and subsidiaries both in Cuba and abroad, and may hold interests in entities formed abroad.

Corporate Objective

ARTICLE THREE: THE CORPORATION shall have as its objective the following activities:

1.  Production and marketing of rum and other alcoholic beverages of various types and qualities.

2.  Undertaking foreign trade transactions related to the export of rum and other alcoholic beverages and the import of the consumables, parts, equipment, materials and all other items necessary for their production and maintenance.

3.  Holding interests in other domestic or foreign entities, subscribing for shares, bonds and any other type of corporate interests, as well as creating subsidiaries and branches abroad.

4.  Forming associations with any foreign entity; conducting compensation transactions, either directly or acting as a center in triangular transactions, acting as agent, representative or commission agent, both for domestic and foreign entities within the national territory or abroad.

5.  Holding trademarks, patents and other means of industrial ownership, offering and receiving licenses, as well as conducting any licit commercial activity connected with its corporate objective or any other activities that it may expediently undertake.

6.  Operating in the country in domestic currency and in freely-convertible currency (FCC), and applying FCC to the financing of its expenses and disbursements deriving from the accomplishment of its objectives in [cut off]

ARTICLE FOUR: THE CORPORATION is formed for an indefinite period.

THE CORPORATION may be dissolved for the reasons listed in Article Thirty-Nine of these Articles of Incorporation or for the reasons provided for in Articles 170 and 221 of the Commercial Code.

Corporate Capital

ARTICLE FIVE. The authorized capital of THE CORPORATION is two million five hundred thousand United States dollars (USD 2,500,000) and is represented by two thousand five hundred (2,500) shares of one thousand United States dollars (USD 1,000) par value each.

Regarding the Shares

ARTICLE SIX: The shares shall be registered and of equal par value each, which may be paid in cash, kind or rights.

The shares are divided into two series, A and B, and shall have the same par value each, with the same rights and obligations.

Series A is composed of consecutively numbered shares starting from number one and only the same natural or legal person of Cuban nationality may be the holder thereof.

Series B is composed of consecutively numbered shares starting from number one and a natural or legal Cuban or foreign person shall be the holder thereof.

ARTICLE SEVEN: The shares shall be represented by certificates which must show the number of shares they represent and the consecutive numbers of the shares represented. The certificates must be signed by the Chairperson and the Secretary.

The shares are indivisible. In case of joint ownership, the joint owners shall have to appoint a representative to exercise the rights conferred thereby.

The holders of the shares enjoy the right:

a)   to one vote per share;

b)   to analyze the income statement, financial statements and all documentation related thereto, and may request all the relevant information to determine the economic situation of THE CORPORATION and the development thereof within a period of thirty days prior to the date of the Regular General Meeting of Stockholders or on the occasion of this Meeting;

[two sets of initials]                                      2                                      [seal]
                                                                                          Ministry of Justice
                                                                                   Special Notary's Office
                                                                                           [signature]

c)   to the proportional share belonging to it in the profits that are agreed upon for distribution;

d)   to analyze the Annual Report and to approve it;

e)   to participate in the assets resulting from liquidation of THE CORPORATION, in the form established in these Articles of Incorporation.

The shares cannot be pledged, used as collateral or encumbered in any form whatsoever without the prior authorization of the General Meeting of Stockholders via a resolution adopted unanimously. If their encumbrance is authorized, this shall be recorded in the Stock Book when constituted, and once paid, the release thereof shall be confirmed. In the case of encumbered shares, the holder is the only person who can exercise the rights granted by the shares.

ARTICLE EIGHT: The shares shall be recorded in the Stock Registry that must be kept by THE CORPORATION; it shall show the number of the share or certificate and, in the latter case, the number of shares it represents, the name of its holder and any limitation or encumbrance existing thereon.

In case of loss, theft or destruction of the share or certificate, the holder recorded in the Stock Book may request a duplicate. When it is issued, it shall show that it is a duplicate.

ARTICLE NINE: If the par value of the certificate has not been fully paid in, the certificate and the Stock Book shall show the partial amount paid, and when it is paid in full or if partial payments are made, they shall be recorded on the share or certificate and in the Stock Book.

ARTICLE TEN: Shares cannot be sold, encumbered, pledged, assigned or transferred to third parties in any form whatsoever without the prior unanimous authorization of the General Meeting of Stockholders.

When the transfer of shares is authorized, it shall take effect only when recorded in the Stock Book; the authorization of the General Meeting of Stockholders is the proper document for recording the transfer in the Stock Book. In case of contradiction between the person appearing as holder on the share and the person appearing as such in the Stock Book, the latter shall prevail over what is shown on the share.

ARTICLE ELEVEN: The partner that wishes to transfer to a third party all or part of its shares shall have to request it in writing from the Board of Directors, which shall convene the General Meeting of Stockholders, which shall be held within thirty days following its convocation and not more than forty days after receipt of the written request by the Board of Directors.

[cut off] of Stockholders.

On Governance, Management and Administration

ARTICLE TWELVE: The governance, management and administration of THE CORPORATION are provided, in the first place, by the General Meeting of Stockholders as the supreme body, and in the second place by the Board of Directors.

On the General Meeting of Stockholders

ARTICLE THIRTEEN: The General Meeting of Stockholders is the sovereign body of the corporation, whose decisions are binding on the stockholders and the Board of Directors. Its purpose is to deliberate and resolve on all matters submitted for its attention, collecting its decisions in resolutions that are binding on the stockholders once they are adopted and adjusted to the provisions of these Articles of Incorporation and the Laws. The resolutions must be carried out by the Board of Directors.

ARTICLE FOURTEEN: The General Meeting of Stockholders is the meeting of the holders of Series A and Series B shares, convened to deliberate and resolve on company matters that are on the Agenda within its sphere of competence.

General Meetings of Stockholders are held at the company domicile or other location that the partners agree upon in writing after the convocation; the Agenda must be appended to the convocation.

General Meetings of Stockholders can be Regular or Special. Regular General Meetings must be held within the first two months of each year; Special General Meetings are all those that are held aside from the date indicated for the Regular General Meetings.

ARTICLE FIFTEEN: The General Meeting of Stockholders must be convened in writing, sent by certified mail, telex or fax, addressed to each of the stockholders, and must be issued by the Chairperson of the Board of Directors when it involves a Regular General Meeting.

Special sessions of the General Meeting of Stockholders can be convened by the Chairperson or by 50% of the Directors or by the majority of the holders of Series A or Series B shares. In all cases, the reasons for the convocation and the Agenda must be set forth.

ARTICLE SIXTEEN: The General Meeting of Stockholders must be presided over by the Chairperson of the Board of Directors and the person holding the position of Secretary of the Board of Directors shall act as the Secretary of the Meeting. In the absence of either or both at the time the Meeting is held, the stockholders present shall appoint one or more person(s) to perform these duties during the Meeting.

The Regular General Meeting of Stockholders must examine and approve the annual financial statements and other documents presented for its consideration, as well as the proposal for the distribution of profits and others of an economic and financial nature submitted to it.

If, while the Meeting is being held, the stockholders approve the financial statements or demand information in addition to that upon which its approval is conditioned, a Special General Meeting of Stockholders shall be held to resolve on the same within the four days following the date set for the Regular General Meeting.

ARTICLE TWENTY: The Directors or other persons may, if expressly invited, attend the General Meeting of Stockholders in addition to the stockholders. The guests shall have the right to speak but not to vote.

ARTICLE TWENTY-ONE: The Regular General Meeting of Stockholders shall hear and necessarily resolve upon the annual budgets and the analysis of the performance of the budget for the immediately preceding year, the planned development, as well as the principle measures to be adopted to ensure compliance therewith, in addition to the items indicated in Article Twenty of these Articles of Incorporation.

ARTICLE TWENTY-TWO: The following also fall within the sphere of competence of the General Meeting of Stockholders:

a) To appoint the Board of Directors and, from among them, those who shall act as Chairperson, Vice Chairperson and Treasurer.

b) To resolve on increases or decreases in corporate capital and the manner in which they shall be affected.

c) To amend these Articles of Incorporation.

ch) To resolve on the opening of branches, agencies and offices within the national territory or abroad.

d) To resolve on the formation of subsidiaries or affiliates and to take interests in other companies abroad.

e) To authorize the transfer of shares, both of Series A and of Series B.

f) To examine the corporate administration or conduct investigations with respect thereto.

g) To analyze the performance of the annual development plan and projections and to adopt new measures to guarantee or modify the same.

h) To approve the annual financial statements and notes, and to take note of the quarterly financial statements.

i) To approve the formation of optional reserves.

j) To authorize contracts representing acts of ownership of the corporate assets.

k)   To resolve on any matter necessary and beneficial to the development of THE CORPORATION that is submitted to it or proposed by the partners.

l)   To dissolve THE CORPORATION and declare it to be in liquidation.

ll)  To delegate powers from within its sphere of competence to the Board of Directors, the Chairperson or other member of said Board of Directors.

ARTICLE TWENTY-THREE: The vote of approval of all Series A and Series B stockholders shall be required to adopt resolutions in relation to the attributes of the General Meeting of Stockholders identified by letters a), b), c), e), h), j), l) and ll) of the preceding Article.

ARTICLE TWENTY-FOUR: The resolution on a decrease in corporate capital may be carried out after the liquidation of debts and obligations pending as of the date on which the resolution was adopted by the General Meeting of Stockholders, unless the prior consent of the creditors has been obtained.

The resolution on a capital reduction can be carried out by reducing the par value of all shares in Series A and Series B in equal numbers. In both cases, the shares in Series A and in Series B shall maintain the same proportion of participation in the corporate capital established in Article Six.

On the Board of Directors

ARTICLE TWENTY-FIVE: The management and administration body of THE CORPORATION is the Board of Directors, which shall carry out the resolutions of the General Meetings of Stockholders and perform the activities necessary for the achievement thereof, as well as conducting administrative actions and making operating decisions for this purpose.

Representation of THE CORPORATION falls within the sphere of competence of the Board of Directors in matters pertaining to the business and trade thereof, and actions in in-court and out-of-court proceedings, being invested for this purpose with the powers attributed to it by these Articles of Incorporation and the laws.

To exercise the powers of disposal of the corporate assets, it must have an express, specific power of attorney from the General Meeting of Stockholders granted unanimously by all stockholders.

ARTICLE TWENTY-SIX: For the formation of the Board of Directors, the holders of the shares in Series A and B shall propose at least two Directors each to the General Meeting of Stockholders, and they must be unanimously approved by the latter. The Board of Directors is elected for a three-year period.

The Chairperson, Vice Chairperson and Treasurer shall be appointed from among the Directors approved by the General Meeting of Stockholders. Absent an agreement to the contrary, the positions of Chairperson and Vice Chairperson shall rotate between the Directors proposed by the holders of the stock in each of Series A and B.

The General Meeting of Stockholders shall also appoint a Secretary who shall not be a Director and who shall perform his or her duties until he or she is replaced by the Meeting itself.

The Directors may be re-elected indefinitely by the General Meeting of Stockholders.

ARTICLE TWENTY-SEVEN: The Directors – whether or not stockholders in THE CORPORATION – and the Secretary may be removed from their positions by resolution of the General Meeting of Stockholders, upon the justified request of a stockholder or the majority of the Board of Directors. In the same Meeting in which the removal occurred, the proposed replacement must be appointed by the shares in the Series that proposed the Director who was removed.

ARTICLE TWENTY-EIGHT: The Directors forming the Board of Directors shall be jointly liable for the irregularities committed by the Board of Directors or one of its members; in the latter case, immediately after it has come to their attention, it must be reported in writing to the Chairperson or to the Secretary if it was the Chairperson who committed the irregularity. The Chairperson or, when applicable, the Secretary, shall have to convene the General Meeting of Stockholders within the fifteen following days.

This convocation shall occur when the irregularity affects or may affect THE CORPORATION economically, cause harm of any kind, or affect its prestige in any way.

ARTICLE TWENTY-NINE: The Board of Directors shall meet as often as convened by the Chairperson or fundamentally when it is requested by two Directors.

The convocation shall be issued fifteen days in advance of the date of the Meeting, and the meeting shall be held at the corporate premises or other location agreed upon by the parties.

Attendance is required of fifty percent of the Directors appointed by the holder of the shares in each series, including the Chairperson, for the session of the Board of Directors to be valid.

The Board of Directors can meet without prior convocation if all of the Directors are present and unanimously accept the Agenda.

ARTICLE THIRTY: The resolutions from the meetings of the Board of Directors shall be adopted unanimously by the Directors present.

In cases in which agreement cannot be reached, the Chairperson or any Director may submit the matter for decision by the General Meeting of Stockholders.

The corresponding Minutes shall be kept for each session of the Board of Directors, in which the resolutions shall be listed consecutively each year, starting from the first meeting. The Minutes shall be signed by the Secretary with the approval of the Chairperson.

The Minutes shall be circulated among the Directors for their approval within the ten days following the date on which the meeting is held; nonetheless, the resolutions shall go into effect as of the date on which they were adopted.

ARTICLE THIRTY-ONE: The following powers are assigned to the Board of Directors:

a)  To represent THE CORPORATION in all matters and activities, legal acts and matters related to the sphere of operations to which THE CORPORATION may devote its activity in accordance with the corporate objective, as well as in in-court or out-of-court proceedings, binding it with its actions and contracts.

    Said representation shall be exercised as a Board or through the Chairperson in accordance with the provisions of these Articles of Incorporation regarding the powers thereof; the Board of Directors may also grant powers of attorney to any of the Directors or its Treasurer so that they may represent it in specific cases.

b)  To direct the management of all CORPORATION matters necessary for the achievement of the resolutions of the General Meeting of Stockholders and the corporate objective.

c)  To administer all the assets of THE CORPORATION by itself or though a natural or legal person specially empowered for the action in question, subjecting the administrative structure of the companies and its departments to the General Meeting of Stockholders.

ch) To execute administration contracts, adjusting them to the provisions of these Articles of Incorporation and the laws.

d)  To open bank accounts denominated in the currencies it decides upon, and to operate and close them, at a bank in the national or foreign banking systems.

e)  To carry out all applicable transactions with commercial paper, shares or securities in general.

f)  To hire the personnel necessary for the development and achievement of the corporate objective, in accordance with the provisions of the legislation in effect.

g) To review whether the holders of shares subscribed for have paid for them within the time and in the amounts agreed upon.

h) To draw up the economic bases for increases or decreases in authorized capital, submitting them to the General Meeting of Stockholders for its decision.

i) To establish the accounting system best suited to the activity of THE CORPORATION in conformity with internationally accepted principles.

j) To report quarterly to the partners about the course of THE CORPORATION's business, submitting the quarterly financial statements and convening the General Meeting of Stockholders when necessary or appropriate.

k) To present the annual financial statements, the income statement and notes as well as the relevant documents for the consideration of the General Meeting of Stockholders thirty days in advance of the annual Regular General Meeting.

l) Fundamentally, to propose to the General Meeting of Stockholders, at the annual Regular General Meeting, the allocation of profits to each party, the distribution of profits and the amount thereof, as well as the amount of optional reserves considered advisable in addition to those established by law.

ll) To record the registered stockholders and transfer of shares in the Stock Book when authorized, as well as any limitation or obligation on the shares that require recording.

m) To convene the General Meeting of Stockholders in regular or special sessions and to draw up the Agenda.

n) To provide senior management and supervision of all personnel who render services to THE CORPORATION or its departments, arranging for their promotion or demotion.

ñ) To file lawsuits, charges, complaints and appeals in any class of proceedings, whether civil, administrative, criminal or arbitral; to conduct in-court and out-=of-court transactions, to withdraw, resolve or object to the same, granting for such purposes the powers of attorney necessary for attorneys or other representatives.

o) To grant powers of attorney, delegating the powers that can be delegated, to a Director on the Board, official or employee of THE CORPORATION or to a third party. The powers reserved exclusively to the General Meeting of Stockholders cannot be delegated.

ARTICLE THIRTY-TWO: The Directors may be compensated if they hold positions subject to compensation. This compensation may be reviewed at the annual meetings of the General Meeting of Stockholders.

ARTICLE THIRTY-THREE: If a vacancy occurs on the Board of Directors due to resignation, illness or death, the General Meeting shall appoint his or her replacement in accordance with the procedure established in the Articles of Incorporation.

On the Chairperson

ARTICLE THIRTY-FOUR: The Chairperson of the Board of Directors shall be the President of THE CORPORATION, with the following powers, among others:

a)  To distribute among the Directors specific activities, of an administrative or other nature, that fall within the sphere of competence of the Board of Directors. In this case, the designated Director shall be responsible for the achievement of the entrusted activity, regardless of what may correspond to the Chairperson, another Director or the Board of Directors in the specific activity.

b)  To convene and preside over the meetings of the General Meeting of Stockholders and the Board of Directors.

c)  To sign, with the Secretary, the shares and stock certificates.

ch)  To approve the Minutes of the General Meeting of Stockholders and of the meetings of the Board of Directors.

d)  To supervise the performance of tasks entrusted to each Director.

e)  To sign, with the Treasurer, payment orders against the funds of THE CORPORATION.

f)  To represent THE CORPORATION in the arrangement of agreements, contracts and any type of pacts with other natural or legal persons, national or foreign, as well as in the signature of any type of public or private documents.

g)  All those powers of the General Meeting of Stockholders or of the Board of Directors that may be delegated to him or her.

On the Vice Chairperson

ARTICLE THIRTY-FIVE: The Vice Chairperson shall replace the Chairperson in case of his or her absence, illness, disability or death, but he or she shall have, at all times, the powers assigned to him or her by the General Meeting of Stockholders or the Chairperson.

On the Treasurer

ARTICLE THIRTY-SIX: The Director appointed as Treasurer shall have the following powers:

a)  To ensure that the accounting books are kept in conformity with the system agreed upon by THE CORPORATION and to supervise the economic development of THE CORPORATION.

b)  To present the semi-annual financial statements to the Board of Directors and annual statements to the General Meeting of Stockholders.

c)  To offer the economic – accounting basis for the Board of Directors to propose to the General Meeting of Stockholders for the distribution of profits, the amount to distribute and the dividend per share. To make this proposal, it shall have to take into consideration the prospects for development of THE CORPORATION, future liquidity needs and the appropriate working capital.

ch)  To present to the State Finance Committee the financial statements from each of the first three calendar quarters of each year within the month following the close of the quarter, as well as the financial statements for the transactions in each calendar year within the first two months of the following year, in conformity with the provisions of Resolution No. 52 of 1982 of the State Finance Committee.

d)  To sign the payment orders against the company's funds with the Chairperson or through the appointed persons.

e)  Any other assigned to him or her by the General Meeting of Stockholders, the Board of Directors or the Chairperson of THE CORPORATION.

On the Other Directors

ARTICLE THIRTY-SEVEN: The other Directors shall perform the administrative and operating activities assigned to them by the Board of Directors or the Chairperson of THE CORPORATION in addition to those proper to a member of the Board of Directors.

On the Secretary

ARTICLE THIRTY-EIGHT: The Secretary shall have the following powers:

a)  To oversee the archives, the Minute Books of both the General Meeting of Stockholders and the Board of Directors, and the Stock Book for each Series.

b)  To issue certificates after inspecting the books and documents under his or her care and custody.

c)  To sign the stock certificates and Minutes of the General Meeting of Stockholders, as applicable, and of the Board of Directors jointly with the Chairperson.

ch)  To draw up the Minutes of the General Meeting of Stockholders and to circulate them within ten days following the meeting.

d)   To draw up the Minutes of the Board of Directors and to circulate them within ten days following the meeting.

e)   Any other assigned to him or her by the General Meeting of Stockholders, the Board of Directors or the Chairperson of THE CORPORATION.

On the Dissolution and Liquidation of THE CORPORATION

ARTICLE THIRTY-NINE: THE CORPORATION shall be dissolved in the following cases:

a)   If achievement of the corporate objective is impossible due to causes internal to THE CORPORATION or external causes.

b)   When one of the stockholders is declared to be in a state of suspension of payments or bankruptcy.

c)   Due to the repeated inability to adopt a resolution, in conformity with the provisions of Article Seventeen, with regard to the resolutions of the General Meeting of Stockholders, and Article Nineteen with regard to the existence of a quorum.

d)   By agreement of all Series A and Series B stockholders.

e)   Due to a complete loss of the corporate capital of THE CORPORATION or a partial loss thereof that makes company activities impossible.

f)   Due to the bankruptcy of THE CORPORATION.

ARTICLE FORTY: The occurrence of any of the causes listed in the preceding Article shall give rise to the dissolution of THE CORPORATION and the start of the process of liquidation thereof.

Upon the start of the liquidation of THE CORPORATION, the Board of Directors shall cease as of that moment, and the General Meeting of Stockholders shall appoint the liquidators and set the period for carrying out the liquidation operations.

ARTICLE FORTY-ONE: The liquidators are the representatives and administrators of THE CORPORATION and their actions must be directed toward collecting the credits of THE CORPORATION that are due and payable when its dissolution was declared and those that are coming due; to liquidate the obligations pending as of the time of the resolution on the liquidation or subsequent thereto and, in general, to conclude pending transactions.

The company assets shall be valued:

a)   By unanimous agreement of the stockholders.

b)   In case an agreement cannot be reached regarding such value, the stockholders in each series shall propose, as a possible expert, two entities of international repute specializing in the area. If the stockholders in both series agree on the selection of one of them, it shall establish the value of the assets. If this agreement is not reached, the expert shall be selected by random drawing.

The expert must be appointed within six months following the date of the decision to dissolve THE CORPORATION.

The expert's decision shall be final and not subject to appeal.

c)   If the dissolution of THE CORPORATION was the result of a cause provided for in Paragraph c) of Article Thirty-Nine, the assets shall be valued in accordance with the Books.

ARTICLE FORTY-TWO: In conformity with the provisions of the Commercial Code, the liquidators shall have to:

a)   Present to the General Meeting of Stockholders, within a period of twenty days, the inventory of corporate assets with the initial listing of assets and debts from the accounts of THE CORPORATION.

b)   Present to the General Meeting of Stockholders a monthly summary report on the status of the liquidation.

c)   Present to the General Meeting of Stockholders, upon the conclusion of the liquidation, the final list of assets and debts specifying the capital that can be divided among the stockholders.

ARTICLE FORTY-THREE: The liquidators shall carry out the liquidation of corporate assets among the stockholders in accordance with their participations in the corporate capital.

The liquidators shall convene the General Meeting of Stockholders for the distribution of the corporate assets.

The liquidation of the holders of Series B shares shall be carried out in cash and the amount thereof may be transferred abroad at the request of said holders.

November 5, 1993

[signature]                                   [signature]

[two sets of initials]                              14                              [seal]
Ministry of Justice
Special Notary's Office
[signature]

[illegible stamp]
November 8, 1993                                [signature]
                                                [seal]
                                                Ministry of Justice
                                                Special Notary's Office

[illegible stamp]

The above document has been registered with:

The Central Corporation Registry
Book 135
Folio 50
Page 9993
First Section
1st Registration                [illegible seal and signature]

First Commercial Registry of [cut off]
Book 1188
Folio 187
Page 16776
1st Registration                [illegible seal and signature]

Havana, November 9, 1993

                                                [tax stamps]

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK    )
                       )    ss
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of **Escritura No. 76/93 (Cuba Ron Statutes)**, completed on 1/21/2010, originally written in Spanish.

Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

ANTONIO NEBRES
Notary Public, State of New York
No. 01NE6150039
Qualified in New York County
Commission Expires July 24, 2010

# NOTARIA DE

ESPECIAL MINJUS

**ESCRITURA No.** 76/93

CONSTITUCION DE SOCIEDAD ANONIMA

**NOTARIO** LIC. FELICITAS REGLA LOPEZ SOTOLONGO

**FECHA** 8 de noviembre **DE 19** 93

**OTORGANTES**

LUIS FRANCISCO PERDOMO HERNANDEZ

JOSE ANTONIO MUÑIZ DELGADO.-

NUMERO: --------SETENTA Y SEIS--------

CONSTITUCION DE SOCIEDAD ANONIMA--------

Ciudad de La Habana, 8 de noviembre de 1993.--------

--------ANTE MI--------

DOCTORA FELICITAS REGLA LOPEZ SOTOLONGO, Notaria **de** la Notaría Especial a cargo de la Dirección **de** Registros y Notarías del Ministerio de Justicia **de** la República de Cuba.--------

--------COMPARECEN:--------

DE UNA PARTE: LUIS FRANCISCO PERDOMO HERNANDEZ, natural de La Habana, ciudadano cubano, mayor de edad, casado, Economista, vecino de calle 8 número 17030 entre A y B, Altahabana, municipio Boyeros, en esta Ciudad, con Identidad Permanente número 43101000922.--------

DE OTRA PARTE: JOSE ANTONIO MUÑIZ DELGADO, natural de Remedios, Villa Clara, ciudadano cubano, mayor de edad, Ingeniero Industrial, vecino de calle San Pablo número 368 altos, entre Mariano y Línea del Cerro, municipio Cerro, en esta Ciudad, con Identidad Permanente número 39070904944.--------

CONCURREN el señor Luis Francisco Perdomo, en su carácter de Presidente de la Sociedad Anónima denominada HABANA RUM AND LIQUOR S.A., inscripta en el Registro Mercantil Primero de la Habana, en fecha 15 de octubre de 1993 en el Libro 1188, folio 163 y en el Registro Central de Compañías Anónimas Libro 135, folio 26 y el señor José Antonio Muñiz Delgado por sí en uso de sus propios derechos.--------

ASEGURAN HALLARSE en el pleno goce y ejercicio de sus derechos civiles y tener, como a mi juicio tienen, la capacidad legal necesaria para este otorgamiento sin que nada me conste en contrario y dicen que:--------

--------OTORGAN--------

PRIMERO: Que han convenido en constituir y por la presente constituyen una sociedad mercantil en forma de compañía anónima que se denomina CORPORACION CUBA RON S.A. la cual se regirá por los Estatutos que constan de catorce hojas de papel escritas a máquina en idioma español, las que

Asesoría Jurídica

inscrita al No. ... del Registro General de Juristas del Ministerio de Justicia en función de Asesoría Jurídica de la CORPORACION CUBA RON S.A., sociedad mercantil cubana, constituída mediante Escritura Pública Nro. 76 de 8 de noviembre de 1993 en la Notaría Especial del Ministerio de Justicia.
CERTIFICO: Que el presente Documento es copia fiel y exacta de su original, que obra en mi protocolo, mi custodia.
Ciudad de la Habana, ...

Abogada

sido leídas por mí, la Notaria y firmadas todas por los comparecientes, los que se anexan a esta Escritura, para que formen parte integrante de la misma.----

----------DOMICILIO----------

SEGUNDO: El domicilio social se fija en la calle 44 número 305, entre Tercera A y Quinta Avenida, Miramar, municipio Playa, en esta Ciudad pudiendo establecer oficinas, representaciones, sucursales y filiales, tanto en Cuba como en el extranjero, así como tomar participación en entidades constituidas en el extranjero.----

----------OBJETO SOCIAL----------

TERCERO: El objeto social de CORPORACION CUBA RON S.A., será:

- Producción y comercialización de ron y otras bebidas acohólicas de distintos tipos y calidades.-

- Asumir las operaciones de comercio exterior, relacionadas con la exportación de ron y otras bebidas alcohólicas y con la importación de los insumos, piezas, equipos, materiales y todo lo necesario para su producción y el mantenimiento.----

- Poseer participaciones en otras entidades nacionales o extranjeras, suscribiendo acciones, obligaciones y cualquier otro tipo de participación social, así como crear filiales y sucursales en el extranjero.----

- Asociarse con cualquier entidad extranjera; llevar a cabo las operaciones de compensación, ya sea directamente, ya sea actuando como centro de operaciones triangulares, actuar como agente, representante o comisionista, tanto de entidades nacionales como extranjeras, en el territorio nacional y en el extranjero.----

- Ser titular de marcas, patentes y demás modalidades de la propiedad industrial, ofrecer y recibir licencias, así como ejecutar cualquier actividad de lícito comercio vinculada con su objeto social o cualesquiera otras actividades que oportunamente se le asignen.----

- Operar en el país en moneda nacional y en moneda libremente convertible (MLC) pudiendo aplicar MLC al financiamiento de sus gastos y erogaciones derivadas del cumplimiento de sus objetivos en la proporción de sus ingresos.----

----------DURACION----------

CUARTO: La sociedad se constituye por un término indefinido, pudiendo disolverse por las causas enumeradas en el artículo vigésimo noveno de sus

---

*(texto vertical en el margen izquierdo)*

CubaRon S.A.
Asesoría Jurídica

La Celeira Ortíz, Abogada inscrita al No. 121 94 del Registro General de Juristas del Ministerio de Justicia, en función de Asesora Jurídica de la CORPORACIÓN CUBA RON S.A., sociedad mercantil cubana, constituida mediante Escritura Pública Nro. 76 de 8 de noviembre de 1993, en la Notaría Especial del Ministerio de Justicia. CERTIFICO: Que el presente Documento es copia fiel y exacta de su original, que obra en los archivos bajo mi custodia. Ciudad de la Habana, 2/6/08

Firma y cuño

Estatutos  o por las previstas en los artículos del
170 al 221 del Código de Comercio.------------------------

-----------------------CAPITAL Y ACCIONES-----------------

**QUINTO:**  El  capital  autorizado  y  pagado  de  la
CORPORACION CUBA RON S.A., es de DOS MILLONES
QUINIENTOS MIL DOLARES ESTADOUNIDENSES (2 500.000
USD) y estará representado por dos mil quinientas
(2500) acciones de mil dólares estadounidenses
(1000 UDS) valor nominal de cada una.------------------

Del capital social autorizado la sociedad anónima
Havana Rum and Liquors, suscribe y paga dos
millones cuatrocientos noventa y nueve mil dólares
estadounidenses (2 499.000 USD) que estarán
representados por dos mil cuatrocientos noventa y
nueve (2 499) acciones y el señor José Antonio
Muñiz Delgado, suscribe y paga mil dólares
estadounidenses (1 000 USD) que estarán
representados por una acción (1).-----------------------

Las acciones serán nominativas e indivisibles y de
igual valor nominal cada una, el que podrá ser
desembolsado en dinero, en especie o derechos.---------

Las acciones se dividen en dos series A y B, y
serán del mismo valor nominal cada una y con los
mismos derechos y obligaciones.------------------------

La Serie A, está integrada por acciones numeradas
consecutivamente, partiendo del número uno y sólo
podrá ser titular de ellas la misma persona natural
o jurídica de nacionalidad cubana.---------------------

La Serie B, está integrada por acciones numeradas
consecutivamente, partiendo del número uno y será
titular de ellas una persona natural o jurídica
cubana o extranjera.-----------------------------------

---------------------------GOBIERNO---------------------

**SEXTO:** La representación, dirección y
administración de la sociedad, estará a cargo en
primer lugar de la Junta General de Accionistas en
la que radican, los supremos intereses de la
sociedad y en segundo lugar de la Junta de
Directores.--------------------------------------------

Las Juntas Generales de Accionistas pueden ser
Ordinarias o Extraordinarias, las que serán
presididas por el Presidente de la Junta de
Directores y actuará como Secretario el que ocupa
ese cargo en dicha Junta. Los acuerdos se adoptarán
por lo menos con la conformidad de los titulares de
la mayoría de las acciones de la serie A y de los
tenedores de la mayoría de las acciones de la serie
B.-----------------------------------------------------

La Junta Directiva estará integrada por el
Presidente, el Vicepresidente y el Tesorero. Salvo
acuerdo contrario cada tres años se rotarán los
cargos de Presidente y Vicepresidente entre los
Directores propuestos.

Asesoría Jurídica

**SEPTIMA:** Que designan esta Ciudad y sus Tribunales, para que en ella y ante ellos se practiquen todas las diligencias judiciales y extrajudiciales que se deriven de la presente.--------------------------------------------------

**ASI LO DICEN Y OTORGAN** los comparecientes a mi presencia, a quienes hice las advertencias legales pertinentes y en especial la de la obligatoriedad de inscripción de este acto en el Registro correspondiente.--------------------------------------------------

**LEIDA INTEGRAMENTE** y en un solo acto esta escritura, por mi, la Notaria, a los otorgantes, conformes en su contenido, lo ratifican y conformes firman.--------------------------------------------------

**DE TODO LO CUAL** y de la identidad de los comparecientes, constándome sus demás generales por sus manifestaciones. Yo, la Notaria. DOY FE.--------

FDO. LUIS FRANCISCO PERDOMO HERNANDEZ,   JOSE ANTONIO-
MUÑIZ DELGADO, Y LIC. FELICITAS REGLA LOPEZ SOTOLONGO.

Lic. _____ Abogada
inscrita al No. 18834 / del Registro General de
Juristas del Ministerio de Justicia, ... lación de
Asesora Jurídica de la CORPORAC... CUBA RON S...
sociedad mercantil cubana, constituid... ...ediante
Escritura Pública Nro. 76 de 8 de nov... ...or de 1993,
... la Notaria Especial del Ministerio de Jus...cia.
...ERTIFICO: Que el presente Docume... ...copia fie...
...cta de su original, que obra en los archivos bajo
custodia.
...t de la Habana, 2/10/08     F...

**CubaRon S.A.**

**Asesoría Jurídica**

CON... ...A CON SU MATRIZ, ... ... al número de orden con
que en... ...za, ... ... ...e la Notaría Especial
a ... ... ... rijé a ... ...licé
sol... ... ... ...moneda ... nal,
y re... *Los componentes* ...exido esta copia en
16 ...quis... ... ...fiado a los 8
días del mes de *noviembre*, de 19 93 DOY FE. - - -

HABAN.

...egist... de Entr.

... ... Impuesto sobre Trans-
... ...cecira EXENTO en ra-

*...esto no gravado*

...udad de La Habana ... 8/11/53 ... de 19

...bogada
La *Alicia...* ... del Registro General de
Juristas del Ministerio de Justicia, en funciones de
Asesora Jurídica de la CORPORACIÓN CUBA RON S...
sociedad mercantil cubana, constituida mediante
Escritura Pública Nro. 76 de 8 de noviembre de 1993,
en la Notaría Especial del Ministerio de Justicia.
CERTIFICO: Que el presente Documento es copia fiel
y exacta de su original, que obra en los archivos ...
mi custodia.
Ciudad de la Habana, 3/10/0... Firma y sello
CubaRon S.A.

Asesoría Jurídica

El documento que antecede, ha sido registra-
do en:

Registro Central de Compañías Anónimas
Libro 135
Folio 50
Hoja 7993
Sección Primera
Inscripción 1ra

Registro Mercantil Primero de La...
Libro 188
Folio 187
...ia 16726

## CORPORACION CUBA RON, S.A.

### ESTATUTOS

Denominación e Índole

ARTICULO PRIMERO: Bajo la forma de sociedad anónima para realizar los objetos lícitos que mas adelante se especifican, ha quedado constituida una compañía anónima, con personalidad y patrimonio propios con la denominación de CORPORACION CUBA RON, S.A., en lo adelante y a los efectos de estos Estatutos LA CORPORACION, que se regirá por los presentes Estatutos, siéndole de aplicación las disposiciones del Código de Comercio de la Republica de Cuba y las demás disposiciones legales vigentes en Cuba.

Nacionalidad y domicilio

ARTICULO SEGUNDO: LA CORPORACION tiene nacionalidad cubana y el domicilio se fija en Calle 44 No. 305 e/ 3ra. A y 5ta. Ave. Miramar, Ciudad de La Habana, pero podrá variarse por determinación de la Junta General de Accionistas, pudiendo crear oficinas, representaciones, sucursales y filiales, tanto en Cuba como en el extranjero, así como tomar participación en entidades constituidas en el extranjero.

Objeto social

ARTICULO TERCERO: LA CORPORACION tendrá por objeto las actividades siguientes:



1. Producción y comercialización de ron y otras bebidas alcohólicas de distintos tipos y calidades.

2. Asumir las operaciones de comercio exterior relacionadas con la exportación de ron y otras bebidas alcohólicas, y con la importación de los insumos, piezas, equipos, materiales y todo lo necesario para su producción y el mantenimiento.

3. Poseer participaciones en otras entidades nacionales o extranjeras, suscribiendo acciones, obligaciones y cualquier otro tipo de participación social, así como crear filiales y sucursales en el extranjero.

4. Asociarse con cualquier entidad extranjera; llevar a cabo operaciones de compensación, ya sea directamente, ya sea actuando como centro de operaciones triangulares, actuar como agente, representante o comisionista tanto de entidades nacionales como extranjeras en el territorio nacional y en el extranjero.

5. Ser titular de marcas, patentes y demás modalidades de la propiedad industrial, ofrecer y recibir licencias, así como ejecutar cualquier actividad de lícito comercio vinculada con su objeto comercial o cualesquiera otras actividades que oportunamente se le asigne.

6. Operar en el país en moneda nacional y en moneda libremente convertible (MLC) pudiendo aplicar MLC al financiamiento de sus gastos y erogaciones derivadas del cumplimiento de sus objetivos en la pro--

ARTICULO CUARTO: LA CORPORACION se constituye por término indefinido.

LA CORPORACION podrá disolverse por las causas enumeradas en el Artículo Trigésimo Noveno de estos Estatutos o por las previstas en los artículos 170 y 221 del Código de Comercio.

Capital Social

ARTICULO QUINTO: El capital social autorizado de LA CORPORACION es de dos millones quinientos mil dólares estadounidenses (2 500 000 USD) y estará representado por dos mil quinientas acciones (2 500) de mil dólares estadounidenses (1 000 USD), valor nominal cada una.

De las acciones

ARTICULO SEXTO: Las acciones serán nominativas y de igual valor nominal cada una, el que podrá ser desembolsado en dinero, en especie o derechos.

Las acciones se dividen en dos series de acciones -Serie A y Serie B - del mismo valor nominal cada acción, con los mismos derechos y obligaciones.

La Serie A está integrada por acciones numeradas consecutivamente, - partiendo del número uno y sólo podrá ser titular de ellas la misma - persona natural o jurídica de nacionalidad cubana.

La Serie B está integrada por acciones numeradas consecutivamente, partiendo del número uno y será titular de ellas una persona natural o jurídica, cubana o extranjera.

ARTICULO SEPTIMO: Las acciones estarán representadas por certificados, en los que debe constar el número de acciones que representan y el número consecutivo de las acciones representadas. Los certificados deben estar firmados por el Presidente y el Secretario.

Las acciones son indivisibles. En caso de copropiedad, los copropietarios deberán designar un representante para ejercer los derechos que -- las mismas le confieren.

Los titulares de las acciones gozan del derecho:

a) de un voto por acción;

b) de analizar el estado de pérdidas y ganancias, el balance y toda - la documentación relacionada con éstos, pudiendo solicitar toda la información procedente para conocer la situación económica de LA - CORPORACION y el desarrollo de la misma en el período de treinta - días previo a la celebración de la Junta General de Accionistas - ordinaria o en ocasión de esta reunión;

2



c) la parte alícuota que le corresponde de las utilidades que se acuer
de distribuir;

d) analizar la memoria y aprobarla;

e) participar en el patrimonio resultante en caso de liquidación de -
LA CORPORACION, en la forma que se establece en estos Estatutos.

Las acciones no podrán ser dadas en prenda, en garantía o gravadas en-
cualquier forma sin autorización previa de la Junta General de Accio-
nistas, mediante acuerdo adoptado por unanimidad. Si se autorizare su
gravamen, éste se inscribirá en el Libro Registro de Acciones al cons-
tituirse, y cuando fuese cancelado se hará constar la liberación de las
mismas. En el caso de acciones gravadas, su titular es el único que -
podrá ejercer los derechos que las acciones otorgan.

ARTICULO OCTAVO: Las acciones se inscribirán en el Libro Registro de
Acciones que debe llevar LA CORPORACION, en el que constará el número
de la acción o del certificado y, en este último, el número de las ac
ciones que representa, el nombre de su titular y cualquier limitación
o gravamen que existan sobre ellas.

En caso de extravío, robo o destrucción de la acción o certificado, -
el titular inscrito en el Libro Registro de Acciones podrá solicitar-
un duplicado. Al ser expedido éste se hará constar, en el mismo, su-
carácter de duplicado.



ARTICULO NOVENO: Si el valor nominal del certificado no estuviese -
totalmente desembolsado, se hará constar en el certificado y en el -
Libro Registro de Acciones el importe parcial pagado, y cuando se pa
gue totalmente o si se hacen pagos parciales, se anotarán éstos en la
acción o certificado y en el Libro Registro de Acciones.

ARTICULO DECIMO: Las acciones no pueden ser vendidas, gravadas, pig-
noradas, cedidas o en cualquier forma traspasadas a terceros sin la -
autorización previa de la Junta General de Accionistas por acuerdo -
unánime.

Autorizando el traspaso de las acciones, éste sólo surtirá efecto al -
ser inscripto en el Libro Registro de Acciones, siendo la autoriza-
ción de la Junta General de Accionistas el documento idóneo para efec
tuar la inscripción del traspaso en el Libro Registro de Acciones. -
En caso de contradicción entre el que aparece como titular en la ac-
ción y el que aparece en tal concepto en el Libro Registro de Accio-
nes, éste prevalecerá frente al que aparece en la acción.

ARTICULO DECIMO PRIMERO: El socio que pretenda transferir a un terce
ro la totalidad o parte de sus acciones, deberá solicitarlo por escri
to a la Junta de Directores, la que convocará a la Junta General de -
Accionistas, que se celebrará dentro de los treinta días siguientes a
su convocatoria y no más allá de cuarenta días después de recibirse -
la solicitud escrita por la Junta de Directores.

<center>3</center>



de Accionistas.

Del gobierno, dirección y administración

ARTICULO DECIMO SEGUNDO: El gobierno, dirección y administración de LA CORPORACION corresponde, en primer lugar, a la Junta General de - Accionistas, como órgano supremo, y en segundo lugar a la Junta de - Directores.

De la Junta General de Accionistas

ARTICULO DECIMO TERCERO: La Junta General de Accionistas es el órgano soberano de la sociedad cuyas decisiones obligan a los accionistas a a la Junta de Directores. Su objeto es deliberar y decidir todos los asuntos sometidos a su conocimiento, recogiéndose sus decisiones en acuerdos que obligan a los accionistas cuando son adoptados ajustándose a lo que establecen estos Estatutos y las leyes. Los acuerdos deben ser ejecutados por la Junta de Directores.

ARTICULO DECIMO CUARTO: La Junta General de Accionistas es la reunión de los titulares de las acciones de la Serie A y de la Serie B, que han sido convocados para deliberar y decidir sobre los asuntos sociales propios de su competencia, contenidos en el orden del día.

Las Juntas Generales de Accionistas se celebrarán en el domicilio - social, u otro que los socios convengan por escrito previa convocatoria; a la convocatoria debe adjuntarse el orden del día.

Las Juntas Generales de Accionistas pueden ser ordinarias o extraordinarias. Las ordinarias deben celebrarse dentro de los dos primeros meses de cada año; extraordinarias son todas aquellas que se celebren fuera de la fecha señalada para las ordinarias.

ARTICULO DECIMO QUINTO: La Junta General de Accionistas debe ser - convocada por escrito enviado por correo certificado, télex o fax, - dirigido a cada uno de los accionistas, el que debe ser librado por el Presidente de la Junta de Directores cuando se trate de la de carácter ordinario.

Las sesiones extraordinarias de la Junta General de Accionistas pueden ser convocadas por el Presidente o por el 50 por ciento de los - Directores o por la mayoría de los titulares de las acciones de la - Serie A o de la Serie B. En todos los casos se expondrán las causas de la convocatoria y el orden del día.

ARTICULO DECIMO SEXTO: La Junta General de Accionistas debe ser presidida por el Presidente de la Junta de Directores, y actuará como Secretario el que lo sea de la Junta de Directores. En ausencia de uno y otro, o de ambos, en el momento de celebrarse la reunión, los accionistas reunidos designarán a quien o quienes desempeñarán esos cargos durante la reunión.

4



La Junta General de Accionistas Ordinaria debe examinar y aprobar el balance anual y demás documentos presentados a su consideración, así como la propuesta de distribución de utilidades y otras de carácter económico-financiero que se le sometan.

En el caso de que durante la celebración de la reunión los accionistas no aprueben el balance o exigiesen información complementaria a la que se condicione su aprobación, se celebrará una Junta General de Accionistas extraordinaria para decidir sobre el mismo dentro de los cuatro días siguientes a la fecha fijada para la ordinaria.

ARTICULO VIGESIMO: A la Junta General de Accionistas, además de los accionistas, pueden asistir, si han sido expresamente invitados, los directores u otras personas. Estos invitados tendrán voz pero no voto.

ARTICULO VIGESIMO PRIMERO: La Junta General de Accionistas ordinaria conocerá y decidirá necesariamente, además de lo señalado en el Artículo Vigésimo de estos Estatutos, los presupuestos anuales y el análisis del comportamiento del presupuesto del año inmediato anterior; el desarrollo programado, así como las principales medidas a adoptar para asegurar su cumplimiento.

ARTICULO VIGESIMO SEGUNDO: Es también competencia de la Junta General de Accionistas:

a) Designar a la Junta de Directores y, de ellos, a los que actuarán como Presidente, Vicepresidente y Tesorero.

b) Acordar el aumento o reducción de capital social y la forma en que va a efectuarse.

c) Modificar estos Estatutos.

ch) Acordar la apertura de sucursales, agencias y oficinas en el territorio nacional o en el extranjero.

d) Acordar la constitución de subsidiarias o filiales y tomar participación en otras sociedades, en el extranjero.

e) Autorizar el traspaso de acciones, tanto de la Serie A como de la Serie B.

f) Examinar la administración social o hacer investigaciones respecto a la misma.

g) Analizar el cumplimiento del plan de desarrollo anual y perspectivo y adoptar nuevas medidas para garantizarlos o modificarlos.

h) Aprobar el balance anual y la memoria explicativa, y conocer los balances trimestrales.

i) Aprobar la constitución de reservas facultativas.

j) Autorizar los contratos que representen actos de dominio de los bienes sociales.

6



k) Resolver sobre cualquier asunto necesario o beneficioso para el desarrollo de LA CORPORACION que se le someta o que le propongan los socios.

1) Disolver LA CORPORACION y declararla en liquidación.

11) Delegar facultades de su competencia en la Junta de Directores, el Presidente u otro miembro de dicha Junta de Directores.

ARTICULO VIGESIMO TERCERO:  Para adoptar acuerdos en relación con las atribuciones de la Junta General de Accionistas identificados con los literales a), b), c), e), h), j), 1), y 11) del Artículo anterior será necesario el voto conforme de la totalidad de los accionistas de la Serie A y de la Serie B.

ARTICULO VIGESIMO CUARTO:  El acuerdo sobre reducción del capital social sólo puede ejecutarse previa la liquidación de las deudas y obligaciones pendientes en la fecha en que se adoptó el acuerdo por la Junta General de Accionistas, a no ser que se obtenga el consentimiento previo de los acreedores.

El acuerdo de reducción de capitales puede llevarse a efecto reduciendo el valor nominal de todas las acciones de la Serie A y de la Serie B, en igual número.  En ambos casos las acciones de la Serie A y de la Serie B mantendrán la misma proporción de participación en el capital social establecido en el Artículo sexto.

De la Junta de Directores

ARTICULO VIGESIMO QUINTO:  El órgano de dirección y administración de LA CORPORACION es la Junta de Directores, que deberá ejecutar los acuerdos de la Junta General de Accionistas y realizar las actividades necesarias para su cumplimiento, así como llevar a cabo la gestión administrativa y la toma de decisiones operativas para este fin.

Es competencia de la Junta de Directores la representación de LA CORPORACION en los asuntos pertenecientes al negocio y tráfico de la misma, en los actos de procedimientos judiciales o fuera de ellos, estando al efecto investida de las facultades que le atribuyen estos Estatutos y las leyes.

Para ejecutar facultades de disposición de los bienes sociales es necesario un poder expreso y específico de la Junta General de Accionistas, otorgado por unanimidad de todos los accionistas.

ARTICULO VIGESIMO SEXTO:  Para la constitución de la Junta de Directores, los titulares de las acciones de la Serie A y los titulares de las acciones de la Serie B propondrán a la Junta General de Accionistas al menos dos directores de cada uno, los que deberán ser aprobados por unanimidad por ésta.  La Junta de Directores se elige por un período de tres años.

7



De entre los directores aprobados la Junta General de Accionistas de-
signará el Presidente, el Vicepresidente y el Tesorero. Salvo acuer-
do en contrario, cada tres años se rotarán los cargos de Presidente y
Vicepresidente entre los directores propuestos por los titulares de -
las acciones de cada una de las Series A y B.

También designará la Junta General de Accionistas un Secretario el que
no será director y desempeñará sus funciones hasta que sea sustituido
por la propia Junta.

Los directores podrán ser reelectos indefinidamente por la Junta Gene-
ral de Accionistas.

ARTICULO VIGESIMO SEPTIMO: Los directores -sean accionistas de LA COR-
PORACION o no- y el Secretario podrán ser removidos de su cargo por --
acuerdo de la Junta General de Accionistas, a solicitud fundada de un
accionista o por la mayoría de la Junta de Directores. En la propia -
reunión en que se produzca la remoción debe ser designado el sustituto
propuesto de las acciones de la Serie que propuso al Director removido.

ARTICULO VIGESIMO OCTAVO: Los directores que integran la Junta de Di-
rectores serán solidariamente responsables de las irregularidades que-
cometa la Junta de Directores o uno de sus miembros, en este último ca
so sino se le comunica por escrito, inmediatamente de haber llegado a
su conocimiento, al Presidente, o al Secretario si fuera el Presiden-
te quien hubiere cometido la irregularidad. El Presidente o, cuando-
proceda, el Secretario, deberá convocar dentro de los quince días si-
guientes a la Junta General de Accionistas.

Esta convocatoria procederá cuando la irregularidad afecte o pueda    -
afectar económicamente a LA CORPORACION, producir perjuicios de cual-
quier naturaleza o en alguna forma afectar su prestigio.

ARTICULO VIGESIMO NOVENO: La Junta de Directores se reunirá cuantas
veces la convoque el Presidente o lo soliciten fundamentalmente dos
directores.

La convocatoria se librará con quince días de anterioridad a la fecha
de celebración, y la reunión se efectuará en el local social u otro -
que acuerden las partes.

Para que la Junta de Directores sesione válidamente, se requerirá la
asistencia del cincuenta por ciento de los directores designados por
los titulares de las acciones de cada serie, incluido el Presidente.

La Junta de Directores puede celebrarse sin previa convocatoria si -
concurren a la misma la totalidad de los directores y éstos aceptan-
por unanimidad el orden del día.





ARTICULO TRIGESIMO: los acuerdos de las reuniones de la Junta de Directores se adoptarán por unanimidad de los directores presentes.

En los casos en que no haya acuerdo, el Presidente o cualquier director podrá someter el asunto a la decisión de la Junta General de Accionistas.

De cada reunión de la Junta de Directores se redactará el acta correspondiente, en la que los acuerdos se enumerarán consecutivamente cada año, a partir de la primera reunión. El acta será firmada por el secretario con el visto bueno del Presidente,

El acta se circulará entre los directores dentro de los diez días siguientes a la celebración de la reunión, para su aprobación, no obstante, los acuerdos tienen vigencia desde la fecha en que sean adoptados.

ARTICULO TRIGESIMO PRIMERO:  Corresponden a la Junta de Directores - las facultades siguientes:



a) Representar a LA CORPORACION en todos los asuntos y actividades, actos y negocios jurídicos que estén relacionados con la esfera de operaciones a la que LA CORPORACION pueda dedicar su actividad de acuerdo con el objeto social, así como en procedimientos judiciales o fuera de los mismos, obligándola con sus actos y contratos.

   Dicha representación se ejercerá de forma colegiada o a través de su Presidente de acuerdo con lo que se establece en estos Estatutos en cuanto a las facultades del mismo;  también la Junta de - Directores podrá otorgar poder para ejercerla con carácter específico a cualquiera de los directores o a su tesorero.

b) Dirigir la gestión de todos los asuntos propios de LA CORPORACION que sean necesarios para el cumplimiento de los acuerdos de la - Junta General de Accionistas y el objeto social.

c) Administrar todos los bienes de LA CORPORACION, por si o por persona natural o jurídica apoderada especialmente para el acto que se designe, sometiendo a la Junta General de Accionistas la estructura administrativa de la empresa y sus dependencias.



ch) Celebrar contratos de administración ajustándose a lo que estos - Estatutos y las leyes establezcan.

d) Abrir cuentas bancarias denominadas en las monedas que decida, así como operarlas y cancelarlas, en un banco del sistema bancario nacional o del extranjero.

e) Realizar todas las operaciones que procedan con documentos mercantiles, títulos o valores en general.

f) Contratar el personal necesario para el desarrollo y cumplimiento del objeto social, de acuerdo con lo establecido en la legislación vigente.



g) Revisar si los titulares de las acciones suscritas las han desembolsado en el tiempo e importes acordados.

h) Redactar la fundamentación económica para el incremento o disminución del capital autorizado, sometiéndolo a la Junta General de Accionistas para su decisión.

i) Establecer el sistema de contabilidad que más se adecúe a la actividad de LA CORPORACION, conforme a principios internacionalmente aceptados.

j) Informar trimestralmente a los socios sobre la marcha de los negocios de LA CORPORACION, sometiéndoles los balances trimestrales y convocando a la Junta General de Accionistas cuando fuere necesario o conveniente.

k) Presentar el balance general anual, el estado de pérdidas y ganancias y la memoria explicativa, así como los documentos que sean pertinentes a la consideración de la Junta General de Accionistas con treinta días de anticipación a la reunión ordinaria anual.

l) Proponer fundamentalmente a la Junta General de Accionistas, en la reunión ordinaria anual, la imputación de utilidades a cada parte, la distribución de utilidades y su monto, así como la cuantía de las reservas facultativas que considera procedente en adición a las establecidas por la legislación.

ll) Registrar en el Libro Registro de Acciones a los accionistas titulares y los traspasos de acciones cuando sean autorizados, así como cualquier limitación u obligación de las acciones que sean inscribibles.

m) Convocar a la Junta General de Accionistas en sesión ordinaria o extraordinaria y redactar el orden del día.

n) Ejercer la alta dirección y supervisión de todo el personal que preste servicios en LA CORPORACION o sus dependencias, disponiendo su promoción o democión.

ñ) Interponer demandas, denuncias, querellas y recursos en toda clase de procedimientos, ya sean civiles, administrativos, penales o arbitrales; efectuar transacciones judiciales y extrajudiciales, hacer desestimiento, allanarse u oponerse a éstos, otorgando a tal efecto los poderes necesarios a abogados u otros representantes.

o) Otorgar poderes, haciendo delegación de facultades delegables, en un Director de la Junta, funcionario o empleado de LA CORPORACION o un tercero. No son delegables las facultades exclusivamente reservadas a la Junta General de Accionistas.

ARTICULO TRIGESIMO SEGUNDO: Los directores podrán ser retribuidos si desempeñan cargos retribuibles. Esa retribución podrá ser revisada en las reuniones anuales de la Junta General de Accionistas.



10




ARTICULO TRIGESIMO TERCERO: Si se produjere una vacante en la Junta de Directores por renuncia, enfermedad o muerte, la Junta General de Accionistas designará su sustituto de acuerdo con el procedimiento establecido en los Estatutos.

Del Presidente

ARTICULO TRIGESIMO CUARTO: El Presidente de la Junta de Directores será el Presidente de LA CORPORACION, teniendo, entre otras, las facultades siguientes:

a) Distribuir entre los directores actividades específicas, administrativas o de otra índole, que sean de competencia de la Junta de Directores. En este caso el Director designado será el responsable del cumplimiento de la actividad encomendada, independientemente de la que en ese asunto específico pueda corresponder al Presidente, a otro Director o a la Junta de Directores.

b) Convocar y presidir las reuniones de la Junta General de Accionistas y de la Junta de Directores.

c) Firmar junto con el Secretario las acciones y los certificados de acciones.

ch) Otorgar el visto bueno a las actas de la Junta General de Accionistas y de las reuniones de la Junta de Directores.

d) Supervisar la ejecución de los trabajos encomendados a cada Director.

e) Firmar junto con el Tesorero las órdenes de pago contra los fondos de LA CORPORACION.

f) Representar a LA CORPORACION en la concertación de acuerdos, contratos y cualquier tipo de convenio con otras personas naturales o jurídicas, nacionales o extranjeras, así como en la suscripción de cualquier tipo de documentos públicos o privados.

g) Todas aquellas de la Junta General de Accionistas o de la Junta de Directores que le sean delegadas.

Del Vicepresidente

ARTICULO TRIGESIMO QUINTO: El Vicepresidente sustituye al Presidente en caso de ausencia, enfermedad, incapacidad o fallecimiento de éste, pero en todo momento tendrá las facultades que le asigne la Junta General de Accionistas o el Presidente.

Del Tesorero

ARTICULO TRIGESIMO SEXTO: El Director que sea designado Tesorero tendrá las facultades siguientes:




11



a) Velar porque se lleven los libros de contabilidad de conformidad con el sistema que se haya acordado por LA CORPORACION y supervisar el desarrollo económico de LA CORPORACION.

b) Presentar balances semestrales a la Junta de Directores, y anuales a la Junta General de Accionistas.

c) Ofrecer el fundamento económico-contable a la Junta de Directores para proponer a la Junta General de Accionistas la distribución de utilidades, el monto a distribuir y el dividendo por acción. Para hacer esta propuesta tendrá en consideración las perspectivas de desarrollo de LA CORPORACION las necesidades futuras de líquidez y el capital de trabajo adecuado.

ch) Presentar al Comité Estatal de Finanzas los balances correspondientes a cada uno, de los tres primeros trimestres naturales de cada año dentro del mes siguiente al cierre del trimestre, así como el balance correspondiente a las operaciones de cada año natural, dentro de los dos primeros meses del año siguiente, de conformidad con lo establecido en la Resolución No. 52 de 1982 del Comité Estatal de Finanzas.

d) Firmar junto con el Presidente por si o por las personas que se designen, las órdenes de pago contra los fondos de la sociedad.

e) Cualquier otra que le asignen la Junta General de Accionistas, la Junta de Directores o el Presidente de LA CORPORACION.

De los demás directores

ARTICULO TRIGESIMO SEPTIMO: Los demás Directores ejecutarán las actividades administrativas y operativas que les asigne la Junta de Directores o el Presidente de LA CORPORACION en adición a las propias como miembro de la Junta de Directores.

Del Secretario

ARTICULO TRIGESIMO OCTAVO: El Secretario tendrá las facultades siguientes:



a) Custodiar los archivos, los Libros de Actas, tanto de la Junta General de Accionistas como la Junta de Directores, y el Libro de Registro de Acciones de cada serie.

b) Emitir certificaciones con vista a los libros y documentos bajo su cargo y custodia.

c) Suscribir los certificados de acciones y las actas de la Junta General de Accionistas, en su caso, y de la Junta de Directores conjuntamente con el Presidente.

ch) Redactar las actas de la Junta General de Accionistas y circularlas dentro de los diez días siguientes a la reunión.

d) Redactar las actas de la Junta de Directores y circularlas dentro de los diez días siguientes a la reunión.

e) Cualquier otra que le asignen la Junta General de Accionistas, la Junta de Directores o el Presidente de LA CORPORACION.

De la disolución y liquidación de LA CORPORACION

ARTICULO TRIGESIMO NOVENO:  LA CORPORACION se disolverá  en los casos siguientes:

a) Por ser imposible el cumplimiento del objeto social por causas - internas de LA CORPORACION o por causas externas.

b) Cuando uno de los accionistas sea declarado en estado de suspensión de pagos o quiebra.

c) Por imposibilidad reiterada de adoptar acuerdo, de conformidad con lo que se establece en el Artículo Décimo Séptimo en cuanto a los acuerdos de la Junta General de Accionistas y en el Décimo Noveno en cuanto a la existencia de quórum.

d) Por acuerdo de todos los accionistas de la Serie A y la Serie B.

e) Por pérdida total del capital social de LA CORPORACION o por pérdida parcial del mismo que haga imposible las actividades sociales.

f) Por quiebra de LA CORPORACION.

ARTICULO CUADRAGESIMO:  La concurrencia de alguna de las causales enumeradas en el Artículo anterior dará lugar a la disolución de LA CORPORACION y al inicio del proceso de su liquidación.

Al comenzar la liquidación de LA CORPORACION, cesará desde ese momento la Junta de Directores, y la Junta General de Accionistas designará los liquidadores, así como el plazo para efectuar las operaciones de liquidación.

ARTICULO CUADRAGESIMO PRIMERO:  Los liquidadores son los representantes y administradores de LA CORPORACION, y su actuación debe encaminarse a percibir los créditos de la misma que sean exigibles al declararse su disolución y los que vayan venciendo; a liquidar las obligaciones pendientes al momento de acordarse la liquidación o con posterioridad y, en general, a concluir las operaciones pendientes.

El evalúo de los bienes sociales se efectuará

a) Por acuerdo unánime de los accionistas.

13




b) En caso de no llegar a un acuerdo sobre dicho valor, los accionis-
tas de cada serie propondrán, como posible perito, a dos entidades
especializadas en la materia, de prestigio internacional. Si los
accionistas de ambas series se pusieran de acuerdo sobre la selec-
ción de una de ellas, ésta fijará el valor de los bienes. De no -
alcanzar este acuerdo se seleccionará por insaculación.

La designación del perito debe efectuarse dentro de los seis meses
siguientes al de la decisión de disolver LA CORPORACION.

El dictamen del perito será definitivo e inapelable.

c) Si la disolución de LA CORPORACION fuese por la causa prevista en
el inciso c) del Artículo Trigésimo Noveno, la valoración de los-
bienes se hará según Libros.

ARTICULO CUADRAGESIMO SEGUNDO: De conformidad con lo establecido en
el Código de Comercio, deberán los liquidadores:

a.) Presentar ante la Junta General de Accionistas, en el término de
veinte días, el inventario del haber social, con el balance ini-
cial de las cuentas de LA CORPORACION.

b) Presentar a la Junta General de Accionistas, mensualmente un in-
forme pormenorizado sobre el estado de la liquidación.

c) Presentar a la Junta General de Accionistas, al concluir la li-
quidación, el balance final en el que se precise el capital di-
visible entre las acciones.

ARTICULO CUADRAGESIMO TERCERO: Los liquidadores efectuarán la liqui-
dación del haber social entre los accionistas, según su participación
en el capital social.

Los liquidadores convocarán a la Junta General de Accionistas para la
distribución del haber social.

La liquidación de los titulares de las acciones de la Serie B se rea-
lizará en efectivo y su importe podrá ser transferido al exterior, a-
solicitud de sustitulares.

5 de Noviembre de 1993

CONCUERDA CON SU MATRIZ, que bajo el número de orden con
que encabeza, obra ........................ de la Notaría Especial
a ri ........................... la cual fijé e inutilicé
s ............................................ moneda nacional,
y ... *Los comparecientes*, expido esta copia en
*10* ... hojas ................... lado a los *8*
días del mes de *Noviembre*, de 19 *53* DOY FE. - - -

(HABANA)

........................ .l Registro de Entr.
................ Impuesto sobre Trans-
....... y H ..... se declara **EXENTO** en ra-

*Visto no gravado*

*según by 99/62*

..ndad de la Habana *8/11/53* de 19.

El documento que antecede, ha sido registra-
do en:

Registro Central de Compañías Anónimas

Libro    135
Folio     50
Hoja    9993
Sección Primera
Inscripción 1ª

Registro Mercantil Primero de La ...

Libro    1188
Folio     187
Hoja    16726
Inscripción 1ra

La Habana, 9 de noviembre de 1953

**EXHIBIT C**

Constitution of the Republic of Cuba
National Assembly of People's Power
Note

During 1975, a draft Constitution of the Republic was exposed to public debate, in which more than 6 million people participated. The resulting suggestions led to changes in 60 of the proposed articles.

On February 15, 1976, the document was approved by a referendum in which 98% of the electorate voted, with 97.7% of those voting in favour; approval was consequently by free, direct and confidential vote of the overwhelming majority of the electors.

On February 24, 1976, this Constitution was proclaimed, at a solemn, public ceremony.

On June 26, 1978, the National Assembly of People's Power, in exercise of its constitutional powers, resolved to amend Article 10(a) of the Constitution, changing the name of the island then known as "Isla de Pinos" to "Isla de la Juventud".

On July 12, 1992, the Constitutional Reform Act designed to implement recommendations by the Fourth Congress of the Cuban Communist Party was approved at a meeting of the National Assembly of People's Power, which had convened for such purpose. These were based on a public, open, frank and calm debate with the people, on a document issued by the Congress concerning the activities of the state agencies, arguing the need for our democratic institutions to be even more representative. This called for: decisions aimed at revising the structures, powers and steering functions of the various authorities based on such institutions; clarification of the role of government at provincial and municipal levels; new ways of electing deputies to sit on the National Assembly and delegates at the provincial assemblies; the addressing of other issues relevant to the nation's institutional life.

The Constitution was further amended to underpin and extend a large number of basic rights and freedoms, as well as the civil and political rights of both Cubans and aliens.

On June 10, 2002, an unprecedented plebiscitary process emerged, making itself felt at the Extraordinary Assembly of the various national headquarters of the mass organizations and, two days later, through demonstrations and marches held throughout the nation and involving over nine million people. It culminated in the public, voluntary signing, during the three days June 15-17, by a total of 8,198,237 electors, of a document ratifying the socialist content of the Constitution. This gesture by the Cuban people was in response to offensive, interventionist remarks by the President of the United States, and called on the National Assembly of People's Power to amend the Constitution so as to make irrevocable the socialism and revolutionary political and social system it proclaims. Also sought was a statement that economic, diplomatic and political relations with other states must not be conducted under aggression, threat or coercion by a foreign power. In Extraordinary Session on June 26, 2002, convened for the purpose, the

Assembly passed the relevant resolution (No. V-74), approving the Constitutional Reform Law.

Constitutional and Legal Affairs Committee of the National Assembly of People's Power
Constitution of the Republic of Cuba
Preamble

**WE, CUBAN CITIZENS**, heirs and continuators of the creative work and the traditions of combativeness, firmness, heroism and sacrifice fostered by our ancestors;
**by** the Indians who preferred extermination to submission;
**by** the slaves who rebelled against their masters;
**by** those who awakened national awareness and a yearning by Cubans for country and freedom;
**by** the patriots who in 1868 launched the wars of independence against Spanish colonialism and those who in the last drive of 1895 won victory in 1898, a victory usurped by the military intervention and occupation of Yankee imperialism;
**by** the workers, peasants, students and intellectuals who struggled for over fifty years against imperialist domination, political corruption, the absence of people's rights and liberties, unemployment and exploitation by capitalists and landowners;
**by** those who promoted, joined and developed the first organizations of workers and peasants, spread socialist ideas and founded the first Marxist and Marxist-Leninist movements;
**by** the members of the vanguard of the generation of the centenary of the birth of Martí who, imbued with his teachings, led us to the people's revolutionary victory of January;
**by** those who defended the Revolution at the cost of their lives, thus contributing to its definitive consolidation;
by those who en masse carried out heroic internationalist missions;
**GUIDED**
by the ideas of José Martí and the political and social ideas of Marx, Engels and Lenin;
**BASING OURSELVES**
on proletarian internationalism, on the fraternal friendship, aid, cooperation and solidarity of the peoples of the world, especially those of Latin America and the Caribbean;
**AND HAVING DECIDED**
to carry forward the triumphant Revolution of the Moncada and of the Granma of the Sierra and of Girón under the leadership of Fidel Castro, which sustained by the closest unity of all revolutionary forces and of the people won full national independence, established revolutionary power, carried out democratic changes, started the construction of socialism and, with the Communist Party at the forefront, continues this construction with the final objective of building a communist society;
**AWARE**
that all the regimes based on the exploitation of man by man cause the humiliation of the exploited and the degradation of the human nature of the exploiters;
that only under socialism and communism, when man has been freed from all forms of exploitation - slavery, servitude and capitalism - can the full dignity of the human being be attained; and

that our Revolution uplifted the country and of Cubans;

**WE DECLARE**

our will that the law of laws of the Republic be guided by the following strong desire of José Martí, at last achieved;

"I want the fundamental law of our republic to be the tribute of Cubans to the full dignity of man";

**AND ADOPT**

by means of our free vote in a referendum, the following:

**CONSTITUTION**


# CHAPTER I
## Political, Social and Economic Principles of the State

**…**

**ARTICLE 17**. The State directly administers the goods that make up the socialist property of the entire people, or may create and organize enterprises and entities to administer them, whose structure, powers, functions and the system of their relations are prescribed by law.

These enterprises and entities only answer for their debts through their financial resources, within the limits prescribed by law. The State is not liable for the obligations contracted by the companies, entities, and other legal persons, and the latter are also not liable for the obligations of the State

**…**

**ARTICLE 23**. The State recognizes the property of the mixed companies, companies and economic associations constituted pursuant to the law. The use, enjoyment and disposal of the assets related to the property of said entities is governed by the provisions of the laws and statues as well as by their statues and other governing regulations.

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language***Works*

STATE OF NEW YORK     )
                      )          ss
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of The Constitution of the Republic of Cuba, completed on 1/21/2010, originally written in Spanish.

Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

KAREN OLIVE
Notary Public, State of New York
No. 01OL6146423
Qualified in Queens County
Commission Expires May 15, 2010

**Constitución de la República de Cuba**
**Asamblea Nacional del Poder Popular**
**Nota**

El anteproyecto de la Constitución de la República, durante 1975 fue sometido a discusión pública donde participaron más de 6 millones de personas, y se formularon propuestas que llevaron a modificar 60 de los artículos propuestos.

El 15 de febrero de 1976 se celebró un referendo en el que votó el 98% de los electores, de los cuales el 97,7% lo hizo afirmativamente, alcanzando así su aprobación, mediante el voto libre, directo y secreto de la inmensa mayoría de éstos.

El 24 de febrero de 1976, fue proclamada esta Constitución en acto solemne y público.

El 26 de junio de 1978, la Asamblea Nacional del Poder Popular en uso de sus facultades constitucionales, acordó reformar el artículo 10, inciso a) de la Constitución, a los efectos de que en lo sucesivo la Isla de Pinos pasara a llamarse Isla de la Juventud.

El 12 de julio de 1992 fue aprobada en sesión convocada al efecto, de la Asamblea Nacional del Poder Popular, la Ley de Reforma Constitucional encaminada a cumplimentar las recomendaciones del IV Congreso del Partido Comunista de Cuba adoptadas como resultado del debate público, abierto, franco y sereno con el pueblo, del llamamiento que lo convocó y que evidenció, en lo concerniente a la actividad de los organismos estatales, la necesidad de encontrar vías para hacer aún más representativas nuestras instituciones democráticas y, consecuentemente, adoptar decisiones con vista a perfeccionar sus estructuras, atribuciones y funciones de dirección en sus diferentes instancias; incluir precisiones sobre la gestión del gobierno en provincias y municipios; establecer nuevas formas de elección de los diputados a la Asamblea Nacional y de los delegados a las asambleas provinciales, así como otras cuestiones de interés para la vida institucional del país.

La Constitución también fue modificada con el fin de garantizar y ampliar el ejercicio de numerosos derechos y libertades fundamentales y los derechos civiles y políticos de los ciudadanos y extranjeros.

El 10 de junio del 2002, el pueblo de Cuba, en un proceso plebiscitario popular sin precedentes, puesto de manifiesto tanto en la Asamblea Extraordinaria de las direcciones nacionales de las organizaciones de masas; como en actos y marchas realizados el día 12 del propio mes de junio a todo lo largo y ancho del país, en los que participaron más de nueve millones de personas y para la firma pública y voluntaria de 8 198 237 electores durante los días 15, 16 y 17 de ese mismo mes ratificaron el contenido socialista de esta Constitución en respuesta a las manifestaciones injerencistas y ofensivas del Presidente de los Estados Unidos de América, e interesaron de la Asamblea Nacional del Poder Popular reformarla, para dejar expresamente consignado el carácter irrevocable del socialismo y del sistema político y social revolucionario por ella diseñado, así como que las relaciones económicas, diplomáticas y políticas con otro Estado no pueden ser negociadas bajo agresión, amenaza o coerción de una potencia extranjera, ante la cual el órgano supremo de poder del Estado, en sesión extraordinaria, convocada al efecto, adoptó por unanimidad el Acuerdo No. V-74, por el que se aprobó la Ley de Reforma Constitucional el 26 de junio del 2002

**Comisión de Asuntos Constitucionales y Jurídicos de la Asamblea Nacional del Poder Popular**
**Constitución de la República de Cuba**
**Preámbulo**

**NOSOTROS, CIUDADANOS CUBANOS**, herederos y continuadores del trabajo creador y de las tradiciones de combatividad, firmeza, heroísmo y sacrificio forjadas por nuestros antecesores;

**por** los aborígenes que prefirieron muchas veces el exterminio a la sumisión;

**por** los esclavos que se rebelaron contra sus amos;

**por** los que despertaron la conciencia nacional y el ansia cubana de patria y libertad;

**por** los patriotas que en 1868 iniciaron las guerras de independencia contra el colonialismo español y los que en el último impulso de 1895 las llevaron a la victoria de 1898, que les fuera arrebatada por la intervención y ocupación militar del imperialismo yanqui;

**por** los obreros, campesinos, estudiantes e intelectuales que lucharon durante más de cincuenta años contra el dominio imperialista, la corrupción política, la falta de derechos y libertades populares, el desempleo y la explotación impuesta por capitalistas y terratenientes;

**por** los que promovieron, integraron y desarrollaron las primeras organizaciones de obreros y de campesinos, difundieron las ideas socialistas y fundaron los primeros movimientos marxista y marxista-leninista;

**por** los integrantes de la vanguardia de la generación del centenario del natalicio de Martí, que nutridos por su magisterio nos condujeron a la victoria revolucionaria popular de Enero;

**por** los que, con el sacrifico de sus vidas, defendieron la Revolución contribuyendo a su definitiva consolidación;

por los que masivamente cumplieron heroicas misiones internacionalistas;

**GUIADOS**

por el ideario de José Martí y las ideas político-sociales de Marx, Engels y Lenin;

**APOYADOS**

en el internacionalismo proletario, en la amistad fraternal, la ayuda, la cooperación y la solidaridad de los pueblos del mundo, especialmente los de América Latina y del Caribe;

**DECIDIDOS**

a llevar adelante la Revolución triunfadora del Moncada y del Granma, de la Sierra y de Girón encabezada por Fidel Castro que, sustentada en la más estrecha unidad de todas las fuerzas revolucionarias y del pueblo, conquistó la plena independencia nacional, estableció el poder revolucionario, realizó las transformaciones democráticas, inició la construcción del socialismo y, con el Partido Comunista al frente, la continúa con el objetivo final de edificar la sociedad comunista;

**CONSCIENTES**

de que los regímenes sustentados en la explotación del hombre por el hombre determinan la humillación de los explotados y la degradación de la condición humana de los explotadores;

de que sólo en el socialismo y el comunismo, cuando el hombre ha sido liberado de todas las formas de explotación: de la esclavitud, de la servidumbre y del capitalismo, se

alcanza la entera dignidad del ser humano; y de que nuestra Revolución elevó la dignidad de la patria y del cubano a superior altura;

**DECLARAMOS**

nuestra voluntad de que la ley de leyes de la República esté presidida por este profundo anhelo, al fin logrado, de José Martí:

**"Yo quiero que la ley primera de nuestra República sea el culto de los cubanos a la dignidad plena del hombre";**

**ADOPTAMOS**

por nuestro voto libre, mediante referendo, la siguiente:

**CONSTITUCION**.


# CAPITULO I
## Fundamentos políticos, sociales y económicos del Estado

**...**

**ARTICULO 17**.-El Estado administra directamente los bienes que integran la propiedad socialista de todo el pueblo; o podrá crear y organizar empresas y entidades encargadas de su administración, cuya estructura, atribuciones, funciones y el régimen de sus relaciones son regulados por la ley.

Estas empresas y entidades responden de sus obligaciones sólo con sus recursos financieros, dentro de las limitaciones establecidas por la ley. El Estado no responde de las obligaciones contraídas por las empresas, entidades u otras personas jurídicas y éstas tampoco responden de las de aquél.

**...**

**ARTÍCULO 23.-** El Estado reconoce la propiedad de las empresas mixtas, sociedades y asociaciones económicas que se constituyen conforme a la ley. El uso, disfrute y disposición de los bienes pertenecientes al patrimonio de las entidades anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamentos propios por los que se gobiernan.

**EXHIBIT D**

**COLECCIÓN LEGISLATIVA DE BOLSILLO**
[Bolsillo Legislation Collection] **Volume VII**


**CODIGO DE COMERCIO**
[Code of Commerce]

IN EFFECT IN THE REPUBLIC OF CUBA


[Followed by various Appendices

containing Supplementary Mercantile Legislation

and Banking Legislation]


REVISED AND COMPARED By

**RAFAEL RODRIGUEZ ALTUNAGA**
Fourth Edition, Substantially Corrected and Expanded


JESUS MONTERO, Editor
Obispo 521
HAVANA
1961

## CÓDIGO DE COMERCIO
[Commercial Code]

Scope

This Code was promulgated in Spain by the Law of August 22, 1885. By Royal Decree on this same date, the *Ministerio de Gracia y Justicia* [Ministry of Pardons and Justice], in compliance with said law, published the current Code of Commerce so that it may be observed as law in the Peninsula and adjacent islands, starting as of January 1, 1886. The publication of the Code began in the **Gaceta de Madrid** [Gazette of Madrid], No. 289 of October 16, 1885, and ended on end on page 648 of No. 328, for November 24 of the same year. This is a clear and careful print.

By Royal Decree of January 28, 1886 *(Gaceta de la Habana* [Gazette of Havana], of February 23), it was stipulated that this Code would govern Cuba from May 1 of this same year "without amendments than those introduced in Articles 179, 201, 453, 547, 550, 559, 798, 934 and 940."

As a sure guide as concerns the text of the *Código de Comercio,* unamended by subsequent Laws, we have seen the beautiful **Edición Oficial** [Official Edition] (1885), put out by the Spanish Government to "serve an the original for all legal purposes", as stated in Article Two of the Royal Decree of August twenty-second, 1885.

The copy in our library bears the seal of the *Ministerio de Gracia y Justicia* which grants authenticity to the text; and it was printed on November 12, 1885, by the Manuel Tello printshop, printers to the Chamber of His Majesty the King.

BOOK TWO

**ON SPECIAL CONTRACTS IN COMMERCE**

**Title One**

**ON MERCANTILE ENTERPRISES**

**SECTION ONE**

**On the Formation of Enterprises and Their Classes**

**Article 116.** - The association contract by which two or more persons agree to place goods, industry or any of these things in common to achieve profits shall be a mercantile contract, regardless of its class, provided that it was formed in accordance with the provisions of this Code.

Once formed, the Mercantile Enterprise shall be a legal personality for all its acts and contracts.

See Articles 165 et seq., 1665, 1670 et seq., 170, C. Civ. [Civil Code],

**Article 117.** - The contract of a mercantile enterprise, entered into with the essential requirements under the law, shall be valid and binding on the contracting parties, regardless of the form, conditions and licit and honest combinations that compose it, provided that they are not expressly prohibited in this Code.

The creation of territorial, agricultural, central and discount Banks, credit enterprises, mortgage enterprises, and construction enterprises shall be permitted.

**Article 122.** - As a general rule, Mercantile Enterprises shall be formed by adopting any of the following forms:

**1.**　　　A regular association in which all partners, in the collective name and under a enterprise name, agree to participate in the proportion they establish in the same rights and obligations.

**2.**　　　A limited association, in which one or more subjects contribute a certain amount of capital to a common fund, to participate in the results of the enterprise transactions managed exclusively by others in the collective name.

**3.**　　　A corporation in which, by forming the common fund, the associates by shares or certain portions, represented by stock or other clear manner, entrust its management to dismissable agents or administrators who represent the Enterprise under a name appropriate to the objective or business for which the funds are intended.

See Articles 139, 145 to 150, 152, 160 etseq., C. Com. [Code of Commerce].

**Article 123.** - Depending on the nature of their operations, Mercantile Enterprises may be:

Credit enterprises, Central and discount
banks, Territorial credit enterprises,
Mining enterprises, Agricultural banks,
Holders of railway, tramway and public works licenses, General storage
warehouses,
And other types, provided that their agreements are licit and their purpose is industry or commerce.

**Article 124.** - Mutual fire insurance enterprises, tontine life insurance combinations providing old-age assistance and any other class, and production, credit or consumption cooperatives shall be considered mercantile and **be** subject to the provisions of this Code only when they are dedicated [remainder missing from original]

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                         )    ss.:
COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true
and accurate rendition into _English_ of _Extract from the Commercial Code of Cuba_ written
in _Spanish_.

New York, January 25, 2010.

TransNet USA, Inc.

Susan E. Geddes, Vice President

Sworn to and subscribed before me on
January 25, 2010.

LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010

COLECCION LEGISLATIVA
DE BOLSILLO
Volumen VII

# CODIGO DE COMERCIO

VIGENTE EN LA REPUBLICA DE CUBA

(Seguido de varios Apéndices contentivos
de la Legislación Mercantil complementaria
y la Legislación Bancaria)

REVISADO Y CONCORDADO

por

RAFAEL RODRIGUEZ ALTUNAGA

Cuarta edición corregida y notablemente aumentada



JESUS MONTERO, Editor
Obispo 521
LA HABANA
1961



# CÓDIGO DE COMERCIO

### Su Vigencia

Este Código se promulgó en España por la Ley de agosto 22 de 1885. Por Real Decreto de esa misma fecha, el Ministro de Gracia y Justicia, en cumplimiento de esta Ley, publicó el Código de Comercio actual, para que se observe, como ley, en la Península e islas adyacentes, desde el 1° de enero de 1886. La publicación del Código se empezó en la **Gaceta de Madrid**, núm. 289 de Oct. 16 de 1885 y se terminó en la pág. 648 del núm. 328, correspondiente al día 24 de nov. del propio año. Es una impresión nítida y cuidadosa

Por Real Decreto de 28 de enero de 1886 (Gaceta de la Habana, de 23 de febrero) se dispuso que ese Código rigiera en Cuba desde el 1 de mayo de ese mismo año "sin otras modificaciones que las introducidas en los artículos 179, 201, 453, 547, 550, 559, 798, 934 y 940"

Hemos tenido a la vista, como guía segura, en cuanto al texto del Código de Comercio, no modificado por Leyes ulteriores, la bella **Edición Oficial** (1885), hecha por el Gobierno Español para "servir de original para todos los efectos legales", según reza el artículo segundo del Real Decreto de veintidós de agosto de 1885.

El ejemplar que obra en nuestra biblioteca lleva el sello del Ministerio de Gracia y Justicia que le comunica autenticidad a su texto; —y fue impreso en 12 de noviembre de 1885 en la imprenta de Manuel Tello, impresor de Cámara de Su Majestad el Rey



# LIBRO SEGUNDO

## DE LOS CONTRATOS ESPECIALES DEL COMERCIO

### Título Primero

## DE LAS COMPAÑIAS MERCANTILES

SECCION PRIMERA

De la Constitución de las Compañías y de sus Clases

**Art. 116.**—El contrato de compañía por el cual dos o más personas se obligan a poner en fondo común bienes, industria o alguna de estas cosas para obtener lucro, será mercantil, cualquiera que fuese su clase, siempre que se haya constituido con arreglo a las disposiciones de este Código.

Una vez constituida la Compañía mercantil, tendrá personalidad jurídica en todos sus actos y contratos.

V. arts. 165 y sigs., 1665, 1670 y sigs. 1700 C. Civ.

**Art. 117.**—El contrato de compañía mercantil celebrado con los requisitos esenciales del derecho, será válido y obligatorio entre los que lo celebren, cualesquiera que sean la forma, condiciones y combinaciones lícitas y honestas con que lo constituyan, siempre que no estén expresamente prohibidas en este Código.

Será libre la creación de Bancos territoriales, agrícolas y de emisión y descuento, de Sociedades de crédito, de préstamos hipotecarios, concesionarias de obras

**Art. 122.**—Por regla general, las Compañías mercantiles se constituirán adoptando alguna de las siguientes formas:

1º La regular colectiva en que todos los socios, en nombre colectivo y bajo una razón social, se comprometen a participar, en la proporción que establezcan de los mismos derechos y obligaciones.

2º La comanditaria en que uno o varios sujetos aportan capital determinado al fondo común, para estar a las resultas de las operaciones sociales dirigidas exclusivamente por otros con nombre colectivo.

3º La anónima en que formando el fondo común los asociados por parte o porciones ciertas, figuradas por acciones o de otra manera indubitada, encargan su manejo a mandatarios o administradores amovibles que representen a la Compañía bajo una denominación apropiada al objeto o empresa a que se destine sus fondos.

V. arts. 139, 145 a 150, 152, 160, sigs. C. Com.

**Art. 123.**—Por la índole de sus operaciones, podrán ser las Compañías mercantiles:

Sociedades de crédito;

Bancos de emisión y descuento;

Compañías de crédito territorial;

Compañías de minas;

Bancos agrícolas;

Concesionarias de ferrocarriles, tranvías, y obras públicas.

De almacenes generales de depósito;

Y de otras especies, siempre que sus pactos sean lícitos y su fin, la industria o el comercio.

**Art. 124.**—Las Compañías mutuas de seguros contra incendios, de combinaciones tontinas sobre la vida para auxilios a la vejez y de cualquiera otra clase y las cooperativas de producción, de crédito o de consumo, sólo se considerarán mercantiles y quedarán sujetas a las disposiciones de este Código, cuando se dedicaren



**EXHIBIT E**

[emblem]
Republic of Cuba

**CÓDIGO CIVIL**
[Civil Code]

**Law** No. 59

Publication
*Ministerio de Justicia*
[Ministry of Justice]

ARTICLE 36.1 After the presumption of death is declared, the exercise of the same rights that would have belonged to them if the death had been accredited by a medical certificate shall be granted to them.

2. The effects of the declaration are retroactive to the time at which the report that led to the presumption of death was made or the last news of the missing party was heard.

ARTICLE 37. If the missing party or party presumed dead appears or is proven to exist, the court shall annul the declaration of disappearance or of presumption of death, and shall stipulate that, aside from the cases of exception established by the law, all his rights shall be restored and his goods returned in the state in which they were and at the price for those sold or acquired with it, but he may not claim the fruits thereof.

SECTION FOUR

**Rights Inherent in Personality**

ARTICLE 33. Violation of the rights inherent in personality established in the Constitution that affect the net worth or honor of its holder confers on him or his successor the right to demand:

a)      immediate cessation of the violation or elimination of its effects, if possible;

b)      retraction on the part of the offender; and

c)      reparations for the damages and harm caused.

CHAPTER II

**LEGAL PERSONS**

ARTICLE 39.1 Legal persons are entities that, owning their own assets, have the capacity to be the subjects of rights and obligations.

2.      in addition to the State, the following are legal persons:

a)      companies and unions of State companies;

b)      cooperatives;

c)      political, union and company organizations and their enterprises;

ch)      companies and associations formed in conformity with the requirements established by law;

d)      foundations, this being understood to mean the set of goods created as separate net worth by an act of charity by the party who was their owner, to dedicate them to the achievement of a certain end permitted by law with a not-for-profit purpose, and formed in accordance with the requirements established by law;

e)      non-State companies authorized to conduct their activities; and

f)      other entities to which the law confers legal personality.

ARTICLE 40.1 The formation, government and dissolution of legal persons shall be established and regulated by law, their Charters and regulations.

2.    The organization and operation of the State shall be as established in the Constitution of the Republic and in the laws.

ARTICLE 41. Legal persons, to conduct their activities, shall have the capacity determined by the law, their Charters and regulations.

ARTICLE 42.1 Legal persons shall conduct their activities by means of their legally appointed or elected administrative organs.

2.      The procedure for the appointment or election of the administrative organs shall be established in their Charters or regulations and in the corresponding legal provisions. In the case of the State, Paragraph 2 of Article 40 shall apply.

3.      The actions performed by such bodies in relation to the activities of the legal person shall be binding on it.

4.      For damages caused to the legal person or to a third party due to the negligent management of its organs, the perpetrators shall also personally answer for it.

ARTICLE 43. The domicile of legal persons shall be that determined in the legal provisions creating them, in the Charters or regulations and, in the absence thereof, the location where its legal representation is established or its higher administrative organ is located.

ARTICLE 44.1 Legal persons answer for their obligations with the goods making up their net worth.

2.      The net worth of State companies shall be made up of the basic, turnover and financial resources assigned to them by the State. These companies shall answer for their obligations with their financial resources, within the limits established in the economic legislation.

3.      The State is not responsible for the obligations of other legal persons, nor are the latter responsible for the debts of the State.

TITLE III

**SUBJECT OF THE LEGAL RELATION**

ARTICLE 45.1. The subject of the legal relation is a piece of property, a service or an asset that was acquired or received licitly.

SECTION SIX

**Other Forms of Ownership**

ARTICLE 160.1. The State shall also recognize the property of companies, associations and foundations.

2.      Likewise, the State shall recognize the property of mixed companies, joint and international companies and of other legal persons of special natures.

3.      The use, enjoyment and disposition of the goods of entities referred to in the preceding paragraphs are governed by the provisions of the law and treaties as well as by the Charters and regulations of the respective legal person and, as a supplement, by this Code.

CHAPTER III

**CO-OWNERSHIP**

SECTION ONE

**General Provision**

ARTICLE 161. The ownership of one and the same item that is not materially divided may belong to several persons, by shares or in common.

SECTION TWO

**Co-Ownership by Shares**

ARTICLE 162.1. The portions or shares of the co-owners in the value of the undivided item shall be presumed to be equal.

2. Each of the co-owners shall have rights and obligations in proportion to their respective shares and may dispose of their share without the consent of the others, within the limits established by law.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK    )
                     )    ss.:
COUNTY OF NEW YORK   )

## __CERTIFICATION__

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into _English_ of _ Extract from the Civil Code of Cuba _ written in _Spanish_ .

New York,  January 25, 2010.

TransNet USA, Inc.

Susan E. Geddes, Vice President

Sworn to and subscribed before me on
January 25, 2010.

LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010



República de Cuba

# CODIGO CIVIL

## Ley No. 59



Divulgación
Ministerio de Justicia

ARTICULO 36.1.   Declarada la presunción de muerte, queda expedito para los interesados el ejercicio de los mismos derechos que les hubieran correspondido de ser la muerte acreditada por certificación médica.

2. Los efectos de la declaración se retrotraen al momento en que se produjo el acontecimiento que hizo presumir la muerte o se tuvieron las últimas noticias del desaparecido.

ARTICULO 37.   Si el declarado ausente o presuntamente muerto se presenta o se prueba su existencia, el tribunal anula la declaración de ausencia o presunción de muerte y dispone que, salvo los casos de excepción que establece la ley, se le restituya en todos sus derechos, y recobre sus bienes en el estado en que se encuentren y el precio de los enajenados o los adquiridos con él, pero no podrá reclamar frutos.

## SECCION CUARTA
### Derechos inherentes a la personalidad

ARTICULO 38.   La violación de los derechos inherentes a la personalidad consagrados en la Constitución, que afecte al patrimonio o al honor de su titular, confiere a éste o a sus causahabientes la facultad de exigir:

a) el cese inmediato de la violación o la eliminación de sus efectos, de ser posible;

b) la retractación por parte del ofensor; y

c) la reparación de los daños y perjuicios causados.

## CAPITULO II
### PERSONAS JURIDICAS

ARTICULO 39.1.   Las personas jurídicas son entidades que, poseyendo patrimonio propio, tienen capacidad para ser sujetos de derechos y obligaciones.

15



2. Son personas jurídicas, además del Estado:

a) las empresas y uniones de empresas estatales;

b) las cooperativas;

c) las organizaciones políticas, de masas, sociales y sus empresas;

ch) las sociedades y asociaciones constituidas de conformidad con los requisitos establecidos en las leyes;

d) las fundaciones, entendiéndose por tales el conjunto de bienes creado como patrimonio separado por acto de liberalidad del que era su propietario, para dedicarlos al cumplimiento de determinado fin permitido por la ley sin ánimo de lucro, y constituidas de conformidad con los requisitos establecidos en las leyes;

e) las empresas no estatales autorizadas para realizar sus actividades; y

f) las demás entidades a las que la ley confiere personalidad jurídica.

ARTICULO 40.1. La constitución, régimen y disolución de las personas jurídicas se establecen y regulan en la ley, sus estatutos y reglamentos.

2. La organización y el funcionamiento del Estado son los que se establecen en la Constitución de la República y en las leyes.

ARTICULO 41. Las personas jurídicas, para ejercer sus actividades, tienen la capacidad que determinen la ley y sus estatutos o reglamentos.

ARTICULO 42.1. Las personas jurídicas realizan sus actividades por medio de sus órganos de dirección legalmente designados o elegidos.

16

2. El procedimiento para la designacion o elección de los órganos de dirección, se establece en sus estatutos o reglamentos y en las disposiciones legales correspondientes. En el caso del Estado se está a lo dispuesto en el apartado 2 del articulo 40.

3. Los actos realizados por dichos órganos en relación con las actividades de la persona jurídica, obliga a ésta.

4. Por los daños ocasionados a la persona jurídica o a tercero a causa de la gestión negligente de sus órganos, responden, además, personalmente, sus autores.

ARTICULO 43. El domicilio de las personas jurídicas es el determinado en la disposición legal que las crea, en sus estatutos o reglamentos y, en su defecto, el lugar donde esté establecida su representación legal o radique su órgano superior de dirección.

ARTICULO 44.1. Las personas jurídicas responden de sus obligaciones con los bienes que integran su patrimonio.

2. El patrimonio de las empresas estatales está integrado por los medios básicos, de rotación y financieros que les asigna el Estado. Estas empresas sólo responden de sus obligaciones con sus recursos financieros, dentro de las limitaciones establecidas en la legislación económica.

3. El Estado no responde de las obligaciones de otras personas jurídicas, ni éstas de las de aquél.

TITULO III

**OBJETO DE LA RELACION JURIDICA**

ARTICULO 45.1. El objeto de la relación jurídica es un bien, una prestación o un patrimonio, que sean de licita apropiación o recepción.

17



## SECCION SEXTA

### Otras formas de propiedad

ARTICULO 160.1.   El Estado reconoce también la propiedad de las sociedades, asociaciones y fundaciones.

2. Asimismo, reconoce la de las empresas mixtas, conjuntas e internacionales y de otras personas jurídicas de características especiales.

3. El uso, disfrute y disposición de los bienes de las entidades a que se refieren los apartados anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamento de la persona jurídica respectiva y, supletoriamente, por este Código.

## CAPITULO III

### COPROPIEDAD

## SECCION PRIMERA

### Disposición general

ARTICULO 161.   La propiedad de un mismo bien que no está materialmente dividido puede pertenecer a varias personas, por cuotas o en común.

## SECCION SEGUNDA

### Copropiedad por cuotas

ARTICULO 162.1.   Las partes o cuotas de los copropietarios sobre el valor del bien indiviso, se presumen iguales.

2. Cada uno de los copropietarios tiene derechos y obligaciones en proporción a su respectiva cuota y puede disponer de su parte sin el consentimiento de los demás, con las limitaciones que la ley establece.

**48**

