TRANSLATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NILO JEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-mc-466 |
| | ) | |
| THE REPUBLIC OF CUBA, FIDEL CASTRO | ) | |
| RUZ, Individually and as President of the State | ) | |
| and Council of Ministers, Head of the | ) | |
| Communist Party and Commander-in-Chief of | ) | |
| the Military, RAUL CASTRO RUZ, | ) | |
| Individually and as First Vice President of the | ) | |
| Head of the Cuban Revolutionary Armed | ) | |
| Forces, THE CUBAN REVOLUTIONARY | ) | |
| ARMED FORCES, and EL MINISTERIO DEL | ) | |
| INTERIOR, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DR. CARLOS GUITIERREZ CALZADO declares under penalty of perjury under the laws of the United States of America that the following is true and correct;

1.      I am the President of Laboratorios Dalmer, S.A. I have held this position since 1991.   The principal business activity of Dalmer, S.A. is the research, production, sale and distribution of pharmaceutical products within and outside of Cuba.

2.      Dalmer, S.A. is a shareholder company (known in Cuba as a "Sociedad Anónima") constituted under the laws of the Republic of Cuba, with its own legal personality and assets. The shareholders of Laboratorios Dalmer, S.A. are Neuronic, S.A. and Restauración Neurológica S.A. *See,* The Agreements to Transfer Shares, with a

translation into English attached hereto as Exhibit A. Each of the shareholders of Laboratorios Dalmer, S.A. is a company with legal personality, its own assets and management, organized under the laws of Cuba. Laboratorios Dalmer, S.A. is not an agency or instrumentality of the Republic of Cuba under Cuban law.

3.      Under Cuban law, Laboratorios Dalmer, S.A. is not responsible for the debts or obligations of its shareholders. Furthermore, Laboratorios Dalmer, S.A. is not responsible for the debts and obligations of third parties, including without limitation the Republic of Cuba. Laboratorios Dalmer, S.A.'s assets and liabilities are its own, and not the assets or liabilities of its shareholders. Likewise the assets and liabilities of Laboratorios Dalmer S.A. are not the assets or liabilities of third parties, including the Republic of Cuba.

4.      Laboratorios Dalmer S.A. is a company owned by shareholders constituted under the laws of the Republic of Cuba on December 25, 1991. The "Estatutos" (the equivalent of the Articles of Incorporation in United States law and, hereinafter, the "Statutes") of Dalmer, S.A., were issued at the Special Notary Office of the Ministry of Justice of the Republic of Cuba on December 27, 1991. The Statutes were recorded in the Central Register of Stock Companies and in the Second Commercial Register of Havana. A true and correct copy of the current Statutes of Laboratorios Dalmer, S.A., with a translation to English, is enclosed as Exhibit B.

5.      The Statutes of Laboratorios Dalmer, S.A. establish that the Board of Shareholders is the highest governing authority of the company and that the Board of Shareholders designates the Directive and administrative bodies of the company. *See* Statutes, at Articles 11 and 18. The Board of Directors carries out the administration and

representation of Laboratorios Dalmer, S.A., subject to the authority and direction of the Board of Shareholders. Statues at Articles 18 and 26. The Board of Shareholders, *inter alia*, designates the members of the Board of Directors, determines the number of persons who shall serve on the Council, amends the Statutes, and decides upon the distribution of dividends. *See* Statutes, at Article 18, 19, and 20. It is the responsibility of the Board of Directors to manage the enterprise in all of its aspects, subject to the Board of Shareholder´s authority and direction. *See* Statutes, at Article 18 and 26. The Board of Directors designates the President of the Company. See Statutes, at Article 27. The Board of Directors is authorized to hire and fire the personnel employed by the Company or it may delegate this authority to other officers or workers of the Company. See Article 26 (b) and (c).

6.      According to the Cuban Constitution, the Cuban Commercial and Civil Codes, and Cuban jurisprudence (judicial precedents), a commercial company which is owned by shareholders acquires its own legal personality with independent assets and limited liability, different from that of any of the parties.

7.      The Constitution of the Republic of Cuba explicitly provides that legal persons, such as commercial companies, are not liable for the debts and obligations of the Cuban State. The Constitution establishes: "The State is not liable for the obligations contracted by the companies, entities and other legal persons, and the latter are also not liable for the obligations of the State." (Constitution of the Republic of Cuba, enacted on February 24, 1976, as last amended by the National Assembly of the People's Power on June 26, 2002, at Article 17). A true and correct copy of the aforementioned articles of

the Constitution of the Republic of Cuba, with a translation to English, is attached as Exhibit C.

8.      Under the Commercial Code of Cuba, a commercial company has "legal personality in all its acts and contracts."  Article 116, second paragraph.  According to the provisions of the Commercial Code, one of the forms adopted by commercial companies is the Joint Stock Company (Article 122.3).  The current Commercial Code of Cuba was enacted in Spain on August 22, 1885, and was extended to Cuba by Royal Decree on January 28, 1886, being enacted on May 1, 1886.  A true and correct copy of the aforementioned articles of the Commercial Code of Cuba, with a translation to English, is enclosed as Exhibit D.

9.      The Cuban Civil Code, adopted on April 12, 1988, sets forth that "legal entities are entities which, owning their own assets, have capacity to be subject to rights and obligations" (Article 39.1).  In addition, the Civil Code disposes that "legal entities are ... the companies and associations constituted pursuant to the requisites established in the laws" and "other entities to which the law grants legal personality." (Art. 39, 2 ch and f.)

10.      Concerning the liability of the companies, the Civil Code explicitly establishes that "the State is not responsible for the obligations of other legal persons, nor are the latter responsible for the debts of the State."  (Art. 44.3).  A true and correct copy of the aforementioned articles of the Civil Code, with a translation to English, is enclosed as Exhibit E.  Laboratorios Dalmer S.A's Statutes explicitly set forth that it is entitled to contract on its own behalf: that it "shall have full capacity and powers to undertake the

operations, business, investments and other activities it may consider necessary and appropriate." (Statutes, Article 3).

11.    According to the above, since the registration of Laboratorios Dalmer, S.A in the Register of Sociedades Anónimas and the Commercial Registry of Havana, this company became a legal entity, acquiring all rights inherent to the entity, including the right to its own assets and limited liability for its acts, but not for the acts of others.

Executed this 22 day of January, 2010 in Havana, Cuba.


[signature]_____
DR. CARLOS GUITIERREZ CALZADO

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK      )
                       )      ss
COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation from Spanish to English of *Declaration of Dr. Carlos Guitierrez Calzado, dated January 22, 2010,* completed on January 25, 2010.

Christine Muller
Vice President
The LanguageWorks, Inc.

Sworn to and subscribed before me
this 25th day of January, 2010

Notary Public

CHRIS SULLIVAN
Notary Public, State of New York
No. 01SU6146597
Qualified in Kings County
Commission Expires May 22, 2010

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NILO JEREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:09-mc-466 |
| ) | |
| THE REPUBLIC OF CUBA, FIDEL CASTRO ) | |
| RUZ, Individually and as President of the State ) | |
| and Council of Ministers, Head of the ) | |
| Communist Party and Commander-in-Chief of ) | |
| the Military, RAUL CASTRO RUZ, ) | |
| Individually and as First Vice President of the ) | |
| Head of the Cuban Revolutionary Armed ) | |
| Forces, THE CUBAN REVOLUTIONARY ) | |
| ARMED FORCES, and EL MINISTERIO DEL ) | |
| INTERIOR, ) | |
| ) | |
| Defendants. ) | |

DR. CARLOS GUTIERREZ CALZADO declara bajo pena de perjurio según las leyes de Estados Unidos de América que lo que sigue es verdadero y cierto:

1.      Soy el Presidente de Laboratorios Dalmer, S.A. he estado en este puesto desde 1991.  Las principales actividades comerciales de Laboratorios Dalmer S.A. son la investigación, producción, venta y distribución de productos farmacéuticos dentro y fuera de Cuba.

2.      Laboratorios Dalmer, S.A., compañía accionista (conocida en Cuba como "Sociedad Anónima") está constituida bajo las leyes de la República de Cuba, con su personalidad jurídica y activos propios. Los accionistas de Laboratorios Dalmer S.A. son Neuronic, S.A. y Restauración Neurológica S.A.  Una copia fiel y correcta de los

Acuerdos de Transferencia de Acciones, con una traducción a inglés, esta ajuntad al presente como Anexo A. Cada uno de los accionistas de Laboratorios Dalmer, S.A. es una compañía con personalidad jurídica, activos y gerencia propia, organizada bajo las leyes de Cuba. Laboratorios Dalmer, S.A. no es una agencia o instrumento de la República de Cuba bajo las leyes cubanas.

3. Bajo las leyes cubanas, Laboratorios Dalmer, S.A. no es responsable por las deudas u obligaciones de sus accionistas. Además, Laboratorios Dalmer, S.A. no es responsable por las deudas u obligaciones de terceras partes, incluyendo sin limitación la República de Cuba. Los activos y pasivos de Laboratorios Dalmer, S.A. son propios y no los activos o pasivos de sus accionistas. Asimismo los activos y pasivos de Laboratorios Dalmer S.A. no son activos y pasivos de terceras partes, incluyendo la República de Cuba.

4. Laboratorios Dalmer, S.A. es una compañía propiedad de los accionistas constituida bajo las leyes de la República de Cuba el 25 de diciembre de 1991. Los Estatutos (equivalente a los Artículos de Incorporación en las leyes de Estados Unidos) de Laboratorios Dalmer S.A. fueron expedidos en la Notaría Especial del Ministerio de Justicia de la República de Cuba el 27 de diciembre de 1991. Los Estatutos fueron archivados en el Registro Central de Sociedades Anónimas y en el Registro Mercantil Segundo de la Habana. Una copia verdadera y cierta de los Estatutos de Laboratorios Dalmer S.A., con una traducción al inglés, se adjuntan en el Anexo B.

5. Los Estatutos de Laboratorios Dalmer, S.A. establecen que la Junta de Accionistas es la máxima autoridad de gobierno de la compañía y que la Junta de Accionistas designa a la Directiva y a los cuadros administrativos de la compañía. *Ver*

2

Estatutos, Artículos 11 y 18. La administración y la representación de Laboratorios Dalmer S.A. es llevada a cabo por la Junta de Directores, sujeto a la autoridad y dirección de la Junta de Accionistas. Estatutos, Artículos 18 y 26. La Junta de Accionistas, *inter alia*, designa a los miembros de la Junta de Directores, determina la cantidad de personas que van a formar parte de la misma, enmienda los Estatutos y decide la distribución de los dividendos. *Ver* Estatutos, Artículos 18, 19 y 20. Es responsabilidad de la Junta de Directores manejar la empresa en todos sus aspectos, sujeto a la autoridad y dirección de la Junta de Accionistas. *Ver* Estatutos, Artículos 18 y 26. la Junta de Directores designa el Presidente de la Compañía. *Ver* Estatutos, Artículo 27. La Junta de Directores está facultada para contratar y despedir a los trabajadores empleados por la Compañía o puede delegar esta facultad a otros funcionarios o empleados de la Compañía. *Ver* Artículo 26 (b) y (c).

6.     De acuerdo con la Constitución Cubana, los Códigos Civil y de Comercio y la jurisprudencia cubana (precedentes judiciales), una compañía mercantil que es propiedad de accionistas adquiere su propia personalidad jurídica, con activos independientes y pasivos limitados, diferentes a los de cualquiera de las partes.

7.     La Constitución de la República de Cuba establece explícitamente que las personas jurídicas, tales como compañías mercantiles, no son responsables de las deudas y obligaciones del Estado Cubano. La Constitución establece: "El Estado no responde de las obligaciones contraídas por las empresas, entidades u otras personas jurídicas y estas tampoco responden de las de aquél." (Constitución de la República de Cuba, proclamada el 24 de febrero de 1976, enmendada por última vez por la Asamblea Nacional del Poder Popular el 26 de junio de 2002, Artículo 17). Una copia verdadera y cierta de los

3

artículos de la Constitución de la República de Cuba mencionados anteriormente, con la traducción al inglés, se junta como Anexo C.

8.      Bajo el Código de Comercio de Cuba, una compañía comercial tiene "personalidad jurídica en todos sus actos y contratos" Artículo 116, segundo párrafo. De acuerdo con las disposiciones del Código de Comercio, una de las formas adoptadas por las compañías mercantiles es  la Anónima (Artículo 122.3).  El actual Código de Comercio de Cuba fue promulgado en España el 22 de agosto de 1885 y fue extendido a Cuba por Decreto real el 28 de enero de 1886, siendo promulgado el 1ro de mayo de 1886.  Una copia verdadera y cierta de los artículos del Código Comercio de Cuba mencionados anteriormente, con la traducción al inglés, se junta como Anexo D.

9.      El Código Civil Cubano, adoptado el 12 de abril de 1988, expone  que "Las personas jurídicas son entidades que, poseyendo patrimonio propio, tienen capacidad para ser sujetos de derechos y obligaciones" (Artículo 39.1).  Adicionalmente, el Código Civil dispone que "Son personas jurídicas... las sociedades y asociaciones constituidas de conformidad con los requisitos establecidos en las leyes" y "las demás entidades a las que la ley confiere personalidad jurídica." (Art. 39, 2 ch y f.)

10.     Concerniente a las deudas de las compañías, el Código Civil establece explícitamente que "El Estado no responde de las obligaciones de otras personas jurídicas, ni éstas de las de aquél." (Art. 44.3).  Una copia verdadera y cierta de los artículos del Código Civil mencionados anteriormente, con la tràducción al inglés, se junta como Anexo E.  Los estatutos de Laboratorios Dalmer S.A. establecen explícitamente que puede contratar bajo su responsabilidad: "tendrá plena capacidad y

4

facultades para realizar cuantas operaciones, negocios, inversiones y demás actividades considere necesarias o convenientes." Estatutos, Articulo 3.

11.    De acuerdo con lo anterior, desde que se asentó a Laboratorios Dalmer S.A. en el Registro de Sociedades Anónimas y en el Registro Mercantil de la Habana, esta compañía se convirtió en una entidad jurídica, adquiriendo todos los derechos inherentes a una entidad, incluyendo el derecho a sus propios activos y pasivos, responsables por sus actos, pero no por los actos de otros.

Firmado este 22 de enero de 2010 en La Habana, Cuba.

_____
DR. CARLOS GUTIERREZ CALZADO

# EXHIBIT A

# SHARE TRANSFER AGREEMENT

**Party of the first part:**

Dr. Rosa María Mas Ferreiro, Vice President of LABORATORIOS DALMER S.A., a Cuban citizen, of legal age, holder of a doctorate in biology, residing at Calle 206 No. 2113 e/ 21 and 23, Rpto. Atabey, Municipality of Playa, City of Havana, with Permanent Identity Card No. 49011101676.

**Party of the second part:**

Restauración Neurológica S.A., a Cuban commercial company with its legal domicile at [illegible], Playa, City of Havana, represented in this act by Dr. Julián Alvarez Blanco in his capacity as President.

**Whereas:**

1. The parties mutually acknowledge each others' character and the capacity with which they respectively appear.

2. Dr. Rosa María Mas Ferreiro is the holder of Stock Certificate No. 6, dated August 20, 1998, which encompasses two thousand three hundred fifty-two (2,352) registered shares running from No. 2,449 to No. 4,800 having a value of 2,352,000 pesos, National Currency, pertaining to the LABORATORIOS DALMER S.A. commercial company, incorporated by means of Public Instrument No. 847 of December 25, 1991, executed before the Notary Carmen Lilia Valbuena Marrero of the Special Notarial Office, Ministry of Justice, Republic of Cuba.

3. There are no unfulfilled public or private undertakings which prevent free transfer, nor any other legal impediments to valid transfer, and the assigning party has full and legitimate property title thereover.

4. There is no judicial or other restriction on the title, and it is not subject to attachment; it is free and clear of charges and encumbrances.

5. It is not in a state of suspension of payments and bankruptcy.

**THE PARTIES AGREE AS FOLLOWS:**

**FIRST:** Dr. Rosa María Mas Ferreiro transfers, free of charge, Stock Certificate No. 6 (for Shares 2,449 to 4,800) with a par value of

one thousand (1,000.00) pesos, national currency, equivalent to 2,352,000 pesos, national currency, to the Cuban commercial company Restauración Neurológica S.A., pursuant to the provisions of Resolution No. 6 of the Special General Meeting of Shareholders of July 12, 2004.

**SECOND:** The Cuban commercial company Restauración Neurológica S.A., represented in this act by its president, Dr. Julián Alvarez Blanco, accepts Stock Certificate No. 6, to which reference is made in the preceding agreement.

**THIRD:** The share transfer, free of charge, shall be carried out on the date of signing this agreement.

**FOURTH:** Cuban law shall be applicable in the interpretation and execution of this Agreement, and in the event of disputes the parties shall attempt to resolve them through amicable negotiations, but if they cannot reach agreement the parties submit to the competent courts of the Republic of Cuba.

**FIFTH:** The organs of administration and governance of the LABORATORIOS DALMER S.A. commercial company shall be responsible for performing all the initiatives, procedures, registrations, and enrollments which may be necessary to comply with the provisions of this Agreement, through the designated person.

**AND FOR THE RECORD**, this Agreement is issued and signed by the parties in two identical counterparts with the same legal value and effect, one to be delivered to each of the signing parties.

In the City of Havana on the _____ day of _____, 2004.

[signature]                                    [signature]
Dr. Rosa María Mas Ferreiro                    Restauración Neurológica S.A.
                                               Represented by
                                               Dr. Julián Alvarez Blanco

# SHARE TRANSFER AGREEMENT

**Party of the first part:**

Mr. Carlos Manuel Gutiérrez Calzado, President of Laboratorios Dalmer S.A., a Cuban citizen, of legal age, a physician, residing at Ave. 21 No. 21403 e/ 214 and 218, Rpto. Atabey, Municipality of Playa, City of Havana, with Permanent Identity Card No. 43120303266.

**Party of the second part:**

Neuronic S.A., a Cuban commercial company with its legal domicile at Ave. 25 No. 15007 Esq. 158, Cubanacán, Playa, City of Havana, represented in this act by Dr. Mitchell Joseph Valdés Sosa in his capacity as President.

**Whereas:**

1. The parties mutually acknowledge each others' character and the capacity with which they respectively appear.

2. Dr. Carlos Manuel Calzado Gutiérrez is the holder of Stock Certificate No. 5, dated August 20, 1998, which encompasses two thousand four hundred forty-eight (2,448) registered shares running from No. 1 to No. 2,448 having a value of 2,448,000 pesos, National Currency, pertaining to the LABORATORIOS DALMER S.A. commercial company, incorporated by means of Public Instrument No. 847 of December 25, 1991, executed before the Notary Carmen Lilia Valbuena Marrero of the Special Notarial Office, Ministry of Justice, Republic of Cuba.

3. There are no unfulfilled public or private undertakings which prevent free transfer, nor any other legal impediments to valid transfer, and the assigning party has full and legitimate property title thereover.

4. There is no judicial or other restriction on the title, and it is not subject to attachment; it is free and clear of charges and encumbrances.

5. It is not in a state of suspension of payments and bankruptcy.

**THE PARTIES AGREE AS FOLLOWS:**

**FIRST:** Dr. Carlos Manuel Gutiérrez Calzado transfers, free of charge, 960 shares encompassed by Stock Certificate No. 5 (from Shares 1,489 to 2,448) with a par value of one thousand (1,000.00) pesos, national currency,

equivalent to 960,000 pesos, national currency, to the Cuban commercial company Neuronic S.A., pursuant to the provisions of Resolution No. 5 of the Special General Meeting of Shareholders of July 12, 2004.

**SECOND:** The Cuban business corporation Neuronic S.A., represented in this act by its president, Dr. Mitchell Joseph Valdés Sosa, accepts the share transfer to which reference is made in the preceding agreement.

**THIRD:** The share transfer, free of charge, shall be carried out on the date of signing this agreement.

**FOURTH:** Cuban law shall be applicable in the interpretation and execution of this Agreement, and in the event of disputes the parties shall attempt to resolve them through amicable negotiations, but if they cannot reach agreement the parties submit to the competent courts of the Republic of Cuba.

**FIFTH:** The organs of administration and governance of the LABORATORIOS DALMER S.A. commercial company shall be responsible for performing all the initiatives, procedures, registrations, and enrollments which may be necessary to comply with the provisions of this Agreement, through the designated person.

**AND FOR THE RECORD**, this Agreement is issued and signed by the parties in two identical counterparts with the same legal value and effect, one to be delivered to each of the signing parties.

In the City of Havana on the _____ day of November, 2004.

[signature]                                         [signature]
Dr. Carlos Manuel Gutiérrez Calzado               Neuronic S.A.
                                                    Represented by
                                                    Dr. Mitchell Joseph Valdés Sosa

## SHARE TRANSFER AGREEMENT

**Party of the first part:**

Mr. Carlos Manuel Gutiérrez Calzado, President of LABORATORIOS DALMER S.A., a Cuban citizen, of legal age, a physician, residing at Ave. 21 No. 21403 e/ 214 and 218, Rpto. Atabey, Municipality of Playa, City of Havana, with Permanent Identity Card No. 43120303266.

**Party of the second part:**

Restauración Neurológica S.A., a Cuban commercial company with its legal domicile at Avenida 15 Esq. 200 No. 2003, First Office, Atabey, City of Havana, represented in this act by Dr. Julián Alvarez Blanco in his capacity as President.

**Whereas:**

1. The parties mutually acknowledge each others' character and the capacity with which they respectively appear.

2. Dr. Carlos Manuel Calzado Gutiérrez is the holder of Stock Certificate No. 5, dated August 20, 1998, which encompasses two thousand four hundred forty-eight (2,448) registered shares running from No. 1 to No. 2,448 having a value of 2,448,000 pesos, National Currency, pertaining to the LABORATORIOS DALMER S.A. commercial company, incorporated by means of Public Instrument No. 847 of December 25, 1991, executed before the Notary Carmen Lilia Valbuena Marrero of the Special Notarial Office, Ministry of Justice, Republic of Cuba.

3. There are no unfulfilled public or private undertakings which prevent free transfer, nor any other legal impediments to valid transfer, and the assigning party has full and legitimate property title thereover.

4. There is no judicial or other restriction on the title, and it is not subject to attachment; it is free and clear of charges and encumbrances.

5. It is not in a state of suspension of payments and bankruptcy.

**THE PARTIES AGREE AS FOLLOWS:**

**FIRST:** Dr. Carlos Manuel Gutiérrez Calzado transfers, free of charge, 1,488 shares encompassed by Stock Certificate No. 5 (from Shares 1 to

1,488) with a par value of one thousand (1,000.00) pesos, national currency, equivalent to 1,448,000 pesos, national currency, to the Cuban business corporation Restauración Neurológica S.A., pursuant to the provisions of Resolution No. 5 of the Special General Meeting of Shareholders of July 12, 2004.

**SECOND:** The Cuban commercial company Restauración Neurológica S.A., represented in this act by its president, Dr. Julián Alvarez Blanco, accepts the share transfer to which reference is made in the preceding agreement.

**THIRD:** The share transfer, free of charge, shall be carried out on the date of signing this agreement.

**FOURTH:** Cuban law shall be applicable in the interpretation and execution of this Agreement, and in the event of disputes the parties shall attempt to resolve them through amicable negotiations, but if they cannot reach agreement the parties submit to the competent courts of the Republic of Cuba.

**FIFTH:** The organs of administration and governance of the LABORATORIOS DALMER S.A. commercial company shall be responsible for performing all the initiatives, procedures, registrations, and enrollments which may be necessary to comply with the provisions of this Agreement, through the designated person.

**AND FOR THE RECORD**, this Agreement is issued and signed by the parties in two identical counterparts with the same legal value and effect, one to be delivered to each of the signing parties.

In the City of Havana on the _____ day of November, 2004.

[signature]                                                  [signature]
Dr. Carlos Manuel Gutiérrez Calzado          Restauración Neurológica S.A.
                                                             Represented by
                                                             Dr. Julián Alvarez Blanco

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language** Works

STATE OF NEW YORK        )
                         )        ss
COUNTY OF NEW YORK       )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of **Share Transfer Agreement,** completed on 01/18/2010, originally written in Spanish.

Christine Muller
Vice President
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

**MARCEL HENRIQUE VOTLUCKA**
**Notary Public, State of New York**
**No. 01VO6154182**
**Certificate Filed in New York County**
**Qualified in Kings County**
**Commission Expires October 23, 20 _19_**

## ACUERDO DE TRANSFERENCIA DE ACCIONES.

**De una parte:**

Dra. Rosa María Mas Ferreiro, Vice-Presidenta de LABORATORIOS DALMER S.A ciudadana cubana, mayor de edad, Doctora en Ciencias Biológicas, vecina de, Calle 206 No 2113 e/ 21 y 23 Rpto. Atabey, Municipio Playa, Ciudad de La Habana, con Identidad Permanente No.49011101676..

**De otra parte:**

Restauración Neurológica S.A., Sociedad Mercantil cubana, con domicilio legal en _____ Playa, Ciudad de la Habana, representada en este acto por el Dr. Julián Alvarez Blanco en su carácter de Presidente.

**Considerando:**

1-Que las partes se reconocen mutuamente el carácter y capacidad con que comparecen.

2-Que la Dra. Rosa María Mas Ferreiro es el titular del Certificado de acciones No.6, de fecha 20 de Agosto de 1998, que comprende dos mil trescientas cincuenta y dos (2,352) acciones nominativas de la No 2,449 a la No 4,800 por un valor de 2,352,000 pesos Moneda Nacional, perteneciente a la Sociedad Mercantil LABORATORIOS DALMER S.A., constituida mediante Escritura Pública No.847 de fecha 25 de diciembre de 1991, otorgada ante la Notaria Lic. Carmen Lilia Valbuena Marrero, de la Notaría Especial de Ministerio de Justicia de la República de Cuba.

3-Que no existen pactos públicos ni privados no cumplidos que impidan la libre trasmisión ni otros impedimentos de carácter legal para la válida trasmisión siendo el título de plena y legítima propiedad de la parte cedente.

4-Que sobre el título no existe retención judicial ni de otra índole y no está sujeto a embargos, encontrándose libres de cargas y gravámenes.

5-Que no se encuentra en suspensión de pagos y quiebra.

**ACUERDAN:**

**PRIMERO:** Que la Dra. Rosa María Mas Ferreiro traspase gratuitamente el Certificado de Acciones No. 6 (de la 2,449 a la 4,800) con un valor nominal de

mil (1,000.00) pesos moneda nacional, equivalente a 2,352,000 pesos moneda nacional, a favor de la Sociedad Mercantil cubana Restauración Neurológica S.A., en virtud de lo establecido en el Acuerdo No. 6 de la Junta General Extraordinaria de Accionistas de fecha 12 de julio de 2004.

**SEGUNDO:** Que la Sociedad Mercantil cubana Restauración Neurológica S.A., representada en este acto por su presidente el Dr. Julián Alvarez Blanco acepta el Certificado de Acciones No. 6, al que se hace referencia en el acuerdo anterior.

**TERCERO:** El traspaso gratuito de las acciones será ejecutado en la fecha de firma de este acuerdo.

**CUARTO:** En la interpretación y ejecución de este Acuerdo será aplicable la ley cubana y caso de litigios las partes tratarán de solucionarlos mediante negociaciones amigables, de no llegar a acuerdo las partes se someten a los tribunales competentes de la República de Cuba.

**QUINTO:** Los órganos de administración y gobierno de la Sociedad Anónima LABORATORIOS DALMER S.A., se encargarán de realizar a través de la persona designada, cuantas gestiones, trámites, registros e inscripciones resulten necesarias para cumplir lo dispuesto en el presente Acuerdo.

**Y PARA QUE ASI CONSTE,** se extiende y firma por las partes en dos ejemplares de un mismo tenor e idéntico valor legal y efectos, correspondiendo uno a cada parte que suscribe.

En la Ciudad de la Habana, a los _____ días del mes de _____ de 2004.


_____              _____
Dra. Rosa María Mas Ferreiro         Restauración Neurológica S.A.
                                     Representada por el
                                     Dr.. Julián Alvarez Blanco

## ACUERDO DE TRANSFERENCIA DE ACCIONES.

**De una parte:**

Sr. Carlos Manuel Gutiérrez Calzado, Presidente de Laboratorios Dalmer S.A., ciudadano cubano, mayor de edad, médico, vecino de Ave. 21 No. 21403 e/ 214 y 218 Rpto. Atabey, Municipio Playa, Ciudad de La Habana, con Identidad Permanente No. 43120303266.

**De otra parte:**

Neuronic S.A., Sociedad Mercantil cubana, con domicilio legal en Ave. 25 No. 15007 Esq 158, Cubanacán , Playa, Ciudad de la Habana, representada en este acto por el Dr. Michell Joseph Valdés Sosa en su carácter de Presidente.

**Considerando:**

1-Que las partes se reconocen mutuamente el carácter y capacidad con que comparecen.

2-Que el Dr. Carlos Manuel Calzado Gutiérrez es el titular del Certificado de acciones No.5, de fecha 20 de Agosto de 1998, que comprende dos mil cuatrocientas cuarenta y ocho (2,448) acciones nominativas de la No 1 a la No 2,448 por un valor de 2,448,000 pesos Moneda Nacional, perteneciente a la Sociedad Mercantil LABORATORIOS DALMER S.A., constituida mediante Escritura Pública No.847 de fecha 25 de diciembre de 1991, otorgada ante la Notaria Lic. Carmen Lilia Valbuena Marrero, de la Notaría Especial de Ministerio de Justicia de la República de Cuba.



3-Que no existen pactos públicos ni privados no cumplidos que impidan la libre trasmisión ni otros impedimentos de carácter legal para la válida trasmisión siendo el título de plena y legítima propiedad de la parte cedente.

4-Que sobre el título no existe retención judicial ni de otra índole y no está sujeto a embargos, encontrándose libres de cargas y gravámenes.

5-Que no se encuentra en suspensión de pagos y quiebra.

**ACUERDAN:**

**PRIMERO:** Que el Dr. Carlos Manuel Gutiérrez Calzado traspase gratuitamente del Certificado de Acciones No. 5 la cantidad de 960 acciones (de la 1,489 a la 2,448) con un valor nominal de mil (1,000.00) pesos moneda nacional,

equivalente a 960,000 pesos moneda nacional, a favor de la Sociedad Mercantil cubana Neuronic S.A., en virtud de lo establecido en el Acuerdo No. 5 de la Junta General Extraordinaria de Accionistas de fecha 12 de julio de 2004.

**SEGUNDO:** Que la Sociedad Mercantil cubana Neuronic S.A., representada en este acto por su presidente Dr Michell Joseph Valdés Sosa acepta el traspaso de acciones, al que se hace referencia en el acuerdo anterior.

**TERCERO:** El traspaso gratuito de las acciones será ejecutado en la fecha de firma de este acuerdo.

**CUARTO:** En la interpretación y ejecución de este Acuerdo será aplicable la ley cubana y caso de litigios las partes tratarán de solucionarlos mediante negociaciones amigables, de no llegar a acuerdo las partes se someten a los tribunales competentes de la República de Cuba.

**QUINTO:** Los órganos de administración y gobierno de la Sociedad Anónima LABORATORIOS DALMER S.A., se encargarán de realizar a través de la persona designada, cuantas gestiones, trámites, registros e inscripciones resulten necesarias para cumplir lo dispuesto en el presente Acuerdo.

**Y PARA QUE ASI CONSTE,** se extiende y firma por las partes en dos ejemplares de un mismo tenor e idéntico valor legal y efectos, correspondiendo uno a cada parte que suscribe.

En la Ciudad de la Habana, a los _____ días del mes de Noviembre de 2004.


_____          _____
Dr.. Carlos Manuel Gutiérrez Calzado        Neuronic S.A.
                                            Representada por el
                                            Dr Michell Joseph Valdés Sosa

## ACUERDO DE TRANSFERENCIA DE ACCIONES.

**De una parte:**

Sr. Carlos Manuel Gutiérrez Calzado, Presidente de LABORATORIOS DALMER S.A., ciudadano cubano, mayor de edad, médico, vecino de Ave. 21 No. 21403 e/ 214 y 218 Rpto. Atabey, Municipio Playa, Ciudad de La Habana, con Identidad Permanente No. 43120303266.

**De otra parte:**

Restauración Neurológica S.A., Sociedad Mercantil cubana, con domicilio legal en Ave. 15 Esq a 200 No. 2003 Oficina Primera, Atabey, Ciudad de la Habana, representada en este acto por el Dr. Julián Alvarez Blanco en su carácter de Presidente.

**Considerando:**

1-Que las partes se reconocen mutuamente el carácter y capacidad con que comparecen.



2-Que el Dr. Carlos Manuel Calzado Gutiérrez es el titular del Certificado de acciones No.5, de fecha 20 de Agosto de 1998, que comprende dos mil cuatrocientas cuarenta y ocho (2,448) acciones nominativas de la No 1 a la No 2,448 por un valor de 2,448,000 pesos Moneda Nacional, perteneciente a la Sociedad Mercantil LABORATORIOS DALMER S.A., constituida mediante Escritura Pública No.847 de fecha 25 de diciembre de 1991, otorgada ante la Notaria Lic. Carmen Lilia Valbuena Marrero, de la Notaría Especial de Ministerio de Justicia de la República de Cuba.

3-Que no existen pactos públicos ni privados no cumplidos que impidan la libre trasmisión ni otros impedimentos de carácter legal para la válida trasmisión siendo el título de plena y legítima propiedad de la parte cedente.

4-Que sobre el título no existe retención judicial ni de otra índole y no está sujeto a embargos, encontrándose libres de cargas y gravámenes.

5-Que no se encuentra en suspensión de pagos y quiebra.

**ACUERDAN:**

**PRIMERO:** Que el Dr. Carlos Manuel Gutiérrez Calzado traspase gratuitamente del Certificado de Acciones No. 5 la cantidad de 1,488 acciones (de la 1 a la

1,488) con un valor nominal de mil (1,000.00) pesos moneda nacional, equivalente a 1,488,000 pesos moneda nacional, a favor de la Sociedad Mercantil cubana Restauración Neurológica S.A., en virtud de lo establecido en el Acuerdo No. 5 de la Junta General Extraordinaria de Accionistas de fecha 12 de julio de 2004.

**SEGUNDO:** Que la Sociedad Mercantil cubana Restauración Neurológica S.A., representada en este acto por su presidente Dr. Julián Alvarez Blanco acepta el traspaso de acciones, al que se hace referencia en el acuerdo anterior.

**TERCERO:** El traspaso gratuito de las acciones será ejecutado en la fecha de firma de este acuerdo.

**CUARTO:** En la interpretación y ejecución de este Acuerdo será aplicable la ley cubana y caso de litigios las partes tratarán de solucionarlos mediante negociaciones amigables, de no llegar a acuerdo las partes se someten a los tribunales competentes de la República de Cuba.

**QUINTO:** Los órganos de administración y gobierno de la Sociedad Anónima LABORATORIOS DALMER S.A., se encargarán de realizar a través de la persona designada, cuantas gestiones, trámites, registros e inscripciones resulten necesarias para cumplir lo dispuesto en el presente Acuerdo.

**Y PARA QUE ASI CONSTE,** se extiende y firma por las partes en dos ejemplares de un mismo tenor e idéntico valor legal y efectos, correspondiendo uno a cada parte que suscribe.

En la Ciudad de la Habana, a los _____ días del mes de Noviembre de 2004.


_____

Dr.. Carlos Manuel Gutiérrez Calzado

Restauración Neurológica S.A.
Representada por el
Dr.. Julián Alvarez Blanco

# EXHIBIT B

DRN-24

**NOTARY OF**

SPECIAL MINISTRY OF JUSTICE

**INSTRUMENT No. 847/91**

INCORPORATION OF A COMMERCIAL COMPANY

**NOTARY:** LIC. CARMEN LILIA VALBUENA MARRERO

**DATE:** December 25, 1991

**EXECUTING PARTIES:**

CARLOS MANUEL GUTIÉRREZ CALZADO

MOISÉS JESÚS GARCÍA MENÉNDEZ

[seal overlaying illegible stamp]
Ministry of Justice
Special Notary

<u>DRN-27</u>

**NUMBER:** EIGHT HUNDRED FORTY-SEVEN

## INCORPORATION OF A COMMERCIAL COMPANY

City of Havana, December 25, 1991

### BEFORE ME

**Lic. CARMEN LILIA VALBUENA MARRERO**, Notary of the Special Notarial Office in the Directorate of Registries and Notaries, Ministry of Justice, Republic of Cuba.

### THERE APPEAR

**CARLOS MANUEL GUTIÉRREZ CALZADO**, born in Santiago, Cuba, a Cuban citizen, of legal age, married, a physician, residing at Calle 51 number 23202 between 232 and 234, San Augustín, Municipality of La Lisa in this City, with Permanent Identity Card number 43120303266.

**MOISÉS JESÚS GARCÍA MENÉNDEZ**, born in Havana, a Cuban citizen, of legal age, single, an engineer, residing at Calle 262 number 26913 between 269 and 283, Wajay, Municipality of Boyeros in this City, with Permanent Identity Card number 50090400907.

**THEY APPEAR** on their own behalf and in the use of their own rights.

**THEY DECLARE** that they are in the full enjoyment and exercise of their civil rights, and in my judgment they have the necessary legal competence for this act, there being no evidence to the contrary, and they **STATE THAT:**

### THEY EXECUTE

**FIRST: INCORPORATION**

The persons appearing incorporate a commercial company which shall be named **LABORATORIOS DALMER, SOCIEDAD ANÓNIMA**, though it may also use **LABORATORIOS DALMER, S.A.** or **LABORATORIOS DALMER** as its name, and it shall have its domicile at Avenida 25 number 15819 between 158 and 190, Cubanacán, Municipality of Playa, City of Havana, though said domicile may be changed at any time and as many times as the Company's Board of Directors sees fit.

[seal]
Ministry of Justice
Special Notary

**SECOND: BYLAWS**

The Company shall be governed by the Bylaws, which are typed double-spaced on one side only of 14 sheets of eight and one half by thirteen-inch paper.

Said Bylaws have been read by me the Notary, and approved by the persons appearing, who sign on each of the pages today, and I attach them to this master document so that they may become an integral part hereof.

**THIRD: CORPORATE PURPOSE**

The Company shall have as its purpose the research, production, marketing, and distribution of pharmaceutical products, both within and outside the country.

With said purpose, it shall have full competence and powers to engage in all transactions, business dealings, investments, and other activities that it may find necessary or advisable.

**FOURTH: CAPITAL AND SHARES**

The authorized capital stock is ONE HUNDRED MILLION PESOS, NATIONAL CURRENCY, represented by one hundred thousand registered shares of ONE THOUSAND PESOS par value each. -----

**FIFTH: SUBSCRIPTION AND PAYMENT OF SHARES**

Having incorporated the Company and declared this act the first General Meeting of Shareholders, to be treated as a Special Meeting, the persons present unanimously issued and placed in circulation shares having a value of ONE HUNDRED THOUSAND PESOS, which are totally subscribed for and paid up by the persons appearing themselves at a rate of FIFTY THOUSAND PESOS each, for which they receive provisional stock certificates with numbers one and two, for CARLOS MANUEL GUTIÉRREZ CALZADO and MOISÉS JESÚS GARCÍA MENÉNDEZ, respectively, representing the shares.

**SIXTH: APPOINTMENT OF THE MEMBERS OF THE BOARD OF DIRECTORS AND THE OFFICERS**

Thereupon the persons appearing agreed to appoint the following persons as the members of the Board of Directors:

-Carlos Manuel Gutiérrez Calzado
-Rosa María Más Ferreiro
-Moisés Jesús García Menéndez
-Belkis Suárez Febles
-Fermín de la Fuente Calvo

[seal]
Ministry of Justice
Special Notary

They likewise chose the following persons as the Company's officers:

President: Carlos Manuel Gutiérrez Calzado
Vice President: Rosa María Más Ferreiro
Vice President: Moisés Jesús García Menéndez
Vice President: José Otero Molina
Treasurer: Belkis Suárez Febles
Secretary: Emilio Arturo Marill Rivero
Vice Secretary: Juan Antonio Diez-Argüelles Rodríguez

I gave the legally prescribed warnings, and especially the one about the obligatory nature of registering this Instrument in the appropriate Registries.

**THUS DO THE PERSONS APPEARING SAY AND EXECUTE** in my presence.

**THIS INSTRUMENT WAS READ OUT IN ITS ENTIRETY** and in a single act by me the Notary to the persons appearing, and being satisfied with its content, they ratify and sign it.

**I, THE NOTARY, BEAR WITNESS TO ALL THE FOREGOING** and to the identity of the persons appearing, having verified their personal identity information on the basis of their statements.

SIGNED: CARLOS MANUEL GUTIÉRREZ CALZADO, MOISÉS JESÚS GARCÍA MENÉNDEZ, CARMEN LILIA VALBUENA MARRERO

[seal]
Ministry of Justice
Special Notary

DRN-27

[stamp]
[PROVINCIAL] [illegible] [OF FINANCE]
CITY OF HAVANA PEOPLE'S POWER
[REVENUE] DEPARTMENT
[This document] [illegible] 7750 [illegible] [Tax] [illegible]
[EXEMPT on the basis of:]
[illegible]
[illegible] [988/62]
City of Havana, [12/28/91]
[signature, illegible]
[seal]
[City of Havana People's Power]
[illegible]

BYLAWS
CHAPTER I
Name and Domicile

Article 1. The Company shall be a business corporation and shall have an indefinite duration.

It shall operate under the name "LABORATORIOS DALMER, SOCIEDAD ANÓNIMA," though it may also use "LABORATORIOS DALMER, S.A." or "LABORATORIOS DALMER" as its name.

Article 2. The Company shall have its domicile in the city of Havana, at the location determined by the Board of Directors. Said corporate body may change the domicile at any time and as many times as it sees fit.

Chapter II
Corporate Purpose

Article 3. The Company shall engage in research, production, marketing, and distribution of pharmaceutical products, both within and outside of the country.

With said object, it shall have full competence and powers to engage in all transactions, business dealings, investments, and other activities that it may find necessary or advisable.

Chapter III
Capital and Shares

Article 4. The authorized capital stock is ONE HUNDRED MILLION PESOS ($100,000,000) in national currency, represented by ONE HUNDRED THOUSAND (100,000) shares of ONE THOUSAND PESOS ($1,000) par value each.

Article 5. The Company's shares shall be registered, and they shall be recorded when they are subscribed for and enter circulation in the name of the first

[seal]
Ministry of Justice
Special Notary

holder thereof, as shall their successive transfers, in the Company's Shareholders Registry (hereinafter to be referred to in these Bylaws as the "Shareholders Registry"), in which the domicile of each registered holder shall likewise be recorded.

Persons acquiring shares may not exercise the rights inherent in the status of shareholder without this recording.

Article 6. The shares may be transferred by endorsement and delivery of the certificates which represent them, as well as by any other legal means of transfer. But no transfer shall become effective as far as the Company is concerned until it is duly recorded in the Company's Shareholders Registry.

The individuals or legal entities in whose names shares appear as recorded in the Shareholders Registry shall be their owners for all legal intents and purposes, and shall be the persons entitled to exercise all the rights inherent therein, without limitation.

Article 7. The shares shall be represented by certificates, which may encompass one or more shares, at the holder's option.

The stock certificates shall be signed by the President, the Treasurer, and the Secretary of the Company. The corporate seal shall be affixed thereon, and once the shares they represent have been recorded in the Shareholders Registry, they shall serve as evidence of their content from the date thereof, in favor of or against all interested persons within the Company, as well as third parties.

When a transfer is recorded in the Shareholders Registry, a new stock certificate shall be issued to the purchaser and the previous certificate shall remain in the Treasurer's custody with a cancellation note signed by the registered holder and the Secretary.

The Company may issue and authorize provisional stock certificates, to be subsequently exchanged for definitive certificates.

[seal]
Ministry of Justice
Special Notary

<u>Article 8</u>. The shareholders may transfer their shares under any title admitted by Law, but they must first obtain authorization from the Board of Directors.

To that end, a shareholder wishing to transfer shares owned by them must so inform the President (or if the President is the interested party, one of the Vice Presidents) by means of a letter which states the name and other identifying data of the individual or legal entity to whom the shares are intended to be transferred, the number of shares said shareholder wishes to transfer, and the price offered for the shares.

Upon receipt of said letter, the President shall be obligated to notify the remaining shareholders of the offering without delay, for the purposes to be explained below, and to call the Board of Directors into special session, which shall be held within the 10 consecutive days subsequent to the offering of the shares.

The Board of Directors may deny authorization to the shareholder interested in transferring shares if it considers that the transfer to the indicated person is not in the Company's interest, but in that event, it must acquire the shares for the Company, to be amortized, unless they are acquired by one or more of the remaining shareholders.

If the Company does not acquire the shares, it shall be understood that its shareholders may acquire them. If more than one shareholder is interested in said acquisition, the shares shall be distributed in proportion to the number of shares owned by each of the interested shareholders.

For purposes of acquisition of shares for the Company or by the shareholders, the Board of Directors must resolve, or alternatively, the interested shareholders must decide by means of a letter to the President, either to acquire the shares in question at the same price reported by the offering shareholder or to accept the offer but

[seal]
Ministry of Justice
Special Notary

setting the purchase price at the real value of the shares at the time. The Company's books, documents, and other information, and/or any other information, shall be used to that end, and the reserves and goodwill, among other factors, shall be taken into account; all the foregoing shall be determined by the appropriate accounting method and by making use of the services of accountants and economists of recognized competence and integrity.

If there has been no acquisition for the Company or by other shareholders within 30 consecutive days from the date of the offering, it shall be understood that the offering shareholder is authorized to carry out the transfer in question.

Article 9. The statement by the President and the Secretary in any General Meeting of Shareholders or Board of Directors Meeting minutes regarding the number of shares issued and in circulation, the names of the registered holders thereof, the respective dates of said registrations, and any other facts relative to the subscribed and circulating capital at a given time shall be conclusive proof of said facts in favor of or against the shareholders, the members of the Board of Directors, and the officers, employees, agents, and attorneys of the Company, as well as third parties.

Chapter IV
The Company's Organization and Operation

Article 10. The Company's governing bodies, in addition to its General Meeting of Shareholders, are its Board of Directors and its officers.

The Company's officers are: the President, three Vice Presidents, the Treasurer, the Vice Treasurer, the Secretary, and the Vice Secretary.

[seal]
Ministry of Justice
Special Notary

### The General Meeting of Shareholders

Article 11. The General Meeting of Shareholders, duly convened, may adopt all kinds of resolutions on all kinds of subjects, without prejudice to compliance with the provisions of the Commercial Code on quorum and majority of votes for purposes of the validity of said resolutions.

Article 12. The General Meeting of Shareholders shall hold regular and special sessions. It shall meet in regular session once a year, at the Company's headquarters and without prior notice of meeting on the second Wednesday of December, and if it is not a business day, on the next following business day, at 5:00 p.m.

Notice of meeting for the annual regular meeting shall be indispensable when it must be held on a date and at a time other than those stipulated above, or at a place other than the Company's headquarters.

Article 13. The General Meeting of Shareholders shall meet in special session whenever it is so requested by the President or resolved by the Board of Directors, or whenever it is requested in writing by the registered holders of shares which represent at least one third of those issued and in circulation.

In any of those cases, the Secretary shall give notice of the special session to discuss the subjects that have been indicated, as the case may be, by the President, the Board of Directors, or the requesting shareholders.

Only the matters specified in the meeting notice may be discussed at each special session.

Article 14. Notice of special sessions of the General Meeting of Shareholders, and notice of the regular session when it cannot be held on the date and at the time and place stipulated in Article 12 of these

[seal]
Ministry of Justice
Special Notary

Bylaws, shall be given by the Secretary, by means of a letter sent by certified mail to the address recorded by each shareholder in the Shareholders Registry at least 5 calendar days in advance, not counting the date of certification of the letter-notice or the date on which the session is to be held.

The place, date, and time of the session, as well as the subjects to be discussed, shall be expressed in every meeting notice.

The Secretary's assurance of having sent the letter provided for in this article shall, for purposes of the session's validity, serve as definitive proof against any shareholder that his notice was duly given.

Article 15. Without prejudice to the requirement of compliance with the provisions of law which require a given quorum and majority of votes, the General Shareholders Meeting shall be duly convened, in regular or special session and in response to a first or second call, with the presence of the registered holders of at least one half plus one of the issued and circulating shares, and resolutions shall be adopted by a majority of the votes present, at a rate of one vote per share.

All dissident shareholders or shareholders who did not attend the session shall be subject to the majority vote.

In the event of a tie in any vote, the President shall decide by casting one more vote in addition to those to which he may be entitled in his capacity as shareholder.

Article 16. The General Meeting of Shareholders may meet in regular or special session at any time and place, without a meeting notice or any other prior formality, provided the registered holders of all the issued and circulating shares at the time are present at said session, or if the shareholders who were not given notice of the session or did not

[seal]
Ministry of Justice
Special Notary

attend it had waived their right to notice or attendance by mail, telegram, cable, or any other authenticated means.

The General Meeting of Shareholders may resolve to adjourn any session to the day or days subsequent to the date of its commencement, at the time and place stipulated to that end, without a meeting notice being indispensable in such cases.

Article 17. Minutes shall be taken of all General Meetings of Shareholders and recorded in the Minute Book, being signed by all the persons present or any two of them designated to that end at the session itself, in addition to the President and the Secretary.

Regardless of the place where the sessions are held, the minutes thereof shall be inserted in the Minute Book, which shall be kept at the corporate headquarters.

The minutes of sessions held at places other than the corporate domicile shall be inserted in the Company's Minute Book, and regardless of the persons who sign them, shall be certified and signed by the President and the Secretary of the Company.

All minutes taken and signed, and certified as prescribed in this article, if any, shall serve as full proof of their content in favor of or against all interested parties within the Company, as well as third parties.

Article 18. The annual regular session of the General Meeting of Shareholders shall be responsible for:

(a) Examining the report on the Company's condition which is submitted by the Board of Directors, and approving or challenging it.

(b) Examining the Company's inventories and balance sheets, and approving or challenging them.

[seal]
Ministry of Justice
Special Notary

(c) Determining, if appropriate, the sums pertaining to the annual profits to be distributed as dividends on the shares and those to be allocated to reserve funds.

(d) Electing the members of the Board of Directors.

The annual regular session may also resolve on other subjects that are submitted to it for consideration, provided they are not required to be examined at a special session specifically called to that end pursuant to these Bylaws or provisions of law.

Article 19. The following falls exclusively under the domain of the General Meeting of Shareholders, in special sessions for which prior notice is given:

(a) Increasing or decreasing the authorized capital stock.

(b) Amending the Bylaws.

(c) Resolving on the Company's dissolution, its merger with other companies, the sale or transfer of all its assets, or its making capital contributions to other legal entities.

(d) Issuing and placing in circulation the Company's shares, pertaining to its authorized capital.

(e) Suspending, removing, or dismissing the members of the Board of Directors at any time.

Notice of the respective session of the General Meeting of Shareholders must be specifically given, and the following is required for the adoption of resolutions:

- the quorum of attendance prescribed in Article 168 of the Commercial Code when any of the subjects provided for in parts (a), (b), or (c) of this article are at issue.

- the quorum of attendance prescribed in Article 15 of these Bylaws when any of the subjects provided for in parts (d) or (e) of this article are at issue.

- the majority vote prescribed in Article 15 of these Bylaws for any subject reserved to the General Shareholders Meeting by said article.

[seal]
Ministry of Justice
Special Notary

### The Board of Directors

Article 20. The Board of Directors shall not consist of less than 5 or more than 7 members, with the exact number being determined by the General Meeting of Shareholders at any time.

The directors need not be shareholders.

Article 21. The directors shall be elected at the time prescribed in Article 12, second paragraph, for a one-year term, and if appropriate, for all the additional time their successors take to be elected and assume office.

Article 22. The Board of Directors shall hold meetings, all of them designated as special, with a requirement for notice of meeting, whenever the President so decides, upon issuance of a summons by the Secretary and delivered in person or by mail, telegram, or cable to each director's domicile.

At least 24 hours must pass between the summons and the respective session.

All such summonses may be dispensed with when all the directors are present or acknowledge having been summoned.

Article 23. The presence of a majority of the total number of directors shall be necessary to comprise a quorum, and a Board meeting so convened may examine and vote on any subjects falling within the Board's authority.

Resolutions shall always be adopted by a majority of the votes present. The President shall decide tie votes with one additional vote, if necessary.

Article 24. Meetings of the Board of Directors shall be chaired by the Company's President.

[seal]
Ministry of Justice
Special Notary

The person who is the Company's secretary shall act as such, or if said person does not attend the meeting, the Vice Secretary shall do so, and in the absence of both of them, the legal professional designated by the directors present shall act as secretary of the meeting in question.

Article 25. The Secretary shall take minutes of all Board of Directors Meetings and they shall be signed by all the persons present or any two of them designated to that end at the session itself, and recorded in the Company's Minute Book.

When the Board of Directors meets at a place other than the corporate domicile, the minutes taken shall be transcribed in the Company's Minute Book, under the affirmation and with the signatures of the President and Secretary of the Company.

All minutes taken and signed, and certified as prescribed in this article shall serve as full proof of their content in favor of or against all interested parties within the Company, as well as third parties.

Article 26. The Board of Directors is responsible for exercising the direction and administration of the Company's business affairs and properties of all kinds, with full competence and power to adopt resolutions on all categories of subjects, with the sole exception of those that are reserved to the General Meeting of Shareholders by Articles 18 and 19 of these Bylaws.

Without prejudice to the breadth of what is stated in the preceding paragraph, an express record is made of the fact that the Board of Directors' competence includes the powers to:

(a) If a vacancy occurs among the directors, elect the person who is to hold the position until the General Meeting of Shareholders conducts the next election of members of the Board of Directors.

The same rule shall apply if the vacancy is temporary, but in that event the substitution shall be only for the duration of the absence.

(b) Appoint, suspend, remove, dismiss, and replace the Company's technical and administrative personnel, determine their compensation,

[seal]
Ministry of Justice
Special Notary

grant permissions and leaves, inspect all kinds of work and services and demand accountability, when the Board sees fit, from the persons who must render them by virtue of their positions and jobs.

(c) Delegate its powers, in whole or in part, to one or more persons, whether they are officers or employees of the Company or not, or confer general or special powers of attorney, or commissions or assignments, for stated and indefinite time periods, always being revocable.

In any case of conflict between a General Meeting of Shareholders resolution and one of the Board of Directors, the former shall prevail.

<u>The Corporate Officers</u>

Article 27. The President, the three Vice Presidents, and the Treasurer shall be designated by the Board of Directors from among its members.

The Secretary, the Vice Secretary, and the Vice Treasurer shall be designated by the President; they need not be members of the Board of Directors.

All the officers shall be designated for a one-year term and for all the additional time their successors may take to be designated and assume office.

A single person may hold two or more positions, except for any principal position and that of its vice. In all cases where the joint action of two corporate officers is required, this requirement shall not apply when the two positions are held by a single person.

Every time a reference is made to any principal officer in these Bylaws, it is understood that said term includes not only the principal but also the person who replaces him.

Article 28. The President of the Company shall chair the General Meetings of Shareholders and the Board of Directors Meetings.

[seal]
Ministry of Justice
Special Notary

The President, the chief executive officer, and the legal representative of the Company may perform all the functions and powers that the Bylaws assign to the Board of Directors.

In any case of conflict between a resolution of the Board of Directors and an order or decision of any kind by the President, the resolution of the Board of Directors shall prevail.

Article 29. Purchases or sales, or transfers of ownership of all kinds of properties, as well as the execution of any other contracts permitted by law; custody of the corporate funds and the documents which represent the Company's value; opening and management of bank accounts, in cash, in securities, and in other forms; issuance, endorsement, and negotiation of any kind of checks, bills of exchange, promissory notes, and other mercantile documents; borrowing in any form; and pledging corporate properties or otherwise encumbering them shall always require the President's participation, acting jointly with one of the Vice Presidents or with the Treasurer, in all cases.

Article 30. The Treasurer shall likewise have the function of directing the Company's accounting, making certain the books are kept properly and drawing up the balance sheets, reports, statements of account, and other financial documents at the conclusion of the fiscal year or when ordered by any of the Company's collective bodies of governance.

Article 31. The Secretary of the Company shall concurrently be the secretary of the General Meeting of Shareholders and Board of Directors sessions, which he shall attend with the right to speak but not to vote.

He shall have the following functions:

(a) Keep the stock certificate stub book, the Shareholders Registry, and the Minute Book for the General Meeting of Shareholders and Board of Directors sessions; have custody over said documents and others pertaining to the Secretary's position; and furnish the rest of the

[seal]
Ministry of Justice
Special Notary

Company's officers and its collective bodies of governance with all the information they may request in relation to the Secretary's position.

(b) Have custody over the corporate seal, which must be affixed to the Company's documents on which it is deemed necessary or advisable to do so.

(c) With the concurrence of either the President or one of the Vice Presidents, issue total or partial certifications in regard to any minutes of General Meeting of Shareholders or Board of Directors sessions, as well as of the Shareholders Registry or any other of the Company's books or documents. The certifications so issued shall serve as conclusive proof of their content.

Article 32. The President, the Treasurer, and the Secretary shall separately perform the other functions pertaining to them by virtue of their positions pursuant to these Bylaws, the provisions of law, or resolutions adopted by the Company's collective bodies of governance.

The Board of Directors or the President may assign specialized functions to each Vice President.

Article 33. In the event of the absence, illness, disability, or other temporary impediment of a principal officer, his replacement by his respective vice shall be appropriate under the specific circumstances in accordance with the following:

(a) The President shall be replaced by the Vice President who he has designated to that end in each case.

(b) The Treasurer's replacement by the Vice Treasurer shall require a resolution of the Board of Directors.

(c) The President's replacement by one of the Vice Presidents, or the Treasurer's replacement by his vice, shall be justified by certification issued by the Secretary which shall specify both said replacement and its cause, as well as that the vice in question is exercising the principal's functions.

[seal]
Ministry of Justice
Special Notary

(d) For the replacement of the Secretary by the Vice Secretary, the Vice Secretary's action in any certification to be issued in connection with the provisions of item (c) shall suffice.

**IDENTICAL TO ITS ORIGINAL**, which under the consecutive number appearing at the outset thereof, is on file in the protocol of the Special Notarial Office over which I preside and to which I refer, to which I affixed and cancelled tax stamps with a value of two pesos, national currency, and I issue this copy, on 16 pages of typed paper, for the persons appearing on the 27th day of December, 1991. **I BEAR WITNESS.**

[handwritten] $270.00 National currency

[signature, illegible]

[seal]
Ministry of Justice
Special Notary

[stamp]
[PROVINCIAL] [illegible] [OF FINANCE]
CITY OF HAVANA PEOPLE'S POWER
[REVENUE] DEPARTMENT
[This document] [illegible] 7750 [illegible] [Tax] [illegible]
[EXEMPT on the basis of:]
[illegible]
[illegible] [988/62]
City of Havana, [12/28/91]
[signature, illegible]
[seal]
[City of Havana People's Power]
[illegible]

[handwritten] [The foregoing document has been recorded in: The Central Registry of Companies]
Book:   134
Folio:   118
Page:   9395
First [illegible]
First registration
[signature, illegible]
[seal]
Republic of Cuba
Central Registry of Companies

[handwritten] [First Mercantile Registry of Havana]
Book:   1188
Folio:   49
Page:   37685

| | |
|---|---|
| 1st [illegible] | [two tax stamps] |
| [seal] | [seal, illegible] |
| Republic of Cuba | |
| Central Registry of Companies | |

[seal]

| | | |
|---|---|---|
| United Mexican States | 8696 | FEES |
| Embassy of Mexico | No. 219741 | 29.00 C.P. |
| Havana, Cuba | | |

## MEXICAN FOREIGN SERVICE

THE UNDERSIGNED FRANCISCO JAVIER OLAVARRÍA
M I N I S T E R          OF MEXICO IN **HAVANA, CUBA**,
                                        CERTIFIES THAT THE SIGNATURE OF
LIC. MARÍA SILVIA FERNÁNDEZ VILLAR, AN OFFICIAL OF THE FOREIGN MINISTRY,
AFFIXED TO THE ATTACHED DOCUMENT,
COINCIDES WITH THE ONE THAT IS ON FILE IN THIS OFFICE.

| PLACE | DATE | | |
|---|---|---|---|
| | MONTH | DAY | YEAR |
| **HAVANA, CUBA** | **MARCH 21, 1997** | | |

NOTE: THIS LEGALIZATION DOES NOT PREJUDGED
THE VALIDITY OF THE ATTACHED DOCUMENT'S
CONTENTS.

[signature]
FRANCISCO JAVIER OLAVARRÍA
MINISTER
[Signature]

[three tax stamps]

SIGNATURE OF [illegible]
HAVANA, MARCH 20, 1997
[seal, illegible]

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**_Works_

STATE OF NEW YORK        )
                         )      ss
COUNTY OF NEW YORK       )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of **Instrument No. 847/91 related to the Incorporation of Laboratorios Dalmer, Sociedad Anónima,** completed on 01/18/2010, originally written in Spanish.

*Karen D'Urso*

Karen D'Urso
Senior Account Executive
Director of Quality Assurance
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 18th day of January 2010

Notary Public

MARCEL HENRIQUE VOTLUCKA
Notary Public, State of New York
No. 01VO6154182
Certificate Filed in New York County
Qualified in Kings County
Commission Expires October 23, 20_10_

DRN—24

# NOTARIA DE

ESPECIAL MINJUS

ESCRITURA No. __847/91__

CONSTITUCION DE SOCIEDAD ANONIMA

**NOTARIO**  LIC. CARMEN LILIA VALBUENA MARRERO

**FECHA** ___25 de diciembre___ **DE 19__91__**

**OTORGANTES**

CARLOS MANUEL GUTIERREZ CALZADO

MOISES JESUS GARCIA MENENDEZ

NUMERO--------OCHOCIENTOS CUARENTISIETE------------

-------------CONSTITUCION DE SOCIEDAD ANONIMA---------

Ciudad de La Habana, 25 de Diciembre de 1991.--------

--------------------ANTE  MI----------------

**LICENCIADA CARMEN LILIA VALBUENA MARRERO**, Notaria de la Notaría Especial a cargo de la Dirección de Registros y Notarías del Ministerio de Justicia de la República de Cuba.-----------------------------

--------------------COMPARECEN-------------------



**CARLOS MANUEL GUTIERREZ CALZADO**, natural de Santiago de Cuba, ciudadano cubano, mayor de edad, casado, médico, vecino de calle 51 número 23202 entre 232 y 234, San Agustín, municipio La Lisa, en esta Ciudad, con Identidad Permanente número 43120303266.----------------------------------------

**MOISES JESUS GARCIA MENENDEZ**, natural de La Habana, ciudadano cubano, mayor de edad, soltero, Ingeniero, vecino de calle 262 número 26913 entre 269 y 283, Wajay, municipio Boyeros, en esta Ciudad, con Identidad Permanente número 50090400907.-------------------------------------

**CONCURREN** por sí en uso de sus propios derechos.---

**ASEGURAN HALLARSE** en el pleno goce de sus derechos civiles y tener como a mi juicio tienen la capacidad legal necesaria para este otorgamiento sin que nada me conste en contrario y dicen que:----

--------------------OTORGAN--------------------

**PRIMERA: CONSTITUCION**----------------------------

Los comparecientes constituyen una compañía mercantil anónima que se denominará **LABORATORIOS DALMER, SOCIEDAD ANONIMA**, aunque también podrá usar como tal **LABORATORIOS DALMER, S.A** o **LABORATORIOS DALMER** y tendrá su domicilio en la Avenida 25 número 15819 entre 158 y 190, Cubanacán, municipio Playa, Ciudad de La Habana, aunque podrá ser cambiado en cualquier tiempo y cuantas veces lo considere oportuno la Junta Directiva de la misma.-



**SEGUNDA: ESTATUTOS**

La Compañía se regirá por los Estatutos que aparecen redactados en 14 hojas de papel mecanografiadas por una sola cara a dos espacios, de tamaño ocho y media por trece pulgadas.

Dichos Estatutos han sido leídos por mí, la Notaria, y aprobados por los comparecientes, firmando en cada una de sus hojas en el día de hoy, los que dejo unidos a esta matriz para que formen parte integrante de la misma.

**TERCERA: OBJETO SOCIAL**

La Compañía tendrá por objeto, la investigación, producción, comercialización y distribución, dentro y fuera del país, de productos farmacéuticos.

Con ese objeto tendrá plena capacidad y facultades para realizar cuantas operaciones, negocios, inversiones y demás actividades considere necesarias o convenientes.

**CUARTA: CAPITAL Y ACCIONES**

El capital social autorizado es de CIEN MILLONES DE PESOS MONEDA NACIONAL, representado por cien mil acciones nominativas de MIL PESOS, valor nominal cada una.

**QUINTA: SUSCRIPCION Y PAGO DE ACCIONES**

Una vez constituida la Compañía y dando a este acto el carácter de primera Junta General de Accionistas, que se considera como Extraordinaria, los comparecientes por unanimidad emiten y ponen en circulación acciones por valor de CIEN MIL PESOS, que suscriben y pagan totalmente los propios comparecientes a razón de CINCUENTA MIL PESOS cada uno, por las que reciben certificados provisionales con los números uno y dos, para CARLOS MANUEL GUTIERREZ CALZADO Y MOISES JESUS GARCIA MENENDEZ, respectivamente, representativos de las acciones.

**SEXTA: NOMBRAMIENTO DE LOS MIEMBROS DE LA JUNTA DIRECTIVA Y DE LOS FUNCIONARIOS**

Seguidamente los comparecientes acuerdan proceder al nombramiento de miembros de la Junta Directiva, a las personas siguientes:

--Carlos Manuel Gutiérrez Calzado
--Rosa María Más Ferreiro
--Moisés Jesús García Menéndez
--José Otero Molina
--Belkis Suárez Febles
--Fermín de la Fuente Calvo




NTARIA
ESPECI

2

De igual forma eligen como funcionarios de la Compañía a las personas siguientes:----------------

Presidente: Carlos Manuel Gutiérrez Calzado---------
Vice Presidente: Rosa María Más Ferreiro----------
Vice Presidente: Moisés Jesús García Menéndez--------
Vice Presidente: José Otero Molina-------------
Tesorero: Belkis Suárez Febles----------------
Secretario: Emilio Arturo Marill Rivero-----------
Vice secretario: Juan Antonio Diez-Arguelles Rodríguez---------------

Hago las advertencias legales, en especial la obligatoriedad de inscripción de la presente Escritura en los Registros correspondientes.---------

**ASI LO DICEN Y OTORGAN** los comparecientes a mi presencia.-------------------

**LEIDA INTEGRAMENTE** y en un solo acto esta Escritura, por mí, la Notaria, a los otorgantes, conformes en su contenido, la ratifican y firman.----

**DE TODO LO CUAL** y de la identidad de los comparecientes, constándome por sus manifestaciones, sus demás generales. Yo, la Notaria, DOY FE.-------------------

FDO: CARLOS MANUEL GUTIERREZ CALZADO. MOISES JESUS GARCIA MENENDEZ. LICENCIADA CARMEN LILIA VALBUENA MARRERO.----------------



O DE JUSTICIA

RIA
SPECIAL

3

Case 1:09-mc-00466-RWR-AK   Document 37-3   Filed 01/26/10   Page 52 of 97

DRN–27



DIRECCION PROVINCIAL DE FINANZAS
PODER POPULAR CIUDAD DE LA HABANA
DEPARTAMENTO DE INGRESOS

El presente documento mediante el Registro de Entrada

número 2750 ...... referente al Impuesto sobre ........

....... se declara EXENTO ....

.....

Ley 988/62

Ciudad de La Habana, 28/12/91

ESTATUTOS

CAPITULO I

Denominación y domicilio

Artículo 1. La Compañía será mercantil anónima y tendrá una duración indefinida.

Girará bajo la denominación de "LABORATORIOS DALMER, SOCIEDAD ANONIMA", aunque también podrá usar como tal "LABORATORIOS DALMER, S.A." o "LABORATORIOS DALMER".

Artículo 2. La Compañia tendrá su domicilio en la ciudad de la Habana, en el lugar que determine la Junta Directiva. Este órgano social podrá cambiarlo en cualquier tiempo y cuantas veces lo considere oportuno.

Capitulo II

Objeto social

Artículo 3. La Compañía se dedicará a la investigación, producción, comercialización y distribución, dentro y fuera del país, de productos farmacéuticos.

Con ese objeto tendrá plena capacidad y facultades para realizar cuantas operaciones, negocios, inversiones y demás actividades considere necesarias o convenientes.

Capitulo III

Capital y acciones

Artículo 4. El capital autorizado de la compañía es de CIEN MILLONES DE PESOS ($100 000 000) en moneda nacional, representado por CIEN MIL (100 000) acciones de a MIL PESOS ($1000) valor nominal cada una.

Artículo 5. Las acciones de la Compañía serán nominativas y se registrarán, al quedar suscritas y en circulación, a favor del pri

tenedor, anotándose así, lo mismo que sus traspasos sucesivos, en el Libro Registro de Acciones de la Compañía (al que en lo sucesivo, en estos Estatutos, se le denominará el "Libro Registro"), en el que se anotará también el domicilio de cada tenedor registrado.

El adquirente de acciones no podrá ejercitar los derechos inherentes a la cualidad de socio sin dicho registro.

Artículo 6. Las acciones serán trasmisibles por endoso y entrega de los certificados que las representan; y además, por cualquier otro medio legal de transmisión. Pero ningún traspaso surtirá efecto para la Compañía mientras no se haga constar debidamente en su Libro Registro.

Las personas naturales o jurídicas a cuyo favor aparezcan registradas acciones en el Libro Registro serán, a todos los efectos legales, sus dueños y los que como tales podrán ejercitar sin limitación todos los derechos inherentes a las mismas.

Artículo 7. Las acciones estarán representadas por certificados que pueden comprender una o varias, a elección del tenedor.

Los certificados serán firmados por el Presidente, el Tesorero y el Secretario de la Compañía. En ellos se fijará el sello social; y una vez debidamente registradas las acciones que representen en el Libro Registro, harán prueba de su contenido, desde su fecha, a favor o en contra de todas las personas interesadas dentro de la Compañía así como de terceros.

Al tiempo de registrarse un traspaso en el Libro Registro, se procederá a expedir un nuevo certificado de acciones a favor del adquirente, quedando el anterior en poder del Tesorero, con nota de cancelación suscrita por el tenedor registrado y el Secretario.

La Compañía podrá expedir y autorizar certificados provisionales de acciones, para canjearlas después por certificados definitivos.

Artículo 8. Los accionistas podrán trasmitir sus acciones por cualquier título admitido en Derecho, pero deberán obtener previamente la autorización de la Junta Directiva.

Con ese fin, el accionista que desee trasmitir acciones de su propiedad deberá comunicárselo al Presidente (o si este fuere el interesado , a uno de los Vice-Presidentes), mediante carta expresiva del nombre y demás generales de la persona natural o jurídica a la que se proponga trasmitírselas, el número de acciones que desee trasmitir y el precio ofrecido por las acciones.

Recibida la carta, el Presidente estará obligado a notificar el ofrecimiento, sin demora, a todos los demás accionistas, a los efectos que más adelante se explicarán, y a convocar la Junta Directiva a sesión extraordinaria, que se celebrará dentro de los 10 días naturales siguientes al ofrecimiento de las acciones.

La Junta Directiva podrá negar la autorización al accionista interesado en trasmitir acciones de su propiedad , si no cree conveniente a los intereses de la Compañía que la trasmisión se haga a la persona indicada; pero, en ese caso, deberá adquirir las acciones para la Compañía, al objeto de su amortización, a menos que las adquiera uno o más de los accionistas restantes.

Si la Compañía no adquiere las acciones, se entenderá que sus accionistas pueden adquirirlas. Si mas de un accionista está interesado en la adquisición, las acciones serán distribuídas en proporción al número de acciones propias de cada uno de los accionistas interesados.

Al objeto de la adquisición de las acciones para la Compañía o por los accionistas, la Junta Directiva deberá acordar, o en su caso los accionistas interesados deberán decidir mediante carta al Presidente, o bien adquirir las acciones de que se trate al mismo precio que hubiere reportado el accionista oferente, o bien aceptar la oferta pero

sujetando el precio de adquisición al valor real de las acciones en ese momento. A ese efecto se utilizarán los libros, documentos y demás antecedentes de la Compañía y(o) cualesquiera otros, debiendo tenerse en cuenta, entre otras circunstancias, las reservas y la plusvalía del negocio, todo lo cual se determinará por el método contable que sea procedente y utilizando los servicios de contadores y economistas de capacidad y solvencia moral reconocidas.

Si transcurrieran 30 días naturales, a contar desde la fecha del ofrecimiento , sin que se haya llevado a cabo la adquisición para la Compañía o por otros accionistas, se entenderá que el accionista oferente queda autorizado para ejecutar la trasmisión de que se trate.

Artículo 9. La afirmación por el Presidente y el Secretario, en cualquier acta de la Junta General de Accionistas o de la Junta Directiva, sobre el número de acciones emitidas y en circulación, el nombre de los tenedores registrados de estas, las fechas respectivas de tales registros y cualquier otro hecho referente al capital suscrito y en circulación en un momento dado y a las personas a cuyo favor aparece registrado, total o parcialmente, será prueba concluyente de tales hechos a favor o en contra de los accionistas, los miembros de la Junta Directiva y los funcionarios, trabajadores, agentes y apoderados de la Compañía, así como de terceros.

Capítulo IV

Organización y funcionamiento de la Compañía

Artículo 10. Son órganos de la Compañía, además de su Junta General de Accionistas, su Junta Directiva y sus funcionarios.

Los funcionarios de la Compañía son: el Presidente, tres Vicepresidentes, el Tesorero, el Vicetesorero, el Secretario y el Vicesecretario.



## Junta General de Accionistas

Artículo 11. La Junta General de Accionistas, debidamente constituída, puede tomar toda clase de acuerdos sobre toda clase de asuntos, sin perjuicio de cumplir con lo dispuesto en el Código de Comercio sobre quorum y mayoría de votos a los fines de la validez de los acuerdos correspondientes.

Artículo 12. La Junta General de Accionistas celebrará sesiones ordinarias y extraordinarias. Se reunirá en sesión ordinaria una vez al año, en el domicilio de la Compañía, sin previa convocatoria, el segundo miércoles del mes de diciembre y si no fuere laborable, el siguiente día laborable, a las 5 de la tarde.

Será indispensable la convocatoria para la sesión ordinaria anual cuando esta deba celebrarse en fecha y hora diferentes a las indicadas o en lugar distinto al domicilio social.

Artículo 13. La Junta General de Accionistas se reunirá en sesión extraordinaria cada vez que lo solicite el Presidente, o lo acuerde la Junta Directiva, o lo soliciten del Presidente, por escrito, tenedores registrados de acciones que representen, por lo menos, la tercera parte de las emitidas y en circulación.

En cualquiera de esos casos, el Secretario convocará la sesión extraordinaria para conocer de los asuntos que le hayan indicado, según el caso, el Presidente, la Junta Directiva o los accionistas solicitantes.

En cada sesión extraordinaria sólo se podrán conocer los asuntos especificados en la convocatoria.

Artículo 14. Las sesiones extraordinharias de la Junta General de Accionistas, y la ordinaria cuando no pueda celebrarse en la fecha, hora, y lugar señalados en el artículo 12, segundo párrafo, de estos

Estatutos, serán convocadas por el Secretario mediante carta enviada por correo certificado a la dirección que tenga inscrita cada tenedor de acciones en el Libro Registro, con 5 días naturales de anticipación por lo menos, sin contar el día de certificación de la carta-convocatoria ni el día en que deba celebrarse la sesión.

En toda convocatoria se expresarán el lugar, día y hora de la sesión, así como los asuntos a tratar.

La manifestación, hecha en acta por el Secretario, de haber enviado la carta a que se refiere este artículo será , a los efectos de la validez de la sesión respectiva, prueba definitiva contra cualquier tenedor de acciones de que su citación se realizó en debida forma.

Artículo 15. Sin perjuicio del cumplimiento de las disposiciones legales que exijan un determinado quorum y mayoría de votos, la Junta General de Accionistas quedará bien constituída, en sesión ordinaria o extraordinaria, en primera o posterior convocatoria, con la presencia de los tenedores registrados de la mitad más una, por lo menos, de las acciones emitidas y en circulación; y tomará acuerdos por mayoría de votos presentes, a razón de un voto por cada acción.

Al voto de la mayoría quedarán sometidos todos los accionistas disidentes o que no hubieren concurrido a la sesión.

En caso de empate en cualquier votación, el Presidente decidirá con un voto más, adicional a los que en su caso le correspondan como accionista.

Artículo 16. La Junta General de Accionistas podrá reunirse en sesión ordinaria o extraordinaria en cualquier momento y lugar, sin convocatoria u otra formalidad previa, siempre que a la sesión de que se trate concurran los tenedores registrados de la totalidad de las acciones emitidas y en circulación en ese momento, o si los accionistas que no hubieren sido convocados a la sesión, o que n

hubieren asistido a ella, renunciaren a sus derechos a la convocatoria o asistencia, por correo, telegrama, cable o de cualquier otro modo fehaciente.

La Junta General de Accionistas podrá acordar la continuación de cualquier sesión en el día o días subsiguientes al de su inicio, a la hora y en el lugar que al efecto señale, sin que en tal caso sea indispensable la convocatoria.

Artículo 17. De toda sesión de la Junta General de Accionistas se extenderá acta en el Libro de Actas, firmándola todos los concurrentes o dos de entre ellos , designados al efecto en la propia sesión, además del Presidente y el Secretario.

Con independencia del lugar en que se celebren las sesiones, las actas correspondientes se insertarán en el Libro de Actas, que se conservará en el domicilio social.

Las actas correspondientes a sesiones celebradas en lugar distinto al domicilio social serán insertadas en el Libro de Actas de la Compañía y sin perjuicio de quienes las firmen , serán certificadas y firmadas por el Presidente y el Secretario de la Compañía.

Toda acta extendida y suscrita y, en su caso, certificada en la forma que se establece en este artículo, hará prueba plena de su contenido a favor o en contra de todos los interesados dentro de la Compañía así como de terceros.

Artículo 18. A la sesión ordinaria anual de la Junta General de Accionistas le corresponderá:

(a) Conocer el informe relativo a la situación de la Compañía que presente la Junta Directiva, aprobándolo o impugnándolo.

(b) Conocer los inventarios y balances de la Compañía, aprobándolos o impugnándolos.

(c) Acordar, si procede, las cantidades que de las utilidades anuales se destine a reparto de dividendos a las acciones y las que se destinen a fondos de reserva.

(ch) Elegir a los miembros de la Junta Directiva.

La sesión ordinaria anual también podrá resolver otros asuntos que se presenten a consideración, siempre que no deban tratarse en sesión extraordinaria especialmente convocada al efecto por establecerlo así estos Estatutos o las disposiciones legales.

Artículo 18. Serán de la competencia exclusiva de la Junta General de Accionistas, en sesiones extraordinarias previamente convocadas:

(a) Aumentar o reducir el capital social autorizado.

(b) Modificar los Estatutos.

(c) Acordar la disolución de la Compañia, o su fusión con otras o la venta o transferencia de todo su activo o su aportación a otra persona jurídica.

(ch) Emitir y poner en circulación las acciones de la Compañia, de entre las que constituyen su capital autorizado.

(d) Suspender, remover o destituir, en cualquier momento, a los miembros de la Junta Directiva.

La sesión correspondiente de la Junta General de Accionistas deberá ser especialmente convocada, requiriéndose para la toma de acuerdos:

-el quorum de asistencia a que se refiere el artículo 168 del Código de Comercio, cuando se trate de cualquiera de los asuntos a que se refieren los incisos (a), (b), o (c) de este artículo.

-el quorum de asistencia a que se refiere el artículo 15 de estos Estatutos, cuando se trate de cualquiera de los asuntos a que se refieren los incisos (ch) o (d) de este artículo.

-la mayoría de votación a que se refiere el artículo 15 de estos Estatutos, ante cualquier asunto de los que este artículo reserva a la Junta General de Accionistas.

## Junta Directiva

Artículo 20. La Junta Directiva se compondrá de no menos de 5 ni más de 7 miembros, dependiendo el número exacto de lo que decida en cualquier momento la Junta General de Accionistas.

Los directivos no tienen que ser accionistas.

Artículo 21. Los directivos serán elegidos en la oportunidad a que se refiere el artículo 12, segundo párrafo, por un año y en su caso por todo el tiempo adicional que tarden sus sucesores en ser elegidos y en tomar posesión.

Artículo 22. La Junta Directiva celebrará sesiones, todas con el carácter de extraordinarias, requeridas de convocatoria, cada vez que lo decida el Presidente, previa citación del Secretario enviada a mano o por correo, telegrama o cable, al domicilio de cada Directivo.

Entre la citación y la sesión respectiva deberán mediar 24 horas, por lo menos.

Podrá prescindirse de toda citación cuando todos los Directivos concurran o se den por citados.

Artículo 23. Será necesaria la presencia de una mayoría del total de Directivos para integrar quorum y la Junta así constituída podrá conocer y votar sobre cualesquiera asuntos de su competencia.

Los acuerdos se tomarán siempre por mayoría de votos presentes. El Presidente decidirá la votación con un voto más, si fuera necesario.

Artículo 24. Las sesiones de la Junta Directiva serán presididas por el Presidente de la Compañía.



Actuará de Secretario el que lo sea de la Compañía o, si éste no asiste, el Vicesecretario; y a falta de ambos, el jurista que designen los Directivos presentes para que actúe como secretario de la sesión de que se trate.

Artículo 25. De toda sesión de la Junta Directiva levantará acta el Secretario firmándola todos los concurrentes, o dos de entre ellos designados al efecto en la propia sesión, y asentándose en el Libro de Actas de la Compañía.

Cuando la Junta Directiva se reúna fuera del domicilio social, el acta que se levante será transcrita al Libro de Actas de la Compañía, bajo la fe y con las firmas del Presidente y del Secretario de la Compañía.

Cada acta extendida y firmada en la forma que establece este artículo hará prueba plena de su contenido a favor o en contra de los interesados dentro de la Compañía así como de terceros.

Artículo 26. Corresponde a la Junta Directiva ejercer la dirección y administración de negocios y bienes de todas clases de la Compañía; con plena capacidad y facultades para tomar acuerdos sobre toda clase de asuntos, con la única excepción de los que quedan reservados a la Junta General de Accionistas por los artículos 18 y 19 de estos Estatutos.

Sin perjuicio de la amplitud de lo que se acaba de consignar en el párrafo anterior, se deja constancia expresa de que la competencia de la Junta Directiva incluye facultades para:

(a) En caso de ocurrir una vacante entre los directivos, elegir a quién habrá de ocupar el cargo hasta que la Junta General de Accionistas lleve a cabo la siguiente elección de miembros de la Junta Directiva. Igual regla se aplicará si la vacante fuera temporal, pero entonces la sustitución será solo por el tiempo que dure la ausencia.

(b) Nombrar, suspender, remover, destituir y reponer al personal técnico y administrativo de la Compañía, fijar su remuneración,



conceder licencias y excedencias, inspeccionar toda clase de trabajos y servicios y exigir cuentas cuando lo estime oportuno a quienes deban rendirlas por razón de sus cargos o puestos de trabajo.

(c) Delegar sus facultades, total o parcialmente, en una o más personas, sean o no funcionarios o trabajadores de la Compañía, u otorgar poderes, generales o especiales, o comisiones o encargos, por tiempo determinado o indefinido; siempre con carácter revocable.

En cualquier caso de conflicto entre un acuerdo de la Junta General de Accionistas y otro de la Junta Directiva, regirá el primero.

## Funcionarios

Artículo 27. El Presidente, los tres Vicepresidentes y el Tesorero serán designados por la Junta Directiva de entre sus miembros.

El Secretario, el Vicesecretario y el Vicetesorero serán designados por el Presidente, sin que tengan que ser miembros de la Junta Directiva.

Todos los funcionarios serán designados por el término de un año y por todo el tiempo adicional que tarden sus sucesores respectivos en ser designados y en tomar posesión.

Una misma persona podrá desempeñar dos o más cargos, excepto cualquier cargo titular y su vice. En todo caso en que se requiera la actuación conjunta de dos funcionarios de la Compañía, este requisito no se aplicará mientras esos dos cargos sean desempeñados por una misma persona.

Cada vez que en estos Estatutos se aluda a cualquier funcionario titular, se entiende que incluye no sólo al titular mismo sino también a quien lo sustituya.

Artículo 28. El Presidente de la Compañía presidirá las sesiones de la Junta General de Accionistas y de la Junta Directiva.

El Presidente, jefe ejecutivo y representante legal, de la Compañia puede ejercer todas las funciones y facultades que los Estatutos asignan a la Junta Directiva.

En cualquier caso de conflicto entre un acuerdo de la Junta Directiva y una orden o decisión de cualquier tipo del Presidente, regirá lo dispuesto por la Junta Directiva.

Artículo 29. Las compras o ventas o trasmisiones de la propiedad de toda clase de bienes, así como la celebración de cuantos otros contratos permitan las leyes; la custodia de fondos sociales y de documentos representativos de valor de la Compañia; la apertura y el manejo de cuentas bancarias, en dinero efectivo, en valores y otras; el giro, el endoso y la negociación de cualquier tipo de cheques, letras de cambio, pagarés y cualesquiera otros documentos mercantiles; las tomas de dinero a préstamo en cualquier forma; así como el dar bienes sociales en prenda o gravarlos de cualquier otro modo requerirá siempre, en cada caso, la participación del Presidente y que éste actue conjuntamente con uno de los Vicepresidentes o con el Tesorero.

Artículo 30. El Tesorero tendrá, además, la función de dirigir la contabilidad de la Compañia, cuidando de que los libros se lleven en debida forma; y la de preparar los balances, informes, estados de cuenta y demás documentos financieros al finalizar el año social o cuando lo disponga cualquiera de los órganos colectivos de la Compañia.

Artículo 31. El Secretario de la Compañia será, al mismo tiempo, el secretario de las sesiones de la Junta General de Accionistas y de la Junta Directiva, a las que asistirá con voz pero sin voto.
Tendrá las funciones siguientes:
(a) Llevar el libro talonario de certificados de acciones, el Libro Registro, el Libro de Actas de las sesiones de la Junta General de Accionistas y de la Junta Directiva; custodiar dichos documentos y los demás que correspondan a la Secretaria; y suministrar a los demás

funcionarios de la Compañía y a sus órganos colectivos cuantos antecedentes le sean pedidos en relación con la Secretaría.

(b) Custodiar el sello social, que deberá fijar en los documentos de la Compañía en las que se considere necesario o conveniente hacerlo.

(c) Con el visto bueno, indistintamente, del Presidente o de uno de los vicepresidentes, expedir certificaciones totales o parciales o en relación de cualesquiera actas de sesiones de la Junta General de Accionistas o de la Junta Directiva, así como del Libro de Registro o de cualesquiera otros libros o documentos de la Compañía. Las certificaciones así expedidas serán prueba concluyente de su contenido.

Artículo 32. El Presidente, el Tesorero y el Secretario, cada uno por separado, ejercerán las demás funciones que le correspondan por razón de su cargo, conforme a lo establecido en estos Estatutos o en las disposiciones legales o por acuerdos que adopten órganos sociales colectivos.

La Junta Directiva o el Presidente podrá asignar funciones especializadas a cada Vicepresidente.

Artículo 33. En caso de ausencia, enfermedad, incapacidad u otro impedimento temporal de un funcionario titular, la sustitución por el vice correspondiente procederá, según el caso con arreglo a lo que sigue:

(a) El Presidente será sustituido por el Vicepresidente que aquel designe al efecto en cada caso.

(b) La sustitución del Tesorero por el Vicetesorero requerirá acuerdo de la Junta Directiva.

(c) La sustitución del Presidente por uno de los Vicepresidentes, o la del Tesorero por su vice, se justificará mediante certificación expedida por el Secretario, expresiva de la sustitución y de su causa y de que el vice de que se trate se encuentra en funciones de titular.

(ch) Para la sustitución del Secretario por el Vicesecretario bastará la actuación del Vicesecretario en cualquier certificación a expedir con arreglo a lo expresado en el inciso (c).

CONCUERDA CON SU MATRIZ, que bajo el número de orden con que encabeza, obra en el protocolo de la Notaría Especial a mi cargo, al que me remito, en la cual fijé e inutilicé sellos del timbre por valor de dos pesos moneda nacional, y para _____ *las comparecientes* , expido esta copia en _____ *16* _____ hoja(s) de papel mecanografiado a los _____ *27* _____ días del mes de _____ *diciembre* _____ , de 19 *91* . DOY FE. - - -

*Arancel: $ 270.00 m.n.*

MINISTERIO DE JUSTICIA
NOTARIA ESPECIAL

DIRECCIÓN PROVINCIAL DE FINANZAS
PODER POPULAR CIUDAD DE LA HABANA
DEPARTAMENTO DE INGRESOS

presentado al Registro de Entrada

*7750/91*

Impuesto sobre Transmisión EXENTO en razón de:

*Acto no gravado*

*No. 799/62*

Ciudad de La Habana *28/12/91* de 19

El documento que antecede ha sido
inscripto en:

Registro Central de Compañías Anónimas

Libro        13 L
Folio        118
Hoja         9395
Sección Primera
Inscripción 1ra

Registro Mercantil Primero de La Habana

Libro        1188
Folio        49
Hoja         37685
Inscripción 1ra

No. 219741                     8696

| DERECHOS |
| --- |
| 29.00 P.C |

## SERVICIO EXTERIOR MEXICANO

EL SUSCRITO: FRANCISCO JAVIER OLAVARRIA
— M I N I S T R O                    DE MEXICO EN **LA HABANA, CUBA**
                                     CERTIFICA QUE LA FIRMA DE LA LIC.

MARIA SILVIA FERNANDEZ VILLAR, FUNCIONARIA DEL MINREX
PUESTO(A) EN EL(LA)      DOCUMENTO
ADJUNTO(A) COINCIDE CON EL(LA) QUE SE TIENE REGISTRADO(A) EN ESTA OFICINA

| LUGAR | FECHA | | |
| --- | --- | --- | --- |
| | DIA | MES | AÑO |
| LA HABANA, CUBA | 21 | MAR. 1997 | |

NOTA: ESTA LEGALIZACION NO PREJUZGA DE
LA VALIDEZ DEL CONTENIDO DEL DO-
CUMENTO ANEXO.

FRANCISCO JAVIER OLAVARRIA
— M I N I S T R O

FIRMA

LA HABANA   **2 0** MAR. 1997



# EXHIBIT C

Constitution of the Republic of Cuba
National Assembly of People's Power
Note

During 1975, a draft Constitution of the Republic was exposed to public debate, in which more than 6 million people participated. The resulting suggestions led to changes in 60 of the proposed articles.

On February 15, 1976, the document was approved by a referendum in which 98% of the electorate voted, with 97.7% of those voting in favour; approval was consequently by free, direct and confidential vote of the overwhelming majority of the electors.

On February 24, 1976, this Constitution was proclaimed, at a solemn, public ceremony.

On June 26, 1978, the National Assembly of People's Power, in exercise of its constitutional powers, resolved to amend Article 10(a) of the Constitution, changing the name of the island then known as "Isla de Pinos" to "Isla de la Juventud".

On July 12, 1992, the Constitutional Reform Act designed to implement recommendations by the Fourth Congress of the Cuban Communist Party was approved at a meeting of the National Assembly of People's Power, which had convened for such purpose. These were based on a public, open, frank and calm debate with the people, on a document issued by the Congress concerning the activities of the state agencies, arguing the need for our democratic institutions to be even more representative. This called for: decisions aimed at revising the structures, powers and steering functions of the various authorities based on such institutions; clarification of the role of government at provincial and municipal levels; new ways of electing deputies to sit on the National Assembly and delegates at the provincial assemblies; the addressing of other issues relevant to the nation's institutional life.

The Constitution was further amended to underpin and extend a large number of basic rights and freedoms, as well as the civil and political rights of both Cubans and aliens.

On June 10, 2002, an unprecedented plebiscitary process emerged, making itself felt at the Extraordinary Assembly of the various national headquarters of the mass organizations and, two days later, through demonstrations and marches held throughout the nation and involving over nine million people. It culminated in the public, voluntary signing, during the three days June 15-17, by a total of 8,198,237 electors, of a document ratifying the socialist content of the Constitution. This gesture by the Cuban people was in response to offensive, interventionist remarks by the President of the United States, and called on the National Assembly of People's Power to amend the Constitution so as to make irrevocable the socialism and revolutionary political and social system it proclaims. Also sought was a statement that economic, diplomatic and political relations with other states must not be conducted under aggression, threat or coercion by a foreign power. In Extraordinary Session on June 26, 2002, convened for the purpose, the

Assembly passed the relevant resolution (No. V-74), approving the Constitutional Reform Law.

Constitutional and Legal Affairs Committee of the National Assembly of People's Power
Constitution of the Republic of Cuba
Preamble

**WE, CUBAN CITIZENS**, heirs and continuators of the creative work and the traditions of combativeness, firmness, heroism and sacrifice fostered by our ancestors;
**by** the Indians who preferred extermination to submission;
**by** the slaves who rebelled against their masters;
**by** those who awakened national awareness and a yearning by Cubans for country and freedom;
**by** the patriots who in 1868 launched the wars of independence against Spanish colonialism and those who in the last drive of 1895 won victory in 1898, a victory usurped by the military intervention and occupation of Yankee imperialism;
**by** the workers, peasants, students and intellectuals who struggled for over fifty years against imperialist domination, political corruption, the absence of people's rights and liberties, unemployment and exploitation by capitalists and landowners;
**by** those who promoted, joined and developed the first organizations of workers and peasants, spread socialist ideas and founded the first Marxist and Marxist-Leninist movements;
**by** the members of the vanguard of the generation of the centenary of the birth of Martí who, imbued with his teachings, led us to the people's revolutionary victory of January;
**by** those who defended the Revolution at the cost of their lives, thus contributing to its definitive consolidation;
by those who en masse carried out heroic internationalist missions;
**GUIDED**
by the ideas of José Martí and the political and social ideas of Marx, Engels and Lenin;
**BASING OURSELVES**
on proletarian internationalism, on the fraternal friendship, aid, cooperation and solidarity of the peoples of the world, especially those of Latin America and the Caribbean;
**AND HAVING DECIDED**
to carry forward the triumphant Revolution of the Moncada and of the Granma of the Sierra and of Girón under the leadership of Fidel Castro, which sustained by the closest unity of all revolutionary forces and of the people won full national independence, established revolutionary power, carried out democratic changes, started the construction of socialism and, with the Communist Party at the forefront, continues this construction with the final objective of building a communist society;
**AWARE**
that all the regimes based on the exploitation of man by man cause the humiliation of the exploited and the degradation of the human nature of the exploiters;
that only under socialism and communism, when man has been freed from all forms of exploitation - slavery, servitude and capitalism - can the full dignity of the human being be attained; and

that our Revolution uplifted the country and of Cubans;

**WE DECLARE**

our will that the law of laws of the Republic be guided by the following strong desire of José Martí, at last achieved;

"I want the fundamental law of our republic to be the tribute of Cubans to the full dignity of man";

**AND ADOPT**

by means of our free vote in a referendum, the following:

**CONSTITUTION**


# CHAPTER I

## Political, Social and Economic Principles of the State

**...**

**ARTICLE 17**. The State directly administers the goods that make up the socialist property of the entire people, or may create and organize enterprises and entities to administer them, whose structure, powers, functions and the system of their relations are prescribed by law.

These enterprises and entities only answer for their debts through their financial resources, within the limits prescribed by law. The State is not liable for the obligations contracted by the companies, entities, and other legal persons, and the latter are also not liable for the obligations of the State

**...**

**ARTICLE 23**. The State recognizes the property of the mixed companies, companies and economic associations constituted pursuant to the law. The use, enjoyment and disposal of the assets related to the property of said entities is governed by the provisions of the laws and statues as well as by their statues and other governing regulations.

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK     )
                      )        ss
COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of The Constitution of the Republic of Cuba, completed on 1/21/2010, originally written in Spanish.

Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

KAREN OLIVE
Notary Public, State of New York
No. 01OL6146423
Qualified in Queens County
Commission Expires May 15, 2010

### Constitución de la República de Cuba
### Asamblea Nacional del Poder Popular
### Nota

El anteproyecto de la Constitución de la República, durante 1975 fue sometido a discusión pública donde participaron más de 6 millones de personas, y se formularon propuestas que llevaron a modificar 60 de los artículos propuestos.

El 15 de febrero de 1976 se celebró un referendo en el que votó el 98% de los electores, de los cuales el 97,7% lo hizo afirmativamente, alcanzando así su aprobación, mediante el voto libre, directo y secreto de la inmensa mayoría de éstos.

El 24 de febrero de 1976, fue proclamada esta Constitución en acto solemne y público.

El 26 de junio de 1978, la Asamblea Nacional del Poder Popular en uso de sus facultades constitucionales, acordó reformar el artículo 10, inciso a) de la Constitución, a los efectos de que en lo sucesivo la Isla de Pinos pasara a llamarse Isla de la Juventud.

El 12 de julio de 1992 fue aprobada en sesión convocada al efecto, de la Asamblea Nacional del Poder Popular, la Ley de Reforma Constitucional encaminada a cumplimentar las recomendaciones del IV Congreso del Partido Comunista de Cuba adoptadas como resultado del debate público, abierto, franco y sereno con el pueblo, del llamamiento que lo convocó y que evidenció, en lo concerniente a la actividad de los organismos estatales, la necesidad de encontrar vías para hacer aún más representativas nuestras instituciones democráticas y, consecuentemente, adoptar decisiones con vista a perfeccionar sus estructuras, atribuciones y funciones de dirección en sus diferentes instancias; incluir precisiones sobre la gestión del gobierno en provincias y municipios; establecer nuevas formas de elección de los diputados a la Asamblea Nacional y de los delegados a las asambleas provinciales, así como otras cuestiones de interés para la vida institucional del país.

La Constitución también fue modificada con el fin de garantizar y ampliar el ejercicio de numerosos derechos y libertades fundamentales y los derechos civiles y políticos de los ciudadanos y extranjeros.

El 10 de junio del 2002, el pueblo de Cuba, en un proceso plebiscitario popular sin precedentes, puesto de manifiesto tanto en la Asamblea Extraordinaria de las direcciones nacionales de las organizaciones de masas; como en actos y marchas realizados el día 12 del propio mes de junio a todo lo largo y ancho del país, en los que participaron más de nueve millones de personas y para la firma pública y voluntaria de 8 198 237 electores durante los días 15, 16 y 17 de ese mismo mes ratificaron el contenido socialista de esta Constitución en respuesta a las manifestaciones injerencistas y ofensivas del Presidente de los Estados Unidos de América, e interesaron de la Asamblea Nacional del Poder Popular reformarla, para dejar expresamente consignado el carácter irrevocable del socialismo y del sistema político y social revolucionario por ella diseñado, así como que las relaciones económicas, diplomáticas y políticas con otro Estado no pueden ser negociadas bajo agresión, amenaza o coerción de una potencia extranjera, ante lo cual el órgano supremo de poder del Estado, en sesión extraordinaria, convocada al efecto, adoptó por unanimidad el Acuerdo No. V-74, por el que se aprobó la Ley de Reforma Constitucional el 26 de junio del 2002

**Comisión de Asuntos Constitucionales y Jurídicos de la Asamblea Nacional del Poder Popular**
**Constitución de la República de Cuba**
**Preámbulo**

**NOSOTROS, CIUDADANOS CUBANOS**, herederos y continuadores del trabajo creador y de las tradiciones de combatividad, firmeza, heroísmo y sacrificio forjadas por nuestros antecesores;

**por** los aborígenes que prefirieron muchas veces el exterminio a la sumisión;

**por** los esclavos que se rebelaron contra sus amos;

**por** los que despertaron la conciencia nacional y el ansia cubana de patria y libertad;

**por** los patriotas que en 1868 iniciaron las guerras de independencia contra el colonialismo español y los que en el último impulso de 1895 las llevaron a la victoria de 1898, que les fuera arrebatada por la intervención y ocupación militar del imperialismo yanqui;

**por** los obreros, campesinos, estudiantes e intelectuales que lucharon durante más de cincuenta años contra el dominio imperialista, la corrupción política, la falta de derechos y libertades populares, el desempleo y la explotación impuesta por capitalistas y terratenientes;

**por** los que promovieron, integraron y desarrollaron las primeras organizaciones de obreros y de campesinos, difundieron las ideas socialistas y fundaron los primeros movimientos marxista y marxista-leninista;

**por** los integrantes de la vanguardia de la generación del centenario del natalicio de Martí, que nutridos por su magisterio nos condujeron a la victoria revolucionaria popular de Enero;

**por** los que, con el sacrificio de sus vidas, defendieron la Revolución contribuyendo a su definitiva consolidación;

por los que masivamente cumplieron heroicas misiones internacionalistas;

**GUIADOS**

por el ideario de José Martí y las ideas político-sociales de Marx, Engels y Lenin;

**APOYADOS**

en el internacionalismo proletario, en la amistad fraternal, la ayuda, la cooperación y la solidaridad de los pueblos del mundo, especialmente los de América Latina y del Caribe;

**DECIDIDOS**

a llevar adelante la Revolución triunfadora del Moncada y del Granma, de la Sierra y de Girón encabezada por Fidel Castro que, sustentada en la más estrecha unidad de todas las fuerzas revolucionarias y del pueblo, conquistó la plena independencia nacional, estableció el poder revolucionario, realizó las transformaciones democráticas, inició la construcción del socialismo y, con el Partido Comunista al frente, la continúa con el objetivo final de edificar la sociedad comunista;

**CONSCIENTES**

de que los regímenes sustentados en la explotación del hombre por el hombre determinan la humillación de los explotados y la degradación de la condición humana de los explotadores;

de que sólo en el socialismo y el comunismo, cuando el hombre ha sido liberado de todas las formas de explotación: de la esclavitud, de la servidumbre y del capitalismo, se

alcanza la entera dignidad del ser humano; y de que nuestra Revolución elevó la dignidad de la patria y del cubano a superior altura;

**DECLARAMOS**

nuestra voluntad de que la ley de leyes de la República esté presidida por este profundo anhelo, al fin logrado, de José Martí:

**"Yo quiero que la ley primera de nuestra República sea el culto de los cubanos a la dignidad plena del hombre";**

**ADOPTAMOS**

por nuestro voto libre, mediante referendo, la siguiente:

**CONSTITUCION**.

## CAPITULO I
### Fundamentos políticos, sociales y económicos del Estado

 **...**

**ARTICULO 17**.-El Estado administra directamente los bienes que integran la propiedad socialista de todo el pueblo; o podrá crear y organizar empresas y entidades encargadas de su administración, cuya estructura, atribuciones, funciones y el régimen de sus relaciones son regulados por la ley.
Estas empresas y entidades responden de sus obligaciones sólo con sus recursos financieros, dentro de las limitaciones establecidas por la ley. El Estado no responde de las obligaciones contraídas por las empresas, entidades u otras personas jurídicas y éstas tampoco responden de las de aquél.

**...**

**ARTÍCULO 23.-** El Estado reconoce la propiedad de las empresas mixtas, sociedades y asociaciones económicas que se constituyen conforme a la ley. El uso, disfrute y disposición de los bienes pertenecientes al patrimonio de las entidades anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamentos propios por los que se gobiernan.

# EXHIBIT D

**COLECCIÓN LEGISLATIVA DE BOLSILLO**
[Bolsillo Legislation Collection] **Volume VII**

**CODIGO DE COMERCIO**
[Code of Commerce]

IN EFFECT IN THE REPUBLIC OF CUBA

[Followed by various Appendices

containing Supplementary Mercantile Legislation

and Banking Legislation]

REVISED AND COMPARED By

**RAFAEL RODRIGUEZ ALTUNAGA**
Fourth Edition, Substantially Corrected and Expanded

JESUS MONTERO, Editor
Obispo 521
HAVANA
1961

# CÓDIGO DE COMERCIO
[Commercial Code]

Scope

This Code was promulgated in Spain by the Law of August 22, 1885. By Royal Decree on this same date, the *Ministerio de Gracia y Justicia* [Ministry of Pardons and Justice], in compliance with said law, published the current Code of Commerce so that it may be observed as law in the Peninsula and adjacent islands, starting as of January 1, 1886. The publication of the Code began in the **Gaceta de Madrid** [Gazette of Madrid], No. 289 of October 16, 1885, and ended on end on page 648 of No. 328, for November 24 of the same year. This is a clear and careful print.

By Royal Decree of January 28, 1886 *(Gaceta de la Habana* [Gazette of Havana], of February 23), it was stipulated that this Code would govern Cuba from May 1 of this same year "without amendments than those introduced in Articles 179, 201, 453, 547, 550, 559, 798, 934 and 940."

As a sure guide as concerns the text of the *Código de Comercio,* unamended by subsequent Laws, we have seen the beautiful **Edición Oficial** [Official Edition] (1885), put out by the Spanish Government to "serve an the original for all legal purposes", as stated in Article Two of the Royal Decree of August twenty-second, 1885.

The copy in our library bears the seal of the *Ministerio de Gracia y Justicia* which grants authenticity to the text; and it was printed on November 12, 1885, by the Manuel Tello printshop, printers to the Chamber of His Majesty the King.

BOOK TWO

**ON SPECIAL CONTRACTS IN COMMERCE**

**Title One**

**ON MERCANTILE ENTERPRISES**

**SECTION ONE**

**On the Formation of Enterprises and Their Classes**

**Article 116.** - The association contract by which two or more persons agree to place goods, industry or any of these things in common to achieve profits shall be a mercantile contract, regardless of its class, provided that it was formed in accordance with the provisions of this Code.

Once formed, the Mercantile Enterprise shall be a legal personality for all its acts and contracts.

See Articles 165 et seq., 1665, 1670 et seq., 170, C. Civ. [Civil Code],

**Article 117.** - The contract of a mercantile enterprise, entered into with the essential requirements under the law, shall be valid and binding on the contracting parties, regardless of the form, conditions and licit and honest combinations that compose it, provided that they are not expressly prohibited in this Code.

The creation of territorial, agricultural, central and discount Banks, credit enterprises, mortgage enterprises, and construction enterprises shall be permitted.

**Article 122.** - As a general rule, Mercantile Enterprises shall be formed by adopting any of the following forms:

**1.** A regular association in which all partners, in the collective name and under a enterprise name, agree to participate in the proportion they establish in the same rights and obligations.

**2.** A limited association, in which one or more subjects contribute a certain amount of capital to a common fund, to participate in the results of the enterprise transactions managed exclusively by others in the collective name.

**3.** A corporation in which, by forming the common fund, the associates by shares or certain portions, represented by stock or other clear manner, entrust its management to dismissable agents or administrators who represent the Enterprise under a name appropriate to the objective or business for which the funds are intended.

See Articles 139, 145 to 150, 152, 160 etseq., C. Com. [Code of Commerce].

**Article 123.** - Depending on the nature of their operations, Mercantile Enterprises may be:

Credit enterprises, Central and discount
banks, Territorial credit enterprises,
Mining enterprises, Agricultural banks,
Holders of railway, tramway and public works licenses, General storage
warehouses,
And other types, provided that their agreements are licit and their purpose is industry or commerce.

**Article 124.** - Mutual fire insurance enterprises, tontine life insurance combinations providing old-age assistance and any other class, and production, credit or consumption cooperatives shall be considered mercantile and **be** subject to the provisions of this Code only when they are dedicated [remainder missing from original]

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK  )
                   )  ss.:
COUNTY OF NEW YORK )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into _English_ of _ Extract from the Commercial Code of Cuba _ written in _ Spanish _.

New York, January 25, 2010.

TransNet USA, Inc.

_____
Susan E. Geddes, Vice President

Sworn to and subscribed before me on
January 25, 2010.

LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010

COLECCION LEGISLATIVA
DE BOLSILLO
Volumen VII

# CODIGO DE COMERCIO

VIGENTE EN LA REPUBLICA DE CUBA

(Seguido de varios Apéndices contentivos
de la Legislación Mercantil complementaria
y la Legislación Bancaria)

REVISADO Y CONCORDADO

por

RAFAEL RODRIGUEZ ALTUNAGA

Cuarta edición corregida y notablemente aumentada



JESUS MONTERO, Editor
Obispo 521
LA HABANA
1961



# CÓDIGO DE COMERCIO

### Su Vigencia

Este Código se promulgó en España por la Ley de agosto 22 de 1885. Por Real Decreto de esa misma fecha, el Ministro de Gracia y Justicia, en cumplimiento de esta Ley, publicó el Código de Comercio actual, para que se observe, como ley, en la Península e islas adyacentes, desde el 1º de enero de 1886. La publicación del Código se empezó en la **Gaceta de Madrid**, núm. 289 de Oct. 16 de 1885 y se terminó en la pág. 648 del núm. 328, correspondiente al día 24 de nov. del propio año. Es una impresión nítida y cuidadosa.

Por Real Decreto de 28 de enero de 1886 (Gaceta de la Habana, de 23 de febrero) se dispuso que ese Código rigiera en Cuba desde el 1 de mayo de ese mismo año "sin otras modificaciones que las introducidas en los artículos 179, 201, 453, 547, 550, 559, 798, 934 y 940".

Hemos tenido a la vista, como guía segura, en cuanto al texto del Código de Comercio, no modificado por Leyes ulteriores, la bella **Edición Oficial** (1885), hecha por el Gobierno Español para "servir de original para todos los efectos legales", según reza el artículo segundo del Real Decreto de veintidós de agosto de 1885.

El ejemplar que obra en nuestra biblioteca lleva el sello del Ministerio de Gracia y Justicia que le comunica autenticidad a su texto; —y fue impreso en 12 de noviembre de 1885 en la imprenta de Manuel Tello, impresor de Cámara de Su Majestad el Rey.



# LIBRO SEGUNDO

## DE LOS CONTRATOS ESPECIALES DEL COMERCIO

### Título Primero

## DE LAS COMPAÑIAS MERCANTILES

### SECCION PRIMERA

### De la Constitución de las Compañías y de sus Clases

**Art. 116.**—El contrato de compañía por el cual .dos o más personas se obligan a poner en fondo común bienes, industria o alguna de estas cosas para obtener lucro, será mercantil, cualquiera que fuese su clase, siempre que se haya constituido con arreglo a las disposiciones de este Código.

Una vez constituída la Compañía mercantil, tendrá personalidad jurídica en todos sus actos y contratos.

V. arts. 165 y sigs., 1665, 1670 y sigs. 1700 C. Civ.

**Art. 117.**—El contrato de compañía mercantil celebrado con los requisitos esenciales del derecho, será válido y obligatorio entre los que lo celebren, cualesquiera que sean la forma, condiciones y combinaciones lícitas y honestas con que lo constituyan, siempre que no estén expresamente prohibidas en este Código.

Será libre la creación de Bancos territoriales, agrícolas y de emisión y descuento, de Sociedades de crédito, de préstamos hipotecarios, concesionarias de obras

**Art. 122.**—Por regla general, las Compañías mercantiles se constituirán adoptando alguna de las siguientes formas:

1ª La regular colectiva en que todos los socios, en nombre colectivo y bajo una razón social, se comprometen a participar en la proporción que establezcan de los mismos derechos y obligaciones.

2ª La comanditaria en que uno o varios sujetos aportan capital determinado al fondo común, para estar a las resultas de las operaciones sociales dirigidas exclusivamente por otros con nombre colectivo.

3ª La anónima en que formando el fondo común los asociados por parte o porciones ciertas, figuradas por acciones o de otra manera indubitada, encargan su manejo a mandatarios o administradores amovibles que representen a la Compañía bajo una denominación apropiada al objeto o empresa a que se destine sus fondos.

V. arts. 139, 145 a 150, 152, 160, sigs. C. Com.

**Art. 123.**—Por la índole de sus operaciones, podrán ser las Compañías mercantiles:

Sociedades de crédito;

Bancos de emisión y descuento;

Compañías de crédito territorial;

Compañías de minas;

Bancos agrícolas;

Concesionarias de ferrocarriles, tranvías, y obras públicas.

De almacenes generales de depósito;

Y de otras especies, siempre que sus pactos sean lícitos y su fin, la industria o el comercio.

**Art. 124.**—Las Compañías mutuas de seguros contra incendios, de combinaciones tontinas sobre la vida para auxilios a la vejez y de cualquiera otra clase y las cooperativas de producción, de crédito o de consumo, sólo se considerarán mercantiles y quedarán sujetas a las disposiciones de este Código, cuando se dedicaren



**EXHIBIT E**

[emblem]
Republic of Cuba

**CÓDIGO CIVIL**
[Civil Code]

**Law** No. 59

Publication
*Ministerio de Justicia*
[Ministry of Justice]

ARTICLE 36.1 After the presumption of death is declared, the exercise of the same rights that would have belonged to them if the death had been accredited by a medical certificate shall be granted to them.

2. The effects of the declaration are retroactive to the time at which the report that led to the presumption of death was made or the last news of the missing party was heard.

ARTICLE 37. If the missing party or party presumed dead appears or is proven to exist, the court shall annul the declaration of disappearance or of presumption of death, and shall stipulate that, aside from the cases of exception established by the law, all his rights shall be restored and his goods returned in the state in which they were and at the price for those sold or acquired with it, but he may not claim the fruits thereof.

SECTION FOUR

**Rights Inherent in Personality**

ARTICLE 33. Violation of the rights inherent in personality established in the Constitution that affect the net worth or honor of its holder confers on him or his successor the right to demand:

a)      immediate cessation of the violation or elimination of its effects, if possible;

b)      retraction on the part of the offender; and

c)      reparations for the damages and harm caused.

CHAPTER II

**LEGAL PERSONS**

ARTICLE 39.1 Legal persons are entities that, owning their own assets, have the capacity to be the subjects of rights and obligations.

2.      in addition to the State, the following are legal persons:

a)      companies and unions of State companies;

b)      cooperatives;

c)      political, union and company organizations and their enterprises;

ch)     companies and associations formed in conformity with the requirements established by law;

d)      foundations, this being understood to mean the set of goods created as separate net worth by an act of charity by the party who was their owner, to dedicate them to the achievement of a certain end permitted by law with a not-for-profit purpose, and formed in accordance with the requirements established by law;

e)      non-State companies authorized to conduct their activities; and

f)      other entities to which the law confers legal personality.

ARTICLE 40.1 The formation, government and dissolution of legal persons shall be established and regulated by law, their Charters and regulations.

2.     The organization and operation of the State shall be as established in the Constitution of the Republic and in the laws.

ARTICLE 41. Legal persons, to conduct their activities, shall have the capacity determined by the law, their Charters and regulations.

ARTICLE 42.1 Legal persons shall conduct their activities by means of their legally appointed or elected administrative organs.

2.      The procedure for the appointment or election of the administrative organs shall be established in their Charters or regulations and in the corresponding legal provisions. In the case of the State, Paragraph 2 of Article 40 shall apply.

3.      The actions performed by such bodies in relation to the activities of the legal person shall be binding on it.

4.      For damages caused to the legal person or to a third party due to the negligent management of its organs, the perpetrators shall also personally answer for it.

ARTICLE 43. The domicile of legal persons shall be that determined in the legal provisions creating them, in the Charters or regulations and, in the absence thereof, the location where its legal representation is established or its higher administrative organ is located.

ARTICLE 44.1 Legal persons answer for their obligations with the goods making up their net worth.

2.      The net worth of State companies shall be made up of the basic, turnover and financial resources assigned to them by the State. These companies shall answer for their obligations with their financial resources, within the limits established in the economic legislation.

3.      The State is not responsible for the obligations of other legal persons, nor are the latter responsible for the debts of the State.

TITLE III

**SUBJECT OF THE LEGAL RELATION**

ARTICLE 45.1. The subject of the legal relation is a piece of property, a service or an asset that was acquired or received licitly.

SECTION SIX

**Other Forms of Ownership**

ARTICLE 160.1. The State shall also recognize the property of companies, associations and foundations.

2.      Likewise, the State shall recognize the property of mixed companies, joint and international companies and of other legal persons of special natures.

3.      The use, enjoyment and disposition of the goods of entities referred to in the preceding paragraphs are governed by the provisions of the law and treaties as well as by the Charters and regulations of the respective legal person and, as a supplement, by this Code.

CHAPTER III

**CO-OWNERSHIP**

SECTION ONE

**General Provision**

ARTICLE 161. The ownership of one and the same item that is not materially divided may belong to several persons, by shares or in common.

SECTION TWO

**Co-Ownership by Shares**

ARTICLE 162.1. The portions or shares of the co-owners in the value of the undivided item shall be presumed to be equal.

2. Each of the co-owners shall have rights and obligations in proportion to their respective shares and may dispose of their share without the consent of the others, within the limits established by law.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY  10025

STATE OF NEW YORK      )
                       )      ss.:
COUNTY OF NEW YORK  )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English   of   Extract from the Civil Code of Cuba    written in Spanish   .

New York,  January 25, 2010.

TransNet USA, Inc.

_____
Susan E. Geddes, Vice President

Sworn to and subscribed before me on
January 25, 2010.

LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010



República de Cuba

# CODIGO CIVIL

## Ley No. 59



Divulgación
Ministerio de Justicia

ARTICULO 36.1. Declarada la presunción de muerte, queda expedito para los interesados el ejercicio de los mismos derechos que les hubieran correspondido de ser la muerte acreditada por certificación médica.

2. Los efectos de la declaración se retrotraen al momento en que se produjo el acontecimiento que hizo presumir la muerte o se tuvieron las últimas noticias del desaparecido.

ARTICULO 37. Si el declarado ausente o presuntamente muerto se presenta o se prueba su existencia, el tribunal anula la declaración de ausencia o presunción de muerte y dispone que, salvo los casos de excepción que establece la ley, se le restituya en todos sus derechos, y recobre sus bienes en el estado en que se encuentren y el precio de los enajenados o los adquiridos con él, pero no podrá reclamar frutos.

### SECCION CUARTA
#### Derechos inherentes a la personalidad

ARTICULO 38. La violación de los derechos inherentes a la personalidad consagrados en la Constitución, que afecte al patrimonio o al honor de su titular, confiere a éste o a sus causahabientes la facultad de exigir:

a) el cese inmediato de la violación o la eliminación de sus efectos, de ser posible;

b) la retractación por parte del ofensor; y

c) la reparación de los daños y perjuicios causados.

### CAPITULO II
#### PERSONAS JURIDICAS

ARTICULO 39.1. Las personas jurídicas son entidades que, poseyendo patrimonio propio, tienen capacidad para ser sujetos de derechos y obligaciones.

15



2. Son personas jurídicas, además del Estado:

a) las empresas y uniones de empresas estatales;

b) las cooperativas;

c) las organizaciones políticas, de masas, sociales y sus empresas;

ch) las sociedades y asociaciones constituidas de conformidad con los requisitos establecidos en las leyes;

d) las fundaciones, entendiéndose por tales el conjunto de bienes creado como patrimonio separado por acto de liberalidad del que era su propietario, para dedicarlos al cumplimiento de determinado fin permitido por la ley sin ánimo de lucro, y constituidas de conformidad con los requisitos establecidos en las leyes;

e) las empresas no estatales autorizadas para realizar sus actividades; y

f) las demás entidades a las que la ley confiere personalidad jurídica.

ARTICULO 40.1.  La constitución, régimen y disolución de las personas jurídicas se establecen y regulan en la ley, sus estatutos y reglamentos.

2. La organización y el funcionamiento del Estado son los que se establecen en la Constitución de la República y en las leyes.

ARTICULO 41.  Las personas jurídicas, para ejercer sus actividades, tienen la capacidad que determinen la ley y sus estatutos o reglamentos.

ARTICULO 42.1.  Las personas jurídicas realizan sus actividades por medio de sus órganos de dirección legalmente designados o elegidos.

16

2. El procedimiento para la designacion o elección de los órganos de dirección, se establece en sus estatutos o reglamentos y en las disposiciones legales correspondientes. En el caso del Estado se está a lo dispuesto en el apartado 2 del artículo 40.

3. Los actos realizados por dichos órganos en relación con las actividades de la persona jurídica, obliga a ésta.

4. Por los daños ocasionados a la persona jurídica o a tercero a causa de la gestión negligente de sus órganos, responden, además, personalmente, sus autores.

ARTICULO 43. El domicilio de las personas jurídicas es el determinado en la disposición legal que las crea, en sus estatutos o reglamentos y, en su defecto, el lugar donde esté establecida su representación legal o radique su órgano superior de dirección.

ARTICULO 44.1. Las personas jurídicas responden de sus obligaciones con los bienes que integran su patrimonio.

2. El patrimonio de las empresas estatales está integrado por los medios básicos, de rotación y financieros que les asigna el Estado. Estas empresas sólo responden de sus obligaciones con sus recursos financieros, dentro de las limitaciones establecidas en la legislación económica.

3. El Estado no responde de las obligaciones de otras personas jurídicas, ni éstas de las de aquél.

TITULO III

**OBJETO DE LA RELACION JURIDICA**

ARTICULO 45.1. El objeto de la relación jurídica es un bien, una prestación o un patrimonio, que sean de lícita apropiación o recepción.

17



## SECCION SEXTA

### Otras formas de propiedad

ARTICULO 160.1.   El Estado reconoce también la propiedad de las sociedades, asociaciones y fundaciones.

2. Asimismo, reconoce la de las empresas mixtas, conjuntas e internacionales y de otras personas jurídicas de características especiales.

3. El uso, disfrute y disposición de los bienes de las entidades a que se refieren los apartados anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamento de la persona jurídica respectiva y, supletoriamente, por este Código.

## CAPITULO III

### COPROPIEDAD

#### SECCION PRIMERA

##### Disposición general

ARTICULO 161.   La propiedad de un mismo bien que no está materialmente dividido puede pertenecer a varias personas, por cuotas o en común.

#### SECCION SEGUNDA

##### Copropiedad por cuotas

ARTICULO 162.1.   Las partes o cuotas de los copropietarios sobre el valor del bien indiviso, se presumen iguales.

2. Cada uno de los copropietarios tiene derechos y obligaciones en proporción a su respectiva cuota y puede disponer de su parte sin el consentimiento de los demás, con las limitaciones que la ley establece.

48

