# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NILO JEREZ,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF CUBA, FIDEL CASTRO RUZ, Individually and as President of the State and Council of Ministers, Head of the Communist Party and Commander-in-Chief of the Military, RAUL CASTRO RUZ, Individually and as First Vice President of the Head of the Cuban Revolutionary Armed Forces, THE CUBAN REVOLUTIONARY ARMED FORCES, and EL MINISTERIO DEL INTERIOR,<br><br>　　　　Defendants. | Case No. 1:09-mc-466 |

ADARGELIO GARRIDO DE LA GRANA declares under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.　　I am a lawyer licensed to practice law in the Republic of Cuba and reside in Havana, Cuba. I graduated from the Faculty of Law of the University of Havana in 1982. Since September 1994, I have been the head of the legal department of Corporación Habanos, S.A. ("Habanos, S.A.").

2.　　Habanos, S.A. is a joint stock company constituted under the laws of the Republic of Cuba, with its own legal personality and assets. Fifty percent (50%) of its stock is owned by a Spanish company, ITI Cigars, S.L., and fifty percent (50%) of its stock is owned by Empresa Cubana del Tabaco ("Cubatabaco"). Cubatabaco is a

company with legal personality, and its own assets and management, organized under the laws of Cuba.  Habanos, S.A. is not an agency or instrumentality of the Republic of Cuba under Cuban law.

3.     Under Cuban law, Habanos, S.A. is not responsible for the debts or obligations of its shareholders. Furthermore, Habanos, S.A. is not responsible for the debts and obligations of third parties, including without limitation the Republic of Cuba. Habanos, S.A.'s assets and liabilities are its own, and not the assets or liabilities of its shareholders. Likewise the assets and liabilities of Habanos, S.A. are not the assets or liabilities of third parties, including the Republic of Cuba.

4.     Habanos, S.A. was constituted as a joint stock company constituted under the laws of the Republic of Cuba on February 4, 2000. The "Estatutos" (the equivalent of Articles of Incorporation in United States law and, hereinafter, the "Statutes") of Habanos, S.A., No. 165-00, were issued at the Special Notary Office of the Ministry of Justice of the Republic of Cuba on that date.  The Statutes were recorded in the Central Register of Stock Companies and in the First Commercial Register of Havana also on that date. A true and correct copy of the partially redacted Estatutos of Habanos, S.A., with a translation to English, is attached as Exhibit 1.

5.     The Statutes of Habanos, S.A. establish that "it is a mixed company, under the form of an Anonymous Society ["Sociedad Anónima," or "S.A." in abbreviated form], with registered shares of stock, that is governed by the provisions of Law Number 77, Law of Foreign Investment." (Statutes, Article 1).

6.     The Foreign Investment Law (Law 77) authorizes the creation of mixed companies.  In Law 77, a mixed company is defined as "a Cuban commercial company

which adopts the form of a capital stock company through registered shares, which are held by one or more national investors and one or more foreign investors as shareholders," Law 77, Article 2(i), and establishes that the "mixed enterprise entails the creation of a distinct legal entity other than those of the parties; it takes the form of a capital stock company through registered shares" (Art. 13.1) and "acquires legal personality when it is recorded in the Register which exits for these activities in the Chamber of Commerce of the Republic of Cuba" (Art. 13.7).  As noted, Habanos, S.A. has been registered with the Cuban Chamber of Commerce since February 4, 2000. A true and correct copy of Law 77 "Foreign Investment Law," with a translation to English, is attached as Exhibit 2.

7.      Fifty percent (50%) of Habanos, S.A.'s stock is owned by ITI Cigars, S.L., which is a wholly owned subsidiary of ALTADIS, S.A.  ITI Cigars, S.L. is a Limited Society organized under the laws of Spain, and registered and headquartered in Spain. Altadis, S.A. is an Anonymous Society organized under the laws of Spain, and registered and headquartered in Spain.   Altadis, S.A. itself is a wholly owned subsidiary of Imperial Tobacco Group PLC.  Imperial Tobacco Group PLC is a publicly traded company organized under the laws of England and Whales, registered in England and Wales and headquartered in England.  Attached as Exhibit 3 are true and correct copies of: (a) a filing by Imperial Tobacco Group PLC made to the U.S. Securities and Exchange Commission that is contained in the SEC's EDGAR Corporate Financial Information database (listing its place of incorporation and principal place of business); and (b) a portion of Imperial Tobacco Group PLC's 2009 Annual Report (listing Altadis, S.A. as a

wholly owned entity incorporated in Spain and Corporación Habanos, S.A. as a joint venture incorporated in Cuba).

8.     The other fifty percent (50%) of Habanos, S.A.'s stock is owned by Empresa Cubana del Tabaco (Cubatabaco). Cubatabaco is organized under the laws of Cuba as a separate legal entity with its own assets and management. Under Cuban law, the "Cuban government shall not be liable for obligations of any kind assumed by CUBATABACO, and [CUBATABACO] shall not be liable for the obligations of the [Cuban government] and shall keep separate books of account and financial statements." Resolution 300 of the Ministry of Foreign Trade, at Second. A true and correct copy of Resolution 300 of the Ministry of Foreign Trade, with a translation to English, is attached as Exhibit 4.

9.     Article 33 of Law 77 provides that the members of the directive and administrative body of a mixed enterprise shall be designated by the mixed enterprises' Board of Shareholders.

10.     Pursuant to the Statutes of Habanos, S.A., the highest governing authority of the company is the Board of Shareholders. *See* Statutes, at Article 13. The administration and representation of Habanos, S.A. is carried out by the Council of Administration, subject to the authority and direction of the Board of Shareholders. *Id.* The Board of Shareholders, *inter alia*, designates the members of the Council of Administration, determines the number of persons who shall serve on the Council, amends the Statutes, and decides upon the distribution of dividends. *See* Statutes, at Article 25. It is the responsibility of the Council of Administration to manage the

enterprise in all of its aspects, subject to the Board of Shareholders' authority and direction. *See* Statutes, at Article 31(h).

11.     As required by the Statutes, fifty percent (50%) of Habanos, S.A.'s Board of Shareholders are appointed by ITI Cigars, S.L. and fifty percent (50%) are appointed by Cubatabaco. *See* Statutes, at Article 22. Also as required by the Statutes, the Council of Administration is comprised of persons who are appointed in equal numbers by ITI Cigars, S.L. and Cubatabaco. *See* Board of Shareholders, Agreements Nos. 11/2002 & 12/2002 (Sept. 24, 2002). At least a majority vote of the Board of Shareholders and at least a majority vote of the Council of Administration – that is, the concurrence of both the Cubatabaco and ITI Cigars, S.L. representatives – is required for any decision by these bodies. *See* Statutes, at Articles 15 and 30. A true and correct copy of Board of Shareholders Agreements Nos. 11/2002 & 12/2002 (Sept. 24, 2002), with a translation to English, is attached as Exhibit 5.

12.     Under the Statutes, Habanos, S.A. has two co-Presidents, one appointed by Cubatabaco and one by ITI Cigars, S.L.. Their concurrence is necessary to make decisions. *See* Statutes, at Articles 18 and 32.

13.     The bank accounts of Habanos, S.A., as well as of its branches and subsidiaries, both inside and outside of Cuba and can only be operated with two signatures, one signature from an authorized Spanish Habanos representative and the other from an authorized Cuban Habanos representative. *See* Board of Shareholders, Agreement No. 11/2003 (Apr. 27, 2003). *See* Ex. 5.

14.     As set forth in the Statutes, Article 4, Habanos, S.A. buys, sells and markets internationally Cuban-origin cigars as well as sells them wholesale in hard currency in the internal Cuban market.

15.     Under Cuban law, Habanos, S.A. acquired its own legal personality and full capacity as a legal entity (a mixed company) as of the date that it was registered on the Register of Mixed Companies of the Chamber of Commerce of the Republic of Cuba, currently the Commercial Register, on February 4, 2000.

16.     According to the Cuban Constitution, the Cuban Commercial and Civil Codes, and Cuban jurisprudence (judicial precedents), a mixed company created under the Foreign Investment Law (Law 77), such as Habanos, S.A., is a joint stock, commercial company that acquires its own legal personality with independent assets and limited liability, different from that of any of the parties.

17.     The Constitution of the Republic of Cuba explicitly provides that legal persons, such as mixed companies, are not liable for the debts and obligations of the Cuban State. The Constitution establishes: "The State is not liable for the obligations contracted by the companies, entities and other legal persons, and the latter are also not liable for the obligations of the State." Constitution of the Republic of Cuba, enacted on February 24, 1976, as last amended by the National Assembly of the People's Power on June 26, 2002, at Article 17.

18.     The Constitution of the Republic of Cuba also sets forth explicitly that mixed companies have their own assets. The Constitution sets forth: "The State recognizes the property of the mixed companies, companies and economic associations constituted pursuant to the law. The use, enjoyment and disposal of the assets related to

the property of said entities is governed by the provisions of the laws and statutes, as well as by their statutes and other governing regulations." *See* Constitution of the Republic of Cuba, Article 23.  A true and correct copy of the quoted articles of the Constitution of the Republic of Cuba, with a translation to English, is attached as Exhibit 6.

19.     Under the Commercial Code of Cuba, a commercial company has "legal personality in all its acts and contracts."  Article 116, second paragraph.  According to the provisions of the Commercial Code, one of the forms adopted by commercial companies is the Joint Stock Company (Article 122).  The current Commercial Code of Cuba was enacted in Spain on August 22, 1885, and was extended to Cuba by Royal Decree on January 28, 1886, being enacted on May 1, 1886.  A true and correct copy of the aforementioned articles of the Commercial Code of Cuba, with a translation to English, is attached as Exhibit 7.

20.     The Cuban Civil Code, adopted on April 12, 1988, recognizes "for mixed companies their own property" (Article 160.2) and also sets forth that "legal entities are entities that, owning their own assets, have the capacity to be the subjects of rights and obligations" (Article 39.1).  In addition, the Civil Code disposes that "legal persons are ... the companies and associations formed in conformity with the requirements established by laws" and "other entities to which the law confers legal personality." (Art. 39, 2 ch and f.)

21.     Concerning the liability of the companies, the Civil Code explicitly establishes that "the State is not responsible for the obligations of other legal persons, nor are the latter responsible for the debts of the State." (Art. 44.3).  A true and correct copy of the aforementioned articles of the Civil Code, with a translation to English, is attached

7

as Exhibit 8. Habanos, S.A.'s Statutes explicitly set forth that Habanos, S.A. is entitled to contract on its own behalf: Habanos, S.A. "will be able … To sign whatever contracts might be necessary to achieve its corporate purpose." (Habanos, S.A. Statutes, Article 4(e)).

22.     According to the above, since the registration of Habanos, S.A in the Register of Mixed Companies of the Chamber of Commerce, currently the Commercial Register, this company became a legal entity, acquiring all rights inherent to the entity, including the right to its own assets and limited liability for its acts, but not for the acts of others.

23.     Because of time considerations, I submit the present signed declaration by facsimile and/or electronic mail and will promptly send the signed original by express mail to the law firm of Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C..

Executed this  15 day of January, 2010 in Mexico City, D. F.


ADARGELIO GARRIDO DE LA GRANA

# EXHIBIT 1

DRN-27

NUMBER:  --------------------------------- 165----------------------------------------------------

-AMENDMENT TO BYLAWS REGARDING CONVERSION OF A CUBAN

CORPORATION INTO A MIXED CORPORATION  -----------------------------------------

In the city of Havana, on February 4, 2000  ---------------------------------------------------

--------------------------------------------BEFORE ME  ---------------------------------------

[revenue stamp]  NURY EVARISTA PEÑA TABOADA, a nationally-qualified notary seated in the

Special Notarial Office of the Ministry of Justice of the Republic of Cuba,  ---------------

-------------------------------------------THERE APPEARED  -----------------------------------

JUAN MANUEL DIAZ TENORIO, born in Madrid, Spain, a citizen of Cuba, of legal age,

married, director, resident of building number 12, apartment 807, Reparto Camilo

Cienfuegos, Habana del Este, City of Havana, bearer of Permanent Identification Document

42032208642 ------------------------------------------------------------------------------------------

ANTONIO VAZQUEZ ROMERO, born in Cordoba, Spain, a citizen of Spain, of legal age,

married, economist, domiciled at Calle Velázquez number 16, Madrid, Spain, bearer of

passport number 30069611-D, with a permit to visit the national territory until April 25 of

this year  ------------------------------------------------------------------------------------------------

-------------------------------------ON BEHALF OF  -----------------------------------------

[seal]
[initials]  Mr. JUAN MANUEL DIAZ TENORIO, by the authority and in representation of

Empresa Cubana del Tabaco, abbreviated CUBATABACO, created by Law 1191 of April 25,

1966 and amended by Resolution number 300, dated December 30, 1993 of the Ministry of

Foreign Trade, which company is inscribed in the Chamber of Commerce for the Republic of

Cuba, as an Importer and exporter, in Volume II, Folio 0031, File 26, with legal domicile at

Calle O'Reilly number 104, Old Havana, City of Havana, in his capacity as Director of

aforementioned company, appointed by resolution number 561, dated December 11, 1995,

issued by the Ministry of Foreign Trade, with full power to do so, as evidenced by the

resolutions shown to me.------------------------------------------------------------------------------

And Mr. ANTONIO VAZQUEZ ROMERO, by the authority and in representation of the

Spanish corporation known as ALTADIS S.A., previously known as Tabacalera S.A.,

established pursuant to public document number 304, dated March 5, 1945, authorized by a

notary in Madrid, Spain, Luis Ávila, with Bylaws drawn up by another notary in Madrid,

Spain, Ignacio Solis Villa, on November 22, 1990, under number 1581 in the

Commercial Register of that country, in Volume 655, Folio 1, Page M-13,631, Entry 138, dated January 18, 1991, with a subsequent inscription covering the name change and amendment to the Bylaws, under number 221 of December 22, 1999, in his capacity as legal representative, making use of the power of attorney granted by the Corporation on January 28 of this year by Carlos Rives Gracia, the Honorable Notary of the College of Madrid, under number 324 in his notarial documents, which is evidenced by a copy of the official registration of the notarial document bearing the previous notarial number, authorized on this day by this public official.-----------------------------------------------------------------

The appearing parties declared that the powers they were granted had not been revoked, suspended or limited for any of the reasons allowed by Law.-------------------------------------

**ASSURING THAT THEY** fully possessed and exercised their civil rights, they have, in my opinion, the legal capacity necessary for this action, with nothing to indicate otherwise, they **DECLARE**:-------------------------------------------------------------------------------------------

**ONE**: That in their capacity as sole shareholders of the Cuban company, **Corporation Habanos S.A. (Habanos S.A.)**, established on September 14, 1994, through a public document drawn up before Notary Lourdes Lucia Diaz Canal Navarro under number 2568 in her Record Book kept in this notarial office, there was an entry in Book 135, Folio 162, Page 4906, Section One of the Central Register of Companies, and in Book 1188, Folio 99, Page 16739 of the Commercial Register of Havana, with authorized capital of [Redacted] [Redacted] represented by TWO THOUSAND shares with a value of [Redacted] per share. Of those shares, TWO HUNDRED were issued as follows: ONE HUNDRED (from 101 to 200) were subscribed and paid in by the Empresa Cubana del Tabaco and another ONE HUNDRED (from 1 to 100) shares by ALTADIS S.A. - as evidenced by the following documents:---------------------------

-Framework Partnership Agreement signed December 9, 1999, with the Corporación Habanos company and other companies which hold equity in foreign companies related thereto, Empresa de Tabaco Torcido El Laguito, as one party, and as the other party, the Spanish corporation ALTADIS, S.A.

DRN-27



-Resolution number 3617 of the Executive Committee of the **Council of Ministers,** dated December 24, 1999. ----------------------------------------------------------------------------------------

-A Share Purchase Agreement, affected in the City of Havana on December 25, 1999, in favor of Empresa Cubana del Tabaco (Cubatabaco), officially recorded by this notary on December 28, 1999 under number 1831 in the notarial records. ---------------------------------

-A Share Purchase Agreement, signed by Empresa de Tabaco Torcido El Laguito and the Spanish corporation ALTADIS S.A., with CUBATABACO acting as guarantor, on the fourth day of the current month and year. ----------------------------------------------------------

I have appended said documents to the end of this public document so that they may be an integral part hereof. ----------------------------------------------------------------------------------------

**TWO**: Pursuant to the corresponding authorization in the form of a Governmental Resolution by the Executive Committee of the aforementioned Council of Ministers and, under the provisions of Law number 77 of September 5, 1995, the Law on Foreign Investment, as well as the Commercial Code in effect in Cuba, and other legal provisions that may be applicable, this public document for Amendment of the Bylaws converting a Cuban corporation into a Mixed Corporation shall take effect by keeping the corporate form under the name of CORPORACION HABANOS S.A. This [corporation] shall be governed by its Bylaws. Anything not covered therein shall be covered by the Partnership Agreement signed by the parties on this date, by the framework agreement of December 9, 1999, by the legal norms mentioned and their implementing regulations, and by International Agreements which Spain and Cuba have signed and ratified. --------------------------------------------------------

**THREE**: The declarants carne to me, the Notary, for the purpose of incorporating into this public document, the Bylaws that will govern the Mixed Corporation, CORPORACION HABANOS S.A. These [bylaws] express the requirements set forth in Article 151 of the Commercial Code and Resolution number 26, Article 12 of the President of the Chamber of Commerce of the Republic of Cuba. 1, the Notary, shall append these to the document that gave rise to this instrument. The Bylaws STATE: --------------------------------------------------------

[seal]
[initials]

DRN-27

-------------------------------------------- **BYLAWS**-------------------------------------------------

**TITLE I**. --------------------------------------------------------------------------------------------

**NAME, PURPOSE, DOMICILE AND DURATION**: ----------------------------------------

**Article 1**. - Using the same name, Corporación Habanos S.A. (Habanos S.A.) shall be transformed into mixed company under the form of an anonymous society, with registered shares of stock, that is governed by the provisions of the law number 77, Law of Foreign Investments of September fifth of nineteen-hundred ninety-five, its implementing legislation, and other standards that now or in the future may be applicable, as well as by the Partnership Agreement signed by its shareholders on February 4, 2000, these Bylaws, the Framework Partnership Agreement dated December 9, 1999, and the Resolution by the Executive Committee of the Council of Ministers of the Republic of Cuba which authorized This conversion. ----------------------------------------------------------------------------------

**Article 2.** - Corporación Habanos S.A. (Habanos S.A.), hereinafter the CORPORATION, is a Cuban corporation domiciled at Mercaderes number 21, Old Havana, in the City of Havana. By resolution of a General Shareholders' Meeting it may move to another location in This city or in the national territory and set up offices, representatives, branches and subsidiaries, both in Cuba and abroad, as well as take holdings in foreign entities. -----------------------

**Article 3.** –

<div style="border:1px solid #000; background:#ccc; text-align:center; padding:30px;"><b>Redacted</b></div>

-----------------------------------------------------------

<div style="border:1px solid #000; background:#ccc; text-align:center; padding:30px;"><b>Redacted</b></div>

.--------------------------------------------------------------------------------------

The corporation shall start its activities as a mixed corporation when it is inscribed into the Chamber of Commerce of the Republic of Cuba.---------------------------------------------------

**Article 4.** - The purpose of the CORPORATION is the exclusive purchase, sale and international marketing of all twisted tobacco products of Cuban origin, in any of their formats and types of

manufacture, including those weighing less than 3 grams, short filler and their wholesaling on the internal market in Cuban currency. The exclusivity so conferred shall not be inconsistent with the authorizations granted by previously adopted agreements. ----------------

The CORPORATION shall likewise have exclusive power for exports of tobacco in the Cuban branch of any class produced in Cuba. ----------------------------------------------------

Accordingly, the CORPORATION shall have exclusive power to create new trade and service marks and trade names which identify Cuban twisted tobacco products, within and outside of Cuba, upon the understanding that they must be created solely for the CORPORATION's profit and benefit. ------------------------------------------------------------------------

Furthermore, the CORPORATION may market, in Cuba or abroad, any other products related to the aforementioned or Cuban tobacco brands; in order to do so, it will be able to:

 ------------------------------------------------------------------------------------

[seal]
[initials]

a.      Promote and advertise the marketing of products in Cuba and abroad, through any type of means, media or activity intended for this purpose. To do so, it shall be authorized to supply and sell products, including bulk tobacco used by the various distributors' rollers, for promotional purposes. ------------------------------------------------------------------------

b.      Deposit and store products for distribution and marketing through the networks that it may create for itself, or through third parties.------------------------------------------------

c.      Establish, in Cuba or abroad, subsidiaries, branches or companies, or cake a holding in those that are already established, in any form allowed by law, with the appropriate prior authorizations. ------------------------------------------------------------------------------

d.      Issue and receive licenses for trademarks and other items of intellectual property.----

e.      To sign whatever contracts that might be necessary to achieve its corporate purposes.--------

**f.**      Undertake any legal activity that will further the corporate purpose, with the appropriate authorization. ------------------------------------------------------------------------

**TITLE II** ----------------------------------------------------------------------------------**--------**

**SHARE CAPITAL AND SHARES** ------------------------------------------------------------**--------**

**SECTION ONE**  ------------------------------------------------------**--------**-----------------------

**SHARE CAPITAL** ----------------------------------------------------------------**--------**

**Article 5.** - The CORPORATION's authorized capital stock shall be kept at

| Redacted |
|:--------:|

                          represented by two thousand (2,000) registered shares of a single class, indivisible and numbered consecutively, with

a nominal value of one thousand (1,000.00) United States dollars per share, representing one vote per share. ----------------------------------------------------------------------------------------

**SECTION TWO** --------------------------------------------------------------------------------

**SHARES** -----------------------------------------------------------------------------------------

**Article 6.** - The shares shall not pay interest. unless. after drawing up the balance sheet at the end of each fiscal year, the paid-in capital is entitled to profit participation as determined by the General Shareholders' Meeting. -----------------------------------------------------------------

**Article 7.** - The Share Capital may be increased or decreased by resolution of the General Shareholders' Meeting, with prior authorization from the appropriate Cuban government authority. -------------------------------------------------------------------------------------------

Capital reductions may be made by reducing the nominal value of the shares or by their amortization or grouping to be swapped. -----------------------------------------------------------------

The resolution providing for a capital reduction can be carried out only after settlement of the CORPORATION's outstanding debts and obligations as of the date on which said resolution was adopted by the General Shareholders' Meeting, unless the creditors' prior consent is obtained as provided for in Article 168 of the Commercial Code. -----------------------------------

Capital increases may be carried out by issuing new shares or raising the nominal value of the existing shares. --------------------------------------------------------------------------------------------

If an increase in the Capital Stock through the issuance of new shares is adopted, the partners shall have a pre-emptive right to acquire the new shares issued as a consequence thereof, in proportion to their current shareholdings. -----------------------------------------------------------------

The CORPORATION may increase the initial authorized capital by annually retaining a portion of the profits earned, to be reinvested in the CORPORATION. ----------------------------

Any corporate acts among those contemplated herein, or any transfer of shares, shall in all cases require prior authorization from the appropriate Cuban state authority in conformity with Law 77-95. --------------------------------------------------------------------------------------------

**Article 8.** - The shares shall be nominative and indivisible, and shall be represented by certificates which encompass the total number of shares included in each of them, signed by the Co-Presidents and the Secretary of the CORPORATION. Said certificates may be divided into as many as the number of shares

DRN-27

represented, or they may be united, at the holder's request. ----------------------------------------------

**Article 9.** - The CORPORATION shall keep a Share Registry, in which it shall record the holder's full name or corporate name, as the case may be, nationality and domicile, the share number, the successive voluntary or forced transfers of the shares, and the creation of property rights and other encumbrances in respect thereof. Only the person registered in said registry shall be recognized as a shareholder. --------------------------------------------------------------------------------

Any partner may examine said registry, which shall be kept under the care and responsibility of the Administrative Body. The partner and the holders of property rights or encumbrances over shares are entitled to obtain a certification of the shares, rights, or encumbrances registered in his/their name(s). --------------------------------------------------------------------------------------------

In the event of loss, theft, or destruction of a share or certificate, the holder registered in the Share Registry may request a duplicate. Said character shall be stated on the duplicate that is issued. -----------------------------------------------------------------------------------------------------

[seal]
[initials]

**Article 10.** - If the nominal value of a share is not totally disbursed, the partial amount paid shall be recorded on the reverse thereof or of the certificate and in the Share Registry; total payment of the share shall likewise be recorded when it is made. -------------------------------------------------

**SECTION THREE** ---------------------------------------------------------------------------------------

**SYSTEM FOR THE TRANSFER OF SHARES** -----------------------------------------------------

**Article 11.** - Without the unanimous consent of all the votes pertaining to the shares into which the share capital is divided, none of the shareholders may sell, exchange, or otherwise transfer, encumber, pledge, or in any manner assign any of their shares in the CORPORATION to any person, except if said transfer or encumbrance is made to a wholly owned subsidiary or to any other entity controlled by it through a majority of shares, equity holdings, or voting rights, or in any other manner that implies control by the company. --------------------------------------------------

Any sale or transfer of shares in violation of the foregoing provision shall be null and void.

**Article 12.** - If any of the shareholders wishes to sell, exchange, transfer, or otherwise assign, or to create any right over, any or all of their shares in the CORPORATION,

in favor of a company other than those stipulated as exceptions in Article 11, above, such shareholder must offer them to the rest of the shareholders, who shall have a pre-emptive right to acquire them at the same price and upon the same conditions within the 75 days subsequent to the date of receipt of an authentic written notification, upon the same terms and conditions as established by the selling shareholder, all the foregoing being subject to the pertinent government authorizations. Encumbrances or pledges of shares shall require the other party's acceptance. -------------------------------------------------------------------------------------------------

Whenever a share belongs jointly to several persons, they must designate the one who shall exercise the rights inherent in said share. Notwithstanding the foregoing, all the common holders of the share shall be jointly liable for any default on the partner's obligations to the company. ------------------------------------------------------------------------------------------------

In cases of usufruct of shares, partner status shall be vested in the holder thereof, but the beneficiary shall be entitled to share in the dividends declared by the company during the period of usufruct. ------------------------------------------------------------------------------------------------

The pledge creditor shall likewise exercise the partner's rights in cases of validly created pledges over shares in accordance with the provisions of these Bylaws. ---------------------------

**TITLE III -------------------------------------------------------------------------------------------------**

**MANAGEMENT AND ADMINISTRATION** ---------------------------------------------------------

**Article 13.** - Management of the CORPORATION shall be exercised through the General Shareholders' Meeting, with administration and representation by the Board of Directors, each within the scope of the powers granted to them by these Bylaws. ----------------

**SECTION ONE -------------------------------------------------------------------------------------**

**THE GENERAL SHAREHOLDERS' MEETING----------------------------------------------------**

**Article 14.** - The General Shareholders' Meeting is a meeting of all shareholders, convened to deliberate and decide on matters that appear on the agenda. It is the CORPORATION's highest organ. Its decisions must be complied by both the shareholders and the Board of Directors, provided such decisions do not contravene these Bylaws. -------------------------------

**Article 15.** - The General Shareholders' Meeting shall be held at the corporate domicile or at whatever location is decided by a majority of the shareholders. -------------------------

**Article 16.** – Shareholders' meetings may be ordinary or extraordinary. ------------------------

DRN-27

Ordinary meetings shall be held within the first six months of each year and shall be convened by the Secretary upon orders by the Co-Chairmen at least twenty-one days in advance of the date on which they are to be held. The call to meeting shall include an Agenda. At these meetings, the shareholders will approve the CORPORATION's balance sheet and income statement for the previous year, appoint auditors and approve the allocation of profits proposed by the Board of Directors. ------------------------------------------------------------------

**Article 17.** - Extraordinary General Shareholders' Meetings may be convened by both Co-Chairmen, at the request of shareholders representing at least twenty-five percent of the capital, or by either of the Co-Chairmen with advance notice of at least seven days. In any case, the call to meeting must state the reasons for the meeting and include an Agenda.--------

**Article 18.** - General Shareholders' Meetings shall be presided by the Co-Chairmen of the Board of Directors, who will be chosen by each of the Parties. The acting Secretary shall be the holder of that position on the Board. In the absence of a Secretary, the shareholders shall appoint someone to perform these duties during the meeting. --------------------------------------

[seal]
[initials]

**Article 19.** - Resolutions of the General Shareholders' Meetings shall be passed by a unanimous vote. The resolutions shall be recorded in writing in the minutes, which will then be transcribed into the Minutes Book kept by the Secretary. Resolutions shall be numbered consecutively for each year. ----------------------------------------------------------------------

**Article 20.** - Minutes of the General Shareholders' Meetings shall be transcribed into the Minutes Book kept by the Secretary. A duplicate copy of the Minutes shall include the list of shareholders present at the meeting, powers of attorney, proof of notification of call to meeting, copies of reports and accounting statements for the CORPORATION, and whatever other documents were submitted to the Meeting. --------------------------------------------------

All of the minutes of the General Shareholders' Meetings, as well as a statement of meetings that were not held due to a lack of quorum, shall be signed by the Co-Chairmen and the Secretary of the CORPORATION. ----------------------------------------------------------------

The minutes for each session shall be sent to the participants of the General Shareholders' Meeting within ten days of the corresponding session, for their approval.

Notwithstanding the above, all resolutions shall take effect on the date that they were passed.

**Article 21.** - Holders of shares can attend General Shareholders' Meetings on their own behalf or via representatives. If a representative should act on someone's behalf, he must prove his capacity as representative via written authorization for each session. -----------------------------

**Article 22.** - In order for the General Shareholders' Meeting, either ordinary or extraordinary, to deliberate validly, holders of shares representing one hundred percent of the capital, or their representatives, must be present. If the regulatory quorum is not present, then a second call to meeting will be sent out within six days after the date the original meeting was supposed to have been held, and the next meeting will be held within the following thirty days. If a quorum is not attained for a second time, then a third call to meeting will be sent out in the same manner as the second. If a quorum is not attained for a third time, then a fourth call to meeting will be sent out in the same manner as the previous ones. This fourth call to meeting shall be deemed to result in a validly constituted quorum, regardless of the number of shareholders present. --------------------------------------------------------------------------------------

In such a session, no resolutions shall be passed that contravene corporate or shareholder interests, nor those referred to in article 25, paragraphs a, b, c, j, k, 1, m, n, o, p, or q of these Bylaws. -------------------------------------------------------------------------------------------------

The fact that it was impossible to form a valid quorum for the General Meeting in the first three calls to meeting is not per se grounds for a deadlock of the CORPORATION. The General Shareholders' Meeting, ordinary or extraordinary, may be held without prior call to meeting if all of the shareholders agree to do so and unanimously accept the Agenda.   -

**Article 23.** - The year-end balance sheet, income statement, management's explanation and analysis, proposal by the Board of Directors for distribution of dividends to the shareholders and allocations to reserves, as well as any other documentation necessary to understand, clearly and exactly, the business trends and economic or financial status of the CORPORATION, shall be made available to the shareholders, their representatives, and inside or outside auditors, fifteen days before the date set in the call to meeting for the ordinary General Shareholders' Meeting. During this period

DRN-27

shareholders may request clarification or additional information from the Board of Directors.

**Article 24. -** In addition to shareholders, Co-Chairmen and the Secretary of the CORPORATION, the meeting may also be attended by other members of the Board of Directors, members of the Steering Committee and others, if they have been duly invited. The invitation must be in the form of the call to meeting to the meeting and must include the Agenda and a list of expected attendees. These guests, and the Secretary, shall have a voice, but no voting rights. -------------------------------------------------------------------------------

**Article 25.** - The General Shareholders' Meeting may: -------------------------------------------------

a. Approve amendments to the CORPORATION's Bylaws. ----------------------------

b. Acknowledge and approve capital increases or decreases of the CORPORATION, for subsequent approval by the corresponding government authorities. ----------------------------

[seal]
[initials]

c. Dissolve the corporation and declare it in liquidation pursuant to provisions established for this purpose. ----------------------------------------------------------------------

d. Examine and approve all accounts, the balance sheet submitted by the Board of Directors, the income statement and explanatory notes. --------------------------------------------------

e. Approve distribution of the CORPORATION's dividends as proposed by the Board of Directors after all of the company's obligations have been satisfied. -----------------------

f. Approve the CORPORATION's annual plan and budget, and any amendments or modifications necessary to achieve it, as proposed by the Board of Directors. ---------------

g. Appoint an accounting firm that will perform the audit. -------------------------------

h. Approve and establish a reserve fund in accordance with legislation in effect, as proposed by the Board of Directors. -----------------------------------------------------------------

i. Approve and establish an economic stimulation fund for Cuban workers and foreigners who are permanent residents and approve its distribution in each case, as proposed by the Board of Directors. ----------------------------------------------------------------------

j. Appoint or revoke the appointment of members of the Board of Directors, determining their number and remuneration. ---------------------------------------------------

k. Approve any incorporation or merger of the CORPORATION. -----------------

l. Open subsidiaries, branches or agencies in Cuba or abroad.   -------------------------------

m.  Approve the proposal to extend the life of the CORPORATION in accordance with legislation in effect and the Shareholders Agreement signed on February 4, 2000.   ------

n.   Approve any agreement on issuance of shares or with regard to shares.   --------------

o.   Approve the transfer of shares at the proposal of the Board of Directors.   --------------

p. Decide on any matter submitted for consideration by the Board of Directors.   ---------

q. Appoint a Secretary for the CORPORATION.   -----------------------------------------------

**Article 26.** - If resolutions passed at the General Shareholders' Meeting are such that they require approval of the Government or some other Republic of Cuba authority, then these shall remain pending until the necessary authorization has been obtained. The

meeting must clearly state when a resolution requires such confirmation.   ----------------

**SECTION TWO  ---------------------------------------------------------------------------------**

**BOARD OF DIRECTORS** ---------------------------------------------------------------------------

**Article 27.** - Management and representation of the CORPORATION shall be incumbent upon the Board of Directors, which shall be made up of eight members to be appointed equally by each of the partners. These [members] shall carry out their duties with the diligence of loyal representatives. They shall be responsible to the CORPORATION for damages caused by acts that contravene the Law, the Bylaws, the Framework Agreement of December 9, 1999, the Partnership Agreement of February 4, 2000, or acts that result from negligence. Anyone who expressly opposes a resolution that results in liability, or who did not participate in passing it, shall be exempt from liability.   ----------------------------------

Any individuals who have the capacity to act and are not prohibited from exercising public functions may be members of the Board. Members of the Board may also be juridical persons, in which case an individual must be appointed to represent it.   -------------------------------

The two Co-Chairmen are included in these eight members, with each of the Parties appointing one of the Co-Chairmen.   --------------------------------------------------------------

Members of the Board of Directors shall exercise their duties for an INDEFINITE PERIOD OF TIME, and may be relieved of their duties for any reason by the partner who appointed them. However, the corporation's Co-Chairmen and the

secretary must be duly informed of the fact. It must also be reported to the rest of the governing bodies and to anyone else involved. --------------------------------------------------------

Any member of the Board may authorize another member to represent him for any ordinary or extraordinary session, via letter, fax, e-mail or any other written document signed by the Board member to be represented. This document must state that he is aware of the Agenda and must declare that his representative may exercise his right to vote at this session. ----------------

The Secretary must be literate and may be a member of the Board of Directors or the Secretary of the General Shareholders' Meeting. The position of member of the administrative organ may be remunerated, with the General Shareholders' Meeting determining what to pay for various services, or to change these amounts at the Ordinary Meeting that approves the annual budgets. ---------------------------------------------------------------------------------------

Members of the Board may not carry out the same type of activity as stated in the corporate purpose, either on their own behalf or for third parties, unless expressly authorized to do so by the corporation in the form of a resolution from a General Shareholders' Meeting. --------------

[seal]
[initials]

**Article 28.** - Members of the Board of Directors may be relieved of or removed from their duties by the same shareholder who appointed them, with the approval of the General Shareholders Meeting. ---------------------------------------------------------------------------

The Board of Directors may also suspend any of its members from their duties, with just cause, with the approval of a majority of its members, and with effects to be determined, appointing a replacement on an interim basis, without prejudice to ratification by the General Shareholders' Meeting. ---------------------------------------------------------------------------

In the meeting that results in the dismissal, a replacement must be appointed pursuant to the provisions of these Bylaws. If there should be a vacancy on the Board as a result of a resignation, illness or death, and until the General Shareholders' Meeting shall appoint a replacement in accordance with the provisions of these Bylaws. ----------------------------------

**Article 29.** - The Board shall meet quarterly, or whenever deemed necessary by either of the Co-Chairmen. They must also convene a meeting whenever three or more members of their Board so request. ---------------------------------------------------------------------------------

Notices containing the Agenda may be served by any of the following methods: personal delivery, fax, burofax, certified letter with return receipt requested, by private

messenger with acknowledgment of receipt, or by telegram, at least seven days           in advance of the date of the meeting, with confirmation by the members or their alternates. ------ Meetings of the Board of Directors shall be validly constituted when all of the members or their representatives are present. Representation may be conferred via a written document signed by the Board member. ---------------------------------------------------------------------- The Board of Directors may meet without prior call to meeting if all of the members agree to do so and unanimously accept the Agenda. -------------------------------------------------------

**Article 30.** - Meetings of the Board shall be presided by one of the Co-Chairmen, or by his alternate. The meetings shall be in the same form as those of the General Shareholders' Meeting, with the Secretary, or his alternate, taking the minutes pursuant to these Bylaws. Every member of the Board of Directors shall have one vote. All decisions shall be passed with at least 51% of the members' votes, except in the case when some power of the Board is permanently delegated to the Co-Chairmen, in which case a vote by three fourths of the parties making up the Board shall be required. A written agreement (indicating unconditional approval) signed by all of the members shall be valid and effective as a resolution duly passed by the Board of Directors. The minutes for each session of the Board shall be drafted by the Secretary listing the resolutions in consecutive order for each fiscal year, which will then be duly transcribed into the Minutes Book kept for this purpose. The minutes shall be signed by the Secretary and bear the approval of the Co-Chairmen. It will circulate among the members of the Board of Directors in the ten days following issuance for their approval. Notwithstanding the above, resolutions shall take effect on the date they were passed. ---------

**Article 31.** - It is incumbent upon the Board of Directors to address all matters relative to the Corporation's business, commercial aspects and life in general. It shall facilitate these through its actions and contracts. The Board shall have all powers not expressly reserved for the General Shareholders' 1s4ceting by these Bylaws or by Law, and, in particular, the following:

a. To represent the CORPORATION in all matters and activities, legal acts and undertakings that are related to the sphere in which the CORPORATION

DRN-27

operates pursuant to its corporate purpose. It may bind the corporation with its acts and contracts, and represent it in any matters and acts of any type, including those involving various domestic and foreign governments, public corporations of all sorts, judges and courts, officials, individuals and corporations, public and private; in all instances and jurisdictions; exercising all types of actions, exceptions and remedies; it may also issue powers of attorney. --------------------------------------------------------------------------------------

b.      To submit an annual plan and budget to the General Shareholders' Meeting, and see that these are carried out. ------------------------------------------------------------------------------

c.      To approve the brands and types of products to be produced and marketed, as well as aspects related to this activity, at the proposal of the Co-Chairmen or any other member of the Board. ----------------------------------------------------------------------------------------------

d.      To constitute, modify in any way, extinguish and cancel all types of acts and contracts for the acquisition, alienation or encumbrance, purchase/sale, barter/exchange, transfers as payment or for payment, auctions, rights to recover, options, leases, including financial leases (albeit only a tease in this case), liens, mortgages, antichresis and other surety rights, real or personal, usufruct, easements, and other real rights limiting ownership, and to designate an authorized person to sign any of these. -----------------------------------------------

[seal]
[initials]

e.      To open, maintain, use and close bank accounts, including current, sight, savings, term, credit, and denominated accounts; take money in loans; sign receipts, collateral, reimbursements, orders and other banking documents; establish, modify or withdraw deposits; collect income on securities, all in freely-convertible funds to be determined by the General Shareholders' Meeting; designate persons to operate these, and; whatever else is set forth in Cuban Law in this regard. ------------------------------------------------------------------------------

f.      To release, discount, accept, endorse, collect, pay and protest bills of exchange and other trade documents; sign, modify and cancel contracts for the purchase of raw materials and merchandise, services, insurance, advertising, and transport; participate in public bids and auctions; enter into contracts directly with public or private corporations, presenting, improving or clarifying the proposals and bids;

participate in all such transactions and negotiations; establish and withdraw funds, securities or paper as appropriate, authorizing the corresponding payment letters; respond to the results of these bids or auctions and: in general, exercise all rights that are authorized to such parties by Law. ------------------------------------------------------------------------------------------ Guaranteeing third parties. --------------------------------------------------------------------

g. To manage all of the CORPORATION's assets, either by themselves or by a duly authorized individual or corporation that may be specifically appointed for a designated act.

h. To manage all aspects of the company including labor; hiring the necessary personnel for the CORPORATION from the Cuban Employment Corporation. Individual employment contracts for each employee will be signed by the Cuban Employment Corporation; appear either by themselves or through an appropriate professional representative to address any labor relationship matter.  ---------------------------------------------------------------------------

i.  To check whether the owners of subscribed shares have paid in the appropriate amounts at the appropriate times. ----------------------------------------------------------------------------------

j. To establish rules and regulations for the activities and organization of the CORPORATION and establish an accounting system that is most appropriate for this activity in accordance with generally accepted standards and tax requirements. ----------------------

k. To submit the financial statements, balance sheet, profit and loss statement, management's discussion and analysis, as well as any pertinent documents for consideration at the General Shareholders' Meeting at least thirty days in advance of the annual Ordinary General Shareholders' Meeting. ----------------------------------------------------------------------------------

l. At the annual ordinary General Shareholders' Meeting, to announce the amount of the profits, determine the amount of reserves considered appropriate in addition to those required by law, propose how to distribute these, and propose how to distribute the economic stimulation fund for Cuban workers and foreign permanent residents.  --------

m. To appoint members of the Steering Committee.  ------------------------------------------

**SECTION THREE**   **----------------------------------------------------------------------------**

**THE CO-CHAIRMEN**   ------------------------------------------------------------------------

**Article 32.** - The Co-Chairmen represent the highest level of the CORPORATION. Their mission is to supervise and to ensure that the corporate purpose is generally carried out by establishing programs and activities to achieve this goal.  -------------------------------------

DRN-27

They shall hold their positions for an indefinite period, although they may be relieved of these by each of the partners who appointed them. Their positions shall be remunerated, and it is incumbent upon the General Shareholders' Meeting to determine this remuneration in their Annual Budgets. -------------------------------------------------------------------------------------

The Co-Chairmen shall be subject to the same prohibition against competition as established for members of the Board of Directors. This means that they cannot, for themselves or for third parties, carry out the same type of activity as stated in the corporate purpose, without the express authorization of the corporation via a resolution from the General Shareholders' Meeting. ---------------------------------------------------------------------------------------------

Barring provisions contrary to these Bylaws, these functions shall always be exercised jointly, with action by either party requiring express, special, written authorization in advance from all of the members of the Board of Directors. The limits of any such authorization shall in no case be exceeded. -------------------------------------------------------------------------------------

The Co-Chairmen shall preside jointly at all General Shareholders' Meetings, Board of Directors' Meetings and Steering Committee Meetings, having, among other things, the following powers: ------------------------------------------------------------------------------------------

[seal]
[initials]

a.      To order the Secretary to convene the General Shareholders' Meeting establishing an Agenda for it, presiding at it and signing the minutes of both the General Shareholders' and Board of Directors' Meetings. ----------------------------------------------------

b.      To sign, along with the Secretary, the shares and share certificates. ----------------

c.      To act jointly, or individually in case of authorizations, to represent the CORPORATION before all types of individuals, corporations, entities, offices, courts, by undertaking whatever action is required.  ----------------------------------------------------

d.      To direct and supervise jointly or individually, as required, certain duties assigned to each of the members of the Board of Directors and Steering Committee. -------------

e.      To inspect all of the CORPORATION's assets and business, undertaking any acts, activities and actions that would be appropriate for a corporate representative, with all of the attributes necessary to direct and manage the CORPORATION. -------------

f. To sign, jointly or individually for an expressly specified power, all public and private contracts, public documents and any other documents necessary in order for the CORPORATION to carry out its activity as resolved by the General Shareholders' Meeting or the Board of Directors, pursuant to the powers conferred upon each of these organs.

g. To appoint advisors, labor commissions, and as many experts as deemed necessary to better carry out the purposes and activities of the Corporation. ----------------------------------------

h. To do anything assigned to them by the Board of Directors, with the descriptions in Article 31, paragraphs a, c, d, e, f, g, h, and j, being an illustrative, rather than restrictive list.  -----------------------------------------------------------------------------------------------------

To jointly grant powers of attorney within the sphere of their duties.   Article 33. - In case of the absence. illness or incapacity of one of the Co-Chairmen at a Shareholders' Meeting, Board of Directors' Meeting or meetings of the Steering Committee, they may be represented by alternates whom they shall appoint for this purpose from other members of the Board of Directors, who will perform their duties and sign the corresponding minutes in their stead.

**SECTION FOUR**  ------------------------------------------------------------------------------------

**STEERING COMMITTEE**  ----------------------------------------------------------------------

**Article 34.** - The CORPORATION shall have a Steering Committee to direct its daily activity. It shall be comprised of persons in charge of the management areas designated by the Board.

**Article 35.** - The persons in charge of the various management areas shall be appointed at the proposal of the Co-Chairmen so that both the_ positions assumed and the importance of each shall fulfill the principle of equity among shareholders.  ---------------

The Co-Chairmen shall establish internal rules for the Steering Committee. These rules will set forth responsibilities; procedures regarding meetings and attendance; the system for reaching and implementing resolutions; a list of members and any other matters that are deemed appropriate.-------------------------------------------------------------------------------

The Co-Chairmen and Secretary of the Board of Directors shall be Chairmen and Secretary, respectively, of the Steering Committee.  ------------------------------------------

**Article 36.** - The Steering Committee must meet on an ordinary basis at least every fifteen days, and on an extraordinary basis at any time,

as determined by the Co-Chairman.   --------------------------------------------------------------

**Article 37.** - Each of the members of the Steering Committee shall have a vote and all of the decisions shall be passed with at least 51% of the members' votes.   ------------------

**Article 38.** - Resolutions from all of the Board of Directors' Meetings shall be collected into minutes prepared by the CORPORATION's Secretary, and numbered consecutively for each fiscal year.   ------------------------------------------------------------------------------------------

**SECTION FIVE**   ----------------------------------------------------------------------------------

**THE SECRETARY**   -------------------------------------------------------------------------------

**Article 39.** - The position of Secretary shall have the following powers:   ------------------

a.   To keep the files and Minutes Books for all of the CORPORATION's organs, General Shareholders' Meeting, Board of Directors, Steering Committee and Share Registration Book.

b.   To issue certificates on the basis of the books and documents in its custody and care. --

c.   To edit the minutes of all of the CORPORATION's organs, ex-officio members and circulate these within a determined time period.   -----------------------------------------------

d.   To sign the shares, certificates and minutes of the General Shareholders' Meeting, those of the Board of Directors and Steering Committee, jointly with the Co-Chairman. ------

e.   To record resolutions from General Shareholders' Meetings, in the corresponding Registers, if required, and ensure that these resolutions are carried out.   --------------------

f.   To record the shareholders of record and any transfer of shares, when authorized, along with any limitation and obligations on these shares, into the Share Registry.

g.   To advise the CORPORATION on legal implications of all matters referred to him by the Co-Chairmen.   ---------------------------------------------------------------------------------

h.        Any other task assigned by the Board of Directors and/or the Co-Chairmen.

**TITLE IV**   -----------------------------------------------------------------------------------------

**SECTION ONE**   ----------------------------------------------------------------------------------

**FISCAL YEAR**   -----------------------------------------------------------------------------------

**Article 40.** - The fiscal year shall commence on the first day of January and terminate on the thirty first day of December of each year. The first fiscal year shall encompass the period from the date of registration of these Bylaws in the appropriate Registry to the thirty

[seal]
[initials]

first day of December of the same year, unless the registration is made within the three months prior to the thirty first day of December, in which case the CORPORATION'S first fiscal year shall run up to the thirty first day of December of the following year. --------

**SECTION TWO** ---------------------------------------------------------------------------------
**BALANCE SHEET AND PROFITS** -----------------------------------------------------------

**Article 41.** - The Board of Directors is required to prepare, within the established time period, a balance sheet as of year end, an income statement, management's discussion and analysis of these, a proposal for the distribution of profits among the shareholders and proposed reserves. The yearly statements shall be audited by an international auditing firm appointed by the General Shareholders' Meeting. All of this must be in compliance with legislation established for these purposes. --------------------------------------------------------------------------------

These documents must be prepared with clarity and precision, showing a true picture of the CORPORATION's equity, financial status and results. ------------------------------------

**Article 42.** - Profit available for distribution shall be whatever remains of total revenue after deducting, taxes, expenses, amortization, reserves (both legal and those that the General Shareholders' Meeting has voluntarily decided to fund), and other obligations pursuant to legislation in effect in the Republic of Cuba. ------------------------------------------------

**Article 43.** - Dividends shall be distributed on a pro rata basis to the number of shares held in the CORPORATION; however, if a shareholder has not met any part of his commitment with regard to capital contributions, then the distribution of dividends will be on the basis of capital actually contributed. --------------------------------------------------------------------------------

The General Shareholders' Meeting shall determine when and how to pay dividends in conformity with the recommendations of the Board of Directors. If there is no determination on these matters, the dividend shall be payable within thirty days following the date of the corresponding resolution passed by an ordinary session of the General Shareholders' Meeting.

**SECTION THREE** ------------------------------------------------------------------------------------

**DISSOLUTION, LIQUIDATION OF THE CORPORATION** --------------------------

**Article 44.** – The CORPORATION shall be dissolved for the following causes, in addition to those prescribed by Law: --------------------------------------------------------------------------------

a. For expiration of the CORPORATION's term of existence and its extensions, by unanimous shareholders resolution. ------------------------------------------------------------------

b. Because achievement of the corporate purpose is made impossible due to causes internal or external to the CORPORATION. ---------------------------------------------------------------

c. By resolution of the partners. -------------------------------------------------------------------------

d. Due to a total loss of the Share Capital of the Corporation. ---------------------------------

e. For bankruptcy. ------------------------------------------------------------------------------------------

f. For application of Article 2.5 of the Framework Agreement signed on December 9, 1999.

**Article 45.** –

[seal]
[initials]

**Redacted**



-------------------------------------------------------------------------------

**Article 46.** –

-------------------------------------------------------------------------------

**Article 47.** – When the liquidation of the CORPORATION commences, the Board of Directors shall cease to function as of that time. The General Shareholders Meeting shall appoint three liquidators, one named by each partner and the third to be chosen by the latter two, and shall stipulate the term during which the liquidation activities are to be completed. If no agreement is reached for the third liquidator's appointment, he shall be chosen by ballot from a list of four liquidators, two of whom shall be proposed by each party. If the shareholders' disagreement refers to the term for liquidation, the agreement reached by a majority of the liquidators shall be applicable. --------------------------------------------------------

**Article 48.** – The liquidators are the CORPORATION's representatives and administrators, and their performance must be aimed at collecting sums due and payable at the time the dissolution is declared and those which fall due thereafter, settling the obligations pending at the time the liquidation is resolved or thereafter, and, in general, concluding all pending operations. -----------------------------------------------------------------------------------------

In addition, pursuant to the provisions of the Commercial Code, they shall: --------------------

a. Submit to the General Shareholders Meeting, within forty- five days, the

inventory of corporate assets, together with the initial balance sheet for the CORPORATION's accounts. --------------------------------------------------------------------------

b. Submit to the General Shareholders Meeting monthly detailed itemized reports on the status of the liquidation. --------------------------------------------------------------------------------

c. Submit to the General Shareholders Meeting upon the conclusion of the liquidation the final balance sheet in which the capital divisible by shares is specified. ------------------------

**Article 49.** – The liquidators shall conduct the liquidation of the corporate assets among the shareholders. ------------------------------------------------------------------------------------------

The goods shall be valued in terms of their international market value at the time. ------------

The liquidators shall call a General Shareholders Meeting for distribution of the corporate assets. --------------------------------------------------------------------------------------------------

**SECTION FOUR** ----------------------------------------------------------------------------------------

**CONFLICT RESOLUTION AND ARBITRATION** -------------------------------------------

[seal]
[initials]

**Article 50.** – The CORPORATION shall be governed by the laws of the Republic of Cuba and, in the event of conflict, shall submit to the jurisdiction of the International Chamber of Commerce of Paris, Geneva or Panama, to be chosen by resolution of the General Meeting, or by ballot if there is no agreement. Depending on the foregoing election, the arbitration shall be conducted in Paris, Geneva or Panama City, and in the Spanish language. In any event, such arbitration must be conducted in a country that has ratified the New York Convention on the Recognition of and Enforcement of Foreign Arbitral Awards. ------------

The arbitration shall be conducted by 3 arbitrators. The party commencing the arbitration (the claimant) shall appoint its arbitrator in its request for arbitration (the REQUEST). The other party (the RESPONDENT) shall appoint its arbitrator within 30 days of receipt of the REQUEST and shall notify the claimant of said appointment in writing. If the RESPONDENT does not appoint an arbitrator within the 30-day term, said arbitrator shall be appointed pursuant to the regulations of the selected Chamber of Commerce. The 2 arbitrators appointed by the parties shall appoint a third arbitrator within the 30 days after the respondent has notified the claimant of the appointment of the RESPONDENT's arbitrator. When the arbitrators appointed by the claimant and the respondent have appointed a third arbitrator and the latter has accepted the appointment, the two arbitrators shall immediately notify the parties of said appointment. If the two arbitrators appointed by the parties do not appoint the third, the applicable Chamber of Commerce shall appoint him and

shall immediately notify the parties thereof. The third arbitrator shall act as the chair of the panel. -------------------------------------------------------------------------------------------------

The arbitral award shall be in writing and shall not be subject to appeal; it shall be binding on the parties. It shall be enforced as prescribed in the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The costs and expenses shall be borne as is stipulated in the arbitral award. An order of enforcement of the arbitral award may be entered in any Court having jurisdiction over the matter, the parties or their property.

**FINAL PROVISIONS** --------------------------------------------------------------------------------

**Article 52**. – These Bylaws are part of the Partnership Agreement signed by Cubatabaco and ALTADIS S.A., and repeal those signed on September 14, 1994. -------------------------------

**Article 53.** – These Bylaws have been approved by the shareholders in the City of Havana, Republic of Cuba, on February 4, 2000. -----------------------------------------------------------

**FOUR**: The parties agree to designate the persons who shall direct and administer the Joint Venture at the first meeting to be held by the General Shareholders Meeting. -----------------

**IT IS THUS STATED AND EXECUTED** by the persons appearing before me, to whom I gave the warnings prescribed by law and regulations appropriate to this act, and, in particular, the one regarding the requirement to register this instrument with the Registries established in the legislation currently in force. -------------------------------------------------------

THIS INSTRUMENT WAS READ IN FULL, in a single act, by me the Notary to the executors, who being satisfied with its content, ratify and sign it. -------------------------------

IN WITNESS WHEREOF and of the identity of the persons appearing, having verified their identification by their statements I, the Notary, HEREBY CERTIFY AND ATTEST. ------

SIGNED: JUAN MANUEL DIAZ TENORIO, ANTONIO VAZQUEZ ROMERO, NOTARY NURY EVARISTA PEÑA TABOADA. NOTARY PUBLIC. ---------------------

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK       )
                        )        ss
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of **Habanos statutes.pdf**, completed on 1/21/2010, originally written in Spanish.

_Yasmin Menon_
Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

_Karen Olive_
Notary Public

KAREN OLIVE
Notary Public, State of New York
No. 01OL6146423
Qualified in Queens County
Commission Expires May 15, 2010



DRN-27

NUMERO:------------------165 ------------------
-MODIFICACIÓN DE ESCRITURA SOCIAL SOBRE CONVERSION
DE SOCIEDAD ANONIMA DE CAPITAL CUBANO EN EMPRESA
MIXTA---------------------------------------------
En la Ciudad de la Habana, a 4 de febrero del año
2000.--------------------------------------- --------
----------------------ANTE MI ---------------------
LICENCIADA NURY EVARISTA PEÑA TABOADA, Notaria con
competencia nacional, y sede en la Notaria Espe-
cial del Ministerio de Justicia de la República de
Cuba. ---------------------------------------------



--------------------COMPARECEN --------------------
JUAN MANUEL DIAZ TENORIO, natural de Madrid,
España, ciudadano cubano, mayor de edad, casado,
Director, vecino de Edificio número 12, aparta-
mento 807, Reparto Camilo Cienfuegos, Habana del
Este, Ciudad de La Habana, con Identidad Perma-
nente 42032208642. ------------------------------
ANTONIO VAZQUEZ ROMERO, natural de Córdoba, Espa-
ña, ciudadano español, mayor de edad, casado,
economista domiciliado en la calle Velázquez,
número 16, Madrid, España, con pasaporte número
30069611-D,con permiso de estancia en territorio
nacional hasta el 25 de abril del año en curso .
------------------CONCURREN --------------------
El señor JUAN MANUEL DIAZ TENORIO a nombre y en
representación de la Empresa Cubana del Tabaco,
abreviadamente CUBATABACO, creada por la Ley 1191
del 25 de abril de 1966,y ratificada por Resolu-
ción número 300 de fecha 30 de diciembre de 1993
del Ministerio del Comercio Exterior, inscripta
en la cámara de Comercio de la República de Cuba
en cálida Importadora y exportadora al Tomo II,
folio 0031, expediente 26, y tiene su domicilio



legal en calle O'Reilly número 104, Habana Vieja,
Ciudad de La Habana, en su carácter de Director
de la misma, nombrado por Resolución número 561
de fecha 11 de diciembre de 1995, dictada por el
Ministerio del Comercio Exterior, con plena fa-
cultades para este acto, lo que acredita con
Resoluciones que he tenido a la vista. ----------
Y el señor ANTONIO VAZQUEZ ROMERO, a nombre y en
representación de la sociedad de nacionalidad
española denominada ALTADIS S.A anteriormente
denominada Tabacalera S.A constituida en virtud
de la escritura número 304 de fecha 5 de marzo de
1945, autorizada por el Notario de Madrid, España
Don Luis Ávila, y adaptados sus Estatutos median-
te Escritura autorizada por el también Notario de
Madrid, Don Ignacio Solís Villa, en fecha 22 de
noviembre de 1990, bajo el número 1581 de su
protocolo, con domicilio legal en calle Eloy
Gonzalo, número 10, Madrid, España, inscripta en

DRN-27

el Registro Mercantil de ese país en el Tomo 655,
Folio 1, hoja M-13.631, inscripción 138 de fecha
18 de enero de 1991, con posterior inscripción
referente a cambio de denominación y modificación
de Estatutos, número 221 de fecha 22 de diciembre
de 1999,en su carácter de apoderado, haciendo uso
del Poder otorgado por la Sociedad, a los 28 días
del mes de enero del año en curso por Carlos
Rives Gracia,   Notario Ilustre del Colegio de
Madrid, bajo el número 324 de sus documentos
Notariales, particulares que acredita con una
copia del Acta de Protocolización con el número
protocolario  que antecede a este documento,
autorizada en el día de hoy ante esta propia
fedataria. -------------------------------------
Declarando  los comparecientes que las facultades
que ostentan no le han sido revocadas, suspensas
ni limitadas por ninguna de las causales previs-
tas en la Ley. ---------------------------------
**ASEGURAN HALLARSE** en el pleno goce y ejercicio de
sus derechos civiles y tienen a mi juicio, la
capacidad legal necesaria para este otorgamiento
sin que nada me conste en contrario y **DICEN:**- ----
**PRIMERA:** Que en su carácter de unicos accionistas
de la Sociedad Mercantil cubana **Corporación
Habanos,s.a (Habanos s.a.)**, constituida el 14 de
septiembre de 1994 mediante escritura autorizada
por la Notaria Licenciada Lourdes Lucia Díaz
Canel Navarro al número 2568 de su Protocolo en
esta propia Notaría, fue inscrita en el   Libro
135, Folio 162, Hoja 4906 Sección Primera del
Registro Central de Compañías y al Libro 1188,
Folio 99, Hoja 16739, del Registro Mercantil de
la Habana, con un capital social autorizado de
REDACTED   , representado por DOS
MIL acciones de un valor de
REDACTED   cada
acción, de las que están emitidas DOSCIENTAS
acciones, CIEN (de la 101 a la 200) suscritas y
desembolsadas por la Empresa Cubana del Tabaco y
otras CIEN ( de la 1 a la 100) suscritas y
desembolsadas por la Sociedad Mercantil ALTADIS
S.A, lo que acreditan con los siguientes
documentos: -----------------------------------
-Acuerdo Marco de Asociación suscrito en fecha 9
de diciembre de 1999,  de una parte la Sociedad
Mercantil Corporación Habanos, y otras Sociedades
titulares de participaciones en sociedades
exteriores vinculadas a la misma, la Empresa de
Tabaco Torcido El Laguito  y de otra parte la
Sociedad española ALTADIS S.A. ------------------

2

DRN-27

-Acuerdo   número   3617   del   Comité   Ejecutivo   del
Consejo   de   Ministros   de   fecha   24   de   diciembre   de
1999, --------------------------------------------
-Contrato de Compraventa de Acciones efectuado en
Ciudad de La Habana, el día 25 de diciembre de
1999,   a   favor   de   la   Empresa   Cubana   del
Tabaco(Cubatabaco),   Protocolizado   ante   esta
propia fedataria en fecha 28 de diciembre de
1999,   bajo   el   número   1831   del   Protocolo   a   su
cargo. ------------------------------------------
- Contrato de Compraventa de Acciones suscrito
por la Empresa  de Tabaco Torcido El Laguito, y
la Sociedad mercantil de nacionalidad española
ALTADIS S.A  actuando como garante CUBATABACO,a
los 4 días de los corrientes. --------------------
Documentos que dejo anexados a final de esta
escritura para que formen parte integrante de la
misma. ------------------------------------------

**SEGUNDA:** Que en   virtud de la correspondiente
autorización Gubernamental Acuerdo   del Comité
Ejecutivo del Consejo de Ministros referido ante-
riormente, y al amparo de lo establecido en la
Ley número 77 de 5 de septiembre de 1995, Ley de
la Inversión Extranjera, así como del Código de
Comercio vigente en Cuba y de las demás disposi-
ciones legales que le sean de aplicación, vienen
por la presente escritura de **Modificación de
Escritura social sobre conversión de Sociedad
Anónima de capital cubano en Empresa Mixta**, a
materializar dicha conversión manteniendo su forma
de   Sociedad   anónima   bajo   su   denominación
**CORPORACION HABANOS S.A** que se regirá por sus
**Estatutos**, y en lo no previsto en ellos por el
Convenio de Asociación firmado por las partes en
esta propia fecha, por el acuerdo marco del 9 de
diciembre de 1999, por las mencionadas normas
jurídicas, las demás regulaciones complementarias
a las mismas,  y los Acuerdos Internacionales que
suscriban y ratifiquen Cuba y España. -----------

**TERCERA:** Que los comparecientes me entregan a mi,
la Notaria, con el objetivo de que formen parte
de esta escritura, los **Estatutos**  por los que se
regirá la **Empresa Mixta, CORPORACION HABANOS S.A**
en los que se expresan las circunstancias exigi-
das en el Artículo 151 del Código de Comercio y
en la Resolución número 26, Artículo 12 del Pre-
sidente de la Cámara de Comercio de la República
de Cuba, los que yo, la Notaria, procedo a dejar
unidos a la matriz de este instrumento, y que
**DICEN:** ----------------------------------------



3

DRN-27

--------------------ESTATUTOS --------------------
TITULO I. ----------------------------------------
DENOMINACION, OBJETO, DOMICILIO Y DURACION ------
**Artículo 1.** - Con igual denominación, Corporación Habanos S.A. (Habanos S.A.) se transforma en empresa mixta, bajo la forma de Sociedad Anónima por acciones nominativas, que se rige por las disposiciones de la Ley número 77, Ley de Inversión Extranjera de cinco de septiembre de mil novecientos noventa y cinco, su legislación complementaria y demás normas que actualmente o en el futuro le resulten de aplicación, así como por el Convenio de Asociación suscrito por sus accionistas con fecha 4 de febrero del 2000, los presentes Estatutos y el Acuerdo Marco de Asociación de fecha 9 de diciembre de 1999 y el Acuerdo del Comité Ejecutivo del Consejo de Ministros de la República de Cuba que autoriza su conversión. ---
**Artículo 2.** - Corporación Habanos S.A. (Habanos S.A.), en lo adelante LA SOCIEDAD, tiene nacionalidad cubana y su domicilio se mantiene en Mercaderes número 21, La Habana Vieja, Ciudad de La Habana, y por acuerdo de la Junta General de Accionistas podrá trasladarse a otro local de esta ciudad o del territorio nacional y crear oficinas, representaciones, sucursales y filiales, tanto en Cuba como en el extranjero, así como tomar participación en entidades constituidas en el extranjero. -----------------------
**Artículo 3.** -

REDACTED

-----------------------------
La sociedad dará comienzo a sus actividades como empresa mixta a partir del día de su inscripción en el Registro de la Cámara de Comercio de la República de Cuba. -----------------------------
**Artículo 4.** - LA SOCIEDAD, tiene como objeto social la exclusiva para la compra, venta y comercialización internacional de todas las producciones de los tabacos torcidos de origen cubano, en cualesquiera de sus formatos y tipos

4

DRN-27

de manufactura, incluyendo los de menor de 3 gramos, picadura, y la venta mayorista en el mercado interno en divisas de Cuba. La exclusiva otorgada no se opondrá a aquellas autorizaciones dadas por acuerdos adoptados con anterioridad. --

LA SOCIEDAD tendrá igualmente la exclusiva para la exportación del tabaco en rama cubano de cualquier clase producida en Cuba. --------------

En consecuencia LA SOCIEDAD tendrá la exclusiva para la creación de nuevas marcas y nombres comerciales que identifiquen torcidos cubanos, en Cuba y fuera de Cuba, entendiéndose que deberán ser creadas únicamente en provecho y beneficio de LA SOCIEDAD. ------------------------------------

Así mismo, LA SOCIEDAD podrá comercializar en Cuba y en el extranjero, cualesquiera otros productos vinculados al marketing de los antes mencionados y a las marcas tabacaleras cubanas; y para ello podrá: ------------------------------

a. Promover y publicitar la comercialización de los productos, en Cuba y en el extranjero, mediante cualquier tipo de soporte, medio o actividad destinada a tales fines, para lo cual estará facultada para suministrar y vender productos promocionales, incluyendo el tabaco en rama que utilizan los torcedores de los diferentes distribuidores con fines promocionales. ---------------

b. Depositar y almacenar los productos para su distribución y comercialización a través de redes propias que pueda crear o de terceros. ----------

c. Constituir en Cuba o en el extranjero, filiales, sucursales o empresas o, participar en otras ya constituidas, bajo cualquier forma legal prevista en derecho y previas las autorizaciones pertinentes. ------------------------------------

d. Otorgar y recibir licencias de marcas y de otras figuras de la propiedad intelectual. ------

e. Suscribir cuantos contratos sean necesarios para la ejecución de su objeto social. ----------

f. Llevar a cabo cualquier actividad lícita relativa a la consecución de su objeto social, con la correspondiente autorización, de resultar necesario.-- --------------------------------------

**TITULO II** -------------------------------------

**CAPITAL SOCIAL Y ACCIONES** ----------------------

**SECCION PRIMERA** ----------------------------------

DEL CAPITAL SOCIAL ------------------------------

**Artículo 5.-** El Capital Social autorizado de LA SOCIEDAD se mantiene en REDACTED por dos mil acciones (2,000) acciones nominativas de una sola clase, indivisibles y numeradas correlativamente, con un

5

DRN-27

valor nominal de mil (1,000.00) dólares de los
Estados Unidos de América cada una, representando
un voto cada acción. ----------------------------

**SECCION SEGUNDA** ------------------------------

DE LAS ACCIONES ------------------------------

**Artículo 6.-** Las acciones no devengarán intere-
ses, sino que les corresponderán la participación
en las utilidades que fije la Junta General de
Accionistas, después del balance general que se
practicará a la terminación de cada año social y
en correspondencia con el capital liberado y
pagado por los accionistas. ----------------------

**Artículo 7.** - El Capital Social podrá ser aumen-
tado o disminuido mediante acuerdo de la Junta
General de Accionistas, previa autorización de
la autoridad estatal cubana correspondiente. ----
La reducción de Capital puede realizarse redu-
ciendo el valor nominal de las acciones, o bien
mediante su amortización o agrupación para can-
jearlas. -----------------------------------------
El acuerdo sobre reducción de capital sólo puede
ejecutarse previa la liquidación de las deudas y
de las obligaciones pendientes de LA SOCIEDAD en
la fecha que se adoptó el acuerdo por la Junta
General de Accionistas, salvo que se obtenga el
consentimiento previo de los acreedores, de
acuerdo con lo establecido en el artículo 168 del
Código de Comercio. ------------------------------
El aumento del capital social podrá realizarse
por emisión de nuevas acciones o por elevación
del valor nominal de las ya existentes. --------
En el caso que se acuerde un aumento del Capital
Social mediante emisión de nuevas acciones, los
socios tienen derecho de adquisición preferente,
en proporción al número de sus acciones, sobre
las nuevas acciones que como consecuencia de ello
se emitan. ---------------------------------------
LA SOCIEDAD podrá incrementar el capital inicial
autorizado, reteniendo anualmente una parte de
las utilidades obtenidas para reinvertirlas en LA
SOCIEDAD. ----------------------------------------
Cualesquiera actos societarios de los aquí con-
templados o transmisión de acciones, requerirán
en todo caso, la previa autorización de la auto-
ridad estatal cubana correspondiente, de confor-
midad con la Ley 77-95. --------------------------

**Artículo 8.** - Las acciones serán nominativas e
indivisibles y estarán representadas por certifi-
cados que comprenderán el total de cada una de
ellas, firmados por los Co-Presidentes y el Se-
cretario de LA SOCIEDAD, pudiendo dichos certifi-
cados, ser divididos en tantos como acciones

6

CRN-27

representen o refundidos a voluntad de su titu-
lar. ----------------------------------------------

**Artículo 9**. - LA SOCIEDAD llevará un Libro Regis-
tro de Acciones, en el que se anotará el nombre y
apellidos del titular o razón social según el
caso, nacionalidad y domicilio de los titulares,
el número de la acción, las sucesivas transmisio-
nes, voluntarias o forzosas, de las acciones, así
como la constitución de derechos reales y otros
gravámenes sobre las mismas. Solo se reputará
como accionista a quien se halle inscrito en
dicho libro. ------------------------------------

Cualquier socio podrá examinar este libro regis-
tro que estará bajo el cuidado y responsabilidad
del Organo de Administración. El socio y los
titulares de derechos reales o de gravámenes
sobre las acciones, tienen derecho a obtener una
certificación de las acciones, derechos o gravá-
menes registrados a su nombre. ------------------

En caso de extravio, robo o destrucción de la
acción o certificado, el titular inscrito en el
Libro Registro de Acciones podrá solicitar un
duplicado. En el duplicado que se expida se hará
constar tal carácter. ---------------------------

**Artículo 10**. - Si el valor nominal de la acción
no estuviese totalmente desembolsado, se hará
constar el importe parcial pagado en el reverso
de la misma o del certificado y en el Libro Re-
gistro de Acciones; así mismo, se hará constar el
pago total de la acción cuando éste se ejecute. -

**SECCION TERCERA** ----------------------------------

RÉGIMEN DE TRANSMISIÓN DE ACCIONES --------------

**Artículo 11**. - Sin el consentimiento unánime de
la totalidad de los votos correspondientes a las
acciones en que se divide el capital social,
ninguno de los accionistas puede enajenar, permu-
tar, o de otra forma transferir, gravar, pignorar
o en cualquier forma ceder cualquiera de sus
acciones de LA SOCIEDAD a ninguna persona, excep-
to si dicha transmisión o gravamen se realiza a
favor de una subsidiaria totalmente participada o
a cualquier otra entidad  en que  ostenten el
control de la compañía por mayoría de acciones,
de participaciones o de derechos de voto, o de
cualquier otra forma que implique el control de
la compañía. ------------------------------------

Cualquier venta o transmisión de acciones en
violación de  lo anteriormente dispuesto será
nula y sin validez alguna. ----------------------

**Artículo 12**. -Si cualquiera de los accionistas
deseara enajenar, permutar, transferir o de otra
forma ceder o constituir cualquier derecho sobre
cualquiera o todas sus acciones de LA SOCIEDAD, a

7

favor de sociedad distinta de las exceptuadas en
el artículo 11 anterior, deberá ofrecerlas al
resto de los accionistas que tendrán el derecho
preferente de adquirirlas al mismo precio y con-
diciones dentro del término de 75 días desde la
fecha de la recepción de una notificación feha-
ciente por escrito en los mismos términos y con-
diciones establecidos por el accionista vendedor,
todo ello sujeto a las autorizaciones gubernamen-
tales pertinentes. En cuanto al gravamen o pigno-
ración de las acciones, se requerirá la acepta-
ción de la otra parte. --------------------------

Siempre que una acción pertenezca proindiviso a
varias personas, éstas habrán de designar la que
haya de ejercer los derechos inherentes a esta
acción. Esto no obstante, del incumplimiento de
las obligaciones del socio con la sociedad, res-
ponderán solidariamente todos los comuneros. ----

En caso de usufructo de acciones, la cualidad de
socio residirá en el titular, pero el usufructua-
rio tendrá derecho a participar en los dividendos
acordados por la sociedad durante el periodo del
usufructo. --------------------------------------

Asimismo, corresponderá al acreedor pignoraticio
el ejercicio de los derechos de socio, en el
supuesto de prenda sobre acciones válidamente
constituida conforme a lo dispuesto en estos
Estatutos. --------------------------------------

**TITULO III** ------------------------------------

GOBIERNO Y ADMINISTRACION -----------------------

**Artículo 13.** - El gobierno de LA SOCIEDAD será
ejercido por la Junta General de Accionistas, y
la administración y representación por el Conse-
jo de Administración, cada uno dentro del alcance
de las atribuciones que por los presentes Estatu-
tos se les confiere. ----------------------------

**SECCION PRIMERA** ------------------------------

**DE LA JUNTA GENERAL DE ACCIONISTAS** -------------

**Artículo 14.** - La Junta General de Accionistas es
la reunión de los titulares de las acciones que
han sido convocados para deliberar y decidir
sobre los asuntos que figuran en el orden del
día. Es el órgano supremo de LA SOCIEDAD y sus
decisiones son de obligatorio cumplimiento para
los accionistas y el Consejo de Administración en
tanto y en cuanto los mismos no violen los pre-
sentes Estatutos. -------------------------------

**Artículo 15.** - La Junta General de Accionistas se
celebrará en el domicilio social o en el lugar
en el que, por mayoría de votos, decidan los
titulares de las acciones. ----------------------

**Artículo 16.** - Las sesiones de la Junta General
de Accionistas pueden ser ordinarias y extraordi-

*8*

narias. Las ordinarias se celebrarán dentro de
los seis primeros meses de cada año y se convoca-
rán por el Secretario por orden de los Co-
Presidentes con veintiún días naturales de ante-
lación a la fecha en que deberá efectuarse. A la
convocatoria se adjuntará al Orden del Día. En
estas sesiones aprobará el balance de situación y
el estado de pérdidas y ganancias de LA SOCIEDAD
correspondiente al año precedente, se nombrará a
los Auditores y aprobará  la distribución de
utilidades propuesta por el Consejo de Adminis-
tración. ---------------------------------------

**Artículo 17.** - Las sesiones extraordinarias de la
Junta General de Accionistas pueden ser convoca-
das por los Co-Presidentes o a solicitud de los
titulares de las acciones que representen  más
del veinticinco por ciento del capital social, o
por cualquiera  de sus Co-Presidentes con siete
días  de antelación a la fecha en que debe cele-
brarse. En todos los casos se expondrá en la
convocatoria las causas y el orden del día. ----

**Artículo 18.** - Las Juntas Generales de Accionis-
tas serán presididas por los Co-Presidentes del
Consejo de Administración, los que serán elegidos
por cada una de las Partes, actuando como Secre-
tario quien ocupe ese cargo. En ausencia del
Secretario los accionistas designarán la persona
que desempeñará esas funciones durante la sesión.

**Artículo 19.** - Los acuerdos de la Junta General
de Accionistas se adoptarán por unanimidad de
votos y se recogerán por escrito en acta que se
transcribirá en el Libro de Registro de Actas que
debe llevar el Secretario. Los acuerdos se nume-
rarán consecutivamente cada año. ---------------

**Artículo 20.** - Las actas de las sesiones de la
Junta General de Accionistas serán transcritas al
Libro Registro de Actas que será llevado por el
Secretario, junto con un ejemplar duplicado del
Acta, de la lista de accionistas que asistieron a
la asamblea, los poderes, constancias de las
notificaciones de la convocatoria, copias de los
informes y estados contables de LA SOCIEDAD y
cualesquiera otros documentos que hubieren some-
tido a la Junta. ------------------------------

Todas las actas de la Junta General de Accionis-
tas, así como una constancia de aquellas que no
se hubieren celebrado por falta de quórum, serán
firmadas por los Co-Presidentes y el Secretario
de LA SOCIEDAD. -------------------------------

El acta de cada sesión se circulará entre los
miembros de la Junta General de Accionistas den-
tro de los diez días siguientes a la celebración
de la sesión correspondiente para su aprobación;



9

no obstante, los acuerdos tienen vigencia desde la fecha de su adopción. ------------------------

**Artículo 21.** - Los titulares de las acciones pueden asistir a las reuniones de la Junta General de Accionistas por sí o mediante representantes. En el caso que actúe un representante, éste debe acreditar su carácter de representante mediante autorización escrita para cada sesión. ---

**Artículo 22.** - Para que la Junta General de Accionistas ordinaria o extraordinaria se encuentre válidamente constituida, deben estar presentes los tenedores de las acciones que representen el cien por cien del capital social, o sus representantes. De no existir el quórum reglamentario, se librará una segunda convocatoria dentro de los seis días siguientes a aquel en el que la Junta debió reunirse en primera convocatoria, y se celebrará la reunión dentro de los treinta días subsiguientes. En caso de reiterarse la falta de quórum se cursará una tercera convocatoria en los mismos términos que la segunda. De no poderse celebrar la tercera convocatoria se librará una cuarta en los mismos términos que las dos anteriores y, esta cuarta, se considerará válidamente constituida con independencia del número de acciones que asistan a la misma. -----------------

En dicha sesión no se podrán adoptar acuerdos contrarios al interés social ni al de los accionistas ni los referidos en el artículo 25 de estos Estatutos apartados a, b, c, j, k, l, m, n, o, p, q. --------------------------------------

La imposibilidad de constituir válidamente la Junta General en las tres primeras convocatorias, no supondrá por sí misma una causa de bloqueo de LA SOCIEDAD. -------------------------------

La Junta General de Accionistas, ordinaria y extraordinaria, puede celebrarse sin previa convocatoria si concurren a la misma la totalidad de los accionistas y éstos aceptan por unanimidad el orden del día. -------------------------------

**Artículo 23.** - El balance de cierre de año, el estado de pérdidas y ganancias, la memoria explicativa, la propuesta del Consejo de Administración para la distribución de utilidades entre los accionistas, la propuesta de dotación a reservas, así como cualquier otra documentación necesaria para conocer con claridad y exactitud el curso de los negocios y la situación económico financiera de LA SOCIEDAD, serán puestos a disposición de los accionistas, de sus representantes y auditores externos o internos con quince días de antelación a la fecha fijada en la convocatoria para la celebración de la Junta General de Accionistas ordinaria. Durante ese período los accionistas

*10*

pueden solicitar aclaraciones e información complementaria al Consejo de Administración. -------

**Artículo 24.** - A la Junta General de Accionistas, además de los accionistas, de los Co-Presidentes y del Secretario de LA SOCIEDAD, pueden asistir, si han sido expresamente invitados otros miembros del Consejo de Administración, los miembros del Comité de Dirección u otras personas, siempre que tal invitación conste en la convocatoria a la reunión, así como los temas del orden del día en el que estarán presentes. Estos invitados, al igual que el Secretario, tendrán voz, pero no voto. -------------------------------------------

**Artículo 25.** - Es competencia de la Junta General de Accionistas: -------------------------------

a. Aprobar las enmiendas de los Estatutos de LA SOCIEDAD. ---------------------------------------

b. Conocer y aprobar el aumento o reducción del Capital Social de LA SOCIEDAD, para someterlo a la aprobación de la autoridad estatal correspondiente. -------------------------------------------

c. Acordar la disolución de LA SOCIEDAD y declararla en liquidación, en virtud de las disposiciones establecidas a tales efectos. -----------

d. Examinar y aprobar las cuentas, el balance general presentado por el Consejo de Administración, el estado de pérdidas y ganancias y la memoria explicativa. --------------------------

e. Aprobar la distribución de los dividendos de LA SOCIEDAD, después de haber sido satisfechas todas las obligaciones de la empresa y de conformidad con la propuesta del Consejo de Administración. --------------------------------------

f. Aprobar el plan y presupuesto anual de LA SOCIEDAD y cualquier enmienda o modificación a realizar al mismo, a propuesta del Consejo de Administración. --------------------------------

g. Designar la firma de contadores que efectuarán las Auditorías. -----------------------------

h. Aprobar y constituir el fondo de reserva acorde con lo establecido en la legislación vigente y según la propuesta del Consejo de Administración.

i. Aprobar y constituir el fondo de estimulación económica para los trabajadores cubanos y extranjeros residentes permanentes y aprobar su distribución en cada caso, con la propuesta del Consejo de Administración. ----------------------------

j. Nombrar y revocar a los miembros del Consejo de Administración, determinando su número y retribución. -------------------------------------

k. Aprobar cualquier proyecto de fusión o incorporación de LA SOCIEDAD. -----------------------

11

DRN-27

l. Acordar la apertura de filiales, sucursales o agencias en Cuba o en el exterior. -----------

m. Acordar la propuesta para la prórroga del término de duración de LA SOCIEDAD, de acuerdo con las prescripciones de la legislación vigente y el Convenio de Accionistas firmado entre los accionistas con fecha 4 de febrero del 2000. ----

n. Aprobar cualquier acuerdo sobre la emisión de acciones o relativo a las mismas. ---------------

o. Aprobar la transferencia de acciones a propuesta del Consejo de Administración. -----------

p. Decidir sobre cualquier asunto sometido a su consideración por el Consejo de Administración. -

q. Nombrar al Secretario de LA SOCIEDAD. --------

**Artículo 26.** - Si los acuerdos adoptados por la Junta General de Accionistas son de los que requieren la aprobación del Gobierno u otra autoridad de la República de Cuba, los mismos quedarán en suspenso hasta que se reciba la autorización necesaria, debiéndose dar a conocer en la reunión cuando un acuerdo necesita una confirmación de este tipo. -----------------------------

**SECCION SEGUNDA** ----------------------------------

**DEL CONSEJO DE ADMINISTRACION** --------------------

**Artículo 27.** - La administración y representación de LA SOCIEDAD corresponde al Consejo de Administración, el que estará integrado por ocho miembros a nombrar de forma paritaria por cada uno de los socios, quienes deberán desempeñar el cargo con la diligencia de un representante leal, respondiendo frente a la Sociedad de los daños y perjuicios que causen por actos contrarios a la Ley, a los Estatutos, al Acuerdo Marco de 9 de diciembre de 1999 y al Convenio de Asociación de fecha 4 de febrero del 2000 o por los actos realizados negligentemente. Quedarán exentos de responsabilidad quienes se opongan expresamente al acuerdo determinante de la responsabilidad o no hubiesen participado en su adopción. ---------

Podrán ser miembros del Consejo las personas físicas que tengan plena capacidad de obrar y no estén inhabilitadas para el ejercicio de cargos públicos. También podrán ser miembros del Consejo las personas jurídicas debiendo designar a la persona natural que las represente. -------------

Dentro de los ocho miembros del Consejo de Administración se incluyen los dos Co-Presidentes, a nombrar uno por cada Parte. --------------------

Los miembros del Consejo de Administración ejercerán sus cargos por TIEMPO INDEFINIDO, pudiendo ser libremente separados por el socio por el que fue respectivamente nombrado, sin ninguna limitación, más que la comunicación

*12*

DRN-27

fehaciente a los Co-Presidentes de la Sociedad, los cuales deberán dar cuenta de esta circunstancia al resto de sus órganos de gobierno y, en su caso a quien correspondiere. -----------

Cualquier miembro del Consejo podrá otorgar su representación a otro Consejero para cada sesión, ordinaria o extraordinaria, mediante carta, fax, e-mail u otro documento escrito, firmado por el Consejero representado, en el que éste manifieste que conoce el Orden del Día y declara que el representante podrá ejercitar su derecho de voto en dicha sesión. --------------------------------

El Secretario deberá ser letrado y podrá ser miembro del Consejo de Administración y podrá ser el Secretario de la Junta General de Accionistas. El cargo de miembro del órgano de administración, podrá ser remunerado, correspondiendo a la Junta General la determinación de las cantidades a percibir y los conceptos correspondientes, así como cualquier revisión de los mismos, en la Junta Ordinaria que apruebe los Presupuestos anuales. -------------------------------------

Los miembros del Consejo no podrán dedicarse, por cuenta propia o ajena, al mismo género de actividad que constituye el objeto social, salvo autorización expresa de la sociedad mediante acuerdo de la Junta General. ---------------------

**Artículo 28.** - Los miembros del Consejo de Administración podrán ser revocados o removidos de sus cargos por el accionista que los nombró y acuerdo de la Junta General de Accionistas. -----

El Consejo de Administración, podrá igualmente acordar la suspensión del ejercicio del cargo de unos de sus miembros, por causa justificada y acuerdo de más de la mitad de sus miembros, y con los efectos que determine, nombrando con carácter interino un sustituto, y sin perjuicio de su ratificación por la Junta General. --------------

En la propia reunión en que se produzca la remoción deberá ser nombrado el sustituto de acuerdo con lo establecido en los presentes Estatutos. Si se produjera una vacante en el Consejo de Administración por renuncia, enfermedad o muerte, la Junta General de Accionistas nombrará un sustituto de acuerdo con lo establecido en estos Estatutos. -------------------------------------------

**Artículo 29.** - El Consejo celebrará sesión trimestralmente o cuando lo consideren necesario cualquiera de los Co-Presidentes, quienes deberán asimismo convocarla cuando se lo soliciten tres ó más miembros del mismo Consejo. ----------------

Las citaciones, que contendrán el orden del día, se efectuarán por cualesquiera de los siguientes medios: entrega    personal,  facsímil,  burofax,

13

correo certificado con acuse de recibo, por men-
sajero con acuse de recibo o mediante telegrama
con al menos siete días de antelación a la fecha
fijada para la sesión, previa confirmación de lo
miembros efectivos o de los suplentes. ----------
Las sesiones del Consejo de Administración se
considerarán legalmente constituidas cuando
estén presentes o representados la totalidad de
sus miembros. La representación podrá conferirse
mediante escrito firmado por el miembro del
Consejo. -------------------------------------
El Consejo de Administración podrá celebrarse sin
previa convocatoria si concurrieran todos los
miembros y éstos aceptaran por unanimidad el
orden del día. -------------------------------

**Artículo 30.** - Las reuniones del Consejo serán
presididas por los Co-Presidentes, o quienes les
sustituyan, en los mismos términos que la Junta
General redactando Acta el Secretario o, en su
caso, quienes les sustituyan conforme a estos
Estatutos. -----------------------------------

Cada uno de los miembros del Consejo de
Administración tendrá un voto y todas las
decisiones se adoptarán con al menos el 50 por
ciento, de los votos más uno de los miembros,
salvo la delegación permanente de alguna facultad
del Consejo en los Co-Presidentes, que requerirán
para su validez el voto favorable de las tres
cuartas partes de los componentes del Consejo. -
- Un acuerdo por escrito firmado (de tal forma que
indique aprobación incondicional) por todos los
miembros, será válido y eficaz como acuerdo debi-
damente adoptado en un Consejo de Administración.
Las actas de cada sesión del Consejo se redacta-
rán por el Secretario, numerándose los acuerdos
de forma consecutiva cada año social y transcri-
biéndolas al Libro Registro de Actas habilitado
al efecto. El acta será firmada por el Secretario
con el visto bueno de los Co-Presidentes y cir-
culará a todos los miembros del Consejo de Admi-
nistración dentro de los diez días siguientes a
su celebración para su aprobación; no obstante,
los acuerdos tendrán vigencia desde la fecha de
su adopción. ---------------------------------

**Artículo 31.** - Es competencia del Consejo de
Administración asumir todos los asuntos relativos
al giro, tráfico mercantil y a la vida general de
la Sociedad, obligándola con sus actos y contra-
tos, estándole atribuidas todas cuantas faculta-
des no se hallen expresamente encomendados a la
Junta General de Accionistas por estos Estatutos
o por la Ley, y en particular, las siguientes: --
a. Representar a LA SOCIEDAD en todos los asuntos
y actividades, actos y negocios jurídicos que

14

estén relacionados con la esfera de operaciones a la que LA SOCIEDAD pueda dedicar su actividad de acuerdo con el objeto social, obligándola con sus actos y contratos, así como representarla en cualesquiera expedientes y actos de cualquier naturaleza que sean; ante las distintas Administraciones, nacionales y extranjeras, Corporaciones Públicas de todo orden, Juzgados y Tribunales, funcionarios, personas físicas o jurídicas, públicas o privadas; en todas las instancias y jurisdicciones; ejercitando toda clase de acciones, excepciones y recursos; pudiendo otorgar poderes. --------------------------------------

b. Proponer a la Junta General de Accionistas el plan y presupuesto anual de LA SOCIEDAD y velar por su cumplimiento. ----------------------------

c. Aprobar las marcas y tipos de productos a producir y comercializar, así como los aspectos relacionados con esta actividad, a propuesta de los Co-Presidentes o de cualquier otro miembro del Consejo. -------------------------------------

d. Constituir, modificar en cualquier forma, extinguir y cancelar toda clase de actos y contratos de adquisición, enajenación y gravamen, compraventas, permutas, cesiones en pago y para pago, tanteos, retractos y opciones, arrendamientos, incluso arrendamientos financieros, si bien en este caso, únicamente como arrendatario; prendas, hipotecas, anticresis y otros derechos de garantía, reales o personales; usufructos, servidumbres y demás derechos reales limitativos del dominio, designando a las personas autorizadas a firmar los mismos. --------------------

e. Abrir, seguir, disponer y cancelar cuentas bancarias corrientes a la vista, de ahorro, a plazo o de crédito, denominadas, tomando dinero a préstamo; firmar recibos, resguardos, reintegros, órdenes y demás documentos de uso bancario; constituir, modificar y retirar depósitos y cobrar rentas de valores, todo ello en las monedas libremente convertibles que determine la Junta General de Accionistas designando las personas facultadas para operarlas, y de acuerdo con lo que a tal efecto prescribe la legislación cubana. -------------------------------------------

f. Librar, descontar, aceptar, endosar, cobrar, pagar y protestar letras de cambio y demás documentos de giro, celebrar, modificar y extinguir contratos de adquisición de materias primas y mercaderías; suministros de servicios; seguros, publicidad y transporte, licitar en concursos y subastas o contratar directamente con corporaciones Públicas o particulares; presentando, mejorando o aclarando las proposiciones y ofertas;

15

actuando en todos los trámites e incidencias de aquellos; constituyendo y retirando las cantida- des, valores o efectos a que haya lugar y otor- gando las correspondientes cartas de pago; recla- mar contra las resoluciones de dichos concursos o subastas y en general, ejercitar los derechos que a los intervinientes en los mismos otorguen las Leyes. ------------------------------------- Avalar a terceros. ---------------------------

g. Administrar todos los bienes de LA SOCIEDAD, por sí o por persona natural o jurídica apoderada específicamente para el acto que se le designe. -

h. Gestionar la empresa en todos sus aspectos, incluido el laboral; contratar con la empresa empleadora cubana el personal necesario para LA SOCIEDAD. Los contratos de trabajo individuales con cada trabajador serán suscritos por la empre- sa empleadora cubana; comparecer por sí o me- diante Profesional adecuado, en cualquier asunto que concierna a las relaciones laborales. ------

i. Revisar si los titulares de las acciones sus- critas las han desembolsado en el tiempo e impor- tes acordados. -------------------------------

j. Dictar los reglamentos y regulaciones para las actividades y organización de LA SOCIEDAD y esta- blecer el sistema de contabilidad que más se adecue a su actividad y que ajustados a las nor- mas generalmente aceptada en este campo, permi- tan satisfacer las exigencias fiscales. ---------

k. Presentar el estado financiero, el balance general anual, el estado de pérdidas y ganancias, la memoria explicativa, así como los documentos que sean pertinentes, a la consideración de la Junta General de Accionistas con treinta días de antelación a la reunión ordinaria anual. --------

l. Proponer fundadamente a la Junta General de Accionistas en la reunión ordinaria anual, la distribución de utilidades, su monto, así como la cuantía de las reservas facultativas que conside- re procedentes en adición a las establecidas por la legislación, así como proponer la forma de distribución del fondo de estimulación económica para los trabajadores cubanos y extranjeros resi- dentes permanentes. ---------------------------

m. Nombrar los miembros del Comité de Dirección.

**SECCION TERCERA** -------------------------------

**DE LOS CO-PRESIDENTES** ---------------------------

**Artículo 32.** - Los Co-Presidentes ostentan la más alta representación de la Sociedad, y su misión es velar y hacer cumplir su objeto social en general, y en concreto los programas y actuacio- nes para la consecución de dichos fines. -------

*16*

Ejercerán su cargo por tiempo indefinido, si bien
podrán ser libremente separados por cada uno de
los socios que respectivamente los haya nombrado.
Su cargo será remunerado, correspondiendo a la
Junta General al tratar sobre la aprobación de
los Presupuestos Anuales, la determinación de su
retribución. ------------------------------------

Regirá respecto a los Co-Presidentes, la misma
prohibición de competencia establecida para los
miembros del Consejo de Administración, no
pudiendo en consecuencia dedicarse, por cuenta
propia o ajena, al mismo género de actividad que
constituye el objeto social, salvo autorización
expresa de la sociedad mediante acuerdo de la
Junta General. ----------------------------------

El ejercicio de sus facultades tendrá lugar,
salvo disposición en contra de los presentes
Estatutos, siempre de forma mancomunada, requi-
riendo la actuación indistinta de cualquiera de
ellos la previa, expresa, especial y escrita
autorización de todos los miembros del Consejo de
Administración, sin que en ningún caso puedan
traspasarse los límites de dicha autorización. --



Los Co-Presidentes presidirán mancomunadamente
todas las reuniones de la Junta General de Accio-
nistas, del Consejo de Administración y del
Comité de Dirección de la misma, teniendo, entre
otras, las facultades siguientes: --------------

a. Ordenar al Secretario la convocatoria de la
Junta General de Accionistas y del Consejo de
Administración fijando el orden del día de las
mismas, presidir las mismas y firmar las actas de
la Junta General de Accionistas y del Consejo de
Administración. ---------------------------------

b. Firmar, junto con el Secretario, las acciones
y los certificados de acciones. -----------------

c. Ostentar mancomunadamente, o en caso de auto-
rización, de forma indistinta la representación
de LA SOCIEDAD ante toda clase de particulares,
corporaciones, entidades, oficinas, tribunales,
ejercitando en ello y ante ellos las acciones de
toda clase que competan a la misma. -------------

d. Dirigir y supervisar de forma mancomunada o
por separado, conforme a lo indicado, determina-
das funciones asignadas a cada uno de los miem-
bros del Consejo de Administración y del Comité
de Dirección. -----------------------------------

e. Ejercer la inspección sobre todos los bienes y
negocios de LA SOCIEDAD, realizando cuantos ac-
tos, gestiones y acciones sean procedentes y
propias del representante de una empresa, con
todas las atribuciones necesarias para la direc-
ción y administración de LA SOCIEDAD. -----------

17

f. Suscribir mancomunada o indistintamente, en caso de facultad expresa conforme a lo indicado, los contratos públicos y privados, escrituras y cualesquiera otros documentos necesarios para LA SOCIEDAD en el desempeño de su actividad, que acuerden la Junta General de Accionistas o el Consejo de Administración, en virtud de las facultades conferidas a cada uno de estos órganos.

g. Nombrar consejos asesores, comisiones de trabajo, y nombrar cuantos cargos de carácter técnico estimen necesarios para la mejor realización de los fines y actividades de la Sociedad. ------

h. Todas aquellas que les sean delegadas por el Consejo de Administración, y que a título enunciativo y no limitativo, son las descritas en el Artículo 31, incisos a, c, d, e, f, g, h, j. ----

i. Otorgar mancomunadamente poderes en el ámbito de sus facultades. ----------------------------

**Artículo 33.-** En caso de ausencia, enfermedad o imposibilidad de uno de los Co-Presidentes, en las Juntas de Accionistas, Consejos de Administración o en las reuniones del Comité de Dirección, éstos se podrán hacer representar por los sustitutos que nombren a tales efectos, de entre los miembros del Consejo de Administración, los que ejercerán sus funciones y suscribirán en su lugar las actas correspondientes. --------------

**SECCION CUARTA** ------------------------------------

**DEL COMITÉ DE DIRECCIÓN** -------------------------

**Artículo 34.-** LA SOCIEDAD contará con un Comité de Dirección, encargado de dirigir la actividad diaria de la misma, y al cual pertenecerán las personas responsables de las funciones de dirección que designe el Consejo. --------------------

**Artículo 35.-** Las personas responsables de las distintas funciones de dirección serán nombrados a propuesta de los Co-Presidentes de manera que, tanto las funciones asumidas como la importancia de las mismas, respondan al principio de equidad entre accionistas. ----------------------------

Los Co-Presidentes elaborarán las normas de régimen interior del Comité de Dirección. En dichas normas se especificará su competencia; normas sobre reunión y asistencia a sus sesiones; régimen de acuerdos y ejecución de los mismos, estatuto de sus miembros y cuantas cuestiones se estimen convenientes. --------------------------

Serán Presidentes y Secretario de la Comité de Dirección, respectivamente, los Co-Presidentes y el Secretario del Consejo de Administración. ----

**Artículo 36.-** En cualquier caso, el Comité de Dirección deberá reunirse de forma ordinaria al menos quincenalmente, y de forma extraordinaria a

18

requerimiento de los Co-Presidentes en cualquier momento. -----------------------------------------

**Artículo 37.-** Cada uno de los miembros del Comité de Dirección tendrá un voto y todas las decisiones se adoptarán con al menos el 50% de los votos más uno de los miembros. ----------------------

**Artículo 38.-** Los acuerdos de todas las reuniones del Comité de Dirección serán recogidos en actas a elaborar por el Secretario de LA SOCIEDAD, numerándose de forma consecutiva cada año social.

**SECCION QUINTA** -----------------------------------

**DEL SECRETARIO** -----------------------------------

**Artículo 39.** - El Secretario tendrá a su cargo las siguientes facultades: ----------------------

a. Custodiar los archivos y los Libros de Actas de todos los órganos de LA SOCIEDAD, Junta General, Consejo de Administración y Comité de Dirección, y el Libro Registro de Acciones. ----------

b. Emitir certificaciones con vista a los libros y documentos bajo su cargo y custodia. ----------

c. Redactar las actas de las reuniones de todos los órganos de LA SOCIEDAD de las que sea miembro nato, y circularlas dentro del término establecido. ------------------------------------------

d. Suscribir las acciones, los certificados y las Actas de la Junta General de Accionistas, del Consejo de Administración y del Comité de Dirección, conjuntamente con los Co-Presidentes. ----

e. Inscribir en el Registro correspondiente los acuerdos de la Junta General de Accionistas que sean inscribibles y velar por su cumplimiento. --

f. Registrar en el Libro Registro de Acciones a los accionistas titulares y los traspasos de acciones cuando sean autorizados, así como cualquier limitación u obligación de las acciones que sean inscribibles. ----------------------------

g. Asesorar legalmente a LA SOCIEDAD en todo aquello que le sea encomendado por los Co-Presidentes. -----------------------------------

h. Cualquier otra tarea que le asigne el Consejo de Administración y/o los Co-Presidentes. ----

**TITULO IV** ---------------------------------------

**SECCIÓN PRIMERA** ----------------------------------

**AÑO SOCIAL** -------------------------------------

**Artículo 40.** - El año social comenzará el primero de enero y finalizará el treinta y uno de diciembre de cada año. El primer año social comprenderá el período desde la fecha de inscripción de esta escritura en el registro correspondiente, hasta el treinta y uno de diciembre de ese mismo año, a no ser que la inscripción se realice dentro de los tres meses anteriores al treinta y uno de

19

diciembre, en que el primer año social se exten-
derá hasta el treinta y uno de diciembre del
siguiente año. ----------------------------------
**SECCIÓN SEGUNDA** -------------------------------
**BALANCE Y BENEFICIOS** ----------------------------
**Artículo 41.** - El Consejo de Administración está
obligado a formular, en el plazo establecido, el
balance de cierre de año, el estado de pérdidas y
ganancias, la memoria explicativa, la propuesta
para la distribución de utilidades entre los
accionistas y las propuestas de reservas. Las
cuentas del año serán auditadas por una firma
auditora internacional nombrada por la Junta
General de Accionistas. Todo ello, de acuerdo a
la legislación establecida a tales efectos. -----
Tales documentos deberán ser redactados con cla-
ridad y precisión, mostrando la imagen fiel del
patrimonio, de la situación financiera y de los
resultados de LA SOCIEDAD. ----------------------
**Artículo 42.** - Se considerará beneficio reparti-
ble al remanente que queda de los ingresos tota-
les después de deducidos los impuestos, gastos,
amortizaciones y reservas, tanto legales como las
que voluntariamente acuerde la Junta General de
Accionistas u otras obligaciones, de conformidad
con la legislación vigente en la República de
Cuba. -------------------------------------------
**Artículo 43.** - La distribución de dividendos se
realizará en proporción al número de acciones que
se tengan en LA SOCIEDAD; no obstante, si cual-
quiera de los accionistas no cumpliere en satis-
facer cualquier parte de su compromiso con la
aportación de su capital, la distribución de los
dividendos se realizará sobre la base de la con-
tribución del capital efectuada realmente. ------
La Junta General de Accionistas determinará el
momento y la forma de pago de los dividendos de
conformidad con las recomendaciones del Consejo
de Administración. A falta de determinación sobre
estos particulares, el dividendo será pagado
dentro de los treinta días siguientes a la fecha
del acuerdo correspondiente, adoptado por la
Junta General de Accionistas en su sesión ordina-
ria. --------------------------------------------
**SECCIÓN TERCERA** --------------------------------
**DE LA DISOLUCION Y LIQUIDACION DE LA SOCIEDAD** ---
**Artículo 44.** - LA SOCIEDAD se disolverá por las
causas siguientes, además de las establecidas en
la Ley: -----------------------------------------
a. Por haber decursado el plazo de duración de LA
SOCIEDAD y de sus prórrogas, previo acuerdo
unánime de los accionistas. ---------------------

20

DRN-27

b. Por ser imposible el cumplimiento del objeto social por causas internas o externas a LA SOCIEDAD. ---------------------------------------

c. Por acuerdo de los socios. --------------------

d. Por pérdida total del Capital Social de LA SOCIEDAD. ---------------------------------------

e. Por quiebra. ----------------------------------

f. Por la aplicación de lo previsto en el Artículo 2.5 del Acuerdo Marco suscrito en fecha 9 de diciembre de 1999. ------------------------------

**Artículo 45.-**



REDACTED

**Artículo 46.-**

**Artículo 47.** - Al comenzar la liquidación de LA SOCIEDAD, cesará desde ese momento el Consejo de Administración. La Junta General de Accionistas designará tres liquidadores, uno fijado por cada socio y el tercero a elegir entre estos últimos, y determinará el plazo para efectuar las operaciones de liquidación. En caso de no llegar a acuerdo para designar el tercer liquidador, éste se seleccionará por insaculación entre una lista de cuatro liquidadores propuestos dos por cada una de las partes. Si el desacuerdo de los accionistas estuviese referido al plazo de liquidación, se estará al acuerdo a que por mayoría arriben los liquidadores. ----------------------

**Artículo 48.** - Los liquidadores son los representantes y administradores de LA SOCIEDAD, y su actuación debe encaminarse a percibir los créditos de la misma que sean exigibles al declararse su disolución y los que vayan venciendo, a liquidar las obligaciones pendientes al momento de acordarse la liquidación o con posterioridad y, en general, al concluir las operaciones pendientes. -------------------------------------------

Adicionalmente, de conformidad con lo establecido en el Código de Comercio, deberán: --------------

a. Presentar ante la Junta General de Accionistas, en el término de cuarenta y cinco días, el

22

inventario del haber social, con el balance ini-
cial de las cuentas de LA SOCIEDAD. --------------
b. Presentar a la Junta General de Accionistas
mensualmente un informe pormenorizado sobre el
estado de liquidación. -------------------------
c. Presentar a la Junta General de Accionistas,
al concluir la liquidación, el balance final en
el que se precise el capital divisible por accio-
nes. -------------------------------------------

**Artículo 49.** - Los liquidadores efectuarán la
liquidación del haber social entre los accionis-
tas. -------------------------------------------

La valoración de los bienes se hará según su
valor en el mercado internacional en dicho momen-
to. --------------------------------------------

Los liquidadores convocarán a la Junta General de
Accionistas para la distribución del haber so-
cial. ------------------------------------------

**SECCIÓN CUARTA** ---------------------------------
DE LA SOLUCION DE DISCREPANCIAS Y ARBITRAJE -----

**Artículo 50.** - LA SOCIEDAD se regirá por las leyes
de la República de Cuba y en caso de conflicto se
someterá a la jurisdicción de la Cámara
Internacional de Comercio de París, Ginebra o
Panamá, a elegir por acuerdo de la Junta General,
o por insaculación en caso de no llegarse a un
acuerdo. Derivado de la elección anterior, el
arbitraje se efectuará en París, Ginebra o Panamá
y en idioma español. En todo caso, deberá
realizarse en un país que haya ratificado el
Convenio de Nueva York sobre el reconocimiento y
cumplimiento del laudo de arbitraje extranjero. -
El arbitraje será conducido por 3 árbitros. La
parte iniciando el arbitraje (el reclamante)
nombrará su arbitro en su solicitud para arbitra-
je (LA SOLICITUD). La otra parte (EL DEMANDADO)
nombrará su árbitro dentro de 30 días de recibo
de LA SOLICITUD y notificará al reclamante de
dicho nombramiento por escrito. Si el DEMANDADO
no nombrara un árbitro dentro del período de 30
días, dicho árbitro será nombrado según el regla-
mento de la Cámara de Comercio seleccionada. Los
2 árbitros nombrados por las partes nombrarán un
tercer árbitro dentro de los 30 días después de
que el demandado haya notificado al reclamante el
nombramiento del árbitro del DEMANDADO. Cuando
los árbitros nombrados por el reclamante y el
demandado hayan nombrado un tercer árbitro y éste
haya aceptado el nombramiento, los dos árbitros
notificarán de inmediato a las partes dicho nom-
bramiento, si los dos árbitros nombrados por las
partes no puedan nombrar el tercero, la Cámara de
Comercio que corresponda nombrará al mismo y lo



*23*

DRN-27

notificará de inmediato a las partes. El tercer
árbitro actuará como jefe del panel. ------------
El laudo arbitral será por escrito e inapelable y
de obligatorio cumplimiento para las partes. Será
ejecutada según el convenio de Nueva York sobre
el reconocimiento y cumplimiento de laudos arbi-
trales extranjeros. Los costos y gastos serán
asumidos conforme lo que disponga el laudo arbi-
tral. Un orden de cumplimiento del laudo arbitral
puede inscribirse en cualquier Corte que tenga
competencia sobre esto o que tenga competencia
sobre las partes o sus bienes. ------------------

**DISPOSICIONES FINALES** ------------------------

**Artículo 52.** - Los presentes Estatutos forman
parte del Convenio de Asociación suscrito entre
Cubatabaco y ALTADIS S.A. y derogan los suscritos
en fecha 14 de septiembre de 1994. --------------

**Artículo 53.** - Estos Estatutos han sido aprobados
por los accionistas en la Ciudad de La Habana,
República de Cuba, a los 4 días del mes de febre-
ro del dos mil. ---------------------------------

**CUARTA:** Las partes acuerdan designar las personas
que han de dirigir y administrar la Empresa Mixta
en la primera reunión que se efectúe de la Junta
General de Accionistas. -------------------------

**ASI LO DICEN Y OTORGAN** los comparecientes a mi
presencia, a quienes hice las advertencias lega-
les y reglamentarias, correspondientes a este
acto, en especial sobre la obligatoriedad de
inscribir esta escritura en los Registros esta-
blecidos en la legislación vigente. -------------

**LEIDA INTEGRAMENTE**, en un solo acto, esta escri-
tura por mí, la Notaria, a los otorgantes, con-
formes en su contenido, la ratifican y firman.---

**DE TODO LO CUAL** y de la identidad de los compare-
cientes, constándome sus demás generales por sus
manifestaciones. Yo, la Notaria, **DOY FE.**- -------

**FIRMADO: JUAN MANUEL DIAZ TENORIO.ANTONIO
VAZQUEZ ROMERO.LICENCIADA NURY EVARISTA PEÑA
TABOADA.NOTARIA.** ------------------------------

# EXHIBIT 2

[taken from the GACETA OFICIAL DE LA REPUBLICA DE CUBA]

## NATIONAL PEOPLE'S ASSEMBLY

I, RICARDO ALARCON DE QUESADA, President of the National People's Assembly of the Republic of Cuba,

MAKE KNOWN: That the National People's Assembly of the Republic of Cuba, in its session held on September 5, 1995, corresponding to the Fifth Ordinary Period of Sessions of the Fourth Legislature, has approved the following:

WHEREAS: In today's world, without the existence of the socialist camp, with a world economy which is becoming globalized and with strong hegemonic tendencies in the economic, political and military fields, Cuba, in order to preserve its conquests and also subjected to a fierce blockade, lacking capital and specific technologies, often market technologies, and needing to restructure its industry, may obtain through foreign investment, on the basis of the strictest respect for national independence and sovereignty, benefits with the introduction of new and advanced technologies, the modernization of its industries, greater productive efficiency, the creation of new jobs, improvement in the quality of products and services offered and a reduction in costs, greater competitiveness abroad, access to specific markets, which together will support the efforts the country must make in its economic and social development.

WHEREAS: The Constitution of the Republic, as it was reformed in 1992, recognizes, among other forms of property, that of mixed enterprises, corporations and economic associations which are established in accordance with the law, and it envisages, with respect to state property and in an exceptional capacity, should it be useful and necessary for the country, the transfer of complete or partial ownership of economic objectives to be used for its development.

WHEREAS: The changes which take place in the national economy, designed to actively promote and propel the investment of foreign capital in Cuba and to increase possibilities with respect to forms and areas of investment, among other essential factors, exceed the possibilities of the legal framework offered up to this time by Decree-Law No. 50, "On economic association between Cuban and foreign companies," of February 15, 1982.

WHEREAS: In order to broaden and facilitate the process of foreign investment participation in the national economy, it is appropriate to adopt a new law which provides greater security and guarantees to foreign investors and which fundamentally allows the obtention of financial funds, technologies and new markets in any production sector and in the services sector where mutual interests are identified, as a function of the sustainable development of the country and the recovery of the domestic economy.

THEREFORE: The National People's Assembly, in use of the authorities granted to it in Article 75, paragraph b) of the Constitution of the Republic, agrees to issue the following:

**LAW NUMBER 77**
**FOREIGN INVESTMENT LAW**
CHAPTER I
**PURPOSE AND CONTENT.**

ARTICLE 1. 1.- The purpose of this Law is to promote and provide incentives for foreign investment in the territory of the Republic of Cuba, to perform profitable activities which contribute to the strengthening of the economic capacity and to the sustainable development of

the country, based on respect for national sovereignty and independence and the protection and rational use of national resources; and to establish, to that end, the principal legal regulations under which it should be performed.

2.- The regulations contained in this Law include, among other things, the guarantees which are granted to investors, the sectors of the domestic economy which can receive foreign investments, the forms which they may take, the different types of contributions, the procedure for the authorization thereof, the banking, special taxation and labor systems for these investments and the standards related to the protection of the environment and the rational use of natural resources.

## CHAPTER II
## **GLOSSARY**

ARTICLE 2.- The following terms are used in this Law with the meanings indicated in each case:

a)  International economic association:

An association of one or more national investors and one or more foreign investors within the national territory for the production of goods, the provision of services, or both, for the purpose of profit in its two modalities, which include mixed enterprises and international economic association contracts.

b)  Authorization:

A document granted by the Executive Committee of the Council of Ministers or by a Government Commission, for the performance of any of the forms of foreign investment stipulated in this Law, during a specific period of time.

c)  Foreign capital:

Capital coming from abroad, as well as such part of the profit or dividends pertaining to the foreign investor as are reinvested under the tenor of this Law.

d)  Upper-management positions:

The positions of the members of the management and administrative bodies of a mixed enterprise and of a completely foreign capital company, as well as the representatives of the parties in international economic association contracts and the management personnel of completely foreign capital companies.

e)  Government Commission:

A commission designated by the Executive Committee of the Council of Ministers with authority to approve investments of foreign capital in its area of jurisdiction, in accordance with the provisions of this Law.

f)  Administrative concession:

A unilateral act of the Government of the Republic, by which an entity is granted the right to operate a public service, to develop a natural resource or to execute and operate public works under such terms and conditions as are established.

g)  International economic association contract:

A pact or agreement between one or more national investors and one or more foreign investors, to jointly perform acts pertaining to an international economic association, although without establishing a legal entity different from the parties.

h)  Completely foreign capital company:

A commercial entity with foreign capital, without the inclusion of any national investor.

i)  Mixed enterprise:

A Cuban commercial company which adopts the form of a capital stock company through registered shares, which are held by one or more national investors and one or more foreign investors as shareholders.

j)     Employer entity:

A Cuban company with a legal personality, authorized to execute, with a mixed enterprise or a completely foreign capital company, a contract by means of which it shall offer to it, at its request, such workers of different qualifications as it needs, who shall maintain an employment relationship with said organization.

k)    Wages:

Salaries, revenue and other remuneration, as well as raises, compensation or other additional payments received by Cuban and foreign workers, with the exception of those derived from the economic stimulation fund, should it exist.

1)     Foreign investment:

Contributions of capital made by foreign investors, in any of the forms stipulated in this Law.

m)   Foreign investor:

A natural or legal person with domicile abroad and with foreign capital, which becomes a shareholder in a mixed enterprise, or which holds shares in a completely foreign capital enterprise, or which appears as a party to international economic association contracts.

n)    National investor:

A state enterprise or entity with a legal personality, a capital stock company or another legal person, of Cuban nationality, domiciled in the national territory, which becomes a shareholder in a mixed enterprise or which appears as a party to international economic association contracts.

## CHAPTER III
### GUARANTEES TO INVESTORS

ARTICLE 3.- Foreign investments in the national territory enjoy full protection and security, and cannot be expropriated, except if this action is taken for reasons of the public good or interest, declared by the Government, in accordance with the provisions of the Constitution of the Republic, current legislation and international agreements on the reciprocal promotion and protection of investments subscribed by Cuba, after indemnification in a freely convertible currency for their commercial value established by mutual agreement.

Should an agreement not be reached, the establishment of the price shall be done by an organization of recognized international prestige in the valuation of business dealings, authorized by the Ministry of Finance and Prices, and contracted for the purpose by agreement of the parties or of the foreign investor and the Ministry of Foreign Investment and Economic Cooperation, should the affected party be a completely foreign capital company.

ARTICLE 4. 1.- The period of authorization granted for the performance of its operations by a mixed company, by the parties to an international economic partnership contract, or by a completely foreign capital company may be extended by the same authority which granted it, provided that it is requested by the interested parties within the established period.

2.- Should the expiration date not be extended, the mixed enterprise, the international economic association contract or the completely foreign capital company shall be liquidated in accordance with what has been agreed in the certificates of incorporation and the provisions of current law, and that which belongs to the foreign investor shall be paid to him in a freely convertible currency, except if otherwise agreed.

ARTICLE 5.- Foreign investments made in accordance with the law are likewise protected against claims by third parties, pursuant to Cuban laws and the provisions of national courts of justice.

ARTICLE 6. 1.- Foreign investors in an international economic partnership may, at any time, on agreement by the parties, sell or transfer in any other form to the State, or to a third party with governmental approval, its complete or partial shareholding therein, receiving the corresponding price in a freely convertible currency, except if otherwise agreed.

2.- A foreign investor in a completely foreign capital company may, at any time, sell or transfer in any other manner to the State, or to a third party, with governmental approval, its complete or partial shareholding therein, receiving the corresponding price in a freely convertible currency, except if otherwise agreed.

ARTICLE 7.- The price which the foreign investor should receive in the cases cited in articles 4 and 6 of this Law is established by agreement of both parties, or in the absence thereof by an organization of international prestige in the valuation of business proceedings, authorized by the Ministry of Finance and Prices to operate in the national territory and contracted by common accord of the parties; or by agreement of a foreign investor in a completely foreign capital company with the Ministry of Foreign Investment and Economic Cooperation.

ARTICLE 8. 1.- The State guarantees to the foreign investor the free transfer abroad, in a freely convertible currency, without payment of taxes or any other withholding related to said transfer, of:

a)      The net profits or dividends which it obtains for the operation of the investment; and

b)      such amounts as it should receive in the cases cited in articles 3, 4 and 6 of this Law.

2.- Foreign citizens who provide their services to a mixed enterprise, to the parties of any other form of international economic association or to a completely foreign capital company, provided that they are not permanent residents of Cuba, have the right to transfer abroad such wages as they receive, within the amounts and in accordance with all other regulations issued by the National Bank of Cuba.

ARTICLE 9.- Mixed companies and parties to international economic partnership contracts pay the taxes contained in the special system which this Law stipulates, through the expiration of the term for which they were authorized.

The provisions of the preceding paragraph are not applicable to taxes, contributions, with the exception of social security contributions, and formal obligations established in current law, nor to the payment obligations included in the Mining Law of December 21, 1994, or any other legal stipulations issued with respect to natural resources, which are satisfied in the manner and amount stipulated therein.

<div align="center">

CHAPTER IV

**SECTORS RECEIVING**

**FOREIGN INVESTMENTS**

</div>

ARTICLE 10.- Foreign investments may be authorized in all sectors, except public health and education services and the armed forces, except the business system thereof.

<div align="center">

CHAPTER V

**FOREIGN INVESTMENTS**

FIRST SECTION

**Manifestations and forms of foreign
investment**

</div>

ARTICLE 11.- For the purposes of this Law, the following are considered foreign capital investments:

a)      Direct investments in which the foreign investor actually participates in the management of a mixed enterprise or a completely foreign capital company, and those which constitute their contributions in international economic association contracts; and

b)      investments in shares or in other securities, public or private, which do not have the status of direct investments.

ARTICLE 12.- Foreign investments shall take one of the following forms:

a)      Mixed company;

b)      international economic association contract; and

c)      completely foreign capital company.

SECOND SECTION

**Mixed Companies**

ARTICLE 13. 1.- A mixed enterprise entails the creation of a distinct legal entity other than those of the parties; it takes the form of a capital stock company through registered shares and the current pertinent legislation is applicable to it.

2.- The proportions of share capital which the foreign investor and the national investor should contribute are agreed upon by both partners and established in the Authorization.

3.- The establishment of a mixed enterprise must take the form of a certified document and, as addenda to this notarized instrument, the statutes by which it shall be governed and the Authorization are included in the agreement of association.

The agreement of association contains the fundamental agreements between the partners to conduct and carry out the operations of the mixed enterprise, as well as to achieve its objectives, among them those which guarantee the participation of the Cuban party in the management or joint management of the company and those related to the market which is guaranteed for the company's production or services; the bases of the accounting system and the calculation and distribution of profits.

The statutes of a mixed enterprise include stipulations related to the organization and operation of the company, among them those related to the general meeting of shareholders, its authorities and organization; the required quorum and the requirements which are necessary to exercise the right to vote in the general meeting of shareholders; the structure and authorities of the management and administrative body; the method by which these entities implement their decisions, both in the general meeting of shareholders and the management and administrative body, which may be from a simple majority to unanimity; the cases of dissolution and the procedure to liquidate the company; as well as such other stipulations as result from the current pertinent legislation, from this Law and from the agreement between the patties.

4.- Should the certified document not name the person or persons to manage the mixed enterprise, the first session of the general meeting of shareholders may later be held and the members of its management and administrative body may be designated, in accordance with the statutes.

5.- Once the mixed company is created, the partners may not be changed, except by agreement between the parties and with the approval of the authority which granted the Authorization.

A change in partners is understood as the substitution of the foreigner with another natural or legal person or person of the national party for another legal person.

6.- Mixed enterprises may establish offices, representations, branches and affiliates, both in national territory and abroad, and they may maintain shareholdings in foreign entities.

7.- A mixed enterprise acquires legal personality when it is recorded in the Register which exists for these activities in the Chamber of Commerce of the Republic of Cuba.

THIRD SECTION
**International economic association contracts**

ARTICLE 14. 1.- An international economic association contract has the following characteristics, among others:

a)   It does not imply the establishment of a legal person other than that of the contractors;

b)   Its purpose can be the performance of any activity for which the parties are authorized;

c)   The contractors have the freedom to stipulate all agreements and clauses which they understand are in their interest, provided that they do not violate the authorized purpose, the conditions of the Authorization or current law;

d)   Each contracting party makes different contributions, which constitute an accumulation of shareholdings of which they are the owners at all times and, although share capital is not established, they may establish a common fund, provided that the proportion of each one's ownership is determined.

2.- The proportion in which each of the parties pays taxes and the times of the year when profit is distributed between them is evidenced in the text of the contract, after compliance with their tax obligations and the contribution to losses, should these occur.

3.- In the international economic association contract, the party which performs an act of management which benefits all is liable to third parties for the entirety, but in the internal relationship, each one is liable to the extent or in the proportion stipulated in the contract.

4.- Once an international economic association contract is executed, the participants cannot be changed, except by agreement of the parties and with the approval of the authority which granted the Authorization.

5.- An international economic association contract must be executed in the form of a certified document and it takes effect at the time that it is recorded in the Register for these activities which exists in the Chamber of Commerce of the Republic of Cuba.

FOURTH SECTION
**Completely foreign capital company**

ARTICLE 15. **1.-** In a completely foreign capital company, the foreign investor exercises the management thereof, enjoys all the rights and is responsible for all the obligations prescribed in the authorization.

2.- The foreign investor in completely foreign capital companies may act as a natural or legal person within Cuban national territory:

a)   By creating a Cuban affiliate of the foreign entity of which it is owner, in the form of a capital stock company through registered shares, and recording it in the Register of the Chamber of Commerce of the Republic of Cuba; or

b)   by recording itself in the Register of the Chamber of Commerce of the Republic of Cuba and acting on its own.

CHAPTER VI
**INVESTMENTS IN REAL PROPERTY**

ARTICLE 16. 1.- Investments may be made in real property and ownership thereof or other real rights may be acquired under the scope of this Law.

2.- The investments in real property cited in the preceding paragraph may be used for:

a)      Dwellings and buildings used for private residences or for tourism purposes for natural persons who are not permanent residents of Cuba;

b)      dwellings or offices for foreign legal persons;

c)       real estate developments for tourism purposes.

ARTICLE 17.- Investments which consist of the acquisition of real property and which in and of themselves constitute a business activity are considered direct investments.

ARTICLE 18.- The conditions and terms under which the acquisition and transfer of the real property referred to in Article 15 of this Law is realized are determined in the Authorization and are in accordance with current law.

CHAPTER VII
**CONTRIBUTIONS AND THE VALUATION THEREOF**

ARTICLE 19. 1.- For the purposes of this Law, the following are contributions:

a)      Freely convertible currency;

b)      machinery, equipment or other physical or tangible assets;

c)      intellectual property rights and other rights on intangible assets;

d)      property rights on chattel and real property, other real rights thereon, including usufruct and surface rights; and

e)      other assets and rights.

Contributions not consisting of freely convertible currency are valued in that currency.

2.- The transfer to national investors of the ownership or of other real rights on assets belonging to the State, in order for them to be contributed by them, is made under the principles established in the Constitution of the Republic, and after certification by the Ministry of Finance and Prices has been obtained, after considering the opinion of the corresponding entity and with the approval of the Executive Committee of the Council of Ministers.

With regard to contributions of intellectual property rights or other rights on intangible assets, the provisions of pertinent current law shall be followed.

3.- Contributions in freely convertible currency are valued in accordance with their value on the international market; and for the purposes of conversion into national currency, for accounting purposes, they shall be in accordance with the exchange rates of the National Bank of Cuba. Freely convertible currency which constitutes a contribution of foreign capital enters the country through a banking institution authorized to execute transactions in the national territory.

4.- Contributions not made in freely convertible currency, except those consisting of intellectual property rights or other rights on intangible assets, which are to be used for the share capital of mixed companies or which constitute contributions in international economic partnership contracts, shall be valued using the methods freely agreed upon by the investors; it may be stipulated that their value be proved with the corresponding valuation certificates issued by entities which have authorization from the Ministry of Finance and Prices, those certificates being transcribed in the public instrument that is granted.

5.- The valuation of the contributions to be used for completely foreign capital companies which are not freely convertible currency, except those consisting of intellectual property rights or other rights on intangible assets, is always made by valuation certificates issued by entities which have authorization from the Ministry of Finance and Prices.

6.- Contributions consisting of intellectual property rights and other rights on intangible assets are valued using the methods freely and jointly agreed upon by the national and foreign investors and by the foreign investor and the Ministry of Foreign Investment and Economic Cooperation, in the case of contributions to a completely foreign capital company.

CHAPTER VIII

**NEGOTIATION AND AUTHORIZATION OF FOREIGN INVESTMENTS**

ARTICLE 20. 1.- For the creation of an international economic association, the national investor must negotiate each aspect of the investment with the foreign investor, including its economic feasibility, the respective contributions, the type of management and administration that the partnership has, as well as the legal documents for the formalization thereof.

2.- In the case of a completely foreign capital company, the Ministry of Foreign Investment and Economic Cooperation indicates to the investor the Cuban entity responsible for the sector, subsector or economic activity for which it seeks to make its investment, and with which it must analyze its proposal and obtain the corresponding written approval.

ARTICLE 21. 1.- The Authorization to make foreign investments in the national territory is granted by the Executive Committee of the Council of Ministers or by a Commission designated by the latter.

2.- The Executive Committee of the Council of Ministers is exclusively responsible for the Authorization of the foreign investment, in the case of any of the sectors indicated below or which have the following characteristics:

a)      When the sum of the contributions of the foreign and national investors is greater than the equivalent in freely convertible currency of ten (10) million United States dollars;

b)      completely foreign capital companies;

c)      those which are made to operate public services, such as transportation, communications, aqueducts, electricity, or to build and operate public works;

d)      When a foreign company is involved with shares held by a foreign government;

e)      when it includes the exploitation of a natural resource, in accordance with the provisions of environmental protection laws and the rational use of natural resources;

f)      those which comprise the transfer of State ownership or of a real right belonging to the State; and

g)      the business system of the armed forces.

3.- It is the responsibility of the Government Commission to authorize any foreign investments not mentioned in the preceding section.

ARTICLE 22. A foreign investor who seeks Authorization for a completely foreign capital company presents the request, jointly with the corresponding Cuban entity, to the Ministry of Foreign Investment and Economic Cooperation.

ARTICLE 23. 1.- For the establishment of a mixed enterprise or to enter into an international economic association contract, the request must be presented to the Ministry of Foreign Investment and Economic Cooperation, signed jointly by the foreign investor and the national investor.

2.- The following documents shall be attached to the investment request filed:

a)      For the establishment of mixed enterprises and to execute international economic association contracts, drafts of the "agreement of association" and the "statutes" of the

mixed company whose establishment is being sought or the "contract" that will be executed, as well as an economic feasibility study in both cases.

b)    With respect to the foreign investor, documentation that proves its identity and solvency; also, the powers of attorney which prove its legitimate representation if it participates as a legal entity.

c)    With respect to the national investor, should it be a state company or entity, the express written acceptance, issued by the supreme authority of the sector, subsector or activity of the economy in which the foreign investment is made; in the case of a completely Cuban capital commercial company or civil service company, it must be expressly authorized by agreement of the general meeting of shareholders thereof, which grants specific powers of attorney in order to sign the corresponding documents with the foreign investor.

d)    When the foreign investor proposes the establishment of a completely foreign capital company, acceptance issued by the supreme authority of the sector, subsector or economic activity in which it seeks to make its investment, the text of the bylaws, an economic feasibility study, documentation which proves the identity and solvency of the foreign investor and, also, in the case of a legal person, the powers of attorney which prove the legitimate representation thereof for the purposes of the investment in question.

e)    The documents attached to the investment request shall be duly legalized, when appropriate.

3.- In order for the Ministry of Foreign Investment and Economic Cooperation to accept the request, it must have been filed under the formalities described in this article.

4.- Once the request has been accepted by the Ministry of Foreign Investment and Economic Cooperation, it submits it as an inquiry to such other agencies or institutions as correspond, in order to obtain their opinion with respect to the matters that concern them.

5.- Once the preceding procedures have been performed, the Ministry of Foreign Investment and Economic Cooperation sends the file compiled for this purpose to the Executive Committee of the Council of Ministers or to the Government Commission, if appropriate, together with its evaluation, in order for the corresponding decision to be made.

6.- The decision denying or authorizing the foreign investment is issued within a period of sixty (60) calendar days, calculated from the date the request is filed, and the requesters must be notified thereof.

ARTICLE 24. 1.- The Authorization contains the conditions to which it shall be subject, the purpose and the term of the type of investment in question.

2.- Should the purpose of the investment approved be the operation of a public service, or the exploitation of a natural resource or the operation and execution of a public work, the Executive Committee of the Council of Ministers may grant the corresponding administrative concession, under the terms and conditions it establishes.

ARTICLE 25.- The conditions established in the Authorization may be clarified through the Ministry of Foreign Investment and Economic Cooperation, at the request of the parties.

CHAPTER IX

**THE BANKING SYSTEM**

ARTICLE 26. 1.- Mixed enterprises, foreign investors and national investors who are parties to international economic association contracts, jointly or indistinctly, and completely foreign capital companies, shall open accounts in freely convertible currency in any National

Banking System bank, through which they shall make the collections and payments generated in their operations.

2.- Mixed enterprises and national investors who are parties to international economic association contracts may open and operate accounts in freely convertible currency in banks domiciled abroad, after obtaining authorization from the National Bank of Cuba.

ARTICLE 27.- Mixed enterprises, the parties to international economic association contracts and completely foreign capital companies may be authorized exceptionally by the Executive Committee of the Council of Ministers to make specific collections and payments in non-convertible national currency.

ARTICLE 28.- Mixed enterprises, foreign investors and national investors who are parties to international economic association contracts and completely foreign capital companies may arrange loans in foreign currency:

a)     With a National Banking System bank or a financial entity approved by the National Bank of Cuba;

b)     with foreign banks or financial entities, in accordance with the pertinent legal regulations in effect.

## CHAPTER X
## THE IMPORT AND EXPORT SYSTEM

ARTICLE 29.- Mixed enterprises and national and foreign investors who are parties to international economic association contracts, and completely foreign capital companies, have the right, in accordance with the provisions established in that regard, to export their production directly, and to import, also directly, anything necessary for their purposes.

## CHAPTER XI
## THE LABOR SYSTEM

ARTICLE 30.- Foreign investment activities shall comply with the labor and social security laws in effect in Cuba, with the adjustments which appear in this Law.

ARTICLE 31. 1.- As a general rule, workers who provide their services in activities corresponding to foreign investments shall be Cubans or foreigners who are permanent residents of Cuba.

2.- However, the management and administrative bodies of mixed enterprises or of completely foreign capital companies or the parties to international economic association contracts may decide that certain upper-management positions or some technical jobs should be performed by persons who are not permanent residents of the country and, in these cases, they may determine the applicable labor system and the rights and obligations of those workers.

Persons hired who are not permanent residents of the country are subject to the immigration and alien stipulations in effect in the country.

ARTICLE 32. 1.- Mixed companies, parties to international economic association contracts and completely foreign capital companies may be authorized to create an economic stimulation fund for Cuban workers and workers who are permanent residents of Cuba, who provide their services in activities corresponding to the foreign investments.

2.- Contributions to the economic stimulation fund are made based on the profit obtained. The amount of these contributions shall be agreed upon by the mixed companies, the foreign investors and the national investors who are parties to international economic association contracts, and by completely foreign capital companies with the Ministry of Foreign Investment and Economic Cooperation.

ARTICLE 33. 1.- Cuban personnel and foreign personnel who are permanent residents of Cuba, who provide services in mixed enterprises, with the exception of the members of the management and administrative body thereof, are hired by an employer entity proposed by the Ministry of Foreign Investment and Economic Cooperation and are authorized by the Ministry of Labor and Social Security.

The members of the mixed company's management and administrative body are appointed by the general meeting of shareholders and have an employment relationship with the mixed company.

Only by exception, when the Authorization approving the mixed company is granted, can it be stipulated that all persons who provide their services in the mixed company may be hired directly by it, and always in accordance with the legal provisions in effect with respect to hiring personnel. ,

2.- Persons who provide their services to the parties of international economic association contracts are hired by the Cuban party, in accordance with the legal provisions in effect with respect to hiring personnel.

3.- In completely foreign capital companies, the services of Cuban workers or foreign workers who are permanent residents of Cuba, except the members of the senior management and administrative body thereof, are provided by means of a contract which the company executes with an employer entity proposed by the Ministry of Foreign Investment and Economic Cooperation and authorized by the Ministry of Labor and Social Security.

The members of the completely foreign capital company's management and administrative bodies are appointed by the company and are employed by it.

4.- Payments to Cuban personnel and foreign personnel who are permanent residents of Cuba are made in national currency, which must be obtained in advance with convertible funds, except for the exceptional case indicated in Article 27 of this Law.

ARTICLE 34. 1.- The employer entity cited in the preceding Article individually hires Cuban workers and foreign workers who are permanent residents, who remain employed by it. Said employer entity pays those workers their wages.

2. When mixed companies or completely foreign capital companies believe that a specific worker does not meet their requirements for the job, they may request the employer entity to replace him with another. Any labor claim is resolved in the employer entity, which pays the worker, at its cost, any indemnification to which he has a right, established by the competent authorities; in the preceding cases, the mixed enterprise or the completely foreign capital company reimburses the employer company for the payments, in accordance with the procedure established, and everything must be in accordance with current law.

ARTICLE 35.- Notwithstanding the provisions of the preceding articles of this Chapter, special labor regulations may be established, in exceptional cases, in the Authorization which approves the foreign investment.

ARTICLE 36.- Technological results consisting of innovations and other intangible assets subject to intellectual property protection and reached within the framework of an international economic association or by the Cuban workers of a foreign capital company are governed by the provisions of the pertinent current laws.

ARTICLE 37.- The Ministry of Labor and Social Security is authorized to issue any supplementary stipulations necessary for better application of the provisions of this Chapter, especially with respect to matters of hiring personnel and work discipline.

CHAPTER XII
**THE SPECIAL TAX AND CUSTOMS DUTIES**
**SYSTEM**

ARTICLE 38.- Mixed companies, foreign investors and national investors who are parties to international economic association contracts are subject to the payment of the following tax obligations:

a)     Income tax;

b)     tax on the use of the workforce and social security contributions;

c)     customs duties and other fees collectable in customs;

d)     ground transportation tax incurred by the ownership or possession of ground transportation automotive vehicles; and

e)     document tax, which includes the taxes and fees for requesting, obtaining or renewing certain documents.

ARTICLE 39.- For the purposes of this Law, the payment of taxes by the natural and legal persons cited in the preceding Article have the following benefits:

a)     Income Tax is paid by applying a tax rate of thirty percent (30%) on net taxable profit. In cases in which, for reasons of national interest, it is deemed appropriate, the Executive Committee of the Council of Ministers may partially or completely exempt payment of net income taxes which are reinvested in the country.

b)     When the exploitation of natural resources occurs, whether renewable or not, the tax rate for Income Tax may be increased by a decision of the Executive Committee of the Council of Ministers. In this case, the tax rate can be increased up to fifty percent (50%).

c)     With respect to the tax on the use of the workforce and the contribution to social security, the following is established:

  1. For the use of the workforce, a discount on the current tax rate is granted, applying a tax rate of 11%.

  2. A tax rate of 14% is applicable for the social security contribution.

  3. The tax rates stated in the two preceding sections are applicable on all salaries and other income which workers receive for any reason, except that which is given to them as an economic stimulation.

  d) Foreign investors who are partners in mixed enterprises or parties to international economic association contracts are exempt from paying the Personal Income Tax obtained from business profit.

ARTICLE 40.- Completely foreign capital companies are required to pay taxes for the entire duration of their operations, in accordance with current tax system legislation.

ARTICLE 41.- For the purposes of this Law, special facilities with respect to the customs system may be granted to the natural and legal persons cited in this Chapter, in accordance with the provisions of current laws.

ARTICLE 42.- The payment of taxes, customs duties and other fees collectable in customs is made in freely convertible currency, even in those cases in which the amount thereof is stated in national currency, except in the exceptional cases established by the Executive Committee of the Council of Ministers.

ARTICLE 43.- The Ministry of Finance and Prices, after having heard the opinion of the Ministry of Foreign Investment and Economic Cooperation, and keeping in mind the benefits and the amount of the investment, the recovery of capital and the instructions issued by the

Executive Committee of the Council of Ministers for priority sectors of the economy and such benefits as may be received by the domestic economy, may grant complete or partial exemptions, in a temporary manner, or grant the corresponding benefits, with respect to the special tax system.

ARTICLE 44.- Mixed enterprises, parties to international economic association contracts and completely foreign capital companies are subject to the "Most Significant Material Asset and Liability Valuation Standards" issued by the Ministry of Finance and Prices. Said persons may freely determine the accounting system which is most appropriate for them, provided that the system adopted is in accordance with universally accepted accounting principles and that it satisfies the tax requirements.

CHAPTER XIII
**RESERVES AND INSURANCE**

ARTICLE 45. 1.- Mixed enterprises, foreign and national investors in international economic association contracts and completely foreign capital companies establish, charged to their profit and obligatorily, a reserve to cover such contingencies as may occur in their operations.

2.- The procedure for the establishment, use and liquidation of the reserve stipulated in the preceding section is regulated by the Ministry of Finance and Prices.

ARTICLE 46.- Without prejudice to the reserve cited in the preceding Article, mixed companies, foreign and national investors in international economic association contracts and completely foreign capital companies may establish other voluntary reserves, subject to the regulations of the Ministry of Finance and Prices.

ARTICLE 47. **1.-** Mixed companies, foreign and national investors in international economic partnership contracts and completely foreign capital companies must contract, with companies authorized by the Ministry of Finance and Prices to operate in the country, the corresponding insurance on assets, property, operations and any other activities or risks which are required, based on premiums and other contractual conditions competitive at the international level.

2.- Industrial, tourism and other types of facilities or land which are given in lease by State companies or other national organizations are insured by the lessee in favor of the lessor, in accordance with the conditions stipulated in the preceding Section.

CHAPTER XIV
**THE FINANCIAL RECORDING AND REPORTING SYSTEM**

ARTICLE 48.- Mixed companies, national and foreign investors who are parties to international economic partnership contracts and completely foreign capital companies, prior to commencing their operations, must be recorded in the Register which exists for these activities in the Chamber of Commerce of the Republic of Cuba, within a period of thirty (30) calendar days calculated from the Authorization date.

ARTICLE 49. 1.- The natural and legal persons cited in this Chapter file with the Ministry of Foreign Investment and Economic Cooperation, within the ninety (90) natural days subsequent to the end date of their fiscal year, an Annual Report of their operations in said period.

2.- The filing of the Annual Report by the natural and legal persons contained in this Chapter is done independently of their reporting obligations to the Ministry of Finance and

Prices, the corresponding tax administration and any other statistical administration that may be established.

<div align="center">

CHAPTER XV
**FREE ZONES AND INDUSTRIAL PARKS**

</div>

ARTICLE 50.- In order to stimulate export and international trade, the Executive Committee of the Council of Ministers may authorize the establishment of Free Zones and Industrial Parks, in delimited areas of the national territory.

ARTICLE 51. 1.- Those zones in which a special system for customs, currency exchange, taxes, labor, migration, public order, capital investment and foreign trade may be applied, by decision of the Executive Committee of the Council of Ministers, and in which foreign investors may participate to perform financial transactions for import, export, storage, production activities or re-export, are considered Free Zones.

2.- Industrial Parks are considered those in which a special system for customs, taxes, labor, capital investment and foreign trade, to perform production activities with the participation of foreign capital, may apply, by decision of the Executive Committee of the Council of Ministers.

ARTICLE 52.- If appropriate, the specific facilities and incentives being offered to the foreign investor in Free Zones and Industrial Parks are contained in the foreign investment authorizations.

ARTICLE 53.- The establishment and standards of the operation of Free Zones and of Industrial Parks shall be regulated by special legislation issued in this regard.

<div align="center">

CHAPTER XVI
**ENVIRONMENTAL PROTECTION**

</div>

ARTICLE 54.- Foreign investment is conceived and stimulated within the context of the sustainable development of the country, which implies that the conservation of the environment and the rational use of natural resources shall be attended to during the performance thereof.

ARTICLE 55.- The Ministry of Foreign Investment and Economic Cooperation, in the appropriate cases, submits the investment proposals it receives for the consideration of the Ministry of Science, Technology and the Environment, which evaluates their appropriateness from an environmental point of view and decides whether an Environmental Impact Study needs to be undertaken; it also evaluates the appropriateness of granting the pertinent Environmental Permits and the control and inspection system in accordance with the provisions of the current laws.

ARTICLE 56. 1.- The Ministry of Science, Technology and the Environment issues such measures as are required to provide an adequate resolution of situations which cause damage, danger or risks to the environment and the rational use of natural resources.

2.- The natural or legal person responsible for the damage is required to reestablish the previous environmental situation, to repair material damage and to indemnify damages.

<div align="center">

CHAPTER XVII
**THE CONFLICT RESOLUTION SYSTEM**

</div>

ARTICLE 57. 1.- Such conflicts as arise in the relations between partners in a mixed enterprise, or between foreign investors and national investors who are parties to international economic association contracts or between partners in a completely foreign capital company in

the form of a capital stock company through registered shares, are resolved in accordance with the agreements established in the documents of constitution.

2.- The same rule applies when the conflict occurs between one or more foreign partners and the mixed enterprise or the completely foreign capital company to which he or they pertain.

ARTICLE 58.- Litigation on the execution of economic contracts which arises between mixed companies, foreign investors or national investors who are parties to international economic partnership contracts or completely foreign capital companies and State companies or other national entities are the jurisdiction of the different levels of the Economic Sections of the People's Courts established by the Government Board of the Supreme People's Court.

## SPECIAL PROVISION

SOLE: Mixed companies, national and foreign investors who are parties to international economic partnership contracts and completely foreign capital companies are subject to such regulations as are established with respect to Protection against Natural Catastrophes and Disasters.

## TRANSITIONAL STIPULATIONS

FIRST: This Law is applicable to mixed companies and other forms of international economic partnership existing and in operation on the date that it takes effect. However, the benefits granted under the scope of Decree-Law 50, of February 15, 1982, shall remain in effect during the entire term of the international economic association.

SECOND: This Law is applicable to foreign investment Authorization requests which are being processed on the date that it takes effect. The Ministry of Foreign Investment and Economic Cooperation shall establish, together with the requesters, the manner in which to proceed.

THIRD: The supplementary provisions issued by the various agencies of the Central State Administration for better application and enforcement of the precepts of Decree-Law No. 50, of February 15, 1982, with respect to each one, shall continue to be followed to the extent that they do not contradict this law; the aforementioned agencies, in a period of no more than three months, calculated from the date that this Law takes effect, shall revise the aforementioned precepts and make them agree with the prescriptions hereof.

## FINAL PROVISIONS

FIRST: Decree-Law No. 50, "On Economic Associations between Cuban and Foreign Entities," of February 15, 1982, and any other legal provisions that contradict the prescriptions of this Law, which shall begin to take effect on its publication in the Gaceta Oficial de la Republica, are repealed.

SECOND: The Executive Committee of the Council of Ministers and the Agencies of the Central State Administration, in accordance with the jurisdiction thereof, are authorized to issue such stipulations as are required for the improved performance of the provisions established by this Law.

EXECUTED in the meeting hall of the National People's Assembly, Convention Center, in the city of Havana, on the fifth day of the month of September, nineteen hundred ninety-five.



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Lauren Perkowski, hereby certify that the following document is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

*Law 77*

Lauren Perkowski

Sworn to before me this

22nd day of January 2010

Signature, Notary Public

KRISTIN MILORO
Notary Public - State of New York
No. 01MI6212799
Qualified in New York County
Commission Expires Oct 19, 2013

Stamp, Notary Public

ISSN 0864-0793

# GACETA OFICIAL
## DE LA REPUBLICA DE CUBA

EXTRAORDINARIA    LA HABANA, MIERCOLES 6 DE SEPTIEMBRE DE 1995    AÑO XCIII

SUSCRIPCION Y DISTRIBUCION: Ministerio de Justicia, Calle O No. 216 entre 23 y 25, Plaza, Código Postal 10400. Telef. 32-45-36 al 39 ext. 220

Número 3 — Precio $1.00    Página 5

## ASAMBLEA NACIONAL DEL PODER POPULAR

RICARDO ALARCON DE QUESADA, Presidente de la Asamblea Nacional del Poder Popular de la República de Cuba.

HAGO SABER: Que la Asamblea Nacional del Poder Popular de la República de Cuba, en su sesión del día 5 de septiembre de 1995, correspondiente al Quinto Período Ordinario de Sesiones de la Cuarta Legislatura, ha aprobado lo siguiente:

POR CUANTO: En el mundo actual, sin la existencia del campo socialista, con una economía mundial que se globaliza y fuertes tendencias hegemónicas en el campo económico, político y militar, Cuba, en aras de preservar sus conquistas y sometida además a un feroz bloqueo, careciendo de capital, de determinadas tecnologías, muchas veces de mercado y necesitada de reestructurar su industria, puede obtener a través de la inversión extranjera, sobre la base del más estricto respeto a la independencia y soberanía nacional, beneficios con la introducción de tecnologías novedosas y de avanzada, la modernización de sus industrias, mayor eficiencia productiva, la creación de nuevos puestos de trabajo, mejoramiento de la calidad de los productos y los servicios que se ofrecen, y una reducción en los costos, mayor competitividad en el exterior, el acceso a determinados mercados, lo que en su conjunto apoyarían los esfuerzos que debe realizar el país en su desarrollo económico y social.

POR CUANTO: La Constitución de la República, tal como fue reformada en el año 1992, reconoce, entre otras formas de propiedad, la de las empresas mixtas, sociedades y asociaciones económicas que se constituyan conforme a la ley y prevé, en relación con la propiedad estatal y con carácter excepcional, si ello resultara útil y necesario al país, la trasmisión en propiedad, parcial o total, de objetivos económicos destinados a su desarrollo.

POR CUANTO: Los cambios que tienen lugar en la economía nacional, dirigidos a promover e impulsar activamente la inversión de capital extranjero en Cuba y a ampliar las posibilidades en cuanto a formas y áreas de inversión, entre otros factores esenciales, rebasan las posibilidades del marco legal ofrecido hasta el momento por el Decreto-Ley No. 50, "Sobre asociación económica entre entidades cubanas y extranjeras", del 15 de febrero de 1982.

POR CUANTO: Para ampliar y facilitar el proceso de participación de la inversión extranjera en la economía nacional, es conveniente adoptar una nueva legislación que brinde mayor seguridad y garantía al inversionista extranjero, y permita obtener fundamentalmente y en función del desarrollo sostenible del país y de la recuperación de la economía nacional, recursos financieros, tecnologías y nuevos mercados en cualquier sector productivo y en el sector de los servicios donde se identifiquen intereses mutuos.

POR TANTO: La Asamblea Nacional del Poder Popular, en uso de las atribuciones que le están conferidas en el Artículo 75, inciso b) de la Constitución de la República, acuerda dictar la siguiente

## LEY NUMERO 77
## LEY DE LA INVERSION EXTRANJERA
### CAPITULO I
### DEL OBJETO Y CONTENIDO

ARTICULO 1.1.—Esta Ley tiene por objeto promover e incentivar la inversión extranjera en el territorio de la República de Cuba, para llevar a cabo actividades lucrativas que contribuyan al fortalecimiento de la capacidad económica y al desarrollo sostenible del país, sobre la base del respeto a la soberanía e independencia nacionales y de la protección y uso racional de los recursos naturales; y establecer, a tales efectos, las regulaciones legales principales bajo las cuales debe realizarse aquélla.

2.—Las normas que contiene esta Ley comprenden, entre otros aspectos, las garantías que se conceden a los inversionistas, los sectores de la economía nacional que pueden recibir inversiones extranjeras, las formas que pueden adoptar éstas, los distintos tipos de aportes, el procedimiento para su autorización, los regímenes bancario, impositivo especial, y laboral para esas inversiones, y las normas relativas a la protección del medio ambiente y al uso racional de los recursos naturales.

### CAPITULO II
### DEL GLOSARIO

ARTICULO 2.—En esta Ley se utilizan con la acepción que en cada caso se indica, los términos siguientes:

a) Asociación económica internacional:
Unión de una o más inversionistas nacionales y uno o más inversionistas extranjeros dentro del territorio nacional para la producción de bienes, la prestación de servicios, o ambos, con finalidad lucrativa en sus dos modalidades, que comprende las empresas mixtas y los contratos de asociación económica internacional.

b) Autorización:
Documento otorgado por el Comité Ejecutivo del Consejo de Ministros o por una Comisión de Gobierno, para la realización de alguna de las formas de inversión extranjera previstas en esta Ley, durante un término determinado.

c) Capital extranjero:
Capital procedente del extranjero, así como la parte de las utilidades o dividendos pertenecientes al inversionista extranjero que sean reinvertidos a tenor de esta Ley.



GACETA OFICIAL   7 de septiembre de 1995

d) Cargos de dirección superior:
Cargos de miembros de los órganos de dirección y administración de la empresa mixta y de la empresa de capital totalmente extranjero, así como los representantes de las partes en los contratos de asociación económica internacional y el personal de dirección de las empresas de capital totalmente extranjero.

e) Comisión de Gobierno:
Comisión designada por el Comité Ejecutivo del Consejo de Ministros con facultades para aprobar las inversiones de capital extranjero en su área de competencia en correspondencia con lo dispuesto por esta Ley.

f) Concesión administrativa:
Acto unilateral del Gobierno de la República, por el cual se otorga a una entidad el derecho a explotar un servicio público, un recurso natural, ó a ejecutar y explotar una obra pública bajo los términos y condiciones que se establezcan.

g) Contrato de asociación económica internacional:
Pacto o acuerdo entre uno o más inversionistas nacionales y uno o más inversionistas extranjeros para realizar conjuntamente acto propios de una asociación económica internacional, aunque sin constituir persona jurídica distinta a las partes.

h) Empresa de capital totalmente extranjero:
Entidad mercantil con capital extranjero, sin la concurrencia de ningún inversionista nacional.

i) Empresa mixta:
Compañía mercantil cubana que adopta la forma de sociedad anónima por acciones nominativas, en la que participan como accionistas uno o más inversionistas nacionales y uno o más inversionistas extranjeros.

j) Entidad empleadora:
Organización cubana con personalidad jurídica, facultada para otorgar con una empresa mixta o de capital totalmente extranjero, un contrato mediante el cual le facilitará a su solicitud, los trabajadores de distintas calificaciones que necesite, quienes mantendrán su vínculo laboral con dicha organización.

k) Haberes:
Salarios, ingresos y demás remuneraciones, así como los incrementos, compensaciones u otros pagos adicionales que perciban los trabajadores cubanos y extranjeros, con excepción de los provenientes del fondo de estimulación económica, si éste existiere.

l) Inversión extranjera:
Aportes de capital realizados por inversionistas extranjeros, en cualquiera de las formas previstas en esta Ley.

m) Inversionista extranjero:
La persona natural o jurídica, con domicilio en el extranjero y capital extranjero, que se convierte en accionista de una empresa mixta, o participe en una empresa de capital totalmente extranjero, o que figura como parte en los contratos de asociación económica internacional.

n) Inversionista nacional:
Empresa o entidad estatal con personalidad jurídica, sociedad anónima u otra persona jurídica, de nacionalidad cubana, con domicilio en el territorio nacional, que se convierte en accionista de una empresa mixta o figura como parte en los contratos de asociación económica internacional.

## CAPITULO III
## DE LAS GARANTIAS A LOS INVERSIONISTAS

ARTICULO 3.—Las inversiones extranjeras dentro del territorio nacional gozan de plena protección y seguridad, y no pueden ser expropiadas, salvo que esa acción se ejecute por motivos de utilidad pública o interés social, declarados por el Gobierno, en concordancia con lo dispuesto en la Constitución de la República, la legislación vigente, y los acuerdos internacionales sobre promoción y protección recíproca de inversiones suscritos por Cuba, previa indemnización en moneda libremente convertible por su valor comercial establecido de mutuo acuerdo.

De no llegarse a acuerdo, la fijación del precio se efectúa por una organización de reconocido prestigio internacional en la valoración de negocios, autorizada por el Ministerio de Finanzas y Precios y contratada al efecto por acuerdo de las partes, o del inversionista extranjero y el Ministerio para la Inversión Extranjera y la Colaboración Económica, si la afectada fuera una empresa de capital totalmente extranjero.

ARTICULO 4. 1.—El término de la autorización otorgada para el desarrollo de sus operaciones por una empresa mixta, por las partes en un contrato de asociación económica internacional, o por la empresa de capital totalmente extranjero, puede ser prorrogado por la propia autoridad que la otorgó, siempre que se solicite por las partes interesadas antes del término fijado.

2.—De no prorrogarse el término a su vencimiento, se procederá a la liquidación de la empresa mixta, del contrato de asociación económica internacional o de la empresa de capital totalmente extranjero, según lo acordado en los documentos constitutivos y lo dispuesto por la legislación vigente, y lo que corresponda al inversionista extranjero, le será pagado en moneda libremente convertible, salvo pacto expreso en contrario.

ARTICULO 5.—Las inversiones extranjeras son igualmente protegidas contra reclamaciones de terceros, que se ajusten a derecho, conforme a las leyes cubanas y a lo que dispongan los tribunales de justicia nacionales.

ARTICULO 6. 1.—El inversionista extranjero en una asociación económica internacional puede, en cualquier momento, previo acuerdo de las partes, vender o transmitir en cualquier otra forma al Estado, o a un tercero previa autorización gubernamental, su participación total o parcial en ella, recibiendo el precio correspondiente en moneda libremente convertible, salvo pacto expreso en contrario.

2.—El inversionista extranjero en una empresa de capital totalmente extranjero puede, en cualquier momento, vender o transmitir en cualquier otra forma al Estado, o a un tercero, previa autorización gubernamental, su participación total o parcial en ella, recibiendo el precio correspondiente en moneda libremente convertible, salvo pacto expreso en contrario.

ARTICULO 7.—El precio que le corresponda recibir al inversionista extranjero en los casos a que se refieren los artículos 4 y 6 de esta Ley, es fijado por acuerdo de ambas partes, o en su defecto por una organización de reconocido prestigio internacional en la valoración de negocios, autorizada por el Ministerio de Finanzas y Precios para operar en el territorio nacional y contratada de común por las partes; o por acuerdo del inversionista extranjero en una empresa de capital totalmente extranjero con el Ministerio para la Inversión Extranjera y la Colaboración Económica.

ARTICULO 8. 1.—El Estado garantiza al inversionista extranjero la libre transferencia al exterior, en moneda libremente convertible, sin pago de impuesto o ninguna otra exacción relacionada con dicha transferencia, de:

a) Las utilidades netas o dividendos que obtenga por la explotación de la inversión; y

b) las cantidades que deberá recibir en los casos a que se refieren los artículos 3, 4 y 6 de esta Ley.

2.—Los ciudadanos extranjeros que presten sus servicios a una empresa mixta, a las partes en cualquier otra forma de asociación económica internacional, o a una empresa de capital totalmente extranjero, siempre que no sean residentes permanentes en Cuba, tienen derecho a transferir al exterior los haberes que perciban, dentro de la cuantía y conforme a las demás regulaciones dictadas por el Banco Nacional de Cuba.

ARTICULO 9.—Las empresas mixtas y las partes en los contratos de asociación económica internacional, pagan los impuestos que figuran en el régimen especial que dispone esta Ley, hasta el vencimiento del término por el que fueron autorizadas.

Lo dispuesto en el párrafo anterior no es aplicable a las tasas, contribuciones, con excepción de la contribución a la seguridad social, y deberes formales establecidos en la legislación vigente, ni a las obligaciones de pago incluidas en la Ley de Minas de 21 de diciembre de 1994, u otras disposiciones legales que se dicten en materia de recursos naturales, las que son satisfechas en la forma y cuantía dispuestas en las mismas.

## CAPITULO IV
## DE LOS SECTORES DESTINATARIOS DE INVERSIONES EXTRANJERAS

ARTICULO 10.—Pueden ser autorizadas inversiones extranjeras en todos los sectores, con la excepción de los servicios de salud y educación a la población y las instituciones armadas, salvo en su sistema empresarial.

## CAPITULO V
## DE LAS INVERSIONES EXTRANJERAS
### SECCION PRIMERA
#### De las manifestaciones y formas de la inversión extranjera

ARTICULO 11.—Se consideran inversiones de capital extranjero, a los efectos de esta Ley:

a) Las inversiones directas, en las que el inversionista extranjero participa de forma efectiva en la gestión de una empresa mixta o de capital totalmente extranjero y las que constituyen aportaciones suyas en contratos de asociación económica internacional; y

b) las inversiones en acciones, o en otros títulos-valores, públicos o privados, que no tienen la condición de inversiones directas.

ARTICULO 12.—Las inversiones extranjeras adoptarán alguna de las formas siguientes:

a) Empresa mixta;

b) contrato de asociación económica internacional; y

c) empresa de capital totalmente extranjero.

### SECCION SEGUNDA
#### De la empresa mixta

ARTICULO 13.—1.—La empresa mixta implica la formación de una persona jurídica distinta a la de las partes, adopta la forma de compañía anónima por acciones nominativas y le es aplicable la legislación vigente en la materia.

2.—Las proporciones del capital social que deben aportar el inversionista extranjero y el inversionista nacional, son acordadas por ambos socios y establecidas en la Autorización.

3.—La constitución de una empresa mixta requiere la forma de escritura pública y, como anexos a ese instrumento notarial se insertan en ella el convenio de asociación económica, los estatutos por los que se regirá la misma y la Autorización.

El convenio de asociación económica contiene los pactos fundamentales entre los socios para la conducción y desarrollo de las operaciones de la empresa mixta, como para la consecución de sus objetivos, entre ellos, los que garantizan la participación de la parte cubana en la administración o coadministración de la empresa y lo relativos al mercado que se asegura para la producción o los servicios de la empresa; las bases del sistema de contabilidad y el cálculo y distribución de las utilidades.

Los estatutos de la empresa mixta incluyen disposiciones relacionadas con la organización y operación de la sociedad, entre ellas las referentes a la junta general de accionistas, sus atribuciones y organización; al quórum requerido y los requisitos que se exijan para el ejercicio del derecho al voto en la junta general de accionistas; la estructura y las atribuciones del órgano de dirección y administración; el método mediante el cual estos órganos adoptan sus decisiones, tanto en la junta general de accionistas como en el órgano de dirección y administración, el cual puede ser desde la simple mayoría hasta la unanimidad; los casos de disolución y el procedimiento para liquidar la empresa; así como otras estipulaciones que resulten de la legislación vigente en esta materia, de esta Ley y del acuerdo de las partes.

4.—Si en la escritura pública no se procede a designar la persona o personas que han de administrar la empresa mixta, posteriormente puede celebrarse la primera reunión de la junta general de accionistas y designar los miembros de su órgano de dirección y administración, según los estatutos.

5.—Creada una empresa mixta, no pueden cambiar los socios, sino por acuerdo de las partes y con la aprobación de la autoridad que otorgó la Autorización.

Se entiende por cambio de socios, la sustitución del extranjero por otra persona natural o jurídica o del nacional por otra persona jurídica.

6.—Las empresas mixtas pueden crear oficinas, representaciones, sucursales y filiales, tanto en el territorio nacional como en el extranjero, así como tener participaciones en entidades en el exterior.

7.—La empresa mixta adquiere personalidad jurídica, cuando se inscribe en el Registro que sobre estas actividades existe en la Cámara de Comercio de la República de Cuba.

### SECCION TERCERA
#### Del contrato de asociación económica internacional

ARTICULO 14. 1.—El contrato de asociación económica internacional tiene, entre otras, las características siguientes:

a) No implica la constitución de una persona jurídica distinta a la de los contratantes;

b) puede tener por objeto la realización de cualquier actividad que le sea autorizada a las partes;

c) los contratantes tienen libertad para estipular todos los pactos y cláusulas que entiendan convenir a sus intereses, con tal de que no infrinjan el objeto autorizado, las condiciones de la Autorización o la legislación vigente;

d) cada parte contratante hace aportaciones distintas, constituyendo una acumulación de participaciones de las cuales son propietarios en todo momento y, aunque sin llegar a constituir un capital social, les es dable llegar a formar un fondo común, siempre y cuando quede determinada la porción de propiedad de cada uno de ellas.

2.—En el texto del contrato, se hace constar la proporción en que cada una de las partes abona los impuestos; y las épocas del año en que se procede a la distribución de los beneficios entre ellas, previo cum-



plimiento de sus obligaciones fiscales, y a la contribución a las pérdidas, de producirse éstas.

3.—En el contrato de asociación económica internacional, la parte que realiza un acto de gestión que beneficie u todas, es responsable frente a terceros por el total, pero en la relación interna, cada una es responsable en la medida o en la proporción prevista en el contrato.

4.—Otorgado un contrato de asociación económica internacional, no pueden cambiar los partícipes, sino por acuerdo de las partes y con la aprobación de la autoridad que concedió la Autorización.

5.—El contrato de asociación económica internacional requiere para ser otorgado la forma de escritura pública y entra en vigor al momento de su inscripción en el Registro que sobre estas actividades existe en la Cámara de Comercio de la República de Cuba.

### SECCION CUARTA
#### De la empresa de capital totalmente extranjero

ARTICULO 15. 1.—En la empresa de capital totalmente extranjero, el inversionista extranjero ejerce la dirección de la misma, disfruta de todos los derechos y responde por todas las obligaciones prescritas en la autorización.

2.—El inversionista extranjero en empresas de capital totalmente extranjero, puede actuar como persona natural o jurídica dentro del territorio nacional cubano:

a) Creando una filial cubana de la entidad extranjera de la que es propietario, bajo la forma de una compañía anónima por acciones nominativas e inscribiéndola en el Registro de la Cámara de Comercio de la República de Cuba; o

b) inscribiéndose en el Registro de la Cámara de Comercio de la República de Cuba y actuando por sí mismo.

### CAPITULO VI
#### DE LAS INVERSIONES EN BIENES INMUEBLES

ARTICULO 16. 1.—Al amparo de esta Ley se pueden realizar inversiones en bienes inmuebles y adquirir su propiedad u otros derechos reales.

2.—Las inversiones en bienes inmuebles a que se refiere el apartado anterior, pueden destinarse a:

a) Viviendas y edificaciones, dedicadas a residencia particular o para fines turísticos propios, de personas naturales no residentes permanentes en Cuba;

b) viviendas u oficinas de personas jurídicas extranjeras;

c) desarrollos inmobiliarios con fines de explotación turística.

ARTICULO 17.—Las inversiones que consisten en la adquisición de inmuebles que constituyen en sí mismas una actividad empresarial, se consideran inversiones directas.

ARTICULO 18.—Las condiciones y términos bajo los cuales se debe realizar la adquisición y transmisión de los inmuebles a que se refiere el Artículo 16 de esta Ley, se determinan en la Autorización y se ajustan a la legislación vigente.

### CAPITULO VII
#### DE LOS APORTES Y SU VALORACION

ARTICULO 19. 1.—A los fines de esta Ley, son aportes los siguientes:

a) Moneda libremente convertible;

b) maquinarias, equipos, u otros bienes físicos o tangibles;

c) derechos de propiedad intelectual y otros derechos sobre bienes intangibles;

d) derecho de propiedad sobre bienes muebles e inmuebles, y otros derechos reales sobre éstos, incluidos los de usufructo y superficie; y

e) otros bienes y derechos.

Los aportes que no consistan en moneda libremente convertible, se valoran en esa moneda.

2.—La transmisión a favor de los inversionistas nacionales de la propiedad o de otros derechos reales sobre bienes de propiedad estatal, para que sean aportados por aquellos, se efectúa bajo los principios establecidos en la Constitución de la República, y previa certificación del Ministerio de Finanzas y Precios, oído el parecer del organismo correspondiente y con la aprobación del Comité Ejecutivo del Consejo de Ministros.

En lo que respecta a los aportes de derechos de propiedad intelectual u otros derechos sobre bienes intangibles, se estará a lo dispuesto en la legislación vigente sobre esta materia.

3.—Los aportes en moneda libremente convertible, se tasan por su valor en el mercado internacional; y a los efectos del cambio en moneda nacional, para fines contables, se ajustan a las tasas de cambio del Banco Nacional de Cuba. La moneda libremente convertible que constituye aporte de capital extranjero, ingresa al país a través de una entidad bancaria autorizada a realizar operaciones en el territorio nacional.

4.—Los aportes que no sean moneda libremente convertible, excepto los consistentes en derechos de propiedad intelectual y otros derechos sobre bienes intangibles, que estén destinados al capital social de empresas mixtas, o que constituye aportaciones en contratos de asociación económica internacional, se valoran a través de los métodos que acuerden libremente los inversionistas, pudiendo disponerse que su valor se acredite con los correspondientes certificados periciales extendidos por entidades que posean autorización del Ministerio de Finanzas y Precios, y son transcriptos en la escritura pública que se otorgue.

5.—La valoración de los aportes destinados a empresas de capital totalmente extranjero que no sean moneda libremente convertible, excepto los consistentes en derechos de propiedad intelectual y otros derechos sobre bienes intangibles, se hacen siempre por vía de certificados periciales extendidos por entidades que posean autorización del Ministerio de Finanzas y Precios.

6.—Los aportes consistentes en derechos de propiedad intelectual y otros derechos sobre bienes intangibles, se valoran por los métodos que libremente acuerden de conjunto los inversionistas nacionales y extranjeros y por el inversionista extranjero con el Ministerio para la Inversión Extranjera y la Colaboración Económica, en el caso de aportes a una empresa de capital totalmente extranjero.

### CAPITULO VIII
#### DE LA NEGOCIACION Y AUTORIZACION DE LA INVERSION EXTRANJERA

ARTICULO 20. 1.—Para la creación de una asociación económica internacional, el inversionista nacional debe negociar con el inversionista extranjero cada aspecto de la inversión, incluida su factibilidad económica, los aportes respectivos, la forma de dirección y administración que tiene esa asociación, así como los documentos jurídicos para su formalización.

2.—Si se tratase de una empresa de capital totalmente extranjero, el Ministerio para la Inversión Extranjera y la Colaboración Económica indica al inversionista la entidad cubana responsable de la rama, subrama o de la actividad económica respecto a la que pretende realizar su inversión, con la que debe analizar su proposición y obtener la correspondiente aprobación escrita.

ARTICULO 21. 1.—La Autorización para efectuar inversiones extranjeras en el territorio nacional es otorgada por el Comité Ejecutivo del Consejo de Ministros, o por una Comisión designada por éste.

2.—Es facultad exclusiva del Comité Ejecutivo del Consejo de Ministros la Autorización de la inversión extranjera, cuando se trate de alguno de los sectores que a continuación se señalan o que tenga las características siguientes:

a) Cuando la suma de los aportes de los inversionistas extranjeros y nacionales, sea superior al equivalente en moneda libremente convertible a diez (10) millones de dólares de los Estados Unidos de América;

b) las empresas de capital totalmente extranjero;

c) las que se realicen para explotar servicios públicos tales como transporte, comunicaciones, acueductos, electricidad, o para construir y explotar una obra pública;

d) Cuando intervenga una empresa extranjera con participación de capital de un estado extranjero;

e) cuando incluya la explotación de un recurso natural, de acuerdo con lo dispuesto en la legislación sobre protección del medio ambiente y el uso racional de los recursos naturales;

f) las que comprenden la transmisión de la propiedad estatal o de un derecho real propiedad del Estado; y

g) el sistema empresarial de las instituciones armadas.

3.—Corresponde a la Comisión de Gobierno la autorización de las inversiones extranjeras no mencionadas en el apartado anterior.

ARTICULO 22.—El inversionista extranjero que pretende obtener Autorización para una empresa de capital totalmente extranjero, presenta conjuntamente con la entidad cubana correspondiente, la solicitud ante el Ministerio para la Inversión Extranjera y la Colaboración Económica.

ARTICULO 23. 1.—Para la constitución de una empresa mixta o la celebración de un contrato de asociación económica internacional, la solicitud debe ser presentada ante el Ministerio para la Inversión Extranjera y la Colaboración Económica, suscrita conjuntamente por el inversionista extranjero y por el inversionista nacional.

2.—Con la solicitud de inversión que se presenta, se acompañan los documentos siguientes:

a) Para la constitución de empresas mixtas y el otorgamiento de contratos de asociación económica internacional, proyectos de "convenio de asociación económica", de los "estatutos" de la empresa mixta que se pretende constituir o del "contrato" que será otorgado, así como un estudio de factibilidad económica, en ambos casos.

b) Respecto al inversionista extranjero, documentación que acredite su identidad y solvencia; y, además, los poderes que prueben su representación si concurre en el carácter de persona jurídica.

c) En cuanto al inversionista nacional, de tratarse de una empresa o entidad estatal, la aceptación expresa en forma escrita, extendida por la máxima autoridad de la rama, subrama o actividad de la economía en que se realiza la inversión extranjera; de tratarse de una sociedad mercantil o civil de servicio, de capital totalmente cubano, debe ser autorizada expresamente por el acuerdo de su junta general de accionistas, la que concede poderes específicos, a los efectos de suscribir los documentos correspondientes con el inversionista extranjero.

d) Cuando el inversionista extranjero se proponga la constitución de una empresa de capital totalmente extranjero, aceptación extendida por la máxima autoridad de la rama, subrama o actividad económica en la cual pretende realizar su inversión, texto de los estatutos, estudio de factibilidad económica, documentación que acredite la identidad y solvencia del inversionista extranjero, y además, de tratarse de una persona jurídica, los poderes que acreditan su representación legítima a los efectos de la inversión de que se trate.

e) Los documentos que acompañan la solicitud de inversión, deberán estar debidamente legalizados, cuando proceda.

3.—Para que el Ministerio para la Inversión Extranjera y la Colaboración Económica admita la solicitud, esta debe haber sido presentada con las formalidades descritas en el presente artículo.

4.—Admitida la solicitud por el Ministerio para la Inversión Extranjera y la Colaboración Económica, la somete en calidad de consulta a cuantos otros organismos e instituciones corresponda, a los efectos de obtener su dictamen en lo que a ellos concierne.

5.—Cumplidos los anteriores trámites, el Ministerio para la Inversión Extranjera y la Colaboración Económica eleva al Comité Ejecutivo del Consejo de Ministros o a la Comisión de Gobierno, en su caso, el expediente formado al efecto con su evaluación, para que se adopte la decisión correspondiente.

6.—La decisión denegando o autorizando la inversión extranjera, se dicta dentro del término de sesenta (60) días naturales, contados a partir de la fecha de presentación de la solicitud y debe ser notificada a los solicitantes.

ARTICULO 24. 1.—En la Autorización, se consignan las condiciones a que estará sometida ésta, el objetivo y el término de la forma de inversión de que se trate.

2.—Si el objetivo de la inversión aprobada es la explotación de un servicio público, o de un recurso natural, o la explotación y ejecución de una obra pública, el Comité Ejecutivo del Consejo de Ministros puede otorgar la correspondiente concesión administrativa, bajo los términos y condiciones que establezca.

ARTICULO 25.—Las condiciones establecidas en la Autorización, pueden ser aclaradas a través del Ministerio para la Inversión Extranjera y la Colaboración Económica, a instancia de las partes.

## CAPITULO IX
### DEL REGIMEN BANCARIO

ARTICULO 26. 1.—Las empresas mixtas, los inversionistas extranjeros y los inversionistas nacionales partes en contratos de asociación económica internacional, conjunta o indistintamente, y las empresas de capital totalmente extranjero, abren cuentas en moneda libremente convertible en cualquier banco del Sistema Bancario Nacional, a través de las cuales efectúan los cobros y pagos que generan sus operaciones.

2.—Las empresas mixtas y los inversionistas nacionales partes en contratos de asociación económica internacional, pueden abrir y operar cuentas en moneda libremente convertible en bancos radicados en el extranjero, previa autorización del Banco Nacional de Cuba.

ARTICULO 27.—Las empresas mixtas, las partes en los contratos de asociación económica internacional y las empresas de capital totalmente extranjero, pueden ser autorizadas excepcionalmente por el Comité Ejecutivo del Consejo de Ministros para realizar determinados cobros y pagos en moneda nacional no convertible.

ARTICULO 28.—Las empresas mixtas, los inversionistas extranjeros y los inversionistas nacionales partes en



contratos de asociación económica internacional, y las empresas de capital totalmente extranjero, pueden concertar préstamos en moneda extranjera:

a) Con un banco del Sistema Bancario Nacional o entidad financiera aprobada por el Banco Nacional de Cuba;

b) con bancos o entidades financieras en el exterior, con arreglo a las regulaciones legales vigentes sobre esta materia.

## CAPITULO X
### DEL REGIMEN DE EXPORTACION E IMPORTACION

ARTICULO 29.—Las empresas mixtas, los inversionistas nacionales y extranjeros partes en contratos de asociación económica internacional, y las empresas de capital totalmente extranjero, tienen derecho, de acuerdo con las disposiciones establecidas a tales efectos, a exportar su producción directamente, y a importar, también directamente, lo necesario para sus fines.

## CAPITULO XI
### DEL REGIMEN LABORAL

ARTICULO 30.—En la actividad de las inversiones extranjeras se cumple la legislación laboral y de seguridad social vigente en Cuba, con las adecuaciones que figuran en esta Ley.

ARTICULO 31. 1.—Los trabajadores que presten sus servicios en las actividades correspondientes a las inversiones extranjeras serán, como norma general, cubanos o extranjeros residentes permanentes en Cuba.

2.—No obstante, los órganos de dirección y administración de las empresas mixtas o de las empresas de capital totalmente extranjero o las partes en los contratos de asociación económica internacional, pueden decidir que determinados cargos de dirección superior o algunos puestos de trabajo de carácter técnico se desempeñen por personas no residentes permanentes en el país y, en esos casos, determinar el régimen laboral a aplicar y los derechos y obligaciones de esos trabajadores.

Las personas no residentes permanentes en el país que sean contratados, están sujetas a las disposiciones de inmigración y extranjería vigentes en el país.

ARTICULO 32. 1.—Las empresas mixtas, las partes en los contratos de asociación económica internacional y las empresas de capital totalmente extranjero, pueden ser autorizadas a crear un fondo de estimulación económica para los trabajadores cubanos y extranjeros residentes permanentes en Cuba que presten sus servicios en actividades correspondientes a las inversiones extranjeras.

2.—Las contribuciones al fondo de estimulación económica se hacen a partir de las utilidades obtenidas. La cuantía de esos aportes es acordada por las empresas mixtas, los inversionistas extranjeros y las inversionistas nacionales partes en contratos de asociación económica internacional y por las empresas de capital totalmente extranjero ante el Ministerio para la Inversión Extranjera y la Colaboración Económica.

ARTICULO 33. 1.—El personal cubano o extranjero residente permanente en Cuba que preste servicios en las empresas mixtas, con excepción de los integrantes de su órgano de dirección y administración, es contratado por una entidad empleadora propuesta por el Ministerio para la Inversión Extranjera y la Colaboración Económica y autorizado por el Ministerio de Trabajo y Seguridad Social.

Los miembros del órgano de dirección y administración de la empresa mixta son designados por la junta general de accionistas y se vinculan laboralmente a la empresa mixta.

Solo por excepción, al otorgarse la Autorización que

aprueba la empresa mixta puede disponerse que todas las personas que presten sus servicios en la empresa mixta podrán ser contratadas directamente por ella, y siempre con arreglo a las disposiciones legales vigentes en materia de contratación laboral.

2.—Las personas que presten sus servicios a las partes en los contratos de asociación económica internacional son contratadas por la parte cubana, con arreglo a las disposiciones legales vigentes en materia de contratación laboral.

3.—En las empresas de capital totalmente extranjero, los servicios de los trabajadores cubanos o extranjeros residentes permanentes en Cuba, con excepción de los integrantes de su órgano superior de dirección y administración, se prestan mediante un contrato que otorga la empresa con una entidad empleadora propuesta por el Ministerio para la Inversión Extranjera y la Colaboración Económica, y autorizada por el Ministerio de Trabajo y Seguridad Social.

Los miembros de los órganos de dirección y administración de la empresa de capital totalmente extranjero son designados por la empresa y se vinculan laboralmente a ésta.

4.—Los pagos al personal cubano y extranjero residente permanente en Cuba se hacen en moneda nacional, que debe previamente obtenerse con divisas convertibles, fuera del caso de excepción señalado en el Artículo 27 de esta Ley.

ARTICULO 34. 1.—La entidad empleadora a que se refiere el Artículo anterior, contrata individualmente a los trabajadores cubanos y extranjeros residentes permanentes, los que mantienen con ella su vínculo laboral. Dicha entidad empleadora paga a esos trabajadores sus haberes.

2.—Cuando las empresas mixtas o las empresas de capital totalmente extranjero consideren que un determinado trabajador no satisface sus exigencias en el trabajo pueden solicitar a la entidad empleadora que lo sustituya por otro. Cualquier reclamación laboral se resuelve en la entidad empleadora, la que paga a su costa al trabajador las indemnizaciones a que tuviere derecho, fijadas por las autoridades competentes; en los casos procedentes, la empresa mixta o la empresa de capital totalmente extranjero, resarce a la entidad empleadora por los pagos, de conformidad con el procedimiento que se establezca y todo debe ajustarse a la legislación vigente.

ARTICULO 35.—No obstante lo dispuesto en los artículos precedentes de este Capítulo, en la Autorización que se otorgue a inversión de extranjeros, a modo de excepción, pueden establecerse regulaciones laborales especiales.

ARTICULO 36.—Los resultados tecnológicos consecuentes en innovaciones y otros bienes intangibles objeto de protección de la propiedad intelectual logrados en el marco de una asociación económica internacional o por los trabajadores cubanos de una empresa de capital extranjero, se rigen por lo dispuesto en la legislación vigente en la materia.

ARTICULO 37.—Se faculta al Ministerio de Trabajo y Seguridad Social para dictar cuantas disposiciones complementarias sean necesarias para la mejor aplicación de lo que se dispone en el presente Capítulo, especialmente en las materias de contratación laboral y disciplina del trabajo.

## CAPITULO XII
### DEL REGIMEN ESPECIAL DE IMPUESTOS Y ARANCELES

ARTICULO 38.—Las empresas mixtas, los inversionistas extranjeros y los inversionistas nacionales partes en

contratos de asociación económica internacional, están sujetos al pago de las obligaciones fiscales siguientes:

a) Impuesto sobre utilidades;

b) impuesto sobre la utilización de la fuerza de trabajo y la contribución a la seguridad social;

c) aranceles y demás derechos recaudados en las aduanas;

d) impuesto sobre el transporte terrestre, que grava la propiedad o posesión de vehículos automotores de transporte terrestre;

e) impuesto sobre documentos, que contempla las tasas y derechos por la solicitud, obtención o renovación de determinados documentos.

ARTICULO 39.—A los fines de esta Ley, el pago de los impuestos por las personas naturales y jurídicas mencionadas en el Artículo anterior, tiene los beneficios siguientes:

a) El Impuesto sobre Utilidades, se paga aplicando un tipo impositivo del treinta por ciento (30%) sobre la utilidad neta imponible. En los casos que por interés de la nación se considere conveniente, el Comité Ejecutivo del Consejo de Ministros podrá exonerar en parte o en su totalidad, el pago de impuesto sobre utilidades netas que se reinvierta en el país.

b) Cuando concurre la explotación de recursos naturales, renovables o no, puede aumentarse el tipo impositivo del Impuesto sobre Utilidades por decisión del del Comité Ejecutivo del Consejo de Ministros. En este caso, el tipo impositivo puede elevarse hasta un cincuenta por ciento (50%).

c) En cuanto al impuesto sobre la utilización de la fuerza de trabajo y la contribución a la seguridad social, se establece lo siguiente:

1. Por la utilización de la fuerza de trabajo se otorga una bonificación sobre el tipo impositivo vigente, aplicándose el tipo impositivo del 11%.

2. Por la contribución a la seguridad social se aplica el tipo impositivo del 14%.

3. Los tipos impositivos expresados en los dos acápites anteriores, se aplican sobre la totalidad de los salarios y demás ingresos que por cualquier concepto perciban los trabajadores, excepto lo entregado a éstos como estimulación económica.

d) Los inversionistas extranjeros socios en empresas mixtas o partes en contratos de asociación económica internacional, quedan exentos del pago del Impuesto sobre los Ingresos Personales obtenidos a partir de las utilidades del negocio.

ARTICULO 40.—Las empresas de capital totalmente extranjero están obligadas durante toda la duración de sus operaciones, al pago de los tributos, con arreglo a la legislación del sistema tributario vigente.

ARTICULO 41.—A los fines de esta Ley, puede concederse a las personas naturales y jurídicas a que se refiere el presente Capítulo, facilidades especiales en cuanto al régimen aduanero, en correspondencia con lo establecido en la legislación vigente.

ARTICULO 42.—El pago de impuestos, aranceles y demás derechos recaudados en aduanas, se realiza en moneda libremente convertible, aún en aquellos casos en que su importe se exprese en moneda nacional, salvo los casos de excepción que establezca el Comité Ejecutivo del Consejo de Ministros.

ARTICULO 43.—El Ministerio de Finanzas y Precios, oído el parecer del Ministerio para la Inversión Extranjera y la Colaboración Económica y teniendo en cuenta los beneficios y la cuantía de la inversión, la recuperación del capital, y las indicaciones que se dispongan por el Comité Ejecutivo del Consejo de Ministros para los

sectores de la economía priorizados y los beneficios que pueda reportar a la economía nacional, puede conceder exenciones totales o parciales, de manera temporal, u otorgar los beneficios que correspondan, con relación al sistema tributario especial.

ARTICULO 44.—Las empresas mixtas, las partes en los contratos de asociación económica internacional y las empresas de capital totalmente extranjero, están sujetas a las "Normas de Valoración de los Activos y Pasivos más Significativos" dictadas por el Ministerio de Finanzas y Precios. Dichas personas pueden determinar libremente el sistema de contabilidad que les resulte más conveniente, siempre que el sistema adoptado se ajuste a los principios de contabilidad universalmente aceptados, y satisfaga las exigencias fiscales.

## CAPITULO XIII
## DE LAS RESERVAS Y SEGUROS

ARTICULO 45. 1.—Las empresas mixtas, los inversionistas extranjeros y nacionales en los contratos de asociación económica internacional, y las empresas de capital totalmente extranjero, constituyen con cargo a sus utilidades y con carácter obligatorio, una reserva para cubrir las contingencias que pudieran producirse en sus operaciones.

2.—El procedimiento para la formación, utilización y liquidación de la reserva prevista en el apartado anterior, es regulado por el Ministerio de Finanzas y Precios.

ARTICULO 46.—Sin perjuicio de la reserva a que se refiere el Artículo anterior, las empresas mixtas, los inversionistas extranjeros y nacionales en los contratos de asociación económica internacional, y las empresas de capital totalmente extranjero, pueden constituir otras reservas con carácter voluntario, con sujeción a las regulaciones del Ministerio de Finanzas y Precios.

ARTICULO 47. 1.—Las empresas mixtas, los inversionistas extranjeros y nacionales en los contratos de asociación económica internacional, y las empresas de capital totalmente extranjero, deben contratar con compañías autorizadas por el Ministerio de Finanzas y Precios a operar en el país, los seguros correspondientes sobre bienes, propiedades, operaciones, y cualesquiera otras actividades o riesgos que resulten necesarios, sobre la base de primas y demás condiciones contractuales competitivas a escala internacional.

2.—Las instalaciones industriales, turísticas o de otra clase, o los terrenos, que sean dados en arrendamiento por empresas estatales u otras organizaciones nacionales, son aseguradas por el arrendatario a favor del arrendador, en correspondencia con las condiciones previstas en el Apartado anterior.

## CAPITULO XIV
## DEL REGIMEN DE REGISTRO E INFORMACION FINANCIERA

ARTICULO 48.—Las empresas mixtas, los inversionistas nacionales y extranjeros partes en contratos de asociación económica internacional, y las empresas de capital totalmente extranjero, antes del comienzo de sus operaciones, se inscriben en el Registro que sobre estas actividades existe en la Cámara de Comercio de la República de Cuba, en un término de treinta (30) días naturales contados a partir de la fecha de Autorización.

ARTICULO 49. 1.—Las personas naturales y jurídicas a que se refiere el presente Capítulo, presentan al Ministerio para la Inversión Extranjera y la Colaboración Económica, dentro de los noventa (90) días naturales siguientes a la fecha de término de su año fiscal, un Informe Anual de sus operaciones en dicho período.



2.—La presentación por parte de las personas naturales y jurídicas comprendidas en el presente Capítulo del Informe Anual, se hace con independencia de sus obligaciones informativas para con el Ministerio de Finanzas y Precios, la administración tributaria correspondiente y otras que con carácter estadístico se establezcan.

## CAPITULO XV
## DEL REGIMEN DE ZONAS FRANCAS Y DE PARQUES INDUSTRIALES

ARTICULO 50.—Con el fin de estimular las exportaciones y el comercio internacional, el Comité Ejecutivo del Consejo de Ministros puede autorizar el establecimiento de Zonas Francas y Parques Industriales, en áreas delimitadas del territorio nacional.

ARTICULO 51. 1.—Se consideran Zonas Francas, aquellas en las que se puede aplicar, por decisión del Comité Ejecutivo del Consejo de Ministros, un régimen especial en materia aduanera, cambiaria, tributaria, laboral, migratoria, de orden público, de inversión de capitales y de comercio exterior, y en las que pueden participar los inversionistas extranjeros para realizar operaciones financieras, de importación, exportación, almacenaje, actividades productivas o reexportación.

2.—Se consideran Parques Industriales, aquellos en los que se puede aplicar por decisión del Comité Ejecutivo del Consejo de Ministros, un régimen especial en materia aduanera, tributaria, laboral, de inversión de capitales y de comercio exterior, para desarrollar actividades productivas con participación de capital extranjero.

ARTICULO 52.—En las autorizaciones de inversiones extranjeras, de ser procedente, se consignan las facilidades e incentivos particulares que se ofrecen al inversionista extranjero en las Zonas Francas y los Parques Industriales.

ARTICULO 53.—El establecimiento y las normas relativas al funcionamiento de las Zonas Francas y de los Parques Industriales, serán reguladas por la legislación especial dictada al efecto.

## CAPITULO XVI
## DE LA PROTECCION DEL MEDIO AMBIENTE

ARTICULO 54.—La inversión extranjera se concibe y estimula en el contexto del desarrollo sostenible del país, lo que implica que durante su ejecución se atenderá cuidadosamente a la conservación del medio ambiente y el uso racional de los recursos naturales.

ARTICULO 55.—El Ministerio para la Inversión Extranjera y la Colaboración Económica, en los casos procedentes, somete las propuestas de inversión que reciba a la consideración del Ministerio de Ciencia, Tecnología y Medio Ambiente, el que evalúa su conveniencia desde el punto de vista ambiental y decide si se requiere de la realización de una Evaluación de Impacto Ambiental, así como sobre la procedencia del otorgamiento de las Licencias Ambientales pertinentes y el régimen de control e inspección conforme a lo dispuesto en la legislación vigente.

ARTICULO 56. 1.—El Ministerio de Ciencia, Tecnología y Medio Ambiente dicta las medidas que se requieran para dar solución adecuada a las situaciones que ocasionen daños, peligros o riesgos para el medio ambiente y el uso racional de los recursos naturales.

2.—La persona natural o jurídica responsable del daño o perjuicio está obligada al restablecimiento de la situación ambiental anterior, a la reparación del daño material y a la indemnización de los perjuicios.

## CAPITULO XVII
## DEL REGIMEN DE SOLUCION DE CONFLICTOS

ARTICULO 57. 1.—Los conflictos que surgen de las relaciones entre los socios de una empresa mixta, o entre los inversionistas extranjeros y los inversionistas nacionales partes en contratos de asociación económica internacional o entre los socios de una empresa de capital totalmente extranjero bajo la forma de compañía anónima por acciones nominativas, se resuelven según lo acordado en los documentos constitutivos.

2.—Igual regla se aplica cuando el conflicto se produce entre uno o más socios extranjeros y la empresa mixta o la empresa de capital totalmente extranjero a la que aquél o aquellos pertenecen.

ARTICULO 58.—Los litigios sobre la ejecución de contratos económicos que surgen entre las empresas mixtas, los inversionistas extranjeros y los inversionistas nacionales partes en contratos de asociación económica internacional y las empresas de capital totalmente extranjero, con las empresas estatales u otras entidades nacionales, son de la competencia de las instancias de las Salas de lo Económico de los Tribunales Populares que establezca el Consejo de Gobierno del Tribunal Supremo Popular.

## DISPOSICION ESPECIAL

UNICA: Las empresas mixtas, los inversionistas nacionales y extranjeros partes en contratos de asociación económica internacional, y las empresas de capital totalmente extranjero, están sujetas a las regulaciones que se establezcan en materia de Protección contra Catástrofes y Desastres Naturales.

## DISPOSICIONES TRANSITORIAS

PRIMERA: Esta Ley es de aplicación a las empresas mixtas y otras formas de asociación económica internacional, existentes y en operaciones a la fecha de su entrada en vigor. No obstante, los beneficios concedidos al amparo del Decreto-Ley 50, del 15 de febrero de 1982, se mantendrán vigentes durante todo el término de la asociación económica internacional.

SEGUNDA: Esta Ley se aplica a las solicitudes de Autorización de inversión extranjera que estén en tramitación a la fecha de su entrada en vigor. El Ministerio para la Inversión Extranjera y la Colaboración Económica, acordará con los solicitantes cómo proceder.

TERCERA: Las disposiciones complementarias dictadas por los distintos organismos de la Administración Central del Estado para la mejor aplicación y ejecución de las normas del Decreto-Ley No. 50, del 15 de febrero de 1982, en lo concerniente a cada uno, continuarán observándose en lo que no se oponga a la presente ley; los referidos organismos, en un plazo no mayor de tres meses, contados a partir de la entrada en vigor de esta Ley, revisarán las mencionadas normas y las armonizarán conforme a las prescripciones de ésta.

## DISPOSICIONES FINALES

PRIMERA: Se derogan el Decreto-Ley No. 50 "Sobre asociación económica entre entidades cubanas y extranjeras", del 15 de febrero de 1982, y cuantas otras disposiciones legales se opongan a las prescripciones de esta Ley, la que comenzará a regir a partir de su publicación en la Gaceta Oficial de la República.

SEGUNDA: Se faculta al Comité Ejecutivo del Consejo de Ministros y a los Organismos de la Administración Central del Estado en lo que les compete, a dictar cuantas disposiciones sean necesarias para el mejor cumplimiento de lo que por esta Ley se establece.

DADA en la sala de sesiones de la Asamblea Nacional del Poder Popular, Palacio de las Convenciones, en la ciudad de La Habana, a los cinco días del mes de septiembre de mil novecientos noventa y cinco.



# EXHIBIT 3

Imperial Tobacco Group PLC
Annual Report and Accounts 2009



# DELIVERING SUSTAINABLE GROWTH



# Principal Subsidiaries

The principal subsidiaries and joint ventures of the Group, which are unlisted unless otherwise indicated, are shown below.

## Registered in England and Wales, wholly owned

| Name | Principal activity |
| --- | --- |
| Imperial Tobacco Holdings (2007) Limited | Holding investments in subsidiary companies |
| Imperial Tobacco Limited | Manufacture, marketing and sale of tobacco products in the UK |
| Imperial Tobacco International Limited | Export and marketing of tobacco products |
| Imperial Tobacco Finance PLC | Finance company |

## Incorporated overseas, wholly owned

| Name and country of incorporation | Principal activity |
| --- | --- |
| Altadis S.A., Spain | Manufacture, marketing, sale and distribution of tobacco products in Spain |
| Altadis Distribution France S.A.S., France | Distribution of tobacco products in France |
| Altadis Emisiones Financieras SAU, Spain | Finance company |
| Altadis Finance B.V., the Netherlands | Finance company |
| Altadis Maroc, S.A., Morocco | Manufacture, marketing, sale and distribution of tobacco products in Morocco |
| Altadis Middle East Fzco., United Arab Emirates | Marketing and sale of tobacco products in the Middle East |
| Altadis USA Inc.[1], United States of America | Manufacture, marketing and sale of cigars in the United States of America |
| Commonwealth Brands Inc., United States of America | Manufacture, marketing and sale of tobacco products in the United States of America |
| Compañía de Distribución Integral Logista, S.A., Spain | Distribution of tobacco products and related services in Spain |
| Dunkerquoise des Blends S.A.S., France | Tobacco processing in France |
| Ets. L. Lacroix Fils N.V., Belgium | Manufacture, marketing and sale of tobacco products in Belgium |
| Imperial Tobacco Australia Limited, Australia | Marketing and sale of tobacco products in Australia |
| Imperial Tobacco CR s.r.o., Czech Republic | Marketing and sale of tobacco products in the Czech Republic |
| Imperial Tobacco Finland Oy, Finland | Marketing and sale of tobacco products in Finland |
| Imperial Tobacco Hellas S.A., Greece | Marketing and sale of tobacco products in Greece |
| Imperial Tobacco Italia Srl.[1], Italy | Marketing and sale of tobacco products in Italy |
| Imperial Tobacco Magyarország Dohányforgalmazó Kft, Hungary | Marketing and sale of tobacco products in Hungary |
| Imperial Tobacco Mullingar, Republic of Ireland | Manufacture of fine cut tobacco in the Republic of Ireland |
| Imperial Tobacco New Zealand Limited, New Zealand | Manufacture, marketing and sale of tobacco products in New Zealand |
| Imperial Tobacco Norway A.S., Norway | Marketing and sale of tobacco products in Norway |
| Imperial Tobacco Polska S.A., Poland | Manufacture, marketing and sale of tobacco products in Poland |
| Imperial Tobacco Sales & Marketing LLC, Russia | Marketing and sale of tobacco products in Russia |
| Imperial Tobacco Sigara ve Tutunculuk Sanayi ve Ticaret A.S., Turkey | Marketing and sale of tobacco products in Turkey |
| Imperial Tobacco Slovakia A.S., Slovak Republic | Manufacture, marketing and sale of tobacco products in the Slovak Republic |
| Imperial Tobacco Taiwan Co. Limited, Taiwan | Marketing and sale of tobacco products in Taiwan |
| Imperial Tobacco Taiwan Manufacturing Company Limited, Taiwan | Manufacture of tobacco products in Taiwan |
| Imperial Tobacco Tutun Urunleri Satis ve Pazarlama A.S., Turkey | Manufacture of tobacco products in Turkey |
| Imperial Tobacco Ukraine, Ukraine | Marketing and sale of tobacco products in Ukraine |
| John Player S.A., Spain | Marketing and sale of tobacco products in the Canary Islands |
| John Player & Sons Limited, Republic of Ireland | Marketing and sale of tobacco products in the Republic of Ireland |
| Logista Italia S.p.A., Italy | Distribution of tobacco products in Italy |
| Reemtsma Cigarettenfabriken GmbH, Germany | Manufacture, marketing and sale of tobacco products in Germany |
| Reemtsma International Asia Services Limited, China | Marketing of tobacco products in China |
| OOO Reemtsma Volga Tabakfabrik, Russia | Manufacture of tobacco products in Russia |
| Skruf Snus AB, Sweden | Manufacture, marketing and sale of tobacco products in Sweden |
| Société Nationale d'Exploitation Industrielle des Tabacs et des Allumettes S.A., France | Manufacture, marketing and sale of tobacco products in France and export of tobacco products |
| Supergroup S.A.S., France | Wholesale distribution in France |

SUPPLEMENTARY INFORMATION
Principal Subsidiaries *continued*

### Incorporated overseas *continued*

| | |
|---|---|
| Tobaccor S.A.S., France | Holding investments in subsidiary companies involved in the manufacture, marketing and sale of tobacco products in Africa |
| Tobacna Ljubljana d.o.o, Slovenia | Marketing and sale of tobacco products in Slovenia |
| Van Nelle Canada Limited, Canada | Manufacture of tubes and sale of tobacco products in Canada |
| Van Nelle Tabak Nederland B.V., the Netherlands | Manufacture, marketing and sale of tobacco products in the Netherlands |
| 800 JR Cigar Inc., United States of America | Holding investments in subsidiary companies involved in the sale of cigars in the United States of America |

### Incorporated overseas, partly owned

| Name and country of incorporation | Principal activity | Percentage owned[1] |
|---|---|---|
| Altadis Polska, S.A., Poland | Manufacture of tobacco products in Poland | 99.97 |
| ZAO Balkanskaya Zvezda, Russia | Manufacture of tobacco products in Russia | 99.9 |
| Imperial Tobacco Production Ukraine, Ukraine | Manufacture of cigarettes in Ukraine | 99.8 |
| Reemtsma Kyrgyzstan OJSC, Kyrgyzstan | Manufacture, marketing and sale of tobacco products in Kyrgyzstan | 98.6 |
| Société Ivoirienne des Tabacs S.A.[2], Ivory Coast | Manufacture, marketing and sale of tobacco products in the Ivory Coast | 74.1 |
| Imperial Tobacco TKS a.d., Macedonia | Manufacture, marketing and sale of tobacco products in Macedonia | 99.1 |

### Incorporated overseas, joint ventures

| Name and country of incorporation | Principal activity | Percentage owned[1] |
|---|---|---|
| Altabana S.L., Spain | Holding investments in subsidiary companies involved in the marketing and sale of Cuban cigars | 50.0 |
| Corporación Habanos, S.A., Cuba | Export of cigars manufactured in Cuba | 50.0 |

In addition, the Group also wholly owns the following partnership:

| Name and country | Principal activity |
|---|---|
| Imperial Tobacco (EFKA) GmbH & Co. KG, Germany | Manufacture of tubes in Germany |

Principal place of business: Industriestrasse 6, Postfach 1257, D-78636 Trossingen, Germany

The subsidiaries listed above were held throughout the year with the exception of 800 JR Cigar Inc., the remaining 49 per cent of which was acquired in October 2008.

The consolidated Group financial statements include all the subsidiary undertakings and entities shown above. With the exception of Imperial Tobacco Holdings (2007) Limited, which is wholly owned by the Company, none of the shares in the subsidiaries is held by the Company. A full list of subsidiaries is attached to the Annual Return of the Company.

1   The percentage of issued share capital held by immediate parent and the effective voting rights of the Group are the same, with the exception of Altadis USA Inc., and Imperial Tobacco Italia Srl where the entire issued share capital, and therefore 100 per cent of the voting rights, are held by a number of Group companies.
2   Listed on the Stock Exchange of the Ivory Coast.

S-8 POS 1 a08-23415_3s8pos.htm S-8 POS

**As filed with the Securities and Exchange Commission on September 12, 2008.**

**Registration No. 333-142607**
**333-134158**
**333-124335**
**333-124333**
**333-12886**
**333-11624**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C.  20549**

---

**Post-Effective Amendment No. 1 to Form S-8 Registration Statement No. 333-142607**
**Post-Effective Amendment No. 1 to Form S-8 Registration Statement No. 333-134158**
**Post-Effective Amendment No. 1 to Form S-8 Registration Statement No. 333-124335**
**Post-Effective Amendment No. 1 to Form S-8 Registration Statement No. 333-124333**
**Post-Effective Amendment No. 1 to Form S-8 Registration Statement No. 333-12886**
**Post Effective Amendment No. 1 to Form S-8 Registration Statement No. 333-11624**

**UNDER THE SECURITIES ACT OF 1933**

---

# IMPERIAL TOBACCO GROUP PLC
(Exact name of Registrant as specified in its charter)

| **England and Wales** | **Not Applicable** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

**Upton Road**
**Bristol BS99 7UJ, England**
**+44 117 963 6636**
(Address of Principal Executive Offices)

**Imperial Tobacco Group International Sharesave Plan**
(Full title of the plan)

| **Robert Burton Associates Ltd.** | **Copies to:** |
|---|---|
| **c/o Commonwealth Brands Inc** | **Paul McCarthy** |
| **900 Church St.** | **Allen & Overy LLP** |
| **Bowling Green,** | One Bishops Square London E1 6AD, |
| **Kentucky KY 42101** | England |
| **Attention: John Mercer** | (+44) 203 088 0000 |

**(270) 781 9100**
(Name, address, including zip code, and telephone
number, including area code, of agent for service)

_____

**This post-effective amendment shall become effective in accordance with Section 8(c) of the Securities Act of 1933 on such date as the Commission, acting pursuant to said Section 8(c), may determine.**

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of *"large accelerated filer," "accelerated filer"* and *"smaller reporting company"* in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer  x    Accelerated filer ¨    Non-accelerated filer ¨    Smaller reporting company ¨
(Do not check if a smaller reporting company)

## DEREGISTRATION OF SECURITIES

Pursuant to Imperial Tobacco Group PLC's (the **Registrant**) undertaking in Item 9 of Part II of the Registration Statements listed below, this Post-Effective Amendment is being filed to deregister all of the Registrant's American Depositary Shares, each representing two ordinary shares, par value 10 pence per ordinary share, that had been registered for issuance under the following Registration Statements on Form S-8 that remain unsold upon the termination of the offerings covered by each of such Registration Statements:

- · File No. 333-142607, pertaining to the registration of 750,000 American Depositary Shares, issuable under the Registrant's International Sharesave Plan, which was filed with the Securities and Exchange Commission on May 4, 2007.

- · File No. 333-134158, pertaining to the registration of 42,000 American Depositary Shares, issuable under the Registrant's International Sharesave Plan, which was filed with the Securities and Exchange Commission on May 16, 2006.

- · File No. 333-124335, pertaining to the registration of 4,882 American Depositary Shares, issuable under the Registrant's International Sharesave Plan, which was filed with the Securities and Exchange Commission on April 26, 2005.

- · File No. 333-124333, pertaining to the registration of 12,500 American Depositary Shares, issuable under the Registrant's International Sharesave Plan, which was filed with the Securities and Exchange Commission on April 26, 2005.

- · File No. 333-12886, pertaining to the registration of 35,591 American Depositary Shares, issuable under the Registrant's Share Matching Scheme, which was filed with the Securities and Exchange Commission on November 20, 2000.

- · File No. 333-11624, pertaining to the registration of 3,546 American Depositary Shares, issuable under the Registrant's International Sharesave Plan, which was filed with the Securities and Exchange Commission on March 10, 2000.

On July 24, 2008, the Registrant announced its intention to delist its American Depositary Shares from the New York Stock Exchange and that this delisting would be followed by an application to deregister and terminate its reporting obligations under the Securities and Exchange Act of 1934.

As a result, the Registrant has terminated the registration of the American Depositary Shares under the International Sharesave Plan, effective as of the date hereof, thereby ceasing to offer and sell American Depositary Shares under the International Sharesave Plan pursuant to the Registration Statements.

IMPERIAL TOBACCO GROUP PLC

By: /s/  ROBERT DYRBUS

Name:  Robert Dyrbus
Title:  Finance Director
Date:  10 September 2008

2

**SIGNATURES**

Pursuant to the requirements of the Securities Act of 1933, the Registrant certifies that it has reasonable grounds to believe that it meets all the requirements for filing an amendment on Form S-8 and has duly caused this Post-Effective Amendment No. 1 to the Registration Statements to be signed on its behalf by the undersigned, thereunto duly authorized, in Morocco, on September 10th, 2008.

Pursuant to the requirements of the Securities Act of 1933, these Post-Effective Amendments to the Registration Statements have been signed by the following persons in the capacities and on the dates indicated.

3

| Signature | Titles | Date |
|---|---|---|
| /s/  IAIN NAPIER<br>Iain Napier | Chairman and Non-Executive Director | |
| /s/  GARETH DAVIS<br>Gareth Davis | Chief Executive and Director<br>(principal executive officer) | |
| /s/  JEAN-DOMINIQUE COMOLLI<br>Jean-Dominique Comolli | Deputy Chairman & Non-Executive Director | |
| /s/  ROBERT DYRBUS<br>Robert Dyrbus | Finance Director<br>(principal financial officer and accounting officer) | |
| /s/  GRAHAM BLASHILL<br>Graham Blashill | Group Sales & Marketing Director | |
| /s/  ALISON COOPER<br>Alison Cooper | Corporate Development Director | |
| /s/  BRUNO BICH<br>Bruno Bich | Non-Executive Director | |
| /s/  KENNETH BURNETT<br>Kenneth Burnett | Non-Executive Director | |
| /s/  MICHAEL HERLIHY<br>Michael Herlihy | Non-Executive Director | |
| /s/  PIERRE JUNGELS<br>Pierre Jungels | Non-Executive Director | |
| /s/  CHARLES KNOTT<br>Charles Knott | Non-Executive Director | |
| /s/  SUSAN MURRAY<br>Susan Murray | Non-Executive Director | |
| /s/  BERGE SETRAKIAN<br>Berge Setrakian | Non-Executive Director | |

/s/  MARK WILLIAMSON          Non-Executive Director
Mark Williamson

4

Authorized Representative in the United
States:

Robert Burton Associates Limited.

By: /s/ JOHN J.MERCER
Title: Chief Financial Officer, USA


RBC Trustees (C.I.) Limited*

By:       /s/ MARK LE SAINT
Name: Mark Le Saint
Title: Authorized Signatory

_____

*  As trustee of the Imperial Tobacco Group PLC 2001 Employee Benefit Trust

5

**EXHIBIT 4**

REPUBLIC OF CUBA
# MINISTRY OF FOREIGN TRADE

## RESOLUTION No. 300 of 1993

<u>WHEREAS:</u> Decree-Law No. 146 of December 29, 1993 repealed Act No. 1191 of April 25, 1966, creating Empresa Cubana del Tabaco, also known legally as CUBATABACO, which was the successor and successor in business of Empresa Cubana Exportadora de Tabaco which, with the same acronym of CUBATABACO, had been originally created by Resolution No. 2 issued by the Minister of Foreign Trade on January 1, 1962.

<u>WHEREAS</u>: Decree-Law No. 146 itself ratified the continuance of Empresa Cubana del Tabaco, also known as CUBATABACO, eliminating agricultural and industrial tobacco activities from its production activities, to solely assign it responsibilities as a foreign trade company, under the supervision of the Foreign Trade Minister.

<u>WHEREAS</u>: Article 65 of Decree-Law No. 67 of April 19, 1983, "On the Organization of the Central Administration of the State" empowers the Foreign Trade Minister to create, merge, modify or dissolve foreign trade companies.

<u>WHEREAS</u>: Final Provision One of the above-mentioned Decree-Law No. 146 entrusted to the Foreign Trade Minister the issuance of supplementary provisions governing the activities and other powers and responsibilities of CUBATABACO.

<u>THEREFORE:</u>  In exercise of the powers conferred to me, it is hereby

## RESOLVED:

<u>ONE:</u> Pursuant to the provisions of Decree Law No. 146, the uninterrupted continuance of Empresa Cubana del Tabaco, also known legally as CUBATABACO, is hereby ratified as a commercial company, a separate legal entity and with its own governance and management, with legal capacity to sue and be sued, and with the necessary powers to execute agreements and formalize the transactions inherent to its activities according to law.

<u>TWO:</u> The Cuban government shall not be liable for obligations of any kind assumed by CUBATABACO, and such company shall not be liable for the obligations of the former and shall keep separate books of account and financial statements.

REPUBLIC OF CUBA
# MINISTRY OF FOREIGN TRADE

-2-

<u>THREE:</u> CUBATABACO shall be liable on its obligations up to the amount of its assets which, as of the date hereof, total ONE MILLION PESOS NO/100 (CUP 1,000,000) in local currency.

<u>FOUR:</u> CUBATABACO has as its corporate purpose and is empowered, in Cuba and abroad, to carry out export, import and compensation activities; to acquire interests in the share capital of and enter into any other form of association with Cuban or foreign companies; to mediate in any commercial transaction; to act as agent, representative or commission agent of other Cuban or foreign entities; to grant and receive commercial loans; to purchase, sell, grant licenses for use and carry out other transactions relating to trademarks and other industrial property rights, and any other commercial transactions whose purpose is to obtain benefits from or in connection with tobacco and other products, whether of Cuban or foreign origin.

<u>FIVE:</u> CUBATABACO shall have its registered office in the City of Havana and may carry out its commercial transactions in Cuba and abroad through officers, agents, distributors, dealers, whether or not they have been appointed as its representatives, with the powers and responsibilities granted or entrusted to them or those which may be freely agreed upon, as the case may be.

<u>SIX:</u>   CUBATABACO shall be responsible for the export and import of leaf and manufactured tobacco in all its forms; cultivation equipment and inputs, cooling, irrigation, drying and curing; fertilizers, fungicides, herbicides, cloth to cover plantations, appliances and instruments to test, weigh, measure and verify the quantity, quality and content of tobacco; automatic cigarette vending machines; wood, cardboard and other inputs required to manufacture cigarette cases and tobacco pouches, boxes, cartons and other packaging, and any other items of equipment, raw materials, inputs and other materials required for agricultural and industrial tobacco production; pipes, cigarette holders, ashtrays, lighters, humidors, cases, cigarette paper and filters for cigarettes, matches and other smoking accessories.

<u>SEVEN:</u> The CEO of CUBATABACO shall be responsible for its management and administration and shall be its legal representative.  He may use the title of his position as Chairman and CEO, Chairman or CEO, in order for his position to be acknowledged as being level with the same position at other foreign entities.

REPUBLIC OF CUBA
## MINISTRY OF FOREIGN TRADE

-3-

The CEO shall have all such powers as may be needed and required by law to fully discharge his duties and responsibilities and, without limitation, to formalize and execute, under his sole signature, all kinds of business dealings, transactions, agreements and acts, be they acts of administration or acts involving the disposition of property, in the latter case under joint signature, with respect to the property and tangible and intangible assets of CUBATABACO, setting and agreeing on the terms and conditions he deems appropriate; he may also delegate his powers by granting such powers of attorney as he deems necessary for such purpose, with the powers, terms and conditions he deems necessary for each legal act.

The substitution or delegation of the powers granted to the CEO shall be valid if made in favor of CUBATABACO officers, ensuring that the representatives appointed or persons to whom such powers are delegated exercise such powers in accordance with the joint signature principle.

EIGHT: In discharging his duties, the CEO will be assisted by a Board of Directors, whose composition and powers shall be established in the by-laws.

NINE: CUBATABACO shall be empowered to operate in freely convertible local currency in the territory of Cuba, in accordance with the regulations established by the Banco Nacional de Cuba, and may pay its obligations stemming from pursuing its objectives, in freely convertible currency, up to the proportion of its revenues that it may be authorized to so pay.

TEN: CUBATABACO shall be required to comply with all resolutions, instructions, circulars and other provisions issued by the Ministry of Foreign Trade and other governing agencies that should apply in the conduct of its activities.

ELEVEN: The Ministry of Foreign Trade shall exercise its responsibility of guiding and supervising commercial policy and other matters within its institutional purview by means of coordination meetings, inspections and any other appropriate senior management methods.

TWELVE: CUBATABACO shall register with the Commercial Registry and with such other Registries as it may be required to register under applicable law.

THIRTEEN: This Resolution shall become effective on the date thereof.

REPUBLIC OF CUBA
## MINISTRY OF FOREIGN TRADE

-4-

<u>IT IS HEREBY ORDERED THAT NOTICE</u> of this Resolution be given to the Secretariat of the Executive Committee of the Council of Ministers, to the Central Planning Board, to the National Commission of the System for Management of the Economy, to the State Finance Committee, the State Prices Committee, the State Census Bureau, the Ministry of Agriculture, the National Bank of Cuba, the General Customs Service of the Republic, the Tobacco Companies Union, the Deputy Ministers and Directors of the Ministry of Foreign Trade, the CEO of CUBATABACO, the CEOs of other Foreign Trade Companies and Commercial Offices abroad.  It is further ordered that this Resolution be published in the Official Gazette of the Republic for general information, and that the original thereof be filed in the Legal Department.

GIVEN in Havana, Ministry of Foreign Trade, on December 30, 1993, "35th Year of the Revolution."

[signed]
Ricardo Cabrisas Ruiz
Minister
[seal]
REPUBLIC OF CUBA
MINISTRY OF FOREIGN TRADE
MINISTER'S OFFICE

I, GEORGINA RAMON PEREZ, acting Director of the Legal Department of the Ministry of Foreign Trade of the Republic of Cuba.

HEREBY CERTIFY: That this Resolution is a true and accurate copy of the original thereof filed in this Department in my charge.

AND FOR notice hereof to be given to CUBATABACO

I issue this [certified copy] in Havana, on February 23, 1994.

[signed]
[seal]

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK          )
                           )      ss
COUNTY OF NEW YORK         )

## CERTIFICATION

This is to certify that the attached is, to the best of my knowledge and belief, a true and accurate Spanish to English translation of <u>RESOLUTION No. 300 of 1993</u> as completed on 01/22/2010.

Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
this 22nd day of January, 2010.

Notary Public

CHRIS SULLIVAN
Notary Public, State of New York
No. 01SU6145597
Qualified in Kings County
Commission Expires May 22, 2010



REPUBLICA DE CUBA

# MINISTERIO DEL COMERCIO EXTERIOR

### RESOLUCION No. 300 de 1993

POR CUANTO: El Decreto-Ley No. 146 de 29 de Diciembre de 1993, derogó la Ley No. 1191 de 25 de abril de 1966, creadora de la Empresa Cubana del Tabaco, también deno minada legalmente CUBATABACO, la cual fue sucesora y continuadora de la Empresa Cubana Exportadora de Taba co que, con el mismo nombre abreviado CUBATABACO, había sido originalmente creada por la Resolución No. 2, dic tada por el Ministro del Comercio Exterior el 1ro de enero de 1962.

POR CUANTO: El propio Decreto-Ley No. 146, ratificó la continuidad de la Empresa Cubana del Tabaco, también nominada CUBATABACO, suprimiendo de sus actividades pro ductivas la rama agrícola e industrial tabacalera, para atribuirle únicamente funciones como empresa de comer-cio exterior, bajo la supervisión del Ministro del Co-mercio Exterior.

POR CUANTO: El artículo 65 del Decreto-Ley No. 67, de 19 de abril de 1983, "De Organización de la Administra-ción Central del Estado", faculta al Ministro del Comer cio Exterior para crear, fusionar, modificar o extinguir empresas del comercio exterior.

POR CUANTO: La Disposición Final Primera del menciona-do Decreto-Ley No. 146 encargó al Ministro del Comercio Exterior de dictar las disposiciones complementarias --que regulen la actividad y las demás atribuciones y fun ciones de CUBATABACO.

POR TANTO: En uso de las facultades que me están confe ridas,.

### R E S U E L V O :

PRIMERO: De conformidad con lo dispuesto en el Decreto Ley No. 146 se ratifica, a todos los efectos legales, -la continuidad ininterrumpida de la Empresa Cubana del Tabaco, también denominada legalmente CUBATABACO, como sociedad mercantil, con personalidad jurídica indepen--diente y gobierno y administración propios, capacidad legal para demandar y ser demandada, así como la necesa ria facultad para otorgar contratos y formalizar confor me a derecho las operaciones inherentes a sus activida-des.

SEGUNDO: El estado cubano no responderá por las obliga ciones de ningún tipo que contraiga CUBATABACO, al igual que la misma tampoco responderá por las obligaciones --del primero y tendrá contabilidad y balances financie--ros propios.



REPUBLICA DE CUBA

# MINISTERIO DEL COMERCIO EXTERIOR

-2-

TERCERO: CUBATABACO responderá de sus obligaciones has
ta el límite de su patrimonio, que a la fecha asciende
a la suma de UN MILLON DE PESOS NO/100 (CUP 1'000,000.00)
en moneda nacional.

CUARTO: CUBATABACO tiene como objeto social y está fa-
cultada, en Cuba y en el extranjero, para la realización
de actividades de exportación, importación y compensa--
ción; participación en el capital social y cualquier --
otra forma de asociación con otras compañías cubanas o
extranjeras; mediación en cualquier transacción mercan-
til; actuación como agente, representante, comisionista
de otras entidades nacionales o extranjeras; otorgamien
to y recepción de crédito comercial; compra, venta, li-
cencia de uso y otras operaciones relacionadas con mar-
cas comerciales y demás derechos de la propiedad indus-
trial; así como cualesquiera otras transacciones comer-
ciales que tengan como fin el logro de beneficios prove
nientes de o relacionados con el tabaco y otros produc-
tos, bien sean de origen cubano o extranjero.

QUINTO: CUBATABACO mantendrá su domicilio social en la
Ciudad de La Habana y podrá realizar sus operaciones co
merciales en Cuba y el extranjero, a través de funciona
rios, agentes, distribuidores, concesionarios, que os--
tenten o no su representación, con las atribuciones y -
funciones para las que en cada caso sean apoderados o,
en su caso, libremente pacten.

SEXTO: CUBATABACO asumirá la ejecución de la exporta--
ción e importación del tabaco en rama y manufacturado -
en todas sus formas; de equipos e insumos de cultivo, -
refrigeración, regadío, secado y curado; fertilizantes,
fungicidas, herbicidas, tela para tapar las plantacio--
nes, aparatos e instrumentos para analizar, pesar, me--
dir y comprobar la cantidad, calidad y contenido del ta
baco; máquinas automáticas para la venta de cigarrillos;
madera, cartón y otros insumos necesarios para la fabri
cación de petacas, cajas, cajones y otros envases, y --
cualesquiera otros bienes de equipo, materia prima, insu
mos y otros materiales necesarios para la producción --
agrícola e industrial tabacalera; pipas, boquillas, ceni
ceros, encendedores, humidores, estuches, papel y fil--
tros para cigarrillos, fósforos y otros artículos del fu
mador.

SEPTIMO: La dirección, administración y representación
legal de CUBATABACO estará a cargo de su Director, quien
podrá utilizar indistintamente la denominación de su car
go como Presidente Director General, Presidente o Direc-
tor General, a los fines de su homologación con el mismo
cargo en otras entidades extranjeras,



REPUBLICA DE CUBA

# MINISTERIO DEL COMERCIO EXTERIOR

-3-

El Director ostentará plenas facultades, cuantas en de-
recho sean necesarias y se requieran, para el cabal --
ejercicio de su cargo y sus responsabilidades y, sin -
limitación alguna, para con su sola firma formalizar y
ejecutar toda clase de negocios, operaciones, contra--
tos y actos, sean de administración o de dominio, en -
este último caso con firma conjunta, respecto a los --
bienes y activos, tangibles e intangibles de CUBATABA-
CO, estableciendo y pactando las condiciones que consi-
dere pertinentes; igualmente, podrá delegar sus facul-
tades otorgando los poderes que considere necesarios a
tal fin, con las facultades, plazos y condiciones que
para cada acto jurídico estime necesarias.

La sustitución o delegación de las facultades otorga--
das al Director serán válidas si fuere realizada a fa-
vor de funcionarios de CUBATABACO, garantizando que --
los sustitutos o delegados ejerzan estas facultades de
acuerdo con el principio de la doble firma.

OCTAVO: El Director será asistido, en el desempeño -
de su cargo, por un Consejo de Empresa, cuya composi--
ción y atribuciones serán establecidos en el Reglamen-
to Orgánico.

NOVENO: CUBATABACO estará facultada para operar en mo
neda nacional y libremente convertible en el territo--
rio nacional, de conformidad con las regulaciones esta-
blecidas por el Banco Nacional de Cuba, y podrá pagar -
en moneda libremente convertible sus obligaciones deri-
vadas del cumplimiento de sus objetivos en la propor---
ción que, con respecto a sus ingresos, le fuere autori-
zada. .

DECIMO: CUBATABACO viene obligada a cumplir todas las
resoluciones, instrucciones, circulares y demás disposi
ciones emitidas por el Ministerio del Comercio Exterior
y demás organismos rectores, que le resulten de aplica-
ción en el desarrollo de sus actividades.

DECIMO-PRIMERO: El Ministerio del Comercio Exterior --
ejercerá su función rectora de orientación y supervi---
sión de la política comercial y demás materias dentro -
de su competencia institucional, mediante reuniones de
coordinación, inspecciones y cualesquiera otros métodos
de alta dirección pertinentes.

DECIMO-SEGUNDO: CUBATABACO se inscribirá en el Regis-
tro Mercantil y otros que disponga la legislación vigen
te.

DECIMO-TERCERO: La presente Resolución comenzará a re-
gir a partir de su fecha.

REPUBLICA DE CUBA

# MINISTERIO DEL COMERCIO EXTERIOR

-4-

COMUNIQUESE la presente Resolución a la Secretaría del
Comité Ejecutivo del Consejo de Ministros, a la Junta
Central de Planificación, a la Comisión Nacional del --
Sistema de Dirección de la Economía, al Comité Estatal
de Finanzas, al Comité Estatal de Precios, al Comité Es
tatal de Estadísticas, al Ministerio de la Agricultura,
al Banco Nacional de Cuba, a la Aduana General de la Re
pública, a la Unión de Empresas del Tabaco, a los Vice-
ministros y Directores del Ministerio del Comercio Exte
rior, al Director de CUBATABACO, a los Directores de --
las demás Empresas del Comercio Exterior y a las Ofici-
nas Comerciales en el extranjero. Publíquese en la Ga-
ceta Oficial de la República para general conocimiento
y archívese el original de la misma en la Dirección Ju-
rídica.

DADA en La Habana, Ministerio del Comercio Exterior, a
los 30 días del mes de diciembre de 1993, "Año 35 de la
Revolución".



Ricardo Cabrisas Ruiz
Ministro

RCR/ram

LIC. GEORGINA RAMON PEREZ, Directora en funciones de la
Dirección Jurídica del Ministerio del Comercio Exterior
de la República de Cuba.

CERTIFICO: Que la presente Resolución es copia fiel y -
exacta del original que obra en los archivos de esta --
Dirección a mi cargo.

Y PARA notificar a la Empresa CUBATABACO---------------
------------------------------------------------------
expido la presente en La Habana, a 22 de febrero de 1994.

# EXHIBIT 5



[tax stamp]



Nury E. Peña Taboada
Special Notary Public

**NUMBER:** ----------------------------------- 712 -----------------------------------------
------------------------------------- **NOTARIZATION CERTIFICATE** -----------------------------------
Havana, March 25, 2005 ----------------------------------------------------------------------------------
------------------------------------------------ **BEFORE ME** --------------------------------------------
**NURY EVARISTA PEÑA TABOADA**, Notary Public with national authority headquartered in the Special Notary Office of the Ministry of Justice of the Republic of Cuba, Plaza de la Revolución Municipality, in this city. -------------------
------------------------------------------------ **APPEARS** -----------------------------------------------
**ADARGELIO GARRIDO DE LA GRANA**, born in Cárdenas, Matanzas, Cuban citizen, of legal age, attorney, residing in Building 24, apartment 102, Camilo Cienfuegos District, La Habana del Este Municipality, in this city, whom I identify with his Permanent Identification Number 58072200262. -------------------------------
**HE ACTS** on behalf and in representation of the Cuban commercial company with a 50 year term called **EMPRESA MIXTA CORPORACIÓN HABANOS, S.A. (HABANOS S.A.)** with main offices at number 2006 Third Avenue between 20 and 22, Playa Municipality, in this city, incorporated through public document number 165 dated February 4, 2000, executed before this Notary Public and recorded in Volume II, folios 153 to 159 of the Book of Joint Ventures of the Foreign Investment Registry assigned to the Chamber of Commerce of the Republic of Cuba; in Book 135, folio 163 reverse, page 9906, section one of the Central Registry of Corporations; and in Book 1188, folio 103 reverse, page 16739, registration three of the Central Registry One of Havana. Its articles of incorporation were modified as evidenced in the Minutes of the General Shareholders' Meeting officially recorded by Isabel Cristina Martínez Alfonso under number 353 of the Notary Register, authorized on February 15, 2001 with regard to the capital increase and recorded in the Book of Joint Ventures for Foreign Investment in Volume II, folio 326 on March 22, 2001. The domicile was changed by resolution of the General Shareholders' meeting, which was recorded by this Notary Public on October 31, 2001 under number 2195 of my register, and recorded in the Book of Joint Ventures for Foreign Investment in Volume II, folio 396 on November 12, 2001. After authorization by and resolution of the General Shareholders' meeting, a change of partner was made, as evidenced in the minutes officially recorded by this Notary Public on December 24, 2001 under number 2454 of the register of notarized documents kept by my office, which record was registered in Volume II, folio 410 on January 3, 2002. He acts in his capacity as Secretary General of the Board of Directors, appointed by resolution number two of the General Shareholders' Meeting held on February 8,

2000 and officially recorded by the former Notary Public of this Notary Office Bernardo Musibay Piñeiro, on February 8, 2000 and registered in the Book of Joint Ventures for Foreign Investment in Volume II, folio 160 on February 8, 2000. He was ratified in his position by resolution number 11 of the Special General Shareholders' Meeting held on April 27, 2003, which he proves with copies of the documents mentioned above that I have seen and returned to the appearing party. ------------------------------------------------------------------------------------

He ensures me that his position and authorities are currently in force and effect and states that there is no document or act relative to the company lifetime prior to the present lifetime that is pending registration in the Commercial Registry. ------------------------------------------------------------------------------------

**HE WARRANTS** that he has the full enjoyment and use of his civil rights and, in my judgment, has the necessary legal capacity for this act, and STATES: ------------

**FIRST:** He requests that I, the Notary Public, hereby officially record the following document, which I have examined: -----------------------------------------------

- Certification issued by the appearing party in Havana on March 8 of this year relative to the resolutions adopted by the company's General Shareholders' Meeting. ------------------------------------------------------------------------------------

**SECOND:** I, the Notary Public, proceed to officially record the document in question, consisting of 5 pages typewritten in Spanish. -----------------------------------

**THIRD:** The requesting party states for all legal purposes that he is an interested party, that the document is authentic, and that the information it contains is true, assuming liability to third parties for any damages that it might cause if false. -----------------------------------------------------------------------------------------

**THUS STATES** the requesting party before me, whom I informed that the present document attests that the Notary Public has incorporated a document into her register for the purpose of ensuring its identity and existence on the date on which it was recorded. ----------------------------------------------------------------

This document WAS **READ IN ITS ENTIRETY** and in a single act to the requesting party by me, the Notary Public, at his election, after I informed him of his right to do so himself; and, being in agreement with its content, he ratifies and signs.-

**IN WITNESS WHEREOF** and of the identity of the appearing party, his other general circumstances being known to me from his statements, I, the Notary, **IN WITNESS WHEREOF. -----------------------------------------------------------------------------**

**SIGNED: ADARGELIO GARRIDO DE LA GRANA AND NURY EVARISTA PEÑA TABOADA, NOTARY PUBLIC.**

I, **Adargelio Garrido de La Grana**, Secretary of the Board of Directors of the Joint Venture Corporación Habanos, SA., with main offices at No. 2006 Third Avenue, Miramar, Havana, Cuba

<div align="center">

**CERTIFY**

</div>

**One:** That the following changes have been made to the composition of the Board of Directors of the Joint Venture Corporación Habanos S.A. since 2002:

**1.   Regular Shareholders' Meeting of September 24, 2002.**

**"Resolution No. 11/2002.**   It is hereby resolved to increase the Board of Directors to twelve members, i.e. add two more members, one designated by each party, with the same powers, obligations and duties. In this regard, José María Cobián Babe will act on behalf and in representation of ITI SA and Angel Estrada Acosta will act on behalf and in representation of Cubatabaco.**"**

**"Resolution No. 12/2002.**   Based on the preceding Resolution and for such purposes, Article 27 of the bylaws of the Joint Venture Corporación Habanos, S.A. must be amended as follows:

**"Article 27.**   The administration and representation of the COMPANY falls to the Board of Directors, which shall consist of twelve members to be named in equal numbers by each of the parties..."

**"Resolution No. 27/2002.**   The Secretary is authorized to officially record and register these minutes in the corresponding registry and issue as many certifications as necessary**."**

**2.   Regular Shareholders' Meeting of January 30, 2003.**

**"Resolution No. 2/2003.**   It is hereby resolved to release Débora Rivas from the Board of Directors at the request of the Cuban partner due to other responsibilities that she will assume at the beginning of this year. The Shareholders' Meeting acknowledges and leaves record of the commendable work done as Director of Habanos, S.A. and its group of companies, and expresses its gratitude for the constant support she provided in all the Corporation's objectives.**"**

**"Resolution No. 3/2003.**   At the Cuban partner's proposal and as a result of the preceding agreement, it is hereby resolved to name Iris Noceda de León as Director of the Corporación Habanos, S.A.**"**



**3. Special Shareholders' Meeting of April 27, 2003.**

**"Resolution No. 8/2003.**   Approve the removal of Jamie García-Andrade as Director and Co-Chairman.

The Shareholders' Meeting expresses its thanks for the valuable work done by Jaime García-Andrade during the entire time that he worked at the Company.**"**

**"Resolution No. 9/2003.**   Approve the appointment of Fernando Domínguez as Co-Chairman of the Board of Directors, with all the powers inherent to his position pursuant to the Company bylaws."

**"Resolution No. 10/2003.**   Approve the appointment of Luis Sánchez Harguindey as Director and Deputy Chairman of Finances, Accounting and Control."

**"Resolution No. 11/2003.**   Based on the preceding resolutions, modify the Board of Directors as follows:

| | | |
|---|---|---|
| 1. | Fernando Domínguez, | Co-Chairman |
| 2. | Oscar Basulto, | Co-Chairman |
| 3. | Antonio Vázquez, | Director |
| 4. | Ángel Estrada, | Director |
| 5. | José María Cobian, | Director |
| 6. | Manuel García, | Director |
| 7. | Jaime Olleros, | Director |
| 8. | Iris Nocedo, | Director |
| 9. | Luis Sánchez-Harguindey, | Director |
| 10. | Elvis Placer, | Director |
| 11. | Javier Terrés, | Director |
| 12. | Adargelio Garrido, | Director and Secretary General" |

**"Resolution No. 12/2003.**   Hold a Special Shareholders' Meeting for purpose of modifying, among other aspects, the Company Steering Committee, the current system of signatures for using the bank accounts, both in Cuba and abroad, of the Company, its branches, subsidiaries or companies in which it has a stake, and the powers for the executives designated for such purposes; as well as, if necessary, revoking the powers granted by the General Shareholders' Meeting as appropriate based on these Minutes."

**4. Special Shareholders' Meeting of July 21, 2004.**

**"Resolution No. 9/2004.**   Approve the removal of Iris Nocedo as member of the Board of Directors."

The Shareholders' Meeting expresses its thanks to Iris Nocedo for the work done as Director of the Company."

"**Resolution No. 10/2003.**    Approve the appointment of Adalberto Duménigo as member of the Company's Board of Directors."

**Two:** The system for bank signatures approved by the Board of Directors of the Joint Venture has been the following:

1.  **Special Board of Directors' Meeting of April 27, 2003.**

"**Resolution No. 10/2003.**   Based on Resolution No. 12/2003 of the General Shareholders' Meeting of April 27, 2003 and acting pursuant to the provisions of Article 31 of the Company Bylaws, particularly in relation to subsection e) relative to the powers of the Board of Directors, it is hereby resolved:

**FIRST:**   To repeal and leave without legal effect and value the powers and authorities granted in the signature system of Habanos, S.A. that has been in effect up to this time; and instead, grant new powers and authorities for using the Company bank accounts, both in Cuba and abroad, under a new signature system.

**SECOND:**   To maintain the principle of double signatures to use the bank accounts of the Joint Venture Corporación Habanos, S.A., its branches and/or subsidiaries both in Cuba and abroad, as follows:

1.- Two "A" signatures.
2.- One "A" signature along with one "B" signature.
3.- Two "B" signatures for an amount less than 500 USD or Euro.

**THIRD:** For the purposes of the preceding resolution, the signatures used by the following individuals shall be considered authorized signatures:

"**A" AUTHORIZED SIGNATURES:**

Oscar Basulto Torres,
Cuban citizen with permanent ID number 44070203985

Fernando Domínguez Valdés-Hevia,
Spanish citizen with alien ID Card No. 59042135583 and Spanish passport number Y907754.

Elvis Placer Cervera,
Cuban citizen, with permanent ID number 47061125509

Luis Sanchez-Harguindey Pardo de Vera,
Spanish citizen, with resident alien ID Card number 68080136483

Jorge Yañez García,
Cuban citizen, with Spanish work permit X2314867D.

José María Cobián Babé
Spanish citizen, with ID number 252.574.

**"B" AUTHORIZED SIGNATURES:**

Inmaculada Chicharro Izquierdo,
Spanish citizen, with alien ID Card No. 72120829893 and Spanish passport number 5205853 X

Luis Gutiérrez Urdaneta,
Cuban citizen, with permanent ID number 57033000561

María de los Ángeles Yero Obeso,
Cuban citizen, with permanent ID number 65092201116.

Tomás Díaz Agudo,
Spanish citizen with Spanish ID number 00803922-A.

Eneris Neyra Sifonte,
Cuban citizen, with Spanish work permit X2763662-M"

**"Resolution No. 11/2003.**    In order to execute all the double signature variations contained in the preceding resolution, it shall be an indispensable requirement within the joint authority that one of them belong to an authorized individual with Cuban citizenship and the other to an authorized individual with Spanish citizenship. The only exception to this principle will be those transactions that are indispensible in cases when no individual with one citizenship or the other can attend."

**2.   Meeting of the Board of Directors of Corporación Habanos SA of July 21, 2004.**

**"Resolution No. 13/2004.**   As of the appointment of Boris Abel Martín Rodríguez as Deputy Director of Finances and Treasury, the authorized signatures of Corporación Habanos S.A. (abbreviated as Habanos SA) are modified as follows:

**"A" AUTHORIZED SIGNATURES:**

Oscar Basulto Torres, Co-Chairman.
Cuban citizen with permanent ID number 44070203985

Fernando Domínguez Valdés-Hevia, Co-Chairman.
Spanish citizen with alien ID Card No. 59042135583 and Spanish passport number Y907754.

Elvis Placer Cervera, Vice-Chairman of Logistics.
Cuban citizen, with permanent ID number 47061125509



Luis Sanchez-Harguindey Pardo de Vera, Vice Chairman of Finances and Administration.
Spanish citizen, with resident alien ID card number 68080136483

Jorge Yañez García,
Cuban citizen, with Spanish work permit X2314867D.

José María Cobián Babé,
Spanish citizen, with ID number 252.574.

**"B" AUTHORIZED SIGNATURES:**

Inmaculada Chicharro Izquierdo, Director of Finances and Administration.
Spanish citizen, with alien ID Card No. 72120829893 and Spanish passport number 5205853 X

Luis Gutiérrez Urdaneta, Director of Finances and Administration.
Cuban citizen, with permanent ID number 57033000561

Boris Abel Martín Rodríguez, Deputy Director of Finances and Treasury.
Cuban citizen, with permanent ID number 70072804183.

Tomás Díaz Agudo,
Spanish citizen with Spanish ID number 00803922-A.

Eneris Neyra Sifonte,
Cuban citizen, with Spanish work permit X2763662-M.

In witness hereof, I issue this Certification in the city of Havana on March 8, 2005.

[signature]
Adargelio Garrido de La Grana
Secretary



**COINCIDES WITH THE MASTER COPY** recorded in the register of this Special Notary Office under the sequential number appearing in the heading, to which I refer and to which I have affixed and cancelled tax stamps in the amount of five Cuban pesos. I issue this copy on six typewritten pages to the appearing party on **March** 31, 2005. IN WITNESS WHEREOF. -------------------------------------------------



[signature]

*Nury E. Peña Taboada.*
*Special Notary Public*



*Republic of Cuba*
*Ministry of Justice*
*Central Commercial Registry*

**I, FRANCISCO PEREZ TORRES, COMMERCIAL REGISTRAR WITH JURISDICITON AND AUTHORITY THROUGHOUT NATIONAL TERRITORY.**

## CERTIFY:

**That the JOINT VENTURE called CORPORACIÓN HABANOS S.A. was incorporated through Public Document number 165 executed on February 4, 2000 before Nury Evarista Peña de Taboada, Notary Public with national authority headquartered at the Special Notary Office of the Ministry of Justice of the Republic of Cuba, which was recorded in the Book of Joint Ventures, Volume II, Folios 153 to 159 of the Registry of Foreign Investments, currently the Commercial Registry, under the Ministry of Justice, on March 23, 2005. Notarization Certificate number 712 executed in the City of Havana on March 25, 2005 before Nury Evarista Peña Taboada, Notary Public with national authority headquartered in the Special Notary Office of the Ministry of Justice of the Republic of Cuba, Plaza de la Revolución Municipality in this City, was recorded in the Book of Joint Ventures, Volume IX, Folio 80 reverse, Page 236, Registration 8. To date, there is no record referring to the dissolution and liquidation of this joint venture……………………………………………………**

**In witness whereof, this certification is issued to Adargelio Garrida de la Grana who requested that the document be recorded on behalf and in representation and in his capacity as Secretary of the Joint Venture called CORPORACIÓN HABANOS, S.A., signifying that the information contained herein faithfully conforms to that appearing in the entry in question. City of Havana, March 25, 2005…………………………………………………………………………………..**

**Prepared by: Yoetsy Torres Santos.**
[signature]

[signature]
**FRACNISCO PEREZ TORRES**.



The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK          )
                           )     ss
COUNTY OF NEW YORK         )

### CERTIFICATION

This is to certify that the attached is, to the best of my knowledge and belief, a true and accurate Spanish to English translation of ESCRITURA 712 DEL 25.03.2005, AMPLIACIÓN DEL CJO. ACCIONISTAS as completed on 01/11/2010.

Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
this 22nd day of January, 2010.

Notary Public

CHRIS SULLIVAN
Notary Public, State of New York
No. 01SU6146597
Qualified in Kings County
Commission Expires May 22, 2010

NUMERO: --------------- 712 ---------------------
------------ **ACTA DE PROTOCOLIZACION** ------------
Ciudad de La Habana, 25 de Marzo de 2005. -------
-------------------- **ANTE MI** ---------------------
**LICENCIADA NURY EVARISTA PEÑA TABOADA**, Notaria
con competencia nacional y sede en la Notaría
Especial del Ministerio de Justicia de la
República de Cuba, municipio Plaza de la
Revolución, en esta ciudad. ---------------------
------------------ **COMPARECE** ---------------------
**ADARGELIO GARRIDO DE LA GRANA**, natural de
Cárdenas, Matanzas, ciudadano cubano, mayor de
edad, casado, abogado, residente en Edificio 24,
apartamento 102, Reparto Camilo Cienfuegos,
Municipio La Habana del Este, en esta ciudad, a
quien identifico mediante su Identidad Permanente
número 58072200262. ----------------------------
**CONCURRE** a nombre y en representación de la
sociedad mercantil de nacionalidad cubana y
duración de cincuenta años, denominada **EMPRESA
MIXTA CORPORACIÓN HABANOS S.A. (HABANOS S.A)**,
domiciliada en Tercera avenida, número 2006,
entre 20 y 22, municipio Playa, en esta Ciudad,
constituida en virtud de la escritura número 165,
de fecha 4 de febrero de 2000, ante esta
fedataria, e inscrita en el tomo II, folios del
153 al 159 del Libro de empresas mixtas, del
Registro de la Inversión Extranjera, adscrito a
la Cámara de Comercio de la República de Cuba, en
el libro 135, folio 163 vuelto, hoja 9906,
sección primera del Registro Central de compañias
anónimas, en el libro 1188, folio 103 vuelto,
hoja 16739, inscripción tercera del Registro
Central primero de La Habana, modificada la
escritura fundacional según consta en Acta de
la Junta General de Accionistas, protocolizada
ante la Licenciada Isabel Cristina Martínez
Alfonso, bajo el número 353 del protocolo,
autorizada el 15 de febrero de 2001, en cuanto al
aumento de sus capital, e inscripta en el Libro
de Empresas Mixtas del Registro para la Inversión
Extranjera, en el tomo II, folio 326 en fecha 22
de marzo de 2001, se efectúo el cambió su
domicilio, por acuerdo de la Junta General de
Accionistas, el cual fue protocolizado por esta
fedataria, el día 31 de octubre de 2001, bajo el
número 2195 del protocolo a mi cargo, e inscripta
en el Libro de Empresas Mixtas del Registro para
la Inversión Extranjera en el tomo II, folio 396,
en fecha 12 de noviembre de 2001, se realizo
previa autorización y acuerdo de la Junta General
de Accionistas el cambio de socio, según consta
en el acta protocolizada por esta fedataria el
día 24 de diciembre de 2001, bajo el número 2454
del protocolo de documentos notariales a mi
cargo, e inscripta este propio Registro en el
tomo II, folio 410 en fecha 9 de enero de 2002.
Interviene en este acto en su carácter de
Secretario General del Consejo de Administración,
nombrado por acuerdo número dos de la Junta
General de Accionistas, celebrada el día 8 de



febrero del 2000, protocolizada por el que fuera notario de esta Notaría Licenciado Bernardo Musibay Piñeiro, el día 8 de febrero del 2000, e inscripta en el Libro de Empresas Mixtas del Registro para la Inversión Extranjera en el tomo II, folio 160, en fecha 8 de febrero de 2000, ratificado en su cargo mediante acuerdo número 11 de la Junta General de Accionistas extraordinaria, celebrada el 27 de abril de 2003, lo que acredita con copias de los documentos antes reseñados que he tenido a la vista y devuelvo al compareciente. ---------------------

Me asegura la vigencia de su cargo y facultades, y declara que no existe ningún documento o acto relativo a la vida de la sociedad, anterior a la presente, que se encuentre pendiente de inscripción en el Registro Mercantil. -----------

**ASEGURA HALLARSE** en el pleno goce y ejercicio de sus derechos civiles y tiene a mi juicio la capacidad legal necesaria para este acto y DICE:-

**PRIMERO:** Que me requiere a mí, la Notaria, para protocolizar a continuación de la presente Acta, el siguiente documento que he examinado: --------

- Certificación expedida por el compareciente en la ciudad de La Habana, el 8 de marzo del año en curso, referente a los acuerdos adoptados por la Junta General de Accionista de la sociedad. ----

**SEGUNDO:** Yo, la Notaria, procedo a la protocolización del citado documento, el cual consta de 5 hojas de papel escritas a máquina en idioma español. -------------------------------

**TERCERO:** El aquí requirente declara a todos los efectos legales procedentes, ser parte interesada, que el documento es auténtico y que los datos que contiene son ciertos, respondiendo a terceros de todos los perjuicios que con el mismo pudiera ocasionar si resultare falso. -----

**ASI LO DICE** el requirente a mi presencia, a quien advertí que la presente acredita que el Notario ha incorporado a su protocolo un documento con el fin de asegurar la identidad del mismo y su existencia en la fecha de su protocolización. ---

**LEIDA INTEGRAMENTE** y en un solo acto esta acta por mí, la Notaria, al requirente por su elección, después de advertirle del derecho que le asiste de hacerlo por sí y conforme en su contenido lo ratifica y firma. ------------------

**DE TODO LO CUAL** y de la identidad del compareciente, constándome sus demás generales por sus manifestaciones, yo, la Notaria, **DOY FE.-**

**FIRMADO: ADARGELIO GARRIDO DE LA GRANA Y LICENCIADA NURY EVARISTA PEÑA TABOADA, NOTARIA. -**

**Licenciado Adargelio Garrido de La Grana**, Secretario del Consejo de Administración de la Empresa Mixta Corporación Habanos SA, con domicilio en 3era. No. 2006, Miramar, Ciudad de La Habana, Cuba

## CERTIFICO

**Primero**: Que en la composición del Consejo de Administración de la Empresa Mixta Habanos SA, se han realizado las siguientes modificaciones a partir del año 2002:

### 1. Junta Ordinaria de Accionistas de 24 de septiembre de 2002.

"**Acuerdo No. 11/2002**. Se acuerda ampliar el Consejo de Administración a doce miembros, es decir, dos miembros más. Designando un por cada parte, con idénticas facultades, obligaciones y deberes; en tal sentido el Sr. José María Cobián Babe actuará en nombre y representación de ITI SA y el Sr. Ángel estrada Acosta actuará en nombre y representación de Cubatabaco."

"**Acuerdo No. 12/2002**. En virtud del Acuerdo Anterior y a tales efectos, procede modificar el Artículo 27 de los estatutos de la Empresa Mixta Corporación Habanos SA, como sigue:

"**Artículo 27**. La administración y representación de LA SOCIEDAD corresponde al Consejo de Administración, el que estará integrado por doce miembros a nombrar de forma paritaria por cada uno de los socios…."

"**Acuerdo No. 27/2002**. Se autoriza al Secretario para que protocolice e inscriba la presente Acta en el registro correspondiente y emita cuantas certificaciones sean necesarias."

### 2. Junta Ordinaria de Accionistas de 30 de enero de 2003.

"**Acuerdo No. 2/2003**. Se acuerda, liberar del Consejo de Administración a Sra. Débora Rivas, a solicitud del socio cubano, en virtud de otras responsabilidades que la misma desempeñará a comienzos del año en curso. La Junta expresa y deja constancia del meritorio trabajo realizado como Consejera de Habanos, S.A. y de su grupo de empresas, así como el agradecimiento por el constante apoyo brindado en todos los objetivos de la Corporación."

"**Acuerdo No. 3/2003**. A propuesta del socio cubano y en consecuencia con el pacto anterior, se acuerda nombrar como Consejera de la Corporación Habanos, S.A. a la Sra. Iris Noceda de León.

**3. Junta Extraordinaria de Accionistas de 27 de abril de 2003.**

"**Acuerdo No. 8/2003.** Aprobar la dimisión de Jaime García-Andrade como Consejero y Co-Presidente.

La Junta de Accionistas expresa su agradecimiento por el valioso trabajo realizado por Jaime García Andrade durante todo el tiempo que laboró en la Sociedad."

"**Acuerdo No. 9/2003.** Aprobar el nombramiento de Fernando Domínguez como Co-Presidente del Consejo de Administración, con todas las facultades inherentes a su cargo según los estatutos de la Sociedad."

"**Acuerdo No. 10/2003.** Aprobar el nombramiento de Luis Sánchez Harguindey como Consejero y Vicepresidente Financiero Contable y de Control."

"**Acuerdo No. 11/2003.** En virtud de los acuerdos precedentes, modificar el Consejo de Administración, como sigue:

| | | |
|---|---|---|
| 1. | Fernado Domínguez, | Co-Presidente |
| 2. | Oscar Basulto, | Co-Presidente |
| 3. | Antonio Vázquez, | Consejero |
| 4. | Ángel Estrada, | Consejero |
| 5. | José María Cobian, | Consejero |
| 6. | Manuel García, | Consejero |
| 7. | Jaime Olleros, | Consejero |
| 8. | Iris Nocedo, | Consejera |
| 9. | Luis Sánchez-Harguindey, | Consejero |
| 10. | Evis Placer, | Consejero |
| 11. | Javier Terrés, | Consejero |
| 12. | Adargelio Garrido, | Consejero y Secretario General" |

"**Acuerdo No. 12/2003.** Realizar Consejo de Administración Extraordinario con el objeto de modificar entre otros aspectos, el Comité de Dirección de la Sociedad, el actual régimen de firmas para operar las cuentas bancarias, tanto en Cuba como en el extranjero de la Sociedad, de sus sucursales, filiales o empresas participadas, los poderes para los ejecutivos designados para tales fines, así como, si fuese necesario, la revocación de potestades concedidas por la Junta General de Accionistas que a tenor de esta Acta sea oportuno realizar."

**4. Junta Extraordinaria de Accionistas de 21 de julio de 2004.**

"**Acuerdo No. 9/2004.** Aprobar la dimisión de Iris Nocedo como miembro del Consejo de Administración.

La Junta de Accionistas expresa su agradecimiento a Iris Nocedo por el trabajo realizado como Consejera de La Sociedad."

"**Acuerdo No. 10/2003**. Aprobar el nombramiento de Adalberto Duménigo como miembro del Consejo de Administración de La Sociedad."

**Segundo:** Que el sistema de firmas bancarias aprobado por el Consejo de Administración de la Empresa Mixta se ha comportado como sigue:

**1. Consejo de Administración Extraordinario de 27 de abril de 2003.**

"**Acuerdo No. 10/2003.** Que en virtud del Acuerdo número 12/2003 de la Junta General de Accionistas de fecha 27 de abril del 2003 y actuando en consecuencia con lo previsto en el Artículo 31 de los Estatutos de la Sociedad y en particular con relación al inciso e) relativas a las facultades del Consejo de Administración, se acuerda:

**PRIMERO**: Derogar y deja sin efecto y valor legal, los poderes y facultades concedidas en el hasta hoy vigente regimen de firmas de Habanos, S.A y en su lugar, otorgar nuevos poderes y facultades para operar cuentas bancarias de la Sociedad, tanto en Cuba o en el extranjero, bajo un nuevo régimen de firmas.

**SEGUNDO:** Mantener el principio de la doble firma para operar las cuentas bancarias de la Empresa Mixta Corporación Habanos, S.A., de sus sucursales y/o filiales tanto en Cuba como en el extranjero, de la manera siguiente:

1.- Dos firmas "A".
2.- Una firma "A" de conjunto con una firma "B".
3.- Dos firmas "B" para un monto inferior a 500 USD o Euros.

**TERCERO:** Al efecto de lo resuelto en el apartado anterior, se consideran firmas autorizadas las usadas por las siguientes personas:

**FIRMAS AUTORIZADAS "A":**

Oscar Basulto Torres,
Ciudadano cubano, con número de identidad permanente 44070203985

Fernando Domínguez Valdés-Hevia,
Ciudadano español, con carné de identidad para extranjeros número 59042135583 y pasaporte español número Y907754

Evis Placer Cervera,
Ciudadano cubano, con número de identidad permanente 47061125509

Luis Sanchez-Harguindey Pardo de Vera,
Ciudadano español, con número de identidad para extranjeros residentes 68080136483

Jorge Yañez García,
Ciudadano cubano, con permiso de trabajo español X2314867D.

José María Cobián Babé,
Ciudadano español, con número de identidad 252.574

**FIRMAS AUTORIZADAS "B":**

Inmaculada Chicharro Izquierdo,
Ciudadana española, con carné de identidad para extranjeros número 72120829893 y
pasaporte español número 5205853 X

Luis Gutiérrez Urdaneta.,
Ciudadano cubano, con número de identidad permanente 57033000561

María de los Ángeles Yero Obeso,
Ciudadana cubana, con número de identidad permanente 65092201116.

Tomás Díaz Agudo,
Ciudadano español, con número de identidad español 00803922-A.

Eneris Neyra Sifonte,
Ciudadano cubano, con permiso de trabajo español X2763662-M"

**"Acuerdo No. 11/2003.** Para ejecutar todas las variantes de dobles firmas consignadas
en el acuerdo anterior, será requisito imprescindible dentro de la mancomunidad, que
una de ellas corresponda a una persona autorizada de ciudadanía cubana y la otra a una
persona autorizada de ciudadanía española. Este principio tendrá como única excepción,
aquellas operaciones a realizar de forma indispensable, en casos de no poder concurrir
ninguna persona de una o otra ciudadanía."

## 2. Consejo de Administración de Corporación Habanos SA de 21 de julio de 2004.

**"Acuerdo No. 13/2004.** A partir del nombramiento de Boris Abel Martín Rodríguez
como Subdirector de Finanzas y Tesorería, se modifican las firmas autorizadas de
Corporación Habanos SA (abreviadamente Habanos SA), como sigue:

**FIRMAS AUTORIZADAS "A":**

Oscar Basulto Torres, Co-Presidente.
Ciudadano cubano, con número de identidad permanente 44070203985

Fernando Domínguez Valdés-Hevia, Co-Presidente.
Ciudadano español, con carné de identidad para extranjeros número 59042135583 y
pasaporte español número Y907754

Evis Placer Cervera, Vicepresidente de Logística.
Ciudadano cubano, con número de identidad permanente 47061125509

Luis Sanchez-Harguindey Pardo de Vera, Vicepresidente de Finanzas y Administración.
Ciudadano español, con número de identidad para extranjeros residentes 68080136483

Jorge Yañez García,
Ciudadano cubano, con permiso de trabajo español X2314867D.

José Maria Cobián Babé,
Ciudadano español, con numero de identidad 252.574

## FIRMAS AUTORIZADAS "B":

Inmaculada Chicharro Izquierdo, Directora de Finanzas y Administración.
Ciudadana española, con carné de identidad para extranjeros número 72120829893 y pasaporte español número 5205853 X

Luis Gutiérrez Urdaneta, Director de Finanzas y Administración.
Ciudadano cubano, con número de identidad permanente 57033000561

Boris Abel Martín Rodríguez, Subdirector de Finanzas y Tesorería.
Ciudadano cubano, con numero de identidad permanente 70072804183.

Tomás Díaz Agudo,
Ciudadano español, con número de identidad español 00803922-A.

Eneris Neyra Sifonte,
Ciudadano cubano, con permiso de trabajo español X2763662-M"

Y para que así conste, emito la presente Certificación, en la Ciudad de La Haban, a los 8 días del mes de marzo de 2005.

Lic. Adargelio Garrido de La Grana
Secretario





**CONCUERDA CON SU MATRIZ** que bajo el número de orden con que encabeza, obra en el protocolo de la Notaría Especial a mi cargo, a que me remito en la cual fijé e inutilicé sellos del timbre por valor de cinco pesos moneda nacional y para el compareciente, expido esta copia en seis hoja(s) de papel mecanografiado a los 31 días del mes de **marzo** de 2005, DOY FE. --------------------------

Lic. *Nury E. Peña Taboada*
*Notaría Especial.*



**República de Cuba**
**Ministerio de Justicia**
**Registro Mercantil Central**

LICENCIADO FRANCISCO PEREZ TORRES. REGISTRADOR MERCANTIL CON JURISDICCIÓN Y COMPETENCIA EN TODO EL TERRITORIO NACIONAL.

CERTIFICO:

Que la EMPRESA MIXTA denominada CORPORACIÓN HABANOS S.A fue constituída mediante Escritura número 165 otorgada el día 4 de febrero de 2000, ante la Licenciada Nury Evarista Peña Taboada, Notaria con competencia nacional y sede en la Notaria Especial del Ministerio de Justicia de la República de Cuba, la que quedó inscrita en el Libro de Empresas Mixtas, Tomo II, Folios del 153 al 159 del Registro de Inversiones Extranjeras, actualmente Registro Mercantil Central a cargo del Ministerio de Justicia. A los 23 días del mes de marzo del 2005, en el Libro de Empresas Mixtas, Tomo IX, Folio 80 Vto., Hoja 236, Inscripción 8va, quedo inscrita el Acta de Protocolización número 712, otorgada en la Ciudad de la Habana, a los 25 del mes marzo del 2005, ante la Licenciada Nury Evarista Peña Taboada, Notaria con competencia nacional y sede en la Notaria Especial del Ministerio de Justicia de la Republica de Cuba, munícipio Plaza de la Revolución, en esta ciudad. Hasta la fecha no consta inscripción referida a la disolución y liquidación de esta Empresa Mixta..................................................................................................................

Y para que asi conste se expide la presente al Licenciado Adargelio Garrido de la Grana, quien a nombre y en representación y en su condición de Secretario Letrado de la Empresa Mixta denominada CORPORACIÓN HABANOS S.A, solicito dicha inscripción significandos: que los datos que contiene esta certificación concuerdan fielmente con los que aparecen consignados en el asiento a que hace referencia. Ciudad de La Habana, a los 25 días del mes de marzo del año 2005................................

Confeccionado por: Yoetsy Torres Santos.

LIC. FRANCISCO PEREZ TORRES.



# EXHIBIT 6

Constitution of the Republic of Cuba
National Assembly of People's Power
Note

During 1975, a draft Constitution of the Republic was exposed to public debate, in which more than 6 million people participated. The resulting suggestions led to changes in 60 of the proposed articles.

On February 15, 1976, the document was approved by a referendum in which 98% of the electorate voted, with 97.7% of those voting in favour; approval was consequently by free, direct and confidential vote of the overwhelming majority of the electors.

On February 24, 1976, this Constitution was proclaimed, at a solemn, public ceremony.

On June 26, 1978, the National Assembly of People's Power, in exercise of its constitutional powers, resolved to amend Article 10(a) of the Constitution, changing the name of the island then known as "Isla de Pinos" to "Isla de la Juventud".

On July 12, 1992, the Constitutional Reform Act designed to implement recommendations by the Fourth Congress of the Cuban Communist Party was approved at a meeting of the National Assembly of People's Power, which had convened for such purpose. These were based on a public, open, frank and calm debate with the people, on a document issued by the Congress concerning the activities of the state agencies, arguing the need for our democratic institutions to be even more representative. This called for: decisions aimed at revising the structures, powers and steering functions of the various authorities based on such institutions; clarification of the role of government at provincial and municipal levels; new ways of electing deputies to sit on the National Assembly and delegates at the provincial assemblies; the addressing of other issues relevant to the nation's institutional life.

The Constitution was further amended to underpin and extend a large number of basic rights and freedoms, as well as the civil and political rights of both Cubans and aliens.

On June 10, 2002, an unprecedented plebiscitary process emerged, making itself felt at the Extraordinary Assembly of the various national headquarters of the mass organizations and, two days later, through demonstrations and marches held throughout the nation and involving over nine million people. It culminated in the public, voluntary signing, during the three days June 15-17, by a total of 8,198,237 electors, of a document ratifying the socialist content of the Constitution. This gesture by the Cuban people was in response to offensive, interventionist remarks by the President of the United States, and called on the National Assembly of People's Power to amend the Constitution so as to make irrevocable the socialism and revolutionary political and social system it proclaims. Also sought was a statement that economic, diplomatic and political relations with other states must not be conducted under aggression, threat or coercion by a foreign power. In Extraordinary Session on June 26, 2002, convened for the purpose, the

Assembly passed the relevant resolution (No. V-74), approving the Constitutional Reform Law.

Constitutional and Legal Affairs Committee of the National Assembly of People's Power
Constitution of the Republic of Cuba
Preamble

**WE, CUBAN CITIZENS**, heirs and continuators of the creative work and the traditions of combativeness, firmness, heroism and sacrifice fostered by our ancestors;
**by** the Indians who preferred extermination to submission;
**by** the slaves who rebelled against their masters;
**by** those who awakened national awareness and a yearning by Cubans for country and freedom;
**by** the patriots who in 1868 launched the wars of independence against Spanish colonialism and those who in the last drive of 1895 won victory in 1898, a victory usurped by the military intervention and occupation of Yankee imperialism;
**by** the workers, peasants, students and intellectuals who struggled for over fifty years against imperialist domination, political corruption, the absence of people's rights and liberties, unemployment and exploitation by capitalists and landowners;
**by** those who promoted, joined and developed the first organizations of workers and peasants, spread socialist ideas and founded the first Marxist and Marxist-Leninist movements;
**by** the members of the vanguard of the generation of the centenary of the birth of Martí who, imbued with his teachings, led us to the people's revolutionary victory of January;
**by** those who defended the Revolution at the cost of their lives, thus contributing to its definitive consolidation;
by those who en masse carried out heroic internationalist missions;
**GUIDED**
by the ideas of José Martí and the political and social ideas of Marx, Engels and Lenin;
**BASING OURSELVES**
on proletarian internationalism, on the fraternal friendship, aid, cooperation and solidarity of the peoples of the world, especially those of Latin America and the Caribbean;
**AND HAVING DECIDED**
to carry forward the triumphant Revolution of the Moncada and of the Granma of the Sierra and of Girón under the leadership of Fidel Castro, which sustained by the closest unity of all revolutionary forces and of the people won full national independence, established revolutionary power, carried out democratic changes, started the construction of socialism and, with the Communist Party at the forefront, continues this construction with the final objective of building a communist society;
**AWARE**
that all the regimes based on the exploitation of man by man cause the humiliation of the exploited and the degradation of the human nature of the exploiters;
that only under socialism and communism, when man has been freed from all forms of exploitation - slavery, servitude and capitalism - can the full dignity of the human being be attained; and

that our Revolution uplifted the country and of Cubans;

**WE DECLARE**

our will that the law of laws of the Republic be guided by the following strong desire of José Martí, at last achieved;

"I want the fundamental law of our republic to be the tribute of Cubans to the full dignity of man";

**AND ADOPT**

by means of our free vote in a referendum, the following:

**CONSTITUTION**

<div align="center">

**CHAPTER I**

Political, Social and Economic Principles of the State

</div>

**...**

**ARTICLE 17**. The State directly administers the goods that make up the socialist property of the entire people, or may create and organize enterprises and entities to administer them, whose structure, powers, functions and the system of their relations are prescribed by law.

These enterprises and entities only answer for their debts through their financial resources, within the limits prescribed by law. The State is not liable for the obligations contracted by the companies, entities, and other legal persons, and the latter are also not liable for the obligations of the State

**...**

**ARTICLE 23**. The State recognizes the property of the mixed companies, companies and economic associations constituted pursuant to the law. The use, enjoyment and disposal of the assets related to the property of said entities is governed by the provisions of the laws and statues as well as by their statues and other governing regulations.

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK      )
                       )      ss
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of The Constitution of the Republic of Cuba, completed on 1/21/2010, originally written in Spanish.

Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

KAREN OLIVE
Notary Public, State of New York
No. 01OL6146423
Qualified in Queens County
Commission Expires May 15, 2010

## Constitución de la República de Cuba
## Asamblea Nacional del Poder Popular
### Nota

El anteproyecto de la Constitución de la República, durante 1975 fue sometido a discusión pública donde participaron más de 6 millones de personas, y se formularon propuestas que llevaron a modificar 60 de los artículos propuestos.

El 15 de febrero de 1976 se celebró un referendo en el que votó el 98% de los electores, de los cuales el 97,7% lo hizo afirmativamente, alcanzando así su aprobación, mediante el voto libre, directo y secreto de la inmensa mayoría de éstos.

El 24 de febrero de 1976, fue proclamada esta Constitución en acto solemne y público.

El 26 de junio de 1978, la Asamblea Nacional del Poder Popular en uso de sus facultades constitucionales, acordó reformar el artículo 10, inciso a) de la Constitución, a los efectos de que en lo sucesivo la Isla de Pinos pasara a llamarse Isla de la Juventud.

El 12 de julio de 1992 fue aprobada en sesión convocada al efecto, de la Asamblea Nacional del Poder Popular, la Ley de Reforma Constitucional encaminada a cumplimentar las recomendaciones del IV Congreso del Partido Comunista de Cuba adoptadas como resultado del debate público, abierto, franco y sereno con el pueblo, del llamamiento que lo convocó y que evidenció, en lo concerniente a la actividad de los organismos estatales, la necesidad de encontrar vías para hacer aún más representativas nuestras instituciones democráticas y, consecuentemente, adoptar decisiones con vista a perfeccionar sus estructuras, atribuciones y funciones de dirección en sus diferentes instancias; incluir precisiones sobre la gestión del gobierno en provincias y municipios; establecer nuevas formas de elección de los diputados a la Asamblea Nacional y de los delegados a las asambleas provinciales, así como otras cuestiones de interés para la vida institucional del país.

La Constitución también fue modificada con el fin de garantizar y ampliar el ejercicio de numerosos derechos y libertades fundamentales y los derechos civiles y políticos de los ciudadanos y extranjeros.

El 10 de junio del 2002, el pueblo de Cuba, en un proceso plebiscitario popular sin precedentes, puesto de manifiesto tanto en la Asamblea Extraordinaria de las direcciones nacionales de las organizaciones de masas; como en actos y marchas realizados el día 12 del propio mes de junio a todo lo largo y ancho del país, en los que participaron más de nueve millones de personas y para la firma pública y voluntaria de 8 198 237 electores durante los días 15, 16 y 17 de ese mismo mes ratificaron el contenido socialista de esta Constitución en respuesta a las manifestaciones injerencistas y ofensivas del Presidente de los Estados Unidos de América, e interesaron de la Asamblea Nacional del Poder Popular reformarla, para dejar expresamente consignado el carácter irrevocable del socialismo y del sistema político y social revolucionario por ella diseñado, así como que las relaciones económicas, diplomáticas y políticas con otro Estado no pueden ser negociadas bajo agresión, amenaza o coerción de una potencia extranjera, ante la cual el órgano supremo de poder del Estado, en sesión extraordinaria, convocada al efecto, adoptó por unanimidad el Acuerdo No. V-74, por el que se aprobó la Ley de Reforma Constitucional el 26 de junio del 2002

**Comisión de Asuntos Constitucionales y Jurídicos de la Asamblea Nacional del
Poder Popular
Constitución de la República de Cuba
Preámbulo**

**NOSOTROS, CIUDADANOS CUBANOS**, herederos y continuadores del trabajo
creador y de las tradiciones de combatividad, firmeza, heroísmo y sacrificio forjadas por
nuestros antecesores;

**por** los aborígenes que prefirieron muchas veces el exterminio a la sumisión;

**por** los esclavos que se rebelaron contra sus amos;

**por** los que despertaron la conciencia nacional y el ansia cubana de patria y libertad;

**por** los patriotas que en 1868 iniciaron las guerras de independencia contra el
colonialismo español y los que en el último impulso de 1895 las llevaron a la victoria de
1898, que les fuera arrebatada por la intervención y ocupación militar del imperialismo
yanqui;

**por** los obreros, campesinos, estudiantes e intelectuales que lucharon durante más de
cincuenta años contra el dominio imperialista, la corrupción política, la falta de derechos
y libertades populares, el desempleo y la explotación impuesta por capitalistas y
terratenientes;

**por** los que promovieron, integraron y desarrollaron las primeras organizaciones de
obreros y de campesinos, difundieron las ideas socialistas y fundaron los primeros
movimientos marxista y marxista-leninista;

**por** los integrantes de la vanguardia de la generación del centenario del natalicio de
Martí, que nutridos por su magisterio nos condujeron a la victoria revolucionaria popular
de Enero;

**por** los que, con el sacrifico de sus vidas, defendieron la Revolución contribuyendo a su
definitiva consolidación;

por los que masivamente cumplieron heroicas misiones internacionalistas;

**GUIADOS**

por el ideario de José Martí y las ideas político-sociales de Marx, Engels y Lenin;

**APOYADOS**

en el internacionalismo proletario, en la amistad fraternal, la ayuda, la cooperación y la
solidaridad de los pueblos del mundo, especialmente los de América Latina y del Caribe;

**DECIDIDOS**

a llevar adelante la Revolución triunfadora del Moncada y del Granma, de la Sierra y de
Girón encabezada por Fidel Castro que, sustentada en la más estrecha unidad de todas las
fuerzas revolucionarias y del pueblo, conquistó la plena independencia nacional,
estableció el poder revolucionario, realizó las transformaciones democráticas, inició la
construcción del socialismo y, con el Partido Comunista al frente, la continúa con el
objetivo final de edificar la sociedad comunista;

**CONSCIENTES**

de que los regímenes sustentados en la explotación del hombre por el hombre determinan
la humillación de los explotados y la degradación de la condición humana de los
explotadores;

de que sólo en el socialismo y el comunismo, cuando el hombre ha sido liberado de todas
las formas de explotación: de la esclavitud, de la servidumbre y del capitalismo, se

alcanza la entera dignidad del ser humano; y de que nuestra Revolución elevó la dignidad de la patria y del cubano a superior altura;

**DECLARAMOS**

nuestra voluntad de que la ley de leyes de la República esté presidida por este profundo anhelo, al fin logrado, de José Martí:

**"Yo quiero que la ley primera de nuestra República sea el culto de los cubanos a la dignidad plena del hombre";**

**ADOPTAMOS**

por nuestro voto libre, mediante referendo, la siguiente:

**CONSTITUCION**.

## CAPITULO I

Fundamentos políticos, sociales y económicos del Estado

**…**

**ARTICULO 17**.-El Estado administra directamente los bienes que integran la propiedad socialista de todo el pueblo; o podrá crear y organizar empresas y entidades encargadas de su administración, cuya estructura, atribuciones, funciones y el régimen de sus relaciones son regulados por la ley.

Estas empresas y entidades responden de sus obligaciones sólo con sus recursos financieros, dentro de las limitaciones establecidas por la ley. El Estado no responde de las obligaciones contraídas por las empresas, entidades u otras personas jurídicas y éstas tampoco responden de las de aquél.

**…**

**ARTÍCULO 23.-** El Estado reconoce la propiedad de las empresas mixtas, sociedades y asociaciones económicas que se constituyen conforme a la ley. El uso, disfrute y disposición de los bienes pertenecientes al patrimonio de las entidades anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamentos propios por los que se gobiernan.

**EXHIBIT 7**

**COLECCIÓN LEGISLATIVA DE BOLSILLO**
[Bolsillo Legislation Collection] **Volume VII**


**CODIGO DE COMERCIO**
[Code of Commerce]

IN EFFECT IN THE REPUBLIC OF CUBA


[Followed by various Appendices

containing Supplementary Mercantile Legislation

and Banking Legislation]


REVISED AND COMPARED By

**RAFAEL RODRIGUEZ ALTUNAGA**
Fourth Edition, Substantially Corrected and Expanded


JESUS MONTERO, Editor
Obispo 521
HAVANA
1961

# CÓDIGO DE COMERCIO
[Commercial Code]

Scope

This Code was promulgated in Spain by the Law of August 22, 1885. By Royal Decree on this same date, the *Ministerio de Gracia y Justicia* [Ministry of Pardons and Justice], in compliance with said law, published the current Code of Commerce so that it may be observed as law in the Peninsula and adjacent islands, starting as of January 1, 1886. The publication of the Code began in the **Gaceta de Madrid** [Gazette of Madrid], No. 289 of October 16, 1885, and ended on end on page 648 of No. 328, for November 24 of the same year. This is a clear and careful print.

By Royal Decree of January 28, 1886 *(Gaceta de la Habana* [Gazette of Havana], of February 23), it was stipulated that this Code would govern Cuba from May 1 of this same year "without amendments than those introduced in Articles 179, 201, 453, 547, 550, 559, 798, 934 and 940."

As a sure guide as concerns the text of the *Código de Comercio,* unamended by subsequent Laws, we have seen the beautiful **Edición Oficial** [Official Edition] (1885), put out by the Spanish Government to "serve an the original for all legal purposes", as stated in Article Two of the Royal Decree of August twenty-second, 1885.

The copy in our library bears the seal of the *Ministerio de Gracia y Justicia* which grants authenticity to the text; and it was printed on November 12, 1885, by the Manuel Tello printshop, printers to the Chamber of His Majesty the King.

BOOK TWO

## ON SPECIAL CONTRACTS IN COMMERCE

### Title One

### ON MERCANTILE ENTERPRISES

### SECTION ONE

### On the Formation of Enterprises and Their Classes

**Article 116.** - The association contract by which two or more persons agree to place goods, industry or any of these things in common to achieve profits shall be a mercantile contract, regardless of its class, provided that it was formed in accordance with the provisions of this Code.

Once formed, the Mercantile Enterprise shall be a legal personality for all its acts and contracts.

See Articles 165 et seq., 1665, 1670 et seq., 170, C. Civ. [Civil Code],

**Article 117.** - The contract of a mercantile enterprise, entered into with the essential requirements under the law, shall be valid and binding on the contracting parties, regardless of the form, conditions and licit and honest combinations that compose it, provided that they are not expressly prohibited in this Code.

The creation of territorial, agricultural, central and discount Banks, credit enterprises, mortgage enterprises, and construction enterprises shall be permitted.

**Article 122.** - As a general rule, Mercantile Enterprises shall be formed by adopting any of the following forms:

**1.** A regular association in which all partners, in the collective name and under a enterprise name, agree to participate in the proportion they establish in the same rights and obligations.

**2.** A limited association, in which one or more subjects contribute a certain amount of capital to a common fund, to participate in the results of the enterprise transactions managed exclusively by others in the collective name.

**3.** A corporation in which, by forming the common fund, the associates by shares or certain portions, represented by stock or other clear manner, entrust its management to dismissable agents or administrators who represent the Enterprise under a name appropriate to the objective or business for which the funds are intended.

See Articles 139, 145 to 150, 152, 160 etseq., C. Com. [Code of Commerce].

**Article 123.** - Depending on the nature of their operations, Mercantile Enterprises may be:

Credit enterprises, Central and discount
banks, Territorial credit enterprises,
Mining enterprises, Agricultural banks,
Holders of railway, tramway and public works licenses, General storage
warehouses,
And other types, provided that their agreements are licit and their purpose is
industry or commerce.

**Article 124.** - Mutual fire insurance enterprises, tontine life insurance combinations providing old-age assistance and any other class, and production, credit or consumption cooperatives shall be considered mercantile and **be** subject to the provisions of this Code only when they are dedicated [remainder missing from original]

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY  10025

STATE OF NEW YORK  )
                           )    ss.:
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into _English_ of _Extract from the Commercial Code of Cuba_ written in _Spanish_ .

New York,  January 25, 2010.

TransNet USA, Inc.

Susan E. Geddes, Vice President

Sworn to and subscribed before me on
January 25, 2010.

LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010

**COLECCION LEGISLATIVA
DE BOLSILLO
Volumen VII**

# CODIGO DE COMERCIO

VIGENTE EN LA REPUBLICA DE CUBA

(Seguido de varios Apéndices contentivos
de la Legislación Mercantil complementaria
y la Legislación Bancaria)

REVISADO Y CONCORDADO

por

**RAFAEL RODRIGUEZ ALTUNAGA**

Cuarta edición corregida y notablemente aumentada



JESUS MONTERO, Editor
Obispo 521
LA HABANA
1961



# CÓDIGO DE COMERCIO

### Su Vigencia

Este Código se promulgó en España por la Ley de agosto 22 de 1885. Por Real Decreto de esa misma fecha, el Ministro de Gracia y Justicia, en cumplimiento de esta Ley, publicó el Código de Comercio actual, para que se observe, como ley, en la Península e islas adyacentes, desde el 1º de enero de 1886. La publicación del Código se empezó en la **Gaceta de Madrid**, núm. 289 de Oct. 16 de 1885 y se terminó en la pág. 648 del núm. 328, correspondiente al día 24 de nov. del propio año. Es una impresión nítida y cuidadosa.

Por Real Decreto de 28 de enero de 1886 (Gaceta de la Habana, de 23 de febrero) se dispuso que ese Código rigiera en Cuba desde el 1 de mayo de ese mismo año "sin otras modificaciones que las introducidas en los artículos 179, 201, 453, 517, 550, 559, 798, 934 y 940".

Hemos tenido a la vista, como guía segura, en cuanto al texto del Código de Comercio, no modificado por Leyes ulteriores, la bella **Edición Oficial** (1885), hecha por el Gobierno Español para "servir de original para todos los efectos legales", según reza el artículo segundo del Real Decreto de veintidós de agosto de 1885.

El ejemplar que obra en nuestra biblioteca lleva el sello del Ministerio de Gracia y Justicia que le comunica autenticidad a su texto; —y fue impreso en 12 de noviembre de 1885 en la imprenta de Manuel Tello impresor de Cámara de Su Majestad el Rey.



# LIBRO SEGUNDO

## DE LOS CONTRATOS ESPECIALES DEL COMERCIO

### Título Primero

## DE LAS COMPAÑIAS MERCANTILES

### SECCION PRIMERA

#### De la Constitución de las Compañías y de sus Clases

**Art. 116.**—El contrato de compañía por el cual dos o más personas se obligan a poner en fondo común bienes, industria o alguna de estas cosas para obtener lucro, será mercantil, cualquiera que fuese su clase, siempre que se haya constituido con arreglo a las disposiciones de este Código.

Una vez constituída la Compañía mercantil, tendrá personalidad jurídica en todos sus actos y contratos.

V. arts. 165 y sigs., 1665, 1670 y sigs. 1700 C. Civ.

**Art. 117.**—El contrato de compañía mercantil celebrado con los requisitos esenciales del derecho, será válido y obligatorio entre los que lo celebren, cualesquiera que sean la forma, condiciones y combinaciones lícitas y honestas con que lo constituyan, siempre que no estén expresamente prohibidas en este Código.

Será libre la creación de Bancos territoriales, agrícolas y de emisión y descuento, de Sociedades de crédito, de préstamos hipotecarios, concesionarias de obras

CÓDIGO DE COMERCIO                    47

**Art. 122.**—Por regla general, las Compañías mercantiles se constituirán adoptando alguna de las siguientes formas:

1° La regular colectiva en que todos los socios, en nombre colectivo y bajo una razón social, se comprometen a participar, en la proporción que establezcan de los mismos derechos y obligaciones.

2° La comanditaria en que uno o varios sujetos aportan capital determinado al fondo común, para estar a las resultas de las operaciones sociales dirigidas exclusivamente por otros con nombre colectivo.

3° La anónima en que formando el fondo común los asociados por parte o porciones ciertas, figuradas por acciones o de otra manera indubitada, encargan su manejo a mandatarios o administradores amovibles que representen a la Compañía bajo una denominación apropiada al objeto o empresa a que se destine sus fondos.

V. arts. 139, 145 a 150, 152, 160, sigs. C. Com.

**Art. 123.**—Por la índole de sus operaciones, podrán ser las Compañías mercantiles:

Sociedades de crédito;
Bancos de emisión y descuento;
Compañías de crédito territorial;
Compañías de minas;
Bancos agrícolas;
Concesionarias de ferrocarriles, tranvías, y obras públicas.

De almacenes generales de depósito;
Y de otras especies, siempre que sus pactos sean lícitos y su fin, la industria o el comercio.

**Art. 124.**—Las Compañías mutuas de seguros contra incendios, de combinaciones tontinas sobre la vida para auxilios a la vejez y de cualquiera otra clase y las cooperativas de producción, de crédito o de consumo, sólo se considerarán mercantiles y quedarán sujetas a las disposiciones de este Código, cuando se dedicaren



# EXHIBIT 8

[emblem]
Republic of Cuba


**CÓDIGO CIVIL**
[Civil Code]

**Law** No. 59


Publication
*Ministerio de Justicia*
[Ministry of Justice]

ARTICLE 36.1 After the presumption of death is declared, the exercise of the same rights that would have belonged to them if the death had been accredited by a medical certificate shall be granted to them.

2. The effects of the declaration are retroactive to the time at which the report that led to the presumption of death was made or the last news of the missing party was heard.

ARTICLE 37. If the missing party or party presumed dead appears or is proven to exist, the court shall annul the declaration of disappearance or of presumption of death, and shall stipulate that, aside from the cases of exception established by the law, all his rights shall be restored and his goods returned in the state in which they were and at the price for those sold or acquired with it, but he may not claim the fruits thereof.

## SECTION FOUR

### Rights Inherent in Personality

ARTICLE 33. Violation of the rights inherent in personality established in the Constitution that affect the net worth or honor of its holder confers on him or his successor the right to demand:

a)      immediate cessation of the violation or elimination of its effects, if possible;

b)      retraction on the part of the offender; and

c)      reparations for the damages and harm caused.

## CHAPTER II

### LEGAL PERSONS

ARTICLE 39.1 Legal persons are entities that, owning their own assets, have the capacity to be the subjects of rights and obligations.

2.      in addition to the State, the following are legal persons:

a)      companies and unions of State companies;

b)      cooperatives;

c)      political, union and company organizations and their enterprises;

ch)     companies and associations formed in conformity with the requirements established by law;

d)      foundations, this being understood to mean the set of goods created as separate net worth by an act of charity by the party who was their owner, to dedicate them to the achievement of a certain end permitted by law with a not-for-profit purpose, and formed in accordance with the requirements established by law;

e)      non-State companies authorized to conduct their activities; and

f)      other entities to which the law confers legal personality.

ARTICLE 40.1 The formation, government and dissolution of legal persons shall be established and regulated by law, their Charters and regulations.

2.      The organization and operation of the State shall be as established in the Constitution of the Republic and in the laws.

ARTICLE 41. Legal persons, to conduct their activities, shall have the capacity determined by the law, their Charters and regulations.

ARTICLE 42.1 Legal persons shall conduct their activities by means of their legally appointed or elected administrative organs.

2.      The procedure for the appointment or election of the administrative organs shall be established in their Charters or regulations and in the corresponding legal provisions. In the case of the State, Paragraph 2 of Article 40 shall apply.

3.      The actions performed by such bodies in relation to the activities of the legal person shall be binding on it.

4.      For damages caused to the legal person or to a third party due to the negligent management of its organs, the perpetrators shall also personally answer for it.

ARTICLE 43. The domicile of legal persons shall be that determined in the legal provisions creating them, in the Charters or regulations and, in the absence thereof, the location where its legal representation is established or its higher administrative organ is located.

ARTICLE 44.1 Legal persons answer for their obligations with the goods making up their net worth.

2.      The net worth of State companies shall be made up of the basic, turnover and financial resources assigned to them by the State. These companies shall answer for their obligations with their financial resources, within the limits established in the economic legislation.

3.      The State is not responsible for the obligations of other legal persons, nor are the latter responsible for the debts of the State.

TITLE III

**SUBJECT OF THE LEGAL RELATION**

ARTICLE 45.1. The subject of the legal relation is a piece of property, a service or an asset that was acquired or received licitly.

SECTION SIX

**Other Forms of Ownership**

ARTICLE 160.1. The State shall also recognize the property of companies, associations and foundations.

2.      Likewise, the State shall recognize the property of mixed companies, joint and international companies and of other legal persons of special natures.

3.      The use, enjoyment and disposition of the goods of entities referred to in the preceding paragraphs are governed by the provisions of the law and treaties as well as by the Charters and regulations of the respective legal person and, as a supplement, by this Code.

CHAPTER III

**CO-OWNERSHIP**

SECTION ONE

**General Provision**

ARTICLE 161. The ownership of one and the same item that is not materially divided may belong to several persons, by shares or in common.

SECTION TWO

**Co-Ownership by Shares**

ARTICLE 162.1. The portions or shares of the co-owners in the value of the undivided item shall be presumed to be equal.

2. Each of the co-owners shall have rights and obligations in proportion to their respective shares and may dispose of their share without the consent of the others, within the limits established by law.

**TransNet USA, Inc.**
235 West 102ND Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK   )
                              )   ss.:
COUNTY OF NEW YORK )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into _ English _ of _ Extract from the Civil Code of Cuba _ written in Spanish___.

New York, January 25, 2010.

TransNet USA, Inc.


Susan E. Geddes, Vice President


Sworn to and subscribed before me on January 25, 2010.


LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010



República de Cuba

# CODIGO CIVIL

## Ley No. 59



Divulgación
Ministerio de Justicia

ARTICULO 36.1.   Declarada la presunción de muerte, queda expedito para los interesados el ejercicio de los mismos derechos que les hubieran correspondido de ser la muerte acreditada por certificación médica.

2. Los efectos de la declaración se retrotraen al momento en que se produjo el acontecimiento que hizo presumir la muerte o se tuvieron las últimas noticias del desaparecido.

ARTICULO 37.   Si el declarado ausente o presuntamente muerto se presenta o se prueba su existencia, el tribunal anula la declaración de ausencia o presunción de muerte y dispone que, salvo los casos de excepción que establece la ley, se le restituya en todos sus derechos, y recobre sus bienes en el estado en que se encuentren y el precio de los enajenados o los adquiridos con él, pero no podrá reclamar frutos.

### SECCION CUARTA
**Derechos inherentes a la personalidad**

ARTICULO 38.   La violación de los derechos inherentes a la personalidad consagrados en la Constitución, que afecte al patrimonio o al honor de su titular, confiere a éste o a sus causahabientes la facultad de exigir:

a) el cese inmediato de la violación o la eliminación de sus efectos, de ser posible;

b) la retractación por parte del ofensor; y

c) la reparación de los daños y perjuicios causados.

### CAPITULO II
**PERSONAS JURIDICAS**

ARTICULO 39.1.   Las personas jurídicas son entidades que, poseyendo patrimonio propio, tienen capacidad para ser sujetos de derechos y obligaciones.

**15**



2. Son personas jurídicas, además del Estado:

a) las empresas y uniones de empresas estatales;

b) las cooperativas;

c) las organizaciones políticas, de masas, sociales y sus empresas;

ch) las sociedades y asociaciones constituidas de conformidad con los requisitos establecidos en las leyes;

d) las fundaciones, entendiéndose por tales el conjunto de bienes creado como patrimonio separado por acto de liberalidad del que era su propietario, para dedicarlos al cumplimiento de determinado fin permitido por la ley sin ánimo de lucro, y constituidas de conformidad con los requisitos establecidos en las leyes;

e) las empresas no estatales autorizadas para realizar sus actividades; y

f) las demás entidades a las que la ley confiere personalidad jurídica.

ARTICULO 40.1.  La constitución, régimen y disolución de las personas jurídicas se establecen y regulan en la ley, sus estatutos y reglamentos.

2. La organización y el funcionamiento del Estado son los que se establecen en la Constitución de la República y en las leyes.

ARTICULO 41.  Las personas jurídicas, para ejercer sus actividades, tienen la capacidad que determinen la ley y sus estatutos o reglamentos.

ARTICULO 42.1.  Las personas jurídicas realizan sus actividades por medio de sus órganos de dirección legalmente designados o elegidos.

16

2. El procedimiento para la designacion o elección de los órganos de dirección, se establece en sus estatutos o reglamentos y en las disposiciones legales correspondientes. En el caso del Estado se está a lo dispuesto en el artículo 40.

3. Los actos realizados por dichos órganos en relación con las actividades de la persona jurídica, obliga a ésta.

4. Por los daños ocasionados a la persona jurídica o a tercero a causa de la gestión negligente de sus órganos, responden, además, personalmente, sus autores.

ARTICULO 43. El domicilio de las personas jurídicas es el determinado en la disposición legal que las crea, en sus estatutos o reglamentos y, en su defecto, el lugar donde esté establecida su representación legal o radique su órgano superior de dirección.

ARTICULO 44.1. Las personas jurídicas responden de sus obligaciones con los bienes que integran su patrimonio.

2. El patrimonio de las empresas estatales está integrado por los medios básicos, de rotación y financieros que les asigna el Estado. Estas empresas sólo responden de sus obligaciones con sus recursos financieros, dentro de las limitaciones establecidas en la legislación económica.

3. El Estado no responde de las obligaciones de otras personas jurídicas, ni éstas de las de aquél.

TITULO III

**OBJETO DE LA RELACION JURIDICA**

ARTICULO 45.1. El objeto de la relación jurídica es un bien, una prestación o un patrimonio, que sean de lícita apropiación o recepción.

17



SECCION SEXTA

**Otras formas de propiedad**

ARTICULO 160.1.   El Estado reconoce también la propiedad de las sociedades, asociaciones y fundaciones.

2. Asimismo, reconoce la de las empresas mixtas, conjuntas e internacionales y de otras personas jurídicas de características especiales.

3. El uso, disfrute y disposición de los bienes de las entidades a que se refieren los apartados anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamento de la persona jurídica respectiva y, supletoriamente, por este Código.

CAPITULO III

**COPROPIEDAD**

SECCION PRIMERA

**Disposición general**

ARTICULO 161.   La propiedad de un mismo bien que no está materialmente dividido puede pertenecer a varias personas, por cuotas o en común.

SECCION SEGUNDA

**Copropiedad por cuotas**

ARTICULO 162.1.   Las partes o cuotas de los copropietarios sobre el valor del bien indiviso, se presumen iguales.

2. Cada uno de los copropietarios tiene derechos y obligaciones en proporción a su respectiva cuota y puede disponer de su parte sin el consentimiento de los demás, con las limitaciones que la ley establece.

**48**

