TRANSLATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NILO JEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-mc-466 |
| | ) | |
| THE REPUBLIC OF CUBA, FIDEL CASTRO | ) | |
| RUZ, Individually and as President of the State | ) | |
| and Council of Ministers, Head of the | ) | |
| Communist Party and Commander-in-Chief of | ) | |
| the Military, RAUL CASTRO RUZ, | ) | |
| Individually and as First Vice President of the | ) | |
| Head of the Cuban Revolutionary Armed | ) | |
| Forces, THE CUBAN REVOLUTIONARY | ) | |
| ARMED FORCES, and EL MINISTERIO DEL | ) | |
| INTERIOR, | ) | |
| | ) | |
| Defendants. | ) | |

LUIS FRANCISCO PERDOMO HERNANDEZ declares under penalty of

perjury under the laws of the United States of America that the following is true and

correct;

1.      I am the President of the Cuban company Havana Rum & Liquors S.A. I

have held this position since 1993.   The principal business activities of Havana Rum &

Liquors S.A. are the sale and the export of beverages and liquors.

2.      Havana Rum & Liquors S.A. is a shareholder company (known in Cuba as

a "sociedad anonima") constituted under the laws of the Republic of Cuba, with its own

legal personality and assets. The shareholders of Havana Rum & Liquors are Corporacion

Cuba Ron, S.A. and Empresa de Bebidas y Refrescos Villa Clara. A true and correct copy

of the Certification signed by Nirdo M. Basallo Diaz, dated March 10, 1999, with a

translation into English, is attached hereto as Exhibit A. Each of the shareholders of Havana Rum & Liquors S.A. is a company with legal personality, its own assets and management, organized under the laws of Cuba.  Havana Rum & Liquors S.A. is not an agency or instrumentality of the Republic of Cuba under Cuban law.

3.      Under Cuban law, Havana Rum & Liquors S.A. is not responsible for the debts or obligations of its shareholders. Furthermore, Havana Rum & Liquors S.A. is not responsible for the debts and obligations of third parties, including without limitation the Republic of Cuba.  The assets and liabilities of Havana Rum & Liquors S.A. are its own, and not the assets or liabilities of its shareholders. Likewise, the assets and liabilities of Havana Rum & Liquors S.A. are not the assets or liabilities of third parties, including the Republic of Cuba.

4.      Havana Rum & Liquors S.A. is a company owned by shareholders, and was constituted under the laws of the Republic of Cuba on September 21, 1993. The "Estatutos" (the equivalent of Articles of Incorporation in United States law and, hereinafter, the "Statutes") of Havana Rum & Liquors S.A., were issued at the Special Notary Office of the Ministry of Justice of the Republic of Cuba on September 21, 1993. The Statutes were recorded in the Central Register of Stock Companies and in the Second Commercial Register of Havana on October 15, 1993. A true and correct copy of the Statutes of Havana Rum & Liquors S.A., with a translation to English, is attached as Exhibit B.

5.      The Statutes of Havana Rum & Liquors S.A. state that the Board of Shareholders is the highest governing authority of the company and that the Board of Shareholders designates the Board of Directors and the administrative bodies of the company.  Statutes, at Articles Twenty First and Twenty Second. The administration and

representation of Havana Rum and Liquors S.A. is carried out by the Board of Directors, subject to the authority and direction of the Board of Shareholders.  Statutes, at Articles Twenty Fifth and Thirty First.  The Board of Shareholders, *inter alia*, designates the members of the Board of Directors, determines the number of persons who shall serve on the Board, amends the Statutes, and decides upon the distribution of dividends.  Statutes, at Article Twenty Second.  It is the responsibility of the Board of Directors to manage the enterprise in all of its aspects, subject to the Board of Shareholders' authority and direction. Statutes, at Article Thirty First.  The Board of Directors hires the personnel necessary to carry out the operations of the Company. *Id.*

6.      According to the Cuban Constitution, the Cuban Commercial and Civil Codes, and Cuban jurisprudence (judicial precedents), a commercial company which is owned by shareholders acquires its own legal personality with independent assets and limited liability, different from that of any of the parties.

7.      The Constitution of the Republic of Cuba explicitly provides that legal persons, such as commercial companies, are not liable for the debts and obligations of the Cuban State.  The Constitution establishes:  "The State is not liable for the obligations contracted by the companies, entities and other legal persons, and the latter are also not liable for the obligations of the State." (Constitution of the Republic of Cuba, enacted on February 24, 1976, last amended by the National Assembly of the People's Power on June 26, 2002, at Article 17). A true and correct copy of the aforementioned articles of the Constitution of the Republic of Cuba, with a translation to English, is attached as Exhibit C.

8.      Under the Commercial Code of Cuba, a commercial company has "legal personality in all its acts and contracts."  Article 116, second paragraph.  According to the

provisions of the Commercial Code, one of the forms adopted by commercial companies is the Joint Stock Company (Article 122). The current Commercial Code of Cuba was enacted in Spain on August 22, 1885, and was extended to Cuba by Royal Decree on January 28, 1886, being enacted on May 1, 1886. A true and correct copy of the aforementioned articles of the Commercial Code of Cuba, with a translation to English, is attached as Exhibit D.

9.     The Cuban Civil Code, adopted on April 12, 1988, sets forth that "legal entities are entities which, owning their own assets, have capacity to be subject to rights and obligations" (Article 39.1). In addition, the Civil Code states that "legal entities are ... the companies and associations constituted pursuant to the requisites established in the laws" and "other entities to which the law grants legal personality." (Art. 39.2 ch and f.)

10.     Concerning the liability of the companies, the Civil Code explicitly establishes that "the State is not responsible for the obligations of other legal persons, nor are the latter responsible for the debts of the State." (Art. 44.3). A true and correct copy of the aforementioned articles of the Civil Code, with a translation to English, is enclosed as Exhibit E. Havana Rum and Liquors S.A.'s Statutes explicitly set forth that the Board of Directors represents the Company in "all matters and activities, acts and legal business related to its sphere of operations to which the Corporation might dedicate its activities in accordance with its business objectives, as well as in judicial proceedings or outside of these, obligating it by its acts and contracts." Statutes, Article Thirty First (a).

11.     According to the above, since the registration of Havana Rum and Liquors S.A. in the Commercial Register of Havana and the Register of Shareholder Companies, this company became a legal entity, acquiring all rights inherent to the entity, including the right to its own assets and limited liability for its acts, but not for the acts of others.

4

Executed this 25th day of January, 2010 in Havana, Cuba.


____[signature]_____

LUIS FRANCISCO PERDOMO HERNANDEZ

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK      )
                                          )       ss
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation from Spanish to English of the *Declaration of Luis Francisco Perdomo Hernandez (Havana Rum & Liquors S.A.)*, completed on January 25, 2010.

Christine Muller
Vice President
The LanguageWorks, Inc.

Sworn to and subscribed before me
this 25th day of January, 2010

Notary Public

MARCEL HENRIQUE VOTLÚCKA
Notary Public, State of New York
No: 01VO6154182
Certificate Filed in New York County
Qualified in Kings County
Commission Expires October 23, 20 10

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NILO JEREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:09-mc-466 |
| ) | |
| THE REPUBLIC OF CUBA, FIDEL CASTRO ) | |
| RUZ, Individually and as President of the State ) | |
| and Council of Ministers, Head of the ) | |
| Communist Party and Commander-in-Chief of ) | |
| the Military, RAUL CASTRO RUZ, ) | |
| Individually and as First Vice President of the ) | |
| Head of the Cuban Revolutionary Armed ) | |
| Forces, THE CUBAN REVOLUTIONARY ) | |
| ARMED FORCES, and EL MINISTERIO DEL ) | |
| INTERIOR, ) | |
| ) | |
| Defendants. ) | |



LUIS FRANCISCO PERDOMO HERNANDEZ declara bajo pena de perjurio según las leyes de Estados Unidos de América que lo que sigue es verdadero y cierto:

1.     Soy el Presidente de Havana Rum and Liquors, S.A. He estado en este puesto desde 1993.   Las principales actividades comerciales de Havana Rum and Liquors S.A. son la venta y exportación de bebidas y licores.

2.     Havana Rum and Liquors, S.A., compañía accionista (conocida en Cuba como "sociedad anónima") está constituida bajo las leyes de la República de Cuba, con su personalidad legal y activos propios. Los accionistas de Havana Rum and Liquors S.A. son  Corporación Cuba Ron, S.A. y Empresa de Bebidas y Refrescos Villa Clara. Una copia verdadera y cierta del Certificado firmado por Nirdo M. Basallo Diaz, fechada el 10

de marzo de 1999, con una traducción al inglés, se ajunta al presente como Anexo A. Cada uno de los accionistas de Havana Rum and Liquors, S.A. es una compañía con personalidad legal, activos y gerencia propia, organizada bajo las leyes de Cuba. Havana Rum and Liquors, S.A. no es una agencia o instrumento de la República de Cuba bajo las leyes cubanas.

3.	Bajo las leyes cubanas, Havana Rum and Liquors, S.A. no es responsable por las deudas u obligaciones de sus accionistas. Además, Havana Rum and Liquors, S.A. no es responsable por las deudas u obligaciones de terceras partes, incluyendo sin limitación la República de Cuba. Los activos y pasivos de Havana Rum and Liquors, S.A. son los propios y no los activos o pasivos de sus accionistas. Asimismo los activos y pasivos de Havana Rum and Liquors S.A. no son activos y pasivos de terceras partes, incluyendo la República de Cuba.



4.	Havana Rum and Liquors, S.A. es una compañía propiedad de los accionistas constituida bajo las leyes de la República de Cuba el 21 de septiembre de 1993. Los Estatutos (equivalente a los Artículos de Incorporación en las leyes de Estados Unidos) de Havana Rum and Liquors S.A. fueron expedidos en la Notaría Especial del Ministerio de Justicia de la República de Cuba el 21 de septiembre de 1993. Los Estatutos fueron registrados en el Registro Central de Sociedades Anónimas y en el Registro Mercantil Segundo de la Habana el 15 de octubre de 1993. Una copia verdadera y cierta de los Estatutos de Havana Rum and Liquors S.A., con una traducción al inglés, se junta en el Anexo B.

5.	Los estatutos de Havana Rum and Liquors, S.A. establece que la Junta de Accionistas es la máxima autoridad de gobierno de la compañía y que la Junta de

Accionistas designa a la Directiva y a los cuadros administrativos de la compañía. Estatutos, Artículo Vigésimo Primero y Vigésimo Segundo. La administración y la representación de la Havana Rum and Liquors S.A. es llevada a cabo por la Junta de Directores, sujeto a la autoridad y dirección de la Junta de Accionistas. Estatutos, Artículos Vigésimo Quinto y Trigésimo Primero. La Junta de Accionistas, *inter alia*, designa a los miembros de la Junta de Directores, determina la cantidad de personas que van a formar parte del mismo, enmienda los Estatutos y decide la distribución de los dividendos. Estatutos, Artículo Vigésimo Segundo. Es responsabilidad de la Junta de Directores manejar la empresa en todos sus aspectos, sujeto a la autoridad y dirección de la Junta de Accionistas. Estatutos, Artículo Trigésimo Primero. La Junta de Directores contrata los trabajadores necesarios para llevar a cabo la operación de la Compañía. *Id.*

6. De acuerdo con la Constitución cubana, los Códigos Civil y de Comercio y la jurisprudencia cubana (precedentes judiciales), una compañía mercantil que es propiedad de accionistas adquiere su propia personalidad legal con activos independientes y pasivos limitados, diferentes a los de cualquiera de las partes.

7. La Constitución de la República de Cuba establece explícitamente que las personas legales, tales como compañías mercantiles, no son responsables de las deudas y obligaciones del Estado cubano. La Constitución establece: "El Estado no responde de las obligaciones contraídas por las empresas, entidades u otras personas jurídicas y estas tampoco responden de las de aquel." (Constitución de la República de Cuba, proclamada el 24 de febrero de 1976, enmendada por última vez por la Asamblea Nacional del Poder Popular el 26 de junio de 2002, Artículo 17). Una copia verdadera y cierta de los

artículos de la Constitución de la República de Cuba mencionados anteriormente, con la traducción al inglés, se junta en el Anexo C.

8.     Bajo el Código de Comercio de Cuba, una compañía comercial tiene "personalidad legal en todos sus actos y contratos" Artículo 116, segundo párrafo. De acuerdo con las disposiciones del Código de Comercio, una de las formas adoptadas por las compañías mercantiles es la Anónima (Artículo 122). El actual Código de Comercio de Cuba fue promulgado en España el 22 de agosto de 1885 y fue extendido a Cuba por Decreto real el 28 de enero de 1886, siendo promulgado el 1ro de mayo de 1886. Una copia verdadera y cierta de los artículos del Código de Comercio de Cuba mencionados anteriormente, con la traducción al inglés, se junta en el Anexo D.

9.     El Código Civil cubano, adoptado el 12 de abril de 1988, expone que "Las personas jurídicas son entidades que, poseyendo patrimonio propio, tienen capacidad para ser sujetos de derechos y obligaciones" (Artículo 39.1). Adicionalmente, el Código Civil dispone que "Son personas jurídicas... las sociedades y asociaciones constituidas de conformidad con los requisitos establecidos en las leyes" y "las demás entidades a las que la ley confiere personalidad jurídica." (Art. 39, 2 ch y f.) 

10.     Concerniente a las deudas de las compañías, el Código Civil establece explícitamente que "El Estado no responde de las obligaciones de otras personas jurídicas, ni éstas de las de aquél." (Art. 44.3). Una copia verdadera y cierta de los artículos del Código Civil mencionados anteriormente, con la traducción al inglés, se junta en el Anexo E. Los estatutos de Havana Rum and Liquors S.A. disponen explícitamente que la Junta de Directores representa a la Corporación "en todos los asuntos y actividades, actos y negocios jurídicos que estén relacionados con la esfera de

operaciones a la que La Corporación pueda dedicar su actividad de acuerdo con el objeto social, así como en procedimientos judiciales o fuera de los mismos, obligándola con sus actos y contratos." Estatutos, Articulo Trigésima Primero (a).

11.  De acuerdo con lo anterior, desde que se asentó a Havana Rum and Liquors S.A. en el Registro de Sociedades Anónimas y en el Registro Mercantil de la Habana, esta compañía se convirtió en una entidad jurídica, adquiriendo todos los derechos inherentes a una entidad, incluyendo el derecho a sus propios activos y pasivos limitados por sus actos, pero no por los actos de otros.

Firmado este 25 de enero de  2010 en La Habana, Cuba.

_____

LUIS FRANCISCO PERDOMO HERNANDEZ

# EXHIBIT A

**REPUBLIC OF CUBA**

**MINISTRY OF JUSTICE**

**SPECIAL NOTARY**

**DOCUMENT No. 510**

**Certificate of Notarization**

**NOTARY:**

**DATE: March 15, 1999**

**PARTIES APPEARING**

**Nirdo Basallo Díaz**

DRN - 27

**Number:** -------------------------------------------------- 510 ------------------------------------------------------

--------------------------------------- **CERTIFICATE OF NOTARIZATION** -----------------------------------

City of Havana, March 15, 1999 -----------------------------------------------------------------------------------------

-------------------------------------------------------- **BEFORE ME** --------------------------------------------------

**CARMEN ALICIA PÉREZ DÍAZ**, a Notary with nationwide jurisdiction and having her seat in the Special Notarial Office of the Ministry of Justice, Republic of Cuba. ----------------------------------------------

-------------------------------------------------- **THERE APPEARS** --------------------------------------------------

**NIRDO MANUEL BASALLO DÍAZ**, born in Jovellanos, Matanzas, a Cuban citizen, of legal age, married, an attorney, residing in Santa Emilia at number 266, Santos Suárez, Diez de Octubre Municipality, in this City, with Permanent Identity number 38030601523. --------------------------------------

**HE APPEARS** in his capacity as Secretary of the corporation known as **HAVANA RUM & LIQUORS S.A.**, incorporated by virtue of Public Instrument number 456, authorized by Lurdes Lucía Díaz Canel Navarro, a Notary from this Notarial Office, on September 21, 1993, registered in the Central Registry of Corporations according to its first listing in Book 135, folio 26, page 9990, first section, and in the First Commercial Registry of Havana, Book 1188, folio 163, page 23, first listing dated October 15, 1993, which is demonstrated. --------------------------------------------------------------------------------------

**HE DECLARES THAT HE IS** in the full enjoyment and exercise of his civil rights, and in my judgment he has the necessary legal competence for this act, and STATES: ----------------------------------------------

**FIRST:** He asks me, the Notary, to formally record, after this certification, the following documents: ------------

a)  The Minutes of the aforementioned company's General Meeting of Shareholders held in this city on December 20, 1996, wherein Resolutions 20, 21, 22, and 23, respectively, were adopted: ---------------
b)  The Certification issued by the person appearing in the capacity with which he appears, relating to the resolutions adopted at the company's Special General Meeting of Shareholders held in this city on February 2 of this year. --------------------------------------------------------------------------------------------

**SECOND:** I the Notary proceed to formally record said documents, which occupy six sheets of paper typed in Spanish. -------------------------------------------------------------------------------------------------------------

**THIRD:** The person appearing declares for all appropriate legal intents and purposes that he is an interested party, the documents are authentic, and the data contained therein are true, being answerable to third parties for all damages to which they might give rise if they turned out to be false. ----------------------

**THUS SAYS** the person appearing in my presence. --------------------------------------------------------------------
**THESE MINUTES WERE READ OUT IN FULL** and in a single act by me the Notary to the petitioner, who being satisfied with their content, ratifies and signs them. ----------------------------------------

**I THE NOTARY BEAR WITNESS TO ALL THE FOREGOING** and to the identity of the person appearing, having verified his identification data by his statements. --------------------------------------------------

**SIGNED, NIRDO MANUEL BASALLO DÍAZ AND CARMEN ALICIA PÉREZ DÍAZ, NOTARY.** -------------------------------------------------------------------------------------------------------

## MINUTES OF THE GENERAL MEETING OF SHAREHOLDERS
## HAVANA RUM & LIQUORS

A meeting was held at the corporate domicile of the Havana Rum & Liquors S.A. company in the City of Havana, at 3:00 p.m. on December 20, 1996, in a special session of the corporation's General Meeting of Shareholders at which all the partners, Mr. Luis Perdomo Hernández and Mr. Sergio Valdés Dorta, were present, assisted by the Company's Secretary, Dr. Nirdo Basallo Díaz, for the purpose of analyzing the following objectives:

- Request for transfer of shares belonging to the partners of Havana Rum & Liquors S.A. to the Corporación Cuba Ron S.A. company.
- Election of the Corporation's President.

The meeting was convened by Mr. Perdomo, President of the Company, who stated that all the shareholders were present, having been given notice of meeting by this Board within the prescribed time span pursuant to the provisions of its Bylaws.

Thereupon Mr. Perdomo stated that he requested authorization, through the Board of Directors, from the Shareholders Meeting to transfer all his shares in Havana Rum & Liquors, i.e., 1,250 shares of Two Thousand (2,000) dollars each, to the private Cuban enterprise Corporación Cuba Ron S.A., [thereby] ceasing as of that time to be a shareholder of Havana Rum & Liquors. He then briefly explained the basis for his request.

Having done so, Mr. Perdomo informed this Shareholders Meeting of the request submitted by Mr. Sergio Valdés to transfer 1,249 of his 1,250 shares of Two Thousand (2,000) dollars each to the Corporación Cuba Ron S.A. company, being comprised of 624 Series A shares and 625 Series B shares, with which he would remain the owner of only ONE (1) share of Two Thousand (2,000) dollars pertaining to Series A.

Mr. Sergio Valdés, for his part, ratified what had been said by Mr. Perdomo and succinctly explained the basis for his request, while expressing his concurrence with Mr. Perdomo's proposal for the transfer of his shares to Corporación Cuba Ron S.A.

To recapitulate how the shareholdings in HRL would stand, and accordingly who its partners would be, Mr. Perdomo stated as follows:

- 2,499 shares of two thousand (2,000) dollars each in the name of Corporación Cuba Ron S.A., 1,250 of them pertaining to Series B and 1,249 pertaining to Series A.
- 1 share of two thousand (2,000) dollars in the name of Mr. Sergio Valdés Dorta, pertaining to Series A.

Following deliberation by the partners, the following resolutions were unanimously adopted:

RESOLUTION No. 20: To authorize the transfer of the 1,250 shares of 2,000 dollars each, having a total value of 2,500,000.00 dollars, belonging to Mr. Luis Perdomo Hernández in his capacity as a shareholder of Havana Rum & Liquors, to Corporación Cuba Ron S.A.

[signatures]
[illegible seal]

RESOLUTION No. 21: To authorize the transfer of the 1,249 shares of 2,000 dollars each, having a total value of 2,498,000 dollars, belonging to Mr. Sergio Valdés Dorta in his capacity as a shareholder of Havana Rum & Liquors S.A. to Corporación Cuba Ron S.A.

Thereafter, Mr. Perdomo discussed the next item on the agenda, stating that since Havana Rum & Liquors S.A, now had a new partner, commencing as of the time of the transfer of all his shares and a majority of the shares belonging to Mr. Valdés, if approved, to the Cuban business enterprise Corporación Cuba Ron S.A., it had become necessary to designate a new Chairman of the Board of Directors and Shareholders Meeting of Havana Rum & Liquors, as well as to propose the renewal or confirmation in office of the rest of the Directors who comprised said Board.

Regarding this issue, Mr. Valdés stated that, since Mr. Perdomo simultaneously held the position of President of this corporation's new majority shareholder, he believed he should continue serving as Chairman of the Board of Directors and Shareholders Meeting of Havana Rum & Liquors, which he proposed to this Board.

Mr. Perdomo, for his part, said he had no objections to the proposal of Mr. Valdés, and additionally proposed that the rest of the Board of Directors should be deemed to be confirmed in office.

Following deliberation by the parties on the aforementioned proposals, the following resolutions were unanimously adopted:

RESOLUTION No. 22: To ratify Mr. Luis Perdomo Hernández as Chairman of the Board of Directors and the Shareholders Meeting of Havana Rum & Liquors S.A.

RESOLUTION No. 23: To confirm the currently approved Board of Directors of Havana Rum & Liquors S.A.

There being no further business to be transacted by the partners, the meeting was adjourned at 5:30 p.m. of the same day.

And for the record, I the Secretary bear witness jointly with the President.

[signature]                                    [signature]
Secretary                                      President
[illegible seal]                               [illegible seal]


                                               [signature]
                                               [illegible seal]

Dr. NIRDO M. BASALLO DÍAZ, SECRETARY OF THE HAVANA RUM AND LIQUORS S.A. COMPANY, A CUBAN COMPANY INCORPORATED BY MEANS OF PUBLIC INSTRUMENT No. 456 OF SEPTEMBER 21, 1993, EXECUTED BEFORE LURDES DÍAZ-CANEL NAVARRO, A NOTARY OF THE SPECIAL NOTARIAL OFFICE OF THE MINISTRY OF JUSTICE, REPUBLIC OF CUBA. …………………………………………………………………………………..

I CERTIFY: ………………………………………………………………………………….

It is recorded in the Corporation's Shareholders Meeting Minute Book that a special session of its Shareholders Meeting was held on February 2, 1999, at which the following resolutions, among others, were adopted: …………………………………………………………………………………..

**Resolution No. 1/99:** To cancel and annul Stock Certificates Nos. 1, 2, 3, and 4, issued on September 21, 1993, which encompass Shares 1 to 625 of Series A, 626 to 1250 of Series A, 1 to 625 of Series B, and 626 to 1250 of Series B, respectively. …..................................................................................................

**Resolution No. 2/99:** To approve the issuance of new Stock Certificates for other owners of shares, as indicated below: …………………………………………………………………………………..

Certificate No. 5: Shares 1 to 625 of Series A, for 2,000.00 USD each, having a total value of 1,250,000.00 USD. …………………………………………………………………………………..
Owner: Sergio Valdés Dorta …………………………………………………………………………

Certificate No. 6: Shares 626 to 1250 of Series A, for 2,000.00 USD each, having a total value of 1,250,000.00 USD. …………………………………………………………………………………..
Owner: Corporación Cuba Ron S.A. …………………………………………………………………

Certificate No. 7: Shares 1 to 625 of Series B, for 2,000.00 USD each, having a total value of 1,250,000.00 USD. …………………………………………………………………………………..
Owner: Sergio Valdés Dorta …………………………………………………………………………

Certificate No. 8: Shares 626 to 1250 of Series B, for 2,000.00 USD each, having a total value of 1,250,000.00 USD. …………………………………………………………………………………..
Owner: Corporación Cuba Ron S.A. …………………………………………………………………..

[signature]
[illegible seal]

**Resolution No. 3/99:** To cancel and annul Stock Certificates Nos. 5, 6, 7, and 8, which encompass Shares 1 to 625 of Series A, 626 to 1250 of Series A, 1 to 625 of Series B, and 626 to 1250 of Series B, respectively. …..............................................................................................................................................

**Resolution No. 4/99:** To Approve the issuance of new Stock Certificates, as indicated below: …………

Certificate No. 9: Shares 1 to 624 of Series A, for 2,000.00 USD each, having a total value of 1,248,000.00 USD. …………………………………………………………………………………..
Owner: Corporación Cuba Ron S.A. …………………………………………………………………..

Certificate No. 10: Share 625 of Series A, for 2,000 USD, having a total value of 2,000.00 USD. ………..
Owner: Sergio Valdés Dorta …………………………………………………………………………...

Certificate No. 11: Shares 626 to 1250 of Series A, for 2,000.00 USD each, having a total value of 1,250,000.00 USD. …………………………………………………………………………………..
Owner: Corporación Cuba Ron S.A. …………………………………………………………………

Certificate No. 12: Shares 1 to 1250 of Series B, for 2,000.00 USD each, having a total value of 2,500,000.00 USD. …………………………………………………………………………………..
Owner: Corporación Cuba Ron S.A. …………………………………………………………………..

**Resolution No. 5/99:** The transfer of Share No. 625 of Series A, having a value of 2,000.00 USD, owned by Mr. Sergio Valdés Dorta, to Corporación Cuba Run S.A. is approved. …………………………………

Mr. Luis Perdomo Hernández, acting in representation of Corporación Cuba Ron S.A., accepts the transfer approved by the preceding resolution. …………………………………………………………...

**Resolution No. 6/99:** The transfer of Share No. 1250 of Series A, having a value of 2,000.00 USD, owned by Corporación Cuba Ron S.A., to Mr. Sergio Valdés Dorta, is approved. …………………………

Mr. Sergio Valdés Dorta accepts the transfer approved by the preceding resolution. ………………………

[signature]
[illegible seal]

**Resolution No. 7/99:** To approve the transfer of Share No. 1250 of Series A, having a value of 2,000.00 USD, owned by Mr. Sergio Valdés Dorta, to Empresa de Bebidas y Refresco Villa Clara. ………………

Mr. Joaquín Ruiz Perdomo, a Director of Empresa de Bebidas y Refrescos Villa Clara and acting in its representation, accepts the transfer approved by the preceding resolution on its behalf. …………………..

**Resolution No. 8/99:** To cancel and annul Stock Certificates Nos. 9, 10, and 11, which encompass Shares 1 to 624 of Series A, No. 625 of Series A, and 626 to 1250 of Series A, respectively. …...........................

**Resolution No. 9/99:** To approve the issuance of new Stock Certificates representing portions of the Corporation's capital stock and having the following numbers: ……………………………………………

Certificate No. 13: Shares 1 to 1249 of Series A, for 2,000.00 USD each, having a total value of 2,598,000.00 USD. ……………………………………………………………………………………..
Owner: Corporación Cuba Ron S.A. …………………………………………………………………..

Certificate No. 14: Share 1250 of Series A, for 2,000 USD, having a total value of 2,000.00 USD. ………
Owner: Empresa de Bebidas y Refrescos Villa Clara …………………………………………………….

The President stated that, following the changes of Stock Certificates approved by this Shareholders Meeting, the capital stock of Companía Havana Rum and Liquors S.A. is represented by: ………………

**Certificate No. 12: Shares 1 to 1250 of Series B, for 2,000.00 USD each, having a total value of 2,500,000.00 USD. ……………………………………………………………………………………..**
**Owner: Corporación Cuba Ron S.A. …………………………………………………………………..**

**Certificate No. 13: Shares 1 to 1249 of Series A, for 2,000.00 USD each, having a total value of 2,498,000.00 USD. ……………………………………………………………………………………..**
**Owner: Corporación Cuba Ron S.A. …………………………………………………………………..**

[signature]
[illegible seal]

**Certificate No. 14: Share 1250 of Series A, for 2,000 USD, having a total value of 2,000.00 USD. …
Owner: Empresa de Bebidas y Refrescos Villa Clara …………………………………………………**

**Resolution No. 10/99:** Mr. Sergio Valdés Dorta is ratified in the positions of Vice President and Director
General of the Compañía Havana Rum and Liquors S.A.. …………………………………………

**Resolution No. 11/99:** To designate Mr. Sergio Valdés Dorta as representative of the Empresa de
Bebidas y Refrescos Villa Clara company to the Shareholders and Directors Meetings of Compañía
Havana Rum and Liquors S.A. …………………………………………………………………………...

I LIKEWISE CERTIFY: That the undersigned is in possession and exercise of the position of Secretary
of the Corporation and that the functions, powers, and authorities pertaining to said position are currently
in force, there being no record in this company's files of their having been amended, suspended, or
repealed in any manner whatsoever, which is affirmed under the strict responsibility and liability of the
person who certifies. …………………………………………………………………………………...

And to allow it to be used in the Special Notarial Office of the Ministry of Justice, Republic of Cuba, this
certification is issued on the 10th day of March, 1999.

[signature]
Dr. Nirdo M. Basallo Díaz
Secretary
Havana Rum and Liquors S.A.

[illegible stamp]

[signature]
[illegible seal]

[stamp]
The foregoing document is recorded in the following Registries:
CENTRAL REGISTRY OF CORPORATIONS:
BOOK: 135                                                 [seal]
FOLIO: 27 reverse                                        Republic of Cuba
PAGE: 9990                                               Central Registry of Corporations
SECTION: 1st
REGISTRATION: 2nd

FIRST MERCANTILE REGISTRY OF HAVANA
BOOK: 1188                                              [seal]
FOLIO: 166                                              Republic of Cuba
PAGE: 23                                                Mercantile Registry of Havana
REGISTRATION: 2nd

Done in the City of Havana on the 15th day of March, 1999

[tax stamp]
[seal] Republic of Cuba
Mercantile Registry of Havana

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**_Works_

STATE OF NEW YORK      )
                       )        ss
COUNTY OF NEW YORK     )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of the *HRL Transfer of Shares*, completed on 1/22/10, originally written in Spanish.

Christine Muller
Vice President
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

CHRIS SULLIVAN
Notary Public, State of New York
No. 01SU6146597
Qualified in Kings County
Commission Expires May 22, 2010

# NOTARIA ESPECIAL

**DOCUMENTO No.** _570_

_Acta de Protocolización_

**NOTARIO** _____

**FECHA** _15 de marzo_ **DE 19** _77_

## COMPARECIENTES

_Israel Basnuevo Díaz_

**NUMERO:** ----------- **510** --------------------
----------- **ACTA DE PROTOCOLIZACION** -------------
Ciudad de La Habana, 15 de marzo de 1999. -------
------------------- **ANTE MI** ---------------------
**LICENCIADA CARMEN ALICIA PÉREZ DÍAZ,** Notaria con competencia nacional y sede en la Notaría Especial del Ministerio de Justicia de la República de Cuba. -----------------------------
------------ **COMPARECE** --------------------
**NIRDO MANUEL BASALLO DIAZ,** natural de Jovellanos, Matanzas, ciudadano cubano, mayor de edad, casado, abogado, vecino de Santa Emilia número 266, Santos Suárez, Municipio Diez de Octubre, en esta Ciudad, con Identidad Permanente número 38030601523. -----------------
**CONCURRE** en su carácter de Secretario de la sociedad denominada **HAVANA RUM & LIQUORS S.A.,** constituida a virtud de la Escritura Pública número 456 autorizada por la Licenciada Lurdes Lucia Díaz Canel Navarro, Notaria que fuera de esta Notaría, el día 21 de septiembre de 1993, inscripta en el Registro Central de Compañías Anónimas, según su inscripción primera en el Libro 135, folio 26, hoja 9990, sección primera, y en el Registro Mercantil Primero de La Habana al Libro 1188, folio 163, hoja 23, inscripción primera el día 15 de octubre de 1993, lo que queda acreditado. ------------------------------
**ASEGURA HALLARSE** en el pleno goce y ejercicio de sus derechos civiles y tiene a mi juicio la capacidad legal necesaria para este acto y DICE:
**PRIMERO:** Que me requiere a mí, la Notaria, para protocolizar a continuación de la presente, el siguiente documento: ------------------------------
a) Acta de la Junta General de Accionistas de la mencionada sociedad efectuada en esta ciudad el día 20 de diciembre de 1996, donde se adoptaron los acuerdos 20, 21, 22 y 23, respectivamente,
b) Certificación emitida por el compareciente, en el carácter con que comparece, relacionada con los acuerdos adoptados en la sesión extraordinaria de la Junta General de Accionistas de la compañía, efectuada en esta ciudad el día 2 de febrero del corriente año.
**SEGUNDO:** Yo, la Notaria, procedo a la protocolización de los citados documentos, los cuales constan de seis hojas de papel escritas a máquina en idioma español. ----------------------
**TERCERO:** El aquí compareciente declara a todos los efectos legales procedentes, ser parte interesada, que los documentos son auténticos y que los datos que contienen son ciertos, respondiendo a terceros de todos los perjuicios que con los mismos pudiera ocasionar si resultaren falsos. ------------------------------
**ASI LO DICE** el compareciente a mi presencia. ------
**LEIDA INTEGRAMENTE** y en un solo acto esta acta por mí, la Notaria, al requirente, conforme en su contenido lo ratifica y firma. --------------------
**DE TODO LO CUAL** y de la identidad del compareciente, constándome sus demás generales por sus manifestaciones. Yo, la Notaria, **DOY FE.**

**FDO. NIRDO MANUEL BASALLO DIAZ Y LICENCIADA CARMEN ALICIA PÉREZ DÍAZ. NOTARIA.** --------------

# ACTA DE LA JUNTA GENERAL DE ACCIONISTAS
## HAVANA RUM & LIQUORS

En la Ciudad de la Habana, siendo las 15:00 hrs del día 20 de diciembre de 1996, en el domicilio social de la compañía Havana Rum & Liquors S.A., se reúne en sesión extraordinaria la Junta General de Accionistas de la sociedad, contando con todos sus socios presentes, es decir el Sr. Luis Perdomo Hernández y el Sr. Sergio Valdés Dorta, asistidos del Secretario de la Compañía, el Dr. Nirdo Basallo Díaz, con el objetivo de analizar los objetivos siguientes :

- Solicitud de traspaso de acciones de los socios de Havana Rum & Liquors, S.A. a la Corporación Cuba Ron, S.A.
- Elección del Presidente de la Compañía.

Abierta la sesión por el Sr. Perdomo, Presidente de la Compañía, manifiesta que se encuentran presentes todos los accionistas, habiéndose convocado esta Junta en el tiempo establecido de acuerdo a lo previsto en sus Estatutos.

A continuación expresa el Sr. Perdomo que por conducto de la Junta de Directores ha solicitado a la Junta de Accionistas la autorización para ceder la totalidad de sus acciones en Havana Rum & Liquors, es decir, 1250 acciones de Dos Mil (2000) dólares cada una, a la sociedad cubana privada Corporación Cuba Ron, S.A., dejando a partir de ese momento de ser accionista de Havana Rum & Liquors, exponiendo brevemente los fundamentos de su solicitud.

Seguidamente el Sr. Perdomo pone en conocimiento de esta Junta de Accionistas la solicitud del Sr. Sergio Valdés para traspasar de sus 1250 acciones, la cantidad de 1249 acciones de Dos Mil (2000) dólares cada una a nombre de la Corporación Cuba Ron S.A., correspondiendo 624 de la Serie A y 625 de la Serie B, quedándose como titular solamente de UNA (1) acción de Dos Mil (2000) Dólares correspondiente a la Serie A.

Por su parte el Sr. Sergio Valdés ratifica lo expuesto por el Sr. Perdomo y expone sucintamente los fundamentos de su solicitud, así como expresa su conformidad con la propuesta del Sr. Perdomo sobre el traspaso de sus acciones para la Corporación Cuba Ron, S.A.



Para resumir cómo quedarían conformadas las acciones de HRL y en consecuencia los socios de la misma el Sr. Perdomo expone lo siguiente:

- 2499 acciones de dos mil (2000) dólares cada una a nombre de la Corporación Cuba Ron, S.A., correspondiendo 1250 acciones de la Serie B. y 1249 de la Serie A
- 1 acción de dos mil (2000) dólares a nombre del Sr. Sergio Valdés Dorta correspondiente a la Serie A.

Luego de las deliberaciones correspondientes entre los socios se arriba por unanimidad a los siguientes:

ACUERDO No. 20 : Autorizar la cesión de las 1250 acciones de 2000 dólares cada una, por un valor total de 2 500000.00 dólares, pertenecientes al Sr. Luis Perdomo Hernández, como accionista de Havana Rum & Liquors, S.A., a nombre de la Corporación Cuba Ron, S.A.

ACUERDO No. 21 : Autorizar la cesión de las 1249 acciones de 2000 dólares cada una, por un valor total de 2 498000.00 dólares, pertenecientes al Sr. Sergio Valdés Dorta, como accionista de Havana Rum & Liquors, S.A., a nombre de la Corporación Cuba Ron, S.A.

A continuación se aborda por el Sr. Perdomo el próximo aspecto de la reunión, planteando que ahora Havana Rum & Liquors, S.A. tiene un nuevo socio, a partir del traspaso, en su caso de todas sus acciones y en el del Sr. Valdés de la mayoría, a nombre de la sociedad mercantil cubana Corporación Cuba Ron, S.A, por lo que resulta necesario designar al nuevo Presidente de la Junta de Directores y de Accionistas de Havana Rum & Liquors, así como hacer la propuesta de renovación o ratificación del resto de los Directores que integrarán dicha Junta.

Sobre este particular el Sr. Valdés expresa que al coincidir en el Sr. Perdomo la condición de Presidente del nuevo socio mayoritario de esta sociedad, considera que debe continuar fungiendo como Presidente de la Junta de Directores y de Accionistas de Havana Rum & Liquors, lo cual propone a esta Junta.

Por su parte el Sr. Perdomo expresa que no tiene objeciones a la propuesta del Sr. Valdés, planteando además que considera que el resto de la Junta de Directores debe ser ratificada.

Luego de las deliberaciones de los socios sobre las propuestas realizadas, se arriba por unanimidad a los siguientes :

ACUERDO No. 22 : Ratificar al Sr. Luis Perdomo Hernández como Presidente de la Junta de Directores y de la Junta de Accionistas de Havana Rum & Liquors, S.A.

ACUERDO No. 23 : Ratificar la Junta de Directores aprobada actualmente en Havana Rum & Liquors, S.A.

No habiendo otros asuntos que tratar por los socios se da por concluida la reunión a las 17.30 hrs. del propio día.

Y para constancia Yo, el Secretario, doy fe conjuntamente con el Sr. Presidente.

Secretario

Presidente

DOCTOR NIRDO M. BASALLO DIAZ, SECRETARIO DE LA COMPAÑIA HAVANA RUM AND LIQUORS S.A., SOCIEDAD CUBANA CONSTITUI DA MEDIANTE ESCRITURA PUBLICA No. 456 DE 21 DE SEPTIEMBRE DE 1993, OTORGADA ANTE LA LICENCIADA LURDES DÍAZ-CANEL NAVARRO, NOTARIA DE LA NOTARÍA ESPECIAL DEL MINISTERIO DE JUSTICIA DE LA REPUBLICA DE CUBA.................................................

CERTIFICO:.................................................................................................

Que en el Libro de Actas de la Junta de Accionistas de La Compañía, consta que con fecha 2 de febrero de 1999, se reunió en sesión extraordinaria la Junta de Accionistas de la misma, adoptando entre otros, los siguientes:...................

**Acuerdo No. 1/99**: Cancelar y dejar sin efectos ni valor alguno los Certificados de Acciones Nos. 1 , 2 , 3 y 4, emitidos con fecha 21 de septiembre de 1993, que amparan respectivamente las acciones Nos. 1 a 625 de la Serie A ; 626 a 1250 de la Serie A ; 1 a 625 de la Serie B y 626 a 1250 de la Serie B................

**Acuerdo No. 2/99**: Aprobar la emisión de nuevos Certificados de Acciones a favor de otros propietarios de éstas, tal y como se consigna seguidamente:...............................................................................................

Certificado No. 5 : Acciones Nos. 1 a 625 de la Serie A, por 2000.00 USD cada una, con un valor total de 1250.000.00 USD.-...................................................
Propietario: Sergio Valdés Dorta.....................................................................

Certificado No. 6: Acciones Nos 626 a 1250 de la Serie A, por 2000.00. USD cada una, con un valor total de 1250.000.00 USD.- ..........................................
Propietario: Corporación Cuba Ron S.A............................................................

Certificado No. 7: Acciones Nos. 1 a 625 de la Serie B, por 2000.00 USD cada una, con un valor total de 1250.000.00 USD.-...................................................
Propietario: Sergio Valdés Dorta.....................................................................

Certificado No. 8: Acciones Nos. 626 a 1250 de la Serie B, por 2000.00 USD cada una, con un valor total de 1250.000.00.- ...................................................
Propietario: Corporación Cuba Ron S.A............................................................

**Acuerdo No. 3/99**: Cancelar y dejar sin efectos ni valor alguno los Certificados de Acciones Nos. 5 ; 6 ; 7 y 8, que amparan respectivamente las acciones Nos. 1 a 625 de la Serie A ; 626 a 1250 de la Serie A ; 1 a 625 de la Serie B y 626 a 1250 de la Serie B....... ..............................................................

**Acuerdo No. 4/99**: Aprobar la emisión de nuevos Certificados de Acciones, tal y como se consigna seguidamente:...............................................................

Certificado No. 9 : Acciones Nos. 1 a 624 de la Serie A, por 2000.00 USD cada una, con un valor total de 1248.000.00 USD.-....................................................
Propietario: Corporación Cuba Ron S.A........................................................

Certificado No. 10: Acción No. 625 de la Serie A, por 2000.00 USD, con un valor total de 2000.00 USD.-...........................................................................
Propietario: Sergio Valdés Dorta...................................................................

Certificado No. 11: Acciones Nos. 626 a 1250 de la Serie A, por 2000.00 USD cada una, con un valor total de 1250.000.00 USD.-...........................................
Propietario : Corporación Cuba Ron S.A........................................................

Certificado No. 12: Acciones Nos. 1 a 1250 de la Serie B, por 2000.00 USD cada una, con un valor total de 2500.000.00 USD.-...........................................
Propietario: Corporación Cuba Ron S.A........................................................

**Acuerdo No. 5/99**: Se aprueba la cesión de la acción No. 625 de la Serie A por un valor de 2000.00 USD, cuyo titular es el señor Sergio Valdés Dorta, a favor de la Corporación Cuba Ron S.A........................................................

El señor Luis Perdomo Hernández, en representación de la Corporación Cuba Ron S.A. acepta la cesión aprobada por el anterior acuerdo..............................

**Acuerdo No. 6/99**: Se aprueba la cesión de la acción No. 1250 de la Serie A por un valor de 2000.00 USD, cuyo titular es la Corporación Cuba Ron S.A., a favor del señor Sergio Valdés Dorta................................................................

El señor Sergio Valdés Dorta acepta la cesión aprobada por el anterior acuerdo.

**Acuerdo No. 7/99:** Aprobar la cesión de la acción No. 1250 de la Serie A por un valor de 2000.00 USD, cuyo titular es el señor Sergio Valdés Dorta, a favor de la Empresa de Bebidas y Refrescos Villa Clara............................................

El señor Joaquín Ruiz Perdomo, Director de la Empresa de Bebidas y Refrescos Villa Clara, en representación de la misma, acepta a favor de ésta la cesión aprobada por el anterior acuerdo............................................................

**Acuerdo No. 8/99:**   Cancelar y dejar sin efectos ni valor alguno los Certificados de Acciones Nos. 9 ;  10  y 11 que amparan respectivamente las acciones Nos 1 a 624 de la Serie A ;  No. 625 de la Serie A y Nos. 626 a 1250 de la Serie A................................................................................

**Acuerdo No. 9/99:** Aprobar la emisión de nuevos Certificados de Acciones, que representan una parte del capital social de La Compañía, los cuales tienen los números siguientes:..............................................................................

Certificado No. 13: Acciones Nos. 1 a 1249 de la Serie A de 2000.00 USD cada una, con un valor total de 2498.000.00 USD.- ...................................................
Propietario: Corporación Cuba Ron S.A............................................................

Certificado No. 14: Acción No. 1250 de la Serie A de 2000.00 USD con un valor total de 2000.00 USD.-........... ....................................................................
Propietario: Empresa de Bebidas y Refrescos Villa Clara.

Expresa el señor Presidente, que después de efectuados los movimientos de los Certificados de Acciones aprobados por esta Junta de Accionistas, el capital social de la Compañía Havana Rum and Liquors S.A., está representado por:....

**Certificado No. 12:  Acciones Nos. 1 a 1250 de la Serie B, por 2000.00 USD cada una, con un valor total de 2500.000. USD....................................**
**Propietario: Corporación Cuba Ron S.A....................................................**

**Certificado No. 13 : Acciones Nos. 1 a 1249 de la Serie A de 2000.00 USD cada una, con un valor total de 2498.000.00 USD........................................**
**Propietario: Corporación Cuba Ron S.A....................................................**

**Certificado No. 14:** Acción No. 1250 de la Serie A de 2000.00. USD, con un valor total de 2000.00 USD............................................................................

Propietario: **Empresa de Bebidas y Refrescos Villa Clara** ...........................

**Acuerdo No. 10/99:** El señor Sergio Valdés Dorta queda ratificado en los cargos de Vicepresidente y Director General de la Compañía Havana Rum and Liquors S.A..............................................................................................................

**Acuerdo No. 11/99:** Designar al señor Sergio Valdés Dorta, representante de la Empresa de Bebidas y Refrescos Villa Clara, ante las Juntas de Accionistas y de Directores de la Compañía Havana Rum and Liquors S.A...............................

ASIMISMO CERTIFICO: Que el que suscribe se encuentra en posesión y ejercicio del cargo de Secretario de la Sociedad y que las funciones, facultades y atribuciones correspondientes a dicho cargo se hallan vigentes, no constando en los archivos de esta compañía, que hayan sido modificadas, suspendidas o derogadas en forma alguna, lo cual se afirma bajo la estricta responsabilidad del que certifica.................................................................................................

Y para que pueda ser utilizada en la Notaría Especial del Ministerio de Justicia de la República de Cuba, se expide la presente certificación, a los 10 días del mes de marzo de 1999.

Dr. Nardo M. Basallo Díaz
Secretario
Havana Rum and Liquors S.A.

... ... ...
... ... el ... ... ...

15

mar 99

**Inscrito el documento que antecede en los Registros siguientes:**

## REGISTRO CENTRAL DE COMPAÑIAS ANONIMAS

LIBRO: _135_

FOLIO: _27 vts_

HOJA: _9990_

SECCION: _1ra_

INSCRIPCION: _2da_

### REGISTRO MERCANTIL _1ro_ DE LA HABANA

LIBRO: _1188_

FOLIO: _166_

HOJA: _23_

INSCRIPCION: _2da_

Dado en la Ciudad de La Habana, a los _____

_____ de _Marzo_ de 19 _99_ .



# EXHIBIT B

**SPECIAL NOTARIAL OFFICE**

**MINISTRY OF JUSTICE**

**INSTRUMENT No. 456/93**

Incorporation of a Commercial Company

**NOTARY:** Lurdes L. Díaz-Canel Navarro

**DATE:** September 21, 1993

**EXECUTORS:** Vidal Manuel Prieto Espina
                      Luis Francisco Perdomo Hernández

[tax stamp]
[seal] Ministry of Justice
Special Notarial Office

**NUMBER** ----------------------------------- FOUR HUNDRED FIFTY SIX ------------------------------------

City of Havana, September 21, 1993

-------------------------------------------------- **BEFORE ME** ----------------------------------------------------

**LURDES LUCÍA DÍAZ-CANEL NAVARRO**, a Notary of the Special Notarial Office operated by the Registries and Notaries Directorate, Ministry of Justice of the Republic of Cuba. ------------------------------

-------------------------------------------------- **THERE APPEAR** ----------------------------------------------------

Mr. **VIDAL MANUEL PRIETO ESPINA**, born in Matanzas, a Cuban citizen, of legal age, married, a public official, residing at Calle H number 155 between 9 and Calzada, Vedado, Revolution Plaza Municipality, in this city, with Permanent Identity number 36042800606. --------------------------------------

Mr. **LUIS FRANCISCO PERDOMO HERNÁNDEZ**, born in Havana, a Cuban citizen, of legal age, married, an economist, residing at Calle 8 number 17030 between A and B, Altahabana, Boyeros Municipality, in this city, with Permanent Identity number 43101000922. --------------------------------------

**THEY APPEAR** on their own behalf and in the use of their own rights. --------------------------------------- -----------

**THEY DECLARE** that they are in the full enjoyment of their civil rights, and in my judgment they have the necessary legal competence for this execution, there being no indication to the contrary in the record, and they state that: ----------------------------------------------------------------------------------------------------

-------------------------------------------------- **THEY EXECUTE** ----------------------------------------------------

**FIRST:** They have agreed to incorporate, and they do hereby incorporate, a commercial company in the form of a corporation which shall be named **HAVANA RUM AND LIQUORS, S.A.**, which shall be governed by its Bylaws, occupying fifteen sheets of paper typed in Spanish, which have been read by me, the Notary, and all of which have been signed by the persons appearing, which are attached to this instrument to become an integral part thereof. ----------------------------------------------------------------------

-------------------------------------------------- **DOMICILE** --------------------------------------------------------

**SECOND:** The corporate domicile is established at Calle 44 number 305 between Third A and Fifth Avenida, Miramar, Playa Municipality, in this City, and the corporation may open offices, representations, branches, and subsidiaries both in Cuba and abroad, as well as acquire equity in entities incorporated abroad. --------------------------------------------------------------------------------------------------------

--------------------------------------------- **CORPORATE PURPOSE** ---------------------------------------------

**THIRD:** The corporate purpose of **HABANA RUM AND LIQUORS S.A.** shall be: -----------------------
--

· To carry on foreign trade operations related to exports of beverages and liquors. -----------------------------

· To hold equity in other national or foreign entities, subscribing for shares of stock, bonds, and any other kind of corporate equity, as well as creating subsidiaries and branches abroad. -------------------------

· To associate with any foreign entities; engage in compensation transactions, either directly or acting as the center for three-party operations, act as agent, representative, or commission agent for both national and foreign entities; in the national territory and abroad; be the holder of trademarks, patents, and other forms of industrial property; offer and receive licenses, as well as conduct any activities of lawful trade related to its commercial purpose or any other activities which may be assigned to it in the future. ---------
--------------

· To import the inputs required for the production of beverages and liquors for export; as well as for other products termed beverages and liquors. -------------------------------------------------

· To operate in the country in national currency and freely convertible foreign currency (CFC), being authorized to apply CFC to finance its expenses and outlays for the pursuit of its objectives, in proportion to its revenue. --------------------------------------------------------------------------------------------------------

--------------------------------------------------- **DURATION** -------------------------------------------------

**FOURTH:** The corporation is incorporated for an indefinite term, and it may be dissolved for the causes listed in the Thirty-Ninth Article of its Bylaws or those provided for in Articles 170 to 221 of the Commercial Code. --------------------------------------------------------------------------------------------

-------------------------------------------- **CAPITAL AND SHARES** ----------------------------------------------

**FIFTH:** The corporation's authorized capital is 5,000,000,000.00 (FIVE MILLION) USD, and it shall be represented by 2,500 (two thousand five hundred) shares with a 2,000.00 (two thousand) USD par value per share. -----------------------------------------------------------------------------------------------------

The shares shall be registered and indivisible, and all shall have the same par value, which may be paid in money, in kind, or in rights. ------------------------------------------------------------------------------------

The shares are divided into two Series, A and B, and all shall have the same par value and the same rights and obligations. --------------------------------------------------------------------------------------------

Series A shall be composed of consecutively numbered shares starting with number one, and only the same individual or legal entity of Cuban nationality may be their holder. -----------------------------------------

Series B shall be composed of consecutively numbered shares starting with number one, and a Cuban or foreign individual or legal entity may be their holder. ----------------------------------------------------------

----------------------------------------- **CORPORATE GOVERNANCE** -------------------------------------------

**SIXTH:** The corporation's representation, management, and administration shall be entrusted in the first place to the General Meeting of Shareholders, in which the corporation's supreme interests are vested, and in the second place to the Board of Directors. --------------------------------------------------------------------

The General Meetings of Shareholders may be regular and special. They shall be chaired by the Chairman of the Board of Directors, and the Secretary of the board shall serve as Secretary of the Meetings. Resolutions shall be adopted with not less than the agreement of the holders of a majority of the Series A shares and that of a majority of the Series B. shares. -----------------------------------------------------------

The Board of Directors shall be composed of the Chairman, the Vice Chairman, and the Treasurer. Unless otherwise determined, the positions of Chairman and Vice Chairman shall rotate between the nominated directors every three years. --------------------------------------------------------------------------------

**SEVENTH:** This City and its courts are designated as the place where, and before which, all judicial and extrajudicial procedures emanating herefrom shall be carried out. -----------------------------------------------

**THUS SAY AND EXECUTE** the persons appearing in my presence, to whom I gave the legally prescribed warnings, and in particular the one regarding the obligation to register this act in the appropriate Registry. ---------------------------------------------------------------------------------------------

**THESE MINUTES WERE READ OUT IN FULL** and in a single act by me the Notary to the executors, who being satisfied with their content, ratify and sign them. ------------------------------------------

**I THE NOTARY BEAR WITNESS TO ALL THE FOREGOING** and to the identity of the persons appearing, having verified their identification data by their statements. ------------------------------------------

SIGNED, VIDAL MANUEL PRIETO ESPINA, LUIS FRANCISCO PERDOMO HERNÁNDEZ, AND LURDES LUCÍA DÍAZ-CANEL NAVARRO ---------------------------------------------------------------------

[handwritten text and date, illegible]

HAVANA RUM AND LIQUORS, S.A.
(COMPAÑÍA DE RON Y LICORES DE LA HABANA, S.A.)
BYLAWS

**Name and type of entity**

**FIRST ARTICLE:** A commercial company with legal standing and equity of its own has been incorporated in the form of a corporation to pursue the lawful purposes specified below, under the name HAVANA RUM AND LIQUORS, S.A. (Compañía de Ron y Licores de La Habana, S.A.), hereinafter in these Bylaws the COMPANY, which shall be governed by these Bylaws, while the provisions of the Commercial Code and other legal regulations in force in Cuba shall be applicable thereto.

**Nationality and domicile**

**SECOND ARTICLE:** The COMPANY has Cuban nationality and its domicile is established at Calle 44 No. 305 between 3rd A and 5th Ave., Miramar, City of Havana, but it may be changed by determination of the General Meeting of Shareholders, and the COMPANY may create offices, representations, branches, and subsidiaries both in Cuba and abroad, as well as hold equity in entities incorporated abroad.

**Corporate purpose**

**THIRD ARTICLE:** The COMPANY shall have the following activities, related to the beverage and liquor business, as its purpose:

1. Carry on foreign trade operations related to exports of beverages and liquors.

2. Hold equity in other national or foreign entities, subscribing for shares of stock, bonds, and any other kind of corporate equity, as well as creating subsidiaries and branches abroad.

3. Associate with any foreign entities; engage in compensation transactions, either directly or acting as the center for three-party operations, act as agent, representative, or commission agent for both national and foreign entities; in the national territory and abroad; be the holder of trademarks, patents, and other forms of industrial property; offer and receive licenses, as well as conduct any activities of lawful trade related to its commercial purpose or any other activities which may be assigned to it in the future.

4. Import the inputs required for the production of beverages and liquors for export; as well as for other products termed beverages and liquors.

1

[signatures]                                                                                    [illegible seal]

5.  To operate in the country in national currency and freely convertible foreign currency (CFC), being authorized to apply CFC to finance its expenses and outlays for the pursuit of its objectives, in proportion to its revenue

**Term**

**FOURTH ARTICLE:** The COMPANY is incorporated for an indefinite term.

The COMPANY may be dissolved for the causes listed in the Thirty-Ninth Article of these Bylaws or for those provided for in Articles 170 and 221 of the Commercial Code.

**Capital Stock**

**FIFTH ARTICLE:** The COMPANY's authorized capital stock is five million United States dollars (USD) ($5,000,000.00), and it shall be represented by two thousand five hundred (2,500) shares having a par value of two thousand United States dollars (USD) ($2,500.00) each.

**Shares**

**SIXTH ARTICLE:** The shares shall be registered and all shall have the same par value, which may be paid in money, in kind, or in rights.

The shares are divided into two Series of shares – Series A and Series B – and all shall have the same par value per share and the same rights and obligations.

Series A shall be composed of consecutively numbered shares starting with number one, and only the same individual or legal entity of Cuban nationality may be their holder.

Series B shall be composed of consecutively numbered shares starting with number one, and a Cuban or foreign individual or legal entity may be their holder.

**SEVENTH ARTICLE:** The shares shall be represented by certificates, on which the number of shares represented and the consecutive number(s) of the shares represented shall be recorded. The certificates must be signed by the Chairman and the Secretary.

The shares are indivisible. In the event of co-ownership, the co-owners must designate a representative to exercise the rights they confer.

The holders of the shares shall enjoy the right:

a)   to one vote per share;

2

[signatures]                                                                              [illegible seal]

b) analyze the statement of income, the balance sheet, and all the documentation related thereto, with the authority to request all appropriate information to understand the COMPANY's economic condition and the development thereof during the period of thirty days prior to the date set for the regular General Meeting of Shareholders or at the time of said meeting;

c) the corresponding portion of the profits which has been resolved to distribute:

d) analyze the annual report and approve it;

e) share in the remaining equity in the event of the COMPANY's liquidation, in the manner provided for in these Bylaws.

The shares may not be pledged, furnished as security, or encumbered in any way without prior authorization from the General Meeting of Shareholders, granted by unanimously passed resolution. If an encumbrance of shares is authorized, it shall be recorded in the Shareholders Registry when it is created, and when it is cancelled a record shall be made of its having been lifted. The holder of encumbered shares is the only person who may exercise the rights conferred by said shares.

**EIGHTH ARTICLE:** The shares shall be recorded in the Shareholders Registry to be kept by the COMPANY, in which the number of each share or certificate shall be indicated, and in the latter case, the number of shares it represents, the name of the holder thereof, and any limitation or encumbrance which may exist thereover.

In the event of the loss, theft, or destruction of a share or certificate, the holder thereof reflected in the Shareholders Registry may request a duplicate. When the latter is issued, a record of its duplicate status shall be made therein.

**NINTH ARTICLE:** If a certificate's par value has not been totally paid up, the partial value paid shall be recorded on the certificate and in the Shareholders Registry, and when it has been paid in full or when partial payments are made, that shall be recorded on the share or certificate and in the Shareholders Registry.

**TENTH ARTICLE:** The shares may not be sold, encumbered, pledged, assigned, or otherwise transferred to third parties without prior authorization from the General Meeting of Shareholders, granted by unanimously passed resolution.

Once a transfer of shares has been authorized, it may become effectual only when it has been recorded in the Shareholders Registry; the General Meeting of Shareholders' authorization is the document suitable for recording the transfer in the Shareholders Registry. In the event of inconsistency between the …

3

[illegible seal]

person who appears as the holder on the share and the one who appears as such in the Shareholders Registry, the latter shall prevail over the one who appears on the share.

**ELEVENTH ARTICLE:** A partner who wishes to transfer all or part of his shares to a third party must so request of the Board of Directors, which shall summon the General Meeting of Shareholders into session, to be held within the thirty days after the notice of meeting is given and no more than forty days after the written request is received by the Board of Directors.

The shares shall be transferred as resolved by the General Meeting of Shareholders.

**Governance, management, and administration**

**TWELFTH ARTICLE:** The governance, direction, and administration of the COMPANY is vested, in the first place, in the General Meeting of Shareholders, as the supreme body, and in the second place, in the Board of Directors.

**The General Meeting of Shareholders**

**THIRTEENTH ARTICLE:** The General Meeting of Shareholders is the company's sovereign body, whose decisions bind the shareholders and the Board of Directors. Its purpose is to deliberate and decide on all the matters submitted to it, and its decisions shall be reflected in resolutions which bind the shareholders when they are adopted in accordance with the provisions of these Bylaws and the Laws. The resolutions must be enforced by the Board of Directors.

**FOURTEENTH ARTICLE:** The General Meeting of Shareholders is the meeting of the holders of the Series A and Series B shares, who have been summoned to deliberate and decide on the corporate affairs falling under their authority, contained in the agenda.

The General Meetings of Shareholders shall be held at the corporate domicile or at another place on which the shareholders agree in writing, after receiving notice of meeting; the agenda must be attached to the notice of meeting.

The General Meetings of Shareholders may be regular or special. The regular meeting must be held within the first two months of each year; special meetings are all those held outside of the date stipulated for the regular meeting.

**FIFTEENTH ARTICLE:** The General Meeting of Shareholders must be summoned in writing, by notice sent by certified mail, telex, or fax, addressed to each shareholder, which must be issued by the Chairman of the Board of Directors

4

… in the case of a regular session.

Special sessions of the General Meeting of Shareholders may be summoned by the Chairman, by 50 per cent of the Directors or by the majority of the holders of the Series A or Series B shares. In all cases, the reasons for holding the session and the agenda shall be indicated.

**SIXTEENTH ARTICLE:** The General Meeting of Shareholders must be chaired by the Chairman of the Board of Directors, and the Secretary of the Board of Directors shall serve as the Secretary of the meeting. In the absence of either or both of them, when the meeting convenes the assembled shareholders shall designate the person or persons to perform said functions during the meeting.

General Meeting of Shareholders resolutions shall be adopted with the agreement of at least the holders of a majority of the Series A shares and those of a majority of the Series B shares, and they shall be recorded in writing in the minutes, which shall be transcribed to the Minute Book that must be kept by the COMPANY. The resolutions shall be consecutively numbered each year.

The minutes must be signed by the Secretary, with the agreement of the Chairman or the person who has acted as such in his absence.

The minutes must be approved by all the shareholders within the thirty days subsequent to the date on which the General Meeting of Shareholders whose resolutions are reflected therein concluded. Notwithstanding the foregoing, resolutions produce their inherent effects from the time of their adoption.

If the resolutions are subject to registration, they must be recorded in the appropriate Registry.

**SEVENTEENTH ARTICLE:** The holders of the shares may attend the General Meetings of Shareholders in person or through proxy, and the holders must necessarily be recorded in the Shareholders Registry. A person acting as a proxy may be another shareholder or not, but he must demonstrate his representative authority with a proxy instrument for each session of the General Meeting of Shareholders.

**EIGHTEENTH ARTICLE:** For a General Meeting of Shareholders to validly convene, the holders of a majority of the Series A shares and the holders of a majority of the Series B shares must be present. If the required quorum is not present, a second call shall be made within the six days subsequent to the date on which the meeting was to have been held in response to the first call, and the meeting shall be held thirty days thereafter.

If the required quorum is not present in response to the second call either, a third call shall be made within the term stipulated by the Board of Directors.

5

[signatures]                                                                    [illegible seal]

The General Meeting of Shareholders may convene in regular or special session without prior notice of meeting if all the shareholders are present there and unanimously accept the agenda.

**NINETEENTH ARTICLE:** The year-end balance sheet, the statement of income, the explanatory annual report, the Board of Directors' proposal for the distribution of profits among the shareholders, if any has been put forward, the proposal for discretionary reserves, and any other documentation required to clearly and accurately understand the course of business and the COMPANY's economic and financial condition shall be placed at the disposal of the shareholders thirty days in advance of the date stipulated in the notice of meeting for a General Meeting of Shareholders. During said period, the shareholders may request clarifications or complementary information.

The General Meeting of Shareholders must examine and approve the annual balance sheet and other documents submitted to it for consideration, as well as the proposal for distribution of profits and other economic-financial documents which are submitted to it.

If the balance sheet is not approved during the shareholders meeting, or if complementary information is demanded as a condition for its approval, a special General Meeting of Shareholders shall be held to decide thereon within the four days subsequent to the date set for the regular meeting.

**TWENTIETH ARTICLE:** The directors or other persons may attend General Meetings of Shareholders, in addition to the shareholders, if they have been expressly invited. Said guests shall be entitled to speak but not to vote.

**TWENTY-FIRST ARTICLE:** The regular General Meeting of Shareholders shall necessarily examine and decide on the annual budgets and the analysis of budgetary performance for the preceding year, the planned developments, and the principal actions to be taken to ensure their fulfillment, in addition to the matters stipulated in the Twentieth Article of these Bylaws.

**TWENTY-SECOND ARTICLE:** The General Meeting of Shareholders is likewise empowered to:

a)  Appoint the Board of Directors, and the persons who shall serve as the Chairman, Vice Chairman, and Treasurer from among them.

b)  Resolve increases or reductions of the capital stock, and the form in which they are to be effected.

c)  Amend these Bylaws.

6

d) Resolve the opening of branches, agencies, and offices in the national territory or abroad.

e) Resolve the incorporation of subsidiaries and acquire equity in other companies, abroad.

f) Resolve transfers of shares pertaining to both Series A and Series B.

g) Examine the corporate administration or conduct investigations thereof.

h) Analyze the degree of fulfillment of the annual development plan and prospects, and adopt new measures to ensure their fulfillment or modify them.

i) Approve the annual balance sheet and explanatory report, and examine the quarterly balance sheets.

j) Approve the creation of discretionary reserves.

k) Authorize contracts which represent acts of ownership of the corporate assets.

l) Resolve on any matter which is necessary or beneficial for the COMPANY's development that is submitted to it or proposed by the partners.

m) Dissolve the COMPANY and declare it in liquidation.

n) Delegate powers vested in it to the Board of Directors, the Chairman, or another member of said Board of Directors.

**TWENTY-THIRD ARTICLE:** The concurring vote of all the Series B shareholders shall be necessary to adopt resolutions relating to the powers of the General Meeting of Shareholders listed in items a), b), c), f), i) k), m), n), and m) of the preceding article.

**TWENTY-FOURTH ARTICLE:** A resolution for reduction of the capital stock may be executed only after the liquidation of the debts and obligations pending on the date when said resolution was adopted by the General Meeting of Shareholders, unless the creditors' prior consent has been obtained.

The capital reduction resolution may be implemented by lowering the par value of all the Series A and Series B shares by the same amount. In both cases, the Series A and Series B shares shall conserve the same proportions of participation in the capital stock as stipulated in the Sixth Article.

7

[signatures]                                                                                    [illegible seal]

**The Board of Directors**

**TWENTY-FIFTH ARTICLE:** The COMPANY's body of direction and administration is the Board of Directors, which must carry out the General Meeting of Shareholders' resolutions and perform the activities required for their fulfillment, as well as conduct the administrative management and make operational decisions to that end.

The Board of Directors is empowered to represent the COMPANY in matters pertaining to its business and trade, and in the respective acts of judicial or extrajudicial procedures, being invested to that end with the powers attributed to it by these Bylaws and the law.

An express and specific power of attorney from the General Meeting of Shareholders, unanimously conferred by all the shareholders, is necessary to exercise powers of disposal of corporate assets.

**TWENTY-SIXTH ARTICLE:** To form the Board of Directors, the holders of the Series A shares and those of the Series B shares shall nominate at least two directors each to the General Meeting of Shareholders; they must be unanimously approved by the General meeting of Shareholders. The Board of Directors is elected for a three-year term.

The Chairman, Vice Chairman, and Treasurer shall be designated from among the directors approved by the General Meeting of Shareholders. Unless otherwise determined, the positions of Chairman and Vice Chairman shall rotate between the directors nominated by the Series A shares and those nominated by the Series B shares every three years.

The General Meeting of Shareholders shall likewise designate a Secretary, who shall not be a director and shall remain at his post until he is replaced by the Board.

The directors may be indefinitely re-elected by the General Meeting of Shareholders.

**TWENTY-SEVENTH ARTICLE:** The directors – whether shareholders of the COMPANY or not – and the Secretary may be removed from their positions by a General Meeting of Shareholders resolution at the justified request of a shareholder, or by the majority of the Board of Directors. The substitute, nominated by the shares of the Series which designated the removed director, must be designated at the same meeting at which the removal is determined.

**TWENTY-EIGHTH ARTICLE:** The directors who make up the Board of Directors shall be jointly liable for any improprieties committed by the Board of Directors or any of its members, in the latter case unless the Chairman, or the Secretary if the Chairman is the director who committed the impropriety, is informed in writing immediately thereafter. The Chairman, or the Secretary when appropriate, must call a General Meeting of Shareholders within the fifteen days thereafter.

8

[signatures]                                                                                    [illegible seal]

Said summons to meet shall be appropriate when the impropriety has or may have an adverse economic effect on the COMPANY, or when it does harm of any kind or in any way impairs the COMPANY's prestige.

**TWENTY-NINTH ARTICLE:** The Board of Directors shall meet at semiannual intervals within the first ten days, as well as whenever it is summoned by the Chairman or a meeting is requested with justification by two directors.

The notice of meeting shall be issued fifteen days in advance of the meeting date, and the meeting shall be held at the corporate headquarters or at another location agreed upon by the parties.

The attendance of fifty percent of the directors appointed by the holders of the shares of each Series, including the Chairman, shall be required for the Board of Directors to validly meet.

The Board of Directors may meet without prior notice of meeting if all the directors are present and they unanimously accept the agenda.

**THIRTIETH ARTICLE:** Resolutions shall be adopted at Board of Directors meetings by unanimous vote of the directors present.

When there is no agreement, the Chairman or any director may submit the matter to the General Meeting of Shareholders for determination.

Minutes shall be taken of all Board of Directors meetings, at which the resolutions adopted shall be consecutively numbered each year, commencing with the first meeting. The minutes shall be signed by the Secretary, with the Chairman's agreement.

The minutes shall be circulated among the directors for approval within the ten days subsequent to the meeting date; nevertheless, the resolutions shall be effectual from the date on which they are adopted.

**THIRTY-FIRST ARTICLE:** The Board of Directors has the following powers:

a) Represent the COMPANY in all matters and activities, legal acts and transactions, which are related to the sphere of operations in which the COMPANY may engage pursuant to the corporate purpose, as well as in judicial or extrajudicial procedures, binding the COMPANY with its legal acts and contracts.

The representation of the Board of Directors is collective, but a power of attorney may be conferred on the Chairman to exercise it with a general character, and on any of the directors or a third party to do so in a specific character.

9

[signatures]                                                                                              [illegible seal]

b) Direct the management of all the COMPANY's affairs as required to carry out the resolutions of the General Meeting of Shareholders and achieve the corporate purpose.

c) Manage all the COMPANY's assets, directly or through an individual or legal entity specially empowered for the legal act in question; the COMPANY's administrative structure and units are subject to the General Meeting of Shareholders.

d) Enter into administrative contracts, abiding by the provisions of these Bylaws and the laws.

e) Open bank accounts denominated in the currencies it determines, as well as operate and cancel them, at a bank belonging to the national banking system or abroad.

f) Perform all valid operations with commercial documents, titles, or securities in general.

g) Hire the personnel required for the COMPANY's development and the achievement of the corporate purpose, in keeping with the provisions of the applicable legislation.

h) Determine whether the holders of the subscribed shares have paid for them in good time and with the stipulated sums.

i) Draw up the economic justification for any increase or reduction of the authorized capital, submitting said document to the General Meeting of Shareholders for decision.

j) Adopt the accounting system most suitable for the COMPANY's activities in accordance with internationally accepted principles.

k) Report to the partners on the course of the COMPANY's business affairs at quarterly intervals, submitting the quarterly balance sheets to them and summoning a General Meeting of Shareholders when it is necessary or desirable.

l) Submit the annual balance sheet, the statement of income, and the explanatory report, as well as the documents which may be pertinent, to the General Meeting of Shareholders for consideration, thirty days in advance of the annual regular meeting.

m) Propose to the General Meeting of Shareholders at its annual regular session, with justification, the attribution of profits to each party, the distribution of profits and their amount, and the amount of the discretionary reserves it deems appropriate in addition to those prescribed by legislation.

10

[signatures]                                                                                                    [illegible seal]

n) Record the holders of shares and transfers of shares [illegible] in the Shareholders Registry, as well as any limitations or obligations on the shares which are subject to registration.

o) Summon the General Shareholders meeting in regular or special session, and draw up the agenda.

p) Exercise the high-level direction and supervision of all the personnel employed by the COMPANY or its units, ordering their promotion or demotion.

q) File lawsuits, denunciations, complaints, and appeals in all categories of procedures, whether civil, administrative, criminal, or arbitral; make judicial and extrajudicial settlements and waivers, and accept or oppose them, conferring the powers of attorney required to that end on attorneys or other representatives.

r) Confer powers of attorney, delegating powers which can validly be delegated to a director belonging to the Board, an officer, or an employee of the COMPANY, or to a third party. The powers exclusively reserved to the General Meeting of Shareholders may not be delegated.

**THIRTY-SECOND ARTICLE:** The directors may be compensated if they hold positions for which compensation is appropriate. Said compensation may be revised at the annual General Meetings of Shareholders.

**THIRTY-THIRD ARTICLE:** If a vacancy occurs in the Board of Directors due to resignation, illness, or death, the General Meeting of Shareholders shall appoint the substitute in accordance with the procedures prescribed in the Bylaws.

**The Chairman**

**THIRTY-FOURTH ARTICLE:** The Chairman of the Board of Directors shall be the President of the COMPANY, and shall have the following powers, among others:

a) Distribute specific activities, whether administrative or of other kinds falling under the authority of the Board of Directors, among the directors. In such cases the designated director shall be the person responsible for performance of the assigned activity, regardless of whether the specific matter may be vested in the Chairman or another director, or in the Board of Directors.

b) Summon and chair the General Meetings of Shareholders and Board of Directors meetings.

c) Sign the shares and stock certificates, jointly with the Secretary.

11

[signatures]                                                                                    [illegible seal]

d)  Approve the minutes of the General Meetings of Shareholders and Board of Directors.

e)  Supervise the performance of the tasks assigned to each director.

f)  Sign the payment orders issued against corporate funds, jointly with the Treasurer.

g)  All others which the General Meeting of Shareholders or the Board of Directors may delegate to him.

**The Vice Chairman**

**THIRTY-FIFTH ARTICLE:** The Vice Chairman shall replace the Chairman in the event of the latter's absence, illness, disability, or death, but he shall simultaneously have the powers assigned him by the General Meeting of Shareholders or the Chairman.

**The Treasurer**

**THIRTY-SIXTH ARTICLE:** The director who is designated Treasurer shall have the following powers:

a)  Make certain the books of account are kept in conformity with the system adopted by the COMPANY, and supervise the COMPANY's economic development.

b)  Submit semiannual balance sheets to the Board of Directors, and annual balance sheets to the General Meeting of Shareholders.

c)  Give the Board of Directors the economic-accounting bases for its proposal to the General Meeting of Shareholders regarding the distribution of profits, the amount to be distributed, and the dividend per share. For purposes of said proposal's formulation, he shall consider the COMPANY's development prospects, its future liquidity needs, and adequate working capital.

d)  Submit the balance sheets for each of the first three calendar quarters of each year to the State Finance Committee within the month subsequent to the end of the respective quarter, as well as the balance sheet for the operations in each calendar year within the first two months of the following year, in conformity with the provisions of State Finance Committee Resolution No. 52 of 1982.

e)  Sign the payment orders issued against the corporate funds, jointly with the Chairman, who signs personally or through the persons he may designate.

f)  Any others assigned to him by the General Meeting of

12

[signatures]                                                                                    [illegible seal]

Shareholders, the Board of Directors, or the President of the COMPANY.

**The other directors**

**THIRTY-SEVENTH ARTICLE:** The other directors shall perform the administrative and operating activities assigned to them by the Board of Directors or the President of the COMPANY, in addition to those inherent in their status as members of the Board of Directors.

**The Secretary**

**THIRTY-EIGHTH ARTICLE:** The Secretary shall have the following powers:

a) Have custody of the files, the Minute Books for both the General Meeting of Shareholders and the Board of Directors, and the Shareholders Registry for each Series.

b) Issue certifications following examination of the books and documents under his custody.

c) Sign the stock certificates and the minutes of the General Meetings of Shareholders and those of the Board of Directors, if any, jointly with the Chairman.

d) Draw up the minutes of the General Meetings of Shareholders and circulate them within the ten days subsequent to each session.

e) Draw up the minutes of the Board of Directors Meetings and circulate them within the ten days subsequent to each session.

f) Any others which are assigned to him by the General Meeting of Shareholders, the Board of Directors, or the President of the COMPANY.

**The COMPANY's dissolution and liquidation**

**THIRTY-NINTH ARTICLE:** The COMPANY shall be dissolved in the following circumstances:

a) When it is impossible to achieve the corporate purpose due to causes internal to the COMPANY or external causes.

b) When one of the shareholders is declared in a state of suspension of payments or bankruptcy.

c) Due to the reiterated impossibility of reaching agreement as provided for in the Seventeenth Article regarding the resolutions of the General Meetings of Shareholders, and in the Nineteenth Article regarding the existence of a quorum.

d) By agreement of all the Series A and Series B shareholders.

13

[signatures]                                                                                    [illegible seal]

e) Due to the total loss of the COMPANY's capital stock or a partial loss thereof which renders the corporate activities impossible.

f) Due to the COMPANY's bankruptcy.

**FORTIETH ARTICLE:** The occurrence of any of the grounds listed in the preceding article shall result in the COMPANY's dissolution and the commencement of the process for its liquidation.

Upon the commencement of the COMPANY's liquidation, the Board of Directors shall cease to function as of that time, and the General Meeting of Shareholders shall designate the liquidators and the term within which they must conclude the liquidation operations.

**FORTY-FIRST ARTICLE:** The liquidators are the COMPANY's representatives and administrators, and their performance must be oriented toward collecting the sums owed the COMPANY which are due and payable at the time its dissolution is declared, as well as those which become due and payable thereafter, settling the pending obligations in being at the time the liquidation is resolved or arising thereafter, and in general, concluding the pending operations.

**The evaluation of the corporate assets shall be performed:**

a) By unanimous agreement of the shareholders.

b) If no agreement on their value can be reached, the shareholders of each series shall propose two internationally prestigious entities specialized in the subject matter as a potential expert. If the shareholders of both series reach agreement for the selection of one of them, it shall determine the value of the assets. If no such agreement is reached, the expert shall be chosen by balloting.

   The expert's designation must be made within the six months subsequent to the decision to dissolve the COMPANY.

   The expert's determination shall be final and not subject to appeal.

c) If the COMPANY's dissolution is for the cause provided for in item c) of the Thirty-Ninth Article, the assets shall be valued at their book value.

**FORTY-SECOND ARTICLE:** In conformity with the Commercial Code's provisions, the liquidators must:

a) Submit the inventory of corporate assets, with the initial balance sheet for the COMPANY's accounts, to the General Meeting of Shareholders within a term of twenty days.

b) Submit detailed monthly reports on the status of the liquidation to the General Meeting of Shareholders.

14

[signatures]                                                            [illegible seal]

c)   [illegible] General Meeting of Shareholders upon the conclusion of the [illegible] in which the capital [illegible] are specified.

**FORTY-THIRD ARTICLE:** The liquidators shall conduct the liquidation [illegible] corporate assets among the shareholders in accordance with their proportionate holdings in the capital stock.

The [illegible] shall summon the General Meeting of Shareholders for the distribution of the corporate assets.

The [illegible] of the holders of the Series B shares shall be effected in cash, and its amount may be transferred abroad at the holders' request.

September [illegible], 1993

IDENTICAL TO ITS ORIGINAL, which under consecutive number [illegible] the Special Notarial Office [illegible] cancelled [illegible] pesos, national currency.
[illegible] persons appearing, I issue this copy, occupying [illegible] page(s) [illegible] 21 [illegible] September 1993. I BEAR WITNESS.

> [signature]
> [seal] Ministry of Justice
> Special Notarial Office

15

[handwritten text]

The foregoing document, corresponding to Instrument #456/93, has been registered in:

Central Registry of Corporations:
Book: 135                                    [seal]
Folio: 26                                    Republic of Cuba
Page: 9990                                   Central Registry of Corporations
Section: first
Registration: 1st

First Commercial Registry of Havana
Book: 1188                                   [seal]
Folio: 163                                   Republic of Cuba
Page: 23                                     Commercial Registry of Havana
Registration: 1st

Done in the City of Havana on the 15th day of October, 1993

                                             [tax stamps]
                                             [seal] Republic of Cuba
                                             Central Registry of Corporations

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**/Works

STATE OF NEW YORK    )
                              )     ss
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of the *HRL Statutes*, completed on 1/26/10, originally written in Spanish.

Christine Muller
Vice President
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 26th day of January 2010

Notary Public

CHRIS SULLIVAN
Notary Public, State of New York
No. 01SU6146597
Qualified in Kings County
Commission Expires May 22, 2010

# NOTARIA DE

ESPECIAL MINJUS

## ESCRITURA No. 456/93

Constitución de Sociedad Anónima

**NOTARIO** Lurdes L. Díaz-Canel Navarro

**FECHA** 21 de septiembre DE 19 93

**OTORGANTES** Vidal Manuel Prieto Espiña

Luis Francisco Perdomo Hernandez

**NUMERO-------**CUATROSCIENTOS CINCUENTA Y SEIS**--------**



-----------------**CONSTITUCION DE SOCIEDAD ANONIMA**------------

Ciudad de La Habana, 21 de septiembre de 1993.-------

------------------**ANTE MI**-----------------

**LICENCIADA LURDES LUCIA DIAZ-CANEL NAVARRO,** Notaria de la Notaría Especial a cargo de la Dirección de Registros y Notarías del Ministerio de Justicia de la República de Cuba.--------------------

----------------**COMPARECEN**------------------

El señor **VIDAL MANUEL PRIETO ESPINA,** natural de Matanzas, ciudadano cubano, mayor de edad, casado, funcionario, vecino de Calle H número 155 entre 9 y Calzada, Vedado, municipio Plaza de la Revolución, en esta Ciudad, con Identidad Permanente número 36042800606.-------------------------------------------

El señor **LUIS FRANCISCO PERDOMO HERNANDEZ,** natural de La Habana, ciudadano cubano, mayor de edad, casado, economista, vecino de Calle 8 número 17030 entre A y B, Altahabana, municipio Boyeros en esta Ciudad, con Identidad Permanente número 43101000922.--------------------------------------------

**CONCURREN** por sí en uso de sus propios derechos.----

**ASEGURAN HALLARSE** en el pleno goce de sus derechos civiles y tienen a mi juicio la capacidad legal necesaria para este otorgamiento sin que nada me conste en contrario y dicen que:-------------------

----------------**OTORGAN**-----------------

**PRIMERA:** Que han convenido en constituir y por la presente constituyen una sociedad mercantil en forma anónima que se denominará **HAVANA RUM AND LIQUORS, S.A.,** la cual se regirá por sus Estatutos, que constan de quince hojas de papel escritas a máquina en idioma español, las que han sido leídas por mí la Notaria y firmadas todas por los comparecientes, que se anexan a esta escritura para que formen parte integrante de la misma.----------------



**SEGUNDA:** El domicilio social se fija en la Calle 44 numero 305, entre Tercera A y Quinta Avenida, Miramar, municipio Playa, en esta Ciudad, pudiendo establecer oficinas, representaciones, sucursales y filiales, tanto en Cuba como en el extranjero, así como tomar participación en entidades constituidas en el extranjero.——————————————————————————

————————————————OBJETO SOCIAL————————————————

**TERCERA:** El objeto social de **HABANA RUM AND LIQUORS S.A.**, será:————————————————————————

– Asumir las operaciones de comercio exterior relacionadas con la exportación de bebidas y licores.———————————————————————————————

– Poseer participaciones en otras entidades nacionales o extranjeras suscribiendo acciones, obligaciones y cualquier otro tipo de participación social, así como crear filiales y sucursales en el extranjero.———————————————————————————————

–Asociarse con cualquier entidad estranjera; llevar a cabo operaciones de compensación, ya sea directamente ya sea actuando como centro para operaciones triangulares, actuar como agente, representante o comisionista tanto de entidades nacionales como extranjeras; en el territorio nacional y en el extranjero; ser titular de marcas patentes y demás modalidade de la propiedad industrial; ofrecer y recibir licencias, así como ejecutar cualquier actividad de lícito comercio. vinculada con su objeto comercial o cualesquiera otras actividades que oportunamente se le asigne.–

–Asumir la importación de los insumos requeridos para la producción de las bebidas y licores objeto de exportación; así como la de otros productos que corresponden a la nomenclatura de bebidas y licores.———————————————————————————————

– Operar en el país en moneda nacional y en moneda libremente convertible (MLC), pudiendo aplicar MLC al financiamiento de sus gastos y erogaciones derivadas del cumplimiento de sus objetivos en la proporción de sus ingresos.————————————————————

————————————————DURACION————————————————

**CUARTA:** La sociedad se constituye por un término indefinido, pudiendo disolverse por las causas enumeradas en el Artículo Trigésimo Noveno sus Estatutos o por las previstas en los articuulos 170 al 221 del Código de Comercio.——————————————

-----------------CAPITAL Y ACCIONES-----------------

**QUINTA:** El Capital autorizado de la sociedad, es de 5 000 000.00 USD (CINCO MILLONES) y estará representado por 2 500 (dos mil quinientas acciones) de 2 000.00 USD (dos mil), valor nominal de cada una.------------------------------------

Las acciones serán nominativas e indivisibles y de igual valor nominal cada una, el que podrá ser desembolsado en dinero, en especie o derechos.-------

Las Acciones se dividen en dos Series A y B, y serán del mismo valor nominal cada una y con los mismos derechos y obligaciones.-----------------

La Serie A, está integrada por acciones numeradas consecutivamente, partiendo del número uno y sólo podrá ser titular de ellas la misma persona natural o jurídica de nacionalidad cubana.-----------

La Serie B, esta integrada por acciones numeradas consecutivamente, partiendo del número uno y será titular de ellas una persona natural o jurídica, cubana o extranjera.-----------------------------

------------------------GOBIERNO------------------------

**SEXTA:** La representación, dirección y administración de la sociedad, estará a cargo en primer lugar de la Junta General de Accionistas en la que radican, los supremos intereses de la sociedad y en segundo lugar a la Junta de Directores.--------------------------------------

Las Juntas Generales de Accionistas pueden ser ordinarias y extraordinarias, las que serán presididas por el Presidente de la Junta de Directores y actuará como Secretario el que ocupe ese cargo en dicha Junta. Los acuerdos se adoptarán por lo menos con la conformidad de los titulares de la mayoría de las acciones de la Serie A y de los tenedores de la mayoría de las acciones de la Serie B.------------------------------------

La Junta de Directores estará integrada por el Presidente, el Vicepresidente y el Tesorero. Salvo acuerdo en contrario, cada tres años se rotarán los cargos de Presidente y Vicepresidente entre los directores propuestos.------------------------

**SEPTIMA:** Que designan esta Ciudad y sus Tribunales, para que en ella y ante ellos se practiquen cuantas diligencias judiciales y extrajudiciales se deriven de la presente.-----------------------------------

**ASI LO DICEN Y OTORGAN**, los comparecientes a mi presencia, a quienes hice las advertencias legales pertinentes y en especial la obligatoriedad de la inscripción de este acto en el Registro correspondiente.————————————————————————————

**LEIDA INTEGRAMENTE** y en un solo acto esta escritura por mí, la Notaria, a los otorgantes, conformes en su contenido lo ratifican y lo firman.—————————————

**DE TODO LO CUAL** y de la identidad de los comparecientes, constándome sus demás generales por sus manifestaciones. Yo, la Notaria, Doy Fe. ——————

FDO. VIDAL MANUEL PRIETO ESPINA, LUIS FRANCISCO PERDOMO HERNANDEZ Y LIC. LURDES LUCIA DIAZ-CANEL NAVARRO.————————————————————————————————

## ESTATUTOS

### Denominación e índole

**ARTICULO PRIMERO:** Bajo la forma de sociedad anónima para reali-
zar los objetos lícitos que más adelante se especifica, ha
quedado constituida una compañía anónima, con personalidad y
patrimonio propios, con la denominación de HAVANA RUM AND LI-
QUORS, S.A. (Compañía de Ron y Licores de La Habana, S.A.), en lo
adelante en estos Estatutos LA SOCIEDAD, que se regirá por los
presentes Estatutos, siéndole de aplicación las disposiciones
del Código de Comercio y las demás regulaciones legales vigentes
en Cuba.

### Nacionalidad y domicilio

**ARTICULO SEGUNDO:** LA SOCIEDAD tiene nacionalidad cubana y el
domicilio se fija en Calle 44 No. 305 e/3ra. A y 5ta. Ave. Mira-
mar, Ciudad de La Habana, pero podrá variarse por determinación
de la Junta General de Accionistas, pudiendo crear oficinas,
representaciones, sucursales y filiales, tanto en Cuba como en el
extranjero, así como tomar participación en entidades constitui-
das en el extranjero.

### Objeto social

**ARTICULO TERCERO:** LA SOCIEDAD tendrá por objeto las actividades
siguientes, relacionadas con el giro de bebidas y licores:

1. Asumir las operaciones de comercio exterior relacionadas con
   la exportación de bebidas y licores.

2. Poseer participaciones en otras entidades nacionales o
   extranjeras, suscribiendo acciones, obligaciones y cualquier
   otro tipo de participación social, así como crear filiales y
   sucursales en el extranjero.

3. Asociarse con cualquier entidad extranjera; llevar a cabo
   operaciones de compensación, ya sea directamente, ya sea
   actuando como centro para operaciones triangulares, actuar
   como agente, representante o comisionista tanto de entidades
   nacionales como extranjeras; en el territorio nacional y en
   el extranjero; ser titular de marcas patentes y demás modali-
   dades de la propiedad industrial; ofrecer y recibir licen-
   cias, así como ejecutar cualquier actividad de lícito comer-
   cio vinculada con su objeto comercial o cualesquiera otras
   actividades que oportunamente se le asigne.

4. Asumir la importación de los insumos requeridos para la
   producción de las bebidas y licores objeto de exportación;
   así como la de otros productos que corresponden a la nomen-
   clatura de bebidas y licores.

1





5. Operar en el país en moneda nacional y en moneda libremente convertible (MLC), pudiendo aplicar MLC al financiamiento de sus gastos y erogaciones derivadas del cumplimiento de sus objetivos en la proporción de sus ingresos.

Término

ARTICULO CUARTO:  LA SOCIEDAD se constituye por término indefinido.

LA SOCIEDAD podrá disolverse por las causas enumeradas en el Artículo Trigésimo noveno de estos Estatutos o por las previstas en los artículos 170 y 221 del Código de Comercio.

Capital social

ARTICULO QUINTO : El capital social autorizado de LA SOCIEDAD es de cinco millones de dólares estadounidenses (USD) ($5'000,000.00) y estará representado por dos mil quinientas acciones (2,500) de dos mil dólares estadounidenses (USD) ($2,000.00), valor nominal de cada una.

De las acciones

ARTICULO SEXTO: Las acciones serán nominativas y de igual valor nominal cada una, el que podrá ser desembolsado en dinero, en especie o derechos.

Las acciones se dividen en dos series de acciones -Serie A y Serie B- del mismo valor nominal cada acción, con los mismos derechos y obligaciones.

La Serie A está integrada por acciones numeradas consecutiva- mente, partiendo del número uno y sólo podrá ser titular de ellas la misma persona natural o jurídica de nacionalidad cubana.

La Serie B está integrada por acciones numeradas consecutivamen- te, partiendo del número uno y será titular de ellas una persona natural o jurídica, cubana o extranjera.

ARTICULO SEPTIMO: Las acciones estarán representadas por certi- ficados, en los que debe constar el número de acciones que repre- sentan y el número consecutivo de las acciones representadas. Los certificados deben estar firmados por el Presidente y el Secretario.

Las acciones son indivisibles. En caso de copropiedad, los copropietarios deberán designar un representante para ejercer los derechos que las mismas le confieren.

Los titulares de las acciones gozan del derecho:

a) de un voto por acción;

2

b) de analizar el estado de pérdidas y ganancias, el balance y toda la documentación relacionada con éstos, pudiendo solicitar toda la información procedente para conocer la situación económica de LA SAOCIEDAD y el desarrollo de la misma en el período de treinta días previo a la celebración de la Junta General de Accionistas ordinaria o en ocasión de esta reunión;

c) la parte alicuota que le corresponde de las utilidades que se acuerde distribuir;

d) analizar la memoria y aprobarla;

e) participar en el patrimonio resultante en caso de liquidación de LA SOCIEDAD, en la forma que se establece en estos Estatutos.

Las acciones no podrán ser dadas en prenda, en garantía o gravadas en cualquier forma sin autorización previa de la Junta General de Accionistas, mediante acuerdo adoptado por unanimidad. Si se autorizare su gravamen, éste se inscribirá en el Libro Registro de Acciones al constituirse, y cuando fuese cancelado se hará constar la liberación de las mismas. En el caso de acciones gravadas, su titular es el único que podrá ejercer los derechos que las acciones otorgan.

ARTICULO OCTAVO: Las acciones se inscribirán en el Libro Registro de Acciones que debe llevar LA SOCIEDAD, en el que constará el número de la acción o del certificado y, en este último, el número de las acciones que representa, el nombre de su titular y cualquier limitación o gravamen que existan sobre ellas.

En caso de extravío, robo o destrucción de la acción o certificado, el titular inscrito en el Libro Registro de Acciones podrá solicitar un duplicado. Al ser expedido éste se hará constar, en el mismo, su carácter de duplicado.

ARTICULO NOVENO: Si el valor nominal del certificado no estuviese totalmente desembolsado, se hará constar en el certificado y en el Libro Registro de Acciones el importe parcial pagado, y cuando se pague totalmente o si se hacen pagos parciales, se anotarán éstos en la acción o certificado y en el Libro Registro de Acciones.

ARTICULO DECIMO: Las acciones no pueden ser vendidas, gravadas, pignoradas, cedidas o en cualquier forma traspasadas a terceros sin la autorización previa de la Junta General de Accionistas por acuerdo unánime.

Autorizando el traspaso de las acciones, éste sólo surtirá efecto al ser inscrito en el Libro Registro de Acciones, siendo la autorización de la Junta General de Accionistas el documento idóneo para efectuar la inscripción del traspaso en el Libro Registro de Acciones. En caso de contradicción entre el que

3

aparece como titular en la acción y el que aparece en tal concepto en el Libro Registro de Acciones, éste prevalecerá frente al que aparece en la acción.

ARTICULO DECIMO PRIMERO: El socio que pretenda transferir a un tercero la totalidad o parte de sus acciones, deberá solicitarlo por escrito a la Junta de Directores, la que convocará a la Junta General de Accionistas, que se celebrará dentro de los treinta días siguientes a su convocatoria y no más allá de cuarenta días después de recibirse la solicitud escrita por la Junta de Directores.

Las acciones serán transferidas según el acuedo de la Junta General de Accionistas.

Del gobierno, dirección y administración

ARTICULO DECIMO SEGUNDO: El gobierno, dirección y administración de LA SOCIEDAD corresponde, en primer lugar, a la Junta General de Accionistas, como órgano supremo, y en segundo lugar a la Junta de Directores.

De la Junta General de Accionistas

ARTICULO DECIMO TERCERO: La Junta General de Accionistas es el órgano soberano de la sociedad cuyas decisiones obligan a los accionistas y a la Junta de Directores. Su objeto es deliberar y decidir todos los asuntos sometidos a su conocimiento, recogiéndose sus decisiones en acuerdos que obligan a los accionistas cuando son adoptados ajustándose a lo que establecen estos Estatutos y las leyes. Los acuerdos deben ser ejecutados por la Junta de Directores.

ARTICULO DECIMO CUARTO: La Junta General de Accionistas es la reunión de los titulares de las acciones de la Serie A y de la Serie B, que han sido convocados para deliberar y decidir sobre los asuntos sociales propios de su competencia, contenidos en el orden del día.

Las Juntas Generales de Accionistas se celebrarán en el domicilio social, u otro que los socios convengan por escrito previa convocatoria; a la convocatoria debe adjuntarse el orden del día.

Las Juntas Generales de Accionistas pueden ser ordinarias o extraordinarias. Las ordinarias deben celebrarse dentro de los dos primeros meses de cada año; extraordinarias son todas aquellas que se celebren fuera de la fecha señalada para las ordinarias.

ARTICULO DECIMO QUINTO: La Junta General de Accionistas debe ser convocada por escrito enviado por correo certificado, télex o fax, dirigido a cada uno de los accionistas, el que debe ser librado por el Presidente de la Junta de Directores cuando se

4

trate de la de carácter ordinario.

Las sesiones extraordinarias de la Junta General de Accionistas pueden ser convocadas por el Presidente o por el 50 por ciento de los Directores o por la mayoría de los titulares de las acciones de la Serie A o de la Serie B. En todos los casos se expondrán las causas de la convocatoria y el orden del día.

ARTICULO DECIMO SEXTO: La Junta General de Accionistas debe ser presidida por el Presidente de la Junta de Directores, y actuará como Secretario el que lo sea de la Junta de Directores. En ausencia de uno y otro, o de ambos, en el momento de celebrarse la reunión, los accionistas reunidos designarán a quien o quienes desempeñarán esos cargos durante la reunión.

Los acuerdos de la Junta General de Accionistas se adoptarán por lo menos con la conformidad de los titulares de la mayoría de las acciones de la Serie A y de los tenedores de la mayoría de las acciones de la Serie B, y se recogerán por escrito en acta que se transcribirá en el Libro de Actas que debe llevar LA SOCIEDAD. Los acuerdos se enumerarán consecutivamente cada año.

Las actas deben ser firmadas por el Secretario, con el visto bueno del Presidente o de quien en su ausencia haya actuado en tal carácter.

Las actas deben ser aprobadas por todos los accionistas dentro de los treinta días siguientes a aquel en que concluyeron las sesiones de la Junta General de Accionistas cuyos acuerdos recoge. No obstante lo anterior, los acuerdos producen los efectos a ellos inherentes desde el momento en que han sido adoptados.

Si los acuerdos son inscribibles, deben ser inscritos en el Registro correspondiente.

ARTICULO DECIMO SEPTIMO: Los titulares de las acciones pueden asistir a las reuniones de la Junta General de Accionistas por sí o mediante representante, siendo condición inexcusable que los titulares aparezcan inscriptos en el Libro Registro de Acciones. En el caso de que actúe un representante, éste puede ser otro accionista o no, pero debe acreditar su carácter de representante mediante poder para cada reunión de la Junta de Accionistas.

ARTICULO DECIMO OCTAVO: Para que la Junta General de Accionistas se encuentre válidamente constituida deben estar presentes los titulares de la mayoría de las acciones de la Serie A y de los titulares de las acciones de la Serie B. De no existir el quórum reglamentario, se librará una segunda convocatoria dentro de los seis días subsiguientes a aquel en que la Junta debió reunirse en primera convocatoria, y se celebrará la reunión de los treinta días subsiguientes.

Si en la segunda convocatoria tampoco existiese el quórum requerido, se librará una tercera convocatoria dentro del plazo que acuerde la Junta de Directores.

5



La Junta General de Accionistas, ordinaria o extraordinaria, puede celebrarse sin previa convocatoria si concurren a la misma la totalidad de los accionistas y éstos aceptan por unanimidad el orden del día.

**ARTICULO DECIMO NOVENO:** Con treinta días de antelación a la fecha fijada en la convocatoria para la celebración de la Junta General de Accionistas Ordinaria, serán puestos a disposición de los accionistas el balance del cierre de año, el estado de pérdidas y ganancias, la memoria explicativa, la propuesta de la Junta de Directores si hubiese sido formulada para la distribución de utilidades entre los accionistas, la propuesta de reservas facultativas, así como cualquier otra documentación necesaria para conocer con claridad y exactitud el curso de los negocios y la situación económico-financiera de LA SOCIEDAD. Durante este periodo los accionistas pueden solicitar aclaraciones o información complementaria.

La Junta General de Accionistas Ordinaria debe examinar y aprobar el balance anual y demás documentos presentados a su consideración, así como la propuesta de distribución de utilidades y otras de carácter económico-financiero que se le sometan.

En el caso de que durante la celebración de la reunión los accionistas no aprueben el balance o exigiesen información complementaria a la que se condicione su aprobación, se celebrará una Junta General de Accionistas extraordinaria para decidir sobre el mismo dentro de los cuatro días siguientes a la fecha fijada para la ordinaria.

**ARTICULO VIGESIMO:** A la Junta General de Accionistas, además de los accionistas, pueden asistir, si han sido expresamente invitados, los directores u otras personas. Estos invitados tendrán voz pero no voto.

**ARTICULO VIGESIMO PRIMERO:** La Junta General de Accionistas ordinaria conocerá y decidirá necesariamente, además de lo señalado en el Artículo Vigésimo de estos Estatutos, los presupuestos anuales y el análisis del comportamiento del presupuesto del año inmediato anterior; el desarrollo programado, así como las principales medidas a adoptar para asegurar su cumplimiento.

**ARTICULO VIGESIMO SEGUNDO:** Es también competencia de la Junta General de Accionistas:

Designar a la Junta de Directores y, de ellos, a los que actuarán como Presidente, Vicepresidente y Tesorero.

Acordar el aumento o reducción de capital social y la forma en que va a efectuarse.

Modificar estos Estatutos.

6

ch) Acordar la apertura de sucursales, agencias y oficinas en el territorio nacional o en el extranjero.

d) Acordar la constitución de subsidiarias o filiales y tomar participación en otras sociedades, en el extranjero.

e) Autorizar el traspaso de acciones, tanto de la Serie A como de la Serie B.

f) Examinar la administración social o hacer investigaciones respecto a la misma.

g) Analizar el cumplimiento del plan de desarrollo anual y perspectivo y adoptar nuevas medidas para garantizarlos o modificarlos.

h) Aprobar el balance anual y la memoria explicativa, y conocer los balances trimestrales.

i) Aprobar la constitución de reservas facultativas.

j) Autorizar los contratos que representen actos de dominio de los bienes sociales.

k) Resolver sobre cualquier asunto necesario o beneficioso para el desarollo de LA SOCIEDAD que se le someta o que le propongan los socios.

l) Disolver LA SOCIEDAD y declararla en liquidación.

ll) Delegar facultades de su competencia en la Junta de Directores, el Presidente u otro miembro de dicha Junta de Directores.

**ARTICULO VIGESIMO TERCERO:** Para adoptar acuerdos en relación con las atribuciones de la Junta General de Accionistas identificados con los literales a), b), c), e), h), j), l), ll) y m) del Artículo anterior será necesario el voto conforme de la totalidad de los accionistas de la Serie B.

**ARTICULO VIGESIMO CUARTO:** El acuerdo sobre reducción del capital social sólo puede ejecutarse previa la liquidación de las deudas y obligaciones pendientes en la fecha en que se adoptó el acuerdo por la Junta General de Accionistas, a no ser que se obtenga el consentimiento previo de los acreedores:

El acuerdo de reducción de capitales puede llevarse a efecto reduciendo el valor nominal de todas las acciones de la Serie A y de la Serie B, en igual número. En ambos casos las acciones de la Serie A y de la Serie B mantendrán la misma proporción de participación en el capital social establecido en el Artículo sexto.

7

De la Junta de Directores

**ARTICULO VIGESIMO QUINTO:** El órgano de dirección y administración de LA SOCIEDAD es la Junta de Directores, que deberá ejecutar los acuerdos de la Junta General de Accionistas y realizar las actividades necesarias para su cumplimiento, así como llevar a cabo la gestión administrativa y la toma de decisiones operativas para este fin.

Es competencia de la Junta de Directores la representación de LA SOCIEDAD en los asuntos pertenecientes al negocio y tráfico de la misma, en los actos de procedimientos judiciales o fuera de ellos, estando al efecto investida de las facultades que le atribuyen estos Estatutos y las leyes.

Para ejercer facultades de disposición de los bienes sociales es necesario un poder expreso y específico de la Junta General de Accionistas, otorgado por unanimidad de todos los accionistas.

**ARTICULO VIGESIMO SEXTO:** Para la constitución de la Junta de Directores, los titulares de las acciones de la Serie A y los titulares de las acciones de la Serie B propondrán a la Junta General de Accionistas al menos dos directores de cada uno, los que deberán ser aprobados por unanimidad por ésta. La Junta de Directores se elige por un período de tres años.

De entre los directores aprobados la Junta General de Accionistas designará el Presidente, el Vicepresidente y el Tesorero. Salvo acuerdo en contrario, cada tres años se rotarán los cargos de presidente y Vicepresidentes entre los directores propuestos por los titulares de las acciones de cada una de las Series A y B.

También designará la Junta General de Accionistas un Secretario el que no será director y desempeñará sus funciones hasta que sea sustituido por la propia Junta.

Los directores podrán ser reelectos indefinidamente por la Junta General de Accionistas.

**ARTICULO VIGESIMO SEPTIMO:** Los directores —sean accionistas de LA SOCIEDAD o no— y el Secretario podrán ser removidos de su cargo por acuerdo de la Junta General de Accionistas, a solicitud fundada de un accionista o por la mayoría de la Junta de Directores. En la propia reunión en que se produzca la remoción debe ser designado el sustituto propuesto de las acciones de la Serie que designó al Director removido.

**ARTICULO VIGESIMO OCTAVO:** Los directores que integran la Junta de Directores serán solidariamente responsables de las irregularidades que cometa la Junta de Directores o uno de sus miembros, en este último caso sino se le comunica por escrito, inmediatamente de haber llegado a su conocimiento, al presidente, o al Secretario si fuera el Presidente quien hubiere cometido la irregularidad. El Presidente o, cuando proceda, el Secretario, deberá convocar dentro de los quince días siguientes a la Junta



8

General de Accionistas.

Esta convocatoria procederá cuando la irregularidad afecte o pueda afectar económicamente a LA SOCIEDAD, producir perjuicios de cualquier naturaleza o en alguna forma afectar su prestigio.

**ARTICULO VIGESIMO NOVENO:** La Junta de Directores se reunirá semestralmente, dentro de los diez primeros días, así como cuantas veces la convoque el Presidente o lo soliciten fundamentalmente dos directores.

La convocatoria se librará con quince días de anterioridad a la fecha de celebración, y la reunión se efectuará en el local social u otro que acuerden las partes.

Para que la junta de Directores sesione válidamente, se requerirá la asistencia del cincuenta por ciento de los directores designados por los titulares de las acciones de cada serie, incluido el presidente.

La Junta de Diretores puede celebrarse sin previa convocatoria si concurren a la misma la totalidad de los directores y éstos aceptan por unanimidad el orden del día.
**ARTICULO TRIGESIMO:** Los acuerdos de las reuniones de la Junta de Directores se adoptarán por unanimidad de los directores presentes.

En los casos en que no haya acuerdo, el presidente o cualquier director podrá someter el asunto a la decisión de la Junta General de Accionistas.

De cada reunión de la Junta de Directores se redactará el acta correspondiente, en la que los acuerdos se enumerarán consecutivamente cada año, a partir de la primera reunión. El acta será firmada por el secretario con el visto bueno del Presidente.

El acta se circulará entre los directores dentro de los diez días siguientes a la celebración de la reunión, para su aprobación, no obstante, los acuerdos tienen vigencia desde la fecha en que sean adoptados.

**ARTICULO TRIGESIMO PRIMERO:** Corresponden a la Junta de Directores las facultades siguientes:

a) Representar a LA SOCIEDAD en todos los asuntos y actividades, actos y negocios jurídicos que estén relacionados con la esfera de operaciones a la que LA SOCIEDAD pueda dedicar su actividad de acuerdo con el objeto social, así como en procedimientos judiciales o fuera de los mismos, obligándola con sus actos y contratos.

La representación de la junta de Directores es colegiada, pero puede otorgar poder para ejercerla con carácter general al Presidente y con carácter específico a cualesquiera de los directores o a un tercero.

9





Dirigir la gestión de todos los asuntos propios de LA SO-
CIEDAD que sean necesarios para el cumplimiento de los
acuerdos de la Junta general de Accionistas y el objeto
social.

c) Administrar todos los bienes de LA SOCIEDAD, por sí o por
persona natural o jurídica apoderada especialmente para el
acto que se designe, sometiendo a la Junta General de Accio-
nistas la estructura administrativa de la empresa y sus
dependencias.

ch) Celebrar contratos de administración ajustándose a lo que
estos Estatutos y las leyes establezcan.

d) Abrir cuentas bancarias denominadas en las monedas que
decida, así como operarlas y cancelarlas, en un banco del
sistema bancario nacional o del extranjero.

e) Realizar todas las operaciones que procedan con documentos
mercantiles, títulos o valores en general.

f) Contratar el personal necesario para el desarrollo y cum-
plimiento del objeto social, de acuerdo con lo establecido en
la legislación vigente.

g) Revisar si los titulares de las acciones suscritas las han
desembolsado en el tiempo e importes acordados.

h) Redactar la fundamentación económica para el incremento o
disminución del capital autorizado, sometiéndolo a la Junta
General de Accionistas para su decisión.

i) Establecer el sistema de contabilidad que más se adecúe a la
actividad de LA SOCIEDAD, conforme a principios internacio-
nalmente aceptados.

j) Informar trimestralmente a los socios sobre la marcha de los
negocios de LA SOCIEDAD, sometiéndoles los balances trimes-
trales y convocando a la Junta General de Accionistas cuando
fuere necesario o conveniente.

k) Presenar el balance general anual, el estado de pérdidas y
ganancias y la memoria explicativa, así como los documentos
que sean pertinentes a la consideración de la Junta General
de Accionistas con treinta días de anticipación a la reunión
ordinaria anual.

l) Proponer fundamentalmente a la Junta General de Accionistas,
en la reunión ordinaria anual, la imputación de utilidades a
cada parte, la distribución de utilidades y su monto, así
como la cuantía de las reservas facultativas que considera
procedente en adición a las establecidas por la legislación.



10

l) Registrar en el Libro Registro de Acciones a los accionistas
titulares y los traspasos de acciones que se autoricen, así como cualquier limitación u obligación de las acciones que sean inscribibles.

m) Convocar a la Junta General de Accionistas en sesión ordinaria o extraordinaria y redactar el orden del día.

n) Ejercer la alta dirección y supervisión de todo el personal que preste servicios en LA SOCIEDAD o sus dependencias, disponiendo su promoción o democión.

ñ) Interponer demandas, denuncias, querellas y recursos en toda clase de procedimientos, ya sean civiles, administrativos, penales o arbitrales; efectuar transacciones judiciales y extrajudiciales, hacer desestimiento, allanarse u oponerse a éstos, otorgando a tal efecto los poderes necesarios a abogados u otros representantes.

o) Otorgar poderes, haciendo delegación de facultades delegables, en un Director de la Junta, funcionario o empleado de LA SOCIEDAD o un tercero. No son delegables las facultades exclusivamente reservadas a la Junta General de Accionistas.

**ARTICULO TRIGESIMO SEGUNDO:** Los directores podrán ser retribuidos si desempeñan cargos retribuibles. Esa retribución podrá ser revisada en las reuniones anuales de la Junta General de Accionistas.

**ARTICULO TRIGESIMO TERCERO:** Si se produjere una vacante en la Junta de Directores por renuncia, enfermedad o muerte, la Junta General de Accionistas designará su sustituto de acuerdo con el procedimiento establecido en los Estatutos.

Del Presidente

**ARTICULO TRIGESIMO CUARTO:** El Presidente de la Junta de Directores será el Presidente de LA SOCIEDAD, teniendo, entre otras, las facultades siguientes:

a) Distribuir entre los directores actividades específicas, administrativas o de otra índole, que sean de competencia de la Junta de Directores. En este caso el Director designado será el responsable del cumplimiento de la actividad encomendada, independientemente de la que en ese asunto específico pueda corresponder al Presidente, a otro Director o a la Junta de Directores.

b) Convocar y presidir las reuniones de la Junta General de Accionistas y de la Junta de Directores.

c) Firmar junto con el Secretario las acciones y los certificados de acciones.



11

ch) Otorgar el visto bueno a las actas de la Junta General de Accionistas y de las reuniones de la Junta de Directores.

d) Supervisar la ejecución de los trabajos encomendados a cada Director.

e) Firmar junto con el Tesorero las órdenes de pago contra los fondos de LA SOCIEDAD.

f) Todas aquellas de la Junta General de Accionistas o de la Junta de Directores que le sean delegadas.

Del Vicepresidente

**ARTICULO TRIGESIMO QUINTO:** El Vicepresidente sustituye al Presidente en caso de ausencia, enfermedad, incapacidad o fallecimiento de éste, pero en todo momento tendrá las facultades que le asigne la Junta General de Accionistas o el Presidente.

Del Tesorero

**ARTICULO TRIGESIMO SEXTO:** El Director que sea designado Tesorero tendrá las facultades siguientes:

a) Velar porque se lleven los libros de contabilidad de conformidad con el sistema que se haya acordado por LA SOCIEDAD y supervisar el desarrollo económico de LA SOCIEDAD.

b) Presentar balances semestrales a la Junta de Directores, y anuales a la Junta General de Accionistas.

c) Ofrecer el fundamento económico-contable a la Junta de Directores para proponer a la Junta General de Accionistas la distribución de utilidades, el monto a distribuir y el dividendo por acción. Para hacer esta propuesta tendrá en consideración las perspectivas de desarrollo de LA SOCIEDAD, las necesidades futuras de liquidez y el capital de trabajo adecuado.

ch) Presentar al Comité Estatal de Finanzas los balances correspondientes a cada uno, de los tres primeros trimestres naturales de cada año dentro del mes siguiente al cierre del trimestre, así como el balance correspondiente a las operaciones de cada año natural, dentro de los dos primeros meses del año siguiente, de conformidad con lo establecido en la Resolución No. 52 de 1987 del Comité Estatal de Finanzas.

d) Firmar junto con el Presidente por sí o por las personas que se designen, las órdenes de pago contra los fondos de la sociedad.

e) Cualquier otra que le asignen la Junta General de Ac-



12

... la Junta de Directores o el Presidente de la sociedad.

De los demás directores

**ARTICULO TRIGESIMO SEPTIMO:** Los demás Directores ejecutarán las actividades administrativas y operativas que les asigne la Junta de Directores o el Presidente de LA SOCIEDAD en adición a las propias como miembro de la Junta de Directores.

Del Secretario

**ARTICULO TRIGESIMO OCTAVO:** El Secretario tendrá las facultades siguientes:

a)  Custodiar los archivos, los Libros de Actas, tanto de la Junta General de Accionistas como la Junta de Directores, y el Libro de Registro de Acciones de cada Serie.

b)  Emitir certificaciones con vista a los libros y documentos bajo su cargo y custodia.

c)  Suscribir los certificados de acciones y las actas de la Junta General de Accionistas, en su caso, y de la Junta de Directores conjuntamente con el Presidente.

ch) Redactar las actas de la Junta General de Accionistas y circularlas dentro de los diez días siguientes a la reunión.

d)  Redactar las actas de la Junta de Directores y circularlas dentro de los diez días siguientes a la reunión.

e)  Cualquier otra que le asignen la Junta General de Accionistas, la Junta de Directores o el Presidente de LA SOCIEDAD.

De la disolución y liquidación de LA SOCIEDAD

**ARTICULO TRIGESIMO NOVENO:** LA SOCIEDAD se disolverá en los casos siguientes:

a)  Por ser imposible el cumplimiento del objeto social por causas internas de LA SOCIEDAD o por causas externas;

b)  Cuando uno de los accionistas sea declarado en estado de suspensión de pagos o quiebra.

c)  Por imposibilidad reiterada de adoptar acuerdo, de conformidad con lo que se establece en el Artículo Décimo Séptimo en cuanto a los acuerdos de la Junta General de Accionistas y en el Décimo Noveno en cuanto a la existencia de quórum.

d)  Por acuerdo de todos los accionistas de la Serie A y la Serie B.

13

e) Por pérdida total del capital social de LA SOCIEDAD o por pérdida parcial del mismo que haga imposible las actividades sociales.

f) Por quiebra de LA SOCIEDAD.

ARTICULO CUADRAGESIMO: La concurrencia de alguna de las causales enumeradas en el Artículo anterior dará lugar a la disolución de LA SOCIEDAD y al inicio del proceso de su liquidación.

Al comenzar la liquidación de LA SOCIEDAD, cesará desde ese momento la Junta de Directores, y la Junta General de Accionistas designará los liquidadores, así como el plazo para efectuar las operaciones de liquidación.

ARTICULO CUADRAGESIMO PRIMERO: Los liquidadores son los representantes y administradores de LA SOCIEDAD, y su actuación debe encaminarse a percibir los créditos de la misma que sean exigibles al declararse su disolución y los que vayan venciendo; a liquidar las obligaciones pendientes al momento de acordarse la liquidación o con posterioridad y, en general, a concluir las operaciones pendientes.

El evalúo de los bienes sociales se efectuará

a) Por acuerdo unánime de los accionistas.

b) En caso de no llegar a un acuerdo sobre dicho valor, los accionistas de cada serie propondrán, como posible perito, a dos entidades especializadas en la materia, de prestigio internacional. Si los accionistas de ambas series se pusieran de acuerdo sobre la selección de una de ellas, ésta fijará el valor de los bienes). De no alcanzar este acuerdo se seleccionará por insaculación.

La designación del perito debe efectuarse dentro de los seis meses siguientes al de la decisión de disolver LA SOCIEDAD.

El dictamen del perito será definitivo e inapelable.

c) Si la disolución de LA SOCIEDAD fuese por la causa prevista en el inciso c) del Artículo Trigésimo Noveno, la valoración de los bienes se hará según Libros.

ARTICULO CUADRAGESIMO SEGUNDO: De conformidad con lo establecido en el Código de Comercio, deberán los liquidadores:

a) Presentar ante la Junta General de Accionistas, en el término de veinte días, el inventario del haber social, con el balance inicial de las cuentas de LA SOCIEDAD.

b) Presentar a la Junta General de Accionistas, mensualmente, un informe pormenorizado sobre el estado de la liquidación.

14



neral de Accionistas, al concluir la
e final en el que se precise el capital
cciones.

ARTI... ...O TERCERO: Los liquidadores efectuarán la
iqu... ...ber social entre los accionistas, según su
part... ...el capital social.

Los ... ...es convocarán a la Junta General de Accionistas
para ... ...ibución del haber social.

La ... ...ión de los titulares de las acciones de la Serie B se
real... ... en efectivo y su importe podrá ser transferido al
exte... ..., a solicitud de sus titulares.

embre de 1993

A COPIA MATRIZ, que bajo el número de orden con
... ... ...de la Notaría Especial
... ... ...inutilicé
... ... ...pesos mo... ...nacional,
... ...los *comparecientes* ..., expid... ...esta **copia** en
...hoja(s) ..., ...ofiado a los ___Ω/___
d... ...es de ___*Septiembre*___, de 19 __93__ DOY FE.--



15



El documento que antecede, correspondiente a la Escritura # 456/93, ha sido inscripta en:

Registro Central de Compañías Anónimas
Libro 135
Folio 26
Hoja 9990
Sección Primera
Inscripción 1ra

Registro Mercantil Primero de La Habana
Libro 1188
Folio 163
Hoja 23
Inscripción 1ra

Dado en la Ciudad de La Habana, a los 15 días del mes de octubre de 1993. _____

# EXHIBIT C

Constitution of the Republic of Cuba
National Assembly of People's Power
Note

During 1975, a draft Constitution of the Republic was exposed to public debate, in which more than 6 million people participated. The resulting suggestions led to changes in 60 of the proposed articles.

On February 15, 1976, the document was approved by a referendum in which 98% of the electorate voted, with 97.7% of those voting in favour; approval was consequently by free, direct and confidential vote of the overwhelming majority of the electors.

On February 24, 1976, this Constitution was proclaimed, at a solemn, public ceremony.

On June 26, 1978, the National Assembly of People's Power, in exercise of its constitutional powers, resolved to amend Article 10(a) of the Constitution, changing the name of the island then known as "Isla de Pinos" to "Isla de la Juventud".

On July 12, 1992, the Constitutional Reform Act designed to implement recommendations by the Fourth Congress of the Cuban Communist Party was approved at a meeting of the National Assembly of People's Power, which had convened for such purpose. These were based on a public, open, frank and calm debate with the people, on a document issued by the Congress concerning the activities of the state agencies, arguing the need for our democratic institutions to be even more representative. This called for: decisions aimed at revising the structures, powers and steering functions of the various authorities based on such institutions; clarification of the role of government at provincial and municipal levels; new ways of electing deputies to sit on the National Assembly and delegates at the provincial assemblies; the addressing of other issues relevant to the nation's institutional life.

The Constitution was further amended to underpin and extend a large number of basic rights and freedoms, as well as the civil and political rights of both Cubans and aliens.

On June 10, 2002, an unprecedented plebiscitary process emerged, making itself felt at the Extraordinary Assembly of the various national headquarters of the mass organizations and, two days later, through demonstrations and marches held throughout the nation and involving over nine million people. It culminated in the public, voluntary signing, during the three days June 15-17, by a total of 8,198,237 electors, of a document ratifying the socialist content of the Constitution. This gesture by the Cuban people was in response to offensive, interventionist remarks by the President of the United States, and called on the National Assembly of People's Power to amend the Constitution so as to make irrevocable the socialism and revolutionary political and social system it proclaims. Also sought was a statement that economic, diplomatic and political relations with other states must not be conducted under aggression, threat or coercion by a foreign power. In Extraordinary Session on June 26, 2002, convened for the purpose, the

Assembly passed the relevant resolution (No. V-74), approving the Constitutional Reform Law.

Constitutional and Legal Affairs Committee of the National Assembly of People's Power
Constitution of the Republic of Cuba
Preamble

**WE, CUBAN CITIZENS**, heirs and continuators of the creative work and the traditions of combativeness, firmness, heroism and sacrifice fostered by our ancestors;
**by** the Indians who preferred extermination to submission;
**by** the slaves who rebelled against their masters;
**by** those who awakened national awareness and a yearning by Cubans for country and freedom;
**by** the patriots who in 1868 launched the wars of independence against Spanish colonialism and those who in the last drive of 1895 won victory in 1898, a victory usurped by the military intervention and occupation of Yankee imperialism;
**by** the workers, peasants, students and intellectuals who struggled for over fifty years against imperialist domination, political corruption, the absence of people's rights and liberties, unemployment and exploitation by capitalists and landowners;
**by** those who promoted, joined and developed the first organizations of workers and peasants, spread socialist ideas and founded the first Marxist and Marxist-Leninist movements;
**by** the members of the vanguard of the generation of the centenary of the birth of Martí who, imbued with his teachings, led us to the people's revolutionary victory of January;
**by** those who defended the Revolution at the cost of their lives, thus contributing to its definitive consolidation;
by those who en masse carried out heroic internationalist missions;
**GUIDED**
by the ideas of José Martí and the political and social ideas of Marx, Engels and Lenin;
**BASING OURSELVES**
on proletarian internationalism, on the fraternal friendship, aid, cooperation and solidarity of the peoples of the world, especially those of Latin America and the Caribbean;
**AND HAVING DECIDED**
to carry forward the triumphant Revolution of the Moncada and of the Granma of the Sierra and of Girón under the leadership of Fidel Castro, which sustained by the closest unity of all revolutionary forces and of the people won full national independence, established revolutionary power, carried out democratic changes, started the construction of socialism and, with the Communist Party at the forefront, continues this construction with the final objective of building a communist society;
**AWARE**
that all the regimes based on the exploitation of man by man cause the humiliation of the exploited and the degradation of the human nature of the exploiters;
that only under socialism and communism, when man has been freed from all forms of exploitation - slavery, servitude and capitalism - can the full dignity of the human being be attained; and

that our Revolution uplifted the country and of Cubans;

**WE DECLARE**

our will that the law of laws of the Republic be guided by the following strong desire of José Martí, at last achieved;

"I want the fundamental law of our republic to be the tribute of Cubans to the full dignity of man";

**AND ADOPT**

by means of our free vote in a referendum, the following:

**CONSTITUTION**

## CHAPTER I

### Political, Social and Economic Principles of the State

**...**

**ARTICLE 17**. The State directly administers the goods that make up the socialist property of the entire people, or may create and organize enterprises and entities to administer them, whose structure, powers, functions and the system of their relations are prescribed by law.

These enterprises and entities only answer for their debts through their financial resources, within the limits prescribed by law. The State is not liable for the obligations contracted by the companies, entities, and other legal persons, and the latter are also not liable for the obligations of the State

**...**

**ARTICLE 23**. The State recognizes the property of the mixed companies, companies and economic associations constituted pursuant to the law. The use, enjoyment and disposal of the assets related to the property of said entities is governed by the provisions of the laws and statues as well as by their statues and other governing regulations.

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK     )
                      )          ss
COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of The Constitution of the Republic of Cuba, completed on 1/21/2010, originally written in Spanish.

Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

KAREN OLIVE
Notary Public, State of New York
No. 01OL6146423
Qualified in Queens County
Commission Expires May 15, 2010

## Constitución de la República de Cuba
## Asamblea Nacional del Poder Popular
### Nota

El anteproyecto de la Constitución de la República, durante 1975 fue sometido a discusión pública donde participaron más de 6 millones de personas, y se formularon propuestas que llevaron a modificar 60 de los artículos propuestos.

El 15 de febrero de 1976 se celebró un referendo en el que votó el 98% de los electores, de los cuales el 97,7% lo hizo afirmativamente, alcanzando así su aprobación, mediante el voto libre, directo y secreto de la inmensa mayoría de éstos.

El 24 de febrero de 1976, fue proclamada esta Constitución en acto solemne y público.

El 26 de junio de 1978, la Asamblea Nacional del Poder Popular en uso de sus facultades constitucionales, acordó reformar el artículo 10, inciso a) de la Constitución, a los efectos de que en lo sucesivo la Isla de Pinos pasara a llamarse Isla de la Juventud.

El 12 de julio de 1992 fue aprobada en sesión convocada al efecto, de la Asamblea Nacional del Poder Popular, la Ley de Reforma Constitucional encaminada a cumplimentar las recomendaciones del IV Congreso del Partido Comunista de Cuba adoptadas como resultado del debate público, abierto, franco y sereno con el pueblo, del llamamiento que lo convocó y que evidenció, en lo concerniente a la actividad de los organismos estatales, la necesidad de encontrar vías para hacer aún más representativas nuestras instituciones democráticas y, consecuentemente, adoptar decisiones con vista a perfeccionar sus estructuras, atribuciones y funciones de dirección en sus diferentes instancias; incluir precisiones sobre la gestión del gobierno en provincias y municipios; establecer nuevas formas de elección de los diputados a la Asamblea Nacional y de los delegados a las asambleas provinciales, así como otras cuestiones de interés para la vida institucional del país.

La Constitución también fue modificada con el fin de garantizar y ampliar el ejercicio de numerosos derechos y libertades fundamentales y los derechos civiles y políticos de los ciudadanos y extranjeros.

El 10 de junio del 2002, el pueblo de Cuba, en un proceso plebiscitario popular sin precedentes, puesto de manifiesto tanto en la Asamblea Extraordinaria de las direcciones nacionales de las organizaciones de masas; como en actos y marchas realizados el día 12 del propio mes de junio a todo lo largo y ancho del país, en los que participaron más de nueve millones de personas y para la firma pública y voluntaria de 8 198 237 electores durante los días 15, 16 y 17 de ese mismo mes ratificaron el contenido socialista de esta Constitución en respuesta a las manifestaciones injerencistas y ofensivas del Presidente de los Estados Unidos de América, e interesaron de la Asamblea Nacional del Poder Popular reformarla, para dejar expresamente consignado el carácter irrevocable del socialismo y del sistema político y social revolucionario por ella diseñado, así como que las relaciones económicas, diplomáticas y políticas con otro Estado no pueden ser negociadas bajo agresión, amenaza o coerción de una potencia extranjera, ante lo cual el órgano supremo de poder del Estado, en sesión extraordinaria, convocada al efecto, adoptó por unanimidad el Acuerdo No. V-74, por el que se aprobó la Ley de Reforma Constitucional el 26 de junio del 2002

**Comisión de Asuntos Constitucionales y Jurídicos de la Asamblea Nacional del Poder Popular**
**Constitución de la República de Cuba**
**Preámbulo**

**NOSOTROS, CIUDADANOS CUBANOS**, herederos y continuadores del trabajo creador y de las tradiciones de combatividad, firmeza, heroísmo y sacrificio forjadas por nuestros antecesores;

**por** los aborígenes que prefirieron muchas veces el exterminio a la sumisión;

**por** los esclavos que se rebelaron contra sus amos;

**por** los que despertaron la conciencia nacional y el ansia cubana de patria y libertad;

**por** los patriotas que en 1868 iniciaron las guerras de independencia contra el colonialismo español y los que en el último impulso de 1895 las llevaron a la victoria de 1898, que les fuera arrebatada por la intervención y ocupación militar del imperialismo yanqui;

**por** los obreros, campesinos, estudiantes e intelectuales que lucharon durante más de cincuenta años contra el dominio imperialista, la corrupción política, la falta de derechos y libertades populares, el desempleo y la explotación impuesta por capitalistas y terratenientes;

**por** los que promovieron, integraron y desarrollaron las primeras organizaciones de obreros y de campesinos, difundieron las ideas socialistas y fundaron los primeros movimientos marxista y marxista-leninista;

**por** los integrantes de la vanguardia de la generación del centenario del natalicio de Martí, que nutridos por su magisterio nos condujeron a la victoria revolucionaria popular de Enero;

**por** los que, con el sacrifico de sus vidas, defendieron la Revolución contribuyendo a su definitiva consolidación;

por los que masivamente cumplieron heroicas misiones internacionalistas;

**GUIADOS**

por el ideario de José Martí y las ideas político-sociales de Marx, Engels y Lenin;

**APOYADOS**

en el internacionalismo proletario, en la amistad fraternal, la ayuda, la cooperación y la solidaridad de los pueblos del mundo, especialmente los de América Latina y del Caribe;

**DECIDIDOS**

a llevar adelante la Revolución triunfadora del Moncada y del Granma, de la Sierra y de Girón encabezada por Fidel Castro que, sustentada en la más estrecha unidad de todas las fuerzas revolucionarias y del pueblo, conquistó la plena independencia nacional, estableció el poder revolucionario, realizó las transformaciones democráticas, inició la construcción del socialismo y, con el Partido Comunista al frente, la continúa con el objetivo final de edificar la sociedad comunista;

**CONSCIENTES**

de que los regímenes sustentados en la explotación del hombre por el hombre determinan la humillación de los explotados y la degradación de la condición humana de los explotadores;

de que sólo en el socialismo y el comunismo, cuando el hombre ha sido liberado de todas las formas de explotación: de la esclavitud, de la servidumbre y del capitalismo, se

alcanza la entera dignidad del ser humano; y de que nuestra Revolución elevó la dignidad de la patria y del cubano a superior altura;

**DECLARAMOS**

nuestra voluntad de que la ley de leyes de la República esté presidida por este profundo anhelo, al fin logrado, de José Martí:

**"Yo quiero que la ley primera de nuestra República sea el culto de los cubanos a la dignidad plena del hombre";**

**ADOPTAMOS**

por nuestro voto libre, mediante referendo, la siguiente:

**CONSTITUCION**.

## CAPITULO I
Fundamentos políticos, sociales y económicos del Estado

...

**ARTICULO 17**.-El Estado administra directamente los bienes que integran la propiedad socialista de todo el pueblo; o podrá crear y organizar empresas y entidades encargadas de su administración, cuya estructura, atribuciones, funciones y el régimen de sus relaciones son regulados por la ley.

Estas empresas y entidades responden de sus obligaciones sólo con sus recursos financieros, dentro de las limitaciones establecidas por la ley. El Estado no responde de las obligaciones contraídas por las empresas, entidades u otras personas jurídicas y éstas tampoco responden de las de aquél.

...

**ARTÍCULO 23.-** El Estado reconoce la propiedad de las empresas mixtas, sociedades y asociaciones económicas que se constituyen conforme a la ley. El uso, disfrute y disposición de los bienes pertenecientes al patrimonio de las entidades anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamentos propios por los que se gobiernan.

# EXHIBIT D

**COLECCIÓN LEGISLATIVA DE BOLSILLO**
[Bolsillo Legislation Collection] **Volume VII**


**CODIGO DE COMERCIO**
[Code of Commerce]

IN EFFECT IN THE REPUBLIC OF CUBA


[Followed by various Appendices

containing Supplementary Mercantile Legislation

and Banking Legislation]


REVISED AND COMPARED By

**RAFAEL RODRIGUEZ ALTUNAGA**
Fourth Edition, Substantially Corrected and Expanded


JESUS MONTERO, Editor
Obispo 521
HAVANA
1961

# CÓDIGO DE COMERCIO
[Commercial Code]

Scope

This Code was promulgated in Spain by the Law of August 22, 1885. By Royal Decree on this same date, the *Ministerio de Gracia y Justicia* [Ministry of Pardons and Justice], in compliance with said law, published the current Code of Commerce so that it may be observed as law in the Peninsula and adjacent islands, starting as of January 1, 1886. The publication of the Code began in the **Gaceta de Madrid** [Gazette of Madrid], No. 289 of October 16, 1885, and ended on end on page 648 of No. 328, for November 24 of the same year. This is a clear and careful print.

By Royal Decree of January 28, 1886 *(Gaceta de la Habana* [Gazette of Havana], of February 23), it was stipulated that this Code would govern Cuba from May 1 of this same year "without amendments than those introduced in Articles 179, 201, 453, 547, 550, 559, 798, 934 and 940."

As a sure guide as concerns the text of the *Código de Comercio,* unamended by subsequent Laws, we have seen the beautiful **Edición Oficial** [Official Edition] (1885), put out by the Spanish Government to "serve an the original for all legal purposes", as stated in Article Two of the Royal Decree of August twenty-second, 1885.

The copy in our library bears the seal of the *Ministerio de Gracia y Justicia* which grants authenticity to the text; and it was printed on November 12, 1885, by the Manuel Tello printshop, printers to the Chamber of His Majesty the King.

BOOK TWO

**ON SPECIAL CONTRACTS IN COMMERCE**

**Title One**

**ON MERCANTILE ENTERPRISES**

**SECTION ONE**

**On the Formation of Enterprises and Their Classes**

**Article 116.** - The association contract by which two or more persons agree to place goods, industry or any of these things in common to achieve profits shall be a mercantile contract, regardless of its class, provided that it was formed in accordance with the provisions of this Code.

Once formed, the Mercantile Enterprise shall be a legal personality for all its acts and contracts.

See Articles 165 et seq., 1665, 1670 et seq., 170, C. Civ. [Civil Code],

**Article 117.** - The contract of a mercantile enterprise, entered into with the essential requirements under the law, shall be valid and binding on the contracting parties, regardless of the form, conditions and licit and honest combinations that compose it, provided that they are not expressly prohibited in this Code.

The creation of territorial, agricultural, central and discount Banks, credit enterprises, mortgage enterprises, and construction enterprises shall be permitted.

**Article 122.** - As a general rule, Mercantile Enterprises shall be formed by adopting any of the following forms:

**1.** A regular association in which all partners, in the collective name and under a enterprise name, agree to participate in the proportion they establish in the same rights and obligations.

**2.** A limited association, in which one or more subjects contribute a certain amount of capital to a common fund, to participate in the results of the enterprise transactions managed exclusively by others in the collective name.

**3.** A corporation in which, by forming the common fund, the associates by shares or certain portions, represented by stock or other clear manner, entrust its management to dismissable agents or administrators who represent the Enterprise under a name appropriate to the objective or business for which the funds are intended.

See Articles 139, 145 to 150, 152, 160 etseq., C. Com. [Code of Commerce].

**Article 123.** - Depending on the nature of their operations, Mercantile Enterprises may be:

Credit enterprises, Central and discount
banks, Territorial credit enterprises,
Mining enterprises, Agricultural banks,
Holders of railway, tramway and public works licenses, General storage
warehouses,
And other types, provided that their agreements are licit and their purpose is
industry or commerce.

**Article 124.** - Mutual fire insurance enterprises, tontine life insurance combinations providing old-age assistance and any other class, and production, credit or consumption cooperatives shall be considered mercantile and **be** subject to the provisions of this Code only when they are dedicated [remainder missing from original]

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY 10025

STATE OF NEW YORK      )
                       )      ss.:
COUNTY OF NEW YORK  )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English  of  Extract from the Commercial Code of Cuba  written in  Spanish  .

New York,  January 25, 2010.

TransNet USA, Inc.

Susan E. Geddes, Vice President

Sworn to and subscribed before me on
January 25, 2010.

LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010

COLECCION LEGISLATIVA
DE BOLSILLO
Volumen VII

# CODIGO DE COMERCIO

VIGENTE EN LA REPUBLICA DE CUBA

(Seguido de varios Apéndices contentivos
de la Legislación Mercantil complementaria
y la Legislación Bancaria)

REVISADO Y CONCORDADO

por

RAFAEL RODRIGUEZ ALTUNAGA

Cuarta edición corregida y notablemente aumentada



JESUS MONTERO, Editor
Obispo 521
LA HABANA
1961



# CÓDIGO DE COMERCIO

### Su Vigencia

Este Código se promulgó en España por la Ley de agosto 22 de 1885. Por Real Decreto de esa misma fecha, el Ministro de Gracia y Justicia, en cumplimiento de esta Ley, publicó el Código de Comercio actual, para que se observe, como ley, en la Península e islas adyacentes, desde el 1º de enero de 1886. La publicación del Código se empezó en la **Gaceta de Madrid**, núm. 289 de Oct. 16 de 1885 y se terminó en la pág. 648 del núm. 328, correspondiente al día 24 de nov. del propio año. Es una impresión nítida y cuidadosa.

Por Real Decreto de 28 de enero de 1886 (Gaceta de la Habana, de 23 de febrero) se dispuso que ese Código rigiera en Cuba desde el 1 de mayo de ese mismo año "sin otras modificaciones que las introducidas en los artículos 179, 201, 453, 547, 550, 559, 798, 934 y 940".

Hemos tenido a la vista, como guía segura, en cuanto al texto del Código de Comercio, no modificado por Leyes ulteriores, la bella **Edición Oficial** (1885), hecha por el Gobierno Español para "servir de original para todos los efectos legales", según reza el artículo segundo del Real Decreto de veintidós de agosto de 1885.

El ejemplar que obra en nuestra biblioteca lleva el sello del Ministerio de Gracia y Justicia que le comunica autenticidad a su texto; —y fue impreso en 12 de noviembre de 1885 en la imprenta de Manuel Tello, impresor de Cámara de Su Majestad el Rey.



# LIBRO SEGUNDO

## DE LOS CONTRATOS ESPECIALES DEL COMERCIO

### Título Primero

## DE LAS COMPAÑIAS MERCANTILES

#### SECCION PRIMERA

### De la Constitución de las Compañías y de sus Clases

**Art. 116.**—El contrato de compañía por el cual .dos o más personas se obligan a poner en fondo común bienes, industria o alguna de estas cosas para obtener lucro, será mercantil, cualquiera que fuese su clase, siempre que se haya constituido con arreglo a las disposiciones de este Código.

Una vez constituída la Compañía mercantil, tendrá personalidad jurídica en todos sus actos y contratos.

V. arts. 165 y sigs., 1665, 1670 y sigs. 1700 C. Civ.

**Art. 117.**—El contrato de compañía mercantil celebrado con los requisitos esenciales del derecho, será válido y obligatorio entre los que lo celebren, cualesquiera que sean la forma, condiciones y combinaciones lícitas y honestas con que lo constituyan, siempre que no estén expresamente prohibidas en este Código.

Será libre la creación de Bancos territoriales, agrícolas y de emisión y descuento, de Sociedades de crédito, de préstamos hipotecarios, concesionarias de obras

CÓDIGO DE COMERCIO                    47

**Art. 122.**—Por regla general, las Compañías mercantiles se constituirán adoptando alguna de las siguientes formas:

1º  La regular colectiva en que todos los socios, en nombre colectivo y bajo una razón social, se comprometen a participar, en la proporción que establezcan de los mismos derechos y obligaciones.

2º  La comanditaria en que uno o varios sujetos aportan capital determinado al fondo común, para estar a las resultas de las operaciones sociales dirigidas exclusivamente por otros con nombre colectivo.

3º  La anónima en que formando el fondo común los asociados por parte o porciones ciertas, figuradas por acciones o de otra manera indubitada, encargan su manejo a mandatarios o administradores amovibles que representen a la Compañía bajo una denominación apropiada al objeto o empresa a que se destine sus fondos.

V. árts. 139, 145 a 150, 152, 160, sigs. C. Com.

**Art. 123.**—Por la índole de sus operaciones, podrán ser las Compañías mercantiles:

Sociedades de crédito;

Bancos de emisión y descuento;

Compañías de crédito territorial;

Compañías de minas;

Bancos agrícolas;

Concesionarias de ferrocarriles, tranvías, y obras públicas.

De almacenes generales de depósito;

Y de otras especies, siempre que sus pactos sean lícitos y su fin, la industria o el comercio.

**Art. 124.**—Las Compañías mutuas de seguros contra incendios, de combinaciones tontinas sobre la vida para auxilios a la vejez y de cualquiera otra clase y las cooperativas de producción, de crédito o de consumo, sólo se considerarán mercantiles y quedarán sujetas a las disposiciones de este Código, cuando se dedicaren



# EXHIBIT E

[emblem]
Republic of Cuba

**CÓDIGO CIVIL**
[Civil Code]

**Law** No. 59

Publication
*Ministerio de Justicia*
[Ministry of Justice]

ARTICLE 36.1 After the presumption of death is declared, the exercise of the same rights that would have belonged to them if the death had been accredited by a medical certificate shall be granted to them.

2. The effects of the declaration are retroactive to the time at which the report that led to the presumption of death was made or the last news of the missing party was heard.

ARTICLE 37. If the missing party or party presumed dead appears or is proven to exist, the court shall annul the declaration of disappearance or of presumption of death, and shall stipulate that, aside from the cases of exception established by the law, all his rights shall be restored and his goods returned in the state in which they were and at the price for those sold or acquired with it, but he may not claim the fruits thereof.

SECTION FOUR

**Rights Inherent in Personality**

ARTICLE 33. Violation of the rights inherent in personality established in the Constitution that affect the net worth or honor of its holder confers on him or his successor the right to demand:

a)      immediate cessation of the violation or elimination of its effects, if possible;

b)      retraction on the part of the offender; and

c)      reparations for the damages and harm caused.

CHAPTER II

**LEGAL PERSONS**

ARTICLE 39.1 Legal persons are entities that, owning their own assets, have the capacity to be the subjects of rights and obligations.

2.      in addition to the State, the following are legal persons:

a)      companies and unions of State companies;

b)      cooperatives;

c)      political, union and company organizations and their enterprises;

ch)     companies and associations formed in conformity with the requirements established by law;

d)      foundations, this being understood to mean the set of goods created as separate net worth by an act of charity by the party who was their owner, to dedicate them to the achievement of a certain end permitted by law with a not-for-profit purpose, and formed in accordance with the requirements established by law;

e)      non-State companies authorized to conduct their activities; and

f)      other entities to which the law confers legal personality.

ARTICLE 40.1 The formation, government and dissolution of legal persons shall be established and regulated by law, their Charters and regulations.

2.      The organization and operation of the State shall be as established in the Constitution of the Republic and in the laws.

ARTICLE 41. Legal persons, to conduct their activities, shall have the capacity determined by the law, their Charters and regulations.

ARTICLE 42.1 Legal persons shall conduct their activities by means of their legally appointed or elected administrative organs.

2.      The procedure for the appointment or election of the administrative organs shall be established in their Charters or regulations and in the corresponding legal provisions. In the case of the State, Paragraph 2 of Article 40 shall apply.

3.      The actions performed by such bodies in relation to the activities of the legal person shall be binding on it.

4.      For damages caused to the legal person or to a third party due to the negligent management of its organs, the perpetrators shall also personally answer for it.

ARTICLE 43. The domicile of legal persons shall be that determined in the legal provisions creating them, in the Charters or regulations and, in the absence thereof, the location where its legal representation is established or its higher administrative organ is located.

ARTICLE 44.1 Legal persons answer for their obligations with the goods making up their net worth.

2.      The net worth of State companies shall be made up of the basic, turnover and financial resources assigned to them by the State. These companies shall answer for their obligations with their financial resources, within the limits established in the economic legislation.

3.      The State is not responsible for the obligations of other legal persons, nor are the latter responsible for the debts of the State.

TITLE III

**SUBJECT OF THE LEGAL RELATION**

ARTICLE 45.1. The subject of the legal relation is a piece of property, a service or an asset that was acquired or received licitly.

SECTION SIX

**Other Forms of Ownership**

ARTICLE 160.1. The State shall also recognize the property of companies, associations and foundations.

2.      Likewise, the State shall recognize the property of mixed companies, joint and international companies and of other legal persons of special natures.

3.      The use, enjoyment and disposition of the goods of entities referred to in the preceding paragraphs are governed by the provisions of the law and treaties as well as by the Charters and regulations of the respective legal person and, as a supplement, by this Code.

CHAPTER III

**CO-OWNERSHIP**

SECTION ONE

**General Provision**

ARTICLE 161. The ownership of one and the same item that is not materially divided may belong to several persons, by shares or in common.

SECTION TWO

**Co-Ownership by Shares**

ARTICLE 162.1. The portions or shares of the co-owners in the value of the undivided item shall be presumed to be equal.

2. Each of the co-owners shall have rights and obligations in proportion to their respective shares and may dispose of their share without the consent of the others, within the limits established by law.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY  10025

STATE OF NEW YORK     )
                      )     ss.:
COUNTY OF NEW YORK  )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into _English_ of _Extract from the Civil Code of Cuba_ written in _Spanish_.

New York,  January 25, 2010.

TransNet USA, Inc.

Susan E. Geddes, Vice President

Sworn to and subscribed before me on
January 25, 2010.

LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010



República de Cuba

# CODIGO CIVIL

## Ley No. 59



Divulgación
Ministerio de Justicia

ARTICULO 36.1.  Declarada la presunción de muerte, queda expedito para los interesados el ejercicio de los mismos derechos que les hubieran correspondido de ser la muerte acreditada por certificación médica.

2. Los efectos de la declaración se retrotraen al momento en que se produjo el acontecimiento que hizo presumir la muerte o se tuvieron las últimas noticias del desaparecido.

ARTICULO 37.  Si el declarado ausente o presuntamente muerto se presenta o se prueba su existencia, el tribunal anula la declaración de ausencia o presunción de muerte y dispone que, salvo los casos de excepción que establece la ley, se le restituya en todos sus derechos, y recobre sus bienes en el estado en que se encuentren y el precio de los enajenados o los adquiridos con él, pero no podrá reclamar frutos.

### SECCION CUARTA
#### Derechos inherentes a la personalidad

ARTICULO 38.  La violación de los derechos inherentes a la personalidad consagrados en la Constitución, que afecte al patrimonio o al honor de su titular, confiere a éste o a sus causahabientes la facultad de exigir:

a) el cese inmediato de la violación o la eliminación de sus efectos, de ser posible;

b) la retractación por parte del ofensor; y

c) la reparación de los daños y perjuicios causados.

### CAPITULO II
#### PERSONAS JURIDICAS

ARTICULO 39.1.  Las personas jurídicas son entidades que, poseyendo patrimonio propio, tienen capacidad para ser sujetos de derechos y obligaciones.

15



2. Son personas jurídicas, además del Estado:

a) las empresas y uniones de empresas estatales;

b) las cooperativas;

c) las organizaciones políticas, de masas, sociales y sus empresas;

ch) las sociedades y asociaciones constituidas de conformidad con los requisitos establecidos en las leyes;

d) las fundaciones, entendiéndose por tales el conjunto de bienes creado como patrimonio separado por acto de liberalidad del que era su propietario, para dedicarlos al cumplimiento de determinado fin permitido por la ley sin ánimo de lucro, y constituidas de conformidad con los requisitos establecidos en las leyes;

e) las empresas no estatales autorizadas para realizar sus actividades; y

f) las demás entidades a las que la ley confiere personalidad jurídica.

ARTICULO 40.1. La constitución, régimen y disolución de las personas jurídicas se establecen y regulan en la ley, sus estatutos y reglamentos.

2. La organización y el funcionamiento del Estado son los que se establecen en la Constitución de la República y en las leyes.

ARTICULO 41. Las personas jurídicas, para ejercer sus actividades, tienen la capacidad que determinen la ley y sus estatutos o reglamentos.

ARTICULO 42.1. Las personas jurídicas realizan sus actividades por medio de sus órganos de dirección legalmente designados o elegidos.

16

2. El procedimiento para la designacion o elección de los órganos de dirección, se establece en sus estatutos o reglamentos y en las disposiciones legales correspondientes. En el caso del Estado se está a lo dispuesto en el apartado 2 del artículo 40.

3. Los actos realizados por dichos órganos en relación con las actividades de la persona jurídica, obligan a ésta.

4. Por los daños ocasionados a la persona jurídica o a tercero a causa de la gestión negligente de sus órganos, responden, además, personalmente, sus autores.

ARTICULO 43. El domicilio de las personas jurídicas es el determinado en la disposición legal que las crea, en sus estatutos o reglamentos y, en su defecto, el lugar donde esté establecida su representación legal o radique su órgano superior de dirección.

ARTICULO 44.1. Las personas jurídicas responden de sus obligaciones con los bienes que integran su patrimonio.

2. El patrimonio de las empresas estatales está integrado por los medios básicos, de rotación y financieros que les asigna el Estado. Estas empresas sólo responden de sus obligaciones con sus recursos financieros, dentro de las limitaciones establecidas en la legislación económica.

3. El Estado no responde de las obligaciones de otras personas jurídicas, ni éstas de las de aquél.

TITULO III

**OBJETO DE LA RELACION JURIDICA**

ARTICULO 45.1. El objeto de la relación jurídica es un bien, una prestación o un patrimonio, que sean de lícita apropiación o recepción.

17



### SECCION SEXTA

**Otras formas de propiedad**

ARTICULO 160.1.   El Estado reconoce también la propiedad de las sociedades, asociaciones y fundaciones.

2. Asimismo, reconoce la de las empresas mixtas, conjuntas e internacionales y de otras personas jurídicas de características especiales.

3. El uso, disfrute y disposición de los bienes de las entidades a que se refieren los apartados anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamento de la persona jurídica respectiva y, supletoriamente, por este Código.

### CAPITULO III

**COPROPIEDAD**

### SECCION PRIMERA

**Disposición general**

ARTICULO 161.   La propiedad de un mismo bien que no está materialmente dividido puede pertenecer a varias personas, por cuotas o en común.

### SECCION SEGUNDA

**Copropiedad por cuotas**

ARTICULO 162.1.   Las partes o cuotas de los copropietarios sobre el valor del bien indiviso, se presumen iguales.

2. Cada uno de los copropietarios tiene derechos y obligaciones en proporción a su respectiva cuota y puede disponer de su parte sin el consentimiento de los demás, con las limitaciones que la ley establece.

**48**

