## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NILO JEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:09-mc-466 |
| | ) | |
| THE REPUBLIC OF CUBA, FIDEL CASTRO | ) | |
| RUZ, Individually and as President of the State | ) | |
| and Council of Ministers, Head of the | ) | |
| Communist Party and Commander-in-Chief of | ) | |
| the Military, RAUL CASTRO RUZ, | ) | |
| Individually and as First Vice President of the | ) | |
| Head of the Cuban Revolutionary Armed | ) | |
| Forces, THE CUBAN REVOLUTIONARY | ) | |
| ARMED FORCES, and EL MINISTERIO DEL | ) | |
| INTERIOR, | ) | |
| | ) | |
| Defendants. | ) | |

I, **JUAN MENDOZA DIAZ**, adult, by the present document certify the following:

1.     I am the Vice Dean and Titled Professor of the Faculty of law of the University of Havana in Havana, Cuba. I received my degree in law from the University of Havana in 1981 and my Masters degree in Procedural Law from the University of Valencia, Spain, in 1999.  In 2002, I received my Degree as Doctor of Juridical Sciences from the University of Havana. I have been a member of the Ibero-American Institute of Procedural Law since 2002, and was elected President of Cuban Society of Procedural Law in the same year. I have published numerous articles and books on Cuban law. I have practiced as a lawyer since 1981, and since 2003 I have served as a judge of the International Court of Arbitration of the Chamber of Commerce of Cuba. I attach to this legal opinion a copy of my curriculum vitae.

2.     I have been asked by Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C. to provide a legal opinion on Cuban law related to the status of Cuban state enterprises, shareholder companies and mixed enterprises. I have agreed to do this

because it is the practice in Cuba for professors of the law faculties to provide expert testimony on Cuban law. In addition, pursuant to the practice in Cuba, I do this free of charge.

3.      Under Cuban law, there are three primary types of companies: empresas estatales (state enterprises), sociedades anonimas (shareholder companies), and empresas mixtas (mixed enterprises), which are sociedades anomimas in which both Cuban and foreign parties are shareholders. Each type of company has its own legal personality, distinct from the Cuban State, and each has its own assets, with which it carries out its business activities. The directors and officers of each of these forms of enterprise are responsible for and direct the day to day activities of the enterprise.

4.      Article 39.1 of the Cuban Civil Code, which went into force in 1988, states that all entities with legal personality possess their own patrimony and are subject to rights and obligations. Article 39.2 of this Code defines the entities that have legal personality, in addition to the State. Among those defined as having independent legal personality are "empresas" (enterprises), "sociedades" (companies) and associations constituted according to the requisites established in the laws, authorized non-state enterprises in order to carry out their activities, and other entities upon which the law confers legal personality. A true and correct copy of Article 39.1 of the Cuban Civil Code, with a translation to English, is attached hereto as Exhibit A.

5.      In 1979, the Council of Ministers adopted Decree No. 42 of May 24, 1979, entitled "Regulation of the State Enterprise," which established the general norms for the regulation of state enterprises, setting forth the procedure for the creation, organization, assignment and dissolution of these enterprises. It states the following in Article 1: "The state enterprise is an economic entity with its own legal personality". Article 16 of the same norm states: "The Resolution creating the Enterprise must contain...[a] declaration of its legal personality and its independent liability". This 1979 Decree and the Norms on the Union and State Enterprises, issued in 1988 by Accord No. 2258 of the Executive Committee of the Council of Ministers of the State, provide that state enterprises function independently with their own administrative council, composed of officers and the heads of departments named by the Director of the enterprise. *See* Articles 78 and 79 of Decree 42, and Articles 21 and 23 of the 1988 norms. A true and correct copy of the

aforementioned articles of Decree 42 and the 1988 norms, with a translation to English, are attached hereto as Exhibit B.

6.     Article 44.2 of the Civil Code states that the "State is not liable for the obligations of other legal persons, and the latter are not liable for those of the former." This principle has been given constitutional rank and is incorporated into Article 17 of the Constitution, as amended in 1992, which states "The State is not liable for the obligations contracted by enterprises, entities or other legal persons and these are not liable for those of the State". A true and correct copy of Article 17 of the Constitution of the Republic of Cuba, with a translation to English, is attached hereto as Exhibit C.

7-     Article 4 of the Norms on the Union and State Enterprises provides that the enterprises "are not liable for the obligations of the State, its organs and its central and local organisms, and the latter are not liable for the obligations of the former". As set forth in Decree-Law No. 67 (April 19, 1983), Article 2, the entities and bodies that make up the Central Administration of the State are the Council of Ministers and its Executive Committee, as well as the "organos" and "organismos" (organs and bodies) of the Central Administration of the State, which are defined in Article 22 as the State Committees, the Ministries and Institutes. An Institute is considered a part of the Central Administration of the State when its head belongs to the Council of Ministers, such as the National Housing Institute. A true and correct copy of Articles 2 and 22 of Decree-Law 67 of 1983, with a translation to English, are attached hereto as Exhibit D. None of the Institutes as defined in Article 22 as belonging to the Central Administration of the State are enterprises or companies.

8.     Companies constituted and owned by shareholders are known in Cuban law (and civil law generally) as *sociedades anónimas*. Pursuant to the Cuban Commercial Code, these corporations are formed by shareholders who contribute assets to form the assets of the corporation. See Article 116. The *sociedades anonimas* are governed by their own "statutes" (roughly the equivalent of Articles of Incorporation in U.S. law) and regulations. *Id.* Their Board of Shareholders designates the directors of the *sociedades anónimas*, who are responsible for the day to day operations of the company. The letters "S.A." appearing after the commercial name of an enterprise in Cuba signify that it has been constituted as a *sociedad anónima* and is registered as such in the commercial registry. The current

Commercial Code of Cuba was enacted in Spain on August 22, 1885, and was extended to Cuba by Royal Decree on January 28, 1886, being enacted on May 1, 1886. A true and correct copy of the aforementioned articles of the Commercial Code of Cuba, with a translation to English, is enclosed as Exhibit E.

9.   Under Cuban law, a *sociedad anonima* is not part of the State. It is not an "organ" or "organism" of the State. See paragraph 5, above. It has no sovereign or governmental authority.

10.   *Sociedades anonimas* hire the employees that work for that company. These employees are not employees of the government nor are they considered public employees.

11.   Empresas mixtas (mixed enterprises) are companies whose shares are owned by both Cuban and foreign parties. Habanos, S.A. is such a company. I have reviewed the declaration of Adargelio Garrido de La Grana, dated January 15, 2010, being submitted in this lawsuit. I confirm that its statement of Cuban law is correct.

12.   Article 23 of the Constitution of the Republic of Cuba gives constitutional recognition and protection to the property of empresas mixtas (mixed enterprises), sociedades anomimas (shareholder companies) and asociaciones economicas (economic associations) constituted in conformity with the law. Article 23 further states, with respect to these entities that "the use, enjoyment and disposition of assets belonging to the patrimony of the entities mentioned above are governed by what is established in the law and treaties, as well as by their own statutes and regulations that govern them." A true and correct copy of Article 23 of the Cuban Constitution, with a translation to English, is attached hereto as Exhibit C.

Executed on the 22 day of January, 2010

_____

JUAN MENDOZA DIAZ

CURRICULUM VITAE
DR. JUAN MENDOZA DIAZ

PERSONAL DATA:
Juan Mendoza Díaz, 49 years old, married, father of one daughter.

CURRENT RESPONSIBILITIES:
- Vice Dean of Academia Studies of the Faculty of Law of the University of Havana.
- Vice President of the Nacional Union of Cuban Jurists.

ADACEMIC DEGREES:
- Diploma in Law from the University of Havana (1981).
- Masters in Law from the University of Valencia, Spain (1999).
- Specialist in Law from the University of Havana (Master) 2001.
- Doctorate in Law from the University of Havana (2002).

MEMBERSHIP IN NATIONAL AND INTERNATIONAL INSTITUTIONS
- Memeber of the Iberoamerican Institute of Procedural Law.
- Member of the *Inter-American Bar Association*.
- Member of the Cuban Society of Civil and Family Law.
- Member of the Cuban Society of Law and Informatics.
- Member of the Advisory Commission of the Institute of Development and Research of Law of the Attorney General of the Republic of Cuba.

EXPERIENCE AND TEACHING TITLES:
- Titled Professor of Procedural law of the Faculty of Law of the University of Havana from 2002 until the present.
- Professor of the Faculty of Law of the University of Havana, full time since 1994.
- Associate Professor of the Faculty of Law of the University of Havana, from 1985 (part time).
- Professor of Post Graduate Courses of the Faculty of Law of the University of Havana since 1994.
- Principle Professor of Procedural Law in the Specialty of Criminal Law that the University of Havana imparts to judges, prosecutors and lawyers of the Republic of Cuba, since 1996 to the present.
- Professor of Procedural law en the Masters program in Criminal Law that the University of Havana gives at the Universities of San Andrés, Juan Misael Saracho, San

Simón and San Francisco Javier, all of the Republic of
Bolivia, from 1998 to the present.

PROFESSIONAL EXPERIENCE:
- I have practicad law as a litigating attorney from 1981
  until the present; I have participated in various
  judicial processes of nacional importante.
- Judge of the International Court of Arbitration of the
  Chamber of Commerce of the Republic of Cuba.
- Director of the School of Social Work for the Course
  2003-04
- Director of various Collective Law Firms from 1984 to
  1989.
- Secretary General of the Board of Directors of the
  National Organization of Collective Law Firms from 1990-
  95.
- Delegate to the National Assembly of the Collective Law
  Firms in the periods 1985-90, 1990-95 and 1995-00.

PARTICIPATION IN INTERNATIONAL SCIENTIFIC EVENTS:
(As a panelist or presenter) (last five years)
- Seminal on Elections and Human Rights in Cuba and Latin
  America, 1999. Organizad by the Interamerican Institute
  of Human Rights in Costa Rica.
- Second International Scientific Symposium on the Cuban
  Notary. Cuba, 1999.
- XII Conference of Law Faculties, Schools and Institutes
  of Latin America. Colombia, 1999.
- International Seminar on new forms of conflict
  resolution. Cuba, 1999.
- Internacional Seminal on the Process for the Execution
  of Judgements. Cuba, 1999. Organized by the National
  Chamber of *Huissiers des Justice* of France
- IV Consultative Meeting on the Post Graduate in
  Iberoamerica. Salamanca, Spain, 1999.
- Congress of TRIANA (German-Latin American Association of
  Jurists). Cuba, 1999.
- International Scientific Symposium on Criminal Law and
  the challenges for the New Milenium. La Paz, Bolivia,
  1999.
- Internacional Congreso of PENAL SCIENCES, Cuba, 2000
- Juridical Conference of the Nacional Organization of
  Bufetes Colectivos. Cuba, 1999, 2000 y 2001
- Internacional Seminar: Internacional Law of Comerse and
  Investments in the Global Economy. Cuba 2000. Organizad
  by the World Association of Jurists.
- Congress of the Latin American Studies Association
  (LASA). Miami, 2000.

- Congress of the Latin American Studies Association (LASA). Washington, 2001.
- Legal Conference Cuba-USA, Miami, 2001. Organized by the *Cuban Research Institute* of the Florida International University and the *US/Cuba Legal Forum, Inc.*
- First International Congress of Justice and Law, organized by the Supreme Court of Cuba, 2002.
- International Conference of Penal Sciences, Havana 2004.

BOOKS AND ARTICLES PUBLISHED:
- The Practice of Law in Cuba. Editora ONBC. Havana, 1993.
- The Ordinary Process of Knowledge. Positions of the Defendant. Editora CIABO. Havana, 2000.
- Lessons of the Law of Criminal Procedural. Ediciones Universitaria, University Juan Misael Saracho, Bolivia, 2000.
- Lessons in the Law of Civil Procedure. Editorial Félix Varela, Havana, 2001.
- *Social Work. Development and Practice in Cuba and in the USA.* Cuban American Alliance Education Fund, Inc. Washington, 2002 (coautor).
- Numerous articles Published in the *Revista Cubana de Derecho* (Cuba), *Enfoques juridicos de abogados cubanos* (Cuba), *Revista Agora* (Spain), *Resolucion alternativa de conflictos* (Argentina), and *Revista de la Camara Nacional de Huissieres de Justicia* (France).

# EXHIBIT A

[emblem]
Republic of Cuba

**CÓDIGO CIVIL**
[Civil Code]

**Law** No. 59

Publication
*Ministerio de Justicia*
[Ministry of Justice]

ARTICLE 36.1 After the presumption of death is declared, the exercise of the same rights that would have belonged to them if the death had been accredited by a medical certificate shall be granted to them.

2. The effects of the declaration are retroactive to the time at which the report that led to the presumption of death was made or the last news of the missing party was heard.

ARTICLE 37. If the missing party or party presumed dead appears or is proven to exist, the court shall annul the declaration of disappearance or of presumption of death, and shall stipulate that, aside from the cases of exception established by the law, all his rights shall be restored and his goods returned in the state in which they were and at the price for those sold or acquired with it, but he may not claim the fruits thereof.

SECTION FOUR

**Rights Inherent in Personality**

ARTICLE 33. Violation of the rights inherent in personality established in the Constitution that affect the net worth or honor of its holder confers on him or his successor the right to demand:

a)      immediate cessation of the violation or elimination of its effects, if possible;

b)      retraction on the part of the offender; and

c)      reparations for the damages and harm caused.

CHAPTER II

**LEGAL PERSONS**

ARTICLE 39.1 Legal persons are entities that, owning their own assets, have the capacity to be the subjects of rights and obligations.

2.      in addition to the State, the following are legal persons:

a)      companies and unions of State companies;

b)      cooperatives;

c)      political, union and company organizations and their enterprises;

ch)     companies and associations formed in conformity with the requirements established by law;

d)      foundations, this being understood to mean the set of goods created as separate net worth by an act of charity by the party who was their owner, to dedicate them to the achievement of a certain end permitted by law with a not-for-profit purpose, and formed in accordance with the requirements established by law;

e)      non-State companies authorized to conduct their activities; and

f)      other entities to which the law confers legal personality.

ARTICLE 40.1 The formation, government and dissolution of legal persons shall be established and regulated by law, their Charters and regulations.

2.     The organization and operation of the State shall be as established in the Constitution of the Republic and in the laws.

ARTICLE 41. Legal persons, to conduct their activities, shall have the capacity determined by the law, their Charters and regulations.

ARTICLE 42.1 Legal persons shall conduct their activities by means of their legally appointed or elected administrative organs.

2.      The procedure for the appointment or election of the administrative organs shall be established in their Charters or regulations and in the corresponding legal provisions. In the case of the State, Paragraph 2 of Article 40 shall apply.

3.      The actions performed by such bodies in relation to the activities of the legal person shall be binding on it.

4.      For damages caused to the legal person or to a third party due to the negligent management of its organs, the perpetrators shall also personally answer for it.

ARTICLE 43. The domicile of legal persons shall be that determined in the legal provisions creating them, in the Charters or regulations and, in the absence thereof, the location where its legal representation is established or its higher administrative organ is located.

ARTICLE 44.1 Legal persons answer for their obligations with the goods making up their net worth.

2.      The net worth of State companies shall be made up of the basic, turnover and financial resources assigned to them by the State. These companies shall answer for their obligations with their financial resources, within the limits established in the economic legislation.

3.      The State is not responsible for the obligations of other legal persons, nor are the latter responsible for the debts of the State.

TITLE III

**SUBJECT OF THE LEGAL RELATION**

ARTICLE 45.1. The subject of the legal relation is a piece of property, a service or an asset that was acquired or received licitly.

SECTION SIX

**Other Forms of Ownership**

ARTICLE 160.1. The State shall also recognize the property of companies, associations and foundations.

2.    Likewise, the State shall recognize the property of mixed companies, joint and international companies and of other legal persons of special natures.

3.    The use, enjoyment and disposition of the goods of entities referred to in the preceding paragraphs are governed by the provisions of the law and treaties as well as by the Charters and regulations of the respective legal person and, as a supplement, by this Code.

CHAPTER III

**CO-OWNERSHIP**

SECTION ONE

**General Provision**

ARTICLE 161. The ownership of one and the same item that is not materially divided may belong to several persons, by shares or in common.

SECTION TWO

**Co-Ownership by Shares**

ARTICLE 162.1. The portions or shares of the co-owners in the value of the undivided item shall be presumed to be equal.

2. Each of the co-owners shall have rights and obligations in proportion to their respective shares and may dispose of their share without the consent of the others, within the limits established by law.

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY  10025

STATE OF NEW YORK   )
                     )   ss.:
COUNTY OF NEW YORK  )

## **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into _English_ of _Extract from the Civil Code of Cuba_ written in _Spanish_.

New York,  January 25, 2010.

TransNet USA, Inc.

_____
Susan E. Geddes, Vice President

Sworn to and subscribed before me on
January 25, 2010.

LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010



República de Cuba

# CODIGO CIVIL

## Ley No. 59



Divulgación
Ministerio de Justicia

ARTICULO 36.1.   Declarada la presunción de muerte, queda expedito para los interesados el ejercicio de los mismos derechos que les hubieran correspondido de ser la muerte acreditada por certificación médica.

2. Los efectos de la declaración se retrotraen al momento en que se produjo el acontecimiento que hizo presumir la muerte o se tuvieron las últimas noticias del desaparecido.

ARTICULO 37.   Si el declarado ausente o presuntamente muerto se presenta o se prueba su existencia, el tribunal anula la declaración de ausencia o presunción de muerte y dispone que, salvo los casos de excepción que establece la ley, se le restituya en todos sus derechos, y recobre sus bienes en el estado en que se encuentren y el precio de los enajenados o los adquiridos con él, pero no podrá reclamar frutos.

### SECCION CUARTA
#### Derechos inherentes a la personalidad

ARTICULO 38.   La violación de los derechos inherentes a la personalidad consagrados en la Constitución, que afecte al patrimonio o al honor de su titular, confiere a éste o a sus causahabientes la facultad de exigir:

a) el cese inmediato de la violación o la eliminación de sus efectos, de ser posible;

b) la retractación por parte del ofensor; y

c) la reparación de los daños y perjuicios causados.

### CAPITULO II
#### PERSONAS JURIDICAS

ARTICULO 39.1.   Las personas jurídicas son entidades que, poseyendo patrimonio propio, tienen capacidad para ser sujetos de derechos y obligaciones.

15



2. Son personas jurídicas, además del Estado:

a) las empresas y uniones de empresas estatales;

b) las cooperativas;

c) las organizaciones políticas, de masas, sociales y sus empresas;

ch) las sociedades y asociaciones constituidas de conformidad con los requisitos establecidos en las leyes;

d) las fundaciones, entendiéndose por tales el conjunto de bienes creado como patrimonio separado por acto de liberalidad del que era su propietario, para dedicarlos al cumplimiento de determinado fin permitido por la ley sin ánimo de lucro, y constituidas de conformidad con los requisitos establecidos en las leyes;

e) las empresas no estatales autorizadas para realizar sus actividades; y

f) las demás entidades a las que la ley confiere personalidad jurídica.

ARTICULO 40.1.  La constitución, régimen y disolución de las personas jurídicas se establecen y regulan en la ley, sus estatutos y reglamentos.

2. La organización y el funcionamiento del Estado son los que se establecen en la Constitución de la República y en las leyes.

ARTICULO 41.  Las personas jurídicas, para ejercer sus actividades, tienen la capacidad que determinen la ley y sus estatutos o reglamentos.

ARTICULO 42.1.  Las personas jurídicas realizan sus actividades por medio de sus órganos de dirección legalmente designados o elegidos.

16

2. El procedimiento para la designacion o elección de los órganos de dirección, se establece en sus estatutos o reglamentos y en las disposiciones legales correspondientes. En el caso del Estado se está a lo dispuesto en el apartado 2 del artículo 40.

3. Los actos realizados por dichos órganos en relación con las actividades de la persona jurídica, obliga a ésta.

4. Por los daños ocasionados a la persona jurídica o a tercero a causa de la gestión negligente de sus órganos, responden, además, personalmente, sus autores.

ARTICULO 43.   El domicilio de las personas jurídicas es el determinado en la disposición legal que las crea, en sus estatutos o reglamentos y, en su defecto, el lugar donde esté establecida su representación legal o radique su órgano superior de dirección.

ARTICULO 44.1.   Las personas jurídicas responden de sus obligaciones con los bienes que integran su patrimonio.

2.   El patrimonio de las empresas estatales está integrado por los medios básicos, de rotación y financieros que les asigna el Estado. Estas empresas sólo responden de sus obligaciones con sus recursos financieros, dentro de las limitaciones establecidas en la legislación económica.

3.   El Estado no responde de las obligaciones de otras personas jurídicas, ni éstas de las de aquél.

### TITULO III
### OBJETO DE LA RELACION JURIDICA

ARTICULO 45.1.   El objeto de la relación jurídica es un bien, una prestación o un patrimonio, que sean de lícita apropiación o recepción.

17



SECCION SEXTA

**Otras formas de propiedad**

ARTICULO 160.1.   El Estado reconoce también la propiedad de las sociedades, asociaciones y fundaciones.

2. Asimismo, reconoce la de las empresas mixtas, conjuntas e internacionales y de otras personas jurídicas de características especiales.

3. El uso, disfrute y disposición de los bienes de las entidades a que se refieren los apartados anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamento de la persona jurídica respectiva y, supletoriamente, por este Código.

### CAPITULO III

### COPROPIEDAD

SECCION PRIMERA

**Disposición general**

ARTICULO 161.   La propiedad de un mismo bien que no está materialmente dividido puede pertenecer a varias personas, por cuotas o en común.

SECCION SEGUNDA

**Copropiedad por cuotas**

ARTICULO 162.1.   Las partes o cuotas de los copropietarios sobre el valor del bien indiviso, se presumen iguales.

2. Cada uno de los copropietarios tiene derechos y obligaciones en proporción a su respectiva cuota y puede disponer de su parte sin el consentimiento de los demás, con las limitaciones que la ley establece.

48



**EXHIBIT B**

**LEGAL DEPARTMENT**

**DECREE No. 42**

**GENERAL REGULATIONS FOR STATE COMPANY** (LOCAL SUBORDINATION)

**CHAPTER I**

**GENERAL PROVISIONS**

**ARTICLE 1.** A state company is an economic entity with legal standing of its own which functions as a primary link in the economy, and as such, forms the base for the complex system of relationships comprising the national economy.

**...**

**CHAPTER II**

**CREATION AND EXTINCTION OF COMPANIES**

**...**

**ARTICLE 16.** The resolution creating a company must specify:

    a) Its corporate name and domicile.

    b) A statement of legal standing and of its independent responsibility and liability.

    c) The State Central Administration Agency or Local Popular Power Body to which the company is directly subordinate.

    Ch) The establishments which compose it, when it consists of two or more thereof.

    d) The company's purpose.

    e) The allocation of the basic minimum resources, turnover resources, and financial resources which make up its equity.

    f) The other regulations which may be appropriate in accordance with the company's particular characteristics, provided they are not inconsistent with currently applicable provisions of law.

**...**

**CHAPTER IV**
**THE CORPORATION'S ACTIVITY**

**...**

**CHAPTER V**

**MANAGEMENT OF THE CORPORATION**

...

**ARTICLE 78.** The company exercises the rights emanating from its economic activity through its director and in accordance with its structure, through other corporate executives, and in the cases provided for in the legislation, through a collective management with the Labor Union Bureau or Section's participation.

**ARTICLE 79.** Among the powers, authorities, and duties pertaining to the Company's director are the following:

a)  Orient, direct, and monitor the process of drafting the Company Plan, in accordance with the figures and standards which are adopted for it, sign the draft plan and send it to the appropriate superior body for its approval, and take all necessary actions to ensure the Plan's fulfillment once it has been approved.

b)  Encourage the workers' active participation in the company's management and in the drafting and implementation of the Plan.

c)  Apply the company's organizational structure in accordance with the currently applicable provisions of law.

Ch)  Sign collective bargaining agreements with the appropriate labor union organization.

d)  Designate and remove the management personnel in accordance with the executive policy and the currently applicable legislation.

e)  Hire workers in accordance with the plan approved for the corporation.

f)  Comply with and enforce the currently applicable legislation.

g)  Sign the necessary documents in the corporation's name and representation, without said action in any way implying undertakings which might exceed the limits specified in the company's plans or preventing the fulfillment of its obligations.

h)  Represent the company in its relations with the superior body, other agencies, organizations, and other companies and Budgeted Units.

i)  Decide on the leasing of idle basic means as prescribed in the existing regulations.

j)  Negotiate Contracts with other agencies and corporations, and discuss and reach agreement on the amendments thereto which arise in practice. Likewise, take the necessary actions to sell off residues or products made therefrom, as prescribed in Article 55 of these Regulations.

k)  Be accountable on behalf of the corporation for all the provisions of contracts in being.

l)  Demand the performance of contracts in being.

ll) Open and close bank accounts, in accordance with the established regulations.

m) Pledge corporate assets, when appropriate in accordance with the currently applicable provisions of law.

n) See to the workers' political-ideological development and foster their participation in the activities which are planned for that purpose.

ñ) Demand the examination and solution of any of the company's issues which are taken up by any other its executive or worker.

o) The other powers, authorities, and duties which are expressly assigned to his agency or superior organ and are required to fulfill the company's objectives.

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK   )
                           )     ss
COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of *Excerpts from Decree 42*, completed on 1/22/10, originally written in Spanish.

Christine Muller
Vice President
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

CHRIS SULLIVAN
Notary Public, State of New York
No. 01SU6146597
Qualified in Kings County
Commission Expires May 22, 2010

## DISPOSICIONES FINALES

PRIMERA: Se autoriza al Ministro del Interior para dictar las instrucciones que fueren necesarias para el mejor cumplimiento de lo dispuesto en este Decreto-Ley.

SEGUNDA: Se derogan el Artículo 119 del Decreto-Ley número 2037, de 27 de enero de 1955, Código del Tránsito, tal como ha sido modificado por la Ley número 920, de 31 de diciembre de 1960 y los Artículos 2, 3, 4, 5, 6 y 7 de la propia Ley número 920, de 31 de diciembre de 1960, y cuantas más disposiciones legales y reglamentarias se opongan al cumplimiento de lo que por el presente Decreto-Ley se dispone.

TERCERA: El presente Decreto-Ley comenzará a regir a partir de la fecha de su publicación en la Gaceta Oficial de la República.

DADO en el Palacio de la Revolución, en la Ciudad de La Habana, a 30 de mayo de 1979.

                                    Fidel Castro Ruz

El Consejo de Estado de la República de Cuba, al amparo de lo dispuesto en el Artículo 23 de la Ley número 3, Ley de los Tribunales Militares, de fecha 8 de agosto de 1977 procedió a elegir, a propuesta del Ministro de Justicia, a los Jueces profesionales de los Tribunales Militares de Guarniciones, resultando electos en Servicio Militar Activo en las Fuerzas Armadas Revolucionarias.

Mayor de Justicia José Manuel González Pérez

Teniente de Justicia Ada Magdalena Delgado Valdés

Teniente de Justicia Roberto Estévez Valladares

Teniente de Justicia Juan Francisco Gutiérrez Reyes

Teniente de Justicia Alberto Quirino Zamora González

Teniente de Justicia Manuel Idelfonso Nieto Garriga

Subteniente de Justicia Jorge Buenaventura Arencibia Rodulfo

Subteniente de Justicia Oscar Francisco Roque Herrera

DADO en el Palacio de la Revolución, en la Ciudad de La Habana, a 23 de mayo de 1979.

                                    Fidel Castro Ruz
                                    Presidente del Consejo
                                    de Estado

El Consejo de Estado de la República de Cuba, al amparo de lo dispuesto en el Artículo 30 de la Ley número 3, Ley de los Tribunales Militares, de fecha 8 de agosto de 1977, a propuesta del Ministro de Justicia, procedió a declarar vacantes los cargos de Jueces profesionales de los Tribunales Militares de Guarniciones, electos con fecha 20 de febrero de 1978, ocupados por los compañeros que a continuación se relacionan, por haber dejado de tener la condición de oficiales del Servicio Militar Activo en las Fuerzas Armadas Revolucionarias al haber sido licenciados y pasar a la Reserva Militar.

Teniente de Justicia José Ramón González Agüeruche

Teniente de Justicia Rubén González del Pino Loyola

Teniente de Justicia Hortensia Rodríguez Pérez

Teniente de Justicia Luis Ramón Poyato Hidalgo

Subteniente de Justicia Oraldo González Peña.

DADO en el Palacio de la Revolución, en la Ciudad de La Habana, a 23 de mayo de 1979.

                                    Fidel Castro Ruz
                                    Presidente del Consejo
                                    de Estado

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## CONSEJO DE MINISTROS

### DECRETO NUMERO 42

POR CUANTO: El Artículo 2 del Decreto-Ley número 24 de fecha 15 de mayo de 1979 encarga al Consejo de Ministros, y en su caso a su Comité Ejecutivo, dictar el Reglamento General de la Empresa Estatal.

POR TANTO: En uso de las facultades que le están conferidas, el Comité Ejecutivo del Consejo de Ministros decreta el siguiente:

### REGLAMENTO GENERAL DE LA EMPRESA ESTATAL

#### CAPITULO I

#### DISPOSICIONES GENERALES

ARTICULO 1.—La empresa estatal es una entidad económica con personalidad jurídica propia, que constituye el eslabón primario de la economía y, como tal, la base del complejo sistema de relaciones de la economía nacional.

ARTICULO 2.—Atendiendo a las características de la actividad económica, la Empresa puede estar formada por uno o varios centros de producción o servicios, denominados establecimientos.

En la empresa puede crearse un nivel de dirección intermedio en uno o varios de sus establecimientos, o para un grupo de establecimientos, cuando la complejidad de la actividad técnico-productiva o de servicios que presta la empresa, o las características de la ubicación territorial de sus establecimientos, así lo requiera. La Junta Central de Planificación establece el procedimiento para la creación, modificación o extinción de este nivel de dirección intermedio y las funciones o atribuciones del mismo.

ARTICULO 3.—La empresa desarrolla sus actividades con arreglo a un plan y sobre la base del cálculo económico, debiendo, como regla general, cubrir sus gastos con sus ingresos, garantizando además un margen de ganancia. La empresa dispone de autonomía económico-operativa y funciona bajo la orientación y supervisión administrativa di-

recta de un organismo de la Administración Central del Estado o de un órgano local del Poder Popular.

ARTICULO 4.—Las empresas que forman parte de una unión, siguen constituyendo la unidad de cálculo económico básico, aunque algunas de sus atribuciones pasen a corresponder a la unión, la cual en su conjunto funciona también sobre los principios del cálculo económico y constituye el órgano de dirección económica superior a la empresa.

ARTICULO 5.—En toda su actividad la empresa está obligada a respetar la Constitución, las leyes y demás disposiciones vigentes, entendiéndose que los derechos que le son concedidos deben ser ejercidos siempre en beneficio de la economía nacional y de los trabajadores de la empresa.

El Organismo de la Administración Central del Estado o el Organo Local del Poder Popular al que la Empresa esté subordinada, garantiza la estricta observancia de los derechos de la misma y controla el cumplimiento de sus deberes.

ARTICULO 6.—La empresa otorga contratos y responde, en sus casos respectivos, por el cumplimiento de los planes y otras obligaciones, por el uso de la fuerza de trabajo o de los recursos materiales o financieros y por el cumplimiento de cualesquiera otra de las disposiciones que rigen su actividad, de acuerdo a la ley y las demás disposiciones vigentes.

ARTICULO 7.—La empresa no responde de las obligaciones del Organismo de la Administración Central del Estado, u Organo Local del Poder Popular a que se encuentra subordinada, ni por las de otras empresas, organizaciones u organismos, los que, a su vez, no responden de las obligaciones de la empresa.

ARTICULO 8.—La empresa forma y utiliza fondos de estimulación económica acorde con las reglamentaciones establecidas por el Consejo de Ministros, para la premiación material individual de sus trabajadores, para mejorar las condiciones de trabajo y socio-culturales del personal, y para ampliar y perfeccionar la producción.

ARTICULO 9.—La empresa dirige su actividad sobre la base de la combinación correcta del mando y responsabilidad únicos y de la participación colectiva de los trabajadores en todos los problemas concernientes a la dirección de su actividad y asegura la participación de aquéllos en problemas tales como la preparación de los proyectos de planes relativos al desarrollo y perfeccionamiento de su actividad y la elaboración y adopción de las medidas que garantizan su cumplimiento, así como de aquellas que permitan el mejoramiento de las condiciones laborales y de vida de los trabajadores.

ARTICULO 10.—La empresa utiliza en sus documentos oficiales un sello con su denominación y el emblema o símbolo comercial que la identifica.

ARTICULO 11.—Cada empresa se rige por su respectivo reglamento orgánico, aprobado por el órgano u organismo al que se subordina y que contiene las normas relativas a su actividad técnico-económica en correspondencia con lo dispuesto en el presente reglamento general y el reglamento ramal correspondiente.

ARTICULO 12.—Las relaciones entre los establecimientos y demás dependencias de la empresa, se rigen por lo dispuesto al efecto en su reglamento orgánico o en el reglamento elaborado por el organismo rector ramal.

ARTICULO 13.—La empresa, en sus actividades, no debe afectar nunca las condiciones normales de funcionamiento de otras empresas y organismos, ni las condiciones de vida de los ciudadanos; siendo responsable de la restitución al mismo estado anterior de cualquier modificación que por su actividad se produzca en suelos agrícolas, vías, medios de comunicación, lugares de recreación o bienes en general o la indemnización de los daños y perjuicios en los casos que la restitución no es materialmente posible, pertenecen éstos últimos al Estado, organizaciones políticas y de masas o particulares.

La empresa se responsabiliza con las medidas necesarias para proteger el aire, la tierra y el agua de la contaminación causada por los residuos de su producción o de otras actividades que realice; por el desagüe de aguas albañales o desechos de la producción y tomará medidas para atenuar los ruidos excesivos, las interferencias con los sistemas de radio-comunicación y televisión, así como cualquier otro efecto perjudicial sobre el medio ambiente.

ARTICULO 14.—La empresa realiza estudios y elabora propuestas para perfeccionar su estructura, con el objeto de obtener esquemas de dirección más eficientes; proponiendo para su aprobación al organismo u órgano a que está subordinada, las variantes resultantes de dichos estudios.

La empresa no puede introducir cambios en su estructura sin autorización del Organismo de la Administración Central del Estado u Organo del Poder Popular al que se subordina.

## CAPITULO II

### CREACION Y EXTINCION DE LA EMPRESA

ARTICULO 15.—La empresa estatal se crea, previa aprobación de la Junta Central de Planificación por resolución del Jefe del Organismo de la Administración Central del Estado o del órgano local del Poder Popular al que estará subordinada.

En el caso de las empresas de comercio exterior, la resolución para su creación es dictada por el Ministro de Comercio Exterior, previa aprobación de la Junta Central de Planificación, independientemente del organismo al que se subordinan.

ARTICULO 16.—La resolución creadora de la empresa debe contener:

a) Su denominación y domicilio social.

b) Declaración de su personalidad jurídica y de su responsabilidad independiente.

c) El Organismo de la Administración Central del Estado u Organo Local del Poder Popular al que la empresa se subordina directamente.

ch) Los establecimientos que la integran, cuando está constituida por dos o más de ellos.

d) Los fines de la empresa.

e) La asignación de los medios básicos mínimos, los medios de rotación y medios financieros que integran su patrimonio.

f) Las demás regulaciones que correspondan, conforme a las particularidades de la empresa, siempre que no contravengan las disposiciones vigentes.

ARTICULO 17.—La extinción de empresas es aprobada por la Junta Central de Planificación a propuesta del Jefe del Organismo de la Administración Central del Estado o del órgano local del Poder Popular al que están subordinadas, quien dicta, una vez aprobada, la resolución que disponga la extinción.

ARTICULO 18.—La integración, segregación o extinción de establecimientos de una empresa se aprueba por el organismo u órgano inmediato superior al que se subordina, mediante resolución donde se expresa el destino de los recursos de los establecimientos afectados. Cuando se segrega un establecimiento de una empresa hacia otra empresa perteneciente a otros órganos u organismos se requiere la aprobación de la Junta Central de Planificación.

ARTICULO 19.—La creación o extinción de cada empresa se inscribe en el Registro Estatal de Empresas y Unidades Presupuestadas a instancias del organismo u órgano al que se subordina, con arreglo a lo establecido en la legislación vigente.

A partir de la fecha de la inscripción de su creación la empresa se considera legalizada a todos los efectos y queda autorizada para ejercer los derechos y responder de las obligaciones que se deriven de su actividad económica.

ARTICULO 20.—Después de aprobada la extinción de una Empresa y antes de dictarse la correspondiente resolución se procede a establecer:

a) Las formas de liquidación con los acreedores y deudores de la empresa, en coordinación con el Banco Nacional de Cuba y el Comité Estatal de Finanzas.

b) El traspaso o liquidación de los medios básicos y de los medios de rotación.

c) Los trabajos que resulten necesarios para dejar cerradas las operaciones monetario-mercantiles de la empresa.

ARTICULO 21.—A los efectos de lo dispuesto en el artículo anterior se designa un liquidador o se constituye una comisión liquidadora de tres miembros, mediante resolución del Jefe del Organismo o acuerdo del Organo Local del Poder Popular correspondiente.

## CAPITULO III

### DE LOS MEDIOS DE LA EMPRESA

ARTICULO 22.—La empresa dispone para el cumplimiento de sus fines de los medios que el Estado le asigna, crédito bancario, de recursos generados por ella, así como de la fuerza de trabajo que contrata, según las normas de contratación vigentes o le es ubicada dentro de los límites del plan de trabajo y salarios aprobados.

ARTICULO 23.—El organismo de la Administración Central del Estado u órgano local del Poder Popular a que esté subordinada la empresa, determina y asigna los medios básicos que la empresa requiere para la ampliación y desarrollo de sus capacidades productivas actuales o para la creación de capacidades productivas adicionales.

ARTICULO 24.—La empresa garantiza la conservación en condiciones adecuadas y de forma integral, de sus productos y de los medios de producción instalados o almacenados, observando las disposiciones y normas técnicas establecidas y adoptando las medidas eficaces para prevenir o subsanar daños a los equipos, materias primas y demás bienes materiales, a causa de incendio, sustracción o condiciones meteorológicas adversas.

ARTICULO 25.—La empresa garantiza el rendimiento máximo de los recursos laborales, materiales y financieros de que dispone, así como de las tierras y otros recursos naturales puestos a su disposición; introduce sistemáticamente en su gestión los últimos adelantos de la ciencia y la técnica, y aplica normas progresivas de consumo de materia prima, materiales, combustibles y energía, teniendo en cuenta la necesidad de que estos factores se traduzcan en una reducción de los costos de producción y la elevación de la rentabilidad, sin afectar la calidad de la producción.

ARTICULO 26.—La empresa dirige y controla el cumplimiento de las regulaciones, procedimientos y normas técnicas establecidas que garanticen el desarrollo y la más eficiente explotación de la técnica instalada.

ARTICULO 27.—La empresa está facultada para dar y recibir en arrendamiento medios básicos temporalmente ociosos, mediante contrato celebrado conforme a las disposiciones vigentes.

ARTICULO 28.—La empresa está facultada para vender y comprar, de acuerdo con las regulaciones establecidas, medios básicos definitivamente ociosos, previa autorización de su organismo superior.

ARTICULO 29.—Los ingresos provenientes del alquiler o venta de los medios básicos temporal o definitivamente ociosos se distribuyen entre el presupuesto estatal y los fondos de la empresa, de acuerdo con las regulaciones establecidas.

ARTICULO 30.—La empresa puede adquirir equipos para la reposición o, asimismo, realizar ampliaciones y modernizaciones, con fondos asignados por el presupuesto, fondos propios o crédito bancario, de acuerdo con las regulaciones establecidas.

establecido por los organismos correspondientes y garantiza la implantación y observancia de las normas aprobadas, según los planes elaborados al efecto.

ARTICULO 66.—La empresa elabora, de conformidad con la legislación vigente, las normativas técnico-económicas, las normas de consumo, de inventarios de materia prima, combustibles y materiales, y las normas de consumo de energía para las necesidades de producción o servicio, sometiéndolas a la aprobación del organismo superior.

### SECCION SEXTA

#### Recursos Humanos

ARTICULO 67.—Dentro de los límites del Plan de Trabajo y Salarios y cumpliendo las normas establecidas por la legislación vigente, la empresa suscribe y rescinde contratos con los trabajadores; contrata los técnicos que le sean asignados y designa al personal dirigente cuando procede, según la plantilla de cargos aprobada.

ARTICULO 68.—Corresponde asimismo a la empresa contemplar en sus planes las necesidades corrientes y perspectivas de recursos laborales, incluyendo obreros calificados y especialistas de nivel medio y superior, debiendo tomar las medidas encaminadas a utilizar racionalmente la fuerza de trabajo.

ARTICULO 69.—La empresa realiza continuos estudios para perfeccionar la organización y las normas de trabajo tendentes a elevar la productividad, observando siempre la legislación laboral y las reglas y normas de protección e higiene del trabajo.

ARTICULO 70.—La empresa toma las medidas que legalmente proceden a fin de mejorar el sistema de retribución de los obreros y demás trabajadores con vistas a elevar su interés material, tanto en el fruto del trabajo individual como en el incremento de los resultados generales del trabajo de la empresa, garantizando una correlación adecuada entre salario, producción, productividad y costo.

ARTICULO 71.—De acuerdo con la legislación vigente la empresa garantiza la correcta aplicación de la política laboral y salarial y la disciplina laboral.

ARTICULO 72.—La empresa conforme a la legislación vigente, tiene la obligación con sus trabajadores de efectuar los pagos por concepto de subsidios por enfermedad o accidente; licencia por maternidad; pensión provisional originada por muerte del trabajador en activo; así como de efectuar los trámites establecidos para garantizar los derechos que se conceden a los trabajadores y su familiares en materia de seguridad social.

ARTICULO 73.—De acuerdo con la legislación y demás disposiciones vigentes en materia de capacitación, la empresa asegura la formación de nuevos trabajadores calificados en sus propias dependencias, la enseñanza de nuevos oficios y la elevación sistemática de su nivel profesional.

ARTICULO 74.—La empresa dará la posibilidad a las instituciones de enseñanza superior o media especializada de que sus estudiantes realicen en la misma la práctica pre-profesional, previo acuerdo con dichas instituciones.

ARTICULO 75.—La empresa debe ceder, en las condiciones establecidas por las reglamentaciones vigentes, fuerza de trabajo para movilizaciones por interés de la economía nacional o del país en general.

### CAPITULO V

### DIRECCION DE LA EMPRESA

ARTICULO 76.—El dirigente máximo de la empresa será su director, el cual será designado y removido por el Jefe del Organismo de la Administración Central del Estado o por el Organo del Poder Popular al que se subordine la Empresa.

ARTICULO 77.—El director de la empresa en el desempeño de sus funciones es asesorado por un Consejo de Empresa. La composición, funciones y atribuciones de este Consejo son establecidas en un reglamento elaborado a ese efecto.

ARTICULO 78.—La empresa ejerce los derechos que se deriven de su actividad económica por medio de su director y con arreglo a su estructura, por medio de otros dirigentes de la empresa y en los casos previstos por la legislación, por medio de una gestión colectiva con la participación del Buró o Sección Sindical.

ARTICULO 79.—Entre las facultades, atribuciones y deberes del director de la Empresa se encuentran las siguientes:

a) Orientar, dirigir y controlar el proceso de elaboración del Plan de la empresa con arreglo a las cifras y normas que le son dictadas, firmar y elevar el proyecto al organismo superior correspondiente para su aprobación y tomar las medidas necesarias para garantizar el cumplimiento del Plan una vez aprobado.

b) Promover la participación activa de los trabajadores en la dirección de la empresa y en la elaboración y cumplimiento del Plan.

c) Aplicar la estructura organizativa de la empresa según las disposiciones vigentes.

ch) Suscribir compromisos colectivos de trabajo con la organización sindical correspondiente.

d) Designar y remover al personal dirigente de acuerdo con la política de cuadros y la legislación vigente.

e) Contratar los trabajadores con arreglo al plan aprobado para la empresa.

f) Cumplir y hacer cumplir la legislación vigente.

g) Suscribir, a nombre y en representación de la empresa, los documentos que fueren necesarios sin que en modo alguno éstos impliquen compromisos que puedan exceder los límites fijados en los planes de la Empresa, o impedir el cumplimiento de sus obligaciones.

h) Representar a la Empresa en sus relaciones con el organismo superior, otros organismos, organizaciones, otras empresas y unidades presupuestadas.

i) Decidir sobre el arrendamiento de medios básicos ociosos según lo establecido en las reglamentaciones existentes.

j) Concertar los contratos con otros organismos y empresas y discutir y acordar las modificaciones de los mismos que surjan en la práctica. Igualmente adopta las medidas necesarias para efectuar las ventas de residuos o de producciones a partir de éstos, de acuerdo con lo establecido en el Artículo 55 de este Reglamento.

k) Responder a nombre de la Empresa por todo lo acordado en los contratos suscritos.

l) Exigir el cumplimiento de los contratos concertados.

ll) Abrir y cerrar cuentas bancarias de acuerdo a las regulaciones establecidas.

m) Pignorar bienes de la empresa, cuando corresponda, según las disposiciones vigentes.

n) Velar por el desarrollo político-ideológico de los trabajadores y propiciar su participación en las actividades que al efecto se programen.

ñ) Reclamar el conocimiento y solución de cualquier asunto de la empresa, del que conozca otro dirigente o trabajador de aquella.

o) Las demás facultades, atribuciones y deberes que expresamente le asigne su organismo u órgano superior y se requieran para cumplimentar los objetivos de las empresas.

ARTICULO 80.—El director puede delegar, sin que por ello se exima de su responsabilidad, cualesquiera de las facultades señaladas en el artículo anterior en dirigente de la empresa, excepto las enunciadas en los acápites a), c), ch), d), k), l), ll) y ñ).

ARTICULO 81.—Con el objetivo de coadyuvar al desarrollo de la actividad económica en la empresa como un todo armónico y con la óptima eficiencia de los factores técnicos y tecnológicos de su ámbito se puede crear según las reglamentaciones establecidas, un Consejo Técnico Asesor de la empresa, integrado por especialistas destacados, técnicos de alta calificación, innovadores y racionalizadores de la producción, dirigentes administrativos, representantes de las organizaciones vinculadas al trabajo de la Empresa y otras afines. Este Consejo funciona junto a la dirección de la Empresa, pero no como parte de ésta.

CAPITULO VI

DE LAS RELACIONES CON EL SINDICATO Y LOS TRABAJADORES

ARTICULO 82.—La empresa, representada por el director, suscribe los compromisos colectivos de trabajo con el Buró Sindical conforme a los lineamientos y metodologías aprobados al efecto y garantiza el cumplimiento oportuno de los compromisos que se establecen,

ARTICULO 83.—La dirección de la empresa, conjuntamente con el Buró o Sección Sindical:

a) Establece; previa la aprobación del organismo superior, los horarios de funcionamiento de la presa, según la legislación vigente.

b) Decide, según lo establecido en los reglamentos rrespondientes, la distribución de los fondos estimulación material individual y colectivos.

ARTICULO 84.—La dirección de la empresa prestará concurso a la Sección o Buró Sindical para la organización de la emulación socialista, el análisis de sus resultados y la decisión en lo que se refiere al estímulo los colectivos y trabajadores de vanguardia, de acuerdo a las condiciones establecidas para la emulación socialista en los reglamentos y demás disposiciones vigentes.

ARTICULO 85.—La dirección de la empresa se reúne con los representantes de los trabajadores para analizar e informar acerca de:

a) Las cifras de control del plan y las propuestas de cifras directivas.

b) Las cifras directivas del plan.

c) El estado de cumplimiento del plan y la emulación socialista.

ch) El cumplimiento de los compromisos colectivos de trabajo y el plan de protección e higiene del trabajo.

d) Las medidas respecto al servicio comunal, cultural y material de los trabajadores, así como de las encaminadas a la liquidación de las deficiencias en el trabajo y otras cuestiones de interés.

e) Los resultados de la gestión económica de la Empresa.

f) El desarrollo del perfeccionamiento de los métodos de organización y de las condiciones de trabajo.

ARTICULO 86.—Con el objetivo de garantizar la más amplia participación de los trabajadores en la solución de los problemas de la producción y los servicios, se organizan asambleas de producción o servicios en la empresa, establecimientos, talleres, distritos y otras dependencias de importancia.

El director de la Empresa contribuye al mejor funcionamiento de las Asambleas de Producción y Servicios e instrumenta las medidas necesarias para garantizar el cumplimiento de sus recomendaciones.

ARTICULO 87.—La dirección de la empresa, en coordinación con la sección o buró sindical, impulsa la elaboración de planes concretos por parte del movimiento de innovadores y racionalizadores para la introducción de nuevas técnicas y tecnologías.

ARTICULO 88.—La dirección de la empresa pone gratuitamente al servicio de la sección o buró sindical los edificios, locales, construcciones, jardines, parques y otras instalaciones que forman parte del patrimonio de la empresa para las actividades de los trabajadores dentro de las normas que al efecto se establecen.

## COUNCIL OF MINISTERS

**EXPLANATORY NOTE:**

The present norms correspond to the Exhibit to the Accord of the Executive Committee of the Council of Ministers dated July 7, 1988, published in the Regular Official Gazette No. 51, of July 12, 1988, which put said norms into effect in accordance with the law on the third day after this date.

### NORMS
### ON THE UNION AND STATE ENTERPRISES
### (National Subordination)

#### PRELIMINARY DISPOSITIONS

ARTICLE 1. – The guiding principle of the present norms is the search for maximum efficiency in the functioning of the unions, enterprises and basic units of production and services, and contemplation of the harmonization of sector interests with territorial needs.

Unions, enterprises and basic units comply with the Constitution, the laws and other provisions that the higher organisms dictate for the sector, sub-sector or activity, in the ambit of their attributes and spheres of competence, even if they are not directly subordinate to them. The attributes and spheres of competence of the higher organisms are established in the legislation on the State central management organisms.

ARTICLE 2. – In these norms, in order to abbreviate not as a definition or concept, the following terms are employed hereinafter with the meaning expressed in each case:

CENTRAL ADMINISTRATION: The central administration of the State.

ATTRIBUTE: To the union, two concepts indivisibly: rights and obligations, as it is employed in the Constitution of the Republic.

DEPARTMENT: Generic term for entities in a subordinate relation to others.

ENTERPRISE: State enterprise; both independent and integrated into a union.

INDEPENDENT ENTERPRISE: State enterprise not integrated into a union.

ECONOMIC ENTITIES: Generic term that fundamentally includes the union and the enterprise; the basic unit is not included in this term.

FUNCTIONS: 1) Synonym for attribute, as employed in the Constitution; 2) Acts and actions necessary for the exercise of the attributes.

ORGANISMS: Central organisms of the State administration: State Committees, Ministries and Institutes.

ORGANIZATIONS: Political, social and mass organizations.

PLAN: The technical-economic Plan prepared by the Union and the enterprise.

SINGLE PLAN: The Single Economic-Social Development Plan

HIGHER ENTITY: The entity that has as its principle responsibility or function a sector, subsector or activity.

MANAGEMENT SYSTEM: The Single State Management System, that acts under the direction of the Council of Ministers and is composed of The Council of Ministers and its Executive Committee; the central organisms; the Provincial and Municipal Executive Committees of the local organs of People's Power; and the Administrations of economic entities.

BASIC UNIT: Term employed to designate the production or service (factory, integral or permanent agricultural teams, construction teams, transport base, fishing base and others) link that forms part of the internal structure of a union or an enterprise. It operates with internal economic calculation in relation to the economic entity to which it is subordinate. The basic unit may be organized internally into workshops, teams, lots, establishments or other forms of organization.

### II. ON THE UNION AND THE ENTERPRISE
### GENERAL CHARACTERISTICS

ARTICLE 3. The union and the Enterprise are organizational and management forms of production and services in that they structure and develop the economic activity of the State with the objective of achieving the satisfaction of social needs; they also constitute fundamental rungs for the organization and functioning of the national economy based on principles of economic calculation

ARTICLE 4. The union and the enterprise exercise the right of possession, enjoyment and disposition of their assets in accordance with the corresponding legal dispositions. They are not liable for the obligations of the State, its organs and central and local organisms, in the same way that the latter are not liable for the obligations of the former.

ARTICLE 5. The union is a higher form of organization conditioned by the deployment of productive efforts and production relations.

The union, independent of the territorial location of the enterprises and basic units that make it up, functions as an economic-production complex and guarantees to the extent possible the organic unity of the development of sectors and territories.

The union is an economic entity with its own legal personality that constitutes a system composed of enterprises, basic units or both that has as its objective the increasing of efficiency in production and services in comparison with that of the isolated enterprises or basic units that compose it, by means of concentration, specialization, cooperation, better utilization of installations and equipment for common use, the centralization of some management functions and the broadening of sources of financing, among others.

ARTICLE 13. The organisms, once authorized, create by Resolution unions, enterprises and also basic units in accordance with established procedure. In the case of foreign trade enterprises, the Resolution is issued by the Ministry of Foreign Trade.

The organisms define and name the basic entities as well as the links composing them in accordance with their characteristics and in conformity with the procedure established by the National Economic Management System Commission.

The structure and the staffing plan of the union, enterprise and basic units are proposed and approved in accordance with the decisions of the State Committee on Labor and Social Security. In the case of the science and technology units, the Cuban Academy of Science also participates.

ARTICLE 14. When the requests for the creation or reorganization lead to the dissolution of economic entities, the following are established:

a) the forms of liquidation with creditors and debtors in coordination with the State Finance Committee and the National Bank of Cuba;

b) the transfer or liquidation of the basic assets and of circulating assets;

c) the work that is necessary to close the monetary commercial operations and to cancel all relations of all types, both internal as well as those established with other entities; and

ch) the means for relocation of workers in accordance with the labor policy in force.

ARTICLE 15. The creation or reorganization of each union and enterprise is inscribed in the corresponding State Registry at the instance of the organism to which it is subordinate, according to the provisions of the legislation in force.

From the date of the inscription of its creation or reorganization the union and the enterprise are legalized for all effects and authorized to exercise the rights and are responsible for the liabilities derived from its economic activity.

### III. ON MANAGEMENT AND ADMINISTRATION

ARTICLE 16. A manager is appointed by the head of the organism to which it is subordinate to direct a union or enterprise; he is personally responsible for the performance of the activities entrusted to it. The administration of these economic entities forms part of the Management System.

ARTICLE 17. The director and the rest of the administration must assure the effective use of the human, material and financial resources put at their disposition to execute the activity in question and to create the bases to increase the efficiency of the production and services, demanding their execution in the time periods established with the required quality. Their fundamental functions are planning, organization, management and control.

ARTICLE 18. The economic and management methods established by the management within the scope of its competence must be used, or as the case may be, fulfilled in an obligatory way by all.

ARTICLE 19. Management must apply democratic centralism based on the combination of collective discussions and single command; to establish with precision the content of the tasks of the heads in charge of each and of the persons responsible for completion of the planned tasks; to create the conditions to allow the initiative and active participation of the workers and their organizations in the drafting, discussion, execution and monitoring of the plans, in the improvement of production, work, management and organization and in the elimination of deficiencies in the activity of the union, the enterprise and the basic unit.

Also, it should pay attention to the social development of the collective and the creation of a healthy work climate that rejects the lack of discipline and the lack of exigency in the performance of social duties.

ARTICLE 20. The organisms can transfer knowledge of and solutions to some questions within their spheres of competence to their unions and independent enterprises to the extent they do not contradict what is established by the higher organisms.

### ON THE MANAGER

ARTICLE 21. The manager is the highest responsible authority of the union or the enterprise he manages; he represents it and is personally responsible for it before the State and its institutions. The manager of the union and of the independent enterprise is subordinate to the Minister and the manager of the dependent enterprise is subordinate to the manager of the union. Through the manager, the union and the enterprise exercise the rights derived from their technical-economic activity. He should have the experience and meet the technical and professional requisites necessary for carrying out his responsibilities.

ARTICLE 22. The manager must set an example in his attitude toward work, the fulfillment of socialist legality, in his discipline and his political, social and personal conduct; he must maintain and constantly augment his prestige and authority before the collective that he manages by his respect, camaraderie, demandingness and proper and constructive criticism; he should educate the masses and subordinate workers in the principles of socialist morality, love of work and human solidarity; he should work to obtain greater efficiency for the entity that he manages without the achievement of this objective harming the interests of other entities or of society.

The manager must wisely combine the established economic mechanisms with the necessary and indispensable method of analysis and persuasion in a timely manner, always taking into account that the strategic objective of the society that we are constructing is not only to elevate the standard of living of the citizens but also to form an individual with a high consciousness, capable of constructing and living in communism.

ARTICLE 23. The principle attributes of the manager, among others, are the following:

a) to comply with and have complied with the legislation in force;

b) to manage, coordinate and monitor the process of drafting the plan and to be responsible for its fulfillment;

c) to guide, direct and monitor the organization of the process of scientific-technical, production and economic management leading to a more efficient and rational production and service process in conformity with the Plan in order to guarantee its fulfillment.

ch) to guide the creation of conditions for the development and application of science and technical know-how, the introduction of new products, the improvement of processes and activities that are subordinated and to require their systematic introduction as a way to increase technical and economic effectiveness and the quality of production and services;

d) to implant and be responsible for the introduction of material economic measures that assure the reduction of production material consumption;

e) to demand, and as applicable, be responsible for the quality of the products and services and the fulfillment of the objectives outlined in this sense;

f) to promote the active participation of the workers in the management of the union, the enterprise and the basic unit and in the drafting, performance and monitoring of the Plan; to base his work on the activity performed by the political, labor union and other organizations and to promote the practical application of their initiatives in economic management;

g) to propose and once approved to apply an efficient, rational management structure and workforce that guarantees the scientific-technical, production and economic management of the production and service process, using the means established in the legislation in force;

h) to name the other managers and supervisors in accordance with the policy outlined and the established nomenclature;

i) to name the other personnel in conformity with the provisions of the legislation in force;

j) to fulfill and have fulfilled the correct application of the regulations of the State and the Government on policy and working with supervisors;

k) to sign the necessary documents in the framework of the Plan, including the economic contracts and the collective work agreements, in the name and representation of the economic entity he manages;

l) to be personally responsible for the contracts signed and other obligations he contracts or has contracted with his authorization;

ll) to demand the realization (sale) of production and services in accordance with the conditions established in the commitments undertaken;

m) to know and decide on Bank credits that are requested or granted for the operations of the entity he manages in accordance with the dispositions in force; to open and close bank accounts in accordance with the established regulations;

n) to contribute actively to the integral development, economic education and technical-professional training of the workers, promoting their participation in the activities that are scheduled in this regard;

ñ) to perform and have performed the work day, its maximum exploitation, as well as to guarantee the efficient use and adequate monitoring of all material and financial resources, taking whatever measures lead to the consolidation of those work habits in the collective of workers;

o) to call meetings and to attend those that may be called by higher levels or through them. To designate his representative in the case of other meetings or activities for which he is summoned and cannot attend;

p) to require the knowledge of and solution to whatever matter of the entities he manages that may be known to other officials or their workers;

q) to guarantee close cooperation with local organs of the People's Power;

r) to demand fulfillment of the financial obligations with the State, the Bank as well as with the other unions and enterprises with which it has commercial relations;

s) others that may be assigned in these norms and other norms that the higher bodies to which he is subordinate may determine, referring to the fulfillment of the objectives of the entity he manages.

ARTICLE 24. The manager may delegate his authority, without that exempting him from his responsibility, for the fulfillment of the attributes that appear in subsections f), i), k), and q) of the above article.

The manager of the union and of the enterprise must establish the attributes of the heads of the basic units (factory, integral or permanent agricultural team, construction team, transport base, fishing base and others).

ARTICLE 25. A person who receives authority by delegation from the manager to exercise attributes may not delegate it, and may only assign other subordinate workers to carry out the concrete tasks related to them.

ARTICLE 26. The manager, in carrying out his functions, is assisted by a management council, the composition and principle attributes of which are established in the Regulations of the entity, drawn up based on the provisions of these norms.

### THE MANAGEMENT COUNCIL

ARTICLE 27. The management council is a collective organ that assists the manager of the respective economic entity, in which, by agreement, the will of the majority if its members is expressed and the principle of socialist management of democratic centralism, collective discussion and individual responsibility are manifested.

ARTICLE 28. In the union the management council consists of the manager of the union, who presides, the assistant managers, the managers of the enterprises that it comprises and others that are determined by the higher level on the proposal of the manager, all with voice and vote. From among its members the Chairperson designates a secretary. The representatives of the political and labor union organizations are permanent invitees that they shall appoint. In addition, others may be invited to attend.

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK     )
                      )          ss
COUNTY OF NEW YORK    )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of **1988 Norms**, completed on 8/31/2009, originally written in Spanish.

Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

ANTONIO NEBRES
Notary Public, State of New York
No. 01NE6150039
Qualified in New York County
Commission Expires July 24, 2010

## CONSEJO DE MINISTROS

**NOTA ACLARATORIA:**

Las presentes normas corresponden al Anexo del Acuerdo del Comité Ejecutivo del Consejo de Ministros de fecha 7 de julio de 1988, publicado en la Gaceta Oficial Ordinaria No. 51, el 12 de julio de 1988, que las puso en vigor de acuerdo con lo establecido en la Ley a partir de los tres días posteriores a esta fecha.

## NORMAS
## SOBRE LA UNION Y LA EMPRESA ESTATALES
### (Subordinación Nacional)

### I. DISPOSICIONES PRELIMINARES

ARTICULO 1.—Las presentes normas tienen como principio rector buscar la máxima eficiencia en el funcionamiento de las uniones, empresas y unidades básicas de la producción y los servicios, atendiendo, además, a la armonización de los intereses ramales con las necesidades territoriales.

La unión, la empresa y la unidad básica cumplen la Constitución, las leyes y las demás disposiciones que, en el marco de sus atribuciones y competencia, dictan los organismos rectores de la rama, subrama o actividad, aunque no les estén directamente subordinadas. Las atribuciones y competencia de los organismos rectores están establecidas en la legislación sobre los organismos de la administración central del Estado.

ARTICULO 2.—En estas normas, para abreviar y no como definición o concepto, en lo adelante se emplean los términos siguientes con el sentido que se expresa en cada caso:

ADMINISTRACION CENTRAL: a la administración central del Estado.

ATRIBUCION: a la unión indisoluble de dos conceptos: derecho y obligación, al igual que se emplea en la Constitución de la República.

DEPENDENCIA: genérico a las entidades con relaciones de subordinación respecto a otras.

EMPRESA: a la empresa estatal; tanto independiente como integrada a una unión.

EMPRESA INDEPENDIENTE: a la empresa estatal que no está integrada a una unión.

ENTIDADES ECONOMICAS: genérico que comprende fundamentalmente a la unión y la empresa; no se incluye en este término a la unidad básica.

FUNCIONES: 1) como sinónimo de atribución, al igual que se emplea en la Constitución; 2) a los actos y acciones necesarios para el ejercicio de las atribuciones.

ORGANISMOS: a los organismos centrales de la administración del Estado: Comités Estatales, Ministerios e Institutos.

ORGANIZACIONES: a las organizaciones políticas, sociales y de masas.

PLAN: al Plan técnico-económico elaborado en la unión y la empresa.

PLAN UNICO: al Plan Unico de Desarrollo Económico-Social.

RECTOR: entidad que tiene como responsabilidad o función principal una rama, subrama o actividad.

SISTEMA DE ADMINISTRACION: al Sistema Unico de Administración del Estado, que actúa bajo la dirección del Consejo de Ministros y está integrado por: el Consejo de Ministros y su Comité Ejecutivo; los organismos centrales; los Comités Ejecutivos Provinciales y Municipales de los órganos locales del Poder Popular; y, las Administraciones de las entidades económicas.

UNIDAD BASICA: término empleado para designar al eslabón de la producción o los servicios (fábrica, brigada integral o permanente de la agricultura, brigada de construcción, base de transporte, base pesquera u otros) que forma parte de la estructura interna de la unión o la empresa. Opera en cálculo económico interno con relación a la entidad económica a la que se subordina. La unidad básica puede estar organizada internamente en talleres, brigadas, lotes, establecimientos; u otras formas de organización.

### II. DE LA UNION Y LA EMPRESA
### DE SUS CARACTERISTICAS GENERALES

ARTICULO 3.—La unión y la empresa son formas organizativas y de dirección de la producción y los servicios en que se estructura y desarrolla la actividad económica del Estado, con el objetivo de lograr la satisfacción de las necesidades sociales, las mismas constituyen eslabones fundamentales para la organización y funcionamiento de la economía nacional, basados en los principios del cálculo económico.

ARTICULO 4.—La unión y la empresa ejercen el derecho de posesión, disfrute y disposición de sus bienes conforme a lo previsto en las disposiciones legales correspondientes. No responden por las obligaciones del Estado, sus órganos y organismos centrales y locales, al igual que éstos no responden por las obligaciones de aquéllas.

ARTICULO 5.—La unión es una forma superior de organización condicionada por el desarrollo de las fuerzas productivas y de las relaciones de producción.

La unión con independencia de la ubicación territorial de las empresas y unidades básicas que la integran, funciona como un complejo económico-productivo y garantiza en lo posible la unidad orgánica del desarrollo de las ramas y territorios.

La unión es una entidad económica con personalidad jurídica propia que constituye un sistema integrado por empresas, unidades básicas, o por ambas, que tiene como objetivo la elevación de la eficiencia de la producción y los servicios en comparación con la de las empresas o unidades básicas aisladas que la integran mediante la concentración, la especialización, la cooperación, la mejor utilización de las instalaciones y equipos de uso común, la centralización de algunas funciones de dirección, y la ampliación de las fuentes de financiamiento, entre otras.

ARTICULO 13.—Los organismos, una vez autorizados, crean uniones, empresas y también unidades básicas mediante Resolución conforme al procedimiento establecido. En el caso de empresas de comercio exterior, la Resolución es dictada por el Ministerio del Comercio Exterior.

Los organismos definen las unidades básicas y las denominan por su nombre, así como a los eslabones que las integran, de acuerdo a sus características y conforme al procedimiento que se establezca por la Comisión Nacional del Sistema de Dirección de la Economía.

La estructura y plantilla de la unión, la empresa y unidades básicas se proponen y aprueban de acuerdo con lo que establezca el Comité Estatal de Trabajo y Seguridad Social. En el caso de las unidades de ciencia y técnica participa la Academia de Ciencias de Cuba.

ARTICULO 14.—Cuando las solicitudes de creación o reorganización, conlleven la disolución de entidades económicas, se establece:

a) las formas de liquidación con los acreedores y deudores, en coordinación con el Comité Estatal de Finanzas y el Banco Nacional de Cuba;

b) el traspaso o liquidación de los medios básicos y de los medios de rotación;

c) los trabajos que resulten necesarios para dejar cerradas las operaciones monetario-mercantiles, y canceladas las relaciones de todo tipo, tanto las internas de las entidades como las que tenían establecidas con otras entidades; y,

ch) las medidas para la reubicación de los trabajadores de acuerdo a la política laboral vigente.

ARTICULO 15.—La creación o reorganización de cada unión y empresa se inscribe en el Registro Estatal correspondiente, a instancias del organismo al que se subordinan, con arreglo a lo establecido en la legislación vigente.

A partir de la fecha de la inscripción de su creación o reorganización la unión y la empresa están legalizadas a todos los efectos y autorizadas para ejercer los derechos y responder de las obligaciones que se deriven de su actividad económica.

III. DE LA DIRECCION Y LA ADMINISTRACION

ARTICULO 16.—Para dirigir una unión o empresa se designa un director por el jefe del organismo a que se encuentre subordinada, el que responde personalmente del cumplimiento de las actividades encargadas a las mismas. La administración de estas entidades económicas forman parte del Sistema de Administración.

ARTICULO 17.—El director y el resto de la administración deben asegurar el aprovechamiento eficaz de los recursos humanos, materiales y financieros puestos a su disposición para ejecutar la actividad de que se trate y crear las bases para elevar la eficiencia de la producción y los servicios, exigiendo su ejecución en los plazos establecidos con la calidad requerida. Tienen como funciones fundamentales la planificación, la organización, la gestión y el control.

ARTICULO 18.—Los métodos económicos y administrativos establecidos por la dirección en el ámbito de su

competencia deben utilizarse, o en su caso, cumplirse de forma obligatoria por todos.

ARTICULO 19.—Corresponde a la dirección aplicar el centralismo democrático sobre la base de la conjugación de la discusión colectiva y el mando único; establecer con precisión el contenido de trabajo de los jefes de cada frente y de los responsables del cumplimiento de las tareas planteadas; crear las condiciones para que se manifieste la iniciativa y la participación activa de los trabajadores y sus organizaciones en la elaboración, discusión, ejecución y control de los planes, en el perfeccionamiento de la producción, el trabajo, la dirección y la organización, y en la eliminación de las deficiencias de la actividad de la unión, la empresa y la unidad básica.

A su vez debe prestar atención al desarrollo social del colectivo, a la creación de un sano clima laboral que rechace la indisciplina y la falta de exigencia en el cumplimiento de los deberes sociales.

ARTICULO 20.—Los organismos pueden transferir el conocimiento y la solución de algunas cuestiones de su competencia a sus uniones y empresas independientes, en cuanto no contravenga lo establecido por los organismos rectores.

DEL DIRECTOR

ARTICULO 21.—El director es el máximo responsable de la unión o la empresa que dirige, la representa y responde personalmente por la misma ante el Estado y sus instituciones. El director de la unión y de la empresa independiente se subordinan al Ministro; y el director de la empresa dependiente se subordina al director de la unión. A través del director la unión y la empresa ejercen los derechos que se deriven de su actividad técnico-económica. Debe tener la experiencia y reunir los requisitos técnicos y profesionales necesarios para el desempeño de su cargo.

ARTICULO 22.—El director debe ser ejemplo en la actitud ante el trabajo, el cumplimiento de la legalidad socialista, en la disciplina, en su conducta política, social y personal; debe mantener y aumentar constantemente su prestigio y autoridad ante el colectivo que dirige por el respeto, la camaradería, la exigencia y la crítica oportuna y constructiva, debe educar a las masas y trabajadores subordinados en los principios de la moral socialista, el amor al trabajo y la solidaridad humana; trabajar por obtener una mayor eficiencia de la entidad que dirige sin que el logro de este objetivo perjudique los intereses de otras entidades, ni de la sociedad.

El director debe combinar sabia y oportunamente los mecanismos económicos establecidos con el necesario e imprescindible método de análisis y persuasión, teniendo siempre en cuenta que el objetivo estratégico de la sociedad que construimos no es sólo elevar el nivel de vida de los ciudadanos, sino formar un individuo con una alta conciencia, capaz de construir y vivir en el comunismo.

ARTICULO 23.—Son atribuciones principales del director, entre otras, las siguientes:

a) cumplir y hacer cumplir la legislación vigente;

b) dirigir, coordinar y controlar el proceso de elaboración del plan y responder por su cumplimiento;

c) orientar, dirigir y controlar la organización del proceso de dirección científico-técnica, productiva y económica encaminada a un más eficiente y racional proceso de producción y servicio, en consonancia con el Plan, para garantizar su cumplimiento;

ch) orientar la creación de condiciones para el desarrollo y la aplicación de la ciencia y la técnica, la introducción de nuevos productos, el perfeccionamiento de los procesos y actividades que le están subordinadas y exigir su introducción sistemática como vía para elevar la efectividad técnica y económica y por ende la calidad de la producción y los servicios;

d) implantar y responder por la introducción de medidas de economía material que aseguren la reducción del consumo material productivo;

e) exigir y en su caso responder por la calidad de los productos y servicios y el cumplimiento de los objetivos trazados en este sentido;

f) promover la participación activa de los trabajadores en la dirección de la unión, la empresa y la unidad básica y en la elaboración, cumplimiento y control del Plan; apoyarse en la actividad que despliegan las organizaciones políticas, sindicales u otras, y promover la aplicación práctica de sus iniciativas en la gestión económica;

g) proponer y una vez aprobada aplicar una estructura y plantilla administrativa, racional y eficiente que garantice la dirección científico-técnica, productiva y económica del proceso de producción y servicio, utilizando las vías que establece la legislación vigente;

h) nombrar a los demás dirigentes y otros cuadros de acuerdo con la política trazada y la nomenclatura establecida;

i) nombrar otro personal conforme a lo dispuesto en la legislación vigente;

j) cumplir y hacer cumplir la correcta aplicación de lo establecido por el Estado y el Gobierno sobre la política y el trabajo con los cuadros;

k) suscribir los documentos necesarios en los marcos del Plan, incluyendo los contratos económicos y los convenios colectivos de trabajo, en nombre y representación de la entidad económica que dirige;

l) responder personalmente, por los contratos suscritos y demás obligaciones contraídas por sí o con su autorización;

ll) exigir por la realización (venta) de la producción y los servicios de acuerdo con las condiciones establecidas en los compromisos contraídos;

m) conocer y decidir sobre los créditos del Banco que se solicitan u otorgan para las operaciones de la entidad que dirige, de acuerdo con las disposiciones vigentes; abrir y cerrar cuentas bancarias de acuerdo con las regulaciones establecidas;

n) contribuir activamente al desarrollo integral, a la educación económica y a la formación técnico-profesional de los trabajadores, propiciando su participación en las actividades que al respecto se programen;

ñ) cumplir y hacer cumplir la jornada de trabajo, y su máximo aprovechamiento, así como garantizar el uso eficiente y el adecuado control de todos los recursos materiales y financieros, tomando cuantas medidas conduzcan a la consolidación de estos hábitos en el colectivo de trabajadores;

o) convocar a reuniones y asistir a las que sea convocado por las instancias superiores, o a través de las mismas. Designar su representante en el caso de otras reuniones o actividades para las que sea citado y a las que no pueda asistir;

p) reclamar el conocimiento y solución de cualquier asunto de las entidades que dirige del que conozcan otros dirigentes o trabajadores de éstas;

q) garantizar una estrecha colaboración con los órganos locales del Poder Popular;

r) exigir el cumplimiento de las obligaciones financieras con el Estado, con el Banco, así como con las demás uniones y empresas con las que mantenga relaciones mercantiles; y,

s) las demás que se le asignen en estas normas y otras que determinen las instancias superiores a las cuales se subordina, referidas al cumplimiento de los objetivos de la entidad que dirige.

ARTICULO 24.—El director puede delegar su autoridad, sin que ello lo exima de su responsabilidad, para el cumplimiento de las atribuciones que aparecen en los incisos f), j), k), q) del artículo anterior.

Corresponde al director de la unión y al de la empresa establecer las atribuciones de los jefes de sus unidades básicas (fábrica, brigada integral o permanente de la agricultura, brigada de construcción, base de transporte, base pesquera y otras).

ARTICULO 25.—Quien recibe autoridad por delegación del director para ejercer atribuciones, no puede delegarla, sólo puede asignar a otros trabajadores subordinados la realización de tareas concretas relacionadas con aquellas.

ARTICULO 26.—El director en el desempeño de sus funciones es asistido por un consejo de dirección, cuya composición y atribuciones principales se establecen en el Reglamento de la entidad, elaborado sobre la base de lo dispuesto en las presentes normas.

## DEL CONSEJO DE DIRECCION

ARTICULO 27.—El consejo de dirección es un órgano colectivo que asiste al director de la entidad económica respectiva donde por acuerdo se expresa la voluntad de la mayoría de sus miembros y se pone de manifiesto el principio de dirección socialista del centralismo democrático, la discusión colectiva y la responsabilidad individual.

ARTICULO 28.—En la unión el consejo de dirección está integrado por el director de la unión; que lo preside, los subdirectores, los directores de las empresas que la integran, y otros que se determinen por el nivel superior a propuesta del director, todos con voz y voto;

**EXHIBIT C**

Constitution of the Republic of Cuba
National Assembly of People's Power
Note

During 1975, a draft Constitution of the Republic was exposed to public debate, in which more than 6 million people participated. The resulting suggestions led to changes in 60 of the proposed articles.

On February 15, 1976, the document was approved by a referendum in which 98% of the electorate voted, with 97.7% of those voting in favour; approval was consequently by free, direct and confidential vote of the overwhelming majority of the electors.

On February 24, 1976, this Constitution was proclaimed, at a solemn, public ceremony.

On June 26, 1978, the National Assembly of People's Power, in exercise of its constitutional powers, resolved to amend Article 10(a) of the Constitution, changing the name of the island then known as "Isla de Pinos" to "Isla de la Juventud".

On July 12, 1992, the Constitutional Reform Act designed to implement recommendations by the Fourth Congress of the Cuban Communist Party was approved at a meeting of the National Assembly of People's Power, which had convened for such purpose. These were based on a public, open, frank and calm debate with the people, on a document issued by the Congress concerning the activities of the state agencies, arguing the need for our democratic institutions to be even more representative. This called for: decisions aimed at revising the structures, powers and steering functions of the various authorities based on such institutions; clarification of the role of government at provincial and municipal levels; new ways of electing deputies to sit on the National Assembly and delegates at the provincial assemblies; the addressing of other issues relevant to the nation's institutional life.

The Constitution was further amended to underpin and extend a large number of basic rights and freedoms, as well as the civil and political rights of both Cubans and aliens.

On June 10, 2002, an unprecedented plebiscitary process emerged, making itself felt at the Extraordinary Assembly of the various national headquarters of the mass organizations and, two days later, through demonstrations and marches held throughout the nation and involving over nine million people. It culminated in the public, voluntary signing, during the three days June 15-17, by a total of 8,198,237 electors, of a document ratifying the socialist content of the Constitution. This gesture by the Cuban people was in response to offensive, interventionist remarks by the President of the United States, and called on the National Assembly of People's Power to amend the Constitution so as to make irrevocable the socialism and revolutionary political and social system it proclaims. Also sought was a statement that economic, diplomatic and political relations with other states must not be conducted under aggression, threat or coercion by a foreign power. In Extraordinary Session on June 26, 2002, convened for the purpose, the

Assembly passed the relevant resolution (No. V-74), approving the Constitutional Reform Law.

Constitutional and Legal Affairs Committee of the National Assembly of People's Power
Constitution of the Republic of Cuba
Preamble

**WE, CUBAN CITIZENS**, heirs and continuators of the creative work and the traditions of combativeness, firmness, heroism and sacrifice fostered by our ancestors;

**by** the Indians who preferred extermination to submission;

**by** the slaves who rebelled against their masters;

**by** those who awakened national awareness and a yearning by Cubans for country and freedom;

**by** the patriots who in 1868 launched the wars of independence against Spanish colonialism and those who in the last drive of 1895 won victory in 1898, a victory usurped by the military intervention and occupation of Yankee imperialism;

**by** the workers, peasants, students and intellectuals who struggled for over fifty years against imperialist domination, political corruption, the absence of people's rights and liberties, unemployment and exploitation by capitalists and landowners;

**by** those who promoted, joined and developed the first organizations of workers and peasants, spread socialist ideas and founded the first Marxist and Marxist-Leninist movements;

**by** the members of the vanguard of the generation of the centenary of the birth of Martí who, imbued with his teachings, led us to the people's revolutionary victory of January;

**by** those who defended the Revolution at the cost of their lives, thus contributing to its definitive consolidation;

by those who en masse carried out heroic internationalist missions;

**GUIDED**

by the ideas of José Martí and the political and social ideas of Marx, Engels and Lenin;

**BASING OURSELVES**

on proletarian internationalism, on the fraternal friendship, aid, cooperation and solidarity of the peoples of the world, especially those of Latin America and the Caribbean;

**AND HAVING DECIDED**

to carry forward the triumphant Revolution of the Moncada and of the Granma of the Sierra and of Girón under the leadership of Fidel Castro, which sustained by the closest unity of all revolutionary forces and of the people won full national independence, established revolutionary power, carried out democratic changes, started the construction of socialism and, with the Communist Party at the forefront, continues this construction with the final objective of building a communist society;

**AWARE**

that all the regimes based on the exploitation of man by man cause the humiliation of the exploited and the degradation of the human nature of the exploiters;

that only under socialism and communism, when man has been freed from all forms of exploitation - slavery, servitude and capitalism - can the full dignity of the human being be attained; and

that our Revolution uplifted the country and of Cubans;

**WE DECLARE**

our will that the law of laws of the Republic be guided by the following strong desire of José Martí, at last achieved;

"I want the fundamental law of our republic to be the tribute of Cubans to the full dignity of man";

**AND ADOPT**

by means of our free vote in a referendum, the following:

**CONSTITUTION**


## CHAPTER I
### Political, Social and Economic Principles of the State

**...**

**ARTICLE 17**. The State directly administers the goods that make up the socialist property of the entire people, or may create and organize enterprises and entities to administer them, whose structure, powers, functions and the system of their relations are prescribed by law.

These enterprises and entities only answer for their debts through their financial resources, within the limits prescribed by law. The State is not liable for the obligations contracted by the companies, entities, and other legal persons, and the latter are also not liable for the obligations of the State

**...**

**ARTICLE 23**. The State recognizes the property of the mixed companies, companies and economic associations constituted pursuant to the law. The use, enjoyment and disposal of the assets related to the property of said entities is governed by the provisions of the laws and statues as well as by their statues and other governing regulations.

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language***Works*

STATE OF NEW YORK        )
                         )        ss
COUNTY OF NEW YORK   )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of The Constitution of the Republic of Cuba, completed on 1/21/2010, originally written in Spanish.

Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 25th day of January 2010

Notary Public

KAREN OLIVE
Notary Public, State of New York
No. 01OL6146423
Qualified in Queens County
Commission Expires May 15, 2010

## Constitución de la República de Cuba
## Asamblea Nacional del Poder Popular
### Nota

El anteproyecto de la Constitución de la República, durante 1975 fue sometido a discusión pública donde participaron más de 6 millones de personas, y se formularon propuestas que llevaron a modificar 60 de los artículos propuestos.

El 15 de febrero de 1976 se celebró un referendo en el que votó el 98% de los electores, de los cuales el 97,7% lo hizo afirmativamente, alcanzando así su aprobación, mediante el voto libre, directo y secreto de la inmensa mayoría de éstos.

El 24 de febrero de 1976, fue proclamada esta Constitución en acto solemne y público.

El 26 de junio de 1978, la Asamblea Nacional del Poder Popular en uso de sus facultades constitucionales, acordó reformar el artículo 10, inciso a) de la Constitución, a los efectos de que en lo sucesivo la Isla de Pinos pasara a llamarse Isla de la Juventud.

El 12 de julio de 1992 fue aprobada en sesión convocada al efecto, de la Asamblea Nacional del Poder Popular, la Ley de Reforma Constitucional encaminada a cumplimentar las recomendaciones del IV Congreso del Partido Comunista de Cuba adoptadas como resultado del debate público, abierto, franco y sereno con el pueblo, del llamamiento que lo convocó y que evidenció, en lo concerniente a la actividad de los organismos estatales, la necesidad de encontrar vías para hacer aún más representativas nuestras instituciones democráticas y, consecuentemente, adoptar decisiones con vista a perfeccionar sus estructuras, atribuciones y funciones de dirección en sus diferentes instancias; incluir precisiones sobre la gestión del gobierno en provincias y municipios; establecer nuevas formas de elección de los diputados a la Asamblea Nacional y de los delegados a las asambleas provinciales, así como otras cuestiones de interés para la vida institucional del país.

La Constitución también fue modificada con el fin de garantizar y ampliar el ejercicio de numerosos derechos y libertades fundamentales y los derechos civiles y políticos de los ciudadanos y extranjeros.

El 10 de junio del 2002, el pueblo de Cuba, en un proceso plebiscitario popular sin precedentes, puesto de manifiesto tanto en la Asamblea Extraordinaria de las direcciones nacionales de las organizaciones de masas; como en actos y marchas realizados el día 12 del propio mes de junio a todo lo largo y ancho del país, en los que participaron más de nueve millones de personas y para la firma pública y voluntaria de 8 198 237 electores durante los días 15, 16 y 17 de ese mismo mes ratificaron el contenido socialista de esta Constitución en respuesta a las manifestaciones injerencistas y ofensivas del Presidente de los Estados Unidos de América, e interesaron de la Asamblea Nacional del Poder Popular reformarla, para dejar expresamente consignado el carácter irrevocable del socialismo y del sistema político y social revolucionario por ella diseñado, así como que las relaciones económicas, diplomáticas y políticas con otro Estado no pueden ser negociadas bajo agresión, amenaza o coerción de una potencia extranjera, ante la cual el órgano supremo de poder del Estado, en sesión extraordinaria, convocada al efecto, adoptó por unanimidad el Acuerdo No. V-74, por el que se aprobó la Ley de Reforma Constitucional el 26 de junio del 2002

**Comisión de Asuntos Constitucionales y Jurídicos de la Asamblea Nacional del
Poder Popular
Constitución de la República de Cuba
Preámbulo**

**NOSOTROS, CIUDADANOS CUBANOS**, herederos y continuadores del trabajo
creador y de las tradiciones de combatividad, firmeza, heroísmo y sacrificio forjadas por
nuestros antecesores;

**por** los aborígenes que prefirieron muchas veces el exterminio a la sumisión;

**por** los esclavos que se rebelaron contra sus amos;

**por** los que despertaron la conciencia nacional y el ansia cubana de patria y libertad;

**por** los patriotas que en 1868 iniciaron las guerras de independencia contra el
colonialismo español y los que en el último impulso de 1895 las llevaron a la victoria de
1898, que les fuera arrebatada por la intervención y ocupación militar del imperialismo
yanqui;

**por** los obreros, campesinos, estudiantes e intelectuales que lucharon durante más de
cincuenta años contra el dominio imperialista, la corrupción política, la falta de derechos
y libertades populares, el desempleo y la explotación impuesta por capitalistas y
terratenientes;

**por** los que promovieron, integraron y desarrollaron las primeras organizaciones de
obreros y de campesinos, difundieron las ideas socialistas y fundaron los primeros
movimientos marxista y marxista-leninista;

**por** los integrantes de la vanguardia de la generación del centenario del natalicio de
Martí, que nutridos por su magisterio nos condujeron a la victoria revolucionaria popular
de Enero;

**por** los que, con el sacrificio de sus vidas, defendieron la Revolución contribuyendo a su
definitiva consolidación;

por los que masivamente cumplieron heroicas misiones internacionalistas;

**GUIADOS**
por el ideario de José Martí y las ideas político-sociales de Marx, Engels y Lenin;

**APOYADOS**
en el internacionalismo proletario, en la amistad fraternal, la ayuda, la cooperación y la
solidaridad de los pueblos del mundo, especialmente los de América Latina y del Caribe;

**DECIDIDOS**
a llevar adelante la Revolución triunfadora del Moncada y del Granma, de la Sierra y de
Girón encabezada por Fidel Castro que, sustentada en la más estrecha unidad de todas las
fuerzas revolucionarias y del pueblo, conquistó la plena independencia nacional,
estableció el poder revolucionario, realizó las transformaciones democráticas, inició la
construcción del socialismo y, con el Partido Comunista al frente, la continúa con el
objetivo final de edificar la sociedad comunista;

**CONSCIENTES**
de que los regímenes sustentados en la explotación del hombre por el hombre determinan
la humillación de los explotados y la degradación de la condición humana de los
explotadores;

de que sólo en el socialismo y el comunismo, cuando el hombre ha sido liberado de todas
las formas de explotación: de la esclavitud, de la servidumbre y del capitalismo, se

alcanza la entera dignidad del ser humano; y de que nuestra Revolución elevó la dignidad de la patria y del cubano a superior altura;

**DECLARAMOS**

nuestra voluntad de que la ley de leyes de la República esté presidida por este profundo anhelo, al fin logrado, de José Martí:

**"Yo quiero que la ley primera de nuestra República sea el culto de los cubanos a la dignidad plena del hombre";**

**ADOPTAMOS**

por nuestro voto libre, mediante referendo, la siguiente:

**CONSTITUCION**.

## CAPITULO I
Fundamentos políticos, sociales y económicos del Estado

...

**ARTICULO 17**.-El Estado administra directamente los bienes que integran la propiedad socialista de todo el pueblo; o podrá crear y organizar empresas y entidades encargadas de su administración, cuya estructura, atribuciones, funciones y el régimen de sus relaciones son regulados por la ley.

Estas empresas y entidades responden de sus obligaciones sólo con sus recursos financieros, dentro de las limitaciones establecidas por la ley. El Estado no responde de las obligaciones contraídas por las empresas, entidades u otras personas jurídicas y éstas tampoco responden de las de aquél.

...

**ARTÍCULO 23.-** El Estado reconoce la propiedad de las empresas mixtas, sociedades y asociaciones económicas que se constituyen conforme a la ley. El uso, disfrute y disposición de los bienes pertenecientes al patrimonio de las entidades anteriores se rigen por lo establecido en la ley y los tratados, así como por los estatutos y reglamentos propios por los que se gobiernan.

# EXHIBIT D

DECREE-LAW 67

ACT FOR THE ORGANIZATION OF
THE CENTRAL ADMINISTRATION OF
THE STATE

INTERIM PROVISIONS

ARTICLE 1.—The name of this Decree-Law is "Decree-Law for the Organization of the Central Administration of the State" and its purpose is to determine the overall structure of the Central Administration of the State and to establish the bases for the organization and operation thereof.

ARTICLE 2.—The executive and administrative function, as an expression of the People's Power, is governed by the principles enshrined in the Constitution of the Republic and is exercised centrally through the following bodies and organisms:

a) the Council of Ministers and the Executive Committee thereof:

b) the Organisms of the Central Government of the State.

ARTICLE 3.—The Council of Ministers, the Organisms of the Central Administration of the State, the leaders, officials and other employees thereof act within the limits of their respective powers and have the duty to strictly observe and ensure the observance of Socialist law…

**THE ORGANISMS OF THE CENTRAL STATE ADMINISTRATION
THEIR CLASSIFICATION, AUTHORITY, AND NAME**

**ARTICLE 22.** The organisms of the Central State Administration are subordinate to the
Council of Ministers, and are classified into the following categories:

a) State Committees, when they are responsible, in general terms, for the functional
   direction or supervision of issues affecting all the activities and all the organisms
   and institutions of the State.
b) Ministries, when they are responsible for the management and administration of one
   or more branches or sub-branches of the economy, for political, economic, cultural,
   educational, scientific, social, security, or defense activities.
c) Institutes, when they are organisms of the State Administration whose heads are not
   members of the Council of Ministers.

The LanguageWorks, Inc.
1123 Broadway
New York, NY 10010
Tel. 212 447 6060
Fax 212 447 6257

**Language**Works

STATE OF NEW YORK      )
                       )    ss
COUNTY OF NEW YORK     )

## CERTIFICATION

This is to certify that the accompanying, to the best of my knowledge and belief, is a true and accurate translation into English of **Decreto Ley 67 año 1983**, completed on 1/26/2010, originally written in Spanish.

_Yasmin Menon_
Yasmin Menon
Senior Account Executive
The LanguageWorks, Inc.

Sworn to and subscribed before me
This 26th day of January 2010

_Karen Olive_
Notary Public

KAREN OLIVE
Notary Public, State of New York
No. 01OL6146423
Qualified in Queens County
Commission Expires May 15, 2010

# DECRETO-LEY No. 67
# DE ORGANIZACIÓN DE LA ADMINISTRACIÓN CENTRAL DEL ESTADO

## DISPOSICIONES PRELIMINARES

**ARTÍCULO 1.** Este Decreto-Ley se denomina "De Organización de la Administración Central del Estado" y tiene por objeto fijar la estructura general de la Administración Central del Estado y establecer las bases de su organización y funcionamiento.

**ARTÍCULO 2.** La función ejecutiva y administrativa como manifestación del Poder del Pueblo, se rige por los principios consagrados en la Constitución de la República y se ejerce a nivel central mediante los órganos y organismos siguientes:

a) el Consejo de Ministros y su Comité Ejecutivo;
b) los organismos de la Administración Central del Estado.

**ARTÍCULO 3.** El Consejo de Ministros, la Organización de la Administración Central del Estado, sus dirigentes, funcionarios y demás trabajadores actúan dentro de los límites de sus respectivas competencias y tienen la obligación de observar estrictamente la legalidad socialista y velar por el respeto a la misma.

## DE LOS ORGANISMOS DE LA ADMINISTRACIÓN CENTRAL DEL ESTADO, DE SU CLASIFICACIÓN, COMPETENCIA Y DENOMINACIÓN

**ARTÍCULO 22.** Los organismos de la Administración Central del Estado están subordinados al Consejo de Ministros, y se clasifican en:

a) Comité Estatal, cuando tienen a su cargo, generalmente, la dirección funcional o rectora de cuestiones que afectan a todas las actividades y a todos los organismos e instituciones del Estado;

b) Ministerio, cuando tienen a su cargo la dirección y administración de una o varias ramas o subramas de la economía, o de actividades políticas, económicas, culturales, educacionales, científicas, sociales, de seguridad o defensa;

c) Instituto, cuando se trata de un organismo de la Administración del Estado cuyo jefe no forma parte del Consejo de Ministros.

**EXHIBIT E**

**COLECCIÓN LEGISLATIVA DE BOLSILLO**
[Bolsillo Legislation Collection] **Volume VII**


**CODIGO DE COMERCIO**
[Code of Commerce]

IN EFFECT IN THE REPUBLIC OF CUBA


[Followed by various Appendices

containing Supplementary Mercantile Legislation

and Banking Legislation]


REVISED AND COMPARED By

**RAFAEL RODRIGUEZ ALTUNAGA**
Fourth Edition, Substantially Corrected and Expanded


JESUS MONTERO, Editor
Obispo 521
HAVANA
1961

## CÓDIGO DE COMERCIO
[Commercial Code]

Scope

This Code was promulgated in Spain by the Law of August 22, 1885. By Royal Decree on this same date, the *Ministerio de Gracia y Justicia* [Ministry of Pardons and Justice], in compliance with said law, published the current Code of Commerce so that it may be observed as law in the Peninsula and adjacent islands, starting as of January 1, 1886. The publication of the Code began in the **Gaceta de Madrid** [Gazette of Madrid], No. 289 of October 16, 1885, and ended on end on page 648 of No. 328, for November 24 of the same year. This is a clear and careful print.

By Royal Decree of January 28, 1886 *(Gaceta de la Habana* [Gazette of Havana], of February 23), it was stipulated that this Code would govern Cuba from May 1 of this same year "without amendments than those introduced in Articles 179, 201, 453, 547, 550, 559, 798, 934 and 940."

As a sure guide as concerns the text of the *Código de Comercio,* unamended by subsequent Laws, we have seen the beautiful **Edición Oficial** [Official Edition] (1885), put out by the Spanish Government to "serve an the original for all legal purposes", as stated in Article Two of the Royal Decree of August twenty-second, 1885.

The copy in our library bears the seal of the *Ministerio de Gracia y Justicia* which grants authenticity to the text; and it was printed on November 12, 1885, by the Manuel Tello printshop, printers to the Chamber of His Majesty the King.

BOOK TWO

**ON SPECIAL CONTRACTS IN COMMERCE**

**Title One**

**ON MERCANTILE ENTERPRISES**

**SECTION ONE**

**On the Formation of Enterprises and Their Classes**

**Article 116.** - The association contract by which two or more persons agree to place goods, industry or any of these things in common to achieve profits shall be a mercantile contract, regardless of its class, provided that it was formed in accordance with the provisions of this Code.

Once formed, the Mercantile Enterprise shall be a legal personality for all its acts and contracts.

See Articles 165 et seq., 1665, 1670 et seq., 170, C. Civ. [Civil Code],

**Article 117.** - The contract of a mercantile enterprise, entered into with the essential requirements under the law, shall be valid and binding on the contracting parties, regardless of the form, conditions and licit and honest combinations that compose it, provided that they are not expressly prohibited in this Code.

The creation of territorial, agricultural, central and discount Banks, credit enterprises, mortgage enterprises, and construction enterprises shall be permitted.

**Article 122.** - As a general rule, Mercantile Enterprises shall be formed by adopting any of the following forms:

**1.**      A regular association in which all partners, in the collective name and under a enterprise name, agree to participate in the proportion they establish in the same rights and obligations.

**2.**      A limited association, in which one or more subjects contribute a certain amount of capital to a common fund, to participate in the results of the enterprise transactions managed exclusively by others in the collective name.

**3.**      A corporation in which, by forming the common fund, the associates by shares or certain portions, represented by stock or other clear manner, entrust its management to dismissable agents or administrators who represent the Enterprise under a name appropriate to the objective or business for which the funds are intended.

See Articles 139, 145 to 150, 152, 160 etseq., C. Com. [Code of Commerce].

**Article 123.** - Depending on the nature of their operations, Mercantile Enterprises may be:

Credit enterprises, Central and discount
banks, Territorial credit enterprises,
Mining enterprises, Agricultural banks,
Holders of railway, tramway and public works licenses, General storage
warehouses,
And other types, provided that their agreements are licit and their purpose is
industry or commerce.

**Article 124.** - Mutual fire insurance enterprises, tontine life insurance combinations providing old-age assistance and any other class, and production, credit or consumption cooperatives shall be considered mercantile and **be** subject to the provisions of this Code only when they are dedicated [remainder missing from original]

**TransNet USA, Inc.**
235 West 102nd Street, Suite 2M
New York, NY  10025

STATE OF NEW YORK   )
                                          )    ss.:
COUNTY OF NEW YORK  )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate rendition into  English   of   Extract from the Commercial Code of Cuba   written in   Spanish   .

New York,  January 25, 2010.

TransNet USA, Inc.

Susan E. Geddes, Vice President

Sworn to and subscribed before me on January 25, 2010.

LORI A. VOLLMER
Notary Public
State of New York
No.: 01VO5065470
Qualified in Nassau County
Commission Expires:
3 September 2010

COLECCION LEGISLATIVA
DE BOLSILLO
Volumen VII

# CODIGO DE COMERCIO

VIGENTE EN LA REPUBLICA DE CUBA

(Seguido de varios Apéndices contentivos
de la Legislación Mercantil complementaria
y la Legislación Bancaria)

REVISADO Y CONCORDADO

por

RAFAEL RODRIGUEZ ALTUNAGA

Cuarta edición corregida y notablemente aumentada



JESUS MONTERO, Editor
Obispo 521
LA HABANA
.1961



# CÓDIGO DE COMERCIO

### Su Vigencia

Este Código se promulgó en España por la Ley de agosto 22 de 1885. Por Real Decreto de esa misma fecha, el Ministro de Gracia y Justicia, en cumplimiento de esta Ley, publicó el Código de Comercio actual, para que se observe, como ley, en la Península e islas adyacentes, desde el 1º de enero de 1886. La publicación del Código se empezó en la **Gaceta de Madrid**, núm. 289 de Oct. 16 de 1885 y se terminó en la pág. 648 del núm. 328, correspondiente al día 21 de nov. del propio año. Es una impresión nítida y cuidadosa.

Por Real Decreto de 28 de enero de 1886 (Gaceta de la Habana, de 23 de febrero) se dispuso que ese Código rigiera en Cuba desde el 1 de mayo de ese mismo año "sin otras modificaciones que las introducidas en los artículos 179, 201, 453, 547, 550, 559, 798, 934 y 940".

Hemos tenido a la vista, como guía segura, en cuanto al texto del Código de Comercio, no modificado por Leyes ulteriores, la bella **Edición Oficial** (1885), hecha por el Gobierno Español para "servir de original para todos los efectos legales", según reza el artículo segundo del Real Decreto de veintidós de agosto de 1885.

El ejemplar que obra en nuestra biblioteca lleva el sello del Ministerio de Gracia y Justicia que le comunica autenticidad a su texto; —y fue impreso en 12 de noviembre de 1885 en la imprenta de Manuel Tello, impresor de Cámara de Su Majestad el Rey.



# LIBRO SEGUNDO

## DE LOS CONTRATOS ESPECIALES DEL COMERCIO

### Título Primero

## DE LAS COMPAÑIAS MERCANTILES

### SECCION PRIMERA

### De la Constitución de las Compañías y de sus Clases

**Art. 116.**—El contrato de compañía por el cual dos o más personas se obligan a poner en fondo común bienes, industria o alguna de estas cosas para obtener lucro, será mercantil, cualquiera que fuese su clase, siempre que se haya constituido con arreglo a las disposiciones de este Código.

Una vez constituída la Compañía mercantil, tendrá personalidad jurídica en todos sus actos y contratos.

V. arts. 165 y sigs., 1665, 1670 y sigs. 1700 C. Civ.

**Art. 117.**—El contrato de compañía mercantil celebrado con los requisitos esenciales del derecho, será válido y obligatorio entre los que lo celebren, cualesquiera que sean la forma, condiciones y combinaciones lícitas y honestas con que lo constituyan, siempre que no estén expresamente prohibidas en este Código.

Será libre la creación de Bancos territoriales, agrícolas y de emisión y descuento, de Sociedades de crédito, de préstamos hipotecarios, concesionarias de obras

**Art. 122.**—Por regla general, las Compañias mercantiles se constituirán adoptando alguna de las siguientes formas:

1º La regular colectiva en que todos los socios, en nombre colectivo y bajo una razón social, se comprometen a participar, en la proporción que establezcan de los mismos derechos y obligaciones.

2º La comanditaria en que uno o varios sujetos aportan capital determinado al fondo común, para estar a las resultas de las operaciones sociales dirigidas exclusivamente por otros con nombre colectivo.

3º La anónima en que formando el fondo común los asociados por parte o porciones ciertas, figuradas por acciones o de otra manera indubitada, encargan su manejo a mandatarios o administradores amovibles que representen a la Compañia bajo una denominación apropiada al objeto o empresa a que se destine sus fondos.

V. arts. 139, 145 a 150, 152, 160, sigs. C. Com.

**Art. 123.**—Por la indole de sus operaciones, podrán ser las Compañias mercantiles:

Sociedades de crédito;

Bancos de emisión y descuento;

Compañias de crédito territorial;

Compañias de minas;

Bancos agrícolas;

Concesionarias de ferrocarriles, tranvias, y obras públicas.

De almacenes generales de depósito;

Y de otras especies, siempre que sus pactos sean licitos y su fin, la industria o el comercio.

**Art. 124.**—Las Compañias mutuas de seguros contra incendios, de combinaciones tontinas sobre la vida para auxilios a la vejez y de cualquiera otra clase y las cooperativas de producción, de crédito o de consumo, sólo se considerarán mercantiles y quedarán sujetas a las disposiciones de este Código, cuando se dedicaren

