**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NILO JEREZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THE REPUBLIC OF CUBA, FIDEL CASTRO ) | Case No. 1:09-MC-00466 (RWR/AK) |
| RUZ, RAUL CASTRO RUZ, THE CUBAN ) | |
| REVOLUTIONARY ARMED FORCES, and ) | |
| EL MINISTERIO DEL INTERIOR, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES OF CORPORACION HABANOS, S.A., HAVANA RUM & LIQUORS, S.A., CORPORACION CUBA RON, S.A., ARTEX, S.A. AND LABORATORIOS DALMER, S.A. IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE**

Brendon M. Tavelli
(DC Bar No. 492990)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 400 South
Washington, DC 20004
Tel.: 202.416.6800
Fax: 202.416.6899
btavelli@proskauer.com

Michael Krinsky
(PHV pending)
David B. Goldstein
(D.D.C. Bar # NY0034)
Rabinowitz, Boudin, Standard,
  Krinsky & Lieberman, P.C.
111 Broadway, Eleventh Floor
New York, NY 10006
Tel.: 212.254.1111
Fax: 212.674.4614
mkrinsky@rbskl.com
dgoldstein@rbskl.com

*Counsel for Corporacion Habanos, S.A., Havana Rum & Liquors, S.A., Corporacion Cuba Ron, S.A., Artex, S.A. and Laboratorios Dalmer, S.A.*

## TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................1

I. Trademark Law and the U.S.'s International Treaty Obligations Require Denial of the Writ with Respect to the Republic of Cuba's Registration of its Government Warranty Seal ............................................1

II. Corporacion Habanos, S.A., Havana Rum & Liquors, S.A., Corporacion Cuba Ron, S.A., Artex, S.A. and Laboratorios Dalmer, S.A. Are Not "Agencies or Instrumentalities" and Therefore TRIA Is Inapplicable to Their Trademark Registrations ............................................6

    A. Corporacion Habanos, S.A., Havana Rum & Liquors, S.A., Corporacion Cuba Ron, S.A., Artex, S.A. and Laboratorios Dalmer, S.A. Are Not "Organs" .........................................................6

    B. A Majority of the Shares of the S.A.'s Are Not Directly Owned by the Republic of Cuba .......................................................11

    C. Plaintiff Cannot Be Allowed Discovery ........................................12

CONCLUSION ................................................................................................14

Plaintiff has moved for an order to show cause why a Writ of Attachment on Judgment should not be issued against the patents and trademark registrations owned by enterprises and research institutions alleged to be "agencies and instrumentalities" of the judgment debtor, the Republic of Cuba.  (Dkt. 48; hereinafter, "P. Mem.").  Sixteen of the named entities have filed a joint opposition to Plaintiff's motion.  The five instant owners – Corporacion Habanos, S.A.; Havana Rum & Liquors, S.A.; Corporacion Cuba Ron, S.A.; Artex, S.A. and Laboratorios Dalmer, S.A**.** – adopt that opposition in its entirety, but respectfully file this separate opposition in order to present issues distinct to them.

The arguments advanced in the adopted opposition should be addressed first, as they dispose of Plaintiff's motion in its entirety without any need to reach the distinctive issues presented here.

In order to avoid burdening the Court with needless repetition, it is assumed that the Court will review the adopted opposition before turning to the instant opposition.

## ARGUMENT

**I.     Trademark Law and the U.S.'s International Treaty Obligations Require Denial of the Writ with Respect to the Republic of Cuba's Registration of its Government Warranty Seal**

1.     Among the property at issue is the Republic of Cuba's registration of its Government Warranty Seal (USPTO No. 72/153,423), by which the Cuban Government gives *its official* warranty that cigars are of Cuban origin. (Dkt. 48-1, at 2, 8, 15).  The registered certification mark states: REPUBLICA DE CUBA CUBAN GOVERNMENT'S WARRANTY FOR CIGARS EXPORTED FROM HAVANA SELLO DE GARANTIA NACIONAL DE PROCEDENCIA PARA TABACOS.  (Dkt. 10-5, at 2-3).  (The Spanish portion means "National Seal of Warranty of the Origins of Cigars.")

The Republic of Cuba established the Government Warranty Seal nearly a century ago in 1912 "to authenticate the quality and origin of exported Cuban tobacco." Law 1182 (Sept. 15, 1965), 16 *Gaceta Oficial* 413, Sept. 21, 1965, Whereas Clause (*citing* Law of 1912). (Dkt. 13-1, at 6). Under Cuban law, the Government Warranty Seal must be applied to all cigars exported from Cuba. *See* Law of 1912 (July 16, 1912), 22 *Gaceta Oficial* 981, July 25, 1912, Article 1 (creating a "certificate of origin in the form of a seal or special band representing a national guarantee … which *shall be applied* to *all* boxes or packages of cigars produced … for export.") (emphasis added); Dkt. 10-5, at 8-9.

In addition to opposing attachment of its own trademark registrations, Corporacion Habanos, S.A, a Cuban cigar company, opposes attachment of the Government Warranty Seal Registration. As a Cuban cigar company, it is obligated by Cuban law to affix the Government Warranty Seal to its exports, and it has a substantial interest in doing so: the Government Warranty Seal provides the most reliable possible guarantee to potential consumers that cigars are of Cuban origin. Corporacion Habanos, S.A.'s standing to object to possibly false or confusingly misleading representations as to the Cuban-origin of cigars has been recognized. *See Corporacion Habanos, S.A. v. Anncas, Inc*., 88 U.S.P.Q.2d 1785, 1792-93 (T.T.A.B. 2008); *Corporacion Habanos, S.A. v. Guantanamera Cigar Co.,* 86 U.S.P.Q.2d 1473, 1479 (T.T.A.B. 2008).

Camara de Comercio has moved to intervene in opposition to execution upon the Government Warranty Seal Registration. Its motion is pending. (Dkt. 13). Camara agrees that Corporacion Habanos, S.A. is entitled to defend the Government Warranty Seal registration. However, Camara maintains that it is entitled to intervene nonetheless because its interests are different and broader. (Dkt. 13 at 10).

2.   The adopted opposition demonstrates that execution upon the 43 trademark registrations and applications for registration at issue is precluded by the "assignment in gross" rule, and that the Circuit's application of that rule in *Rogers v. Ercona Camera Corp.*, 277 F.2d 94, 99 (DC. 1960) is dispositive.  Additional objections apply to the Government Warranty Seal registration.

Any forced transfer or sale of the Republic of Cuba's Government Warranty Seal registration would necessarily constitute a fraud on consumers.  The Government Warranty Seal provides an official, governmental certification and warranty of "the origin of the tobacco products with which the mark is used."  Not only is no non-Cuban person in a position to certify the Cuban origin of cigars or tobacco, but the notion that a private party can act as if it were the Republic of Cuba and provide its official Warranty and Guaranty of the authenticity of the Cuban origin of tobacco products is absurd.

Moreover, and critically, treaties to which both Cuba and the United States are parties require rejection of the Writ with respect to the Government Warranty Seal registration.  The General Inter-American Convention for Trade Mark and Commercial Protection (the "IAC"), Art. 4, 46 Stat. 2907 (1930) requires State parties to "cancel the registration and to prohibit the use, without authorization *by competent authority*, of marks which include ... *official labels, certificates or guarantees*...."  (emphasis added).  The Government Warranty Seal is an official label, certificate and guarantee, and the "competent authority" is the Republic of Cuba.  Without the Republic of Cuba's authorization, IAC Art. 4 prohibits any party from holding the registration for or using the Government Warranty Seal.

Similarly, Article 6*ter* of the Paris Convention for the Protection of Industrial Property, July 14, 1967, 21 U.S.T. 1583, T.I.A.S. No. 6923, requires State parties "to refuse or to

3

invalidate the registration, and to prohibit ... the use, without authorization by the competent authorities, either as trademarks or as elements of trademarks, ... *official signs and hallmarks indicating control and warranty* adopted by them...." (Emphasis added). The "competent authorities" whose authorization is required are the State parties to the Convention. The "official signs and hallmarks indicating control and warranty adopted by them" "certify *that a State or an organization duly appointed by a State* to that effect has checked that certain goods meet specific standards or have a given level of quality." World Intellectual Property Organization, "General Information on Article 6*ter*," *available at* http://www.wipo.int/article6ter/en/general_info.htm (emphasis supplied). Article 2 of the Agreement on Trade-Related Aspects of Intellectual Property Rights ("TRIPs") 33 I.L.M. 81 (1994), incorporates Article 6*ter* of the Paris Convention, thereby subjecting any violation of Article 6ter to WTO dispute resolution and sanctions.

Additionally, the United States is obligated to protect foreign "geographical indications," such as the Government Warranty Seal, by TRIPs, Article 22, and IAC. Arts. 23-28. The United States maintains that it honors these international obligations, by, *inter alia*, permitting foreign parties to register certification marks pursuant to 15 U.S.C § 1054. *See* USPTO, *Geographical Indication Protection in the United States, available at* www.uspto.gov. The United States would violate TRIPs and the IAC were it to preclude the Republic of Cuba from doing just that, by subjecting the Government Warranty Seal registration to execution in satisfaction of Plaintiff's default judgments. By the same token, the United States would violate these TRIPs and IAC obligations by allowing transfer of the registration to non-Cuban parties.

TRIA's "notwithstanding any other provision of law" clause does not exempt Plaintiff from the noted principles of trademark law and the intellectual property treaties to which the

4

United States is a party. Every court to address the TRIA "notwithstanding clause" has held that it *only* trumps laws conferring sovereign or diplomatic immunity from execution, or TWEA/IEEPA prohibitions on execution without OFAC license – not unrelated substantive law, such as intellectual property law. *See  U.S. v. Holy Land Found. For Relief & Dev.*, 445 F.3d 771, 787 (5th Cir. 2006) (clause does not "preempt[], trump[], or otherwise interfere[]" with statute that "do[es] not involve … FSIA immunity from execution[]"), *vacated on other grounds*, 493 F.3d 469 (2007) (en banc); *Hill v. Republic of Iraq*, 2003 WL 21057173, at *2 (D.D.C. Mar. 11, 2003); *Weininger v. Castro, Weininger v. Castro*, 462 F. Supp. 2d 457, 488-89 (S.D.N.Y. 2006) ("'notwithstanding any other provision of law' language specifically addresses immunity"); *Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*, 280 F. Supp. 2d 314, 319 (S.D.N.Y. 2003), *aff'd*, 346 F.3d 264 (2d Cir.).

The United States agrees with this uniform authority. *See* Statement of Interest, at 15 n.12, in *Martinez v. Republic of Cuba*, No. 10-20611, United States District Court for Southern District of Florida, Dkt. 46 (Mar. 31, 2010) *available on* Pacer. Citing with approval *Smith v. Federal Reserve Bank*, 346 F.3d 264, 271 (2d 2003), the United States explained that a "notwithstanding clause in a statute works in tandem with the substantive reach of the provision to which it is attached. Section 201 of TRIA pertains to and thus overrides only those prior laws that limit the attachment and execution of blocked assets of terrorist parties."

Further, the legislative history of TRIA demonstrates that the "notwithstanding" clause was intended precisely and exclusively to overcome the obstacles to the satisfaction of the specified types judgments posed by the CACR and the immunity conferred by the FSIA upon property of a foreign state and its agencies and instrumentalities. *See* the adopted Opposition, at 14-16.

5

The Court is obligated to construe and apply TRIA consistent with the noted treaties. "An act of Congress ought never to be construed to violate the law of nations if any other possible construction remains," *Port Authority of New York & New Jersey v. Dept. of Transp*, 479 F.3d 21, 31 (D.C. Cir. 2007) (quoting *Murray v. The Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804); *see also, e.g., F. Hoffmann- LaRoche Lt. V. Emparagan S.A.*, 542 U.S. 155, 164 (2004) (same). Additionally, the General Inter-American Convention is a self-executing treaty. *See Bacardi Corp. of America v. Domenech*, 311 U.S. 150 (1940). As shown, it is "possible" to construe TRIA not to violate the noted intellectual property treaties. The result is that the demanded Writ must be denied with respect to the Government Warranty Seal.

## II. Corporacion Habanos, S.A., Havana Rum & Liquors, S.A., Corporacion Cuba Ron, S.A., Artex, S.A. and Laboratorios Dalmer, S.A. Are Not "Agencies or Instrumentalities" and Therefore TRIA Is Inapplicable to Their Trademark Registrations

TRIA, § 201(a), which establishes a limited exception to FSIA § 1609 immunity, applies only to the property of an "agency or instrumentality" of the judgment debtor foreign state. The FSIA, § 1603(b), defines an "agency or instrumentality" of a foreign state as "any entity – … which is an organ of a foreign state…, or a majority of whose shares or other ownership interest is owned by the foreign state…" Under TRIA, it is Plaintiff's burden to show agency or instrumentality status. *See also e.g., Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181, 198-99 (D.D.C. 2008); P. Mem at 13.

### A. Corporacion Habanos, S.A., Havana Rum & Liquors, S.A., Corporacion Cuba Ron, S.A., Artex, S.A. and Laboratorios Dalmer, S.A. Are Not "Organs"

Plaintiff principally relies on FSIA § 1603(b)'s "organ" prong to assert that Corporacion Habanos, S.A., Havana Rum & Liquors, S.A., Corporacion Cuba Ron, S.A., Artex, S.A. and Laboratorios Dalmer, S.A. (collectively, the "S.A.'s" for "Sociedades Anonimas") are "agencies

6

or instrumentalities" of the Republic of Cuba. *See* P. Mem. at 11. However, as the very cases Plaintiff relies upon demonstrate, they are not "organs" as a matter of law. In order to establish that an entity is an "organ" under the FSIA, it must be shown that an entity, *inter alia*, must either:

    (a)    carry out traditional governmental functions; *see, e.g., Murphy v. Korea Asset Management Corp.*, 421 F. Supp. 2d 627 (S.D.N.Y. 2005); *Filler v. Hanvit Bank*, 378 F.3d 213 (2d Cir. 2004), cited by Plaintiff and *infra*;

    (b)    possess governmental authority, *see, e.g., Gates v. Victor Fine Foods*, 54 F.3d 1457, 1460-61 (9th Cir. 1995) (marketing board for hog producers was an organ where "board resemble[d] an administrative agency"; "ordinary pork processing plant [] cannot be considered an 'organ'"); or

    (c)    at least in the view of some courts, be a "quasi-public entity" such "as national banks, state universities and public television networks," *EOTT Energy Operating Ltd. Partnership v. Winterth*, 257 F.3d 992, 997 (9th Cir. 2001), or be established to explore and exploit the nation's sovereign natural mineral and energy resources, *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir. 2000).

    As the court in *Filler v. Hanvit Bank* explains, the critical inquiry is guided by the restrictive theory of sovereign immunity, in which immunity applies "to [a state's] sovereign or public acts (*jure impreii*), but not as to those that are private or commercial in character (*jure gestionis*).'" *Hanvit Bank*, 378 F.3d at 220 (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 359-60 (1993)). *See also, e.g.*, *Ocean Line Holdings Ltd. v. China Nat. Chartering Corp.*, 578 F. Supp. 2d 621, 625, 626 (S.D.N.Y. 2008) (Chinese commercial chartering company was not organ because it was not "formed to perform governmental functions, but rather to engage in the

shipping industry").

In the cases relied upon by Plaintiff, *Murphy v. Korea Asset Management Corp.*, 421 F. Supp. 2d 627 (S.D.N.Y. 2005) and *Filler v. Hanvit Bank*, 378 F.3d 213 (2d Cir. 2004), there was no question that the Korean Asset Management Corporation ("KAMCO") and the Korean Deposit Insurance Corporation ("KDIC") were organs of the state because they performed "functions traditionally performed by the government," functions, indeed, like those performed by the U.S. Federal Deposit Insurance Corporation and the U.S. Federal Reserve Bank. *Hanvit Bank*, 378 F.3d at 217; *see also Murphy*, 421 F. Supp. 2d at 632 (KAMCO found to be 'organ' because it performed "several functions most often associated with and in most cases reserved for-governments or their agencies").

In *Murphy*, the KAMCO was charged under Korean law with "rescu[ing] Korean financial institutions by purchasing and disposing of non-performing loans at prices in excess of what the loan would be worth on the open market … improving the liquidity and soundness of the financial institutions … oversee[ing] and control[ing] a public fund backed by government securities … [and] conduct[ing] public auctions of property seized by the Korean Tax Authority or the Korean Customs Authority." *Id.* at 632, 642; *see also id.* at 633 ("KAMCO performs … governmental functions"); *id.* ("KAMCO acts-in many, if not most respects as would any agency of the Korean government").

In *Hanvit Bank*, the KDIC was a "'special legal entity' … run by the Korean Ministry of Finance and the Economic of the Republic of Korea … [that] perform[ed] functions traditionally performed by the government (protecting depositors and promoting financial stability)." 378 F.3d at 216, 217; *compare* "Who is the FDIC?," *available at* http://www.fdic.gov/about/learn/symbol/index.html (FDIC "preserves and promotes public

8

confidence in the U.S. financial system by insuring deposits in banks and thrift institutions …; by identifying, monitoring and addressing risks to the deposit insurance funds; and by limiting the effect on the economy and the financial system when a bank or thrift institution fail").

By stark contrast, Plaintiff does not even allege that the five Sociedades Anonimas perform any traditional governmental functions, have governmental authority, or are akin to quasi-public institutions. The S.A.'s are – as Plaintiff plainly recognizes: (1) commercial companies; (2) that engage in ordinary commercial businesses, the sale or manufacture of consumer products (cigars, rum, music CD's, pharmaceuticals);[1] (3) engage in ordinary commercial transactions; (4) do not possess any governmental authority; (5) are not considered "agencies or instrumentalities" or "organs" under Cuban law; (6) are different than "state enterprises" under Cuban law; (7) hire their own employees, who are not government employees; and (8) are managed by a Board of Directors chosen by the shareholders and by officers selected by the Directors. *See* Declarations cited in n.1, *supra*; Declaration of Juan Mendoza Diaz, dated Jan. 22, 2010 (expert on Cuban law.) (Dkt. 37-6); *see also* P. Mem at 12 (not contesting that "the entities were created in order to partake in commercial affairs"); *see also id.* at 9-11 (only quoting sections of Cuban Constitution relating to commerce).

Their activities are quintessentially "private or commercial in character (*jure gestionis*)," not "sovereign or public acts (*jure impreii*)" under the restrictive theory of sovereign immunity,

---

[1] Corporacion Habanos, S.A., sells (but does not produce) cigars; Artex, S.A, produces and sells music CD's; Corporacion Cuba Ron S.A. produces and sells rum and other alcoholic beverages; Havana Rum & Liquors S.A. sells beverages and liquors; Laboratorios Dalmer S.A. produces and sells pharmaceutical products. *See* Declaration of Luis Francisco Perdomo Hernandez, dated Jan. 25, 2010 (Havana Rum & Liquors, S.A.) (Dkt. 37-5); Declaration of Luis Francisco Perdomo Hernandez, dated Jan. 25, 2010 (Cuba Ron, S.A.) (Dkt. 37-2); Declaration of Jose Ruiz Paez, dated Jan. 20, 2010 (Artex, S.A.) (Dkt. 37-1); Declaration of Dr. Carlos Guitierrez Calzado, dated Jan. 22, 2010 (Laboratorios Dalmer, S.A.) (Dkt. 37-3); Declaration of Adargelio Garrido de la Grana, dated Jan. 15, 2010 (Habanos, S.A.) (Dkt. 37-4).

9

which provides the guiding principles for classifying an entity as an "organ" or not. *Hanvit Bank*, 378 F.3d at 220

Plaintiff argues only that because, under Plaintiff's reading of the Constitution of the Republic of Cuba, the state "controls and directs the exterior commerce," "organizes, directs and controls national economic activity," "guides, foments and promotes the education, the culture, and the sciences" and "own[s]" certain properties, these admittedly commercial enterprises must be organs of the state because they were "created with a 'national purpose.'" P. Mem at 9, 10, 11-12. This argument flies in the face of the restrictive theory of sovereign immunity, which looks to the *nature* of the activities performed, not their *purpose*. *Hanvit Bank*, 378 F.3d at 220.

Plaintiff's argument also would reverse the Supreme Court's decision in *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003). In *Dole*, the Court held that an entity is not an "agency or instrumentality" just because it is owned by an entity that is owned by the foreign state. If Plaintiff's analysis was accepted, the third tier entity would always be an "agency or instrumentality:" the state establishes a corporation only because it believes it will serve the "national purpose," and that corporation establishes a subsidiary only because it believes that the third-tier corporation can further that "national purpose" as well. Plaintiff's argument fundamentally misunderstands the FSIA § 1603(b)'s "organ" test, which is a discriminating one.

While sometimes noting an entity's "national purpose," the courts have required much more before classifying an entity as an "organ." *See, e.g.*, *China Nat. Chartering Corp.*, 578 F. Supp. 2d at 625, 626. As described above, the courts have only held entities to be "organs" where they: (1) carry out traditional governmental functions; (2) have governmental authority, or (3) in some cases, are quasi-public entities. Commercial entities that merely produce, market or transport commodities for sale - the Sociedades Anonimas - are not "organs" under the FSIA §

1603(b).  *See, e.g.*, *Hanvit Bank*, 378 F.3d at 220 (finding that second and third tier commercial banks owned by KDIC were not "organs" because "while KDIC serves a public function in ensuring the stability of the South Korean banking system, the same cannot be said of the defendant Banks"); *China Nat. Chartering Corp.*, 578 F. Supp. 2d at 625, 626 (Chinese commercial chartering company that was not "formed to perform governmental functions, but rather to engage in the shipping industry" was not an organ).

Plaintiff has failed to address, let alone establish, the critical "organ" factors and he cannot do so, because entities such as the five S.A's lack the requisite characteristics. .  He has also not addressed, let alone established, the subsidiary factors, which also militate against his position.  His assertion that the five S.A.'s are "organs" must be denied.

>   **B.     A Majority of the Shares of the S.A.'s Are Not Directly Owned by the Republic of Cuba**

In *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), the Supreme Court held that the FSIA's majority ownership provision requires the foreign state to *directly* own the entity's shares, and rejected as inadequate the foreign state owning the company that owns the entity in question.  *Id.* at 474, 477.  *See also*, *e.g.*, *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 183-84 (D.D.C. 2007) (company whose majority shareholder was wholly-owned direct subsidiary of Russian Federation held not to be agency or instrumentality under *Dole*).

Under *Dole*, the Sociedades Anonimas do not qualify as "agencies or instrumentalities" under the majority ownership provision.  The shares of the Sociedades Anonimas are owned entirely by other Cuban juridical entities or, in the case of Habanos, S.A., fifty percent by a Cuban juridical entity and fifty percent by a Spanish corporation.  The Spanish owner, ITI Cigars, S.L., is a wholly owned subsidiary of Altadis, S.A., a Spanish corporation, which, in turn, is a wholly owned subsidiary of the British corporation, Imperial Tobacco Group PLC.  None of

11

the shares of the Sociedades Anonimas are owned by the Republic of Cuba. *See* the Declarations cited above, and the exhibits thereto.

Plaintiff focuses on "control" instead of direct majority ownership, but the Supreme Court expressly rejected that approach. *Dole*, 538 U.S. at 471, 477; *see also Allen*, 522 F. Supp. 2d at 184, 185 (focus on control "is nothing more than a frontal assault on the Supreme Court's decision in *Dole* … [that renders the] Supreme Court's holding that control is legally irrelevant … meaningless…").

Plaintiff simply ignores *Dole* altogether; makes no attempt to show any direct ownership interest by the Republic of Cuba; cites no cases concerning FSIA § 1603(b)'s majority ownership prong; and his single, offhand reference to the Republic's "ownership," P. Mem at 9, is made under a pre-*Dole* assumption that indirect ownership suffices. Clearly, Plaintiff has failed to establish that the Sociedades Anonimas are "agencies or instrumentalities" under the FSIA's majority ownership prong.

### C. Plaintiff Cannot Be Allowed Discovery

As shown, the Sociedades Anonimas cannot be agencies or instrumentalities of the Republic of Cuba as a matter of law, and, therefore, Plaintiff's request for discovery must be denied. Moreover, on Plaintiff's theory, every single Cuban commercial entity would be subject to discovery, merely by plaintiff's citation to the Cuban Constitution.

In *Crist v. Republic of Turkey*, 995 F. Supp. 5 (D.D.C. 1998), just as in this case, plaintiffs "provide[d] th[e] court with nothing more than conjecture and surmise in support of their jurisdictional theory" and the court therefore denied plaintiffs' request for jurisdictional discovery. 995 F. Supp. at 13. "Requests for jurisdictional discovery should be granted only if the plaintiff presents non-conclusory allegations that, if supplemented with additional

12

information, will materially affect the court's analysis with regard to the applicability of the FSIA." *Id.* at 12 (citations and internal quotations omitted).

Here, discovery must also be denied because, despite this being the *third* time that Plaintiff has alleged that the Sociedades Anonimas are "agencies or instrumentalities" of the Republic of Cuba – once in the Eastern District of Virginia, and once before here, Mem. Order (Dkt. 43), at 2, Plaintiff has failed to "present[]" any "non-conclusory allegations" that the S.A.'s qualify as "organs," the law is clear that commercial entities such as the S.A.'s, including those in China, are not "organs;" Plaintiff has not cited to one case that would support a contrary position, and he has made no showing whatsoever of direct majority ownership.[2]

---

[2] Further, Plaintiff, despite this being his third effort, has not come forward with a qualified, let alone persuasive, expert. With all due respect for his qualifications as a historian of selected topics in pre-Revolution Cuba, Prof. Cova does not qualify as an expert on Cuban administrative structures or Cuban law. A Visiting Assistant Professor of History at the University of North Carolina – Greensboro, his principal publications have been a book on a Cuban General who fought in the U.S. Civil War, and a book on Cuban history in the early 1950's. He has not published a single paper on Cuban administrative structures or Cuban law. He has published or delivered a few papers on the post-Revolution period but they have been about U.S.-Cuba relations and immigration. He has not taught any courses on Cuba. His graduate work had nothing to do with post-Revolution administrative structures or Cuban law. Dkt. 25-2.

Notwithstanding this lack of expertise on Cuban administrative structures and Cuban law, Prof. Cova has ventured opinions principally on the basis of his reading of the Cuban Constitution. His subsidiary reliance on random websites and press reports fails to meet the *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) requirements of demonstrably reliable methodology, demonstration that the proposed expert's opinions are "based upon sufficient facts or data" and are the product of reliable principles and methods; and that the principles and methods have been applied reliably to the facts of the case." *See U.S. v. Simmons*, 431 F. Supp. 2d 38, 74-75 (D.D.C. 2006) (quoting Fed. R. Evid. 702); *see also Young v. Burton*, 567 F. Supp. 2d 121, 128 (D.D.C. 2008) (citing *Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1127 n. 9 (D.C. Cir.2001)) (party proposing expert opinion's burden to establish admissibility under Fed. R. Evid. 702).

Underscoring the inadequacy of his expertise and methodology, Prof. Cova relies on various medical and newspaper articles that do not show that the S.A.'s are directly owned by the Republic of Cuba. For example, the only "proof" concerning Laboratorios Dalmer S.A., in addition to citations to the Cuban Constitution, is an article that merely states that Dalmer "markets products for the National Centre for Scientific Research." *See* Dkt., 25 at Ex. D, ¶ j.

Finally, the adopted joint opposition presents ample grounds for denial of Plaintiff's motion with prejudice on purely legal grounds, without any need for discovery. They should be decided before considering whether to subject the five Sociedades Anonimas to expensive and burdensome – and ultimately futile – discovery.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for an order to show cause why a Writ of Attachment should not issue should be denied with prejudice.

Dated: May 20, 2010                                  Respectfully submitted,


   /s/
Brendon M. Tavelli
(D.C Bar No. 492990)
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., NW
Suite 400 South
Washington, DC 20004
Tel.: 202.416.6800
Fax: 202.416.6899
btavelli@proskauer.com

   /s/
Michael Krinsky, Esq.
(PHV pending)
David B. Goldstein
(D.D.C. Bar # NY0034)
RABINOWITZ, BOUDIN, STANDARD,
  KRINSKY & LIEBERMAN, P.C.
111 Broadway, Eleventh Floor
New York, New York 10006
Tel.:    212.254.1111
Fax:    212.674.4614
mkrinsky@rbskl.com

*Counsel for Corporacion Habanos, S.A., Havana Rum & Liquors, S.A., Corporacion*

14

*Cuba Ron, S.A., Artex, S.A. and
Laboratorios Dalmer, S.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Corporacion Habanos, S.A., Havana Rum & Liquors, S.A., Corporacion Cuba Ron, S.A., Artex, S.A. and Laboratorios Dalmer, S.A.'s Memorandum Of Points And Authorities In Opposition To Plaintiff's Motion For an Order to Show Cause is being served upon all counsel of record who have consented to electronic service via the Court's CM/ECF system; is being served by DHL/World Wide Express upon the Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, the Cuban Revolutionary Armed Forces and El Ministerio del Interior at the addresses listed on the Service List on this 20th day of May, 2010.

                                                /s/
                                            Brendon M. Tavelli
                                            (DC Bar No. 492990)
                                            PROSKAUER ROSE LLP
                                            1001 Pennsylvania Ave., NW
                                            Suite 400 South
                                            Washington, DC 20004
                                            Tel.: 202.416.6800
                                            Fax: 202.416.6899
                                            btavelli@proskauer.com

## SERVICE LIST

Republic of Cuba
c/o Bruno Rodríguez Parilla
Ministerio de Relaciones Exteriores
Calzada #360
Vedado, La Habana, Cuba

Fidel Castro Ruz
Comite Central del Partido Comunista
Plaza de la Revolucion
Havana, Cuba

Raul Castro Ruz
Consejo de Ministros

Plaza de la Revolucion
Havana, Cuba

Raul Castro Ruz
Consejo del Estado
Plaza de la Revolucion
Havana, Cuba

The Cuban Revolutionary Armed Forces
Plaza de la Revolucion
Havana, Cuba

El Ministerio del Interior
Plaza de la Revolucion
Havana, Cuba