UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
NILO JEREZ,                     )
                                )
        Plaintiff,              )
                                )
        v.                      )  Misc. Action No. 09-466 (RWR)
                                )
REPUBLIC OF CUBA, et al.,        )
                                )
        Defendants.             )
_____)
```

## MEMORANDUM OPINION

Plaintiff Nilo Jerez brought this action to enforce a default judgment against defendants the Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, the Cuban Revolutionary Armed Forces and El Ministerio Del Interior. The motion by entities that Jerez alleged in an application for a writ of attachment are agencies and instrumentalities of the Republic of Cuba ("third party movants")[1] to vacate the writ of attachment, Jerez's motion for an order to show cause why the writ of attachment should not be issued against the third party movants, and the intervenor Camara de Comercio's motion to vacate the writ of attachment were referred to Magistrate Judge Alan Kay who found that there was no subject matter jurisdiction to enforce Jerez's state court default judgment and that Jerez's writ of attachment was not enforceable. Jerez filed objections under Local Civil Rule

---

[1] See Appl. for Writ of Attach. on J., Schedule A; Pl.'s Mot. for Order to Show Cause at 2 n.1; id., Ex. A (Appl. for Writ of Attach. on J., Schedule A).

72.2(b) to the magistrate judge's order.[2]  Because the magistrate judge's rulings as to subject matter jurisdiction are not clearly erroneous or contrary to law, Jerez's objections will be overruled.

BACKGROUND

The extensive factual and procedural history of this dispute is set forth in detail in Jerez v. Republic of Cuba, 777 F. Supp. 2d 6 (D.D.C. 2011).  Briefly, Jerez filed a complaint in 2005 in Florida state court against the Republic of Cuba, Fidel Castro Ruz, Raul Castro Ruz, the Cuban Revolutionary Armed Forces and El Ministerio del Interior seeking damages for the physical and mental torture he allegedly endured when he was incarcerated in Cuban prisons in the early 1970's.  Id. at 10-11.  Jerez alleged that he was purposefully infected with Hepatitis C and developed cirrhosis of the liver, among other injuries.  Pl.'s Objections to Magistrate Judge's Mem. Op. and Order ("Pl.'s Objs.") at 6. In 2007, Jerez obtained a default judgment against the defendants in the Florida state court.  Id. at 8; Opp'n to Pl.'s Objections by Centro de Bioactivos Químicos et al. ("Defs.' Opp'n") at 2. In May 2009, the United States District Court for the Southern District of Florida granted full faith and credit to the state

_____

[2] The third party movants also filed a motion for leave to file a surreply and the plaintiff moved for a status conference and/or oral argument on his objections.  These motions will be denied as moot in light of the lack of subject matter jurisdiction.

court judgment and entered default judgment against the
defendants.  Pl.'s Objs. at 9; Defs.' Opp'n at 2.  In September
2009, Jerez registered his Southern District of Florida default
judgment in this court and filed a writ of attachment seeking to
attach assets of the named defendants and of entities alleged to
be agencies and instrumentalities of the defendants.  Pl.'s Objs.
at 9; Defs.' Opp'n at 3.  Third party movants whose property
Jerez sought to attach, but who were not named as defendants in
the Southern District of Florida's default judgment, moved to
vacate the writ.[3]  Jerez then moved for an order to show cause
why a writ of attachment should not be issued against the
agencies and instrumentalities of the Republic of Cuba and its
co-defendants.  Camara del Comercio, which was permitted to
intervene, moved to vacate plaintiff's writ of attachment with
respect to the Republic of Cuba's registration of its
certification mark for Cuban Cigars.  Magistrate Judge Kay found
that the Florida state court did not have subject matter
jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"),
28 U.S.C. §§ 1330, 1602 et seq.  Jerez, 777 F. Supp. 2d at 25-26.
In addition, the magistrate judge found that the writ of
attachment was unenforceable under the Cuban Assets Control
Regulations and related statutory authority even if the Florida

---

[3] The magistrate judge quashed the writ on the grounds that
it listed as defendants more than the defendants named in the
Southern District of Florida's judgment.  Jerez filed a corrected
application for a writ of attachment on April 15, 2010.

state court had subject matter jurisdiction.  Id. at 29.
Finally, the magistrate judge decided that the attachment of the
trademark would be impermissible.  Id. at 32.  Jerez filed
objections to the magistrate judge's decision arguing that the
magistrate judge erred on each issue.

## DISCUSSION

"Upon consideration of objections filed . . . , a district
judge may modify or set aside any portion of a magistrate judge's
order . . . found to be clearly erroneous or contrary to law."
LCvR 72.2(c); see also Fed. R. Civ. P. 72(a).  Factual findings
are subject to the clearly erroneous standard and will be
affirmed unless "the reviewing court on the entire evidence is
left with the definite and firm conviction that a mistake has
been committed."  Am. Ctr. for Civil Justice v. Ambush, 794 F.
Supp. 2d 123, 129 (D.D.C. 2011) (internal quotation marks
omitted).  "The contrary to law standard, by contrast, permits de
novo review of a magistrate judge's legal conclusions."  Id.
(internal quotation marks omitted).

I.   SUBJECT MATTER JURISDICTION

Jerez objects to the magistrate judge's decision that there
is no subject matter jurisdiction under the FSIA.  The FSIA is
the "'sole basis for obtaining jurisdiction over a foreign state
in our courts.'" Nemariam v. Fed. Democratic Republic of
Ethiopia, 491 F.3d 470, 474 (D.C. Cir. 2007) (quoting Argentine

Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989)).  "Under the FSIA, a court may entertain jurisdiction over a civil complaint directed against a foreign sovereign 'only if the foreign state lacks immunity under the Act's prescriptions[.]'"  Doe v. Bin Laden, 580 F. Supp. 2d 93, 96 (D.D.C. 2008) (alteration in original) (quoting Practical Concepts, Inc. v. Republic of Bolivia, 811 F.2d 1543, 1544 (D.C. Cir. 1987)).  "When a defendant qualifies for sovereign immunity, 'the federal courts lack subject matter jurisdiction' over proceedings against that defendant, and therefore 'must dismiss the case' against the immune defendant."  Inversora Murten, S.A. v. Energoprojekt Holding Co., 671 F. Supp. 2d 152, 155 (D.D.C. 2009) (quoting Auster v. Ghana Airways, Ltd., 514 F.3d 44, 48 (D.C. Cir. 2008)).  "An agency or instrumentality of a foreign state is treated as a foreign state under the FSIA, . . . and thus is 'immune from the jurisdiction of the courts of the United States.'"  Id. (quoting Peterson v. Islamic Republic of Iran, 563 F. Supp. 2d 268, 273 (D.D.C. 2008)).  The FSIA provides exceptions which allow a plaintiff to bring suit when particular conditions are met.  Bin Laden, 580 F. Supp. 2d at 96 (citing 28 U.S.C. § 1605).  The plaintiff bears the burden of showing that an FSIA exception allows waiver of the defendants' sovereign immunity.  Id. at 96-97 (citing Youming Jin v. Ministry of State Sec., 475 F. Supp. 2d 54, 61 (D.D.C. 2007)).

Jerez argues that two waivers of sovereign immunity are applicable under the FSIA: the non-commercial tort exception under 28 U.S.C. § 1605(a)(5) and the terrorism exception under 28 U.S.C. § 1605(a)(7).

A.   Non-commercial tort exception

Under the non-commercial tort exception, a waiver of sovereign immunity is appropriate where a party seeks money damages against a foreign state when the injury was caused by "the tortious act or omission of that foreign state or of any official[.]"  28 U.S.C. § 1605(a)(5).  It is well-settled in the D.C. Circuit that under this provision, "both the tort and the injury must occur in the United States."  Persinger v. Islamic Republic of Iran, 729 F.2d 835, 842 (D.C. Cir. 1984); accord Cicippio v. Islamic Republic of Iran, 30 F.3d 164, 169 (D.C. Cir. 1994).  The Supreme Court has recognized that "Congress' primary purpose in enacting § 1605(a)(5) was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States[.]"  Amerada Hess, 488 U.S. at 439-40; see also H.R. Rep. No. 94-1487, at 20-21 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6619 (stating that "Section 1605(a)(5) is directed primarily at the problem of traffic accidents but is cast in general terms . . . .  It denies immunity as to claims for personal injury or death . . . ; the tortious act or omission must occur within the jurisdiction of the United States").

Unlike the commercial activity exception to the FSIA under
§ 1605(a)(2), which allows consideration of whether a foreign
activity had a "direct effect" inside the United States, the non-
commercial tort exception "covers only torts occurring within the
territorial jurisdiction of the United States."  <u>Amerada Hess</u>,
488 U.S. at 441.

        Overall, Jerez argues that the magistrate judge erred in
finding the non-commercial tort exception inapplicable because of
the continuing nature of his injuries.  In particular, Jerez
states that the replication of the Hepatitis C virus within his
body creates separate and distinct tortious acts within the
United States.  Pl.'s Objs. at 28.  Under a similar theory, Jerez
argues that cirrhosis of the liver caused by the Hepatitis C is a
separate and distinct tortious act which occurred in the United
States and therefore the waiver of sovereign immunity is valid.
<u>Id.</u> at 30.  However, this interpretation would broaden the non-
commercial tort exception far beyond the expectation of Congress.
The D.C. Circuit has been vigilant in limiting this exception to
circumstances where both the tort and the injury occurred in the
United States and rejecting claims to the contrary.  <u>See</u>
<u>Persinger</u>, 729 F.2d at 839-43 (reviewing the legislative history
and concluding that the parents' emotional distress arising from
their son being taken hostage did not fall within the exception
because "both the tort and injury must occur in the United

States"); <u>Asociación de Reclamantes v. United Mexican States</u>, 735 F.2d 1517, 1525 (D.C. Cir. 1984) (requiring the "entire tort" to have occurred in the United States); <u>see also</u> <u>Cicippio</u>, 30 F.3d at 169. In this case, even if the injuries -- Hepatitis C and cirrhosis of the liver -- occurred solely in the United States, the tortious acts which gave rise to these injuries undoubtedly occurred outside of the United States. <u>See</u> Pl.'s Objs. at 5-6 (detailing the torture which occurred in Cuba and the related "long term psychiatric and physical injuries" which continued to affect Jerez after he "came to the United States"). The magistrate judge properly reviewed the record and rejected Jerez's theory.

Jerez also argues that Cuba's failure to advise him of the presence of the virus in his body provides an additional basis under § 1605(a)(5) to find the non-commercial tort exception applicable. <u>Id.</u> at 28-29. The scope of this exception includes both tortious acts and omissions of foreign officials. 18 U.S.C. § 1605(a)(5). The magistrate judge found that Jerez failed to point to evidence that "[t]he Republic of Cuba knew that Plaintiff had contracted Hepatitis C and concealed this fact" and that any "failure to advise . . . would be deemed to have occurred in Cuba." <u>Jerez</u>, 777 F. Supp. 2d at 23 n.36, 25 n.40.

Jerez argues that this was error because any failure to advise should be deemed to have occurred in the United States.

Pl.'s Objs. at 28-29.  Jerez's objection relies on the case
O'Bryan v. Holy See, 556 F.3d 361 (6th Cir. 2009).  In that case,
the Sixth Circuit found that the claims based on actions
committed abroad fell outside the scope of the exception, but a
claim survived "against the Holy See for the actions of its
supervising employees occurring in the United States."  Id. at
387-88.  However, Jerez misreads O'Bryan in arguing that because
Cuba had representatives in the United States who failed to warn
Jerez, the omission should be deemed a tort which occurred in the
United States under this exception.  O'Bryan states that "any
portion of plaintiffs' claim that relies upon acts committed by
the Holy See abroad cannot survive" and "plaintiffs cannot pursue
claims based upon . . . acts . . . that occurred abroad."  Id. at
385-86.  Furthermore, in O'Bryan, the plaintiff advanced
"theories of liability premised on the conduct of Holy See
employees in the United States engaged in the supervision of the
allegedly abusive priests."  Id. at 386.  Some of O'Bryan's
claims were against the bishops, archbishops and Holy See
personnel within the United States.  Id.  There was a basis in
that case for the claim to proceed against individuals within the
United States who had a duty to warn, allowing that claim to
survive.

In this case, Jerez has sued the Republic of Cuba, Fidel
Casto Ruz, Raul Castro Ruz, The Cuban Revolutionary Armed Forces

and El Ministerio Del Interior, all entities which are abroad. In his objections to the magistrate judge's opinion, Jerez seeks to newly allege wrongdoing by "representatives at the Cuba Interest Section in Washington D.C." Pl.'s Objs. at 29. But Jerez has not submitted any evidence as to the knowledge or duty of unnamed individuals in Washington D.C. in relation to this case. Jerez has failed to show that the waiver of sovereign immunity should be granted based on the non-commercial tort exception.

B. Terrorism exception

Jerez argues that the FSIA provided a basis for subject matter jurisdiction under 28 U.S.C. § 1605(a)(7) as it was codified at the time he secured his default judgment in 2007.[4]

---

[4] This provision was repealed in January 2008, but it provided that:
> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . .
> > (7) . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, . . . except that the court shall decline to hear a claim under this paragraph --
> > > (A) if the foreign state was not designated as a state sponsor of terrorism . . . at the time the act occurred, unless later so designated as a result of such act . . . ; and
> > > (B) even if the foreign state is or was so designated, if . . .
> > > > (ii) neither the claimant nor the victim was a national of the United States . . . when the act upon which the claim is based occurred.

28 U.S.C. § 1605(a) (repealed 2008).

This section provided a waiver of sovereign immunity for a party seeking money damages against a foreign state where the injury was caused by, among other things, an act of torture.  28 U.S.C. § 1605(a)(7) (repealed 2008).  This exception required the foreign state to have been designated as a "state sponsor of terrorism" at the time the act occurred or later as a result of the act in question.  Id. § 1605(a)(7)(A).  Even when the first condition was met, the waiver was not applicable where "neither the claimant nor the victim was a national of the United States" at the time the act occurred.  Id. § 1605(a)(7)(B)(ii).

Jerez has failed to satisfy the statutory requirements for this waiver.  First, Cuba was designated as a state sponsor of terrorism in 1982, see Clarification for Foreign Policy Export Controls, 47 Fed. Reg. 16623-01 (Apr. 19, 1982), after the acts occurred that form the basis of this dispute, see Pl.'s Objs. at 5-6 (stating that the incarceration and torture occurred from 1970 to 1971 before the defendant moved to the United States). Furthermore, the record indicates that Cuba was not designated as a result of Cuba's treatment of Jerez.  See 82 Dep't of State Bull., No. 2063, at 56 (June 1982) (stating that Cuba was designated as a "state sponsor of terrorism" particularly based on "evidence of Cuban support for revolutionary violence and groups which use terrorism as a policy instrument").  In light of these facts, Jerez's objection on this ground must be overruled.

Second, there was no clear error in the magistrate judge's factual finding that Jerez was not a United States citizen when the alleged torture occurred. Jerez cites a transcript of a trial which reflects his testimony that he was a United States citizen "[s]ince almost 50 years ago or more." Pl.'s Objs. at 25 (internal quotation marks omitted). However, the plaintiff's own filing states that "counsel believes that '15 years ago or more' is the correct testimony" and he asserts this discrepancy only to challenge the magistrate judge's weighing of "conflicting evidence." Id. Jerez's new argument raising this likely typographical error is facially insufficient to carry his burden of showing American citizenship at the time of the tortious acts of this case. The magistrate judge's conclusion was drawn from Jerez's own Florida state court complaint and the final judgment in that case which reflected Jerez's status as a "resident alien" as well as the Florida state court's assertion of jurisdiction under the Alien Tort Claims Act, 28 U.S.C. § 1350, which could have applied only if Jerez were an alien. Jerez, 777 F. Supp. 2d at 19 (citing Fl. State Ct. Compl. ¶¶ 4, 7; Fl. State Ct. Jan. 30, 2007 Final J. at 2). As Jerez has not shown that the statutory requirements of the FSIA have been met, there is no subject matter jurisdiction over this controversy.

II.  SCOPE OF REVIEW

    Jerez objects to the magistrate judge having reviewed the
basis for subject matter jurisdiction underlying the default
judgment before addressing the merits of the case.  Jerez
concedes that "a lack of subject matter jurisdiction by the
Florida State Court could not [be] cured by a full faith and
credit determination [by the Florida U.S. District Court.]" Pl.'s
Objs. at 13.  But he argues that the magistrate judge should not
have independently reviewed the Florida state court's subject
matter jurisdiction, and that the court should only have
addressed the narrower issue of the validity of the Florida
federal court's full faith and credit determination.  Id. at 13-
14.  In particular, Jerez states that the magistrate judge
"fail[ed] to give the prior full faith and credit decision some
weight when he started his analysis with the Florida State Court
Judgment."  Id. at 13 (citing Weininger v. Castro, 462 F. Supp.
2d 457, 469 (S.D.N.Y. 2006)).  According to Jerez, he is entitled
to enforce the Florida default judgment unless the Florida state
court "plainly usurped its jurisdiction."  Pl.'s Objs. at 14.

    Generally, subject matter jurisdiction "goes to the
foundation of the court's power to resolve a case, and the court
is obliged to address it *sua sponte*."  Doe by Fein v. District of
Columbia, 93 F.3d 861, 871 (D.C. Cir. 1996) (citing Bender v.
Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)).  The

Supreme Court has recognized that "a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits -- had jurisdiction, that is, to render the judgment." Durfee v. Duke, 375 U.S. 106, 110 (1963). However, "principles of res judicata apply to jurisdictional determinations -- both subject matter and personal." Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n.9 (1982). In other words, the reviewing court is foreclosed from reaching issues, including jurisdiction, that "have been fully and fairly litigated and finally decided in the court which rendered the original judgment." Durfee, 375 U.S. at 111. This res judicata effect is ordinarily seen in cases where the defendant has submitted to the jurisdiction of the court and litigated the issue. American Surety Co. v. Baldwin, 287 U.S. 156, 166 (1932); Baldwin v. Traveling Men's Ass'n, 283 U.S. 522, 525-26 (1931). See generally Ins. Corp. of Ireland, 456 U.S. at 706-07 ("By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata on that issue in any further proceedings.") (citations omitted). By contrast, "[a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional

grounds in a collateral proceeding." Id. at 706.  Where, as
here, "enforcement of the default judgment is attempted, . . . [a
defendant] may assert his jurisdictional objection" and "[i]f he
prevails on the objection, the default judgment will be vacated."
Practical Concepts, Inc., 811 F.2d at 1547.

Jerez argues that only the defendant may attack a default
judgment on jurisdictional grounds and third parties may not
mount a collateral jurisdictional attack at this stage of the
case.  Pl.'s Reply to Centro de Bioactivos Químicos et al.'s
Opp'n to Pl.'s Objs. ("Pl.'s Reply") at 4.  In this case, the
magistrate judge did not review subject matter jurisdiction on
the basis of the third party movants' collateral attack.
Instead, the magistrate judge reviewed the subject matter
jurisdiction of the state court's default judgment.  The issue
presented here is whether, in the absence of a defendant's
jurisdictional objection, a court may inspect the subject matter
jurisdiction of the default judgment after a reviewing federal
district court has already granted full faith and credit to the
original state court's default judgment.

As to this issue, the Weininger case is instructive.
Plaintiff Weininger successfully obtained a default judgment in a
Florida state court against the Republic of Cuba, Fidel Castro,
Raul Castro and the Army of the Republic of Cuba.  Weininger, 462
F. Supp. 2d at 463.  Weininger sought to domesticate the Florida

state court judgment by seeking summary judgment in New York
state court.  Weininger obtained an attachment order for property
held in JPMorgan Chase bank accounts in which the Republic of
Cuba and agencies or instrumentalities allegedly held interests.
Weininger's litigation was removed to federal court where the
Florida judgment was given full faith and credit.  Id. at 464-65.
Plaintiff McCarthy also secured a default judgment against the
Republic of Cuba in a Florida state court.  McCarthy then
obtained a final default judgment in the U.S. District Court for
the Southern District of Florida and registered the judgment with
the U.S. District Court for the Southern District of New York.
Id. at 466.  In both plaintiffs' cases, the Florida state courts
determined that they had jurisdiction under the FSIA.  Id. at
469.  Both plaintiffs sought to enforce their default judgments
by requesting a turnover of assets in the bank accounts of the
alleged Cuban entities.  Id. at 466-67.  The cases were
consolidated before a single district judge.  Id. at 467.

JPMorgan Chase, seeking interpleader relief, and a third
party serving as amicus curiae, posited that the default
judgments were unenforceable because the Florida state courts
that rendered the judgments lacked jurisdiction under the FSIA.
The district judge in Weininger considered whether, in the
absence of an attack by the defendants who originally defaulted,
the court should examine the jurisdictional competence of the

previous courts' decisions.  Id. at 468-69.  The judgment debtors
whose assets were at risk of loss failed to appear before the
Florida state courts or the federal courts to challenge the
judgments against them.  Id. at 469.  The district judge
concluded that "the policies and principles underlying res
judicata doctrine would make it manifestly inequitable for this
Court to reopen the judgments so as to permit a challenge to the
underlying adjudication at the request of parties not affected by
the judgments[.]"  Id.  In reaching this conclusion, the judge
principally cited the completeness of the state courts'
determination of jurisdiction, the federal courts' implicit
recognition of jurisdiction, and the failure of any entities
whose assets were at risk of loss to contest the validity of the
judgments.  Id.

By contrast, these considerations weigh against the
plaintiff in this case.  First, Weininger highlighted that the
Florida state courts, in line with the FSIA's requirement that
the claimant establish his claim "'by evidence satisfactory to
the court,' . . . held hearings, took evidence, satisfied
themselves of their jurisdiction, and expressly so ruled."  Id.
(quoting 28 U.S.C. § 1608(e)).  Here, the record in Jerez's
original default judgment reflects that the Florida state court
explicitly relied on the Alien Tort Claims Act, 28 U.S.C. § 1331,
for jurisdiction, Mot. to Vacate Writ of Attachment, Decl. of

Lindsey Frank, Esq., Ex. B at 2, and as Jerez concedes, the
Florida state court's judgment does not discuss sovereign
immunity or FSIA, Pl.'s Objs. at 20. Although Jerez's state
court complaint included references to the FSIA, id. at 19, the
Florida state court's judgment reflects no consideration of
sovereign immunity under the FSIA, the essential consideration
for subject matter jurisdiction in an action against a foreign
state. See Nemariam, 491 F.3d at 474 (stating that a district
court lacks subject matter jurisdiction unless there is an
applicable FSIA exception).

In addition, unlike in <u>Weininger</u>, third parties whose assets
are at risk here do contest the validity of the judgments and
have directly attacked the underlying basis of subject matter
jurisdiction. While Jerez objects to the third party movants'
ability to collaterally attack subject matter jurisdiction at
this stage, Jerez has shown no abuse in the magistrate judge's
exercise of discretion to examine subject matter jurisdiction.
In light of the uncontested nature of Jerez's proceedings in the
state and federal courts in Florida and the lack of any inquiry
by either of those courts into their jurisdiction under the FSIA,
the magistrate judge properly exercised his discretion and
examined the basis for subject matter jurisdiction. Jerez's
objection to the magistrate judge's scope of review will be
overruled.

III. OTHER OBJECTIONS

Jerez makes three additional objections to the magistrate judge's decision.  First, Jerez argues that the writ of attachment is enforceable because his claim falls under an exception to the Cuban Assets Control Regulations' general prohibition against attachments of this nature.  Pl.'s Objs. at 32-35.  Second, Jerez argues that the magistrate judge clearly erred by concluding that the trademark for Cuban cigars was not subject to an equitable lien.  Id. at 35-40.  Third, Jerez argues that the magistrate judge should have ordered the appropriate remedy: the foreclosure of the applicable patents assigned to the defendants.  Id. at 40-41.  However, all of these objections are moot in light of the absence of subject matter jurisdiction.

CONCLUSION

The magistrate judge did not err in considering subject matter jurisdiction and correctly found that the Florida state court did not have subject matter jurisdiction under FSIA. Jerez's remaining objections are moot in light of the absence of subject matter jurisdiction.  Jerez's objections will be overruled.  An appropriate order accompanies this memorandum opinion.

SIGNED this 29th day of August, 2013.

                                    _____/s/_____
                                    RICHARD W. ROBERTS
                                    Chief Judge